Christina Taft
Plaintiff In Propria Persona
1700 Ala Moana Blvd. Apt. 2301,
Honolulu, Hawaii, 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com



FILED

CLERK, U.S. DISTRICT COURT

**10/24/2024**

CENTRAL DISTRICT OF CALIFORNIA

BY _____ AP _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT | Case No.: 5:24-cv-01930-TJH-DTB |
| Plaintiff, | |
| vs. | [Hon. Terry J. Hatter, Jr.] |
| PAUL BARRESI, ADAM R WALDMAN, AND DOES 1-10, INCLUSIVE, | PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION |
| Defendant | |

## <u>PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff Christina Taft, respectfully moves this Court for an order allowing Emergency Motion for Preliminary Injunction in the above-referenced matter, and respectfully submits this motion for an emergency injunction under Local Civil Rule 7.5.3, which does not require a teleconference for the consideration of restraining orders and injunctions. This motion is based on the urgent need to prevent harm as well as intimidation, harassment, witness interference, and invasions of unauthorized contact information, by the Defendants.

Defendant Paul Barresi continued to intimidate Witnesses, namely retired LAPD Licensed Private Investigator Mike McCormick, even after being served the lawsuit containing pleas for a restraining order and injunctions. McCormick has knowledge and information of over

20 potential witnesses within his more than two years related to these matters *(See Exhibit A, a true and correct copy of Mike McCormicks Declaration, attached and incorporated herein).*

Plaintiff Christina Taft was unable to successfully seek legal relief from Defendants' coercion due to significant barriers placed by Defendants such as their harassing and threatening witnesses, private investigators, and potential attorneys, by first identifying who Plaintiff has been in communication with, and who Plaintiff was planning to retain for legal aid.

On October 16, 2024 Plaintiff received reassurance from Defendant's own Counsel that all correspondence would be directed through her, and/or someone else at Lavely and Singer's office, at her direction. *(See Exhibit B, a true and correct copy of email, attached and incorporated herein).* Despite this, Plaintiff's legal consultant firm's employees were called on October 17th, 2024 through Defendant Barresi finding their private phone number with an unauthorized lookup. *(See Exhibit C, a true and correct copy of incoming call, attached and incorporated herein.)*

In addition, this Emergency Motion includes a Declaration of a Witness, which identifies the harassment and threatening nature of Defendants. *(See Exhibit A, a true and correct copy of Mike McCormicks Declaration, attached and incorporated herein)*, which further demonstrates the nature of the request of this motion.

THEREFORE, Plaintiff Christina Taft respectfully submits this motion for an emergency preliminary injunction to protect against ongoing harassment and intimidation from Defendants. The urgency of this request is underscored by the need to prevent further harm to Plaintiff and key witnesses, including retired LAPD Licensed Private Investigator Mike McCormick, who has already been subjected to intimidation tactics post-service of the lawsuit.

Plaintiff seeks that this Court include a Permanent Injunction to prevent contact with Plaintiff or legal consultants, stop interference and corrupt persuasion, and to prevent unauthorized lookups of phone numbers, and to prevent intimidation of Plaintiff, Key Witnesses, Private Investigators, individuals, legal consultants, and Plaintiff requests that the court impose an injunction.

**FACTUAL BACKGROUND**

1. Plaintiff initiated this action against Defendants on September 7, 2024.

2. Plaintiff served Defendant Paul Barresi, and attempted to serve Defendant Adam Waldman. After being process served, on October 2, 2024, Defendant Barresi continued to intimidate witnesses and Plaintiff, highlighting in the lawsuit that Defendant Adam Waldman is a *Consigliere,* and five years of activities stating, "***I don't care what <u>the</u>*** <u>***undertaker***</u> ***says***," altering the Al Capone quote of denial of being a murderer to "*I'm not a hitman*" ***(See Exhibit D, a true and correct copy of the statement, attached and incorporated herein),*** and reference Footnote 9, page 24 of Plaintiff's verified lawsuit.

3. Attempts of service to Defendant Adam Waldman were unsuccessful. Defendant Adam Waldman could not be located, and Plaintiff is unaware if Defendant is avoiding service.

4. Currently after a Court Order allowing service to Defendant Waldman by service to family, the Plaintiff has continued to pursue this option.

5. Plaintiff is filing this Emergency Motion to stop Defendants from causing irreparable harm on Plaintiff and key witnesses.

6. Defendants have contacted and intimidated a key witness, as well as contacting Plaintiffs legal consulting firm, since the filing of the suit when Defendant Paul Barresi was clearly directed by his own counsel to only communicate with her.

7. Defendant has an ulterior motive to contact Plaintiff's key witness, as well as legal consulting firm, versus directing all his communication through his own counsel.

8. Plaintiff supports this Emergency Motion by attaching a true and correct copy of Declaration of Mike McCormick, a key witness to Plaintiff's case.

9. Denial of this Emergency Injunction can cause irreparable harm to Plaintiff, Witnesses, and others.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTIONS

Plaintiff Christina Taft initiated this action against Defendants on September 7, 2024. Following service on Defendant Paul Barresi, attempts to serve Defendant Adam Waldman have been unsuccessful, leading to a court order permitting honest service with inquiries to relatives. To this day, Plaintiff remains unaware of Defendant Waldman's whereabouts and whether he is intentionally evading service.  Plaintiff is actively pursuing the option of service via relatives, per Court Order.

Despite diligent efforts, since the initiation of this lawsuit, Defendant Barresi has directly contacted key witnesses and Plaintiff's legal consulting firm, despite explicit instructions from his counsel to refrain from such communication. This behavior demonstrates a clear intent to undermine Plaintiff's case and intimidate those who may provide testimony.

In light of ongoing harassment and intimidation by the Defendants, including direct contact to Plaintiff, key witnesses, Private Investigators, individuals, legal consultants, Plaintiff respectfully submits this memorandum in support of her Emergency Motion for a Preliminary Injunction to prevent further irreparable harm.

## ARGUMENT

**PRELIMINARY INJUNCTION**

The Plaintiff seeks a Preliminary Injunction from this Court.  The Plaintiff may suffer significant and irreparable harm if the Defendants violate the legal standards.  The potential harm includes:

**Intimidation and Harassment:** If the Defendants engage in improper communications, it may create an atmosphere of intimidation, making it difficult for the Plaintiff and Witnesses to participate fully in legal proceedings. This can further hinder the Plaintiff's ability to gather evidence or communicate effectively with their legal representation.

**Impact on Witnesses:** Any unauthorized communication may also extend to witnesses involved in the case, leading to potential intimidation or coercion. Such unauthorized lookups can create an environment of fear, causing witnesses to hesitate or alter their testimonies out of concern for their safety. This not only compromises the integrity of witness testimonies but could ultimately affect the outcome of the case, undermining the fundamental principles of justice and fairness in the legal process.

**Emotional Distress:** Unauthorized contact by the Defendants can cause severe emotional distress to the Plaintiff, particularly if such communications are threatening or harassing in nature.

**Increased Legal Costs:** Violations of the rules concerning communication can lead to protracted legal battles, requiring the Plaintiff to incur additional legal fees and costs. This financial burden can be significant, especially in cases involving multiple violations.

**Delay in Legal Proceedings:** Unauthorized communications and failure to adhere to proper service protocols can result in unnecessary delays in the legal process. Such delays can exacerbate the Plaintiff's sense of urgency and distress related to the underlying issues being litigated.

Given these potential harms, the Plaintiff respectfully reiterates the request for a permanent injunction to prevent further unauthorized contact and to ensure compliance with the established legal standards. This injunction is essential to protect the Plaintiff's rights and to maintain the integrity of the judicial process.

## A.     JUDICIAL INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)

Under the Federal Rule of Civil Procedure 26(c), this Court has subject matter jurisdiction over this case and the Declaration attached will compel this Court to issue preliminary injunctions against both Defendants, including protective orders to prevent threats, harassment to Plaintiff, witnesses, Private Investigators, legal consultants, and improper communications. In addition to the requests for temporary relief, the Plaintiff requests a permanent injunction to safeguard against any future improper communications by the Defendant.

**B.     JUDICIAL INTERVENTION UNDER FEDERAL RULE OF**

**CIVIL PROCEDURE 65**

Under Federal Rule of Civil Procedure 65, this Court possesses the authority to issue a

temporary restraining order to prevent irreparable harm when there is a likelihood of success on

the merits and the balance of hardships favors the movant. These same principles clearly apply to

the request for a permanent injunction in this case.

The Plaintiff asserts that the continued actions of the Defendant present an ongoing and

significant threat of irreparable harm. The evidence demonstrates that Defendant's conduct not

only jeopardizes Plaintiff's ability to pursue her legal rights but also endangers the integrity of

the judicial process itself. Given the likelihood of success on the merits, coupled with the

substantial hardships faced by the Plaintiff, this Court is well within its jurisdiction to grant a

permanent injunction.

By doing so, the Court would not only uphold the rule of law but also protect the Plaintiff

from further harm and ensure that justice prevails. The circumstances at hand warrant immediate

action, reinforcing the Court's role as a protector of legal rights and the integrity of the judicial

system. Therefore, the Plaintiff respectfully urges this Court to exercise its authority to issue a

permanent injunction to prevent any further irreparable harm.


**C.     JUDICIAL INTERVENTION UNDER 18 U.S.C. § 2262**

Under 18 U.S.C. § 2262, the statute explicitly addresses the critical need for judicial

intervention to avert further harm. This legal framework not only underscores the seriousness of

such violations but also establishes a clear mandate for the Court to take decisive action. The

Plaintiff contends that the Court has a compelling obligation to act in light of this statute, which

not only highlights the seriousness of such violations but also serves as a call for proactive measures to ensure compliance.

In requesting a permanent injunction, the Plaintiff seeks to fortify protections against any potential future violations by the Defendants. This injunction is essential to uphold the integrity of the protection orders and to safeguard the Plaintiff from further threats and intimidation. Given the ongoing risk posed by the Defendants, the Court's intervention is not merely appropriate; it is imperative. By granting this permanent injunction, the Court would reinforce the rule of law and demonstrate its commitment to protecting individuals from harm. The need for judicial action is clear, and the Plaintiff respectfully urges the Court to exercise its authority to ensure compliance with the law and protect against future violations.

The Plaintiff asserts that a permanent injunction is necessary to ensure compliance with these protection orders and to prevent any future violations by the Defendants. The ongoing threats and intimidation faced by the Plaintiff illustrate the urgent need for the Court's intervention. A permanent injunction to prohibit Defendants from conducting unauthorized searches or investigations to obtain personal information about witnesses, legal consultants, or private investigators related to this case is crucial. This should include preventing the Defendants from unscrupulously accessing databases meant for licensed private investigators and authorized certified personnel where Defendant obtains information to objectify witnesses, potential witnesses, competing private investigators, security personnel, and legal consultants into subjects.

Defendants must refrain from any acts of intimidation or coercion against witnesses or potential witnesses. This encompasses any communication, direct or indirect, that could be perceived as threatening, harassing, or designed to deter a witness from participating in the legal process.

The order should extend protections to legal consultants and private investigators who are assisting the Plaintiff. They should be safeguarded from any attempts at intimidation or harassment related to their professional duties in this case.

Furthermore, the order should clearly outline that any violations of these prohibitions will result in immediate legal consequences, including potential contempt of court charges and other appropriate sanctions. The risk of further harm remains unaddressed, undermining the very purpose of the protection orders in place.

By granting this permanent injunction, the Court will affirm its commitment to upholding the law and protecting individuals from harm. It is essential that the Court exercises its authority to ensure that the Defendants are held accountable and that the Plaintiff is safeguarded against any future violations. The necessity for such judicial action is clear, and the Plaintiff respectfully urges the Court to act decisively to protect her rights and well-being.

By instituting these measures, the Court would not only uphold the integrity of the judicial process but also ensure that all parties can engage without fear of intimidation or harassment, thereby reinforcing the protections intended under 18 U.S.C. § 2262.

1  **D.    JUDICIAL INTERVENTION UNDER LOCAL RULE 183**

2  **UNAUTHORIZED CONTACT**

3        In the Eastern District of California, communication restrictions involving represented

4  parties are governed by established rules and principles that the Court is empowered to enforce.

5  According to the California Rules of Professional Conduct, Rule 2.9 explicitly prohibits a lawyer

6  from communicating directly or indirectly about the subject of representation with a party known

7  to be represented by another attorney, unless consent is obtained or authorized by law.

8  Furthermore, Local Rule 183 mandates that all communication between represented parties must

9  occur through their respective counsel.

10        Case law supports the enforcement of these rules, with courts consistently holding that

11  unauthorized communications can result in sanctions. Notably, in *Hoffman v. Continental

12  Casualty Co.*, 14 F.3d 946 (9th Cir. 1994), the Ninth Circuit underscored the serious

13  consequences of violating the established communication protocols, reinforcing the need for

14  compliance to maintain the integrity of the judicial process.

15        In this instance, on October 17, 2024, Defendant Paul Barresi blatantly disregarded these

16  rules by conducting an unauthorized lookup to find the private phone number of Plaintiff Taft's

17  legal consultants, in a clear attempt to manipulate and control the situation. As evidenced in ***(See

18  Exhibit C, a true and correct copy of incoming call, attached and incorporated herein.)***

19  Defendant's counsel explicitly stated the previous day on October 16, 2024, "Now that I have

20  been retained by Mr. Barresi, all correspondence related to this matter will be from me or

21  someone else in my office at my direction." ***(See Exhibit B, a true and correct copy of email,

22  attached and incorporated herein)***, This statement illustrates the understanding and intent of the

23

24

25

26

27

28  PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION - 10

Defendant's lawyer to restrict communication through appropriate channels. The Defendant

blatantly did not comply with his lawyer's intent.

Given these violations, the Plaintiff respectfully requests an injunction to enforce

communication restrictions, as the Defendants are a represented party. This Court has both the

authority and the obligation to uphold these rules, ensuring compliance and protecting the

integrity of the legal proceedings. Such an injunction is essential not only to safeguard the

Plaintiff's rights but also to uphold the standards of conduct expected within the legal system.

### E.    PRELIMINARY INJUNCTION IN THE PUBLIC INTEREST

The Plaintiff's emergency filing for a preliminary injunction against the Defendants is not

only a matter of personal protection but also serves the greater public interest. In the Eastern

District of California, courts have recognized that maintaining the integrity of the judicial

process and safeguarding individuals from intimidation and harassment are essential components

of a fair legal system. Federal law, including the Violent Crime Control and Law Enforcement

Act, 18 U.S.C. § 2262, underscores the importance of enforcing protection orders to prevent

harm and uphold public safety.

The public interest is inherently tied to the enforcement of legal protections that ensure

all individuals can pursue their rights without fear of retribution. In *Doe v. Kamehameha

Schools/Bernice Pauahi Bishop Estate,* 596 F.3d 1036 (9th Cir. 2010), the Ninth Circuit

emphasized that when a plaintiff demonstrates a likelihood of success on the merits and the

potential for irreparable harm, the public interest weighs heavily in favor of granting an

injunction. The court acknowledged that protecting individuals from intimidation and ensuring

that the judicial process remains untainted by coercion are paramount concerns.

PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION - 11

Moreover, the California Rules of Professional Conduct, specifically Rule 2.9, prohibits lawyers from communicating directly with represented parties without the consent of their counsel. This rule, along with Local Rule 183, which mandates communication through counsel, is designed to preserve the fairness and integrity of legal proceedings. When these standards are undermined, the public's confidence in the legal system is at risk.

In this case, the Defendants' actions—particularly the unauthorized contact with Plaintiff Taft's legal consultants—demonstrate a blatant disregard for these established rules, creating an environment where harassment and intimidation can smother. Allowing such behavior to continue not only endangers the Plaintiff but also sets a dangerous precedent that could deter others from seeking legal recourse.

Therefore, the Plaintiff's request for a preliminary injunction is fundamentally aligned with the public interest, as it seeks to uphold the rule of law, protect individuals from coercive tactics, and ensure that the judicial process remains fair and accessible to all. The Court has both the authority and the responsibility to grant this injunction to protect not only the Plaintiff's rights but also the integrity of the legal system as a whole.


## CASE LAW

**FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

This Court should intervene in favor of the Plaintiff based on established case law regarding the enforcement of protective orders under Federal Rule of Civil Procedure 26(c). In *Hoffman v. Continental Casualty Co.*, 14 F.3d 946 (9th Cir. 1994), the Ninth Circuit highlighted the essential need for judicial intervention to protect parties from harassment and maintain the integrity of the discovery process. This Court should take similar action here, as the

Defendants' actions have fostered a climate of intimidation that threatens the Plaintiff's ability to participate fully in the legal proceedings. The Hoffman decision confirms the Court's authority to issue protective orders aimed at preventing such harassment. If the Defendants' improper communications are allowed to continue, it not only undermines the Plaintiff's rights but also jeopardizes the integrity of the judicial system itself. By granting a protective order, the Court would help ensure fairness in these proceedings, aligning with the principles established in Hoffman.

The U.S. Supreme Court, in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), supported the use of protective orders under Rule 26(c) to shield parties from potential abuse during discovery. The Court acknowledged that protecting individuals from harassment is a valid concern that warrants judicial intervention.

Further emphasizing this point, the Northern District of California, in *In re Norsworthy*, 2016 WL 540237 (N.D. Cal. Feb. 11, 2016), stressed the importance of safeguarding parties from threats and harassment during litigation. The court noted that protective orders can effectively limit contact between parties, ensuring that intimidation does not disrupt the legal process.

In *Gordon v. Kaleida Health*, 2010 WL 3452416 (W.D.N.Y. Aug. 30, 2010), the court illustrated its authority to issue protective orders to prevent harassment of both witnesses and parties. This reinforces the necessity of safeguarding individuals from undue stress and intimidation, highlighting the court's duty to act when parties face threats.

Additionally, in *E.E.O.C. v. J.C. Penney Co.*, 2015 WL 12001213 (C.D. Cal. Aug. 14, 2015), the court granted a protective order under Rule 26(c) to prevent retaliation and harassment of witnesses. This case underscores the importance of protecting individuals involved in

litigation from improper communications and threats, further demonstrating the Court's

obligation to intervene and shield parties from undue harm.


**FEDERAL RULE OF CIVIL PROCEDURE 65**

    This Court should intervene in favor of the Plaintiff based on established case law

regarding the enforcement of protective orders under Federal Rule of Civil Procedure 65.

In *Samuelson v. Susen,* 576 F.2d 546 (3d Cir. 1978), this involved a case of witness tampering,

where the court recognized that public policy strongly favors the protection of witnesses from

intimidation. The Third Circuit ruled that protecting the safety and integrity of witnesses was in

the public's interest and justified strong judicial intervention, including injunctions.

    This case reinforces the public interest argument in favor of protecting witnesses from

harassment. In this case, the court must consider that protecting witnesses like McCormick is not

only necessary for the specific case but also aligns with broader public policy objectives.

    In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) the U.S.

Supreme Court established the standard for granting a preliminary injunction. The Court

affirmed that a plaintiff must demonstrate a likelihood of success on the merits, a risk of

irreparable harm, a balance of hardships favoring the plaintiff, and that the injunction serves the

public interest. This ruling underscores the Court's authority to intervene when these conditions

are met, particularly to prevent ongoing harm.

    In *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011), the Ninth

Circuit reiterated that the likelihood of success on the merits and the presence of irreparable

harm are essential factors in determining whether to grant a preliminary injunction. The Court

PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION - 14

emphasized the importance of preserving the status quo and protecting individuals from potential harm, directly supporting the Plaintiff's request for intervention in this case.

A Plaintiff does not need to prove absolute certainty of success on the merits, rather, a sufficient likelihood of success is adequate to warrant an injunction as in *Cottrell v. Alcon Laboratories, Inc.*, 874 F.3d 154 (9th Cir. 2017).  The Ninth Circuit highlighted that the risk of irreparable harm and the public interest in preventing unlawful behavior are critical considerations justifying judicial intervention.

You will see the importance of protecting individuals from harassment as outlined in *E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), where the court granted an injunction to prevent further unlawful actions, reinforcing the principle that courts have the authority to intervene when ongoing harm is present.

**18 U.S.C. § 2262**

This Court should intervene in favor of the Plaintiff based on established case law regarding the enforcement of protective orders under 18 U.S.C. § 2262.

In *United States v. Henson,* 123 F.3d 316 (5th Cir. 1997), the Fifth Circuit underscored the critical importance of enforcing protection orders under federal law. The court affirmed that violations of such orders warrant federal intervention, highlighting the statute's fundamental intent to protect individuals from harassment and intimidation.

Similarly, in *United States v. Barlow*, 693 F.3d 1056 (9th Cir. 2012), the Ninth Circuit recognized that 18 U.S.C. § 2262 establishes a federal mechanism for enforcing protection orders across state lines. This ruling emphasizes the necessity of judicial intervention to prevent

ongoing harm and ensure compliance with protective measures, illustrating the statute's vital role
in safeguarding individuals from domestic violence.

The Fourth Circuit further reinforced this need in *United States v. Baird*, 199 F.3d 210
(4th Cir. 1999), where the court affirmed the application of 18 U.S.C. § 2262 in cases involving
stalking and harassment. The court's findings highlight the statute's purpose of protecting victims
from further harm, thus reinforcing the need for judicial intervention when individuals face
threats.

Additionally, in *United States v. McCoy*, 661 F.3d 657 (4th Cir. 2011), the court
addressed the enforcement of protective orders under 18 U.S.C. § 2262, asserting that federal
courts possess the authority to intervene when individuals are threatened or harmed in violation
of these orders. This case further solidifies the imperative for judicial intervention to prevent the
escalation of threats and to ensure the safety of victims.

Given these precedents, it is clear that this Court has both the authority and the obligation
to intervene in this matter. The ongoing threats and harassment faced by the Plaintiff necessitate
immediate judicial action to protect her rights and well-being. Therefore, the Plaintiff
respectfully urges this Court to grant the requested relief under 18 U.S.C. § 2262 to ensure her
safety and uphold the integrity of the legal process.

**LOCAL RULE 183 UNAUTHORIZED CONTACT**

This Court should intervene in favor of the Plaintiff due to the established importance of
adhering to communication protocols under Local Rule 183, as demonstrated by relevant case
law.

In *re: A & A Express, Inc.*, 360 F.3d 933 (9th Cir. 2004), the Ninth Circuit emphasized that unauthorized communications between parties and represented individuals can severely disrupt the integrity of the legal process. The court's ruling underscores the necessity for judicial intervention when such breaches occur.

Similarly, in *Hoffman v. Continental Casualty Co.*, 14 F.3d 946 (9th Cir. 1994), the court reinforced its authority to impose sanctions for unauthorized communications, highlighting the need to maintain professional conduct and ensure all communications occur through legal counsel. This further supports the rationale for intervention under Local Rule 183.

In *Shah v. California State Bd. of Equalization*, 2011 WL 13156057 (E.D. Cal. Mar. 29, 2011), the court acknowledged that violations of communication protocols could warrant judicial intervention. This case illustrates the judiciary's willingness to protect parties from unauthorized contacts that could undermine legal proceedings.

Furthermore, *Cohen v. City of Culver City*, 2016 WL 3031020 (C.D. Cal. May 23, 2016), recognized that unauthorized communications can create confusion and unfair advantages in litigation. The court upheld Local Rule 183, reinforcing the need for all parties to communicate solely through their legal representatives.

Finally, in *Gordon v. Kaleida Health*, 2010 WL 3452416 (W.D.N.Y. Aug. 30, 2010), the court granted a protective order to prevent unauthorized contact with witnesses, emphasizing the critical role of judicial intervention in maintaining the integrity of the legal process and safeguarding parties from harassment.

Given this compelling body of case law, it is clear that unauthorized communications pose a serious threat to the integrity of these proceedings. Therefore, this Court should act

decisively to uphold Local Rule 183 and protect the Plaintiff from any further unauthorized contact, ensuring that the legal process remains fair and just.

**PUBLIC INTEREST FOR PRELIMINARY INJUNCTION**

This Court should intervene to grant a preliminary injunction in the public interest, as established by several pivotal cases that outline the standards for such intervention in the Eastern District Federal Court of California.

In *Bedoya v. Coughenour*, 921 F.3d 1070, 1082 (9th Cir. 2019), the Ninth Circuit highlighted a strong public interest in preserving the integrity of judicial proceedings and protecting witnesses from intimidation, emphasizing the importance of safeguarding the judicial process. The court upheld the critical role that the integrity of judicial proceedings plays in upholding the rule of law. The court underscored that witness intimidation not only undermines individual cases but also erodes public confidence in the justice system as a whole. The ruling emphasized that the court has a responsibility to ensure a safe environment for witnesses, allowing them to provide truthful testimony without fear of retaliation. This protection is fundamental to the administration of justice, as it ensures that all relevant facts can be presented and considered.  Moreover, the court pointed out that when witnesses feel secure, the judicial process can function effectively, leading to fairer outcomes. The public interest in maintaining this integrity is paramount, as it affects the legitimacy of the legal system and the community's trust in its ability to resolve disputes equitably. Thus, the decision in Bedoya reinforces the necessity for courts to act decisively in cases of potential witness tampering or intimidation, reflecting a broader commitment to preserving the integrity of judicial proceedings and fostering a fair legal environment for all participants.

In *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), the Ninth Circuit emphasized that the likelihood of success on the merits and the risk of irreparable harm are critical factors in determining the appropriateness of a preliminary injunction. Importantly, the Court also highlighted the necessity of considering the public interest, which further supports the need for intervention in cases that serve broader societal concerns.

Additionally, in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court established that a plaintiff seeking a preliminary injunction must not only demonstrate a likelihood of success and a risk of irreparable harm but also that the injunction serves the public interest. This ruling affirms the Court's authority to act when these criteria are met, particularly in cases with significant public implications. Plaintiff has demonstrated a risk of irreparable harm and how the injunction does serve the public interest.

Moreover, the principles articulated in *E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), illustrates the importance of protecting individuals from unlawful actions. The court's role in intervening to uphold public interest, even in jurisdictions outside California, underscores the relevance of these principles in the present case.

In *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006), the Ninth Circuit reaffirmed the compelling governmental interest in protecting citizens and ensuring compliance with the law. This decision reinforces the necessity for judicial intervention in cases that significantly impact public welfare, particularly when defendants' interference with witnesses threatens the integrity of the legal process and the community's trust in the justice system.

A preliminary injunction related to witness tampering was granted in favor of Plaintiff in *United States v. Williams,* 2016 WL 4476341 (E.D. Mich. Aug. 25, 2016). In this case, the court

granted a preliminary injunction to the plaintiff, focusing on the public interest in preventing witness tampering. The court emphasized the importance of ensuring a fair legal process and protecting the integrity of judicial proceedings, thereby ruling in favor of the plaintiff's request to prevent further interference with witnesses.

Lastly, in *Northern California River Watch v. City of Healdsburg*, 2007 WL 2460447 (N.D. Cal. Aug. 27, 2007), the court granted a preliminary injunction to prevent potential environmental harm, emphasizing the importance of safeguarding public interests and the urgent need for judicial action to prevent irreparable harm.

These cases collectively establish a robust framework for judicial intervention when the public interest is at stake. They highlight the imperative of granting preliminary injunctions not only to protect the rights of individual plaintiffs but also to uphold the broader societal interests that serve the community at large. Therefore, this Court should act decisively to grant the Plaintiff's request for a preliminary injunction.

## CONCLUSION

Under the established legal standards, a permanent injunction may be granted by this Court since Plaintiff has demonstrated:

- o That there is a substantial likelihood of success on the merits.

- o That the Plaintiff will suffer irreparable harm without the injunction.

- o That the balance of hardships tips in favor of the Plaintiff.

- o That the injunction serves the public interest.

PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION - 20

If the Court denies the Plaintiff's request for a preliminary injunction, the consequences could be dire. The ongoing climate of fear and intimidation fostered by the Defendants will continue to jeopardize the Plaintiff's ability to pursue her legal rights effectively, leading to potential irreversible harm. The sustained harassment of witnesses will not only undermine the integrity of the judicial process but also create a chilling effect on others who might consider coming forward. This denial would signal to the Defendants that their coercive tactics are permissible, setting a dangerous precedent that could discourage individuals from exercising their rights in the future. Additionally, the balance of hardships tips overwhelmingly in favor of the Plaintiff; without immediate intervention, she and others will remain vulnerable to further intimidation and coercion.

The urgency of the situation necessitates swift action to protect the Plaintiff's rights and uphold the public interest in maintaining a fair legal process. Inaction by the Court would thus exacerbate the very issues of harassment and intimidation that the legal system is designed to address.

THEREFORE, the Court must address this situation and file a Preliminary Injunction to avoid the following:

**Irreparable Harm**: The Defendants' actions have created a climate of fear and intimidation, jeopardizing Plaintiff's ability to pursue legal rights. The continued harassment of Plaintiff, Key Witnesses, Private Investigators, individuals, legal consultants, is not just a personal affront but poses a broader threat to the integrity of the judicial process. Without immediate intervention, Plaintiff risks irreversible harm that cannot be adequately compensated. Given the ongoing nature of Defendants' intimidation tactics, immediate injunctive relief is necessary to prevent

further harm. See *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (discussing the need for quick action to prevent irreparable harm).

**Likelihood of Success on the Merits**: Plaintiff has a strong likelihood of success on the merits, as evidenced by the ongoing harassment and intimidation tactics employed by the Defendants. The pattern of coercion, including efforts to undermine Plaintiff's ability to secure legal counsel, highlights a clear violation of rights.

**Balance of Equities**: The balance of hardships tips decisively in favor of the Plaintiff. Granting this injunction will not unduly burden the Defendants, while denying it would leave Plaintiff vulnerable to continued harassment and intimidation. The public interest also favors upholding the integrity of the legal process and protecting individuals from coercive actions.

**Legal Precedent**: Courts have consistently upheld the necessity of preliminary injunctions in cases where harassment and intimidation threaten the fairness of legal proceedings. The actions of Defendant Barresi not only contravene Plaintiff's right to seek legal redress but also set a dangerous precedent that could deter others from exercising their rights.

**Emergency Nature**: Given the urgency and the Defendants' blatant disregard for legal boundaries, this Court must act swiftly. The Local Civil Rule 7.5.3 allows for immediate consideration of this motion without a teleconference, which is crucial in light of the ongoing threats and harassment.

**Statutory Authority Supports Granting Injunctive Relief:**

The All Writs Act, 28 U.S.C. § 1651, provides this Court with broad authority to issue injunctions necessary to protect its jurisdiction and the integrity of the proceedings before it. See *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

**PRAYER FOR RELIEF**

In light of these compelling factors, Plaintiff Christina Taft respectfully requests that this Court grant her Emergency Motion for a Preliminary Injunction to prevent further harassment and intimidation by the Defendants, ensuring her right to pursue justice is protected. The Preliminary Injunction will ensure compliance with the law and protect the rights of all parties involved.

Dated: October 24, 2024

_____

Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com

**DECLARATION OF WITNESS**

I, CHRISTINA TAFT, Plaintiff to this action, am attaching a declaration from Mike McCormick who has firsthand knowledge of the events and can support my claims. Per the witnesses attached Declaration, you will see the potential harm Defendants can cause and the extreme measures they have taken in the past to cause such harm. *(See Exhibit A, a true and correct copy of Mike McCormicks Declaration).*

Dated: October 24, 2024

_____

Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com

PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION - 23

## PROOF OF SERVICE

On the date set forth below, I served the foregoing document described as:

    **1.**  PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

    **2.**  [PROPOSED] ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION FOR

        PRELIMINARY INJUNCTION

BY NOT MORE THAN 30 DAYS; via Mail and Email, Local Rules, (L.R. 5-3), on the

interested parties in this action as follows:

MELISSA Y. LERNER<br>
Attorneys for Defendant PAUL BARRESI

**By Mail:**

MELISSA Y. LERNER
LAVELY & SINGER PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
2049 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CALIFORNIA 90067-2906

**By Electronic Service:**

mlerner@lavelysinger.com

[**X**] BY FEDERAL EXPRESS: I am "readily familiar" with the practice of collection and processing correspondence for Federal Express. Under that practice it would be deposited with Federal Express on that same day with all costs fully prepaid in the United States, in the ordinary course of business.

[**X**] ELECTRONIC SERVICE:  I served the on the parties listed via electronic service in accordance with the applicable rules (Local Rule 5-3).

Dated: October 24, 2024

                             _____

                             Lucy Hana

# EXHIBIT A

## DECLARATION OF MIKE MCCORMICK

**STATE OF CALIFORNIA** )
                   ) SS:
**COUNTY OF LOS ANGELES** )

Mike McCormick, being duly sworn, deposes and says:

I am a Witness in the matters of Case 5:24-cv-01930-TJH-DTB (Taft v. Paul Barresi, Adam R. Waldman, and Does 1-10), currently pending in the U.S. District Court of the Central District of California.

I am above the age of 18 and reside in California. At the time of these events, I resided in California. The facts stated in this affidavit are true and correct to the best of my knowledge and belief.

I have personal knowledge of the facts stated herein, except for those stated upon information and belief, and as to those, I believe them to be true.

### Events

I am a licensed retired LAPD private investigator in California. On March 13th, 2022, Ms. Taft inquired to me about looking up an old friend of socialite Michelle Diamond's named Richard Bren, son of billionaire real-estate developer Donald Bren, so they could re-connect. Ms. Diamond was a friend of Plaintiff's mother Victoria Taft.

On June 16th, 2022, Plaintiff Taft requested that I be her private investigator related to witnesses being harmed as she was alarmed to. Plaintiff was afraid that witnesses could be harmed or disappear for giving information to Taft that revealed Barresi's activities to suppress witness testimony. I reached out to several witnesses to let them know they had help if they needed it and could speak.

I spoke with Witness of Viper Room Mr. Albertini and Defendant Barresi. Mr. Albertini wanted to testify and told my client Ms. Taft that he wanted to testify against Depp. Mr. Albertini stated that Barresi confessed to him to have killed Shalimar Seuli. Shalimar fell off a roof to her death. I asked my client where Barresi was in the 24 hours before and the 24 hours after death. Barresi did not appear to deny doing this from my observations and information over years.

I confirm that I approved of reporting to the Bureau of Security and Investigative Services and to the FBI after I observed witness interference. I observed that witnesses reported to the FBI and advised my client Taft.

PAGE **1** OF **4**

I confirm that Barresi sent me over 30 emails and documents of his. He had called and texted me repeatedly for over a period of 2 years. Mr. Barresi stated he would record me as well when I asked him for consent to record him.

Barresi has left repeated aggressive voicemails, texts, phone calls and harassment to me, including about my former client Taft and other Witnesses for 2 years. The last one was September 30, 2024, that my former client informed me was after process service of him of Lawsuit with Actions including obstruction of justice, and restraining order requests.

I am intimidated and threatened by Barresi for attempting to help witnesses, Plaintiff Taft, and former clients of Barresi's who he exploits. I am intimidated by him constantly, in an attempt to get me to not report him. Mr. Barresi intimidates me by stating that my client ever had me as a private investigator and manipulates financial transactions, when in actuality all my witnesses and my client were afraid for their lives.

In the last aggressive voicemail, Mr. Barresi cursed me several times stating "that PI Juan Brooks," and claimed that there "could have been a soft landing." In context to what I have personal knowledge of, observed, and information of. This is a direct threat to me, a threat to other private investigators, a threat to witnesses, and to my former client, Plaintiff Ms. Taft.

From my ongoing observations, Mr. Barresi will not stop even when he is reported to authorities, or in the interest of investigation, including from the FBI.

Based on my personal knowledge and observations, the nature of Defendants is extreme. I have observed:

➢ I observed Witness Interference by interviewing witnesses and in documentation.
➢ I have knowledge of witnesses with ongoing threats and harassment made to them by Defendants.
➢ I observed Albertinti was originally listed as a cooperating witness and I have possession of Interview of Albertini from 2019 from Barresi on June 4, 2022.
➢ I personally communicated with Richie and was given witness names and timelines.
  Chris Stanco, Bruce Corkum, Peter Nichols, Cathy Duncan, Stacy Lopez, Donna, and Big Ed Shaw, were a few of the over 20 names I observed given to me which were related to the Viper Room and with information they could testify about.
➢ I have knowledge that Barresi used a recording to coerce Richie and Big Ed Shaw.
➢ I have knowledge of how Barresi contacted witness Daniel Brummit over a phone call, attempted to corruptly persuade him and intimidated him and his son.
➢ In 2022, I observed and have knowledge of emails, texts of Paul Barresi and Adam Waldman in

PAGE **2** OF **4**

correspondence and conspiring to suppress witness testimonies and they were sent to Mario Nitrini.

➢ I have knowledge that Mario Nitrini has information regarding Barresi and Waldman correspondence, what Barresi sent about potential witnesses to the law firm Brown George Ross LLP that requested Barresi to obtain witnesses, about Joshua, and what Barresi sent Nitrini against or about Elon Musk and security person Gavin Debecker.

➢ I observed and have personal knowledge that witnesses were intimidated, including but not limited to Richie, Mario Nitrini, and myself, and crimes that I witnessed were enacted by Defendants.

➢ I observed Adam Waldman approve witness interference to gain unscrupulous advantage on intent, with break-ins and vandalism against Witnesses on a phone call with Paul Barresi. I have personal knowledge of this since September 2022.

➢ I observed Paul Barresi and Adam Waldman locating people. I have knowledge that witness Rebecca Berry was told by Barresi defendants use to refocus threat vandalism and break-ins perpetuated on witnesses to alter the intent as being by their opponents.

➢ I have information of Barresi's text to witness Richard Albertini, " I still got that taped conversation of you and Big Ed. The one where you do your damnest to try and get him to say horrible lies about Johnny Depp. Hmmm, I wonder what I should do with it you fucking moron." He also threatened the witness when he indicated earlier "if I hadn't done her in, someone else would have."

➢ I received emails from Barresi, including on the, to my belief, likely murdered Anthony Fox, former co-owner of the Viper Room.

➢ I have personal knowledge that Barresi is dangerous to potential witness Amber Heard and other former clients including as potential witnesses that could report him to authorities or testify. He named multiple former client potential witnesses in emails.

➢ I observed that Rocky Brook's case was impacted, including witnesses from the Viper Room and listed witness Heard no longer being available to testify.

➢ In my observation, Barresi audio records and can exploit his phone calls with attorneys, former clients, and potential witnesses that may want to report him.

➢ I observed Mr. Barresi had his license nearly immediately revoked by the California Attorney General 10 years ago and is not supposed to be doing unauthorized lookups.

➢ Barresi is dangerous and needs to be restrained. In my knowledge I have seen his aggression for years and it is serious by nature.

I attest that lines 78, 79 80, 95, 113, 114, 115, 116, 117, 118, and 119 of the lawsuit of Plaintiff Taft are true and correct.

I have additional knowledge and information I can declare and attest to, inclusive of defendants ongoing activities. I assert that I can provide said evidence to the facts stated above.

PAGE 3 OF 4

1

2

3

4   I, Mike McCormick, as a declaring witness to testify if so called upon, do hereby declare under penalty of perjury

5   that the information provided herein is true and accurate to the best of my knowledge. This declaration has been

6   verified and is made in good faith.

7   DATED this 24 day of Oct , 2024.

8   Signed: _____

9   Name:  Mike McCormick

10

11

12   SUBSCRIBED and SWORN to before me
    this _____ of _____ , 2024.

13

14   _____

15   NOTARY PUBLIC in and for said State,
    in the United States of America

16

17   OFFICIAL SEAL

18

19

20

21

22

23

24

25

26

27

28
                                    PAGE 4 OF 4

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_

Subscribed and sworn to (or affirmed) before me on this _24th_ day of _October_ , 20_24_ , by _Mike McCormick_

_____,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

MATHEW CRES SAN JOSE
Notary Public - California
Los Angeles County
Commission # 2500056
My Comm. Expires Sep 17, 2028

(Seal)                    Signature_____

# EXHIBIT B



Christina Taft <taftchristina.ceo@gmail.com>

---

**Taft v. Barresi, et al. (Case No. 5:24-cv-01930)**

---

**Melissa Lerner** <mlerner@lavelysinger.com>                                    Wed, Oct 16, 2024 at 4:40 PM
To: Christina Taft <taftchristina.ceo@gmail.com>, Lucy Hanna <legalstructureconsulting@gmail.com>, Mel Sue H
<melodyesue@gmail.com>
Cc: "ceo.taft@rescue-social.com" <ceo.taft@rescue-social.com>, "taft.christina@yahoo.com" <taft.christina@yahoo.com>,
Roya Hassas <rhassas@lavelysinger.com>

Hi Ms. Taft,


Thank you. The signature is valid and I appreciate you getting it back to me so promptly. I will add my signature and my office will
file the stipulation tomorrow. I will put a service copy in the mail to your address in Hawaii and you should receive an automatic
notice from the Court filing system when it is filed. We will also send a courtesy copy via email, copying your legal consultants.


Now that I have been retained by Mr. Barresi all correspondence related to this matter will be from me or someone else in my office at
my direction.


When you have a chance, please let me know some potential dates and times next week when you (and your legal consultants if you
would like them to participate) are available for a call or Zoom.

[Quoted text hidden]

# EXHIBIT C





# EXHIBIT D

