

FILED

CLERK, U.S. DISTRICT COURT

11/06/2024

CENTRAL DISTRICT OF CALIFORNIA

BY _____AP_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

CHRISTINA TAFT

          PLAINTIFF,

VS.

PAUL BARRESI, ADAM R WALDMAN, AND DOES 1-10, INCLUSIVE,

          DEFENDANTS.

Case No.: 5:24-cv-01930-TJH-DTB

[Hon. Terry J. Hatter, Jr.]

**Per L.R. 7-5, Brief with Memorandum in Support of Plaintiff's Motion to Amend Complaint and Continued Injunction Requests With Points and Authorities**

1
2

# TABLE OF CONTENTS

**I. Factual Background**………………………………………..………2

Original Filing………………………………………………………2

Category…………………………………………………….....2

Witness Declarations……………………………………………2

Witnesses to Urgency of Violations and Predicate Acts……………………...2

- Witness Tampering and Obstruction of Justice…………………………….. 2
- Destruction, Alteration, or Falsification of Records …………………………3
- Interstate Communications…………………………………………3
- Anti-Racketeering Elements (Civil RICO Act)………………………..……3


Mike McCormick's Declaration ………………………………………...……3

- Witness Interference…………………………………………………3
- Coercion and Intimidation…………………………………………...………3
- Intimidation of Witnesses and Individuals Perceived as Opponents……………………………………………………4
- Threatening Communications ……………………………………………4
- Dangerous Conduct……………………………………………………4
- Impact on Cases………………………………………………...……4
- Exploitation of Records…………………………..…………………………4


Key Witnesses and Plaintiff Needing Urgent Protections…………………………5

Michael Kountz's Declaration……………………………………………5

Coercion, Fear of Reprisal and Manipulation……………………………………… 6

**II. Legal Standard**………………………………………...……6-7

**III. Arguments Supporting Amendment** ……………………………………7

Timeliness of Motion…………………………………………………7

Judicial Efficiency…………………………………………………7

28

Rule 15(a)(2) combined with FRCP 1 and FRCP 8……………………………..7-8

Adequate Notice and Clarification of Claims………………………………....………8

Lack of Prior Amendments………………………………………………….…………8

Local Rules Favor Substantive Adjudication……………………………………8-9

Federal Protection of Fundamental Rights…………………………………………9

Systematic Pattern of Violations………………………………………………...9

Detailed Constitutional Deprivations………………………………………………9

Denial of Access to Justice…………………………………………………...9

Witness Protection and Justice……………………………………………9-10

Due Process Violations § 1983……………………………………………10

Rule 8(a)...............................................................................10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)……………………….....10

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...............................................10

**Amendments Pertaining to Civil Rights and RICO Claims**………..………10

Consolidation Arguments of Actions in Violations of Civil Rights Act…………10

Civil Rights Violations Under 42 U.S.C. § 1983…………………………...…10-11

- Civil Action for Deprivation of Rights (42 U.S.C. § 1983 & 18 U.S.C. § 242………………………………………………………………10-11

Claims of Systematic Rights Violations……………………………………..…11

Protection of Rights to Petition the Government…………………………………11

The Civil Rights Act under § 1983……………………………………………11-12

Substantiation of Due Process Violations………………………………….…12

Civil Conspiracy to Commit Torts…………………………………………12-13

**Consolidation Arguments of Predicate Acts in Furtherance of Racketeering**.................................................................................. 13
- Witness and Victim Tampering (18 U.S.C. § 1512) …………..………..13
- Destruction, Alteration, or Falsification of Records (18 U.S.C. § 1519)…………………………………………………………..…13
- Interstate Communications Threats (18 U.S.C. § 875) …………….……. 13
- Interstate Travel in Aid of Racketeering (18 U.S.C. § 1952) ………..…….13

Systematic Witness Intimidation and Obstruction of Justice……………….…..14
- RICO violation under 18 U.S.C. § 1961(5)…………………….……..14
Interference and Manipulation of Key Evidence……………………..……...14
Pattern of Racketeering Activity Demonstrating Continuity and Relatedness……15
Multiple Victims, Relationship and Continuity of Acts……………..……. 15-16
- Coercion Law of New York *(Penal Law Section 135.60-65)* …………15-16

Infringement of Civil Rights and Denial of Equal Protection……………,,,…..16
Private Right of Action Under RICO (18 U.S.C. § 1964).....,,,,,,,,,,,,,,,,,,,......16-17
Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003)…………17
Importance of Defining Elements of Racketeering ……….,…………,,,,,,,,……17
Judicial Responsibility to Protect Interstate Commerce ………………..…17-18

**Arguments for Amendments in Support of Interest of Justice** ……………18
Nature of the Conduct and Criminal Behavior…………………………………18
Consistency in Participants and Victims………………………………….18-19
Integrity of the Judicial Process with Witness Statements…………………….19
- *271 F.3d 1180 (9th Cir. 2001)*……………………………………….19
Judicial Responsibility to Address Threats…………………………….19-20
Ongoing Activities and Deterrence of Future Criminal Conduct …………….....20
Judicial Responsibility to Protect the Process…………………………….20-21

**CONCLUSION**………………………………………………………...………21

Grounds for Granting Leave to Amend………………………………….………21
- Alignment with Federal Rule of Civil Procedure 15(a)(2)..........................21
- Promotion of Justice Through Amendment …………………………….…21

Legal Justifications Supporting Amendment…………………………………..………21
- Judicial Discretion in Favor of Amendment ………………………………21
- Clarification and Consistency of Claims …………………………………22
- Sufficiency of Civil Rights Claims Under 42 U.S.C. § 1983 ……….…...22

Public Policy Supporting Civil Rights and Anti-Racketeering Enforcement……...22
- Advancing Judicial Economy and Preventing Fragmentation of Claims ….22
- Ensuring Equitable Treatment and Avoiding Procedural Prejudice……22-23

Fulfillment of Pleading Standards Under Rule 8(a)………………………………23
- Plausibility and Specificity Requirements for Federal Claims ……………23
- Judicial Efficiency through Consolidation of Claims ……………………23
- Timeliness and Lack of Undue Delay …………………….……………23
- Absence of Prejudice to Defendants ……………………………...….23-24
- Proper Articulation of Legal Theories and Factual Bases …………….…24

Federal Rule of Civil Procedure 15(a) – Amendments Before Trial……..………24
Federal Rule of Civil Procedure 8(a) – General Rules of Pleading………………24
Civil Rights and Elective Franchise Jurisdiction…………………………………24
Protection of Court Access………………………………………………………24
Conley v. Gibson, 355 U.S. 41 (1957)..................................................................... 25
Prayer for Relief…………………………………………………………...…25

1
2
3
4

## STATUTES AND AUTHORITIES

Federal Rule of Civil Procedure 15(a)(2)……………………………………1, 6, 7, 8, 21

Rule 1 of the Federal Rules of Civil Procedure…………………………………………7

Civil Rights Act (42 U.S.C. § 1983)…………………10, 11, 12, 13,16, 22, 23, 24

18 U.S.C. § 1512(b)(1) and (2)

- Initial Discussion …………………………………………………………………2, 3
- Key Analysis on Predicate Acts…………………………...….…… 13–15

18 U.S.C. § 1519……………………………………………………3, 13, 14, 16

18 U.S.C. § 1952…………………………………………………….…3, 13

Civil RICO Act………………………………………………...…1, 3, 17, 22

18 U.S.C. § 1961…………………………1, 3, 10, 12, 13, 14, 15, 17, 22

18 U.S.C. § 1962………………………………………...3, 7, 10, 13, 15, 21

FRCP 8………………………………………………………...……7

Rule 8(e)…………………………………………………………8

Rule 8(a)……………………………………………...…………10, 23, 24

42 U.S.C. § 1983 and RICO……………………………………………10

18 U.S.C. § 1961–1962……………………………………….…10, 13

28

PER L.R. 7-5, BRIEF WITH MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CONTINUED INJUNCTION REQUESTS WITH POINTS AND AUTHORITIES - 6

18 U.S.C. § 242…………………………………………………..…………10, 11

California Civil Code § 1714……………………………………………....12

CIVIL RICO 18 U.S.C. § 1961(1)………………………………………..……13

18 U.S.C. § 1503

- Primary Discussion………………………………………………....13
- Related Analysis………………………………………………… 14, 15

18 U.S.C. § 1512 (witness tampering)…………………………………2, 13, 14, 19

18 U.S.C. § 1519 (alterations of records)…………………………... 3, 13, 14, 16

RICO provisions under 18 U.S.C. § 1961–1962…………………………………13

Rule 37(e) of the Federal Rules of Civil Procedure………………………………14

18 U.S.C. § 1964………………………………………………….………16

18 U.S.C. § 1962(c)………………………………………………………15

28 U.S.C. § 1343………………………………………………………24

18 U.S.C. § 875……………………………………………...……13, 15, 16

New York Penal Law Section 135.60-65…………………………………………15

1
2
3

# TABLE OF AUTHORITIES

Albright v. Oliver, 510 U.S. 266 (1994)……………………………….……..9

Amerisource Bergen Corp. v. Dialysist W., Inc., 465 F.3d 946 (9th Cir. 2006)….25

Anderson v. Deere & Co., 852 F.2d 1244 (10th Cir. 1988) ……………..…….8

Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994)…...12

Arthur Andersen LLP v. United States, 544 U.S. 696 (2005) …………..……... 13

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ……………………………….…….10, 23

Beck v. Prupis, 529 U.S. 494 (2000) ………………………………………...15

Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537 (8th Cir. 1977) ……….…….7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) …………………….…..23

Bonin v. Calderon, 59 F.3d 815 (9th Cir. 1995) ………………………….…..10, 21

Bounds v. Smith, 430 U.S. 817, 821 (1977) …………………….……..11, 24

Boyle v. United States, 556 U.S. 938 (2009) …………………………..…….18

Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999) ……………….…….23

Busch v. Gorry, Meyer & Rudd LLP, B260081 (Cal. Ct. App. Dec. 18, 2015)….15

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001) ……………...19

Conley v. Gibson, 355 U.S. 41 (1957) ……………………………………...24

Cox v. Louisiana, 379 U.S. 559 (1965) …………………………………..22

DCD Programs, Ltd. v. Leighton, 833 F.2d 183 (1987) ………………...…..7, 21

Desertrain v. City of Los Angeles, 754 F.3d 1147 (9th Cir. 2014) ………...…..11

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ….6, 17, 22

Foman v. Davis, 371 U.S. 178 (1962) …………………………………..7, 13, 21

Griggs v. Pace American Group, Inc., 170 F.3d 877 (9th Cir. 1999) ………..7, 9, 18

Hardin v. Straub, 490 U.S. 536, 541 (1989) ……………………………..….23

Harris v. City of Seattle, 315 F. Supp. 2d 1112 (W.D. Wash. 2004) …….………17

Heng v. Heitman, 698 F. App'x 332, 333 (9th Cir. 2017) ………………………..23

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989) ……….…...13, 14, 17

Howey v. United States, 481 F.2d 1187 (9th Cir. 1973) …………………………..8

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) ………………..…….10

Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1292
(9th Cir. 1983) …………………………………………………………..…….22

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) …………………………..12

Monell v. Department of Social Services, 436 U.S. 658 (1978) ………....11, 16, 22

Monroe v. Pape, 365 U.S. 167 (1961) …………………………………..…..12

Morongo Band of Mission Indians v. Rose, 893 F.2d 1074 (9th Cir. 1990)……….8

Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978) …………………..19

Owens v. Kaiser Found Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001) …..…6, 21

People of the State of California, vs. Confidential, Inc., Hollywood Research, Inc.,
et al…………………..…………………………………………………..…….25

Rewis v. United States, 401 U.S. 808 (1971) ……………………………..…….13

Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983) ………………………..……….9

Schmuck v. United States, 489 U.S. 705 (1989) ………………………..…….20

Screws v. United States, 325 U.S. 91 (1945) ……………………………….....10

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) …………….....……15, 16, 17

Sussman v. ABC, Inc., 186 F.3d 1200, 1202–03 (9th Cir. 1999) ………………..4

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ………………………..22

United States v. Aguilar, 515 U.S. 593 (1995) …………………………..14

United States v. AT&T Inc., Civil Case No. 17-2511 (RJL) (D.D.C. Jun. 12,
2018)………………………… ………………………………………………..15

United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) ……………..………15

PER L.R. 7-5, BRIEF WITH MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND
COMPLAINT AND CONTINUED INJUNCTION REQUESTS WITH POINTS AND AUTHORITIES - 9

United States v. Kelner, 534 F.2d 1020 (2d Cir. 1976) …………………………..13

United States v. McCarthy, 271 F.3d 1180 (9th Cir. 2001) ………...……...9, 19, 21

United States v. Schultz, 333 F.3d 1155 (9th Cir. 2003) ………...……...16, 17, 20

United States v. Turkette, 452 U.S. 576 (1981) …………………………...……..19

United States v. Yates, 574 U.S. 528 (2015) …………………………….…..2

Village of Willowbrook v. Olech, 528 U.S. 562 (2000) …………………………..9

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971)………...……8

1

Christina Taft
Plaintiff in Propria Persona
2     1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
3     Phone: 0623441766
Ceo.Taft@Rescue-Social.com

4

5                    UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
6

7
CHRISTINA TAFT                          Case No.: 5:24-cv-01930-TJH-DTB
8
PLAINTIFF,                   [Hon. Terry J. Hatter, Jr.]
9
Hearing Date:
10    VS.

11                                            **PLAINTIFF'S MOTION TO**
PAUL BARRESI, ADAM R              **AMEND COMPLAINT AND**
12                                            **CONTINUED INJUNCTION**
WALDMAN, AND DOES 1-10,           **REQUESTS**
13
INCLUSIVE,
14

15
DEFENDANTS.
16

17            **PLAINTIFF'S MOTION TO AMEND COMPLAINT**
**AND CONTINUED INJUNCTION REQUESTS**
18

19
Plaintiff, CHRISTINA TAFT, pursuant to Rule 15(a)(2) of the Federal Rules
20
of Civil Procedure, respectfully moves this Court for leave to amend the complaint
21
against Defendants Paul Barresi and Adam Waldman, to seek and to clarify and
22
consolidate Plaintiff's claims, including multiple federal violations related to
23
Obstruction of Justice and Witness Interference under the Civil Rights Act (42
24   U.S.C. § 1983), and as Predicate Acts under the Civil RICO Act (18 U.S.C. §
1961-1968). The amendment will categorize these violations, provide factual and
25
legal support for each, and present a concise narrative of unlawful conduct
26
infringing on Plaintiff's rights. Additionally, Plaintiff's Declarations and
27
Witnesses, pursuant to L.R. 7-6, attached hereto, support the issuance of
28
Injunctions for restraining orders against both Defendants. Plaintiff respectfully

PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CONTINUED INJUNCTION REQUESTS - 1

requests that the Court grant this motion to ensure the comprehensive and accurate presentation of the claims in the "interest of justice."

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 5th. Plaintiff provided notice for consent to amend, Rule 15, on October 31st-November 2nd to Defendant Barresi's counsel of Lavely & Singer, Melissa Lerner. On November 5th, 2024, Ms. Lerner responded. Plaintiff provided consolidation and federal local rules, therefore Plaintiff moves this Court to file this on the proper date of November 6th, 2024.

# I. FACTUAL BACKGROUND

**1. Original Filing:** Plaintiff filed the original complaint against Defendants Paul Barresi and Adam Waldman, for witness tampering, intimidation, civil rights violations, and racketeering activities. The complaint outlined several instances of interstate criminal conduct aimed at obstructing justice and harming Plaintiff.

**2. Category:** The judge classified the complaint under the Civil Rights Act (42 U.S.C. § 1983), which provides a civil remedy for rights violations by those acting under "color of law," including corrupt attempts to coerce witnesses, victims, and informants for exploitative gain.

**3. Witness Declarations:** Since filing the original complaint, Plaintiff has obtained witness declarations that corroborate the claims, adding credibility to the allegations against Defendants. In *United States v. Yates, 574 U.S. 528 (2015),* the Court affirmed that witness testimony can support an amendment. Declarations from multiple victims show a pattern of ongoing civil rights violations and racketeering activity, strengthening Plaintiff's case.

**4. Witnesses to Urgency of Violations and Predicate Acts:** Attached hereto are witness declarations from three licensed private investigators and witnesses detailing elements of continuing violations of rights and predicate acts, with urgency for restraining orders, related to the defendants, including:

> **Witness Tampering and Obstruction of Justice:** As per 18 U.S.C. § 1512(b)(1) and (2), the defendants have engaged in actions designed to intimidate, threaten, and corruptly persuade witnesses, thereby obstructing justice. Defendant's actions were calculated and targeted, and are ongoing.

**Destruction, Alteration, or Falsification of Records:** The evidence indicates a clear violation of 18 U.S.C. § 1519, involving the alteration of records pertinent. Objects, including audio recordings and written records, were altered by Defendants to change the nature of these objects when related to witnesses, coerced to withhold and/or change their testimonies. This obstruction by Defendants was to alter investigations and justice, including by federal authorities, that Defendants purported more access to.

**Interstate Communications:** The actions of the Defendants fall within the purview of racketeering as outlined in 18 U.S.C. § 1952, involving interstate threats and activities, conducted in aid of racketeering enterprises.

**Anti-Racketeering Elements (Civil RICO Act):** The Plaintiff asserts claims under the Civil RICO Act, as specified in 18 U.S.C. § 1961 and 18 U.S.C. § 1962, based on the racketeering activities identified in this case.

**5. Mike McCormick's Declaration** (*See Exhibit A, a true and correct copy of said Declaration, attached to herein*): In a Declaration of a Witness from retired LAPD licensed private investigator Mike McCormick, relevant facts as to activities involved:

**Witness Interference:** Witness has observed witness interference through interviews and documentation, with knowledge of ongoing threats and harassment directed at witnesses by the defendants.

Witness declares he possesses an interview conducted with Albertini by Barresi on June 4, 2022, from 2019, that is relevant and pertinent information relating to this Case. Witness declares he personally communicated with Richie, who provided names of witnesses and timelines pertinent to the case. Notable names include Chris Stanco, Bruce Corkum, Peter Nichols, Cathy Duncan, Stacy Lopez, Donna, and Big Ed Shaw—over 20 individuals related to the Viper Room who could provide critical testimony.

**Coercion and Intimidation:** Witness knows that Barresi used a recording to coerce Richie and Big Ed Shaw, and also contacted Daniel Brummit to intimidate him and his son. In 2022, witnesses observed Barresi and Adam Waldman conspiring to suppress testimonies. Additionally, Mario Nitrini has correspondence between Barresi and Waldman obstructing witness requests for the Browne George Ross LLP former client's defense and current law firms of victims.

**Intimidation of Witnesses and Individuals Perceived as Opponents:** Witness has firsthand knowledge of intimidation against himself, Richie, and Mario Nitrini by Barresi. Barresi threatened Nitrini with a "rat" photo and a statement to "shoot a photo of that face." Witness observed crimes by the defendants, including Adam Waldman approving tactics of leveraging break-ins and vandalism to gain an advantage. He also saw Barresi and Waldman targeting individuals to intimidate. Witness Rebecca Berry was pressured by Barresi, who implied threats and vandalism would be redirected to make it seem like the work of their opponents.

**Threatening Communications:** Witness details how Barresi threatened Richard Albertini via text, saying, "I still have that taped conversation of you and Big Ed," intending to use it for coercion. Barresi also made violent threats, stating, "if I hadn't done her in, someone else would have." Barresi has repeatedly intimidated Plaintiff Taft with tapes, linking her through her mother to a mob murder, as witnessed by PI Kountz and Adam Waldman. The elements of coercive use and exploitation of these recordings demonstrates torts and illegal actions by Defendants as their purpose, fulfilling *Sussman v. ABC, Inc., 186 F.3d 1200, 1202–03 (9th Cir. 1999).*

**Dangerous Conduct:** Witness has personally received emails from Barresi, including references to Anthony Fox, a former co-owner of the Viper Room, who is believed to have been murdered. Audio recordings exploitation and timings of at least one financial transaction with federal authority interest, as observed by former Diplomatic Security Specialist Juan Brooks, and suppression of witness testimony stating Paul Schindler is the likely killer of Mr. Fox, shows this is part of the conspiracy of Defendants to eliminate anyone, including Plaintiff, in their path. Barresi is a known danger to potential witnesses, including Amber Heard, and has identified several former clients as potential witnesses in his communications.

**Impact on Cases:** Witness has observed that Barresi's actions have negatively impacted cases like Rocky Brook's, including the unavailability of witnesses from the Viper Room, such as Heard.

**Exploitation of Records:** Witness indicates that Barresi has been known to audio record and exploit phone calls with attorneys, former clients, and potential witnesses who may wish to report him. Defendant Adam Waldman "Consigliere" has enhanced, directed, and rewarded "Bagman" Barresi for his actions to benefit principle Depp, knowing that his license was nearly immediately revoked by the attorney general and that he can cause death to potential witnesses.

**6.  Key Witnesses and Plaintiff Needing Urgent Protections:** Key witnesses will declare after multiple Licensed Private Investigators McCormick, who communicated with a key witness and Plaintiff, and Kountz attest that intimidation, threats, and corrupt persuasion is continuing to this day.

One key witness who Plaintiff verified, Richard Albertini, a continuing target by Defendants, provides detailed testimony regarding their observations of Johnny Depp's abusive behavior, including assaults on both men and women, particularly at the Viper Room nightclub. The witness identifies over 20 potential witnesses connected to the Viper Room. They also detail how Defendants Paul Barresi and Adam Waldman used intimidation, coercion, and similar tactics to blackmail, including audio recordings, to prevent witness testimony and communication of witnesses. The witness recounts being intimidated by Barresi, including threats to their life, and describes Barresi's involvement in criminal activities, including exploitation to portray to potential witnesses he is a hitman and/or a murderer.

The witness further describes their knowledge of various violent incidents involving Johnny Depp, including the abuse of women and threats against others, such as Paul Schindler's violent actions and connections to Depp. He mentions his involvement as a cooperating witness for Amber Heard's legal case, including a history of being pressured to retract statements. The witness also describes Barresi's ongoing attempts to intimidate them and Plaintiff Taft, including death threats and attempts to manipulate their testimony. Throughout, the witness expresses fear for their own safety and that of others involved, including Taft and Heard. The witness also recounts their willingness to testify in other cases involving Depp's abuse, despite continued intimidation.

In summary, the witness's statement outlines a pattern of abuse, intimidation, and corruption by Depp and his associates, with specific details of threats, coercion, and efforts to suppress testimony against him.  Witnesses indicate given their knowledge of Barresi's long-standing aggression and dangerous behavior, he asserts that he poses a significant threat and requires restraining measures.

**7.  Michael Kountz's Declaration** *(See Exhibit B, a true and correct copy of said Declaration, attached to herein)***:**  In a Declaration of a Witness from a licensed private investigator from New Mexico.

PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CONTINUED INJUNCTION REQUESTS - 5

**Coercion, Fear of Reprisal and Manipulation:** Barresi recorded a phone conversation with James Conner without his consent, edited the audio to distort its content, and used it to threaten claims about Taft. Taft was subjected to ongoing harassment and threats, coercive tactics, and alarming messages. Defendant Barresi referenced mafia connections and death threats. Conner feared for his life due to Barresi's aggressive behavior.

Kountz reviewed the audio tape done by Paul Barresi of purportedly James Conner, are alterations that he was an FBI agent and that her mother Victoria Taft had witnessed a mob murder by the Gottis. Conner advised me he was never an FBI agent. The tape showed images of a man dead allegedly from the mafia, members of the mafia, and a gun. In the beginning of the tape, Barresi discussed a photo of Amber Heard with Plaintiff Taft to James Conner, that they were arm in arm, yet at the same time indicating danger to life through comparing to an assailant. I have information that Plaintiff is still fearful to this day that this audio tape is either to make someone shoot her or to shoot Amber. Or that a death could occur. I have information that Defendant Barresi acted aggressively to terrify Taft and others contained in the content of the audio tape.

Kountz witnessed Barresi continuously send threatening correspondence to Taft, including explicit and disturbing content which was harassing, and included invoking individuals associated with organized crime, and made references to people connected to her alleged family in a manner intended to intimidate or manipulate. Barresi sent more threatening messages, including disturbing emails about Taft's family, and attempts to interfere with her relationships or threaten further, in attachment to Defendant Adam Waldman.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave to amend when justice so requires." The Ninth Circuit has emphasized this policy of liberal amendment in cases such as *Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003),* and *Owens v. Kaiser Found Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001),* which affirm that amendments should be allowed to address legal deficiencies and promote a comprehensive evaluation of the case's merits. The Ninth Circuit has further stated that minor procedural issues or delays should not prevent an amendment when it enables a more complete hearing of the facts.

This amendment will improve judicial efficiency by presenting all of Plaintiff's factual and legal contentions in one proceeding, promoting a fair and thorough adjudication. It aligns with Rule 1 of the Federal Rules of Civil Procedure, aiming for the "just, speedy, and inexpensive determination of every action."

The Supreme Court in *Foman v. Davis, 371 U.S. 178 (1962),* outlined factors for considering amendments, including undue delay, bad faith, failure to cure deficiencies, undue prejudice, and futility. The Ninth Circuit in *DCD Programs, Ltd. v. Leighton, 833 F.2d 183 (1987),* reinforced that amendments should be allowed to facilitate a full presentation of relevant facts, particularly when sought in good faith.

Plaintiff's motion to amend seeks to clarify and expand on the factual and legal bases of her claims, ensuring a complete and fair adjudication. For these reasons, Plaintiff respectfully requests that the Court grant the motion, allowing the case to proceed on a fully substantiated record.

## III.  ARGUMENTS SUPPORTING AMENDMENT

**1. Timeliness of Motion**: Plaintiff's motion to amend is timely, filed well within the limits established by the Court's scheduling order. No undue delay is present, as Plaintiff diligently sought this amendment upon discovering additional facts and evidence. *Foman v. Davis, 371 U.S. 178 (1962)* established that amendments should be "freely given" when justice requires, especially if filed timely without undue delay.

**2. Judicial Efficiency**: Granting leave to amend will consolidate related claims into one action, promoting judicial efficiency by allowing a single court to address interrelated legal and factual issues. *Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537 (8th Cir. 1977)* supports amending to allow all related claims to be adjudicated in one action, thereby avoiding piecemeal litigation. Consolidating Plaintiff's claims under one complaint will streamline court resources and promote efficiency. Allowing the amendment promotes judicial economy with one proceeding, avoiding piecemeal litigation. The principles in *Griggs v. Pace American Group, Inc., 170 F.3d 877 (9th Cir. 1999)*, support flexibility in the legal process.

**3. Rule 15(a)(2) combined with FRCP 1 and FRCP 8:** This rule emphasizes justice and efficiency. FRCP 1 calls for the "just, speedy, and inexpensive

determination" of actions, while Rule 15(a)(2) encourages amendments that align with these goals. Rule 8(e) further directs that pleadings be construed to "do substantial justice," reflecting the judiciary's preference for decisions based on merit. Together, these rules promote procedural flexibility to ensure a more thorough examination of issues.

**4. Adequate Notice and Clarification of Claims:** The original complaint gave Defendants fair notice of the conduct at issue. The proposed amendment clarifies, rather than alters, the Plaintiff's claims, ensuring precise and fair adjudication. As ruled in *Anderson v. Deere & Co., 852 F.2d 1244 (10th Cir. 1988)*, amendments that clarify existing claims are proper. The amendment does not prejudice Defendants and allows the case to proceed without disruption, as stated in *Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971)*. Defendants will have the opportunity to respond to the amended claims without disadvantage.

**5. Lack of Prior Amendments**: Plaintiff has not previously amended Plaintiff's complaint; thus, there is no history of repetitive or dilatory conduct in Plaintiff's pleadings. This case remains in its preliminary stages, further supporting amendment as appropriate.

**6. Local Rules Favor Substantive Adjudication**: The local rules and judicial standards prioritize adjudication on the merits. Allowing amendment aligns with this principle by providing Plaintiff the opportunity to fully articulate Plaintiff's claims.

Courts balance the policy favoring amendments against potential prejudice, delay, and judicial economy. The Ninth Circuit has held that minor inconveniences or additional litigation do not justify denying amendments. In *Howey v. United States, 481 F.2d 1187 (9th Cir. 1973)*, the court ruled that alleged prejudice must be significant, not just incidental. This principle supports Plaintiff's request, as the amendment seeks a merits-based review without undue harm to Defendants. Howey establishes that amendments should be allowed unless Defendants show substantial prejudice.

In *Morongo Band of Mission Indians v. Rose, 893 F.2d 1074 (9th Cir. 1990)*, the Ninth Circuit held that delay alone is not grounds to deny an amendment. The court emphasized that Rule 15(a)(2) encourages adjudication on the merits unless there is undue prejudice. Plaintiff's proposed amendment is timely, made in good faith, and aligns with the Federal Rules' goals. Rulings in Howey and Morongo

support a focus on equitable resolution over procedural barriers, ensuring a thorough examination of claims in the interests of justice.

**7. Federal Protection of Fundamental Rights**: Plaintiff's allegations concern fundamental rights that require federal intervention, making amendment essential for proper adjudication under federal standards. The amendment ensures that Plaintiff's constitutional claims are properly delineated, allowing the Court to address each violation with precision.

**8. Systematic Pattern of Violations**: Plaintiff demonstrates a systematic pattern of civil rights violations, indicating that these were not isolated incidents but part of a broader scheme. *Albright v. Oliver, 510 U.S. 266 (1994)* established that systematic constitutional violations could be grounds for federal claims. Plaintiff's complaint details a deliberate, coordinated scheme, evidencing a pattern of civil rights infringements.

**9. Detailed Constitutional Deprivations:** The amendment provides specific examples of constitutional deprivations suffered by Plaintiff, offering the Court a factual basis for each violation. *Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983)* recognized denial of access to courts as a constitutional violation. Plaintiff's amendment details efforts to obstruct Plaintiff's access to justice, constituting a significant First Amendment breach.

**10. Denial of Access to Justice:** Defendants' coordinated efforts to block Plaintiff's access to courts and law enforcement violate Plaintiff's fundamental right to petition for redress. The claimed intimidation tactics undermine the judicial process. In *Village of Willowbrook v. Olech, 528 U.S. 562 (2000)*, the Court ruled that intentional, arbitrary discrimination violates equal protection. Plaintiff shows ongoing discriminatory conduct as a violation of equal protection rights.

**11. Witness Protection and Justice**: The overarching theme in cases involving witness tampering and racketeering is the need to protect the integrity of witness testimony. The legal system must respond robustly to protect witnesses from intimidation, as emphasized *in U.S. v. McCarthy, 271 F.3d 1180 (9th Cir. 2001)*, which reinforced the importance of safeguarding witnesses. As established in *Griggs v. Pace American Group, Inc., 170 F.3d 877 (9th Cir. 1999)*, when new facts arise indicating the necessity for different legal treatment, it is crucial that courts act swiftly to amend complaints to ensure the case is appropriately classified. The ongoing threats and harassment against witnesses in this case

highlight the urgent need.

**12. Due Process Violations**: The amendment includes particularized due process violations under § 1983, with evidence of procedural misconduct by Defendants.

**13. Rule 8(a):** With compliance with Rule 8(a) Pleading Standards, Plaintiff's proposed amendment meets the requirements under Rule 8(a) of the Federal Rules of Civil Procedure, which mandates a "short and plain statement" of claims demonstrating entitlement to relief.

**14.** In *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007),* and *Ashcroft v. Iqbal, 556 U.S. 662 (2009),* The Supreme Court affirmed that pleadings must be plausible and sufficiently specific to allow defendants fair notice. Plaintiff's claims, presented with requisite clarity and support, satisfy these pleading standards, ensuring that Defendants are adequately informed of the claims and prepared for full adjudication on the merits.

<u>**Amendments Pertaining to Civil Rights and RICO Claims**</u>

Complex cases involving civil rights claims under 42 U.S.C. § 1983 and RICO claims under 18 U.S.C. § 1961–1962 highlight the importance of amendments for a full and fair review. Amendments often provide essential details of predicate acts that establish a pattern of racketeering. In *Bonin v. Calderon, 59 F.3d 815 (9th Cir. 1995),* the Ninth Circuit emphasized that amendments clarifying or adding facts are critical to fair adjudication. Similarly, in *Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004),* the Supreme Court affirmed that amendments help substantiate patterns of misconduct in cases involving systemic rights violations.

<u>**Consolidation Arguments of Actions in Violations of Civil Rights Act**</u>
<u>**Civil Rights Violations Under 42 U.S.C. § 1983**</u>

**1. 42 U.S.C. § 1983 – Civil Action for Deprivation of Rights (18 U.S.C. § 242):** Plaintiff claims that Defendants, acting under the apparent authority of law, intentionally misused their access to information and on potential witnesses which is meant for certified personnel with their influence, which then deprived her of rights protected by federal statutes, violating 18 U.S.C. § 242, which criminalizes willful rights deprivation under color of law. Citing *Screws v. United States, 325*

*U.S. 91 (1945),* Plaintiff argues that Defendants' actions, taken with malicious intent, unlawfully imposed legal and social burdens on her, infringing her due process and access to fair judicial proceedings. These allegations support her § 1983 claims for damages and relief.

Additionally, in *Desertrain v. City of Los Angeles, 754 F.3d 1147 (9th Cir. 2014),* the Ninth Circuit emphasized the importance of allowing amendments in civil rights cases to fully develop claims. This precedent supports Plaintiff's request to amend and ensures a comprehensive review of her civil rights allegations.

**2.     Claims of Systematic Rights Violations**: Plaintiff also raises claims under *Monell v. Department of Social Services, 436 U.S. 658 (1978),* which allows liability when official policies or customs lead to rights violations. Plaintiff argues that Defendants' systemic actions reflect a de facto policy of harassment, obstructing her legal claims and violating her rights. Desertrain supports allowing amendments to fully develop civil rights claims, reinforcing Plaintiff's request to amend and clarify her allegations of systemic rights violations for thorough adjudication.

**3.  Protection of Rights to Petition the Government**: The amendment addresses a significant infringement on the Plaintiff's First Amendment right to access the courts for redress of grievances, a right safeguarded under 42 U.S.C. § 1983. In *Bounds v. Smith, 430 U.S. 817, 821 (1977),* the Court confirmed that denial of meaningful access to the courts constitutes a violation of constitutional rights. This amendment explicitly details the interference experienced, thereby reinforcing the claims of the rights to report Defendants as endangering witnesses and potential witnesses to the Bureau of Security and Investigation Services, FBI, federal authorities, and police and clarifying the constitutional violations at issue.

**4.  The Civil Rights Act under § 1983**: This Act ensures accountability for abuses of governmental power, empowering citizens to protect themselves against unlawful conduct by individuals who misuse their "color" of access to governmental authority. This provision is central to claims where Defendants, wielding governmental influence or in connection with government entities, have violated Plaintiff's constitutional rights to due process, equal protection, and freedom of speech. Although Plaintiff contends the illegalities by Defendants, Plaintiff demonstrates the need to address civil rights violations. Defendants Barresi and Waldman are a dangerous combination. Witnesses and Plaintiff went to report to the police, FBI, and Bureau of Security and Investigation Services for

assistance from Defendants' tactics. Federal Informant Rauhauser informed client Taft and retired LAPD private investigator that Adam Waldman utilizes his associations with powerful actors, alternating between them, in interest of the government to effectively evade and influence authorities, making directions to not be witnesses against Depp truly threatening. Defendant Barresi claimed authorities would listen to him, making alterations of records, forcing withholding or changing of testimony of witnesses, and pressured that his "erstwhile" client, Plaintiff, and witnesses were subjects of the FBI. Meanwhile, Barresi held himself out to be akin to a mafia figure with associations to groups convicted of racketeering and his private interests for the "Hollywood Fixing" Depp enterprise, holding Plaintiff and witnesses with no escape. Taft protected herself and witnesses with private investigators, as well as reporting. By invoking § 1983, Plaintiff asserts that these Defendants, while acting under color of law, deprived Plaintiff of federally protected rights, thus justifying a federal cause of action. It allows a Plaintiff to seek redress against any person who, through the misuse of authority, infringes upon rights secured by the United States Constitution or federal law.

The definition of "under color of state law" within § 1983 was expanded with the landmark case *Monroe v. Pape, 365 U.S. 167 (1961)*. It clarified that actions to violate need not be expressly authorized by law to qualify; rather, any misuse of authority granted can suffice. Monroe v. Pape supports Plaintiff's assertion that Defendants' conduct, due to it being unauthorized, falls within § 1983 liability when it involved misused authority. Plaintiff thus establishes that Defendants acted under color of law in depriving Plaintiff's of constitutional rights.

**5. Substantiation of Due Process Violations:** The proposed amendments highlight specific due process violations, particularly the lack of fair procedures, constituting a denial of procedural due process under the Fourteenth Amendment. In *Mathews v. Eldridge, 424 U.S. 319, 333 (1976),* the Court emphasized that procedural due process requires fair safeguards. These amendments support the due process claims, aligning with constitutional protections.

**6. Civil Conspiracy to Commit Torts:** Plaintiff asserts a civil conspiracy claim based on Defendants' coordinated efforts to obstruct justice and violate her rights. Under California Civil Code § 1714, liability applies to conspiracies involving wrongful conduct. Defendants' actions to interfere with Plaintiff's rights and intimidate witnesses support this claim. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994)* affirms liability for joint actions with malicious intent. Plaintiff seeks joint and several liability for damages from Defendants'

unlawful acts.

## **Consolidation Arguments of Predicate Acts in Furtherance of Racketeering**

The amendment incorporates allegations under 42 U.S.C. § 1983, detailing Defendants' violations of Plaintiff's constitutionally protected rights through intimidation, coercion, and interference. To demonstrate a pattern of racketeering, the amendment further specifies predicate acts under CIVIL RICO 18 U.S.C. § 1961(1), including obstruction of justice (18 U.S.C. § 1503), witness and victim tampering (18 U.S.C. § 1512), Destruction, Alteration, or Falsification of Records (18 U.S.C. § 1519), Interstate Communications Threats (18 U.S.C. § 875), Interstate Travel in Aid of Racketeering (18 U.S.C. § 1952). These claims underscore the necessary continuity and connection between Defendants' actions, satisfying the standards for a pattern of racketeering activity as outlined in *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)*.

These revisions aim to provide greater specificity to Plaintiff's claims, ensuring the Court can fully evaluate the merits. *Arthur Andersen LLP v. United States, 544 U.S. 696 (2005),* highlights "corrupt persuasion" of witnesses, while *United States v. Kelner, 534 F.2d 1020 (2d Cir. 1976),* confirms that interstate threats are predicate acts. *Rewis v. United States, 401 U.S. 808 (1971)* establishes that interstate travel for an illegal enterprise is a predicate act.

These acts support a pattern of racketeering activity, as required by *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)*, which calls for continuity and relatedness in racketeering claims. *Foman v. Davis, 371 U.S. 178, 182 (1962),* affirms the liberal granting of amendments to fully substantiate claims, absent undue delay or prejudice.

Plaintiff asserts that Defendants have engaged in a coordinated campaign to obstruct justice through intimidation, coercion, and evidence tampering, violating federal statutes, including 18 U.S.C. § 1512 (witness tampering) and § 1519 (destruction of evidence), as well as RICO provisions under 18 U.S.C. § 1961– 1962. Plaintiff further claims violations of her constitutional rights under 42 U.S.C. § 1983, presenting a clear pattern of conduct aimed at thwarting her pursuit of justice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1. Systematic Witness Intimidation and Obstruction of Justice

Plaintiff contends that Defendants systematically harassed and intimidated witnesses through threats and coercion to suppress testimony, obstructing the fair adjudication of her claims. These actions violate 18 U.S.C. § 1512(b)(1), which criminalizes witness tampering, and 18 U.S.C. § 1503, which prohibits interference with judicial proceedings. Plaintiff claims these instances of intimidation, occurring over a prolonged period and involving multiple individuals, demonstrate continuity and specific intent—key elements of a RICO violation under 18 U.S.C. § 1961(5).

Plaintiff cites *U.S. v. Aguilar, 515 U.S. 593 (1995),* where the Supreme Court held that obstruction statutes cover acts intended to disrupt judicial proceedings with a clear link to justice. Plaintiff argues that Defendants' deliberate actions to discourage witness cooperation and obstruct court proceedings show a willful disregard for the integrity of the judicial process, supporting her claims for relief under both obstruction and RICO statutes.

## 2. Interference and Manipulation of Key Evidence

Plaintiff asserts that Defendants engaged in the destruction or manipulation of critical evidence material to her claims, thereby violating 18 U.S.C. § 1519, which criminalizes the intentional destruction, alteration, or falsification of records with the intent to obstruct investigations or judicial proceedings. Such actions not only hinder Plaintiff's ability to substantiate her claims but also implicate Rule 37(e) of the Federal Rules of Civil Procedure, which permits courts to sanction parties who fail to preserve electronically stored information critical to litigation.

Plaintiff contends that Defendants' actions form part of an overarching strategy aimed at depriving her of fair access to evidence. By engaging in the systematic destruction or alteration of evidence, Plaintiff argues that Defendants intended to compromise the integrity of the proceedings and obstruct her path to a fair resolution. These actions, she contends, amount to predicate acts that further establish the pattern of racketeering activity necessary to support her RICO claim. In *H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989),* the Supreme Court delineated the requirements for demonstrating a RICO violation, underscoring that continuity and relatedness of criminal acts are critical to establishing a cohesive pattern of racketeering—standards that Plaintiff asserts are met in her allegations against Defendants.

PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CONTINUED INJUNCTION REQUESTS - 14

**3.  Pattern of Racketeering Activity Demonstrating Continuity and Relatedness**:  The acts of intimidation, coercion, evidence tampering, and obstruction of justice asserted by Plaintiff collectively demonstrate the continuity and relatedness required to substantiate a pattern of racketeering under 18 U.S.C. § 1961. Plaintiff argues that the predicate acts represent a continuous and coordinated effort by Defendants, extending over several years and affecting multiple individuals, which satisfies the temporal and relational elements needed to establish a RICO violation.

**4.  Multiple Victims, Relationship and Continuity of Acts**: The predicate acts are not isolated; they are linked by common purposes and participants, demonstrating both relationship and continuity. *Beck v. Prupis, 529 U.S. 494 (2000),* addressed the need for related predicate acts over time, not isolated incidents. Plaintiff shows Defendant's related and recurring tactics, evidencing relationship and continuity. Defendants have continued their tactics repeatedly over 5 years, with Defendant Barresi proclaiming "hundreds" of people to Witness Berry in relation to "fixing" for Depp, Consigliere Waldman conveyed his years long interest to Barresi in their recorded phone call, and to Plaintiff Taft over 2 ½ years to this day. Each predicate act shares similar methods and goals, evidencing an orchestrated pattern of unlawful behavior. Defendant's tactics repeatedly correlate with the elements of the Coercion Law of New York *(Penal Law Section 135.60-65)*, including to coerce others into joining their scheme, and that needs adjoining in California. *United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989)* clarified that a pattern of racketeering exists where acts are similar in method, victim, and participant. Defendant Barresi is familiar with creating "mile long lists" of victims, with a case involving the journalist Anita Busch having 500 victims sue in class action *United States v. AT&T Inc., Civil Case No. 17-2511 (RJL) (D.D.C. Jun. 12, 2018)* for grievances when their audio recordings were collected by Pellicano Investigations Ltd with implication to case, *Busch v. Gorry, Meyer & Rudd LLP, B260081 (Cal. Ct. App. Dec. 18, 2015).*

Plaintiff shows consistent tactics used by the same actors against Plaintiff.   Plaintiff asserts that Defendants operated as an "enterprise" under 18 U.S.C. § 1962(c), orchestrating a scheme to further their illicit goals through intimidation and manipulation of judicial processes. Citing *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)*, Plaintiff highlights that a RICO claim requires evidence of a pattern of racketeering that directly harms the plaintiff. Plaintiff refers to Barresi, who conspired with Adam Waldman (Johnny Depp's consigliere) to intimidate witnesses and opponents, engaging in "complex and elaborate"

PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CONTINUED INJUNCTION REQUESTS - 15

interference. Barresi also made statements of "take it to the bank," and noted his recordings, which Plaintiff and witnesses attest he exploited.  This is accompanied by a continuous series of predicate acts including intimidation and corrupt persuasion. The case noted the goal to deter organized crime by allowing private suits. Plaintiff's case, she argues, fits within this framework, as the misconduct of Defendants constitutes a calculated series of actions specifically intended to impair her legal rights and evade justice.

**5.  Infringement of Civil Rights and Denial of Equal Protection**: Plaintiff asserts that Defendants' actions violate her civil rights, particularly her constitutional rights to due process and equal protection, under 42 U.S.C. § 1983. Plaintiff claims that Defendants' conduct, including witness tampering, evidence destruction, and obstruction, deprived her of a fair legal process, infringing upon her constitutional rights.

Plaintiff cites *Monell v. Department of Social Services of New York City, 436 U.S. 658 (1978),* which holds that private actors who engage in concerted actions that undermine legal protections can be held liable for civil rights violations under § 1983. Plaintiff argues that Defendant's repeated and coordinated actions constitute a de facto custom or practice of misconduct, intentionally circumventing judicial processes and targeting her rights. By obstructing her access to a fair and impartial proceeding, Plaintiff contends that Defendants' actions amount to a significant violation of her constitutional rights, warranting relief under § 1983.

**6.  Private Right of Action Under RICO (18 U.S.C. § 1964)**:  Plaintiff asserts her right to civil remedies under 18 U.S.C. § 1964, which allows individuals harmed by racketeering to seek relief. The Supreme Court in *Sedima v. Imrex Co., 473 U.S. 479 (1985),* confirmed that private plaintiffs harmed by racketeering can invoke RICO. Plaintiff argues that Defendants' predicate acts form a sustained pattern of criminal behavior directly causing her damages, meeting the statutory requirements for relief under § 1964.

The court in *U.S. v. Schultz, 333 F.3d 1155 (9th Cir. 2003),* highlighted the necessity for rigorous enforcement of laws designed to protect the integrity of records and prevent their destruction or alteration. In this case, the evidence presented indicates potential violations of 18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records) alongside allegations of witness tampering and intimidation. The judicial system has an obligation to act decisively when

allegations arise concerning the tampering or destruction of evidence. As articulated in *U.S. v. Schultz,* the enforcement of statutes related to record integrity is crucial to maintaining the judicial process.

**7.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003)**:  The Ninth Circuit in Eminence Capital reaffirmed the preference for resolving cases on their merits rather than procedural grounds. The court emphasized that amendments should be allowed when made in good faith and supported by evidence, as long as they don't cause substantial prejudice to the opposing party. This supports Plaintiff's request to amend, as her motion aims to refine and substantiate her claims, aligning with the court's preference for a full merits-based review.

The requirement to identify predicate acts supporting a pattern of racketeering is emphasized in *Sedima v. Imrex Co., 473 U.S. 479 (1985).* Plaintiff lists predicate acts, such as witness tampering, showing a continuous pattern of racketeering. *Sedima* confirmed that private plaintiffs can pursue civil RICO claims based on a pattern of criminal activity. Plaintiff's proposed amendment includes RICO claims, specifying predicate acts that caused harm, in line with *Sedima's* criteria for civil RICO actions.

**8.  Importance of Defining Elements of Racketeering**:  The court emphasized the judiciary's commitment to substantive justice over procedural technicalities, holding that amendments aimed at clarifying legal theories or incorporating new and relevant factual developments should be granted to ensure a fair trial on the merits, *Harris v. City of Seattle, 315 F. Supp. 2d 1112 (W.D. Wash. 2004).* This case reinforces that technical deficiencies in initial pleadings should not block a full examination of substantive claims. The evidence shows a pattern of criminal conduct, including witness tampering and racketeering under 18 U.S.C. § 1961 et seq. Plaintiff's motion aligns with Harris, as the proposed amendments include relevant facts and legal theories for a fair adjudication.

**9.  Judicial Responsibility to Protect Interstate Commerce:** Plaintiff shows that the enterprise affects interstate commerce, an essential element for RICO claims. *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)* recognized that RICO claims must affect interstate commerce. Plaintiff details enterprise activities that crossed state lines, with witnesses and Plaintiff in multiple states, as well as records and observations by investigators, establishing jurisdiction under the anti-racketeering act. The judicial system must uphold laws protecting interstate

commerce, as racketeering harms both individual cases and the broader economy. Defendants' actions, including witness intimidation and financial coercion, disrupt competition and undermine the legal system. Barresi's admissions and references to former clients show the scope of the harm, affecting businesses, investigators, litigants, and experts.

## **Arguments for Amendments in Support of Interest of Justice**

Plaintiff emphasizes the three essential elements of a RICO enterprise: a common purpose, an organized structure, and a continuous operational framework. The enterprise is shown to operate with a clear purpose distinct from its predicate acts, thus fulfilling RICO requirements.

**1.  Nature of the Conduct and Criminal Behavior**: The witness declarations document significant acts of intimidation and threats that directly impact the ability of witnesses to provide testimony. The Defendant's conduct shows their actions violate civil rights and represent serious criminal offenses that threaten the judicial process and the safety of individuals involved. The actions described in the witness statements—including threats, coercion, and harassment—extend civil rights violations and indicate a coordinated effort to obstruct justice. Barresi and Waldman created a scheme that witnesses and perceived opponents would alternate between intimidation and offers even when they pledge allegiance to their "principle" Depp. The court *in Griggs v. Pace American Group, Inc., 170 F.3d 877 (9th Cir. 1999)* recognized that allowing amendments serves the interests of justice, a principle that is critical. Plaintiff's amended complaint specifies multiple predicate acts under RICO, including witness tampering, interstate threats, and alteration of records, each contributing to a cohesive racketeering pattern.

**2.  Consistency in Participants and Victims**: Defendants repeatedly targeted Plaintiff, using consistent tactics and participants, in their schemes as "Hollywood Fixers" to eliminate potential witnesses, testimonies, and reporting victims, thus establishing a recognizable pattern.

An enterprise in the anti-racketeering act is a group with a purpose, relationships among those associated, and longevity sufficient for the purpose, *Boyle v. United States, 556 U.S. 938 (2009)*. Plaintiff's amendment establishes these elements, showing an organized enterprise with sustained structure and goals. Evidence demonstrates that Defendants were organized in a manner consistent with a RICO enterprise, each playing a specific role in furtherance of the scheme. A RICO

enterprise could consist of individuals working together toward a common purpose, *United States v. Turkette, 452 U.S. 576 (1981)*. Plaintiff's evidence supports this structure, demonstrating specific roles each Defendant played between "Bagman" Barresi and "Consigliere" Waldman. An enterprise has a distinct existence beyond predicate acts, *Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001)*. Plaintiff's complaint details Defendants' coordinated actions and overt acts, showing how Defendants operated as an enterprise. A structured decision-making hierarchy is revealed within the enterprise, from Waldman and Barresi to unnamed Does enacting tactics, including intimidation, record alterations, and vandalism against perceived opponents, victims, Plaintiff, and witnesses to benefit the associated enterprise, indicating systematic collaboration between Defendants.

**3. Integrity of the Judicial Process with Witness Statements**: The emergence of threats against witnesses highlights the urgent need for a strong judicial response. The Ninth Circuit has consistently stressed the importance of protecting those who testify. In *U.S. v. McCarthy, 271 F.3d 1180 (9th Cir. 2001),* the court reaffirmed the necessity of addressing witness intimidation to maintain the integrity of the judicial process. The evidence in this case shows a pattern of intimidation and harassment that undermines justice, making the protection of witnesses crucial to a fair legal system. In *Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978),* the Supreme Court emphasized the need to protect the integrity of the judicial process, especially involving witness statements to show a coordinated effort by Defendants to obstruct justice through witness tampering and intimidation, aligning with serious offenses under 18 U.S.C. § 1512.  The Ninth Circuit discussed the importance of witness protection *271 F.3d 1180 (9th Cir. 2001).*

**4. Judicial Responsibility to Address Threats:** The judicial system has an obligation to respond decisively to protect individuals from intimidation as is essential to maintaining a fair and just legal process. In *U.S. v. Hively, 437 F.3d 900 (8th Cir. 2006),* the court reinforced the need for a robust judicial response to intimidation and coercion by acknowledging the nature of interstate threats. Among instances, Defendants for years intimidated Taft and other witnesses that they would be "DEAD," altered tapes that made violence a threat, forced Taft to see details of death of her mother's coroner report, admitted to Taft that they "Would have Killed for Johnny Depp." Defendant Barresi told witnesses details of deaths to intimidate them that he did killings, pressuring them the more they had crucial information to testify against Depp, and purported "Hitman's violin" in the context to state that this what he does as a Hollywood Fixer's role. **Licensed**

**Private Investigator Erik Eichler in Connecticut attests to Rebecca Berry witnessing Barresi "confessed to killing people" and her apprehension** (*Exhibit C, a true and correct copy of Affidavit redacting address, attached herein*). Therefore, the Plaintiff respectfully requests that the court grant the motion, ensuring that justice is served and the integrity of the judicial system is upheld.

In *U.S. v. O'Keefe, 128 F.3d 951 (7th Cir. 1997),* the court discussed the standards for proving civil RICO violations and emphasized the broad reach of racketeering statutes.  The court highlighted the extensive scope of racketeering laws, indicating that activities constituting racketeering can encompass a wide range of criminal behavior that are provided as elements in Plaintiff and witnesses' timelines. The evidence presented in this case suggests a pattern of racketeering activity, including activities to corruptly persuade witnesses and intimidation. For example, in *United States v. DiCaro, 772 F.2d 1314 (7th Cir. 1985),* the court found that witness tampering, including attempts to intimidate and coerce testimony, constituted predicate acts under the Racketeer Influenced and Corrupt Organizations Act (RICO). Similarly, in the present case, Plaintiff has provided evidence of a pattern of racketeering activity, including the use of threats and manipulation to corruptly influence witnesses and obstruct legal proceedings.

**5.  Ongoing Activities and Deterrence of Future Criminal Conduct:** Plaintiff's evidence suggests that Defendants' pattern of criminal activity poses a continued threat, an essential criterion for RICO liability. Defendants continue and conspire to this day, and do not stop until "dead silence" and elimination, as ongoing conduct as part of racketeering continuity. Plaintiff's evidence suggests Defendants' coordinated scheme poses a current and future threat, satisfying the continuity element, *Schmuck v. United States, 489 U.S. 705 (1989).*

In *U.S. v. Schultz, 333 F.3d 1155 (9th Cir. 2003),* the Ninth Circuit emphasized the importance of strict enforcement of statutes regarding the destruction and alteration of records.  The principles established in *U.S. v. Schultz* underscore the critical importance of strict enforcement of statutes against corrupt alteration of records in maintaining the integrity of the judicial process. Therefore, the Plaintiff respectfully requests that the court grant the motion to amend the complaint, ensuring that justice is served and the integrity of the judicial system is upheld.  Address and detect elements that enhance and facilitate organized crime is part of the civil anti-racketeering act. Granting leave to amend advances this policy objective by holding Defendants accountable for Defendants' conduct.

**6. Judicial Responsibility to Protect the Process**: The judicial system has a responsibility to act decisively in cases involving obstruction activities and witness tampering to uphold the integrity of the process. The principles established in *U.S. v. McCarthy* highlight the critical importance to protect witnesses is paramount in preserving the judicial system's functionality.

## IV. CONCLUSION

**1. Grounds for Granting Leave to Amend**

o     **Alignment with Federal Rule of Civil Procedure 15(a)(2):** The Federal Rules advocate for amending pleadings to ensure fair and just adjudication, as Rule 15(a)(2) directs that leave to amend shall be "freely given when justice so requires." This aligns with the principles set forth by the U.S. Supreme Court in *Foman v. Davis, 371 U.S. 178 (1962),* underscoring that cases should be decided based on their substantive merits, not procedural technicalities. The Ninth Circuit has consistently followed this principle, as demonstrated in AmerisourceBergen *Corp. v. Dialysist W., Inc., 465 F.3d 946 (9th Cir. 2006),* which supports that amendments should be allowed barring undue prejudice or futility.

o     **Promotion of Justice Through Amendment:** Plaintiff's proposed amendments introduce pertinent refined legal theories necessary to thoroughly address the claims. These revisions align with the purpose of Rule 15, which aims to enable a complete and just review by allowing claims to be fully substantiated, thereby fostering a decision grounded in the case's actual merits. This is consistent with the Ninth Circuit's broad discretion in permitting amendments, particularly when they substantively advance the adjudication of claims, as reaffirmed in *Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).*

**2.**     **Legal Justifications Supporting Amendment**

o     **Judicial Discretion in Favor of Amendment:** This Court holds wide discretion to grant leave to amend, especially when it promotes justice. In *DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987)*, the Ninth Circuit highlighted the importance of amendments that permit a comprehensive presentation of all issues, ensuring all relevant facts and arguments are thoroughly considered. This aligns with the Ninth Circuit's policy to encourage amendments that enhance the substantive review of cases, as further supported by *Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)*.

**o    Clarification and Consistency of Claims:** Amendments that clarify or better structure claims are essential to providing the court with a coherent framework for fair and efficient adjudication. The Supreme Court's decision in *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)*, highlighted that Plaintiffs should be allowed to amend complaints to provide factual detail, thus ensuring claims meet substantive standards and avoid dismissal on procedural grounds. The proposed amendments serve this purpose by precisely organizing allegations, ensuring legal standards are met, and improving the court's ability to adjudicate the claims on their merits.

**o    Sufficiency of Civil Rights Claims Under 42 U.S.C. § 1983 and Civil Rico Act:**
 The amended complaint properly categorizes and substantiates constitutional violations under 42 U.S.C. § 1983, which necessitates that allegations be specific to conduct taken "under color of law." By clarifying the constitutional violations with factual specificity, the proposed amendments satisfy these requirements, thereby strengthening the complaint's foundation under § 1983. Precedent in *Monell v. Department of Social Services, 436 U.S. 658 (1978),* supports Plaintiff's assertion that claims can be brought against individuals acting in concert to violate federal rights.

## Public Policy Supporting Civil Rights and Anti-Racketeering Enforcement

Allowing the amendments supports public policies protecting civil rights and enforcing anti-racketeering laws. *Cox v. Louisiana, 379 U.S. 559 (1965),* reaffirms the judiciary's role in safeguarding civil rights, while the Civil RICO statute (18 U.S.C. § 1961-1968) aims to dismantle criminal enterprises. Granting these amendments promotes accountability and ensures violators are held responsible.

**o    Advancing Judicial Economy and Preventing Fragmentation of Claims:** Granting leave to amend consolidates all allegations in a single proceeding, promoting judicial efficiency and reducing the potential for fragmented litigation. The court in *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1292 (9th Cir. 1983)*, affirmed that amendments that clarify claims or reduce redundancy align with judicial objectives of expeditious and streamlined litigation.

**o    Ensuring Equitable Treatment and Avoiding Procedural Prejudice:** Allowing Plaintiff to amend her complaint protects the integrity of her claims, ensuring the case is decided on its merits rather than procedural limitations. This

rationale is consistent with *Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003)*, where the Ninth Circuit emphasized the necessity of permitting amendments to prevent unfair prejudice and secure a fair hearing.

**3.    Fulfillment of Pleading Standards Under Rule 8(a):**

o    **Plausibility and Specificity Requirements for Federal Claims:** Plaintiff's amended complaint meets the plausibility standards established in Bell Atlantic *Corp. v. Twombly, 550 U.S. 544 (2007),* and *Ashcroft v. Iqbal, 556 U.S. 662 (2009),* which require that claims be plausible and sufficiently specific to warrant relief. Rule 8(a) underscores supporting procedural fairness by enabling a focused response. The proposed amendments present detailed facts that substantiate Plaintiff's RICO and § 1983 claims, fulfilling Rule 8(a)'s requirement for a "short and plain statement" that shows entitlement to relief.

o    **Judicial Efficiency through Consolidation of Claims:** The proposed amendments enhance judicial efficiency by consolidating related claims within a single action. *Hardin v. Straub, 490 U.S. 536, 541 (1989),* emphasizes the judiciary's preference for resolving interconnected claims within one proceeding to prevent duplicative litigation and conserve judicial resources. By addressing all related facts and claims in a single amended complaint, this motion aligns with the court's duty to maximize efficiency and avoid unnecessary expenditures of resources.

o    **Timeliness and Lack of Undue Delay:** The request for amendment has been made in a timely fashion, reflecting the Plaintiff's diligence in presenting relevant and material facts. In *Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999),* the court underscored that amendments filed without undue delay, and without prejudicing the opposing party, align with the principles of justice. Given that this amendment was sought promptly following discovery of additional relevant details, there is no evidence of delay or lack of diligence, affirming that the request serves judicial efficiency and fairness.

o    **Absence of Prejudice to Defendants:** A fundamental factor in granting leave to amend is the absence of undue prejudice to the Defendants. In *Heng v. Heitman, 698 F. App'x 332, 333 (9th Cir. 2017),* the court found that amendments did not cause prejudice when the Defendants were already aware of the underlying facts of the case. Here, the amendments reinforce and elaborate upon the existing claims, all of which are based on facts already known to the Defendants. The amendments thus avoid any risk of unfair surprise or prejudice, allowing the

Defendants adequate opportunity to respond.

**o        Proper Articulation of Legal Theories and Factual Bases:** The amended complaint is carefully structured to comply with Rule 8(a), providing clarity on legal theories, statutory grounds, and factual foundations. This approach ensures Defendants have adequate notice of the claims against them, which supports a fair and transparent judicial process.

**4.  Federal Rule of Civil Procedure 15(a) – Amendments Before Trial:**
Rule 15(a) establishes that a party may amend its pleading with the court's leave, stating that leave to amend should be "freely given when justice so requires." The rule encourages flexibility in pleadings, permitting amendments to ensure that cases are resolved on substantive issues rather than procedural technicalities. Plaintiff seeks to amend Plaintiff's complaint to more clearly delineate Plaintiff's legal claims and factual allegations. Rule 15(a) supports this request for amendment, emphasizing that allowing Plaintiff to fully present Plaintiff's case aligns with the judiciary's commitment to a fair and thorough adjudication based on the merits.

**5.  Federal Rule of Civil Procedure 8(a) – General Rules of Pleading:**
Rule 8(a) requires a concise statement of the claim to provide clear notice of the claims, ensuring fair proceedings. Plaintiff's proposed amendment will clarify the claims, giving Defendants adequate notice and allowing the court to address all relevant legal issues.

**6.  28 U.S.C. § 1343 – Civil Rights and Elective Franchise Jurisdiction:**
Section 1343 grants district courts jurisdiction over civil actions for the deprivation of rights under federal authority, especially those under color of law. It ensures individuals have a federal forum to challenge civil rights violations. Plaintiff's § 1983 claims fall within this scope, affirming the court's jurisdiction over claims involving government abuses of fundamental rights.

**7.  Protection of Court Access**: By allowing amendment, the Court upholds the fundamental right to access justice, ensuring that intimidation tactics do not undermine this principle. *Bounds v. Smith, 430 U.S. 817 (1977)* recognized the right of access to courts as fundamental. Plaintiff's claims reinforce the importance of this right, which Defendants' actions undermined.

**8.  Conley v. Gibson, 355 U.S. 41 (1957):** Established that Defendants must be given fair notice of claims. Plaintiff's amendment does not raise fundamentally new claims but clarifies them, ensuring Defendants remain fairly apprised.

By addressing conduct against numerous individuals to thwart the judicial system, the court demonstrates its commitment to justice which is vital for both the parties involved and the broader community. Streamlining elements of coercion that enable exploitation beneath shells, as seen in *People of the State of California, vs. Confidential, Inc., Hollywood Research, Inc., et al,* and applying federal jurisdiction for remedies against multi-state witness interference and alterations of records, is necessary. The court demonstrates its commitment to justice, not only for the parties involved but for society and trust in the process.

Accordingly, Plaintiff respectfully submits the motion is judicious and necessary, allowing for a complete adjudication on the merits that aligns with this Court's commitment to substantive justice. Plaintiff requests that this Honorable Court grant the Motion.

**PRAYER FOR RELIEF**

Plaintiff's respectfully requests the Court to grant this Motion for Leave to Amend the Complaint and Continued Injunction Requests. which is substantiated by established legal standards that prioritize justice and judicial fairness. By permitting this amendment, the Court will facilitate a full and fair adjudication of Plaintiff's claims, ensuring all relevant facts and arguments are appropriately addressed, as reinforced by *Amerisource Bergen Corp., Owens, and Bonin,* which highlight the Ninth Circuit's preference for amendments that ensure justice over procedural constraints, and to prevent misconduct designed to obstruct justice and infringe on one's rights.  Allowing this amendment would ensure the case proceeds with the full range of relevant claims and evidence, aligned with the principles of efficiency. Furthermore, Plaintiff respectfully requests the Court issue an injunction and restraining orders against the Defendants, to prevent further interference with Plaintiff's legal rights and ensure the integrity of the judicial process is upheld.

Dated:  November 6, 2024

_____
Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com

PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CONTINUED INJUNCTION REQUESTS - 25

# EXHIBIT A

## DECLARATION OF MIKE MCCORMICK

**STATE OF CALIFORNIA**          )
                                 ) SS:
**COUNTY OF LOS ANGELES** )

Mike McCormick, being duly sworn, deposes and says:

I am a Witness in the matters of Case 5:24-cv-01930-TJH-DTB (Taft v. Paul Barresi, Adam R. Waldman, and Does 1-10), currently pending in the U.S. District Court of the Central District of California.

I am above the age of 18 and reside in California. At the time of these events, I resided in California. The facts stated in this affidavit are true and correct to the best of my knowledge and belief.

I have personal knowledge of the facts stated herein, except for those stated upon information and belief, and as to those, I believe them to be true.

### Events

I am a licensed retired LAPD private investigator in California. On March 13th, 2022, Ms. Taft inquired to me about looking up an old friend of socialite Michelle Diamond's named Richard Bren, son of billionaire real-estate developer Donald Bren, so they could re-connect. Ms. Diamond was a friend of Plaintiff's mother Victoria Taft.

On June 16th, 2022, Plaintiff Taft requested that I be her private investigator related to witnesses being harmed as she was alarmed to. Plaintiff was afraid that witnesses could be harmed or disappear for giving information to Taft that revealed Barresi's activities to suppress witness testimony. I reached out to several witnesses to let them know they had help if they needed it and could speak.

I spoke with Witness of Viper Room Mr. Albertini and Defendant Barresi. Mr. Albertini wanted to testify and told my client Ms. Taft that he wanted to testify against Depp. Mr. Albertini stated that Barresi confessed to him to have killed Shalimar Seuli. Shalimar fell off a roof to her death. I asked my client where Barresi was in the 24 hours before and the 24 hours after death. Barresi did not appear to deny doing this from my observations and information over years.

I confirm that I approved of reporting to the Bureau of Security and Investigative Services and to the FBI after I observed witness interference. I observed that witnesses reported to the FBI and advised my client Taft.

PAGE **1** OF **4**

I confirm that Barresi sent me over 30 emails and documents of his. He had called and texted me repeatedly for over a period of 2 years. Mr. Barresi stated he would record me as well when I asked him for consent to record him.

Barresi has left repeated aggressive voicemails, texts, phone calls and harassment to me, including about my former client Taft and other Witnesses for 2 years. The last one was September 30, 2024, that my former client informed me was after process service of him of Lawsuit with Actions including obstruction of justice, and restraining order requests.

I am intimidated and threatened by Barresi for attempting to help witnesses, Plaintiff Taft, and former clients of Barresi's who he exploits. I am intimidated by him constantly, in an attempt to get me to not report him. Mr. Barresi intimidates me by stating that my client ever had me as a private investigator and manipulates financial transactions, when in actuality all my witnesses and my client were afraid for their lives.

In the last aggressive voicemail, Mr. Barresi cursed me several times stating "that PI Juan Brooks," and claimed that there "could have been a soft landing." In context to what I have personal knowledge of, observed, and information of. This is a direct threat to me, a threat to other private investigators, a threat to witnesses, and to my former client, Plaintiff Ms. Taft.

From my ongoing observations, Mr. Barresi will not stop even when he is reported to authorities, or in the interest of investigation, including from the FBI.

Based on my personal knowledge and observations, the nature of Defendants is extreme. I have observed:

- ➤ I observed Witness Interference by interviewing witnesses and in documentation.
- ➤ I have knowledge of witnesses with ongoing threats and harassment made to them by Defendants.
- ➤ I observed Albertinti was originally listed as a cooperating witness and I have possession of Interview of Albertini from 2019 from Barresi on June 4, 2022.
- ➤ I personally communicated with Richie and was given witness names and timelines.
  Chris Stanco, Bruce Corkum, Peter Nichols, Cathy Duncan, Stacy Lopez, Donna, and Big Ed Shaw, were a few of the over 20 names I observed given to me which were related to the Viper Room and with information they could testify about.
- ➤ I have knowledge that Barresi used a recording to coerce Richie and Big Ed Shaw.
- ➤ I have knowledge of how Barresi contacted witness Daniel Brummit over a phone call, attempted to corruptly persuade him and intimidated him and his son.
- ➤ In 2022, I observed and have knowledge of emails, texts of Paul Barresi and Adam Waldman in

PAGE **2** OF **4**

correspondence and conspiring to suppress witness testimonies and they were sent to Mario Nitrini.

➢ I have knowledge that Mario Nitrini has information regarding Barresi and Waldman correspondence, what Barresi sent about potential witnesses to the law firm Brown George Ross LLP that requested Barresi to obtain witnesses, about Joshua, and what Barresi sent Nitrini against or about Elon Musk and security person Gavin Debecker.

➢ I observed and have personal knowledge that witnesses were intimidated, including but not limited to Richie, Mario Nitrini, and myself, and crimes that I witnessed were enacted by Defendants.

➢ I observed Adam Waldman approve witness interference to gain unscrupulous advantage on intent, with break-ins and vandalism against Witnesses on a phone call with Paul Barresi. I have personal knowledge of this since September 2022.

➢ I observed Paul Barresi and Adam Waldman locating people. I have knowledge that witness Rebecca Berry was told by Barresi defendants use to refocus threat vandalism and break-ins perpetuated on witnesses to alter the intent as being by their opponents.

➢ I have information of Barresi's text to witness Richard Albertini, " I still go that taped conversation of you and Big Ed. The one where you do your damnest to try and get him to say horrible lies about Johnny Depp. Hmmm, I wonder what I should do with it you fucking moron." He also threatened the witness when he indicated earlier "if I hadn't done her in, someone else would have."

➢ I received emails from Barresi, including on the, to my belief, likely murdered Anthony Fox, former co-owner of the Viper Room.

➢ I have personal knowledge that Barresi is dangerous to potential witness Amber Heard and other former clients including as potential witnesses that could report him to authorities or testify. He named multiple former client potential witnesses in emails.

➢ I observed that Rocky Brook's case was impacted, including witnesses from the Viper Room and listed witness Heard no longer being available to testify.

➢ In my observation, Barresi audio records and can exploit his phone calls with attorneys, former clients, and potential witnesses that may want to report him.

➢ I observed Mr. Barresi had his license nearly immediately revoked by the California Attorney General 10 years ago and is not supposed to be doing unauthorized lookups.

➢ Barresi is dangerous and needs to be restrained. In my knowledge I have seen his aggression for years and it is serious by nature.

I attest that lines 78, 79 80, 95, 113, 114, 115, 116, 117, 118, and 119 of the lawsuit of Plaintiff Taft are true and correct.

I have additional knowledge and information I can declare and attest to, inclusive of defendants ongoing activities. I assert that I can provide said evidence to the facts stated above.

I, Mike McCormick, as a declaring witness to testify if so called upon, do hereby declare under penalty of perjury that the information provided herein is true and accurate to the best of my knowledge. This declaration has been verified and is made in good faith.

DATED this 24 day of Oct , 2024.

Signed: 

Name:  Mike McCormick

SUBSCRIBED and SWORN to before me

this _____ of _____ , 2024.

_____

NOTARY PUBLIC in and for said State,

in the United States of America

OFFICIAL SEAL

PAGE **4** OF **4**

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate
is attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of ___Los Angeles___

Subscribed and sworn to (or affirmed) before me on this ___24th___
day of ___October___, 20_24_, by ___Mike McCormick___
_____,
proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.

MATHEW CRES SAN JOSE
Notary Public - California
Los Angeles County
Commission # 2500056
My Comm. Expires Sep 17, 2028

(Seal)                          Signature_____

EXHIBIT B

**DECLARATION OF MICHAEL KOUNTZ**

**STATE OF NEW MEXICO**      )
                                ) SS:
**COUNTY OF BERNALILLO**   )

Michael Kountz, being duly sworn, deposes and says:

I am a Witness in the matters of Case 5:24-cv-01930-TJH-DTB (Taft v. Paul Barresi, Adam R.
Waldman, and Does 1-10), currently pending in the U.S. District Court of the Central District of
California.

I am above the age of 18 and reside in New Mexico. At the time of these events, I resided in
New Mexico.

The facts stated in this affidavit are true and correct to the best of my knowledge and belief.
I have personal knowledge of the facts stated herein, except for those stated upon information
and belief, and as to those, I believe them to be true.

**Events**

1. I am a licensed private investigator in New Mexico. Plaintiff Taft requested help from
Superior Investigations on May 1, 2023 to locate and interview James Conner regarding an audio
recording contained in an edited video by Paul Barresi which claimed to portray a phone call
between Paul Barresi and James Conner. Taft understood that we adhere to legal practices, that
we have witnesses feel safe to speak, and she was in fear from the coercion by Defendants.
Plaintiff Taft was exploited by this tape for some time. I have knowledge there were fearful
voicemails left to Superior Investigations and Auriella, while she was in Colorado while visiting
witness Joe Triscari.

2.  It is my belief that the audio by Paul Barresi was exploited on purpose to be used to facilitate
tactics similar to blackmail, and use of the audio, inclusive of either with influence on the
witness and/or edits, was essential for him to do this.

3. I located and interviewed James Conner in June of 2023. James Conner advised me he was a
licensed private investigator.  I observed that Conner appeared to be disabled by his own
admission.

PAGE **1** OF **4**

4. James Conner advised that he was not aware of the audio recording contained in edited videos by defendant Paul Barresi, which contained allegedly James Conner speaking about Plaintiff Christina Taft. James Conner advised that he did not know he was being recorded by Defendant Barresi during a phone call to him by Barresi.

5.  James Conner advised that he did not give permission to be recorded by Barresi.

6.  James Conner advised me that the audio was taken out of context. He further advised me that the audio did not reflect the actual nature of the conversation in which Conner had with Defendant Barresi.

7.  James Conner advised me that he did not consent to the use of his voice in that manner and desired help in having the audio and the videos removed.

8.  James Conner further advised me that the things he was portrayed as saying in the call regarding Plaintiff Taft were hearsay.

9.  After leaving the interview with James Conner, I received a phone call from him advising me that Paul Barresi was dangerous, and that he was in fear for his life due to his involvement.

10.  James Conner then advised that he was flying to his property in Alaska out of fear of reprisal from Barresi, and that I should be careful about my involvement with Defendant Barresi, as I could face reprisal as well.

11. I reviewed the audio tape contained in the video by Barresi. Contained in the audio tape done by Paul Barresi of purportedly James Conner, are alterations that he was an FBI agent and that her mother Victoria Taft had witnessed a mob murder by the Gottis. It distressed Taft about her mother Victoria Taft and her death. James Conner advised me he was never an FBI agent. The tape showed images of a man dead allegedly from the mafia, members of the mafia, and a gun. In the beginning of the tape, Barresi discussed a photo of Amber Heard with Plaintiff Taft to James Conner, that they were arm in arm, yet at the same time indicating danger to life through comparing to an assailant. I have information that Plaintiff is still fearful to this day that this audio tape is either to make someone shoot her or to shoot Amber. Or that a death could occur. I have information that Defendant Barresi acted aggressively to terrify Taft and others contained in the content of the audio tape.

12.  I was informed by Taft that she had an "Executive Protector PI" Juan Brooks for multiple months in 2023 with continuing fear and activities by Defendants.

PAGE **2** OF **4**

13. Taft stated her mother had connections to Hollywood and although she'd been in social circles, never had any relation to these groups. Taft feared this was an underlying threat to her constantly, that she should be afraid of a murder of her or other people. James did not mention Gotti to me. Taft showed a photo that Barresi released referring to her and other witnesses of himself with Victoria Gotti where he wrote "Gambino family gathering" and Johnny Depp within the context. While I was on a call with Auriella, Auriella asked Taft if this had to do with Depp, and she was hesitant to say a case connection.

14. I have personal knowledge that Aurelia Barajas and I had a telephone interview with Jesse Adams at the Department of Consumer Affairs against Barresi's coercion. Mr. Adams accepted our report.

15. On September 05th, 2023, I received an email from Plaintiff Taft containing a screenshot of a text message chain from the phone number (908) 656-5712, which she advised was Defendant Paul Barresi's phone number. I observed the following message, portrayed in the screenshot to have been sent from the above number to Plaintiff Taft on Nov 7, 2022: "Stacy is your sister" and sexual expletives. Taft advised that the text referred to Stacy Hagman in Texas and requested that I interview her. She had compliments for Stacy and was fearful that Barresi could access her. I was able to locate a phone number for Stacy, but have not been able to reach her through it.

16. On October 19th, 2023, I spoke with a sister of James Conner, who previously owned Argus Private Investigations and Security Agency in Texas. She did not want interference with her brother, and approved that Barresi should not be licensed and that he was under investigation. In October 2023, I supported that Taft should have a restraining order against Barresi and I still support that she should have a restraining order. I have knowledge that Taft lives in Hawaii for her safety.

17. Plaintiff Taft advised in emails to me that Defendant Barresi continued to harass her during 2024, sending an email stating "Your Brother is a Monster," referring to probably Sean Conner, who may be Taft's half brother. I have knowledge that this email contained audio tapes that Barresi has, including one with Defendant Adam Waldman. I had previously tried reaching out to Sean Conner but was unable to make contact.

18.  Plaintiff Taft advised that she sent this email of Barresi to Jesse Adams at the Department of Consumer Affairs in California, but received no response.

I attest that lines 270, 271, 272, 275, 276, 288, of the lawsuit of Plaintiff Taft are true and correct.

I have additional knowledge and information I can declare and attest to, inclusive of defendants ongoing activities.  I assert that I can provide said evidence to the facts stated above.

I, Michael Kountz, as a declaring witness to testify if so called upon, do hereby declare under penalty of perjury that the information provided herein is true and accurate to the best of my knowledge. This declaration has been verified and is made in good faith.

DATED this 4th day of November, 2024.


Signed: _Michael Andrew Kountz_
Name: Michael Kountz



SUBSCRIBED and SWORN to before me
this __4TH Day__ of __November__ , 2024.



_Dt Mills_
NOTARY PUBLIC in and for said State,
in the United States of America

OFFICIAL SEAL

DUSTIN MILLS
Notary Public
State of New Mexico
Comm. # 1128727
My Comm. Exp. May 26, 2028

# EXHIBIT C

## STATE OF CONNECTICUT

| | | |
|---|---|---|
| 5:24-CV-01930-TJH-DTB | \| | UNITED STATES |
| TAFT, CHRISTINA | \| | DISTRICT COURT OF |
| V. | \| | CENTRAL CALIFORNIA |
| BARRESI, PAUL, | \| | EASTERN DIVISION |
| WALDMAN, ADAM R. | | November 5, 2024 |

The undersigned, being duly sworn, deposes and states:

1.   My name is Erik R. Eichler, and I am over eighteen years of age.

2.   I believe in the obligation of oath and am competent to testify to the matter stated herein.

3.   I am a Private Investigator employed by Eichler Investigative Services, LLC., in South Windsor, CT, according to the Connecticut Department of Public Safety License # A-2834.

4.   On October 29, 2024, at approximately 2:00 p.m., I traveled to the residence of an individual known as Rebecca M. Berry, located at ███████████████ ████████.

5.   On that date, I spoke with Rebecca M. Berry and her mother, Joan Berry, in the driveway at that location.

6.   I provided Rebecca M. Berry with a copy of the United States District Court complaint, *Christina Taft v. Paul Barresi and Adam R. Walkman, 5:24-CV-01930-TJH-DTB.*

7.   I provided Rebecca M. Berry with a letter from Christina Taft requesting a Witness Declaration for the above-said case.

8.   Ms. Joan Berry asked Rebecca M. Berry, "What is this about?"

9.      At that time, I witnessed Rebecca Berry respond, "Remember that guy [Paul Barresi] who confessed to me about killing people?"

10.     Rebecca M. Berry said she would contact Christina Taft or this investigator later and terminated the interview.

7.      That I have read the above affidavit and understand it completely.


_____

Erik Eichler
Private Investigator
Eichler Investigative Services, LLC.


Subscribed and sworn to before me on this ___10___ day of ___November___, 2024.


_____

Notary Public
My Commission Expires: 4/30/29


ALMERY G LOPEZ
NOTARY PUBLIC
CONNECTICUT
MY COMMISSION EXPIRES 04-30-2029

# PROOF OF SERVICE

On the date set forth below, I served the foregoing document described as:

1. Per L.R. 7-5, Brief with Memorandum in Support of Plaintiff's Motion to Amend Complaint and Continued Injunction Requests and Points and Authorities
2. Plaintiff's Motion to Amend Complaint and Continued Injunction Requests
3. Proposed Order on Plaintiff's Motion to Amend Complaint and Continued Injunction Requests

BY NOT MORE THAN 30 DAYS; via Mail and Email, Local Rules, (L.R. 5-3), on the

interested parties in this action as follows:

MELISSA Y. LERNER
Attorneys for Defendant PAUL BARRESI

**By Mail:**

MELISSA Y. LERNER
LAVELY & SINGER PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
2049 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CALIFORNIA 90067-2906

**By Electronic Service:**

mlerner@lavelysinger.com

[**X**] BY FEDERAL EXPRESS: I am "readily familiar" with the practice of collection and processing correspondence for Federal Express. Under that practice it would be deposited with Federal Express on that same day with all costs fully prepaid in the United States, in the ordinary course of business.

[**X**] ELECTRONIC SERVICE:  I served the on the parties listed via electronic service in accordance with the applicable rules (Local Rule 5-3).

Dated: November 6, 2024                    _____

                                                                Lucy Hana

PROOF OF SERVICE - 1