UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA TAFT, | ) | Case No. 5:24-cv-01930-TJH (DTB) |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| PAUL BARRESI, et al., | ) | |
| Defendants. | ) | |

This Report and Recommendation is submitted to the Honorable Terry J. Hatter, Jr., United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## BACKGROUND

On September 7, 2024, Plaintiff Christina Taft ("Plaintiff"), proceeding pro se, filed a Complaint ("Complaint"), alleging twelve claims against defendants Paul Barresi ("Barresi") and Adam R. Waldman ("Waldman") (Barresi and Waldman are

1

collectively referred to herein as "Defendants"). (Docket No. 1).[1] The Complaint alleges that after April 2020 and through September 2024, defendant Barresi, a private investigator, and defendant Waldman, the owner of The Endeavor Group and an agent for John C. Depp,[2] engaged in coercive conduct, intimidation, and threats against Plaintiff and "potential witnesses," "interfered with reports to [the] FBI and with the witnesses to attempt to set up certain individuals, intentionally and negligently, to set up the wrong people, with an attempt to frame them for wrongdoing," utilized interstate communications to further their fraudulent scheme, tampered with evidence "relevant to an ongoing investigation by the FBI and Bureau of Security and Investigation Services through the Department of Consumer Affairs," tampered with witnesses, victims, and informants "with the intent to hinder, delay, or prevent communication to law enforcement authorities," and conspired to invade the privacy of, use the name or likeness of, harass, neglect, and intentionally and negligently inflict emotional distress on Plaintiff. (See Complaint at 6-77).[3]

/ / /

/ / /

/ / /

/ / /

---

[1] The Complaint alleges the following claims: (1) Civil conspiracy; (2) obstruction of justice, tampering with a witness, victim or informant (18 U.S.C. § 1512(b)(1) and (b)(2)); (3) invasion of privacy (California Constitution, Article 1, Section 1); (4) use of name or likeness (Cal. Civ. Code § 3344); (5) civil harassment (Cal. Code Civ. P. § 527.6; (6) negligence, civil rights; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) interstate communications (18 U.S.C. § 875); (10) interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952); (11) destruction, alteration, or falsification of records (18 U.S.C. § 1519); and (12) Civil RICO Act, racketeering activity (18 U.S.C. §§ 1961, 1962). (Complaint at 1).

[2] Plaintiff clearly is referring to the actor known as Johnny Depp.

[3] The Complaint contains an extremely lengthy recitation of factual allegations. (See Complaint at 7-76).

2

On September 19, 2024, the Court ordered service of the Summons and Complaint on Defendants.  (Docket No. 6).  On September 26, 2024, Plaintiff served the Summons and Complaint on defendant Barresi.  (Docket No. 7).  On October 16, 2024, Plaintiff filed a motion seeking an order allowing service of publication on defendant Waldman, which the Court denied on the same date.  (Docket Nos. 8-9).[4]

On October 24, 2024, Plaintiff filed an "Emergency Motion for Preliminary Injunction" ("Emergency Motion").  (Docket No. 15).[5]

On November 6, 2024, Plaintiff filed a Motion to Amend the Complaint and Continued Injunction Requests.  (Docket No. 18).  On November 7, 2024, defendant Barresi filed a Motion to Dismiss the Complaint.  (Docket No. 16).  On November 13, 2024, the Court granted Plaintiff's Motion to Amend the Complaint but did not make any determination on Plaintiff's Continued Injunction Requests due to the pendency of the Emergency Motion.  (Docket No. 20).

On November 30, 2024, Plaintiff filed a First Amended Complaint ("FAC"), alleging nine claims against Defendants.  (Docket No. 23).[6]  Based on the filing of the FAC, on December 2, 2024, the Court denied defendant Barresi's Motion to Dismiss the Complaint as moot.  (Docket No. 24).

/ / /

/ / /

---

[4]  As of October 24, 2024, Plaintiff had not yet served defendant Waldman with the Summons and Complaint.  (See Docket No. 21 at 3).

[5] The Emergency Motion was specifically referred to the undersigned Magistrate Judge for ruling/processing on November 21, 2024.  (Docket No. 21).

[6] The FAC alleges the following claims:  (1) Civil conspiracy; (2) Civil Rights Act (42 U.S.C. § 1983); (3) Civil RICO Act, racketeering activity (18 U.S.C. §§ 1961, 1962); (4) invasion of privacy (California Constitution, Article 1, Section 1, 1800); (5) use of name or likeness (Cal. Civ. Code § 3344); (6) civil harassment (Cal. Code Civ. P. § 527.6); (7) negligence, civil rights; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. (FAC at 1).  The FAC contains allegations which appear to be similar to those in the Complaint. (See FAC at 7-79).

3

On December 13, 2024, defendant Barresi filed an Opposition to Emergency Motion ("Opposition").  (Docket No. 25).  On the same date, defendant Barresi filed a Motion to Dismiss the FAC.  (Docket No. 26).[7]

For the reasons set forth below, the Court recommends that the Emergency Motion be denied.

## II.

## DISCUSSION

**A.     The Emergency Motion Should be Denied.**

Plaintiff seeks a preliminary injunction "to protect against ongoing harassment and intimidation from Defendants."[8]  (Emergency Motion at 2; see also id. at 3 (alleging a preliminary injunction is being sought "to prevent contact with Plaintiff or legal consultants, stop interference and corrupt persuasion, [] to prevent unauthorized lookups of phone numbers, and to prevent intimidation of Plaintiff, [k]ey [w]itnesses, [p]rivate investigators, individuals, [and] legal consultants[.]), 5 (alleging that a preliminary injunction preventing improper communication will prevent the potential harm of intimidation and harassment of Plaintiff and witnesses, emotional distress to Plaintiff, increased legal costs to Plaintiff, and delay of legal proceedings), 11 ("Plaintiff respectfully requests an injunction to enforce communication restrictions, as the Defendants are a represented party.")).  Plaintiff alleges that a preliminary injunction is urgent:  "The urgency of this request is underscored by the need to prevent further harm to Plaintiff and key witnesses, including retired LAPD Licensed Private Investigator Mike McCormick, who has already been subjected to intimidation tactics post-service of the lawsuit."  (Id. at 2).

---

[7] Plaintiff's Opposition to the Motion to Dismiss the FAC is due on or before January 10, 2025.  (See Docket No. 27).

[8] Although Plaintiff seeks a preliminary injunction against Defendants, defendant Waldman has not been served with the Summons and Complaint, as noted above.  Therefore, a preliminary injunction against defendant Waldman would not be appropriate.

Attached to the Emergency Motion are the following exhibits: (1) A four-page Declaration of Mike McCormick, dated October 24, 2024 ("McCormick Decl."); (2) an email from Melissa Lerner, defendant Barresi's retained attorney, to Plaintiff on October 16, 2024, stating that: "Now that I have been retained by Mr. Barresi, all correspondence related to this matter will be from me or someone else in my office at my direction.;" (3) a document Plaintiff describes as an incoming call which shows "Plaintiff's legal consultant firm's employees were called on October 17th, 2024 through [d]efendant Barresi finding their private phone number with an unauthorized lookup (Emergency Motion at 2; see also id. at 10 (alleging that the incoming call evidences that on October 17, 2024, defendant Barresi "conduct[ed] an unauthorized lookup to find the private phone number of Plaintiff's legal consultants")); and (4) a social media post by defendant Barresi on October 2, 2024 which, after identifying this action, states, in an apparent reference to defendant Waldman, "I'm not a hitman. I don't care what the undertaker says." (See Emergency Motion at 25-36).[9]

     1.     Applicable Law.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted; italics in original); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

---

[9] The Court will not discuss defendant Barresi's October 2, 2024 post because Plaintiff does not make any attempt to explain how it supports her argument that defendant Barresi "continued to intimidate witnesses" after being served with the lawsuit (see Emergency Motion at 3).

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20; see Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 982 9th Cir. 2010) (citing Winter, 555 U.S. at 20).[10]  The same standard applies to both preliminary injunctions and temporary restraining orders.  Niu v. United States, 821 F. Supp. 2d 1164, 1167 (C.D. Cal. 2011); see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standards for issuing a preliminary injunction are "substantially identical" to the standards for issuing a temporary restraining order).  A plaintiff must "make a showing on all four prongs."  Cottrell, 632 F.3d at 1135; see also DISH Network Corp. v. F.C.C., 653 F.3d 771, 776 (9th Cir. 2011) ("To warrant a preliminary injunction, DISH must demonstrate that it meets all four of the elements of the preliminary injunction test established in Winter . . . .").

Additionally, where "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo *pendente lite*, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff."  Comm. of Cent. Am. Refugees

---

[10] The Ninth Circuit has provided an alternative formulation:  If the moving party "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest," he or she may demonstrate his or her right to a preliminary injunction by establishing "'serious questions going to the merits' and a balance of hardships that tips sharply [in his or her favor]." Farris v. Seabrook, 677 F.3d 858, 864 (9th Cir. 2012) (as amended) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011)).  "Some district courts have observed that Cottrell may be in tension with the Supreme Court's decision in Winter, as well as the Ninth Circuit's adoption of Winter[.]" P.P. v. Compton Unified. Sch. Dist., 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) (citations omitted).  In any event, even under a "sliding scale" analysis, the moving party must, at a minimum, demonstrate some chance of success on the merits.  See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 944 (9th Cir. 2013); Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007).

1  v. INS, 795 F.2d 1434, 1441 (9th Cir. 1986) (citations omitted), amended by 807

2  F.2d 769 (9th Cir. 1987); see also Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir.

3  2015) (en banc) ("Because [the plaintiff] seeks a mandatory injunction, she must

4  establish the law and facts *clearly favor* her position, not simply that she is likely to

5  succeed.") (italics in original).

6           2.       Analysis.

7                    a.       Likelihood of success on the merits.

8       Where a plaintiff is seeking a preliminary injunction based on harassment,

9  such as here, the "merits" does not refer to the plaintiff's underlying claims but rather

10 to the plaintiff's "ability to establish harassment that justifies injunctive relief."

11 Jeffrey Katz Chiropractic, Inc. v. iBeat, Inc., Case No. 20-cv-02097-RS, 2020 WL

12 4459122, at *2 (N.D. Cal. May 26, 2020) (citing United Artists Corp. v. United Artist

13 Studios, LLC, Case No. 2:19-cv-00828-MWF-MAA, 2019 WL 6917918, at *8

14 (C.D. Calk. Oct. 17, 2019). "[H]arassing speech is not protected [First Amendment]

15 speech."     Doe v. Fitzgerald, Case No. 2:20-cv-10713-MWF-RAO, 2022 WL

16 423495, at *4 (C.D. Feb. 2, 2022). "'When determining whether to enjoin a litigant's

17 harassing conduct, federal district courts may look to state substantive law on

18 harassment but apply the federal procedural rules under Federal Rule of Civil

19 Procedure 65.'"  Fitzgerald, 2022 WL 423495 at *4 (quoting Katz Chiropractic,

20 2020 WL 4459122, at *2).  Under California law, harassment is defined as follows:

21 "[U]nlawful violence, a credible threat of violence, or a knowing and willful course

22 of conduct directed at a specific person that seriously alarms, annoys, or harasses the

23 person, and that serves no legitimate purpose.  The course of conduct must be that

24 / / /

25 / / /

26 / / /

27 / / /

28

7

which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Cal. Code Civ. P. § 527.6(b)(3).

As proof of defendant Barresi's harassing conduct, Plaintiff essentially relies on two instances. (See Emergency Motion at 1-2, 10-11). First, on September 30, 2024, after defendant Barresi was served with the lawsuit, defendant Barresi left Mike McCormick, Plaintiff's former private investigator (on June 16, 2022 Plaintiff "requested that [he] be her private investigator related to witnesses being harmed as she was alarmed to," McCormick Decl. at 1), "an aggressive voicemail in which defendant Barresi "cursed [at him] several times stating 'that PI Juan Brooks,' and claimed that 'there could have been a soft landing.'" (McCormick Decl. at 2). Mr. McCormick perceived defendant Barresi's comments as "a direct threat to him, a threat to other private investigators, a threat to witness, and to" Plaintiff. (Id.). Second, although, on October 16, 2024, Plaintiff "received reassurance from [defendant Barresi's] own [c]ounsel that all correspondence would be directed to her, and/or someone else at Lavely and Singer's office, at her direction" (Emergency Motion at 2, citing Emergency Motion at 32 [October 16, 2024 email from Melissa Lerner to Plaintiff which states in pertinent part, "Now that I have been retained by Mr. Barresi all correspondent related to this matter will be from me or someone else in my office at my direction."]), on October 17, 2024, based on defendant Barresi's unauthorized lookup of Plaintiff's legal consultants' telephone number, Plaintiff's legal consultant firm's employees were called (Emergency Motion at 2, 10, citing Emergency Motion at 34 [an undated, alleged incoming call]).

With respect to Mr. McCormick's allegation about the September 30, 2024 voicemail, it is not clear that defendant Barresi's statements and curses were threats. Mr. McCormick does not provide any context or meaning to defendant Barresi's curses regarding private investigator Juan Brooks or to defendant Barresi's claim

there "could have been a soft landing."   Moreover, the last voicemail left by defendant Barresi for Mr. McCormick apparently was approximately one month before Mr. McCormick's Declaration (and approximately two months prior to the filing of the Emergency Motion).   Finally, while Plaintiff asserts that Mr. "McCormick has knowledge and information of over 20 potential witnesses within his more than two years related to these matters" and that Mr. McCormick "identifies the harassment and threatening nature of Defendants" (Emergency Motion at 1-2), Mr. McCormick's Declaration is replete with conclusory, non-specific, unfocused, and hearsay statements regarding defendant Barresi's alleged harassing and intimidating conduct.

As to Plaintiff's alleged unauthorized lookup of Plaintiff's legal consultants' telephone number, it is not clear that defendant Barresi did anything improper.  The image of the incoming call to Plaintiff's legal consulting firm does not indicate who made or received the call or even when the call was made, nor does it show that defendant Barresi was involved in the unauthorized lookup of a private telephone number. (See Emergency Motion at 34).  Moreover, although Plaintiff contends that defendant Barresi has "directly contacted" Plaintiff's legal consulting firm, despite explicit instructions from his counsel to refrain from such communication (Emergency Motion at 4; see also id. at 10 ["[The October 16, 2024] statement illustrates the understanding and intent of [defendant Barresi's] lawyer to restrict communications through appropriate channels.  [Defendant Barresi] blatantly did not comply with his lawyer's intent."]), the October 16, 2024 email from Plaintiff's retained counsel to Plaintiff did not contain instructions for defendant Barresi to refrain from directly contacting Plaintiff's legal consulting firm (see Emergency Motion at 32), and Plaintiff has not pointed to any other evidence which prevented defendant Barresi from contacting or attempting to contact Plaintiff's legal consulting firm or anybody else associated with this case.

Plaintiff has not put forth sufficient evidence that defendant Barresi has engaged in harassing conduct.[11]   Therefore, Plaintiff has not shown either "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person" or a course of conduct "which would cause a reasonable person to suffer substantial emotional distress." See Cal. Code Civ. P. § 527.6(b)(3).

Accordingly, Plaintiff has failed to show a likelihood of success on the merits.[12]

     b.  Irreparable harm.

Plaintiff claims that she will suffer irreparable harm if a preliminary injunction is not issued. (See Emergency Motion at 21 ["The Defendant's actions have created a climate of fear and intimidation, jeopardizing Plaintiff's ability to pursue legal rights."; and "Given the ongoing nature of Defendants' intimidation tactics, immediate injunctive relief is necessary to prevent further harm."]; see also id. at 5-6 ["If the Defendants engage in improper communications, it may create an atmosphere of intimidation, making it difficult for the Plaintiff and [w]itnesses to participate fully in legal proceedings."; "Any unauthorized communication may also extend to witnesses involved in the case, leading to potential intimidation or coercion."; "Unauthorized contact by the Defendants can cause severe emotional distress to the Plaintiff, particularly if such communications are threatening or harassing in nature."; "Violations of the rules concerning communication can lead to protracted legal battles, requiring the Plaintiff to incur additional legal fees and

---

[11] The Court is not stating that defendant Barresi did not engage in harassing conduct. Rather, the Court is stating that Plaintiff has made an insufficient showing.

[12] Plaintiff asserts that defendant Barresi's communications have violated various rules, including Eastern District of California Local Rule 183 and California Rule of Professional Conduct 2.9. (See Emergency Motion at 10-11, 16-18).  However, those rules are inapplicable to defendant Barresi and are irrelevant to whether Plaintiff has shown a likelihood of success on the merits.

costs."; and "Unauthorized communications and failure to adhere to proper service protocols can result in unnecessary delays in the legal process."]).

"A preliminary injunction may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury."  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999). "Suffering irreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'"  Fitzgerald, 2022 WL 423495, at *6 (citation omitted).  A party seeking a preliminary injunction must not identify a speculative harm and must show more than the possibility of remote further injury. See Winter, 555 U.S. at 21-22 (rejecting "possibility" standard and holding that the plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction") (italics in original); Fitzgerald, 2022 WL 423495, at  *6 ("Further, the harm identified may not be speculative and Defendant must also show more than the possibility of some remote further injury.") (citing Winter, 555 U.S. at 21-22).

Plaintiff has failed to show she is likely to suffer irreparable harm in the absence of preliminary relief.  Plaintiff did not file the Emergency Motion until more than three weeks after defendant Barresi's last "aggressive voicemail" to Mr. McCormick (and substantially longer for much of the other allegedly harassing and intimidating conduct described by Mr. McCormick, see McCormick Decl. at 1-3). See Miller v. California Pacific Medical Center, 991 F.2d 536, 544 (9th Cir. 1993) ("[A] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").  Plaintiff merely speculates about the harms she will suffer.

/ / /

/ / /

/ / /

/ / /

See Williams v. Green Valley RV, Inc., Case No. 8:15-cv-01010-ODW-MRW, 2015 WL 4694075, at *2 (C.D. Cal. Aug. 6, 2015) ("A moving party cannot merely produce evidence of 'unsupported and conclusory statements regarding harm [plaintiff] *might* suffer.") (citation omitted; italics in original); see also Emergency Motion at 6 (stating she will suffer "potential harms").[13]

c.    Balance of equities.

Plaintiff contends that the balance of hardships tips "decisively" in her favor. (Emergency Motion at 22).  Plaintiff claims that "[g]ranting this injunction will not unduly burden the Defendants, while denying it would leave Plaintiff vulnerable to continued harassment and intimidation."  (Id.).

"In assessing the balance of equities, the court must assess the likely hardship to both the plaintiff and the defendants if the court were to deny the injunction on one hand or grant the injunction on the other."  Macnab v. Gahderi, Case No. 2:09-cv-04498-DDP-RZ, 2009 WL 10671026, at *7 (C.D. Cal. July 28, 2009) .

Defendant Barresi asserts that granting a preliminary injunction will prevent him from contacting Plaintiff and other witnesses about this case, thereby hindering his investigation of Plaintiff's claims.  (Opposition at 6).

As discussed above, Plaintiff's assertion that without a preliminary injunction she will suffer irreparable harm is speculative.  On the other hand, defendant Barresi's ability to defend himself in this case could be hampered if a preliminary injunction is granted.  Based on the evidence before the Court and the arguments of the parties, the Court is unable to find that the balance of hardships weighs in Plaintiff's favor.

/ / /

---

[13] While the Court's finding renders it unnecessary for the Court to address the two other criteria for granting a preliminary injunction under Supreme Court and Ninth Circuit standards, the Court nonetheless will address the two other criteria for the sake of completeness.

Therefore, Plaintiff has failed to show that the balance of equities tips in her favor.

           d.     Public interest.

Plaintiff argues that a preliminary injunction will serve the public interest for numerous reasons, such as "maintaining the integrity of the judicial process," "safeguarding individuals from intimidation and harassment," and "ensur[ing] that the judicial process remains fair and accessible to all." (Emergency Motion at 11-12, 18-20).

Plaintiff justifies the granting of a preliminary injunction based on lofty public interest ideals. However, Plaintiff's attempt to obtain a preliminary injunction appears to be more personal in nature. Since Plaintiff has failed to show defendant Barresi engaged in a course of harassment, as discussed above, granting a preliminary injunction in this case would not serve the public interest.

Thus, Plaintiff has not shown that an injunction is in the public interest.

In sum, Plaintiff has failed to satisfy any of the four criteria for obtaining a preliminary injunction.

## III.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) Approving and accepting this Report and Recommendation; and (2) denying Plaintiff's Emergency Motion for Preliminary Injunction.

DATED: December 23, 2024

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

13

**NOTICE**

Reports and Recommendations may be subject to the right of any party to file Objections as provided in the Local Rules and review by the District Judge whose initials appear in the docket number.