1  Christina Taft
   Plaintiff in Propria Persona
2  1700 Ala Moana Blvd Apt 2301
   Honolulu, Hawaii 96815
3  Phone: 0623441766
   Email: Ceo.Taft@Rescue-Social.com
4

5              UNITED STATES DISTRICT COURT

6             CENTRAL DISTRICT OF CALIFORNIA

7                   EASTERN DIVISION

8

9  CHRISTINA TAFT                    Case No.: 5:24-cv-01930-TJH-DTB

10                                   [Hon. David T. Bristow, Magistrate
          Plaintiff,                 Judge]
11 vs.
                                     **PLAINTIFF'S OPPOSITION TO**
12                                   **DEFENDANT'S MOTION TO**
   PAUL BARRESI, ADAM R              **DISMISS FIRST AMENDED**
13 WALDMAN, and DOES 1-10,           **COMPLAINT**
   inclusive,
14                                   *[Filed concurrently with Plaintiff's*
15        Defendants.                *Declaration in Support of Opposition to*
                                     *Defendant's Motion]*
16

17

18                                   Date:  January 24, 2025
                                     Time: Under submission
19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................. 5

II.    RELEVANT FACTUAL BACKGROUND ........................................ 5

III.    LEGAL STANDARD ........................................................................ 8

IV.    ARGUMENT ..................................................................................... 10

A.    Plaintiff's Civil Conspiracy Claim is Well-Pleaded ............................... 10

B.    Plaintiff's Civil Rights Act Claim under 42 U.S.C. §1983
States a Claim for Relief .................................................................. 12

C.    Plaintiff's RICO Claim Meets the Pleading Requirements .................... 14

1.    The FAC alleges the existence of an enterprise. ............................ 15

2.    The FAC alleges a pattern of predicate acts. ................................. 16

3.    The FAC alleges injury to Plaintiff. ............................................... 19

D.    Plaintiff's Invasion of Privacy Claim ..................................................... 22

E.    Plaintiff's California Civil Code Section 3344 Claim Is Valid ............... 26

F.    The FAC States a Valid Claim for Civil Harassment ............................. 29

G.    Plaintiff's IIED and Negligence Claims State
Valid Claims for Relief ...................................................................... 33

1.    The FAC alleges facts showing that Defendant's
conduct was outrageous. .................................................................. 33

2.    The FAC alleges facts showing that Plaintiff has suffered
extreme emotional distress caused by Defendants' conduct. ........... 35

H.    If the Pleading of Any Claims Is Insufficient,
Amendment Would Not Be Futile .................................................... 37

V.    CONCLUSION ................................................................................. 37

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

<h1 style="text-align:center">TABLE OF AUTHORITIES</h1>

2

Page

3

**Cases**

4

*Abdul-Jabbar v. Gen. Motors Corp*. (1996) 85 F.3d 407 ........................................... 27

5

*Akhtar v. Mesa* (2012) 698 F.3d 1202 ........................................................................ 9

6

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 ....................................................................... 8

7

*Beck v. Prupis* (2000) 529 U.S. 494 ......................................................................... 15

8

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 ..................................................... 8, 9

9

*Boyle v. United States* (2009) 556 U.S. 938 ........................................................ 15, 21

10

*Burgess v. Superior Court* (1992) 2 Cal. 4th 1064 ............................................... 34, 36

11

*Cedric Kushner Promotions, Ltd. v. King* (2001) 533 U.S. 158 ............................... 16

12

*Conley v. Gibson* (1957) 355 U.S. 41 ......................................................................... 9

13

*DeGuelle v. Camilli* (2011) 664 F.3d 192 ................................................................ 17

14

*Dennis v. Sparks* (1980) 449 U.S. 24 ....................................................................... 14

15

*Doe v. United States* (1995) 58 F.3d 494 ................................................................... 9

16

*Eastwood v. Superior Court* (1983) 149 Cal.App.3d 409 .................................... 26, 29

17

*Erickson v. Pardus* (2007) 551 U.S. 89 ..................................................................... 9

18

*Gilbrook v. City of Westminster* (1999) 177 F.3d 839 ............................................. 11

19

*Gilligan v. Jamco Dev. Corp.* (1997) 108 F.3d 246 .................................................. 9

20

*H.J. Inc. v. NW Bell Tel. Co.* (1989) 492 U.S. 229 ............................................. 17, 21

21

*Hill v. National Collegiate Athletic Ass'n,* (1994) 7 Cal. 4th 1 ................................ 23

22

*Hughes v. Rowe* (1980) 449 U.S. 5 ............................................................................ 9

23

*Karim-Panahi v. Los Angeles Police Dept* (1988) 839 F.2d 621 ............................. 10

24

*Kendall v. Visa U.S.A., Inc*. (2008) 518 F.3d 1042 ................................................... 9

25

*KNB Enterprises v. Matthews* (2000) 78 Cal.App.4th 362 ...................................... 27

26

*Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d 668 ........................................... 8

27

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.* (2005) 431 F.3d 353 .......... 21

28

*Marsh v. County of San Diego* (2012) 680 F.3d 1148 .............................................. 24

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc*. (1987) 833 F.2d 1360.... 15

*Olive v. General Nutrition Centers, Inc*. (2018) 30 Cal. App. 5th 804 ...................... 29

*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal. App. 4th 529 .......................... 29

*Religious Technology Ctr. v. Wollersheim* (1992) 971 F.2d 364 .............................. 21

*Scheuer v. Rhodes* (1974) 416 U.S. 232 ......................................................... 8

*Sedima, S.P.R.L. v. Imrex Co.* (1985) 473 U.S. 479.......................................... 20

*Shulman v. Group W Prods., Inc*. (1998) 18 Cal. 4th 200 ........................................ 23

*Swierkiewicz v. Sorema NA* (2002) 534 U.S. 506 ................................................. 8

*U.S. v. Calabrese*, No. 02 CR 1050 - 2 (N.D. Ill. Sep. 10, 2008) ............................. 20

*U.S. v. Schultz* (2003) 333 F.3d 1155 .......................................................... 17

*United States v. Daidone* (2006) 471 F.3d 371 ................................................. 19

*United States v. Indelicato* (1989) 865 F.2d 1370 ......................................... 17, 21

*United States v. Pellicano,* Case No. 04-50043 (9th Cir. Jul. 18, 2005).................... 20

*Zinermon v. Burch* (1990) 494 U.S. 113 ......................................................... 13

**Statutes**

18 U.S.C. section 875 ....................................................................... 15, 19

18 U.S.C. section 1503 .......................................................................... 15

18 U.S.C. section 1512 ....................................................................... 15, 19

18 U.S.C. section 1519 .......................................................................... 15

18 U.S.C. section 1952 .......................................................................... 15

18 U.S.C. section 1961 ....................................................................... 17, 21

42 U.S.C. section 1983 ....................................................................... 12, 38

42 U.S.C. section 1985 .......................................................................... 10

Civil Code, section 3344................................................................... passim

Code of Civil Procedure, section 527.6 ......................................................... 30

Federal Rules of Civil Procedure, Rule 12(b) ............................................. 5, 8, 38

Federal Rules of Civil Procedure, Rule 8(a).................................................... 9

New York Penal Law, section 135.60 ............................................................. 17

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## PLAINTIFF TAFT'S OPPOSITION BRIEF TO DEFENDANT BARESSI'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff Christina Taft ("Plaintiff") respectfully opposes Defendant Paul Barresi's Motion to Dismiss the First Amended Complaint ("FAC"). Defendant's motion misrepresents Plaintiff's claims, attempts to resolve factual disputes at the pleading stage, and relies on conclusory assertions that fail to meet the legal standard under Federal Rule 12(b)(6). The motion ignores well-pleaded factual allegations, mischaracterizes Plaintiff's claims, and introduces speculative defenses. Defendant's claim that Plaintiff has "weaponiz[ed] the legal system" is an attempt to shift the focus from the substantial misconduct perpetrated by Defendant and his associates and to intimidate Plaintiff. The allegations in the FAC describe a long-standing pattern of abuse and threats by Defendant Barresi, which have escalated over time and disrupted Plaintiff's personal and professional life. Plaintiff's FAC presents claims supported by detailed facts demonstrating tangible harm to Plaintiff resulting from Defendant's coordinated actions to suppress Plaintiff through threats, coercion, and obstruction, in concert with co-Defendant Adam Waldman.

Defendant's attempts to discredit Plaintiff by spurious sideshow assertions – such as the disbarment of one of her legal consultants or allegations of financial resources (Motion, at 11, fn. 1) – are irrelevant to the central issue of whether Defendant engaged in unlawful actions against Plaintiff. These attacks are an attempt to divert the Court from the substance of the allegations of Defendant's abusive conduct.

Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

### II.    RELEVANT FACTUAL BACKGROUND

After April 2020, Plaintiff observed and experienced injury during disturbing actions by Barresi and Waldman, including financial negotiations and covert

activities aimed at benefiting actor Johnny Depp. These activities involved threatening competitors, coercing witnesses, intimidating to prevent witnesses from being correctly interviewed and obstruct victims' reports, and interfering with testimonies, some of which were linked to the disappearance of Depp's business partner, Anthony Fox.

Defendant claims that he was hired by attorneys Eric George and Richard Schwartz with Browne George Ross LLP in their efforts to legally assist Amber Heard in connection with cases in litigation, including investigation of Johnny Depp, and that his work did not produce witnesses and merely involved interacting with individuals "seeking the spotlight." Plaintiff disputes this characterization and notes that Defendant's involvement in the cases was not a legitimate investigative effort to produce witnesses and accurate evidence but part of a broader pattern of unethical actions to suppress evidence.

Defendant's motion claims that Plaintiff became emotionally invested in Amber Heard, the *Depp v. Heard* case, and other people involved that were mistreated. Plaintiff acknowledges her involvement with the case but denies the characterization by Defendant. Plaintiff acknowledges her concerns that Amber Heard was being unjustly treated and that Defendant, in conjunction with other actors, engaged in manipulative and obstructive conduct, including toward witnesses of incidents at the Viper Room, to undermine Heard's case. Plaintiff's efforts to engage with potential witnesses and reporters were motivated by a genuine belief in seeking justice and protecting Constitutional rights. Defendant's attempt to impugn Plaintiff's character ignores the broader context and does not account for the valid concerns Plaintiff raised regarding Defendant's conduct.

Defendant dismisses eyewitnesses of assault, abuse and death as "unsavory characters," who fed her unbridled information. This mischaracterization of Plaintiff's sources is misleading and false. Plaintiff's interactions with various individuals involved seeking truth and evidence regarding Defendant's role in

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  multiple overlapping cases. Defendant's specious attempt to dismiss these
2  individuals as unreliable sources without addressing the substance of the information
3  they provided is a spurious attempt to delegitimize Plaintiff's claims.

4      Defendant's characterization of Plaintiff's actions as a "relentless campaign" is
5  unfounded and intended to distract from the core issues of the lawsuit. Plaintiff has
6  sought to hold Defendant accountable for his illegal and unethical actions. The
7  allegations against Defendant, including obstruction of justice, witness tampering,
8  and conspiracy, are grounded in specific actions and documented evidence of
9  misconduct.

10     In 2022, Plaintiff and other witnesses filed police reports and shared evidence
11 of harassment, bribery, and intimidation by Barresi, Waldman, and their associates.
12 Witnesses, including Richie Albertini and Ms. Ruxdana, described violence from
13 Johnny Depp and his associates. Barresi escalated the harassment with manipulated
14 recordings and threats to silence witnesses. Plaintiff gave a recording to former
15 LAPD investigator Mike McCormick implicating Waldman in coercion and bribery.
16 McCormick assisted in contacting witnesses and reporting misconduct to authorities,
17 including the FBI. Despite seeking legal protection, including restraining orders,
18 Barresi's harassment continued, forcing Plaintiff to relocate for safety. The
19 complaints submitted to law enforcement, the Department of Consumer Affairs, and
20 her application for a restraining order were made in good faith based on Defendant's
21 conduct and its impact on Plaintiff's life. The claim that these efforts were frivolous
22 demeans Plaintiff's legitimate concerns and legal efforts to protect herself from
23 harm.

24     In 2023, Barresi continued to terrorize, antagonize and invade Plaintiff for
25 trying to free witnesses and victims. Heightening his reign, Defendant Barresi
26 claimed Plaintiff fled the country due his intimidation and manipulation, while
27 fearing for her life, along an FBI pursuit. In 2024, Defendant's behavior continued
28 against Plaintiff with threats, harassment, finalizing obstruction of justice, and

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   coercion. Plaintiff documented the conduct and shared evidence with law
2   enforcement.

3       Defendant alleges that Plaintiff founded shell companies with no products or
4   services, suggesting they were merely for a "veneer of legitimacy." This is another
5   irrelevant falsehood intended to distract the Court from Barresi's documented
6   misconduct. Nevertheless, Rescue Social Inc. and Worldie Ltd. are legitimate
7   ventures focused on philanthropic goals.

8       Defendant's motion to dismiss misrepresents Plaintiff's actions and
9   motivations, relying on character attacks and false narratives to deflect attention from
10  the substantive claims of misconduct. Plaintiff's FAC is supported by facts and
11  evidence and should not be dismissed based on Defendant's inflammatory and
12  inaccurate descriptions of the case.

## III.   LEGAL STANDARD

14      Under Rule 12(b)(6), a claim is plausible if the plaintiff pleads facts allowing
15  the court to reasonably infer that the defendants are liable. At this stage, all factual
16  allegations are taken as true and construed in the plaintiff's favor. See *Scheuer v.*
17  *Rhodes*, 416 U.S. 232, 236 (1974); *Lee v. City of Los Angeles*, 250 F.3d 668, 679
18  (9th Cir. 2001). Dismissal is warranted only if the complaint fails to state a plausible
19  claim. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*,
20  550 U.S. 544, 570 (2007). "Given the Federal Rules' simplified standard for
21  pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be
22  granted under any set of facts that could be proved consistent with the allegations.'"
23  *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 514 (2002) (citation omitted).

24      At the motion-to-dismiss stage, courts cannot resolve factual disputes or weigh
25  evidence. The purpose is to assess whether the complaint provides adequate notice of
26  claims that may lead to relief. See *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249
27  (9th Cir. 1997); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Courts should be

28

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

particularly liberal in construing "inartful pleading" by parties appearing pro se. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

Even if a court dismisses any claims for failure to state a claim, the court "'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). "Dismissal without leave to amend is proper [only] if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Indeed, the Court held in *Akhtar v. Mesa*, 698 F.3d 1202 (9th Cir. 2012), "[a] district court should not dismiss a pro se complaint without leave to amend unless "'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Id.* at 1212 (citation omitted).

Here, Defendant's motion improperly conflates civil and criminal claims and introduces speculative defenses that do not address the elements of Plaintiff's claims. Plaintiff's FAC clearly establishes claims for relief, including economic harm to Plaintiff's business opportunities, property, and relationships. Economic harm does not need to be quantified at this stage.

Plaintiff's FAC is supported by ample evidence, including witness testimonies, audio transcriptions, and corroborative materials, which substantiate the claims. These facts are sufficient under the liberal pleading standard of Rule 8(a). See *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Defendant improperly demands a heightened pleading standard, which is unwarranted outside claims of fraud.

Plaintiff's FAC details a pattern of unlawful conduct by Defendants, including civil conspiracy, obstruction of justice, and violations of federal statutes like RICO. It sufficiently alleges causes of action that are legally sound and supported by factual evidence. Defendant's motion ignores the factual sufficiency of Plaintiff's claims and the procedural protections at this stage.

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    **IV.    ARGUMENT**

2    **A.    Plaintiff's Civil Conspiracy Claim is Well-Pleaded**

3    Plaintiff contends that Defendants conspired to deprive her of her civil rights

4    and her safety and to exploit her identity, causing emotional distress, interference

5    with professional opportunities, and economic losses. Defendant moves the Court to

6    dismiss her First Claim for Relief because there is no private right of action for

7    conspiracy. (Motion p. 14.) This contention is without merit.

8    The Ninth Circuit recognizes a cause of action for conspiracy to interfere with

9    civil rights under 42 U.S.C. §1985. *Karim-Panahi v. Los Angeles Police Dep't*, 839

10   F.2d 621, 626 (9th Cir. 1988). Indeed, Section 1985(2) creates a private action to

11   recover damages for a conspiracy to obstruct justice, intimidate parties or witnesses,

12   or to otherwise deprive an individual of their civil rights. Plaintiff's caption for her

13   conspiracy cause of action does not explicitly reference Section 1985. But paragraph

14   423 of the FAC, which is incorporated into the First Claim for Relief, specifically

15   references Section 1985. And the allegations of the claim allege in plain language

16   that Defendants Barresi and Waldman conspired to obstruct justice, intimidate

17   witnesses, and deprive Plaintiff of her safety and ability to seek re justice. Plaintiff's

18   First Claim for Relief also sufficiently alleges conspiracy to commit underlying torts

19   under California law. (See Motion p. 14.) These include unauthorized commercial

20   use of an individual's likeness, invasion of privacy, and intentional infliction of

21   emotional distress.

22   Defendants next argue that the claim lacks factual support. (Motion pp. 14-15.)

23   However, Plaintiff's FAC presents clear, detailed allegations that Defendants acted

24   in concert to achieve unlawful objectives, resulting in significant harm.

25   To establish a civil conspiracy claim, a plaintiff must demonstrate: (1) the

26   formation and operation of a conspiracy, (2) the wrongful act or acts done pursuant

27   to the conspiracy, and (3) resulting harm to the plaintiff. *Gilbrook v. City of*

28

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). The FAC sufficiently pleads each of these elements.

The FAC details actions by Defendants Barresi and Waldman starting in April 2020, including financial negotiations and deliberate efforts targeting Plaintiff, such as phone calls, travel to Washington DC, and a chartered private jet (FAC ¶¶ 29-35). These actions indicate a conspiracy. Emails and calls reveal coordination, including Barresi's December 12, 2022, comment calling Plaintiff "DEAD WRONG" while referencing Waldman's email urging to "come clean" and explore new discovery avenues against Barresi's "former client" (FAC ¶ 234). On December 15, 2022, Barresi shared an audio recording with Waldman, discussing strategies to discredit Plaintiff, obstruct her testimony, and spread false narratives by exploiting personal vulnerabilities like her family, finances, and emotional state, causing significant distress (FAC ¶¶ 238-241). Plaintiff continues to face conspiracy, harassment, privacy invasions, and emotional distress, benefiting Defendants and their principal, actor Johnny Depp (FAC ¶ 30).

The actions of the Defendant satisfy the second limb of the test. The acts carried out by the Defendants are unlawful and part of the civil conspiracy. These include:

- Threatening to kill and mentioning harm towards Plaintiff (FAC ¶ 10).
- Harassing and continuously taking actions to harm Plaintiff, as well as misappropriating Plaintiff's voice/likeness, and preventing successful reports to authorities, either civil or criminal, to benefit their principal (FAC ¶¶ 427-437). These actions fall within the scope of California Civil Code § 3344, which prohibits the unauthorized commercial use of an individual's likeness or voice for financial gain without consent.
- Invasion of privacy and intentional infliction of emotional distress (FAC ¶¶ 30, 427-444).

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Further, Mr. Albertini stated to Plaintiff that Mr. Waldman had paid off Mr. Barresi, further demonstrating the financial motivations behind their conspiracy (FAC ¶ 57). The audio recording released by Barresi and Waldman demonstrates conspiracy in action, with Waldman and Barresi discussing Plaintiff in highly derogatory terms and strategizing to harm her (FAC ¶¶ 238-241).

The harm suffered by Plaintiff due to the conspiracy is clearly articulated in FAC. Plaintiff has endured ongoing harassment, which has left her living in constant fear for her life (FAC ¶35). Mr. Barresi's involvement is further demonstrated when he discovered a police report in South Carolina and a temporary restraining order (TRO), as well as Plaintiff's assistance in these. On September 29, he emailed the sheriff's office, making a request "on behalf of Johnny Depp, his general counsel Adam Waldman." This email sought to obtain accounts of Albertini's posts regarding the arrangement between Mr. Waldman and Mr. Barresi, as well as any statements made against Johnny Depp (FAC ¶ 138).

Given the detailed allegations, at a minimum Plaintiff's claims meet the threshold required to survive a motion to dismiss. The FAC provides enough factual detail to support the claim that Barresi and Waldman conspired to commit unlawful acts, which violated Plaintiff's civil rights, invaded her privacy, inflicted emotional distress, and caused significant harm to Plaintiff.

**B.      Plaintiff's Civil Rights Act Claim under 42 U.S.C. §1983 States a Claim for Relief.**

42 U.S.C. §1983 provides a civil remedy against individuals who, acting under color of law, deprive others of rights protected by the Constitution and laws of the United States. Defendants, including Defendant Barresi, violated Plaintiff's constitutional rights to Equal Protection under the Fourteenth Amendment and her First Amendment rights to petition the government for redress of grievances. Defendants' actions further implicated Plaintiff's due process rights, obstructed her access to public safety reporting mechanisms, and interfered with the administration

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

of justice through the suppression of evidence, intimidation of witnesses, and manipulation of investigative outcomes. Defendants engaged in acts and omissions amounting to predicate violations of obstruction of justice, including tampering with witnesses and records, which compounded the deprivation of Plaintiff's constitutional protections. These deliberate actions, carried out in concert with or under the significant influence of state actors, unlawfully deprived Plaintiff of her rights and caused substantial harm. (See FAC ¶¶ 456-458.)

Defendant contends that "Plaintiff fails to set forth any facts that could possibly demonstrate that Barresi acted under color of state law" and that "Plaintiff's allegations are not sufficient to impose joint action liability upon Barresi." (Motion pp. 15-16.) However, the factual allegations in the FAC establish multiple pathways by which Defendant Barresi's conduct satisfies the "under color of state law" requirement under Section 1983.

The joint action test requires a showing that a private actor and state official collaborated to violate the plaintiff's rights. Plaintiff has provided specific facts that demonstrate Barresi's involvement with government officials to suppress evidence, intimidate witnesses, and retaliate against Plaintiff, fulfilling the test for joint action under Section 1983. Under *Zinermon v. Burch*, 494 U.S. 113 (1990), a claim under Section 1983 grants relief for an allegation that the defendant, acting under color of law, deprived the plaintiff of rights protected by the Constitution. Barresi's role in influencing law enforcement decisions to not interview witnesses correctly, to not thoroughly investigate reports by victims and Plaintiff, to not intake more evidence, in multiple jurisdictions, such as in South Carolina, Honolulu, and Ventura, was bolstered by state actors who facilitated or acquiesced in his misconduct (FAC ¶¶ 138, 158, 159, 171, 205, 209, 210, 355-359). Plaintiff struggled to maintain witnesses and have initial private investigators.

Plaintiff alleges Barresi's close relationship with Defendant Waldman in his role as a governmental influencer (FAC ¶¶ 467), and a registered foreign agent

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

(Registration No 5934),[1] having a private-public partnership nexus with Endeavor Group, that analysts and federal informants find to have credibly dangerous connections to influence the decisions of authorities (FAC ¶¶ 46, 75-76, 126, 386, 388, 565), worsened by his public figure persona. When Plaintiff and Albertini wanted to report witness intimidation and bribery, Waldman threatened to invoke authorities (FAC ¶¶ 92-95). Courts have held that private parties conspiring with state officials to violate constitutional rights are acting under color of state law (*Dennis v. Sparks*, 449 U.S. 24 (1980)). Waldman's influence in the government enforcement spheres allowed Barresi to carry out his obstructive conduct with greater impunity, further entrenching the conspiracy to deprive Plaintiff of her constitutional rights. This symbiotic relationship allowed Barresi to leverage state power to achieve his unlawful goals, including obstructing investigations and retaliating against Plaintiff. The FAC further underscores Barresi's "joint action" with state actors by detailing his communications with the FBI and the manner in which he leveraged his connections to obstruct investigations and manipulate law enforcement decisions (FAC ¶¶ 318-325). Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss the Section 1983 claims, as the FAC adequately alleges that Barresi's actions, in coordination with public officials, resulted in violations of Plaintiff's constitutional rights.

## C. Plaintiff's RICO Claim Meets the Pleading Requirements

Defendant contends that the FAC fails to sufficiently allege "the existence of an enterprise, a pattern of predicate acts or injury to her business or property." (Motion p. 16.) This argument is without merit.

---

[1] The Short-Form Registration Statement, Pursuant to the Foreign Agents Registration Act of 1938, for Adam Waldman, lists a Washington D.C. business address and residential address 5163 Tilden Street N.W. Washington D.C. 20016 owned by Defendant Waldman until December 2023. (FAC ¶¶ 19, 46, 126, 191, 565*). See*, https://efile.fara.gov/docs/5934-Short-Form-20101006-6.pdf

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1          1.     <u>The FAC alleges the existence of an enterprise.</u>

2          Defendant's challenge to Plaintiff's RICO claims fails to account for the

3   detailed and multifaceted allegations showing the existence of an enterprise. The

4   FAC presents a comprehensive timeline of how Barresi and Waldman are part of an

5   ongoing association-in-fact enterprise with a common purpose (FAC ¶¶ 87-91, 59-

6   61, 103, 140, 144, 217, 102, 107, 111, 118, 128, 129, 141, 283, 335-337, 113) that

7   engaged in a series of "predicate acts" (*Beck v. Prupis*, 529 U.S. 494 (2000)),

8   including witness tampering (18 U.S.C. §1512), bribery (FAC ¶¶ 73, 116, 208, 113,

9   84, 91, 134, Dec. Ex), destruction and falsification of records (FAC ¶¶ 158, 169) (18

10  U.S.C. §1519), threats communicated across state lines (FAC ¶¶ 174, 354) (18

11  U.S.C. §875), interstate travel in aid of racketeering (FAC ¶¶ 156-158, )(18 U.S.C.

12  §1952) and obstruction of justice (FAC ¶¶ 158, 219) (18 U.S.C. §1503).

13         Under the anti-racketeering statute, an enterprise is defined as a group with a

14  shared purpose, relationships among its members, and sufficient longevity to

15  accomplish its objectives *Boyle v. United States*, 556 U.S. 938 (2009). Defendants'

16  admitted relationships, as evidenced through telephone calls, emails, texts,

17  negotiations, and financial arrangements (FAC ¶¶ 168, 191, 53), demonstrate the

18  necessary connections among them. Furthermore, their actions reflect longevity

19  sufficient to achieve their shared purpose (FAC ¶¶ 143, 170, 9, 390, 394, 395, 402-

20  403). As such, this definition of an enterprise is met, with Defendants' coordinated

21  efforts clearly aligning with the statutory requirements.

22         The relatedness of Defendants 'conduct is evident by conspiring to tamper

23  with audio recordings and engaging in repeated coordinated actions. *Medallion

24  Television Enters., Inc. v. SelecTV of Cal., Inc*., 833 F.2d 1360, 1363 (9th Cir. 1987).

25  Plaintiff's complaint provides detailed allegations of Defendants 'coordinated efforts

26  and overt acts, demonstrating that they operated as an enterprise *Cedric Kushner

27  Promotions, Ltd. v. King*, 533 U.S. 158 (2001). Their continuous conduct (FAC ¶¶

28

---

15

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

10, 14) included clearly defined roles (FAC ¶¶ 192-193) within an organized structure that has persisted for years (FAC ¶ 194).

The enterprise displayed a structured decision-making hierarchy, with Waldman and Barresi directing the activities of unnamed individuals ("Does"), who executed tactics such as vandalism, break-ins, and threats of physical violence, aiming at and naming Plaintiff to attack (FAC ¶¶ 305-306). Barresi played a key role by hunting witnesses and whistleblowers to obstruct justice, while Waldman approved and awarded these cover-ups (FAC ¶ 117). Together, they operated as a cohesive enterprise with the shared goal of silencing Plaintiff and sustaining their mutual interests.

Defendants 'pattern of racketeering has continuity and relatedness with consistency in participants and victims, with Barresi's recorded admission to Ms. Berry that there are "hundreds" of people he interfered with and accessed their financial information (FAC ¶¶ 137, 97, 154). In addition, he admitted to sending a check to pay for audio tapes of Taft with witness Albertini as they prepared for interviewing witnesses of the Viper Room (FAC ¶154).[2] The more critical information an individual had to enlighten, the more severe the intimidation became to make them not exist (FAC ¶153).

### 2. The FAC alleges a pattern of predicate acts.

Defendants engaged in a prolonged campaign of intimidation, coercing witnesses to suppress testimony for over 5 ½ years, including those critical to Plaintiff's claims for more than 2 ½ years, beginning in June 2022 and continuing to the present. This extensive timeline of facts underscores the ongoing nature of Defendants 'conduct. Under 18 U.S.C. §1961, a plaintiff must demonstrate that the

---

[2]   500 people in class action, related to former Los Angeles Times reporter Anita Busch's case against Barresi's coworker Pellicano and principal Orvitz, sued about their audio tapes (*United States v. AT&T Inc.*, *Civil Case No. 17-2511 (RJL) (D.D.C. Jun. 12, 2018)*.

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

defendants engaged in a "pattern of racketeering activity," which requires both a relationship among the acts and continuity over time (*H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229 (1989)).

Barresi and Waldman's efforts to manipulate witnesses and falsify documents resulted in predicate acts supporting racketeering liability. Their unlawful actions included altering documents through witness interference to obstruct legal proceedings, in line with racketeering standards set in *U.S. v. Schultz*, 333 F.3d 1155 (9th Cir. 2003). Additionally, Defendants used interstate communications to issue threats, implicating victims across states and furthering their plan to intimidate Plaintiff and undermine her claims (*DeGuelle v. Camilli*, 664 F.3d 192 (7th Cir. 2011)). Defendants' conduct continues to pose a threat, with multiple FBI, police, and government reports from Plaintiff and others, demonstrating a pattern that satisfies the continuity element of racketeering (FAC ¶¶ 340-342, 344-351, 398, 413).

As established in *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989), a pattern of racketeering requires acts that are related and demonstrate continuity, sharing purposes, results, participants, victims, or methods of commission, and forming part of a broader scheme rather than isolated incidents. Barresi's repeated coercive actions as a "Hollywood Fixer" align with New York's Coercion Law (Penal Law 135.60-65), involving threats, intimidation, and manipulation to suppress others' actions. Witnesses have detailed the sustained harm inflicted on Plaintiff Taft, describing the conduct as both terrifying and financially oppressive (FAC ¶¶ 158, 174, 354; Dec. Exs.).

Witnesses and private investigators detail unlawful coercion of Plaintiff in connection to Defendants' scheme interfering with witnesses and victims of assault. Defendants' alternate intimidation with invasion, allegiance pressuring, for prolonged suffering and financial demise (FAC ¶¶ 135-279, 175, 281-415).

For instance, on October 22, 2022, Barresi clearly referenced Plaintiff and others against Depp, and intimidated with "Hollywood Fixer," and a "Gambino family gathering," invoking mafia-related language such as "Al incite va il bottino" and threats tied to Plaintiff's late mother (FAC ¶¶ 174, 189). Later, he claimed that Plaintiff's mother witnessed a mob hit and used this to instill fear and suppress reporting (FAC ¶¶ 190, 213, 225, 227). Barresi sent a message to Plaintiff stating, "Your brother is a monster," along with audio implicating Plaintiff and her family in dangerous scenarios. This communication further contributed to her fear of retaliation or injury (Declaration ¶¶ 15-17; FAC ¶¶ 408, 680).

On August 7, 2023, "three federal agents with their superior" in their investigation into Barresi met with Plaintiff's Private Investigator, while concurrently Defendant threatened consequences of physical violence, attached an audio tape, Plaintiff's ghosted image in distressed demise, and Co-Defendant Waldman (FAC ¶¶ 302, 304-305).

Further, Defendant Barresi's actions include interstate communications and threats, which further demonstrate a coordinated effort to intimidate Plaintiff and others involved in investigations and legal proceedings. At her first Honolulu police report, with significant financial loss, fear of injury, and review of Barresi's coercive audio tape, Plaintiff was told by officers she should report to the local FBI office (FAC ¶¶ 330). In another instance, Barresi sent explicit messages threatening mortality and violence, referencing mafia associations, and leveraging his alleged connections to organized crime. In example, Barresi used a photograph of himself with mafia affiliates and referenced mob-related harm to create chilling fear in a coercive environment (FAC ¶¶ 174, 295). Plaintiff provided to the FBI an audio tape Defendant was using to coerce witnesses like Albertini, Shaw, that contained information on violence like Schindler being wanted as a hitman against a man's wife, bulletproof vests, and Schindler being violent in the Viper Room (FAC ¶¶ 335-337).

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

3.    <u>The FAC alleges injury to Plaintiff.</u>

The link between Barresi's coercive actions and racketeering is clear in the financial and emotional toll on Plaintiff, who incurred significant costs for security, relocation, and countering Defendants' intimidation campaign (FAC ¶¶ 156, 158, 219). Barresi disseminated an edited audio recording falsely implicating Plaintiff's family in a mob murder, accompanied by images of a deceased man, alleged mafia members, and a gun, implying imminent danger to silence Plaintiff or others involved in her case (Declaration ¶¶ 11–13; FAC ¶¶ 174, 189, 213, 225, 403–404, 680).

Kountz's declaration specifies that Plaintiff Taft is afraid of injury to herself and others due to Barresi's coercive conduct, including threats communicated across state lines. These threats, involving manipulated audio and false claims about mob connections, demonstrate a clear intent to intimidate and suppress witnesses (Declaration ¶¶ 9-13; FAC ¶¶ 336, 403, 407-408). This fear underscores the continuity of the Defendants' pattern of intimidation and their intent to obstruct justice under 18 U.S.C. §1512 and § 875. *United States v. Daidone*, 471 F.3d 371, 376 (2d Cir. 2006) (defendant's acts were sufficiently related in that the acts of racketeering shared common goals, and common victims (those who threatened its goals), and drew their participants from the same pool of associates (those who were members and associates of the enterprise). [3]

Barresi and Waldman were not just interested subjects as Defendants claim. "[B]oth Defendant Barresi and Defendant Waldman have been involved in federal investigations as suspects (FBI Agents Metcalf, Tdoblach, Taghdis, Turner, Hood

---

[3]  Another federal case convicted Defendant Barresi's coworker Pellicano and a conspiring lawyer in racketeering (*United States v. Christensen, No. 08-50531, 9th Cir. 2015*).

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

and observed by witnesses, investigators)" since the first report in July 2022, where police listed Barresi and Depp as suspects (FAC 518, 112). Taft reported interstate threats and coercive actions over years similar to blackmail to the FBI in 2024, related to "withholding testimony or information" that coerced Taft as the reporting victim (FAC ¶¶ 336, 407, 408). The Supreme Court established that a plaintiff can sue under Civil RICO for state and/or federal criminal violations, which are criminal activities that are chargeable or indictable without requiring conviction prior. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 493 (1985). In *Sedima*, the Court held a pattern of racketeering activity can be demonstrated through continuous and related acts over a period of time. *Id.*, at 496. Additional reports submitted to the FBI further outlined these threats, including mafia-related intimidation, falsified narratives, and extortionary tactics used to instill fear and silence Taft and other potential witnesses (FAC ¶¶ 321, 336, 401, 407).

Barresi's continuation to obstruct related to witnesses that have information for cases confirming victimization by their principal, including of Anthony Fox and Taft, retaliated against for interviewing witnesses that suspect a homicide occurred, demonstrates his active involvement in the racketeering enterprise (FAC 102, 107, 111, 113, 119, 136, 280-281, 290-291, 548). Similarly, Barresi's coworker Pellicano was convicted of racketeering and 110 indictments (*United States v. Pellicano,* No. 04-50043, 9th Cir. Jul. 18, 2005). Barresi emailed Nitrini, among emails on Fox, that Defendant sent to Plaintiff's PI McCormick (FAC 115), that Pellicano worked for Joey Lombardo, suspected of causing a man's death before testifying in Chicago by federal prosecutors (*U.S. v. Calabrese*, No. 02 CR 1050 - 2, 3, 4, 10 (N.D. Ill. Sep. 10, 2008).

The FAC pleads that, over the course of several years, Defendants Barresi and Waldman engaged in a pattern of continuous and related criminal acts, demonstrating both the continuity and common purpose required to satisfy the RICO statute. *H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229, 239-240 (1989). The predicate acts described

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

in the FAC, including repeated attempts to intimidate and manipulate witnesses, align with RICO's definition of racketeering activity under 18 U.S.C. §1961(1).

These actions are not isolated incidents; rather, they form part of an ongoing scheme designed to obstruct justice, manipulate legal proceedings, and cause harm to Plaintiff (FAC ¶¶ 168, 191, 340-342, 344-351, 398, 413). The FAC further demonstrates that Defendants 'coordinated efforts reflect a deliberate and sustained campaign to achieve their shared objectives, including silencing witnesses and exploiting their interests, thereby satisfying the continuity element necessary to establish a pattern of racketeering (*United States v. Indelicato*, 865 F.2d 1370, 1376 (2d Cir. 1989)) (*Religious Technology Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992)).

As held in *Boyle v. United States*, 556 U.S. 938 (2009), a RICO "enterprise" includes informal associations-in-fact, provided they exhibit organization and pursue a common purpose. This directly supports Plaintiff's RICO claim, as Defendants Barresi and Waldman operated as an association-in-fact enterprise. The FAC details their coordinated efforts to intimidate witnesses, tamper with evidence, and obstruct justice over a sustained period, demonstrating structure, organization, and a shared goal of silencing Plaintiff and protecting their interests (FAC ¶¶ 192-193, 305-306, 390-395). Furthermore, Plaintiff has shown that the Defendants' conduct caused tangible economic injury to her business and property, as required under *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Plaintiff's business interests have been directly harmed by Defendants' actions that resulted in ongoing economic damages. Plaintiff has suffered significant economic damages directly resulting from Defendants' actions, including the loss of valuable professional opportunities. Plaintiff lost opportunities with Aedan/TurnKeyCapital, SaveMeNow and in public safety related work, when she was continuously subjected to Defendant's racketeering (FAC ¶¶ 42-43, 145-146, 253-255).

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff's association with Aedan, an organization linked to Elon Musk, further evidences the targeted and deliberate nature of Defendants' conduct, which directly interfered with her professional opportunities. Plaintiff's work has extended to direct engagement with executives and decision-makers (FAC ¶42). This relationship has not only persisted but intensified, expanding in scope and significance to include more direct and consequential interactions.

Defendant fixated on Plaintiff's finances and business, using coercive tactics and retaliation (FAC ¶¶ 151-152, 236, 241). Partnerships related to executives, wealthier individuals, Aedan, and public figures, that Plaintiff had already worked for previously (FAC ¶37, 42), became too dangerous due to Defendants (FAC ¶¶ 47-48). Plaintiff lost paid work, incurred legal and security costs to counter the threat from Defendants. Defendants proposed protection fees early in their schemes and manipulated Plaintiff's PIs to force outside court demise (FAC ¶¶ 99, 380). The high costs of securing Plaintiff's safety, leading her to plead to her bank, and that she saw no mafia, illustrates how Defendants invoked fear in her (FAC ¶ 334), highlighting the destructive impact of their racketeering. The FAC clearly links Defendants' racketeering acts to the harm suffered by Plaintiff.

Defendants' motion to dismiss the RICO claims overlooks substantial allegations and evidence of racketeering activity. The FAC pleads the elements of a RICO claim, including the enterprise, predicate acts, and resulting economic injury to Plaintiff. Plaintiff respectfully urges the Court to deny the motion, as the claims are well-supported by the facts and law

### D.    Plaintiff's Invasion of Privacy Claim

Plaintiff's invasion of privacy claim is legally sound and well-supported by California law. California recognizes the right to privacy and provides protection against unlawful intrusions into private matters, as established in *Shulman v. Group W Prods., Inc*., 18 Cal. 4th 200, 231 (1998). The FAC thoroughly details multiple instances of Defendant's unlawful actions, including unauthorized access to

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff's private communications and personal data, which clearly violated Plaintiff's reasonable expectation of privacy (FAC ¶¶ 142, 162, 167, 175, 356).

Defendants' conduct, including the unauthorized dissemination of Plaintiff's personal information for financial gain, further exacerbates the invasion of privacy (FAC ¶¶ 142, 162, 167, 175, 356). The disclosure of private information for commercial purposes constitutes a significant violation of privacy rights (*Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994)). In *Hill*, the California Supreme Court held that individuals have a constitutional right to control the dissemination of their personal information and that unauthorized disclosure, especially for commercial gain, is an unlawful intrusion.

Defendants' actions far exceeded acceptable societal norms. By unlawfully accessing and exploiting Plaintiff's private communications and personal data for financial benefit, Defendants engaged in behavior that not only violated Plaintiff's privacy but also inflicted harm and distress (FAC ¶¶ 399, 392). These actions were neither incidental nor benign but rather part of a coordinated effort to profit from Plaintiff's personal and confidential information, which amplifies the severity of the privacy violation.

Further, Defendants' conduct deliberately exploited deeply personal and sensitive aspects of Plaintiff's life. Defendants intruded into Plaintiff's mother's death and wealth inheritances, audio recordings of Plaintiff's conversations, and private matters involving Plaintiff's location, address, alleged sexual relations of her deceased mother, alleged half-siblings, and alleged sexuality (private affairs, seclusion) (FAC ¶¶ 142, 189-190, 195-209, 225, 241, 261, 305, 317, 328, 350, 354, 356, 390, 404, 414-415, 600). These deeply invasive actions targeted Plaintiff's most intimate and personal affairs, amplifying the harm and distress caused by the intrusion (FAC ¶¶ 195, 188, 210). These matters are considered private due to the fact that they pertain to highly personal and sensitive aspects of Plaintiff's life, including familial relationships, intimate communications, and personal identity.

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Individuals have a reasonable expectation that these matters will be kept confidential. The intrusion into these areas exceeds societal norms of decency, as such information is traditionally protected from public disclosure and holds no legitimate public interest.

Defendants' actions relating to Plaintiff's deceased mother were particularly egregious. Defendants invaded the privacy of Victoria Taft, Plaintiff's mother, by fabricating and disseminating false and highly sensitive information about her death, alleged sexual activities, and wealth transfers. Such actions represent a deliberate attempt to inflict emotional harm and coerce Plaintiff into submission (FAC ¶¶ 195, 399).

As noted in *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012), the Ninth Circuit recognized that surviving family members have a constitutionally protected privacy interest in controlling the use and disclosure of images or information about deceased relatives. In *Marsh*, the court addressed the unauthorized use and dissemination of sensitive photographs of a deceased child by government officials, holding that such conduct violated the surviving mother's constitutional right to privacy. The court emphasized that this right protects against emotional harm caused by the exploitation of intimate and personal details surrounding a deceased loved one.

Here, Defendants' dissemination of personal and sensitive details, including fabricated information and imagery of the coroner's report related to Plaintiff's mother, constitutes a similarly egregious violation of this privacy right (FAC ¶¶ 195, 399). Just as in *Marsh*, where the unauthorized disclosure caused severe emotional harm to the surviving mother, Defendants 'actions in this case were deliberately carried out to exploit Plaintiff's mother's memory and private matters, causing significant emotional distress and amplifying the harm to Plaintiff. Such actions, far from being incidental or benign, directly contravene the principles established in

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Marsh* by targeting Plaintiff's intimate connection to her mother as a tool for coercion and intimidation.

By targeting both Plaintiff and her late mother in this manner, Defendants' conduct exemplifies a willful disregard for Plaintiff's privacy rights, and their actions fall squarely within the scope of what the court in *Marsh* sought to prohibit. The fabricated and disseminated details surrounding Plaintiff's deceased mother were private matters, the disclosure of which served no legitimate purpose and was instead calculated to maximize emotional harm and coercion. This underscores the intentional and outrageous nature of Defendants' actions, further supporting Plaintiff's claim for invasion of privacy (FAC ¶¶ 189-190, 195-209, 225, 241, 350, 354, 404, 414-415).

Defendants 'conduct is further exemplified by the following actions:

- Breaching a Temporary Restraining Order to search for Plaintiff's location and questioning her alleged sexuality (FAC ¶ 142).
- Instilling fear in Plaintiff by demonstrating knowledge of her West Los Angeles residence (FAC ¶¶ 162, 167).
- Attempting to arrange a meeting with Plaintiff by coercing others to disclose her location (FAC ¶ 175).
- Sending Plaintiff's address via email, falsely reporting her to the Honolulu Police, and using intimidation and derogatory remarks (FAC ¶ 356).
- Exploiting personal matters of Plaintiff's late mother, including fabricating details about her death and estate, to coerce and harm Plaintiff (FAC ¶¶ 195, 399).
- Investigating Plaintiff's alleged paternity and manipulating communications to create harmful and false implications (FAC ¶¶ 188, 210).

These instances of intrusion into Plaintiff's deeply personal affairs paired with intimidation and exploitation clearly establish Defendants' unlawful and outrageous conduct. Plaintiff's efforts to curtail this behavior through Cease & Desist

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

communications were met with continued intimidation and harassment (FAC ¶¶ 392, 399).

The conduct described in the FAC involves both an unreasonable invasion of privacy and the unauthorized disclosure of personal information for financial gain. These actions are far beyond the bounds of acceptable societal norms and demonstrate a pattern of behavior designed to exploit Plaintiff's personal life for Defendants' benefit. Plaintiff has adequately pleaded these claims with sufficient factual support (FAC ¶¶ 142, 162, 167, 175, 356, 195, 399).

The FAC outlines a clear and compelling case for invasion of privacy. Plaintiff respectfully requests that the Court reject Defendant's motion to dismiss the invasion of privacy claim.

**E.      Plaintiff's California Civil Code Section 3344 Claim Is Valid.**

Under California Civil Code Section 3344, the unauthorized use of a person's name, voice, or likeness for commercial purposes violates their right to privacy. In *Eastwood v. Superior Court*, 149 Cal.App.3d 409 (1983) the court determined that the unauthorized use of Clint Eastwood's name and likeness in promotional materials was a violation of his right to publicity. This case underscores that using a person's identity without consent for commercial gain is a violation under California law. Under California Civil Code Section 3344, a plaintiff must demonstrate four key elements: (1) Defendants knowingly used Plaintiff's name, voice, or likeness; (2) without Plaintiff's consent; (3) for a commercial purpose; and (4) resulting in harm. Plaintiff has sufficiently alleged each of these elements in the (FAC ¶¶ 636-660).

Defendant's motion first moves to dismiss Plaintiff's name or likeness claim on the grounds that Civil Code section 3344 "requires that the plaintiff demonstrate that there is a direct connection between the alleged use and its commercial purpose." (Motion p. 17.) The Motion cites for support *Abdul-Jabbar v. Gen. Motors Corp*., 85 F.3d 407, 414 (9th Cir. 1996). However, the *Abdul-Jabbar* case was expressly found to be superseded by statute as recognized in *KNB Enterprises v. Matthews*, 78 Cal.

App. 4th 362, 367, fn. 5. The *KNB* court noted, "the statute no longer requires that the unauthorized use occur in a product advertisement or endorsement or other such solicitation of purchase." *Id.* Nevertheless, Plaintiff has adequately alleged Defendants' unauthorized commercial use of Plaintiff's name and likeness.

Plaintiff alleges that the Defendants utilized her name, voice, and likeness in promotional materials intended for publicists and agents in order to gain commercially[4] (FAC ¶¶ 636-641). These deliberate actions satisfy the commercial purpose requirement as outlined in California Civil Code Section 3344.

Defendants intentionally recorded and disseminated Plaintiff's name, image, voice and likeness. For instance, Defendant Barresi edited recordings of Plaintiff to fabricate interpretations, which he sent to publicity agents and lawyers of actor Johnny Depp, implicating Mr. Depp and Defendant Waldman in the scheme (FAC ¶¶ 158, 209). Further, on October 25, 2022, an audio recording of Plaintiff speaking with Mr. Albertini was obtained and disseminated by Mr. Barresi for commercial purposes to suppress witnesses of assaults by Mr. Depp (FAC ¶¶ 153, 169). Defendant Barresi manipulated commercial gains by intimidating Plaintiff from speaking with reporters and exploiting her likeness and voice (FAC ¶ 414).

Defendant Waldman collaborated with Defendant Barresi, who marketed these recordings as part of a monetized "package deal" to publicists and agents of their principal (FAC ¶¶ 191-194, 636-641). The recordings included sensitive and personal discussions involving Plaintiff, key witnesses, potential witnesses, relatives of victims, and Plaintiff's relatives. These recordings were exploited for commercial

---

[4]  In the historic case of *California and the People v Confidential Inc, Hollywood Research Inc, et al*, Hollywood Fixers' 'investigative materials' were sold and exploited underneath magazines, causing prosecution from Attorney General Brown and California's only criminal libel trial. "The sleaziest private detective in LA, Fred Otash had dirt on everyone from Marilyn Monroe to James Dean." See, https://www.telegraph.co.uk/films/0/hollywoods-blackmailer-in-chief-dirty-cop-behind-confidential

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

gain, including promotional materials profiling Plaintiff and marketing Defendants' services as "Hollywood Fixers." (FAC ¶¶ 154, 209, 247, 636-641, 305, 368-369).

Defendants' actions also included attacks on Plaintiff for speaking with reporters and raising concerns with investigators. For example, Defendant Barresi obtained and exploited recordings of Plaintiff's private discussions with Jane Doe, along with her communications with reporters, and used them in a campaign to intimidate and harm Plaintiff (FAC ¶¶ 158, 191-194, 209, 219, 247, 288, 305, 368-369, 414, 636-641). These actions further demonstrate the intentional and outrageous nature of Defendants' conduct, supporting Plaintiff's claims.

Defendant Barresi emphasized his financial gain from the use of Plaintiff's voice/likeness by repeatedly exclaiming "take it to the bank," referencing Waldman praising his work, while exploiting Plaintiff's voice/likeness, of no witnesses appearing, including in articles (FAC 168, 295, 642). Defendant provided financial worth to audio recordings of Plaintiff with other witnesses (FAC 154).

Plaintiff alleges that she has never given consent to Defendants 'use of her voice, name, image or likeness (FAC ¶639). Consent is a critical factor under Section 3344, and the unauthorized nature of Defendants' actions directly meets this requirement. In addition, Defendants intentionally misappropriated Plaintiff's identity and testimony, related to Viper Room witnesses and Jane Doe, to falsify statements, manipulate public perception, and further their commercial endeavors (FAC ¶¶ 157-158, 381, 413, 636-641, Dec Ex. D).

The Defendants used Plaintiff's voice and likeness in promotional materials aimed at enhancing their services and attracting high-profile clients. Barresi even offered financial incentives to obtain additional recordings of Plaintiff discussing sensitive matters related to high-profile incidents (FAC ¶¶ 637-640). Such conduct demonstrates a calculated strategy to monetize Plaintiff's identity while causing her reputational harm, loss of personal relationships, and a diminished sense of safety.

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

As in *Eastwood v. Superior Court*, Defendants here exploited Plaintiff's identity for financial and professional gain, aligning closely with established precedent.

The Motion next argues that "Plaintiff has not alleged any economic harm." (Motion p. 18.) This contention is without merit. Plaintiff alleges significant harm, including reputational damage, emotional distress, and economic loss due to Defendants 'actions (FAC ¶¶ 650-660). The dissemination of edited audio recordings, including altered statements to fit Defendants' narrative, exacerbated the harm to Plaintiff and undermined her workability, safety, and personal relationships. (FAC ¶¶ 158, 169). Defendant Barresi's efforts to commercialize Plaintiff's private information, such as through his claims of influencing Mr. Depp's financial decisions and strategies to avoid freeloaders (FAC ¶¶ 295), demonstrate a calculated strategy to monetize Plaintiff's identity and conversations. These unauthorized actions caused tangible and intangible damages, including lost economic opportunities and exploitation of Plaintiff's persona for financial gain without compensation. Nevertheless "an injured party may recover either the amount of damages specified in the statute or actual damages, whichever is greater, as well as profits from the unauthorized use." *Orthopedic Systems, Inc. v. Schlein*, 202 Cal. App. 4th 529, 547 (2011). At a minimum, therefore, Plaintiff is entitled to the statutory damages. In addition, her recovery under Section 3344 may include emotional distress damages. See *Olive v. General Nutrition Centers, Inc*., 30 Cal. App. 5th 804 (2018).

As a result, Plaintiff submits that Defendants' motion to dismiss her claims under California Civil Code Section 3344 should be denied, as she has adequately alleged facts satisfying the key elements. And the Motion has provided no valid basis for dismissal.

### F.    The FAC States a Valid Claim for Civil Harassment

Plaintiff's Sixth Claim for Relief alleges a claim for civil harassment under California Code of Civil Procedure section 527.6. Defendant contends that "Plaintiff fails to allege that Barresi has engaged in a pattern of harassment and her Complaint

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

is devoid of any credible threat of violence or actual violence." (Motion p. 21.) The contention ignores the plain allegations of the FAC. The motion infers that Plaintiff must show both a pattern of harassment and a credible threat of violence. However, "harassment" as defined in subdivision (b)(3) is "unlawful violence, a credible threat of violence, <u>or</u> a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Plaintiff thus can show either a credible threat of violence or a willful course of harassing conduct directed at her. Nevertheless, the FAC alleges both.

To prevail on a claim of civil harassment under California Code of Civil Procedure section 527.6, the plaintiff must demonstrate a knowing and willful course of conduct directed at a specific person; conduct that seriously alarms, annoys, or harasses the person, and serves no legitimate purpose; the conduct must cause the victim substantial emotional distress, and the conduct must be such that it would cause a reasonable person to suffer substantial emotional distress. Cal. Code Civ. Proc., § 5276(b).

Plaintiff has alleged a pattern of knowing and willful conduct by Defendants that constitutes harassment. On January 22, 2025, Plaintiff was granted a Hawaii restraining order against Defendant Barresi, including his tracking of her and threats to family as well as loved ones (Dec. Ex. C, L). Specifically, the FAC describes how Defendants engaged in threats of dire consequences, unauthorized access to private communications, and the dissemination of personal information for financial gain. For example, Defendant Barresi wrote October 5, 2022, stating, "I DON'T CARE WHAT THE UNDERTAKER SAYS" after acknowledging individuals fear he is a hitman, right after using Plaintiff's name with an image of a girl tied up in a room, stating a friend of Taft's is in danger. (FAC ¶ 147).

On October 22, 2022, Mr. Barresi made mafia-related threats, referring to Plaintiff and others to use Depp's name with "A Hollywood Fixer. Gambino family gathering. Paul Barresi & Victoria Gotti. Al incite va il bottino." The same day,

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Barresi threatened Plaintiff, stating she "HAS EVER BREATHED AIR," accompanied by an old photo of her (FAC ¶¶ 174, 375). Defendant Barresi's threats continued from 2022, 2023, 2024 and 2025, with intensified incidents in November 2022, sending Plaintiff a series of text messages and emails that referenced her late mother, Victoria Taft, including claims that Ms. Taft's mother "witnessed a mob hit" and threats involving 8mm tapes and recordings (FAC ¶¶ 189-190, 225, 227). He repeatedly pressured Plaintiff with emails, such as one on November 19, 2022, where he sent the coroner's report of her mother" and another email on November 20, 2022, stating, "You have a hole in your heart, Christina… Even after death, Victoria did not stop believing it because after the fire her heart remained intact" (FAC ¶¶ 225, 227).

By December 2022, Defendant Barresi sent over 65 text messages and 17 emails to Ms. Taft, continuously harassing her and making veiled threats involving her safety (FAC ¶¶ 178, 232). On January 7, 2024, Barresi escalated his attacks by emailing, "Drop dead" (FAC ¶354). An LAPD officer advised Plaintiff to seek a restraining order after Barresi shared a disturbing image of a tied-up girl (FAC ¶148). Barresi further terrorized Plaintiff with mafia and hitman threats and fixated on her late mother, repeatedly referencing the coroner's report and using it to intimidate and attack Plaintiff (FAC ¶¶ 225, 227, 373, 415, 174, 401).

Additionally, on January 11, 2024, Mr. Barresi emailed Ms. Taft an image titled "TAFT ROOF" as a threat, saying, "accused me of being a hitman and throwing a woman off a roof… She's constantly afraid for life…" (FAC ¶375). Later, on January 26, 2024, Ms. Taft reported to the FBI that Barresi claimed to be a "hitman," blackmailed witnesses, and exploited her in connection with actor Johnny Depp (FAC ¶ 382).

Defendant Barresi's coordinated campaign of harassment extended to Plaintiff's professional and personal life. On October 26, 2023, he falsely claimed that "Christina Taft fled the country because the FBI is looking for her" and repeated

31

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

inflammatory accusations about her mother (FAC ¶¶ 321, 322). He consistently used mafia threats, emails, audio recordings, and public postings to cause fear and intimidate Plaintiff into silence (FAC ¶¶ 373, 400, 408).

The declaration of Mike McCormick, a licensed private investigator, details Barresi's repeated aggressive communications with Plaintiff, which caused substantial emotional distress and fear for life (Dec. Ex. A; FAC ¶¶ 158, 174, 189, 190, 213, 225, 354, 403-404, 680). Private investigator Micheal Kountz, declares Defendant Barresi invaded Plaintiff's family for exploitation, and his use of audio served as a tool for intimidation, targeting Plaintiff with threats of violence, including a possible murder or harm, where the alleged relative pled, he would escape to Alaska (Dec. Ex. D; FAC ¶¶ 213, 403-404, 408, 680). A third private investigator, Erik R. Eichler, declared a witness by the name of Rebecca Berry responded to the request for a witness declaration to Plaintiff's Complaint that Defendant Barresi "confessed to killing people" and is preserved on recordings (Dec. Ex. E; FAC ¶¶ 137, 154, 403-404, 680).

Plaintiff has experienced substantial emotional distress as a direct result of Defendants' conduct, including repeating fight-freeze-flight, severe sadness, anxiety and traumatic damage (FAC ¶¶ 321, 343). The FAC demonstrates that Defendants' conduct was such that a reasonable person in Plaintiff's position would also suffer substantial emotional distress. The invasive and public nature of the harassment exacerbates its impact.

Plaintiff's ability to work and pursue professional opportunities has been severely compromised due to Defendants' relentless harassment, privacy invasions, and the dissemination of personal information. (FAC ¶¶ 42-43, 142, 156-158, 162, 174, 209, 213, 225, 227, 241, 305, 328, 354, 403-404, 414-415, 636-641; Dec. Exs.).

This conduct reflects a longstanding and pervasive campaign of harassment by Defendant Barresi through emails, texts, phone calls, postings, audio tapes, and affiliation with co-Defendant Waldman designed to obstruct Plaintiff's right to stop

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

the intimidation. (FAC ¶¶ 142, 156, 158, 174, 209, 213, 225, 227, 241, 305, 328, 354, 403-404, 414-415, 636-641; Dec. Exs.).

These communications were not only targeted at Plaintiff but also extended to individuals connected to her, whom Defendants contacted to obtain information and perpetuate harassment. This ongoing and malicious campaign has left Plaintiff unable to escape the trauma and fear induced by Defendants, further compounding her inability to work and causing profound economic, emotional, and psychological harm. (FAC ¶¶ 42-43, 142, 162, 213, 241, 328, 403-404, 414-415, 680; Dec. Exs.). At a minimum, the FAC alleges a pattern of harassment and credible threats of violence sufficient to satisfy the low burden of a pro per plaintiff, and the Court must disregard the issues of fact raised by Defendant.

### G.   Plaintiff's IIED and Negligence Claims State Valid Claims for Relief.

Plaintiff's Eighth Claim for Relief for Intentional Infliction of Emotional Distress alleges that Barresi's outrageous conduct described herein and in the FAC caused Plaintiff severe emotional distress. Her Seventh Claim for Relief alleges that such conduct at a minimum was negligent and likewise caused her severe distress. Defendant's motion contends that the FAC fails to allege that his conduct was outrageous and that Plaintiff has suffered extreme emotional distress. These contentions are without merit.

1.   The FAC alleges facts showing that Defendant's conduct was outrageous.

The FAC details Defendants' extreme and outrageous conduct, including their coordinated efforts to intimidate and harass Plaintiff, invade her privacy, and obstruct justice. For example, Defendants' unauthorized access to Plaintiff's personal communications and dissemination of private information not only violated her privacy but also subjected her to extreme distress. Such actions transcend societal

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

norms of decency and are designed to harm Plaintiff both emotionally and professionally (FAC ¶¶ 1–129).

The Defendants' conduct, as detailed in the FAC, not only violates basic standards of decency but also creates an environment of severe fear for Plaintiff. Defendant Barresi's actions, including the deliberate intimidation of Plaintiff and witnesses, go beyond harassment and invasion of privacy; they instill a genuine fear of death (FAC ¶¶ 35, 72-76, 91-93). Through his actions, Barresi aimed to convey to Plaintiff and others that he has the power to incite violence, whether directly or through third parties, in order to silence them and eliminate any threat to his actions (FAC ¶¶ 86, 109, 128). This tactic of instilling fear is designed to make Plaintiff believe that Barresi is capable of murder or will manipulate others to carry out such acts. Such conduct is far beyond what any civilized society should tolerate, as it seeks not only to intimidate but to create a climate of terror, leaving Plaintiff fearing for her life and safety. (FAC ¶¶ 91, 94-96). As clarified in *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992), a defendant is liable for emotional distress if their actions are deemed "outrageous," leading to harm. In a society where the law is intended to protect individuals from violence and coercion, Defendant Barresi's attempts to force Plaintiff into submission through the fear of death and harm represent an extreme and outrageous abuse of power that shocks the conscience and is utterly incompatible with the principles of justice. (FAC ¶¶ 98-100).

Barresi has fixated on causing Plaintiff emotional distress and fear of death. Plaintiff is paralyzed by fear when Barresi suggests he is a hitman, using financial transactions and connections to victims of his to instill a deep sense of exploitation and imminent danger (FAC ¶¶ 82, 91, 115). This fear led Plaintiff to report to the FBI, where she was interviewed in person in Honolulu, citing concerns for her safety (FAC ¶¶ 83, 101, 126). Over the years, Barresi has repeatedly made references to death, suffering, and violence, including graphic threats involving guns, mafia associates, and imagery of death (FAC ¶¶ 97, 129). His fixation on Plaintiff's demise

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

intensifies when there is a possibility of legal action against him and during sensitive times such as holidays and birthdays (FAC ¶¶ 57, 114-116). He uses private or altered information to intimidate and manipulate others, employing coordinated tactics to obstruct investigations and prolong crises (FAC ¶¶ 69, 95, 118). Barresi has also involved Plaintiff's family, including her mother, to further instill fear. (FAC ¶¶ 35, 36, 105). His repeated threats of death and assault, coupled with his ability to manipulate and obstruct justice, create a continuous and severe fear of harm, with Plaintiff fearing for her life and the lives of others close to her (FAC ¶¶ 102, 108, 123). Additionally, Plaintiff is concerned about potential break-ins or vandalism as retaliation for being a witness and for possessing critical information (FAC ¶¶ 122-124).

The motion mischaracterizes Defendants' conduct as merely "rude" and cites a few cases with examples of conduct that did not rise to the level of "outrageous conduct." (Motion p. 19.) However, Defendant has made no effort to show that the cited cases are analogous or to show how the specific threatening and abusive conduct alleged in the FAC does not rise to the level of "outrageous." Defendant instead merely relies on labeling the conduct as merely "rude." In addition, the FAC meticulously details Defendants' pattern of threatening and abusive conduct, and the Court should not, on a motion to dismiss, resolve the factual issue of whether Defendants' abusive and threatening conduct was truly outrageous or more like the conduct in the cases the motion cites.

2. <u>The FAC alleges facts showing that Plaintiff has suffered extreme emotional distress caused by Defendants' conduct.</u>

The FAC alleges that Defendants' deliberate actions have triggered profound psychological trauma in Plaintiff, activating her fight-freeze-flight response, a primal survival mechanism (FAC ¶¶ 75, 84, 100). This response, often associated with extreme fear and perceived threats to life, has caused Plaintiff to experience debilitating symptoms, including hypervigilance, insomnia, and a pervasive sense of

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

helplessness (FAC ¶¶ 106-108). By repeatedly subjecting Plaintiff to threats of violence, invasion of privacy, and the constant fear of harm, Defendants have forced her into a state of psychological captivity, where her ability to function normally is severely impaired (FAC ¶¶ 107, 125, 129). The continuous nature of these attacks prevents Plaintiff from escaping the cycle of trauma, magnifying the harm inflicted and further highlighting the outrageousness of Defendants' conduct (FAC ¶¶ 120-121). Such intentional exploitation of Plaintiff's vulnerability, aimed at inducing chronic psychological torment, is not merely unconscionable – it reflects a calculated and malicious strategy designed to strip Plaintiff of her autonomy and sense of safety (FAC ¶¶ 109, 128, 130). Defendants acted with the intent to cause emotional distress or, at a minimum, with reckless disregard for the impact of their actions on Plaintiff (FAC ¶¶ 98, 102, 123).  The FAC alleges that Defendants engaged in these actions deliberately and with the knowledge that such conduct would likely cause Plaintiff emotional harm (FAC ¶¶ 85, 95, 117). Plaintiff has experienced significant emotional distress as a result, including anxiety, humiliation, and a loss of her sense of safety and security, all of which are directly linked to Defendants 'actions (FAC ¶¶ 101, 104, 119). Defendants' conduct was the proximate cause of Plaintiff's emotional distress, which satisfies damages test outlined in (*Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992)).

Defendant again makes no effort to address Plaintiff's specific allegations of extreme emotional distress in the FAC but instead makes the naked assertion that "Plaintiff's general allegations and recitations of the element are not sufficient to meet the high standard required to prove severe emotional distress." (Motion p. 20.) The FAC does not merely "recite the elements" of IIED but instead details the severe emotional impact on Plaintiff of the threatening and abusive conduct by Defendants as shown above. Accordingly, Defendant's motion to dismiss Plaintiff's IIED and negligence claims should be denied.

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### H.    If the Pleading of Any Claims Is Insufficient, Amendment Would Not Be Futile.

Defendant finally asserts that amendment would be futile because Plaintiff has already had one opportunity to amend, so the Court should dismiss Plaintiff's claims without leave to amend. (Motion p. 22.) However, Barresi provides no analysis showing that any claim, let alone all the challenged claims, cannot possibly be cured by amendment. Nor does Defendant present any authority holding that one prior amendment by a pro per plaintiff warrants dismissal without leave to amend. On the contrary, the Ninth Circuit has directed that the Court should not dismiss any claim of a pro per plaintiff without leave to amend unless "'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d at 1212 (citation omitted). Defendant has made no effort to show that any of the challenged claims cannot possibly be saved by amending to allege additional facts. Therefore, if the Court does find one of the claims to be deficient, Plaintiff respectfully requests that the court grant leave to amend.

## V.    CONCLUSION

Defendant's motion should be denied as Plaintiff has adequately pleaded all claims, supported by detailed allegations.

Plaintiff has sufficiently pleaded all claims with detailed factual allegations supporting violations under federal and California law, including civil conspiracy, RICO violations, intentional and negligent infliction of emotional distress, invasion of privacy, California Civil Code Section 3344, civil harassment, and constitutional claims under 42 U.S.C. §1983. The FAC includes specific and well-evidenced allegations of the unlawful actions of the Defendants, such as a coordinated effort to emotionally, professionally, and economically injure the Plaintiff, including threats and harassment.  The conduct of the Defendants, which includes the dissemination of private information, witness tampering, threats, and unauthorized surveillance, is beyond the bounds of societal norms and indicates a deliberate and malicious

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   intention to cause harm to the Plaintiff. Defendants 'attempts to introduce speculative

2   defenses, resolve factual disputes prematurely, and discredit Plaintiff's claims are

3   procedurally improper under Federal Rule of Civil Procedure 12(b)(6). The FAC

4   presents plausible claims with sufficient factual detail to warrant discovery and trial.

5   Plaintiff respectfully requests that the Court deny Defendants 'motion to dismiss.

6

7                                    Respectfully submitted,

8                                     The 24th of January in the United States.

9

10

11                                   _____

12                                   Christina Taft
                                     *Plaintiff in Propria Persona*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1
2

**CERTIFICATE OF SERVICE**
CHRISTINA TAFT v. PAUL BARRESI,  et al.
5:24-cv-01930-TJH-DTB

3
4

I, the undersigned, certify and declare that I am at least 18 years of age. I am a resident of the United States.

5
6

On January 24, 2025, I served a true copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

7
8
9
10

  X   (By Electronic Transmission) I caused the document(s) described herein to be electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E)

11
12
13
14

  X   (By Delivery) I caused the document(s) described herein to be delivered to the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

15
16
17
18

| MELISSA Y. LERNER LAVELY & SINGER PROFESSIONAL CORPORATION ATTORNEYS AT LAW 2049 CENTURY PARK EAST, SUITE 2400 LOS ANGELES, CALIFORNIA 90067-2906 | *Attorneys for Defendants,* PAUL BARRESI, ADAM R WALDMAN |
| --- | --- |

19
20
21

I declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

22

Executed in Hawaii on **January 24, 2025**.

23
24
25
26

_____.
**Christina Taft**
**Plaintiff in Pro Per**

27
28

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**