Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT | Case No.: 5:24-cv-01930-TJH-DTB |
|     Plaintiff, | [Hon. David T. Bristow, Magistrate Judge] |
| vs. | |
| PAUL BARRESI, ADAM R WALDMAN, and DOES 1-10, inclusive, | **REPLY BRIEF TO DEFENDANT's OPPOSITION TO PRELIMINARY INJUNCTION** |
|     Defendants. | *[Filed concurrently with Exhibits of Reply in Support of Preliminary Injunction; Modified Proposed Order Granting Writ to Protect Witnesses; Certificate of Service]* |
| | Date:  January 30, 2025 |
| | Time: Under submission |

# **Table of Contents**

I.   INTRODUCTION ................................................................................................4

II.   PROCEDURAL AND FACTUAL BACKGROUND .................................................5

  A.   The role of Mike McCormick, Witnesses, and the Fox Case...................................8

  B. Continuing and Escalating Intimidation and Harassment .......................................8

  C. Witness Declarations ........................................................................................9

    1.   Declaration of Ian Herndon (Exhibit A) .....................................................9

    2.   Declaration of Molly Beaton (Exhibit B) ................................................10

    3.   History of Restraining Orders Against Barresi (Exhibit G)...............................11

    4.   Declaration of Erik R. Eichler (Exhibit C) ...............................................12

    5.   Declaration of Michael Kountz (Exhibit D) .............................................13

    6.   Declaration of Mario Nitrini (Exhibit E) .................................................15

    7.   Defendant Intimidation and Interference with Legal Assistance.......................15

    8.   Defendant Preventing Declaration of Former Lawyer Client & Potential Witnesses........................................................................................16

    9.   "Undertaker" Exhibit H...........................................................................17

III.   Argument ....................................................................................................19

  A.   The Defendant's Reliance on *Doe v. Fitzgerald* is Misplaced ...............................19

    1.   Supplemental Evidence and Witness Declarations Consideration .....................20

  B.   Plaintiff Has Demonstrated a Substantial Likelihood of Success on the Merits.....21

  C.   Plaintiff Has Demonstrated Irreparable Harm.......................................................22

  D.   The public interest necessitates an injunction .........................................................23

  E.   The Plaintiff Benefits from the Equities Balance....................................................23

IV.  Conclusion....................................................................................................24

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES & STATUTES

Cases                                                                                                     Pages

*Doe v. Fitzgerald*, 2:20-CV-10713-MWF(RAOx)……………………………………...4, 19-21

*Hughes v. Rowe, 449 U.S. 5, 9 (1980)*……………………………………………………...24

*Winter v. Natural Resources Defense Council*, Inc., 555 U.S. 7 (2008)……...................23

*United States v. Barlow, 693 F.3d 1056 (9th Cir. 2012)*……………………………...24

*United States v Combs, 24-CR-542 (AS)*……………………………………………...24

*United States v. Fulbright*, 105 F.3d 443 (9th Cir. 1997) ………………………………22


Federal Statutes:

1. 18 U.S.C. § 1512 – Tampering with a Witness, Victim, or Informant...………………21

2. 18 U.S.C. § 1514 – Civil Action to Restrain Harassment of a Victim or Witness……21


State Statutes:

1. California Business and Professions Code § 7520 et seq……………………………...20

2. California Code of Civil Procedure § 527.6………………………………………20, 22

3. New York Coercion Law Penal Law 135.60………………………………………….23

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

## REPLY BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PRELIMINARY INJUNCTION

### I.    INTRODUCTION

Plaintiff Christina Taft ("Plaintiff"), hereby submits this Reply to Defendant Paul Barresi's ("Defendant") Opposition to Plaintiff's Emergency Motion for Preliminary Injunction. Defendant fails to address Plaintiff's due process and equal protection concerns, disregards extensive evidence of harassment and intimidation, and misrepresents case law. Immediate injunctive relief is warranted by the evidence, which illustrates the Defendant's pattern of coercing and intimidating witnesses.

Defendant's intimidation and harassment, during these proceedings enlightening Obstruction of Justice of cases, has escalated and continued, with five witness declarations McCormick, Herndon, Beaton, Kountz, Eichler and two additional witnesses Nitrini and Sarabia in emails (with continuing harassment as recent as January 28, 2025). Licensed private investigator and retired LAPD McCormick's role was to encourage witness participation, intake initially, and encourage clarity of timelines for accurate reporting, hence he is a target of Defendant's ongoing coercion.

Defendant has incorrectly cited *Doe v. Fitzgerald*, 2:20-CV-10713-MWF(RAOx), as evidence to support his opposition. In reality, that case granted a preliminary injunction on the basis of comparable allegations of harassment and intimidation. In the case of Doe, the court determined that the defendant's actions were not a legitimate attempt to acquire information, but rather a deliberate attempt to intimidate and suppress witness participation. In the same vein, the Defendant has been involved in a continuous campaign of coercion and intimidation.

Furthermore, Defendant is not licensed and has had his license revoked (Exhibit G). He should not be allowed to contact witnesses directly, as doing so constitutes further witness tampering. Plaintiff was previously granted a restraining order in Hawaii (3DSS-25-

0000044) against Defendant due to these same concerns of the nature of the invasions, threats, and conduct. ( Exhibit H )

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Defendant's actions, in light of witness interference (with Defendant proudly picturing himself with those in relation to severe convictions of racketeering and witness tampering while masquerading as a "Hollywood Fixer") constitute a direct violation of Plaintiff's right to due process. Licensed private investigators, witnesses, and victims declare urgent need of protection for equitable consideration.

The Due Process Clauses of the Fourteenth Amendment guarantee that no person shall be deprived of 'life, liberty, or property, without due process of law.' This ensures procedural fairness in legal proceedings, including the right to an impartial tribunal. The core principles of procedural equity have been violated by the Defendant's tactics of intimidation, harassment, and witness tampering, which have actively impeded Plaintiff's ability to pursue justice. The courts have consistently acknowledged that due process protections are applicable to all phases of litigation, including the assurance that parties can engage in the proceedings without fear of coercion or retaliation. Defendant has attempted to exploit the legal system to his advantage by implementing these actions, thereby depriving Plaintiff of her right to a fair and just process.

Verbal and written threats are not the only forms of intimidation employed by the defendant. Plaintiff was concerned that witnesses could be threatened or abducted for disclosing information to her that exposed Barresi's efforts to suppress witness testimony, as evidenced by her sworn declarations. Investigator Mike McCormick stated, "I reached out to several witnesses to let them know they had help if they needed it and could speak. I spoke with Witness of Viper Room Mr. Albertini and Defendant Barresi. Mr. Albertini wanted to testify and told my client Ms. Taft that he wanted to testify against Depp. Mr.

Albertini stated that Barresi confessed to him to have killed Shalimar Seuli. Shalimar fell off a roof to her death. I asked my client where Barresi was in the 24 hours before and the 24 hours after death. Barresi did not appear to deny doing this from my observations and information over years."

McCormick further stated, "I confirm that I approved of reporting to the Bureau of Security and Investigative Services and to the FBI after I observed witness interference. I observed that witnesses reported to the FBI and advised my client Taft. I am intimidated and threatened by Barresi for attempting to help witnesses, Plaintiff Taft, and former clients of Barresi's who he exploits. I am intimidated by him constantly, in an attempt to get me to not report him. Mr. Barresi intimidates me by stating that my client ever had me as a private investigator and manipulates financial transactions, when in actuality all my witnesses and my client were afraid for their lives."

Additionally, McCormick recounted, "In the last aggressive voicemail, Mr. Barresi cursed me several times stating 'that PI Juan Brooks,' and claimed that there 'could have been a soft landing.' In context to what I have personal knowledge of, observed, and information of. This is a direct threat to me, a threat to other private investigators, a threat to witnesses, and to my former client, Plaintiff Ms. Taft."

McCormick further attested, "I personally observed emails from Barresi to me including the missing and to my belief, likely murdered Anthony Fox, former co-owner of the Viper Room. In 2022, I observed and have knowledge of emails, texts of Paul Barresi and Adam Waldman in correspondence and conspiring to suppress witness testimonies, and they were sent to Mario Nitrini. I have personal knowledge that Barresi is dangerous to potential witness Amber Heard and other former clients including as potential witnesses that could report him to authorities or testify. He named multiple former client potential witnesses in emails. I observed Mr. Barresi had his license nearly immediately revoked by the California Attorney General 10 years ago and is not supposed to be doing unauthorized lookups.

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

Barresi is dangerous and needs to be restrained. In my knowledge, I have seen his aggression for years, and it is serious by nature. In my observation, Barresi audio records and can exploit his phone calls with attorneys, former clients, and potential witnesses that may want to report him." (Exhibit J)

Extensive evidence of the Defendant's harassment and intimidation has been presented by the Plaintiff. The threats, coercion, and interference in judicial proceedings by the Defendant are detailed in sworn declarations from multiple witnesses. The Defendant's persistent campaign to engender fear among those who may be willing to testify is exemplified by these declarations. Furthermore, the Defendant's use of intimidation tactics to obstruct justice is corroborated by the testimony of licensed private investigators, such as Mike McCormick and Michael Kountz. The incessant harassment that Plaintiff and witnesses have endured at the hands of the Defendant is further documented by declarations, affidavits, emails, voicemail messages, and social media posts.

Additionally, Plaintiff has obtained a restraining order against Defendant in Hawaii, which serves as a testament to the gravity of his actions and their impact on her safety. The restraining order was issued as a result of the court's determination that the Defendant is a dangerous individual whose actions posed a significant threat to the integrity of judicial proceedings and the safety of the Plaintiff. The defendant has engaged in menacing behavior on numerous occasions, such as contacting Plaintiff's former legal counsel, Antonio Sarabia, in an apparent attempt to intimidate through an escalation to demand an involuntary face-to-face meeting (Exhibit I). These actions are indicative of his ongoing endeavors to instill fear and pressure on the parties engaged in the litigation. The defendant's historical use of intimidation strategies, such as harassing witnesses and tampering with testimony, serves as confirmation that his conduct is not merely adversarial, but actively coercive and obstructive.

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

The defendant has intentionally undermined Plaintiff's legal assistance, thereby intensifying his intimidation tactics and fostering an environment of fear and harassment. This mischaracterization is yet another method of impeding Plaintiff's capacity to effectively litigate her case and secure legal representation. The defendant's persistent pattern of misrepresenting the role of Plaintiff's legal aid underscores his intention to obstruct justice and intimidate those who are assisting Plaintiff in her claims.

## A. The role of Mike McCormick, Witnesses, and the Fox Case

Mike McCormick, a retired LAPD officer and licensed private investigator, has been instrumental in initial documentation of the Defendant's intimidation tactics. McCormick has submitted sworn testimony concerning Barresi's efforts to suppress witness testimony, in Mcormick's role to encourage participation of witnesses and victims. Some of this participation includes knowledge by witnesses about the disappearance of Anthony Fox, the former co-owner of the Viper Room. Barresi and Adam Waldman have been observed by McCormick to have conspired to conceal witness testimonies pertinent to Fox's disappearance and overlapping cases, as evidenced by emails and texts. McCormick has also verified that Barresi's license was revoked by the California Attorney General, rendering his investigative activities unlawful. (Exhibit J)

## B. Continuing and Escalating Intimidation and Harassment

The Defendant's campaign of intimidation is not only ongoing but escalating, as evidenced by the sworn declarations of multiple witnesses, including Ian Herndon, Molly Beaton, Michael Kountz, Erik Eichler, Mario Nitrini, and Antonio Sarabia. These declarations, along with the exhibits attached to the Plaintiff's filings, paint a disturbing picture of the Defendant's relentless efforts to suppress testimony and obstruct justice.

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

Plaintiff presents continuing evidence Defendants' ongoing threats against Plaintiff and witnesses, including intimidation tactics involving coercive communication and threats of physical harm, references to organized crime, and systematic efforts to obstruct justice by manipulating testimony and destroying evidence.

## C. Witness Declarations

### 1. Declaration of Ian Herndon (Exhibit A)

Ian Herndon's declaration paints a disturbing picture of Barresi's behavior. He states unequivocally, "I've witnessed Barresi threaten death, mortality, and danger to people". This stark statement sets the tone for the rest of the declaration, which details Barresi's coercion of Angela and Taft, particularly after obtaining an audio recording of their conversation about abuse and violence in 2022. The declaration emphasizes the persistent fear experienced.

Herndon notes with concern, "from 2022 to this very day, I have observed Christina Taft be in constant fear of Paul Barresi, supported by ongoing contact by him using threatening and harassing language". This ongoing intimidation began when Barresi became aware of Taft's support for Amber Heard and other witnesses in 2022. Herndon observed Barresi inciting to manipulate, coerce witness Richie Albertini and noted that Taft felt unable to help Angela due to the audio tape Barresi had obtained of their conversation.

In a particularly alarming incident, Herndon reports, "Angela advised me on numerous occasions that a Hollywood Fixer, believed to be Paul Barresi, was sent to intimidate and silence her, and at one point he showed up where she was in person and pointed a gun at her head". This escalation to physical threats underscores the severity of the situation. Herndon further states that Taft's fear was so intense that she felt compelled to move from California to Hawaii in search of safety from Barresi.

### 2. Declaration of Molly Beaton (Exhibit B)

Molly Beaton, a witness who received direct threats from Defendant Barresi, causing her to fear for her life and safety. Contained in Beaton states in Declaration 1, "Defendant Paul Barresi has continued to contact me to this day, and I want his brutal, continual threats and harassment to stop." She further attests that Barresi has referred to himself as a "hitman" and has made her fear for her life, stating, "I do not want Barresi, who acts like a hitman, going to my house for being a witness."

Beaton also provides evidence of Barresi's ongoing harassment, including his attempts to pressure her into providing information about Plaintiff Taft. She describes Barresi's behavior as "erratic, psychopathic, and a danger to anyone around him." Contained in number 2, she attests, "Since first interacting with witnesses and then Barresi from 2021, 2022 to December 2024, I personally have reported that he is a 'hitman' as I provided that to Florida State Police (Case 48-2021-NM-002537). Two witnesses corroborated Barresi's imminent dangerousness to threaten and kill."In number six, she declares, "I continued to see Defendant Barresi harassing and stalking Plaintiff Taft for 2 years. As recent as January 5th, 2024, I saw that Barresi was stalking Taft's location, residency, about her mother's death, all in his alarming efforts as a criminal fixer, and to eliminate witnesses that may have turned to assist Heard."

In number 15, she states in part, "…Albertini knew I was supportive of Amber when he was contacting me before and when Barresi was contacting him. I do not want any more instigated harassment by Barresi, and I do not want to be contacted ever again by either of them or threatened. It is a nightmare."

She states in number 17, "Defendant Barresi initially contacted me in 2022 in his interests in fighting Richie Albertini, who I know has information against Johnny Depp, although I did not know about the assaults in the Viper Room done by Depp. In the same

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

documentation I sent the Florida police in 2021, Albertini was referencing Amber Heard, who is an assault victim like I am an assault victim. In number 18, she states, "I've seen messages of witness Ian Herndon messaging in 2021 to Roberta Kaplan, who was Amber's attorney, about problems of harming rape victims and monitoring rape victims, with "alleged ties to Johnny Depp, Anthony Pellicano, and Paul Barresi" in the message. Ian was trying to help me. Richie tagged @adam_waldman and @Barresi_paul in many postings attacking me and Amber, after showing me the text from Barresi to Richie of "Hey, that tranny had it coming. If it wasn't me to have done her in, it would've been somebody else."

### 3. History of Restraining Orders Against Barresi (Exhibit G)

The motive and ongoing pattern of conduct through the retaliation against Plaintiff for enlightening testimonies of witnesses and trying to untangle them from Defendant Barresi's coercion, is in factual evidence. Albertini demonstrates a pattern of intimidation and threats, detailing Barresi's unlawful conduct. It describes ongoing witness intimidation by Barresi and Waldman, utilizing audio recordings to prevent testimony into 2024. The witness recounts firsthand experiences of threats and coercion aimed at suppressing testimony against Johnny Depp, as well as eyewitness accounts of violent incidents against both women and men that were instigated by Depp and his associates in the Viper Room.

Judge issued a restraining order in Burbank, CA, protecting victim Richard Albertini from Barresi's violence. The filing threats of violence by Barresi "working for Johnny Depp," threatening to shoot him, and to hit him across the head substantiated in recording. (Exhibit Q). At a hearing on October 19, 2022, for Case No. Albertini v. Barresi, a transcription notes police reports against Barresi then, "I understand sir, but please let me

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

answer that. My colleague who is in possession of the records and files; a woman, she's been receiving death threats from Paul Barresi…She's Scared. Her name is Christina Taft"

Defendant Paul Barresi bizarrely focuses again on "kill" with attaching an audio that witness Albertini believed Barresi was going to cause the mortality of Amber Heard, and malicious enough to result in her demise. The total discussion was about Jalee Carter having a roommate named Donna who was assaulted by Depp and abused in the Viper Room, as Albertini witnessed and that Barresi had silenced this testimony about this incident, and witness and Plaintiff were going to re-interview her. (Exhibit N).

Defendant attached an exhibit to his motion of Albertini v Barresi without showing the granted the civil harassment application, and instead showed this transcript outside court.

## 4. Declaration of Erik R. Eichler (Exhibit C)

Erik Eichler is a private investigator of Eichler Investigative Services LLC., in South Windsor, CT. On October 29, 2024, Mr. Eichler drove to the residence of Rebecca Berry. Declarant spoke with Ms. Berry and her mother, Joan Berry, in the driveway. Mr. Eichler provided Ms. Berry with a copy of the Complaint in this matter, Christina Taft v. Paul Barresi, 5:24-CV-09130-TJH-DTB. The Declarant provided a letter from Christina Taft requesting a witness declaration in this case. The mother to Ms. Berry stated, "What is this about?" Ms. Berry replied, "Remember that guy [Paul Barresi] who confessed to me about killing people?" Ms. Berry said she would contact Christina Taft or the Declarant at another time and terminated the interview. Barresi's confession about killing people serves as a clear example of how Barresi has intentionally fostered an atmosphere of fear and danger, leading witnesses to believe they could be in physical danger if they cooperate with any legal proceedings. This strategy effectively suppresses witnesses, as they are left fearing for their lives, thus removing their ability to provide credible testimony or aid in

investigations. Rebecca Berry's reluctance to provide a formal declaration stems from her ongoing fear of the Defendant. This fear has been so significant that she temporarily relocated to the United Kingdom, where she was engaged to a British fiancé, in an attempt to distance herself from Barresi. However, her daughter and immediate family remain in the United States, leading her to return and eventually move to Connecticut. Her hesitancy to speak out further underscores the coercive and intimidating environment created by the Defendant (Exhibit P)

### 5. Declaration of Michael Kountz (Exhibit D)

Michael Kountz is a licensed private investigator in New Mexico who became involved in the case when Plaintiff Christina Taft requested assistance from Superior Private Investigations on May 1, 2023. His role was to locate and interview James Conner regarding an audio recording edited and published by Defendant Paul Barresi. With consideration, licensed private investigator and retired LAPD Mike McCormick's declaration further reveals Barresi's efforts to obstruct justice, including intimidation tactics against witnesses. These tactics included coercion of individuals through audio recordings and spreading fear among potential witnesses The declaration also details Barresi's intimidating statements, including claims of being a murderer, which instilled fear in Plaintiff. Additionally, McCormick highlights Barresi's connections to Waldman and his actions against witnesses, as well as the harm caused in related cases involving Amber and Anthony Fox. These findings substantiate the deliberate and malicious nature of Defendants' conduct. These actions represent a course of conduct rather than isolated incidents and were directed specifically at Plaintiff.

In declaration number three, Kountz states, "I located and interviewed James Conner in June of 2023. James Conner advised me he was a licensed private investigator. I observed that Conner appeared to be disabled by his own admission." He further states in numbers

four and five that he was not aware of the audio recording contained in edited video nor authorized permission for the recording. After the interview, Conner contacted Declarant warning of Barresi. "After leaving the interview with James Conner, I received a phone call from him advising that Paul Barresi was dangerous, and that he was in fear for his life due to his involvement."

Kountz's review of recording provided insight into Barresi's conduct. "I reviewed the audio tape contained in the video by Barresi. Contained in the audio tape done by Paul Barresi of James Conner, are alterations that he was an FBI agent and that her mother Victoria Taft had witnessed a mob murder by the Gottis. It distressed Taft about her mother Victoria Taft and her death. James Conner advised me he was never an FBI agent. The tape showed images of a man dead from the mafia, members of the mafia, and a gun. In the beginning of the tape, Barresi discussed a photo of Amber Heard with Plaintiff Taft to James Conner, that they were arm in arm, yet at the same time indicating danger to life through comparing to an assailant. I have information that Plaintiff is still fearful to this day that this audio tape is either to make someone shoot her or to shoot Amber. Or that a death could occur. I have information that Defendant Barresi acted aggressively to terrify Taft and others contained in the content of the audio tape."

In further describes of Mr. Barresi's harassment and states, "On September 05th, 2023, I received an email from Plaintiff Taft containing a screenshot of a text message chain from the phone number (908) 656-5712, which she advised was Defendant Paul Barresi's phone number. I observed the following message, portrayed in the screenshot to have been sent from the above number to Plaintiff Taft on Nov 7, 2022: "Stacy is your sister" and sexual expletives. Taft advised that the text referred to Stacy Hagman in Texas and requested that I interview her. She had compliments for Stacy and was fearful that Barresi could access her. I was able to locate a phone number for Stacy but have not been able to reach her through it."

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

Kountz believes that Barresi deliberately exploited the audio. The audio appeared to serve as a tool for intimidation, targeting Plaintiff with threats of violence, including a possible murder or harm. Plaintiff still fears for her safety due to the content of the tape, which she believes could incite someone to act violently against her. The ongoing threats were not limited to the audio but also included harassing communications, such as explicit text messages and emails. The declaration also touches on the broader context of Barresi's actions, which invoke a pattern of outrageous and coercive behavior. In particular, Barresi's use of imagery, coupled with mafia death threats and false claims about Plaintiff's mother, Victoria, being an actress who allegedly witnessed a mob hit, shows a deliberate attempt to manipulate and intimidate. These actions made it clear that Plaintiff was not only dealing with a personal vendetta but also an unlawful abuse of power.

### 6. Declaration of Mario Nitrini (Exhibit E)

Mario Nitrini has provided evidence of Barresi's threats against him and his family, for being a witness in the case and receiving a request for a declaration, including a "mortal danger threat" related to his son's involvement in a gang murder case and testifying for the prosecution. Nitrini explains that after Barresi posted about his son, some "very bad people" have been looking for him, leading him to contemplate filing a criminal complaint against Barresi for attempted murder. Nitrini holds critical witness documentation, some of which was included in reports to authorities.

### 7. Defendant Intimidation and Interference with Legal Assistance

Additionally, the contact by Defendant Barresi to attorney Antonio Sarabia by on January 28, 2025, demonstrates escalating and ongoing threat of intimidating behavior and

aggression to prevent legal aid to Barresi's victims. The initial complaint discussed that Sarabia rendered appellate aid to Barresi's lawyer's former client, Heard, and briefly opened witness aid with expert investigation, as well as provided assistance to Plaintiff. Sarabia did not want an involuntary face-to-face meeting with Defendant (Exhibit I).

The Defendant's conduct, including the inflammatory and deeply personal remarks about the Plaintiff's deceased mother and the characterization of potential witnesses that may declare, witnesses, and victims that could testify or report, constitutes a clear pattern of harassment and abuse that serves no legitimate purpose in these proceedings. Such statements are not only gratuitously offensive but also intended to inflict emotional distress and undermine the dignity of the judicial process. This behavior violates the standards of professional conduct and decorum required in litigation, and it warrants immediate intervention by this Court to prevent further harm to the Plaintiff and to preserve the integrity of these proceedings. (Exhibit-F)

### 8. Defendant Preventing Declaration of Former Lawyer Client & Potential Witnesses

On January 2, 2025, Defendant Barresi publicly tracked flight paths between Plaintiff's off-record address in Antibes, France to Madrid, Spain accompanying a photo of her with Witness Amber Heard. Defendant Paul Barresi wrote: "Christina Taft has allegedly already begun to upset people in France, I am informed." The potential witness already fled the United States 2 years ago.

Barresi is controlling who may declare or may not declare and this alerts to of the danger that others could be monitoring Plaintiff's relationships even outside of the United States, which Defendant Barresi directed her to flee from. (Exhibit K).

Another post on January 2, 2025, threatening Taft's mortality states she should have never "ever breathed air" (Exhibit K). Defendant Barresi heightened his monitoring that Taft could speak with another potential witness for due process in this case.

Among Defendant's flight tracking photos with finding her address in France, Defendant Barresi repeatedly posted Plaintiff's photo with potential witness Amber Heard, including calling them both "brain dead" and "wrenches" on January 4th,2025 (Exhibit O). Defendant Barresi clearly aims to intimidate and harass. Without the court's action, it can continue to cause withheld testimony and information related to legal claims or defense.

On December 19, 2024, Defendant Barresi stated, *"Cowards. Every fucking one of them,"* in reference to documents he obtained regarding Taft's mother, Victoria's lawsuit against Walt Disney Co., et al. This statement, made in conjunction with his unauthorized access to litigation records, underscores Defendant's pattern of intimidation and coercive conduct. His actions, which include invasive and blackmail-like tactics, have demonstrably caused individuals to fear for their safety and go into hiding. Such conduct is not a legitimate or lawful activity but rather a deliberate attempt to intimidate witnesses and victims, warranting judicial intervention. (Exhibit M).

### 9. "Undertaker" Exhibit H

The "Undertaker Exhibit" is particularly alarming as it underscores the implicit threats and intimidation tactics employed by Defendant Barresi. An "undertaker" in modern usage is a coroner, which implies a chilling disregard for the concerns of mortality among witnesses and victims, as well as an awareness of their fear.

The "Undertaker" comment is particularly terrifying because it is tinged with historical intimidation, mortality, and the silencing of witnesses through fear, which the witnesses become particularly aware of when they're contacted by Defendant directly. Defendant Barresi's is profoundly disquieting, as the term "undertaker" in contemporary usage denotes a coroner or an individual who is responsible for the deceased. He is effectively trivializing the fears of those speaking out and reinforcing the impending threat of violence or

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

retaliation by saying, "I don't care what the undertaker says," thereby dismissing concerns about life and death.

This comment is rendered even more alarming when considered in its context, and in Defendant's direct contact of witnesses. Defendant Barresi's alteration of Al Capone's infamous denial of murder—"I'm not a killer"—to "I'm not a hitman" is an unmistakable reference to organized crime, contract murders, and suppression of opposition. This statement, when combined with his recognition of Defendant Waldman as a Consigliere, a Mafia term for a high-ranking advisor in a criminal enterprise, conveys a calculated message of power, dread, and potential consequences for those involved in this case, rather than mere defiance.

Moreover, Erik Eichler, a private investigator, describes his encounter with witness Rebecca Berry, who earlier expressed concern that Barresi had employed a hitman to assassinate her. Berry expressed, "Christina, I think he hired a hitman," and recounted how she felt she was on the brink of being raped and murdered. Berry's apprehension regarding reprisal further emphasizes the severity of Barresi's intimidation strategies, as evidenced by Eichler's declaration. (Exhibit C)

The fact that this statement was made in 2024, during ongoing legal proceedings, indicates an active campaign of intimidation that is designed to discourage witnesses and victims from reporting their experiences. It is a psychological strategy that is intended to instill terror by utilizing historical mafia-style intimidation to discourage participation in the judicial process. This statement must be interpreted as a component of a more extensive pattern of coercion, which serves to underscore the necessity of immediate judicial intervention, in light of the over five-year span of related activities.

**III.    Argument**

**A. The Defendant's Reliance on *Doe v. Fitzgerald* is Misplaced**

The Defendant's argument that it is permitted to contact potential witnesses and interact with parties to litigation is immediately disproven due to the fact that the Defendant is not a licensed investigator and has had his license revoked. His attempts to contact witnesses are unauthorized and unlawful due to his lack of license.

The declarations of Herndon, Beaton, Eichler, Kountz, and McCormick offer compelling evidence that the Defendant engaged in a pattern of intimidation, threats, and coercion with the intention of effectively suppressing both potential witnesses and victims. In *Doe v. Fitzgerald*, the court acknowledged that actions taken to harass and discredit Jane Does, rather than to gather relevant information, were intended to obstruct their litigation rights and discourage other victims from coming forward. This conduct constitutes a flagrant violation of established case law. The defendant's actions in this case are indicative of this impermissible behavior, as they indicate a clear effort to obstruct the administration of justice by suppressing critical testimony through fear and coercion.

Defendant's actions are more akin to illicit interference and intimidation than legitimate fact-finding. Courts have consistently acknowledged that individuals who engage in investigatory conduct without proper authorization are at risk of engaging in malfeasance that undermines judicial proceedings.

California Business and Professions Code § 7520, et seq., explicitly requires that individuals engaging in investigative work, including gathering evidence and contacting witnesses, must possess a valid private investigator's license. Since Defendant's license has been revoked, his actions in contacting and intimidating witnesses are unlawful and a direct violation of this statute. His conduct does not constitute legitimate investigatory work but rather illicit interference aimed at obstructing justice.

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

Additionally, California Code of Civil Procedure § 527.6 provides for injunctive relief against individuals who engage in harassment, including unauthorized investigative conduct that serves to intimidate or suppress witness testimony. Courts have consistently recognized that due process protections extend to all participants in legal proceedings and that unauthorized investigatory conduct risks improper influence on litigation outcomes. Defendant's lack of licensure only exacerbates his pattern of coercion and intimidation, making his actions a clear violation of due process protections.

In contrast to the defendant's claims, *Doe v. Fitzgerald* issued a preliminary injunction due to the defendant's actions, which were intended to intimidate and harass rather than to collect legitimate information. The court determined that the defendant's actions were intended to discourage participation and interfered with the litigation process in that instance. In this instance, the defendant's actions are reminiscent of the case in question, as he has employed coercive tactics, intimidated witnesses, and hounded the plaintiff.

In Doe, the court explicitly determined that the defendant's actions obstructed access to justice and necessitated injunctive relief. The defendant's erroneous citation of the case is a clear attempt to distort its findings and should be disregarded.

## 1. Supplemental Evidence and Witness Declarations Consideration

The Defendant's ongoing misconduct is further demonstrated by the Continued Injunction Requests, which are substantiated by supplemental evidence, including declarations from licensed private investigators who are assisting witnesses and family members. The necessity of amending the petition to comprehensively address the Defendant's involvement in organized crime and racketeering is underscored by this persistent pattern of intimidation. Procedurally, the original motion should have been amended or supplemented to include this critical evidence, thereby guaranteeing that the court will evaluate the complete scope of the Defendant's unlawful conduct.

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

Defendant claims there was delay in filing, however, this reasoning does not fully account for ongoing or escalating harm, as well as Defendant's pressuring and obstruction of reporting, to prevent declarations by witnesses, which justifies injunctive relief even if there was some delay.

Furthermore, McCormick received multiple voicemails, calls, and emails spanning more than two years of Defendant's intimidation campaign, not only one (Exhibit R).

Courts may issue protective orders under 18 U.S.C. § 1514 when there is a reasonable belief that harassment of a witness or victim exists, or when an order is necessary to prevent further injury. The coercion that this statute is designed to prevent is precisely illustrated by the defendant's persistent intimidation, which has persisted for years and has involved numerous voicemails, calls, and emails.

Although it is typically employed in criminal cases, the same imperative need for protection arises in this context, particularly in light of the Defendant's role as a "Fixer" who engages in witness suppression and obstruction. The assertion of delay does not negate the escalating harm that justifies injunctive relief. At the very least, this Court should take action to prevent the continuation of harassment, coercion, and obstruction of justice, in accordance with the purpose of § 1514.

### B. Plaintiff Has Demonstrated a Substantial Likelihood of Success on the Merits

The legal standard for harassment under California Code of Civil Procedure § 527.6(b)(3) is unquestionably met by the defendant's pattern of intimidation and interference with witnesses. Five witness declarations urge protection. In addition to the Attorney General of California revoking Barresi's license nearly immediately after intimidating and blackmailing nature behavior, statements invoked by the defendant including "I am not a hitman, no matter what the undertaker says," entails that the defendant has made direct threats against witnesses. Additionally, he has left voicemail messages that

are particularly intimidating to retired LAPD officer Mike McCormick, who has provided testimony regarding the Defendant's actions. The defendant's efforts to obstruct justice and suppress testimony through coercion and intimidation are well-documented *(United States v. Fulbright, 105 F.3d 443 (9th Cir. 1997))*. The ongoing nature of the Defendant's malfeasance has been established by numerous declarations submitted by witnesses, private investigators, and legal professionals.

### C. Plaintiff Has Demonstrated Irreparable Harm

The integrity of judicial proceedings is compromised by the actions of the defendant, resulting in irreparable harm. These actions have created a climate of fear that discourages attorneys from representing Plaintiff on the public record, thereby depriving her of her due process rights.

For an extended period, courts have maintained that witness intimidation constitutes permanent harm. The plaintiff has shown that the fear and distress of witnesses have already resulted in the withholding vital testimony. Harm has continued and escalated, threatening irreparable demise of multiple individuals and due process *(Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008))*. The Plaintiff's capacity to effectively prepare her case has been impeded by the Defendant's direct threats against her and her legal advisors. As a pro se litigant, Plaintiff has struggled to secure legal representation due to the Defendant's intimidation tactics, which include threats and invasions of privacy. The ongoing nature of the injury that the Defendant continues to inflict is further underscored by retaliatory conduct, which includes intimidation tactics and coercion against others to abstain from lawful actions or to take actions (*New York's Coercion Law Penal 135.60*). In order to prevent further obstruction of justice, immediate injunctive relief is warranted by the urgency of these threats.

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

1

2

3

### D. The public interest necessitates an injunction

4

An injunction to prevent additional witness intimidation is overwhelmingly

5 supported by the public interest. The significance of safeguarding litigants from hostility

6 has been consistently underscored by the courts. Plaintiff and the witnesses involved are

7 not the only ones harmed by the defendant's persistent intimidation tactics; they also

8 jeopardize the fundamental impartiality of judicial proceedings. Defendant's conduct will

9 persist in obstructing justice and discouraging witness participation in the absence of

10 intervention, thereby fostering a fear-based environment that undermines the fundamental

11 principles of equal protection and due process. Furthermore, in New York, the *United

12 States v Combs, 24-CR-542 (AS)* case exemplifies a change in society to care about

13 protecting witnesses even if they're associated or related to film, music, and the arts, i.e.,

14 Hollywood. The 9th circuit, including California, further approves of protecting witnesses,

15 and victims, as part of keeping judicial integrity *(United States v. Barlow, 693 F.3d 1056

16 (9th Cir. 2012)).*

17

18

19 ### E. The Plaintiff Benefits from the Equities Balance

20 The Plaintiff's request for an injunction is strongly supported by the balance of

21 equities. The defendant's actions have resulted in substantial damage, whereas an

22 injunction would merely avert the continuation of unlawful conduct. The defendant has no

23 legitimate interest in contacting and intimidating witnesses nor victims who may declare

24 or report. In order to safeguard Plaintiff and the witnesses from additional harassment and

25 guarantee that they can engage in the legal process without fear of retaliation, it is

26 imperative to grant an injunction, given the Defendant's history of malfeasance and the

27 significant threats to judicial integrity posed by his actions. In the context of any

28 deficiencies in "artful pleading." *Hughes v. Rowe, 449 U.S. 5, 9 (1980),* established that

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

courts must interpret pro se pleadings liberally. The case held that "inartfully" pleaded complaints by pro se litigants must be subject to less stringent standards than formal pleadings drafted by attorneys. A fair and flexible interpretation of this filing is necessary due to the severe nature of the claims and the intimidation experienced by witnesses.

## IV.    Conclusion

In conclusion, at minimum, the honorable judge should consider granting that the Defendant cannot directly contact potential witnesses and/or victims, and that the Defendant must employ a licensed intermediary for contacting that is verified as a private investigator by the Department of Public Safety.

It is imperative that a safer person communicates with witnesses, as an intermediary, no matter if there is an association of any person with Hollywood. Witnesses plead for equitable consideration, due process, and equal protection in a civilized society.

Furthermore, Plaintiff respectfully requests that the honorable court grants this protective motion in its entirety and issues a writ to protect witnesses and victims, whether they have come forward voluntarily presently or in the past.

Respectfully submitted,

This 30th of January, 2025 in the United States.


_Christina Taft_

_____

Christina Taft
*Plaintiff in Pro Per*

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

## **Certificate of Compliance**

The on-the-record, Plaintiff in Propria Persona, certifies that this brief contains 6,147 words, which complies with the word limit of L.R. 11-6.2.

This 30th of January, 2025

_____

Christina Taft
*Plaintiff in Pro Per*

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

# CERTIFICATE OF SERVICE

CHRISTINA TAFT v. PAUL BARRESI, et al.

5:24-cv-01930-TJH-DTB

I, the undersigned, certify and declare that I am at least 18 years of age. I am a resident of the United States.

On January 30, 2025, I served a true copy of; **(1) REPLY BRIEF TO DEFENDANT's OPPOSITION TO PRELIMINARY INJUNCTION; (2) EXIBITS OF REPLY TO DEFENDANT's OPPOSITION TO PRELIMINARY INJUNCTION; (3) [PROPOSED] MODIFIED ORDER GRANTING PRELIMINARY INJUNCTION REQUEST & WRIT TO PROTECT WITNESSES**

__X__ (By Electronic Transmission) I caused the document(s) described herein to be electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E)

__X__ (By Delivery) I caused the document(s) described herein to be delivered to the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

| | |
|---|---|
| MELISSA Y. LERNER<br>LAVELY & SINGER PROFESSIONAL CORPORATION<br>ATTORNEYS AT LAW<br>2049 CENTURY PARK EAST, SUITE 2400<br>LOS ANGELES, CALIFORNIA 90067-2906 | *Attorneys for Defendants,*<br>PAUL BARRESI, ADAM R WALDMAN |

I declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated in Hawaii on **January 30, 2025**.

**Christina Taft**
*Plaintiff in Pro Per*

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

# Index of Exhibits (Appendix)

| Sr.No | Exhibit No. | Description | Page No. |
|---|---|---|---|
| 1. | A. | Declaration of Ian Herndon | 30-37 |
| 2. | B | Declaration of Molly Beaton | 38-46 |
| 3. | C | Declaration of Erik Eichler | 49-50 |
| 4. | D | Declaration of Michael Kountz | 56-59 |
| 5. | E | Exhibit of Mario Nitrini | 69-72 |
| 6. | F | Exhibit of Further abuse Related to Mother | 60 |
| 7. | G | Exhibit of History of Restraining Orders Against Barresi | 78-91 |
| 8. | H | Exhibit of License Revocation | 94-108 |
| 9. | I | Exhibit: Email Face to Face meeting | 73 |
| 10. | J | Declaration of Mike McCormick | 51-55 |
| 11. | K | Defendant Preventing Declaration of Former Lawyer Client & Potential Witness | 61, 67 |
| 12 | L | Undertaker Exhibit | 74 |

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**

| 13. | M | Barresi's "Cowards" Statement | 63 |
| 14. | N | Barresi's "Kill" Audio | 47-48 |
| 15. | O | Barresi's Posts (Heard/Plaintiff) | 62 |
| 16. | P | Berry's reluctance to provide a formal declaration | 75 |
| 17. | R | McCormick's Email (Intimidation) | 68 |
| 18. | H | Hawaii Restraining Order Granted | 64-66, 76-77 |
| 19. | O | Coroner and Flight Path/Residency Photos | 92-93 |

**REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PRELIMINARY INJUNCTION**