1  **MELISSA Y. LERNER (SBN 285216)**
2  mlerner@lavelysinger.com
   **MEGAN S. MALLONEE (SBN 340276)**
3  mmallonee@lavelysinger.com
4  LAVELY & SINGER
   PROFESSIONAL CORPORATION
5  2049 Century Park East, Suite 2400
   Los Angeles, California 90067-2906
6  Telephone: (310) 556-3501
7  Facsimile: (310) 556-3615
8
   Attorneys for Defendant
9  PAUL BARRESI

10                **UNITED STATES DISTRICT COURT**
11               **CENTRAL DISTRICT OF CALIFORNIA**
12                    **EASTERN DIVISION**
13

14  CHRISTINA TAFT,                          CASE NO. 5:24-cv-01930-TJH (DTB)

15          Plaintiff,                       [Hon. David T. Bristow, Magistrate Judge]

16      vs.                                  **DEFENDANT'S SUR-REPLY TO**
17                                           **PLAINTIFF'S REPLY RE**
                                             **PRELIMINARY INJUNCTION**
18  PAUL BARRESI; ADAM R.
    WALDMAN; and DOES 1 through 10,
19  inclusive,                               [Declarations of Paul Barresi, Angela
                                             Gayle, Melissa Y. Lerner; Evidentiary
20          Defendants.                      Objections filed concurrently herewith]
21

22

23

24

25

26

27

28

4528-3

_DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION_

# **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ..................................................................................4

II.    TAFT'S BIZARRE NON-REBUTTAL "EVIDENCE" SUBMITTED WITH HER REPLY IS VEHEMENTLY DISPUTED ..............................................5

III.   LEGAL ARGUMENT..........................................................................17

     A.    Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits........18

     B.    Plaintiff Cannot Demonstrate That She Is Likely to Suffer Irreparable Harm. ......................................................................................20

     C.    The Balance of Equities Do Not Weigh in Plaintiff's Favor. ....................22

     D.    The Requested Injunction Is Not in the Public Interest. ............................22

IV.   CONCLUSION....................................................................................23

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (2013).................................................................................. 19

*Doe v. Fitzgerald*,
    No. 20-cv-10713, 2022 WL 423495 (C.D. Cal. Feb. 2, 2022)............................19, 21

*Farris v. Seabrook*,
    677 F.3d 858 (9th Cir. 2012) ......................................................................19

*Marina Vape, LLC v. Nashick*,
    Case No. 16-CV-01028, 2016 WL 9086939 (C.D. Cal. May 6, 2016).....................19

*Miller v. Cal. Pac. Med. Ctr.*,
    991 F.2d 536 (9th Cir. 993) .......................................................................22

*Toyo Tire Holdings of Ams. Inc. v. Continental Tire N. Am., Inc.*,
    609 F.3d 975 (9th Cir. 2010) .....................................................................18

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................18

**Statutes**

Cal. Civ. Proc. Code § 527(b)(3) .......................................................................19

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

Defendant Paul Barresi ("Defendant" or "Barresi") respectfully submits this Sur-Reply to Plaintiff Christina Taft's ("Plaintiff or "Taft") Reply in Support of Emergency Motion for Preliminary Injunction (Dkt. No. 39) ("Reply").

## I.    <u>INTRODUCTION</u>

Christina Taft has not presented evidence on Reply to support her request for a preliminary injunction against Barresi based on his alleged witness intimidation and tampering or obstruction of justice. Rather than address the arguments in Defendant's Opposition (Dkt. No. 25), to which the Court granted Taft leave to respond (Dkt. No. 35), she has used her Reply to submit reams of irrelevant "evidence" and reassert her conspiracy theories about Barresi, Adam Waldman, Johnny Depp and others. If anything, the Reply and supporting declarations parroting the outrageous and incoherent allegations found in her original Complaint and operative First Amended Complaint (Dkt. No. 23) ("FAC") demonstrate that Christina Taft will use every opportunity to broadcast her false and defamatory claims against Barresi in public court filings. The true purpose of this lawsuit is to harass, torment and destroy Barresi because Taft has convinced herself (and those around her) that he is out to get her.

The Court previously concluded that Mike McCormick's declaration, which Taft filed with her Emergency Motion for Preliminary Injunction (Dkt. No. 15) ("Emergency Motion"), does not merit a preliminary injunction. (Dkt. No. 28 at 8:25-9:11, 10:1-6.) The four additional declarations of Ian Herndon, Molly Beaton, Erik R. Eichler and Michael Kountz and "two additional witnesses Nitrini and Sarabia in emails" also do not support the extraordinary relief Taft seeks. Taft's submission of her January 2025 application for a restraining order against Barresi in Hawaii proves only that she is willing to **perjure herself** to target him. Taft falsely lists an address in Hilo (blatantly forum shopping because the courts in Honolulu, where she actually resides, **twice** rejected her requests for restraining orders against Barresi) and falsely claims that he is in Hilo but she does not know his address (despite listing Barresi's California address in the pleadings in the instant case, and attempting to serve him there less than a week

4

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

after the Hilo filing). Taft has not come any closer to identifying specific incidents of harassing conduct by Barresi that support the extraordinary injunctive relief she seeks.

For years, Taft has maliciously spread falsehoods about Barresi, including through social media posts and YouTube videos, and has recruited others to join her crusade against him. It is laughable for Taft to depict herself as a victim of the man that she continually targets. Taft's ongoing provocation of Barresi is inconsistent with the claim that she fears for her life. Even assuming, arguendo, that Taft truly believes Barresi is a threat to her safety, this belief is a product of her own association with fellow conspiracy theorists and con artists; rumors, innuendos and gossip that she seeks out, consumes and mischaracterizes as fact; and unreasonable inferences she draws from alleged statements and conduct that are not directed at her. Whatever the reason for Taft's obsession with Barresi, his destruction has become her mission in life.

As Taft continues to publish false and defamatory lies about Barresi's involvement with a powerful cabal that is out to get her and her money, and alleged career as a murderer, hitman and criminal, Barresi has been left with no choice but to defend himself vigorously. Barresi's efforts to defend himself cannot be enjoined just because Taft does not want to be contradicted. This Emergency Motion has devolved into a costly side show, forcing Barresi to incur attorneys' fees he cannot afford and draining the Court's limited judicial resources. Enough is enough. Defendant Paul Barresi respectfully requests that the Court deny Taft's Emergency Motion in full without any further briefing.

## II.    TAFT'S BIZARRE NON-REBUTTAL "EVIDENCE" SUBMITTED WITH HER REPLY IS VEHEMENTLY DISPUTED

When granting Taft the chance to file a Reply to Barresi's Opposition, the Court stated that it would not consider the statements, arguments and exhibits from her Objection to the Report and Recommendation denying the Emergency Motion. (Dkt. No. 35 at p. 2.) Despite the Court's statement that "any evidence presented not as 'rebuttal evidence' is not permitted" (*id.* at p. 1), Taft submitted 79 pages of non-

5

rebuttal evidence with her Reply, largely lifted from her Objection.[1] As reflected in the
Evidentiary Objections filed concurrently herewith, much of this purported "evidence"
consists of hearsay, legal conclusions, speculation and unauthenticated and/or
incomplete documents.

In addition to three alleged instances that were previously found insufficient to
warrant the relief requested or irrelevant to Plaintiff's Emergency Motion,[2] Plaintiff

---

[1] This includes the re-submission as Exhibit J of Mike McCormick's declaration (Dkt.
No. 39-1 at pp. 22-25), which the Court has already concluded does not support Taft's
Emergency Motion. The Court concluded that, from McCormick's description of the
September 30, 2024 voicemail he received from Barresi, "it is not clear that defendant
Barresi's statements and curses were threats"; noted that months had elapsed between
the voicemail and the filing of the Emergency Motion; and explained that the declaration
"is replete with conclusory, non-specific, unfocused, and hearsay statements regarding
defendant Barresi's alleged harassing and intimidating conduct." (Dkt. No. 28 at 8:25-
9:11.) Furthermore, Barresi's "alleged unauthorized lookup of Plaintiff's legal
consultants' telephone number" and phone call to Lucy Hana (*id.* at 9:12-13) is
materially misrepresented by Taft. As set forth in the accompanying Declaration of Paul
Barresi ("Barresi Declaration" or "Barresi Decl."), Hana was identified as the "Media
Contact," along with her phone number, at the end of an October 17, 2024 press release
disseminated online by Taft. (Barresi Decl. ¶ 27, Ex. I.) Barresi called Ms. Hana's phone
number to ask why she was reporting on Taft's frivolous lawsuit against him. (*Id.* ¶ 29.)
Ms. Hana did not respond and hung up on him. (*Ibid.*) Barresi never intended to contact
a "legal representative" for Taft and never harassed Ms. Hana.

[2] In support of her Reply, Taft also resubmitted an October 2, 2024 social media post by
Barresi that states, "I'm not a hitman. I don't care what the undertaker says." (Dkt. No.
39-1 at p. 45 (Ex. L).) The Court previously declined to address the post "because
Plaintiff does not make any attempt to explain how it supports her argument that
defendant Barresi 'continued to intimidate witnesses' after being served with the
lawsuit." (Dkt. No. 28 at 5, n.9.) Taft's explanation in her Reply confirms that the post
is irrelevant. Taft contends that the post is "particularly alarming as it underscores the
implicit threats and intimidation tactics" used by Barresi and "particularly terrifying
because it is tinged with historical intimidation, mortality, and the silencing of
witnesses through fear." (Reply at 17:16-22; *see also id.* at 17:22-18:2.) Taft contends
that Barresi's post is an "alteration of Al Capone's infamous denial of murder—'I'm
not a killer'—to 'I'm not a hitman,'" alludes to organized crime (because Waldman is
purportedly a "consigliere") and "conveys a calculated message of power, dread, and
potential consequences for those involved in this case, rather than mere defiance." (*Id.*

6

relies on the following as evidence of Barresi's purported harassment and intimidation of witnesses ***after*** the filing of the instant lawsuit:

***Exhibit A: Declaration of Ian Herndon.*** Ian Herndon states that "[f]rom 2022 to this very day, I have observed Christina Taft be in constant fear of Paul Barresi, supported by ongoing contact by him using threatening and harassing language." (Dkt. No. 39-1 at pp. 1-8 ("Herndon Decl.") ¶ 42.) Herndon claims that at some unspecified date, Barresi "called my wife and said 'Your husband needs to stop'." (*Id.* ¶ 24.) Herndon also alleges that Barresi intimidated and threatened a sexual assault victim, Angela ("Jane Doe" in the FAC). (*Id.* ¶¶ 3-21, 32-36, 39.) He also believes that Barresi was working with Richard "Richie" Albertini, a former Viper Room employee, to harass Taft. (*Id.* ¶¶ 31, 38.)

- As set forth in the accompanying Declaration of Angela Gayle ("Gayle Declaration" or "Gayle Decl."), the only people who have accused Barresi of threatening Gayle's life and pointing a gun at her head were Taft and Albertini. Gayle Decl. ¶ 2. Gayle testifies unequivocally that Barresi was not involved in any of the harassment she was subjected to after she was kidnapped and sexually assaulted by an actor. *Id.* ¶¶ 7-8. Moreover, she never told Herndon that Barresi was intimidating or threatening her. *Id.* ¶ 10. As evidenced by Albertini's unsuccessful effort to obtain a restraining order against Barresi in 2022 and confirmed in the accompanying Barresi Declaration, Albertini and Barresi have never worked together to harass Taft or anyone else. Declaration of Melissa Y. Lerner ("Lerner Decl.") ¶¶ 17-18, Exs. 16-17; Barresi Decl. ¶¶ 15, 19, Ex. F. The telephone call from 2021 had nothing to do with Taft or Herndon's purported role as a "witness" to support her claims. To the contrary, Barresi contacted Herndon to help his female friend, whom Herndon was relentlessly harassing at the time,

at 18:3-10.) While this interpretation of a two-sentence social media post is certainly creative, it confirms that connecting it to witness intimidation is a bridge too far.

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

and to request that he stop contacting her. Barresi Decl. ¶ 33. This is not evidence of witness intimidation or tampering, nor is it unlawful.

***Exhibit B: Declaration of Molly Beaton.*** Beaton tells the same provably false story about Gayle identifying Barresi as the man who threatened her at gunpoint after she was kidnapped and sexually assaulted. (Dkt. No. 39-1 at pp. 9-17 ("Beaton Decl.") ¶ 10.) On October 22, 2024, Barresi emailed Molly Beaton to ask if she knew how Richard Albertini, one of Taft's witnesses, and Taft met each other. (*Id.* ¶ 29, Ex. 1.) Beaton also alleges that Barresi contacted her on December 28, 2024 via email about the inclusion of her name in Taft's lawsuit against him. (*Id.* ¶¶ 4, 25.)

- As discussed above, it is Gayle's sworn testimony that she never told Beaton (or ***anyone*** for that matter) that Barresi was intimidating or threatening her. Gayle Decl. ¶ 10. No reasonable person would find the excerpts of Barresi's communications attached to the Beaton Declaration to be threatening or harassing. Moreover, in another email to Barresi, Beaton expresses her disdain for the conspiracy theories of Mario Nitrini, another of Taft's cohorts. Barresi Decl. ¶ 34, Ex. K. [3]

***Exhibit C: Declaration of Erik Eichler.*** On October 29, 2024, Erick Eichler, another former investigator for Taft, allegedly heard a woman named Rebecca Berry say, "Remember that guy who confessed to me about killing people?" (Dkt. No. 39-1 at pp. 20-21 ("Eichler Decl.") ¶¶ 4, 9.) Eichler interpreted that statement to mean that Ms. Berry was talking about Paul Barresi. (*Id.* at ¶ 9.)

- Nothing about this double-hearsay statement can be reasonably interpreted as a threat. To be clear, Barresi has never killed anyone. Barresi Decl. ¶ 4. Barresi's

---

[3] Beaton, better known as Molly Skye Brown, is a perpetual victim determined to involve herself in any high profile cases she can. In 2020, she claimed that she was recruited by Ghislaine Maxwell in Palm Beach, Florida when she was 14. *See* Lerner Decl. ¶ 21, Ex. 20.

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

only communications with Ms. Berry, another conspiracy theorist trying to force her way into the spotlight, were friendly. *Id.* ¶ 35.

**Exhibit D: Declaration of Michael Kountz.** On September 5, 2023, Kountz received an email from Taft containing a message she received from Barresi almost a year earlier (on November 7, 2022) that said "'Stacy is your sister' and sexual expletives" and "Taft advised that the text referred to Stacy Hagman in Texas and requested that I interview her," as she "was fearful that Barresi could access her." (Dkt. No. 39-1 at pp. 27-30 ("Kountz Decl.") ¶ 15.) Taft advised Kountz that Barresi "continued to harass her in 2024, sending an email stating 'Your Brother is a Monster,' referring to probably Sean Connor, who may be Taft's half brother" and containing audio tapes, including a conversation between Barresi and Defendant Adam Waldman. (*Id.* ¶ 17.) Kountz also alleges that Barresi altered an audio recording of his conversation with Taft's father, James Conner, and that Conner told Kountz he was afraid of Barresi. (*Id.* ¶¶ 1-11.)

- Kountz's purported characterization of Barresi's communications to Taft are unreliable and inadmissible. In addition, the alleged 2022 message cannot reasonably be interpreted as a threat; Taft's bizarre interpretation of and reaction to this supposed message demonstrates her lack of rational thought processes. Kountz's speculations about a purported 2024 email are irrelevant. His claims about Barresi's conduct toward Mr. Conner are false. Barresi spoke with James Conner in or about November 2022 in order to ask about Ms. Taft. Barresi Decl. ¶ 36. He recorded the call after Mr. Conner told him to be careful because Taft has a gun and suffers from mental health issues. *Ibid.* He did not alter the recording. *Ibid.* Barresi never had any hostile interactions with James Conner or Taft's aunt, Patricia Conner Strader. *Ibid.* The evidence indicates that it is **Taft** who has alienated Mr. Conner and Ms. Strader, including by initiating frivolous and vicious litigation against them in November 2015 that was unsuccessful. Lerner Exs. 12-13. Around the same time, Taft filed an amended petition for

name change to provide the judge the reason for the request, writing of her father and aunt. *"They are frauds, obssessive, stalkers (keeping tabs + investigator/security/body guard company), killers/terrorsts/mafia-like, assasinators/torturers, vulture-like people who attack weakness while seeking + destroy their targets/those despised, associate's targets.*" Lerner Decl. ¶¶ 14-15, Ex. 13 at p. 2; Ex. 14 at 1:25-2:2. In denying Taft's petition, the court expressed "**substantial concerns over the petitioner's ability to rationally evaluate her request for name change**." Lerner Ex. 14 at 2:6-12 (emphasis added).

**Exhibit G: Richard "Richie" Albertini's 2022 Application for Order of Protection.** On September 13, 2022, Albertini filed a request for a restraining order against Barresi, alleging that Barresi, whom Albertini called an "old fag," sent him threatening text messages and posted about him online. (Dkt. No. 39-1 at pp. 49-62.)

- While Taft falsely claims the request for a restraining order was granted, it was actually **denied** after an evidentiary hearing on October 19, 2022. Lerner Decl. ¶¶ 17-18, Exs. 16, 17.) Taft was behind this legal action. Albertini testified before the Court that he did not have any documentary evidence to support his allegations against Barresi because they were in Taft's possession. *See* Lerner Ex. 16 at 14:13-17. The court also concluded that Albertini was not a credible witness, and his allegations were bizarre and disordered. *Id.* at 22:23-23:2; 50:16-17; 50:21-23; 51:6-9. When opposing the application, Barresi submitted a copy of the strange and incomprehensible police report that Albertini filed against Barresi in South Carolina. Barresi Decl. ¶ 18, Ex. F. Barresi does not own a gun and did not own one in September/October 2022. Barresi Decl. ¶ 25. To the extent that Taft's witness declarations are based on interactions with or information from Richard Albertini, they are not based in fact. (*See* Herndon Decl. ¶¶ 5-6, 25-30, 44; Beaton Decl. ¶¶ 13, 17-19; McCormick Decl. at pp. 1:20-24). Albertini has a history of parroting Taft's spurious allegations and spinning his own web of delusions. *See, e.g.*, Barresi Decl. ¶¶ 5, 13-16.

*Exhibit I: Anthony Sarabia Email dated January 27, 2025.* On January 27, 2025, Sarabia, Taft's former attorney, claims that Barresi called him on January 27 with "questions about communications with Paul George [*sic*]." (Dkt. No. 39-1 at p. 44 Reply at 15:23-16:4.) When Sarabia said he would not answer Barresi's questions, Barresi "said he would talk to me face to face." (*Ibid.*)

- Barresi contacted Sarabia about allegations in Taft's FAC describing his alleged correspondence with Heard's attorney, *Eric* George. Barresi Decl. ¶ 39. Specifically, in the FAC, Taft alleges that she told Barresi that "'Eric George told my lawyer that you were not doing anything after June 2019 on their law firm's or Ms. Heard's behalf.'" (FAC ¶ 183.) In a footnote, Taft purports to quote from Sarabia's email to Mr. George and Mr. George's reply. (*Id.* at p. 38, n. 16.) Specifically, Taft alleges that, on October 5, 2022, Sarabia wrote an email to Mr. George asking him "to confirm, 'that your firm has absolutely no involvement in his recent conduct towards Ms. Taft. We request confirmation from you that Mr. Barresi has not been engaged by your firm since June 2019 on any matters related to Amber Heard.'" (*Ibid.*) Taft also alleges that, on October 6, 2022, Mr. George responded, "'Hi Tony – Your understanding is entirely correct. Best, Eric.'" (*Ibid.*) Barresi called Sarabia to ask him about his purported communications with Eric George, and told him that Mr. George was mistaken because Barresi did, in fact, work for his firm on Ms. Heard's behalf from July to September 2019. Barresi Decl. ¶ 39. Sarabia refused to speak to him or listen to what Barresi was telling him, but Barresi never threatened him or made any menacing statements, instead suggesting that an in-person conversation would be more productive. *Id.* ¶ 39. Barresi ended the call. *Ibid.* Sarabia's email to Taft confirms that his recollection of Barresi's call is unreliable. He writes that Barresi "had questions about communications with **Paul George**." (Dkt. No. 39-1 at p. 44 (emphasis added).) Paul George is a basketball player; Eric George is Heard's attorney.

*Exhibit E: Emails from Mario Nitrini*.[4] On April 28, 2022, Barresi sent Mario an email about the report he sent to the Ventura Police Department about his investigation into the disappearance of Anthony Fox, the former business partner of Johnny Depp. (Dkt. No. 39-1 at pp. 41-42.) On December 9, 2024, Mario Nitrini sent an email to Taft stating that Barresi posted about his son and that, as a result, "some very bad people have been looking for me" and he was "very seriously contemplating filing a criminal complaint on Paul Barresi for attempted murder." (*Id.* at p. 40.) Nitrini includes a screen shot of his own social media post that republished and broadcast Barresi's post insulting Nitrini and describing Nitrini's son as a "gangbanger" who testified against the "trigger man" in a gang-related homicide (*Id.* at p. 39). Both of the emails are unauthenticated.

- Nitrini is obsessed with celebrity and other high-profile cases, and constantly posts about the instant action on social media. *See* Barresi Decl. ¶ 38; Lerner Ex. 23. He claims to be personally involved in the OJ Simpson murder case, to have connections to the FBI and other law enforcement organizations, to possess material evidence regarding Taft's lawsuit, to have insider knowledge about the Jeffrey Epstein and Ghislaine Maxwell cases. *Ibid.* Nitrini's hyper-fixation on these cases prompted Barresi to share information about Mr. Fox's disappearance in 2022. Nothing about this email could be considered a threat and its subject has little relevance, if any, to the instant litigation. In addition, Barresi's comments about Nitrini and his son are not threatening and consist only of Barresi's opinions and true facts. Nitrini cannot credibly blame Barresi's post for putting his son in danger when Nitrini *reposted and further publicized* Barresi's statements. (Dkt. No. 39-1 at p. 39.) There is absolutely no evidence that Barresi's email or social media post intimidated or silenced Nitrini. He is

---

[4] Taft mischaracterizes "Exhibit E" as the "Declaration of Mario Nitrini." (Reply at 15:14-22.)

essentially live blogging this litigation on his public social media page, where he even mentioned Taft's subpoena to him and his refusal to submit the declaration she requested he prepare. Lerner Ex. 23.

***Exhibit M: December 19, 2024 Social Media Post.*** Taft submits an unauthenticated and incomplete screenshot of a December 19, 2024 social media post by Barresi in response to a comment from another user about his prior post regarding Victoria Taft's lawsuit, which, in apparent reference to Taft and her cronies, states, "Cowards. Every fucking one of them." (Dkt. No. 39-1 at p. 34.) Taft alleges that Barresi's comment was made "in reference to documents he obtained regarding Taft's mother, Victoria's lawsuit against Walt Disney Co, et al.," and accuses him of "unauthorized access to litigation records." (Reply at 17:6-10.)

- Again, nothing about this post could be considered a threat to Taft. Barresi's statements are based on public information only. Barresi Decl. ¶ 40.

***Exhibit N: December 28, 2024 Social Media Post.*** This unauthenticated social media post by Barresi on December 28, 2024 includes excerpts of the October 2022 hearing transcript in Albertini's restraining order action against Barresi and states "Despite a California State Judge denying Christina Taft's cohort Richie Albertini's request for a restraining order in October 2022- accusing me of murder, mayhem & worse- two years later, she's got no qualms about selling the same bill of goods to a United States Judge." (Dkt. No. 39-1 at pp. 78-79.)

- Taft ironically seeks to enjoin Barresi from commenting on the instant litigation despite her own insistence on publicizing it, including as a "press release." *See* Barresi Decl. ¶ 27, Ex. I; Lerner Decl. ¶ 23, Ex. 22.[5] It is simply not unlawful for Barresi to post about public filings or comment on this case and Taft's ongoing use of the court system to torment him.

---

[5] Taft's press release refers to her as the "CEO of Rescue Social," one of two for-profit shell companies used by Taft to portray her false and defamatory claims against Barresi as legitimate. *See, e.g.*, Lerner Decl. Exs. 1-5.

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

***Exhibit F: January 2, 2025 Social Media Post.*** Taft submits an incomplete and unauthenticated social media post by Barresi on January 2, 2025, responding to another user's comment that is not visible, apparently referencing Taft and stating, "I could not agree with you more. You will find very few people on the planet that would disagree with you. To my mind, not a more evil human has ever breathed air. She and her cohorts. All fuckin' rotten demons." (Dkt. No. 39-1 at p. 31.)

- Nothing in the social media post could be construed as a threat. Taft eagerly seeks the spotlight and purposefully inserts herself into the public sphere, but is inexplicably outraged when the information she shares with the world is referenced or shared by someone else. In or about 2018, Taft's partially blind mother died in their home in Paradise, California due to the Camp Fire. Taft promptly reached out to media sources to seek interviews regarding her experience and victimhood. She provided photographs of her mother, herself and their destroyed property to the media to accompany their coverage of her story. *See* Baressi Decl. ¶¶ 8-10, Exs. A-C. She now outrageously accuses Barresi of invasion of privacy and infringement of her right of publicity based on his republication of these publicly-available materials. *Id.* ¶¶ 7-11. Barresi is certainly free to share his opinion of Taft based on her public statements. This post does not constitute a threat.

***Exhibit K: January 2, 2025 Social Media Post.*** Taft attaches an unauthenticated and incomplete social media post by Barresi, responding to another user on January 2, 2025, stating, "Christina Taft has allegedly already begun to upset people in France, I am informed," and an undated post about Taft and her ally, Albertini, inventing false allegations against Barresi to recruit nonparties to their cause to destroy him. (Dkt. No. 39-1 at pp. 32, 38.)

- The posts contain nothing that could constitute a threat or harassment. Barresi has every right to respond to the litany of false allegations and recorded conversations posted by Taft and Albertini. *See* Barresi Decl. ¶ 40.

14

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

***Exhibit O: January 4, 2025 Social Media Post.*** Taft's evidence includes an incomplete and unauthenticated screenshot of a January 4, 2025 social media post by Barresi responding to another user's comment, apparently referencing Taft and stating, "My precise sentiment. Brain dead people cost lives, or they are so f—kin wrapped up in themselves, they have no concern for other people. Hmmm ….Sounds like these two wretches," accompanied by an image of Taft and Amber Heard with the caption, "Amber with lunatic fan Christina Taft." (Dkt. No. 39-1 at p. 33.)

- Again, the purported evidence does not constitute any type of threat to Taft or Heard (whom Taft ludicrously claims is a witness in her case).

***Exhibit G: Albertini's 2022 Action Against Barresi.*** Albertini's October 2022 application for an order of protection against Barresi and the partially granted TRO based on alleged verbal threats (which was later dissolved when the court denied the application after an evidentiary hearing). (Dkt. No. 39-1 at pp. 41-62.)

- In 2022, Taft helped one of her so-called witnesses, Richard Albertini, file a request for a restraining order against Barresi in Pasadena, California, which was ***denied*** after a full evidentiary hearing. Lerner Decl. Ex. 17. Albertini confirmed that Taft was pulling the strings. Lerner Decl. Ex. 16 at 14:13-17. The court concluded that Albertini was not a credible witness, and was unpersuaded by his wacky and rambling allegations against Barresi and chaotic behavior. *Id.* at 50:16-17 ("The stories are very wild and hard to believe."); 50:21-23 ("He [Albertini] has lots of evidence, but a lot of it is very wild, about the murders and the mayor is not letting him file the murder cases.").Albertini also filed a police report against Barresi in South Carolina, in which he describes a vast conspiracy impeding his access to police protection from Barresi. Barresi Decl. ¶ 19, Ex. F at p. 4 ("Richard stated that he has filed a lot of reports in California, but the police will not investigate anything due to the corruption. Richard advised that he is a part of a Christian patriotic group that is trying to fix the world by telling the truth[.]").

**Exhibit H: January 2025 Hilo TRO.** Taft submits her application for a TRO and injunction against Barresi filed in Hilo, Hawaii on January 21, 2025 and the TRO granted by Judge Jeffrey A. Hawk of the District Court of the Third Circuit, N.S. Hilo Division dated January 22, 2025. (Dkt. No. 39-1 at pp. 35-37, 47-48.)

- Taft has repeatedly tried (and failed) to use the courts to attack Barresi. On October 23, 2023, Taft filed an Ex Parte Application for Temporary Restraining Order and for Injunction Against Harassment against Barresi in Honolulu, Hawaii (where she resides), which was denied. Lerner Decl. Ex. 18. On January 12, 2024, Taft filed another Ex Parte Application for a TRO, which was likewise denied. Lerner Decl. Ex. 19.

- Desperate for another bite at the apple and in a flagrant incidence of forum shopping, in January 2025, Taft used a fake address in Hilo to file another bogus restraining order against Barresi there. (Dkt. No. 39-1 at p. 47.) In addition to falsely claiming she is a resident of Hilo, Taft lied to the Court about her feigned ignorance of Barresi's location. She falsely represented to the Hilo court: "I am not sure of this individual's exact address or whereabouts. I've recently hired a process server . . . to locate [Barresi's] physical address here in Hilo." (*Id.* at pp. 47-48.) However, she is well-aware that Barresi lives in California and knows the address of his home in Rancho Cucamonga, California. (*See, e.g.*, Dkt. No. 1, ¶ 16 (listing Barresi's full home address).) In fact, Barresi had process servers at Barresi's doorstep with the Hawaii court documents within days and directed a Hawaii-based process server (and personal friend) with a history of aggressive and improper conduct to call and threaten Barresi. *See* Barresi Decl. ¶ 22-23, Exs. G, H. Barresi has never been to Hilo, Hawaii, let alone lived there. *Id.* ¶ 25. Barresi does not own a gun. *Ibid.* Though she represented to the Hilo court that she was so afraid she was forced to delete all her social media, Taft's social media accounts are still online and she continues to post actively. Lerner Decl. ¶¶ 2, 4, 7-11, 23, Exs. 1, 3, 6-10, 22. Taft's own evidence submitted in support of

16

her Reply demonstrates her willingness to go to any length, including perjuring herself in court, to harass Barresi.

***Exhibit ???: Screenshots from Social Media.*** Taft relies on two undated, unattributed and unauthenticated screenshots of images from social media, one of a map marked with a driving and flight route from Madrid, Spain to Antibes, France and the other of an excerpt of public records pertaining to the examination of Victoria Taft's remains. (Dkt. No. 39-1 at pp. 63-64.) In her Reply, Taft claims: "On January 2, 2025, Defendant Barresi publicly tracked flight paths between Plaintiff's off-record address in Antibes, France to Madrid, Spain accompanying a photo of her with Witness Amber Heard. . . . The potential witness already fled the United States 2 years ago." (Reply at 16:16-20.)

- Setting aside that this is a mischaracterization of the map image, Taft has not identified how the image is a threat. Her claim that Heard moved to Europe because of Barresi's alleged witness intimidation is absurd and unsubstantiated.

- To the extent that Taft claims that posting publicly-available information from a coroner report is a threat and/or invasion of privacy, it is not. Barresi Decl. ¶ 11, Ex. D. Moreover, there is no evidence that the post disclosed an address in France.

## III.  <u>LEGAL ARGUMENT</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Ibid.* (citing *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)). "A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Toyo Tire Holdings of Ams. Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d

975, 982 (9th Cir. 2010) (citing *Winter*, 555 U.S. 7). The Ninth Circuit permits a "sliding scale" analysis. If the moving party "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest," she may demonstrate her right to preliminary injunctive relief by establishing "'serious questions going to the merits' and a balance of hardships that tips sharply [in her favor]." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (as amended) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Nevertheless, under the "sliding scale" framework, the moving party must demonstrate likelihood of success. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (2013).

As the Court has already concluded, and notwithstanding the submission of new, non-rebuttal evidence with her Reply, Plaintiff still cannot meet her burden as to any of these factors.

### A.    Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits.

With respect to the first prong, "the 'merits' refers to [Plaintiff]'s ability to establish harassment that justifies injunctive relief." *Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 423495, at *4 (C.D. Cal. Feb. 2, 2022). Relevant here, California law defines harassment as:

> unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

Cal. Civ. Proc. Code § 527(b)(3). If "substantial factual disputes are presented, it may be inappropriate to grant injunctive relief." *Marina Vape, LLC v. Nashick*, Case No. 16-CV-01028, 2016 WL 9086939, at *8 (C.D. Cal. May 6, 2016). As set forth in section II above and in Defendant's concurrently-filed Evidentiary Objections, the "evidence" submitted by Taft with her Reply is hotly contested and largely irrelevant to Taft's request for a preliminary injunction to prevent witness intimidation in the instant

18

litigation. Defendant submits that Taft's and her witnesses' purported interpretations of every statement by Barresi as a threat are ***unreasonable***; that Barresi's alleged conduct would not cause a reasonable person to suffer emotional distress; that Barresi has never engaged in unlawful violence or made a credible threat of violence against any person, including Taft; that Taft has not established that Barresi has engaged in a knowing and willful course of conduct directed at a specific person; and that Barresi's actions serve legitimate purposes, including the collection of evidence to combat Taft's publication of false accusations of criminal conduct against him.

Plaintiff generally contends that Barresi has harassed her and others in an effort to violate her right to due process and impede her frivolous litigation against him. (*See, e.g.*, Reply at 5:5-19.) As an initial matter, Taft's submission of five witness declarations with her Reply – including declarations from Herndon and Beaton, both of whom claim to have been harassed and intimidated by Barresi – totally contradicts her claim that Barresi tampered with witness and "engages in witness suppression and obstruction." (Reply at 21:13-14.) The malicious, defamatory and very public campaign by Taft and her associates (including Albertini and Nitrini) perpetuates lies about Barresi's alleged criminal activity. This online barrage prompted Barresi to investigate Taft and her supporting cast, deny their false accusations on the same social media channels and conduct his own research regarding their unreliability. Barresi is not required to have a private investigator license to review publicly available court filings, coroner records, social media posts and news articles pertaining to those who are hellbent on destroying his reputation and career. Nor is he required to have a license to reach out to people associated with and/or identified by Taft in her attacks on Barresi using contact information that can be obtained online.[6] Taft's insistence that Barresi is

---

[6] Not only is there no merit to Taft's argument that the revocation of Barresi's private investigator license in 2015 renders his conduct unlawful (Reply at 4:24-26; 19:3-6; 19:20-25), but its submission by Taft as Exhibit H is gratuitous. This 10-year-old fact is irrelevant to the Emergency Motion and should not be considered by the Court.

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

using some sort of PI-only database to go after her is simply not grounded in reality, and it is a delusion that she has expressed before. Lerner Decl. ¶ 22, Ex. 21. Barresi is entitled to research someone who is stalking and defaming him, and he is exercising his free speech rights by responding to his accusers and addressing their lies.

Moreover, the conduct which Taft characterizes as threats and intimidation are simply not threatening or intimidating. As set forth above in Part II, Barresi's comments and social media posts, assuming they were authenticated or properly before this court, are a result of indignation regarding Taft's years-long campaign against him. They do not constitute threats or harassment. The allegations about Gayle are completely fabricated. *See* Gayle Decl. ¶¶ 8, 10; Barresi Decl. ¶ 37. Taft has not, and cannot, establish that Barresi has harassed her.

## B. __Plaintiff Cannot Demonstrate That She Is Likely to Suffer Irreparable Harm.__

A showing of "irreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'" *Fitzgerald*, 2022 WL 423495, at *6 (citation omitted). The Court previously found that Taft failed to establish a likelihood of irreparable harm because her claims were speculative, attenuated and conclusory. (Dkt. No. 28 at 10:10-12:5.) This deficiency has not been addressed or corrected on Reply. To the contrary, Taft once more claims that she ***may*** suffer harm in vague and conclusory terms. For example, Taft writes: "Plaintiff was concerned that witnesses ***could be*** threatened or abducted for disclosing information to her that exposed Barresi's efforts to suppress witness testimony, as evidenced by the sworn declarations." (Reply at 5:21-23 (emphasis added).) No declarant has personal knowledge of any such imagined threats or abductions, and Taft's speculation is unfounded. Taft claims that, "[w]ithout the court's action, it ***can*** continue to cause withheld testimony and information related to legal claims or defense." (*Id.* at 17:4-5 (emphasis added).) But Taft has not presented evidence that Barresi has caused anyone to withhold testimony or information relevant to this lawsuit, so her conjecture that

something that never happened "can continue" in the future does not establish a likelihood of irreparable harm. Taft goes on to argue, in a conclusory fashion and without reference to any evidence, that

> [t]he integrity of judicial proceedings is compromised by the actions of the defendant, resulting in irreparable harm. These actions have created a climate of fear that discourages attorneys from representing Plaintiff on the public record, thereby depriving her of her due process rights. . . . The Plaintiff's capacity to effectively prepare her case has been impeded by the Defendant's direct threats against her and her legal advisors.

(*Id.* at 22:9-26.) Taft's suggestion that she cannot find legal representation because of Barresi's conduct is unsubstantiated. Taft conveniently fails to consider that no attorney wants to take her case because she is not a credible plaintiff and her claims are bogus. Moreover, Taft has repeatedly declared her rights as a pro se litigant, never before claiming that she was appearing in *pro per* against her wishes. Far from being impeded by Barresi's alleged threats, Taft frequently files lengthy documents in the instant case, demands leave to submit supplementary briefs and evidence and seeks interim relief under various theories and laws. Taft cannot demonstrate any obstruction of justice when she has produced five witnesses and publicly solicited declarants on her social media page. Lerner Ex. 22. Taft improperly relies on inapplicable New York State criminal law. (Reply at 22:20-26.) These unsupported and conclusory statements are insufficient as a matter of law to support a preliminary injunction.

In addition, lengthy delays between the purported misconduct and the filing of a motion for injunctive relief weighs against a finding that irreparable harm is likely or imminent. *See Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 993) ("[A] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). Taft's claims about an "over five-year span of related activities" that purportedly "underscore the necessity of immediate judicial intervention" is a contradiction in terms. (Reply at 18:23-25.) The delay between many of the alleged incidents of Barresi's purported harassment identified in Taft's non-rebuttal evidence and the filing of the Emergency Motion in October 2024 is to be measured in **years or**

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

*months*. (*See* Dkt. No. 28 at 11:16-23 (noting that "Plaintiff did not file the Emergency Motion until more than three weeks after defendant Barresi's last 'aggressive voicemail' to Mr. McCormick (and substantially longer for much of the other allegedly harassing and intimidating conduct described by Mr. McCormick . . . )"). There is simply no emergency here.

### C.    The Balance of Equities Do Not Weigh in Plaintiff's Favor.

Taft essentially argues that *she* is entitled to contact anyone she wants to litigate this action, but that Barresi should be prevented from doing so. Taft goes so far as to claim: "The defendant has no legitimate interest in contacting or intimidating witnesses nor victims who may declare or report." (Reply at 23:19-22.) As a self-claimed champion of due process, Taft cannot logically argue that Barresi should be denied his due process rights. It is disingenuous for her to argue that Barresi, who is defending himself against very serious (and false) claims against him in the instant action, has no interest in obtaining exculpatory evidence in the possession of third parties. To the extent these individuals do not wish to cooperate with Barresi (and should this meritless case proceed beyond the pleading stage), he may use the formal tools of discovery, including subpoenas, to obtain any information and/or documents relevant to his defense. Taft's speculative and conclusory claim that witnesses may potentially decline to get involved in this action or support her position does not outweigh Barresi's preparation of his case. As the Court previously concluded, the balance of equities simply do not weigh in Taft's favor. (Dkt. No. 28 at 12:6-24.)

### D.    The Requested Injunction Is Not in the Public Interest.

The Court previously dismissed Plaintiff's justification for "the granting of a preliminary injunction based on lofty public interest ideals," especially because she failed to establish that Barresi engaged in harassment. (Dkt. No. 28 at 13:3-15.) Nevertheless, in her Reply, Taft has doubled down on her sweeping claims that Barresi's alleged actions "jeopardize the fundamental impartiality of judicial proceedings" and "foster[] a fear-based environment that undermines the fundamental

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

principles of equal protection and due process." (*See generally* Reply at 23:1-15.) Because Taft cannot establish that Barresi has engaged in a course of witness intimidation and obstruction of justice, the general cause of preserving "judicial integrity" is not served by granting the requested injunction. Plaintiff cannot show that an injunction is in the public interest.

## IV.  **CONCLUSION**

For the foregoing reasons and those set forth in Defendant's Opposition, and as previously recommended by the Court, Plaintiff's Emergency Motion should be denied.

Dated:  March 12, 2025                LAVELY & SINGER
                                      PROFESSIONAL CORPORATION
                                      MELISSA Y. LERNER
                                      MEGAN S. MALLONEE

                          By:     /s/    *Melissa Y. Lerner*
                                      MELISSA Y. LERNER
                                      Attorneys for Defendant PAUL BARRESI

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION

1

## **L.R. 11-6.2 Certificate of Compliance**

2      The undersigned, counsel of record for Defendant, certifies that this brief

3  contains 6851 words, which complies with the word limit of L.R. 11-6.1.

4

5  Dated:  March 12, 2025              LAVELY & SINGER

6                                      PROFESSIONAL CORPORATION
                                       MELISSA Y. LERNER

7                                      MEGAN S. MALLONEE

8                          By:    /s/    *Melissa Y. Lerner*

9                                      MELISSA Y. LERNER
                                       Attorneys for Defendant PAUL BARRESI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY RE PRELIMINARY INJUNCTION