Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

_____

CHRISTINA TAFT

    Plaintiff,

vs.

PAUL BARRESI, ADAM R
WALDMAN, and DOES 1-10,
inclusive,

    Defendants.

_____

Case No.: 5:24-cv-01930-TJH-DTB
[Hon. David T. Bristow, Magistrate
Judge]

**SECOND EX PARTE
APPLICATION AND
MEMORANDUM FOR
EXTENSION OF TIME TO SERVE
DEFENDANT ADAM R.
WALDMAN AND SERVICE BY
MAIL AND PUBLICATION
PURSUANT TO FRCP 4(m) AND
6(b)**

_[Filed concurrently with Memorandum
of Points and Authorities within this
application, Declaration, and Exhibits,
in Support of Extension of Time to
Serve; Proof of Service; [Proposed]
Order]_

Date: March 24, 2025

No Hearing Requested

# **Table of Contents**

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)……………………………………….…..............4

A. Continuing Efforts to Serve Defendant Adam Waldman:………………..…...5

 I.INTRODUCTION……………………………………………...…....6

II. NOTICE BY MEET AND CONFER:……………………………….........7

MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF EXTENDING SERVICE BY MAILING AND PUBLICATION……………………………………..10

   I.    FACTUAL BACKGROUND AND PROCEDURAL TIMELINE…..…..10

   II.   LEGAL STANDARD FOR EXTENSION OF TIME UNDER FRCP 6(b) AND FRCP 4(m)……………………………………..….12

   III. ALTERNATIVE SERVICE BY MAIL AND PUBLICATION IS WARRANTED UNDER FRCP 4(e) AND CALIFORNIA……………………………………….…15

   IV. CONCLUSION………………………………………..…..….20

   V.  RELIEF REQUESTED FOR SERVICE WITH GOOD CAUSE………………………………………..…20

## **Table of Authorities and Statutes**

**Cases**

1. *Anthony V. Fox v Safe in Heaven Dead Productions Inc*…………..……….5

2. *Bank Julius Baer & Co. Ltd. v. Wikileaks, 2008 WL 413737 (N.D. Cal. 2008)………………………………………………………………………..……..16*

3. *Brockmeyer v. May, 383 F.3d 798, 806 (9th Cir. 2004)*…………………..16

4. Calvert v. Al Binali, 29 Cal.App.5th 42, 49-50 (2018) (quoting Donel, 87 Cal.App.3d at 332)……………………………………….…………………...13

5. *Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007)*……..…………..12

6. *Ellard v. Conway, 94 Cal. App. 4th 540, 546 (2001)*……..……………..10

7. *Husain v. Casino Control Comm'n, 265 F. App'x 130, 133 (3d Cir. 2008)*.12

8. *In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001)*…………………………12

9. *Jones v. Flowers, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006)*18

10. Kott v. Superior Ct., 45 Cal.App.4th 1126, 1137 (1996)…………………..13

11. *Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009)*…………...12

12. *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)*..17

13. *Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)*16

14. *Watts v. Crawford*, 10 Cal.4th 743, 42 Cal. Rptr. 2d 81, 896 P.2d 807 (Cal. 1995)……………………………………………………………….…........17

**Statutes:**

1. California Code of Civil Procedure……………………………………….9

2. Federal Rules of Civil Procedure…………………………………………6

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT
ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

## SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

For justice, Pro Se Plaintiff Christina Taft ("Plaintiff") respectfully requests *Extending Time to Serve* Defendant Adam R. Waldman ("Defendant") and *to authorize Service by Mail and Publication of Legal Notice in a newspaper (with permitting an affidavit from the source)* pursuant to Federal Rules of Civil Procedure 4(m) and 6(b). This application is supported by a Memorandum of Points and Authorities within this Brief, Declaration, Exhibits, and Proposed Order demonstrating *Good Cause and excusable neglect*.

Two process servers between February 20th to the Present date have diligently and honestly attempted to serve Defendant Adam Waldman in Palm Beach, Florida, conventionally through visiting his residence multiple days and contacting him over the phone, text, and email to accept direct service, and by mailing twice, on March 12th and March 14th, to no avail (Exhibits 1, pages 8-11). Plaintiff requests an extension of time with Good Cause for service by mail, requiring the Defendant Adam Waldman to respond by signature within 20 days of mailing, and for publishing in a local newspaper, which requires 4 weeks of time to conduct proper service. An extension of time to serve is needed for service by mail and publication, in the *Palm Beach Post* or *Palm Beach Daily News*.

As a newly minted process server in Hawaii, Plaintiff moves to obtain a fair process, peace one day, and life with extended time. Approximately *25 to 30 witnesses* have been subpoenaed by Plaintiff (Exhibits B). Defendant Barresi's lawyer did not facilitate acceptance of the Hawaii restraining order and did not advise the Defendant to accept the San Bernardino Sheriffs' efforts. Instead, the

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

Defendant planned shock, brutality, and impugning every witness. Defendant Waldman proceeds to avoid service with awareness of how broad Co-Defendant's interference and coercion is. Plaintiff urgently and earnestly is trying to regain the rights, equal protection, and due process normally provided in society, as Plaintiff, as well as for witnesses, family, and victims.

It is *only* due to this grateful U.S. District case that Plaintiff does not need to fully recant the reasons for Co-Defendants' "Hollywood Fixer" injuries (or the existence of witnesses) in order to stop harm, hence the nature of the Defendants to do harm to force recantation, while average situations take precedence. Coercion causing "withholding testimony or information with respect to another's legal claims or defense" is continued without this civil rights case and Defendants being served. Defendant Barresi uses the phone area of 908, originating from New Jersey, which makes knowledge of the coercion law of New York amenable.

Plaintiff was notified Defendant contacted witness Molly Brown, as he had done to retired LAPD licensed private investigator Mike McCormick about witness Nitrini, to intimidate her he was wrongfully taking chains of emails and instructing her that his attorneys would be enacting to coerce against her notarized affidavit, in an act of intimidation of the witness to recant, to force statements without consent, and created through his witness interference and manipulation that alters documentation (Exhibits B – Subpoenas issued to witnesses to testify). Plaintiff has further moved to obtain documentation from *Anthony V. Fox v Safe in Heaven Dead Productions Inc, et al's* case, as well as still caring about her mother Victoria Taft. *The 25 to 30 Witnesses Subpoenaed* are merely pre-discovery, showing the absolute devastation these co-defendants enact as well as coerce to obstruct.

**Continuing Efforts to Serve Defendant Adam Waldman:**

Plaintiff has made diligent attempts to inform Defendant Waldman of this legal action, to his residence in Palm Beach to accept service, which includes a process server Ivana Linic going to his door for 5 different days, texting and

calling Adam, and emailing Adam (Exhibits 1, pages 8-11), as well as a 2nd server,
Philip Hamilton, mailing, texting, and emailing Adam. Philip attests to doing
service by mail twice in his affidavit, and in email as well as text cell phone
notification of mailing (Exhibits 5, page 22). Server Kenneth Ford confirmed from
the DC Postmaster of Defendant's residence at that street address in Palm Beach
(Exhibit 2, page 13). Defendant Adam Waldman has not accepted service or
responded to inquiries, despite these efforts, and has continued to evade service.

## I.INTRODUCTION

This Ex Parte Application for an extension of time to serve Defendant Adam R.
Waldman, and for mailing and publication, after Waldman moved out of the
Washington DC and the Northeast, to Palm Beach, Florida. With Defendant not
accepting normal traditional service, and circumstances, this request is predicated
upon a comprehensive analysis of applicable federal procedural rules,
constitutional principles, hardships seen by Plaintiff and related parties, and
established legal precedents. Allowing mailing and publication is simply needed.

In additional procedure to try to move forward life-improving resolutions and
relief, Plaintiff issued witness subpoenas, including to a fact witness, Amber
Heard, that Co-Defendants are hell-bendingly unhinged to unnecessarily alarm,
coerce, and silence. Anyone in their path sees the same unhinged oppression.
Witnesses Ian Herndon and Molly Beaton had communicated with New York
attorney Roberta Kaplan during and after 2021, and Plaintiff had communicated
with her in emails and on LinkedIn in 2021 with voluntary assistance. After March
5, with a Subpoena to Witness Amber Heard for documentation and information
with a written declaration at some time, process server Philip reached out to lawyer
Roberta Kaplan. The notarized affidavit of Ian Herndon attested that in Kaplan's
response to him over the phone, she conveyed that she removed Defendant Barresi
when she joined Heard's legal team (approximately September or October 2019).

Kaplan who represented Witness Heard appeared in experience to have more of an understanding of some circumstances, however informed Philip and Plaintiff that "so sorry" she no longer represents Heard (Exhibits B). Plaintiff moves to process servers and the Hague Convention of Evidence, while attempting to politely process serve Adam Waldman without being persuaded.

Considering the historical to modern dilemma of obstructing justice "Hollywood Fixers" and multiple witnesses/victims prevented resolution or relief, including for Plaintiff, this collectively and concurrently substantiates Good Cause and excusable neglect under the Federal Rules of Civil Procedure 4(m) and 6(b). Kaplan, in Plaintiff's personal experience, has been the single attorney of Witness Amber Heard's that has bothered to reply to Pro Se and self-represented witnesses. Co-Defendant Adam Waldman has not accepted to provide relief or normalcy, causing witnesses and plaintiff to swing back and forth, finding no relief.

## II. NOTICE BY MEET AND CONFER:

Adhering to L.R. 7-3, there are no attorneys that have "appeared" for Defendant Adam Waldman. Previously, an honest process server Philip Hamilton and Pro Se Plaintiff reached out to Benjamin Chew and Stephen Braga, who wrote asking if a "Paul" left a voicemail for him, when the server's name is clearly Philip. Two process servers, Ivana Linic and Philip Hamilton, made efforts to politely contact and serve Defendant Waldman, who resides in the city of Palm Beach. As a result in this case, process service by mail and publication is required.

It may be inappropriate to confer with Lavely & Singer PC, savagely dictating 424 pages against a Preliminary Injunction in Sur-Reply (usually 15 pages) and multiple docket entries. Nevertheless, Plaintiff requested Defendant on March 22 to accept this ex parte to extend service to Defendant Adam Waldman. Plaintiff wrote simply of procedural updates including the response by Defendant Barresi that was "impugning at least 10 people —— including licensed private investigators,

process servers, witnesses, victims, former clients of attorneys, and licensed attorneys residing in California" (Exhibit 6, page 28). Brutal, mangled retaliation with contradictions occurred after Plaintiff submitted a consideration paper submitted verifying harm by Defendant Barresi of former clients Sylvester Stallone[1](*ABC News* on archived Rescue Social Inc's 2022 repository, nonprofit *Internet Archive*, and journalist Luke Ford's reference[2]), John Travolta[3]("Through his attorney's Travolta denied the allegations by Barresi, who was paid $100,000 by the *Enquirer,*" in *Huffington Post*), Nicole Kidman[4](quotes in *ABC News*, *Internet Archive in early 2023*), Arnold Schwarzenegger (journalist Luke Ford and allegedly *New York Times*, not re-reported), among them, who were harmed by Defendant Barresi's participation in witness interference against them and "110 counts of federal charges including racketeering, witness tampering, conspiracy and extortion" (See, *Chicago Magazine* and *HipHopDx*[5]). Defendant Barresi in September 2024 and prior years drafted articles about Tom Cruise and Jody Babydoll Gibson seeming to victimize both with audio tapes and "dropping dead"[6]. There is simply no relief related to Film, Music, Arts cases. As foundation was

---

[1] See, from March 28, 2022, "*Fixers Paul Barresi-Pellicano-abcnews-Primetime-story 2006,*" https://github.com/RescueSocial/Amber-Heard_Disinformation_Operations_Bots/blob/main/Subjective%20Preliminary%20Claims/Fixers%20Paul%20Barresi-Pellicano-abcnews-Primetime-story%202006.pdf

[2] See, "*Paul Barresi writes Luke 11/15 at 44:45PM: "Punk"*," against reporters alleging Stallone and Schwarzenegger are victims, https://lukeford.net/profiles/profiles/anthony_pellicano.htm

[3] See, a single sentence from, "*The John Travolta Saga: A Relic from the Past or an Enduring Reality?*" https://www.huffpost.com/entry/the-john-travolta-saga-a_b_1589777

[4] See, Internet Archive from March 13, 2023, and email "*The Two Nicoles*" of Defendant Barresi to witness PI Mike McCormick, stating he was paid "5K" against Kidman in two-timing, https://web.archive.org/web/20230310082648/https://abcnews.go.com/Primetime/LegalCenter/story?id=1625097&page=1

[5] See *Chicago Magazine* article, https://www.chicagomag.com/chicago-magazine/september-2007/how-anthony-pellicano-detective-to-the-stars-found-the-stolen-body-of-elizabeth-taylor-ex-husband-mike-todd and article from a Los Angeles entertainment magazine, *HipHopDx* https://hiphopdx.com/news/id.6580/title.chris-rock-tangled-in-federal-investigation

[6] On Sept 24, 2024, See "*EXCLUSIVE: Former Hollywood madam sued Tom Cruise in 2021 — and then dropped dead,*" thanking Defendant Paul Barresi, and linking his audio tapes related to finances and sexuality, https://tonyortega.substack.com/p/exclusive-former-hollywood-madam

Eddie Mannix "fixing" Patricia Douglas related to MGM Studios stating, "we killed her."[7] California's Attorney General Brown attempted to stop exploitation and invasions connected to *Confidential Inc* and *Hollywood Research Inc*, that had escalated at its time to a break-in called a "wrong door raid" in connection to Joe DiMaggio strong-arming his ex-wife Marilyn Monroe. "California state senator Fred Kraft… cited the incident as an example of "strong-arm" tactics by private eyes in the service of the magazine [and others][8]."

In relevant and modern matters, Sylvester Stallone became represented by privacy advocate attorney Neville Johnson[9], who was reached out to during the multiple years by both Ms. Taft and the witness Mr. Albertini - who is connected to witnessing assaults in the Viper Room, including a cigarette burn and hair pulling of a model named Stacy[10] with subsequent threats to kill while punching holes in walls, and witnessing his co-worker Paul Schindler's confession to the killing of business owner Anthony Fox and a former relationship with Defendant Barresi's "principle," Johnny Depp. These are significant attestations for both civil and criminal cases. Defendant's own proclamations, commercial advantages, overt acts, and behavior to "fix" witnesses, potential declarants, and both civil and

---

[7] See, "*It Happened One Night… at MGM*" subtitled, "When Patricia Douglas was raped by an MGM salesman at a 1937 studio party, the 20-year-old dancer filed charges, taking on Hollywood's most powerful institution. Today, as Douglas breaks a 65-year silence, the author exposes the perjury, bribes, and smear tactics used to destroy her."
https://www.vanityfair.com/news/2003/04/mgm200304

[8] See, "*Confidential's Reign of Terror,*" https://www.vanityfair.com/hollywood/2003/04/robert-harrison-confidential-magazine

[9] An attorney representing cases against the co-worker and boss of Barresi, Pellicano, was recommended by retired attorney Dinah Perez, in Beverly Hills, on *Avvo* to Plaintiff. Plaintiff struggled to obtain a law firm and fair representation, considering witnesses and fair play, and experiences outside implication of A to C, and to actually consider individuals directly. Anthony Pellicano *et al*, were convicted of racketeering against victims, witnesses, and former clients.

[10] Corroborating eye-witnessing a model, Stacy, that had a cigarette burn on her by Depp in the Viper Room to evidence in a recording, "*Put your cigarettes out on somebody else*" of Amber Heard apprehensive of injury and assault by Depp. Audio played by attorney Ben Rottenborn. See, https://www.youtube.com/watch?v=9IuiZvFvLdU

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT
ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

criminal cases for Johnny Depp demonstrates Defendant's hell-bent, unhinged punishment to anyone in that path. Requests for relief are seen as weakness.

In light of the totality of circumstances, with no equitable relief in sight and only meeting corrupt persuasion with continuing coercion, it is simply not feasible to provide additional notice of this application to Defendant Adam Waldman to extend time, by mail and publication for legal notice.

Through the Memorandum of Points and Authorities, hereto, process servers, licensed private investigators, affidavits, and witnesses, Plaintiff requests this discretionary decision of extension, with mail and publication, from the Court.

## MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF EXTENDING SERVICE BY MAILING AND PUBLICATION

Plaintiff respectfully submits this Memorandum of Law in support of a request for an extension of time to serve Defendant Adam Waldman and authorization for alternative service by mail and publication in the *Palm Beach Post* and *Palm Beach Daily News* pursuant to Federal Rule of Civil Procedure 4(e)(1), Federal Rule of Civil Procedure 6(b), Federal Rule of Civil Procedure 4(m), and California Code of Civil Procedure § 415.50. Despite reasonable and diligent efforts to effectuate personal service, Defendant Adam Waldman has evaded service, remains unavailable at the known address in Palm Beach, or have actively concealed their whereabouts, necessitating alternative means of service. Courts have long recognized that when a defendant cannot be served with reasonable diligence through traditional means, service by publication or mail is warranted in order to preserve the plaintiff's right to due process and prevent defendants from avoiding judicial proceedings through deliberate nonappearance (*Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)*; *Ellard*

*v. Conway, 94 Cal. App. 4th 540, 546 (2001)).*

## I.    FACTUAL BACKGROUND AND PROCEDURAL TIMELINE

Co-Defendant Adam R. Waldman resides in Palm Beach, Florida and two process servers diligently attempted to serve him at his new address (Exhibits A).

As soon as the Judge provided an extension of time to serve and re-issued summons, process server Ivana Linic from February 20th to March 14th attempted to serve Adam Waldman five times at his residence in Palm Beach Towers, as well as called him two times, texted him, and emailed him to notify him professionally (Exhibits 1, pages 8-11).

On March 9th 2025, Plaintiff received from process server Kenneth Ford of Savage a record of confirmation from the DC Postmaster for the same street address in Palm Beach (Exhibits 2, page 13). Plaintiff requests an extension of time to process serve, with mail and publication, showing good cause and excusable neglect as a pro se litigant due to circumstances.

Philip Hamilton, having diligently tried to serve Defendant Adam Waldman previously, and with a subpoena to a witness, contacted attorney Roberta Kaplan in New York in attempt to serve the Witness Amber Heard for relief (Exhibits B).

Back to "Adam" as is the situation for multiple years, process server Hamilton attempted to serve Defendant Adam Waldman with certified mail on March 12 and regular mail on March 14th (Exhibit 3, pages 15). Mr. Hamilton further notified Defendant Waldman of the process service by mailing through text and email (Exhibit 3, pages 15-18).

In factual background preceding this application, have been multiple investigations by U.S. and state authorities, with an FBI agent advising Taft in interview in 2024 that the witness she attested to "witnessed crimes." With witnesses and victims, as well as altered and selective objects jumbled, the process is obstructed. Seven witnesses and victims came forward, with five declaring with

notaries and naming involved individuals, that obstruction, witness intimidation, and corrupt persuasion is ongoing, which significantly hinders Plaintiff's ability to process serve and have normal court processes. A granted restraining order was continued to attempt to protect the Plaintiff, family, significant others, [and witnesses] from the brutal Defendant Barresi to April 2nd. The San Bernardino Sheriffs attempted to serve 3 more times for a total of 5 attempts in two months, with their business cards left on the ground by the Co-Defendant (Exhibits B).

Defendant Barresi irrationally attacked that Plaintiff stayed in Hilo, while she was doing work for clients as a process server, trained by Mark Ackrich "Civil Sheriff." Plaintiff stubbornly refuses to recant in full, as others have done, or faced demise. The merits, witnesses, and facts over time abide by Plaintiff.

Defendants continue to drive Plaintiff to find refuge, with only this court case providing any relief at all, with notarized declarations on the record. Plaintiff won't ever fully recant, nor wishes to have persistent demise as others, nor to death, from Co-Defendant(s), therefore, Plaintiff moves around and subpoenas for due process.

Plaintiff requests permission to serve Adam Waldman with an extension of time in Palm Beach, to complete service by mail and to do a publication of the legal notice for 4 weeks in the *Palm Beach Post* and *Palm Beach Daily News*.

## II. LEGAL STANDARD FOR EXTENSION OF TIME UNDER FRCP 6(b) AND FRCP 4(m)

Under Federal Rule of Civil Procedure 4(m), regarding service of process, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Courts have consistently held that "good cause" under FRCP 4(m) exists when the plaintiff has made diligent efforts to serve the defendant, but service has been thwarted due to factors beyond the plaintiff's control, such as evasion of service or an inability to locate the defendant despite reasonable attempts (*Efaw v.*

*Williams, 473 F.3d 1038, 1041 (9th Cir. 2007)*; *Husain v. Casino Control Comm'n, 265 F. App'x 130, 133 (3d Cir. 2008)*). Additionally, FRCP 6(b) provides that deadlines may be extended "for good cause" where a party demonstrates that they have acted diligently and that an extension would not unduly prejudice the opposing party (*Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009)*).

In the present matter, Plaintiff has undertaken substantial investigative efforts, including multiple attempts at personal service at known addresses and exhaustive inquiries into Defendant(s)' current whereabouts, yet has been unsuccessful in effectuating service. Courts have routinely granted extensions under FRCP 4(m) and FRCP 6(b) where personal service has been diligently attempted but has proven unsuccessful due to evasive or uncooperative defendants (*In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001)*). Therefore, an extension of time to complete service is both justified and necessary to ensure that Defendant(s) cannot frustrate judicial proceedings through avoidance tactics.

## A. LEGAL BASIS TO EXTEND TIME FOR PROCESS SERVICE

Plaintiff seeks an extension on the basis of the following grounds:

a) **Due Diligence in Service Attempts**: Plaintiff has implemented numerous investigative measures, direct inquiries, and professional process servers to serve the Defendant; however, his ongoing evasion has impeded these endeavors. The process servers documented numerous attempts at the verified address of Waldman by the DC Postmaster and a licensed private investigator, including efforts to call, text, mail, ring the doorbell in Palm Beach to deliver papers, and email Adam Waldman, after previous efforts to his family, friends, lawyers and him.

b) **Good Cause under FRCP 4(m):** Plaintiff's reasonable diligence was impeded by the Defendant's active evasion, misrepresentation regarding his location, and avoidance of mailing in-process, which resulted in good cause under FRCP 4(m).

c) **Multiple process servers aligned for Hon. Judge Bristow (Order on Motion**

**for Service by Publication**): Process servers adhered to guidance from Hon. Magistrate Judge Bristow providing avenues for service. "87 Cal.App.3d at 333, "[a] number of honest attempts to learn defendant's whereabouts . . . by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office . . . are generally sufficient. Kott v. Superior Ct., 45 Cal.App.4th 1126, 1137 (1996)."

In guidance on service by mailing, "California law provides that service may be accomplished by first class mail, postage prepaid, requiring a return receipt. C.C.P. § 415.50. Service in such manner is deemed complete on the 10th day after such mailing. (Id.)…" On service by publication, as necessary in this case, "Consistent with the notions of fair play and due process, substituted service by publication is 'a last resort' when 'reasonable diligence to locate a person in order to give him notice before resorting to the fictional notice afforded by publication' has been exercised. Calvert v. Al Binali, 29 Cal.App.5th 42, 49-50 (2018) (quoting Donel, 87 Cal.App.3d at 332)."

d) **Interference Causing Excusable Neglect**: Plaintiff, a pro se litigant, has been substantially impacted by interference, including harassment and intimidation, by Co-Defendant Barresi, as demonstrated by restraining orders. This is considered Excusable Neglect under FRCP 6(b). Barresi initiated direct contact with witnesses, potential witnesses, and associates to impede them from providing testimony.

f) **Co-Defendant Barresi's Procedural Obstacles**: The substantial and ongoing interference by Co-Defendant Barresi, which is intended to disrupt Plaintiff's legal consultations, witness testimonies, and procedural compliance efforts, is a substantial procedural barrier. This further establishes a cogent justification for judicial discretion in granting an extension under FRCP 6(b) in light of the documented instances of harassment and intimidation, as supported by judicial

restraining orders, and the docket history in this case with declarations of ongoing activity to obstruct, as well as previous background (Exhibit B).

f) **Adherence to State and Federal Procedural Norms:** Consideration of California Code of Civil Procedure § 583.210, which mandates service within three years while recognizing exceptions for circumstances, and California Code of Civil Procedure § 1013, which allows extensions where procedural obstacles necessitate leniency, particularly where the Defendant's evasion has obstructed lawful service efforts. Defendant has ignored efforts to politely serve him and ever resolve matters.

g) **Judicial Efficiency:** The grant of this extension will prevent piecemeal litigation, thereby ensuring that the case proceeds on the merits rather than being incomplete from formalities. The Plaintiff, without co-defendant, would be required to resubmit the case, which would result in unnecessarily high costs and delays.

h) **Due Process Considerations**: A reasonable extension guarantees that Defendant Waldman receives appropriate legal notice, in accordance with the Fourteenth Amendment. The necessity for extended service time is further underscored by Waldman's evasion tactics. Process servers diligently tried to serve Defendant in Palm Beach, with re-issued summons, justifying service by mail and the newspaper.

i) **Equitable Tolling Doctrine – Protection Against Prejudice from Misinformation**

The equitable tolling doctrine applies where a plaintiff, despite exercising due diligence, is unable to serve a defendant due to external impediments such as misleading information or evasive tactics. Equitable tolling prevents unjust dismissal of claims where procedural hurdles not lack of diligence cause delays in compliance.

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

j) **Public Policy and Access to Justice:** The Plaintiff, a pro se litigant, encounters exceptional obstacles that necessitate procedural leniency to guarantee a fair opportunity to litigate. Courts should guarantee equitable access to judicial remedies in light of the evidence of premeditated obstruction and evasion.

k) **Inherent Judicial Authority to Modify Procedural Timelines to Prevent Injustice**

Courts retain inherent power to extend procedural deadlines where strict adherence to fixed timelines would result in procedural inequities. The court's equitable discretion to modify service deadlines under FRCP 4(m) and 6(b) ensures that litigants are not unjustly prejudiced by misinformation, procedural confusion, or deliberate evasion of service by a defendant.

## III. ALTERNATIVE SERVICE BY MAIL AND PUBLICATION IS WARRANTED UNDER FRCP 4(e) AND CALIFORNIA LAW
### A. Service by Publication is Proper Where Personal Service is Impracticable

Pursuant to Federal Rule of Civil Procedure 4(e)(1), a plaintiff may serve a defendant in accordance with the service laws of the state in which the district court sits. California Code of Civil Procedure § 415.50(a) authorizes service by publication when the defendant cannot, with reasonable diligence, be served in another manner. Specifically, Cal. Code Civ. Proc. § 415.50(a) states: "A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner and that either: (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action."

Service by publication is a longstanding and constitutionally permissible method of ensuring that due process is not undermined when a defendant's whereabouts are unknown or when the defendant deliberately evades service (*Rio*

*Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)*). Courts
have consistently found that a plaintiff satisfies the due diligence requirement for
service by publication when multiple reasonable attempts at personal service have
failed (*Ellard v. Conway, 94 Cal. App. 4th 540, 546 (2001)*; *Kott v. Superior Court,
45 Cal. App. 4th 1126, 1136 (1996)*).

   In the present case, Plaintiff has diligently attempted service at known
addresses and through extensive investigative efforts, yet Defendant remains
unavailable for service. Therefore, service by publication in a newspaper of general
circulation in the jurisdiction of Defendant's last known address is legally justified
and necessary to ensure that Defendants do not evade legal responsibility through
willful evasion.

**B. Service by Mail is a Recognized Alternative Method When Traditional
Means Are Unsuccessful**

   Courts have also held that service by mail is a valid substitute where personal
service is impracticable and publication alone may not provide sufficient notice
(*Bank Julius Baer & Co. Ltd. v. Wikileaks, 2008 WL 413737 (N.D. Cal. 2008)*).
California Code of Civil Procedure § 415.30 allows service of a summons by first-
class mail with acknowledgment of receipt. Although service by publication is
permissible, courts have recognized that where a defendant has a known last
address, service by certified mail, in addition to publication, enhances the
likelihood that the defendant receives actual notice (*Brockmeyer v. May, 383 F.3d
798, 806 (9th Cir. 2004)*).

   The Ninth Circuit has upheld alternative service methods, including mail,
where traditional means of service are ineffective (*Rio Props., Inc. v. Rio Int'l
Interlink, 284 F.3d 1007, 1017 (9th Cir. 2002)*). Courts emphasize that service of
process rules are not meant to create procedural hurdles that allow defendants to
avoid liability but are intended to ensure that due process is upheld (*Mullane v.
Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)*). Given that

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT
ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

Defendant(s) likely have actual knowledge of the lawsuit and have chosen to evade personal service, service by certified mail to their last known address, in conjunction with publication, is the most appropriate method to ensure adequate notice and satisfy due process requirements.

## C. Arguments Supporting Process Serving Defendant by Mail and Publication

Plaintiff has made numerous, well-documented attempts to effectuate personal service on Defendant Adam R. Waldman, including through two professional process servers, repeated visits to known addresses, and outreach via phone, text, email, and through associates. Defendant has failed to respond or cooperate with any of these legitimate service efforts. The pattern of evasive conduct relocation to Florida without notice, non-response to direct contact, and refusal to accept service at verified addresses warrants judicial approval for service by alternate means.

Under Federal Rule of Civil Procedure 4(e)(1) and California Code of Civil Procedure § 415.50, **c**ourts may authorize service by publication when personal service is impracticable despite due diligence. In *Kott v. Superior Court*, 45 Cal.App.4th 1126, 53 Cal. Rptr. 2d 215 (Cal. Ct. App. 1996), the court upheld service by publication after multiple unsuccessful service attempts and investigation. Likewise, in *Watts v. Crawford*, 10 Cal.4th 743, 42 Cal. Rptr. 2d 81, 896 P.2d 807 (Cal. 1995), the California Supreme Court confirmed that service by publication is proper when the party's address is unknown and cannot be ascertained with reasonable diligence. Given the Defendant's ongoing obstruction, Plaintiff's persistent yet unsuccessful efforts to effectuate service such as attempting to serve at the Defendant's last known address, investigative measures to process serve Waldman, process server involvement, and the absence of any undue prejudice to the Defendant, this Court should authorize service by both mail and publication to uphold Plaintiff's procedural rights and ensure due process.

The Fourteenth Amendment guarantees Plaintiff the right to due process, which includes the ability to pursue the claims when the Plaintiff has undertaken all reasonable efforts to notify the Defendant. Here, Defendant Waldman's evasive conduct, coupled with intentional obstruction by Co-Defendant Barresi, who has been subject to a restraining order for interference and witness intimidation, has materially delayed and obstructed proper service.

Given the futility of conventional service methods, service by publication in Palm Beach, Florida, where Defendant is reasonably believed to reside, is not only constitutionally sound but also necessary to ensure Plaintiff's access to justice. The U.S. Supreme Court in *Jones v. Flowers, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006)* established that constructive notice is sufficient under constitutional standards when a party has made diligent efforts to serve but has been unable to do so. Moreover, service by mail to Defendant's last known address, which Plaintiff already attempted on March 12 and 14, 2025, is an explicitly authorized method under California Code of Civil Procedure § 415.30 and is further reinforced by the presumption of receipt under California Evidence Code § 647. Courts have consistently upheld alternative service methods when conventional means have been thwarted by a defendant's evasiveness. In *Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007 (9th Cir. 2002)*, the Ninth Circuit upheld alternative service when personal service proved futile, emphasizing that due process does not require literal delivery uniquely, but rather notice reasonably calculated to apprise the defendant of the action.

Here, Plaintiff's multiple service attempts, exhaustive investigative measures, and diligent efforts all obstructed by Defendant's evasiveness and interferences demonstrate that alternative service is not only justified but imperative. Authorizing service by both publication in Palm Beach and mail to Waldman's last known address aligns with constitutional due process standards,

ensures effective notice, promotes judicial efficiency, and prevents further delays
caused by Defendants' obstructionist tactics.

Defendant Adam Waldman's relocation from Washington D.C. where he
resided for decades to Palm Beach, Florida, occurred with an incomplete
forwarding address, updated contact information, or professional record change.
Plaintiff has clearly demonstrated reasonable diligence in attempting to process
serve Defendant through voter rolls, legal directories, public records, and multiple
contacts, including reaching out to his legal associates and former counsel. These
efforts mirror the standard articulated in *Kott v. Superior Court*, 45 Cal.App.4th
1126, 53 Cal. Rptr. 2d 215 (Cal. Ct. App. 1996), where service by publication was
permitted because the plaintiff had made "a number of honest attempts to learn
defendant's whereabouts by inquiry of relatives, friends, and acquaintances, or of
his employer, and by investigation of appropriate city and telephone directories" as
well as service by mail seeing no response. The fact that Adam Waldman failed to
respond at his known address despite his high-profile legal history and network
strongly supports the conclusion that he has intentionally evaded service. Service
by mail to his last known address and publication in a Palm Beach newspaper are
now the only reasonable and just alternatives under these circumstances.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court:

1. GRANT an extension of time for service pursuant to FRCP 6(b) and FRCP
   4(m), as Plaintiff has demonstrated good cause for the inability to
   successfully serve Defendant Adam Waldman within the prescribed period;

2. AUTHORIZE service by publication in accordance with FRCP 4(e)(1) and
   California Code of Civil Procedure § 415.50, given that personal service has
   proven impracticable despite Plaintiff's diligent efforts; and the *Palm Beach
   Post* and the *Palm Beach Daily News* provide resources for legal notices.

Service is already in process by certified mail and regular mail to Defendant's known address to see if a signed return receipt is provided; however, the option for publication needs to be permitted as Defendant Adam Waldman does not accept service in acts of evasion of process.

**RELIEF REQUESTED FOR SERVICE WITH GOOD CAUSE**

Plaintiff Taft respectfully requests that this Court grant the following relief for the aforementioned reasons:

1) An additional 40 to 60 days to serve Defendant Adam R. Waldman in accordance with FRCP 4(m) and 6(b), and permitting service by mail and publication.

2) Grant service by mail to be extended and service by publication in *Palm Beach Post* or *Palm Beach Daily News*, with permitting an affidavit from a newspaper.

3) After serving through mail, as Defendant Waldman is not congenial, Plaintiff needs publication in a newspaper with legal notice in Palm Beach. Conventional service of Waldman, including in Palm Beach, has not been attainable, nor is meeting with a server for any normalcy, even for coffee, despite his co-defendant's deliberate interference in this process that appears by his approval and reward.

4) A judicial determination of good cause and excusable dereliction under FRCP 6(b) due to the Plaintiff's diligence, process servers attempting to serve Defendant Adam Waldman in Palm Beach, and the Defendant's evasions. Moreover, there is an interrupted, mangled process, and continued coercion by Co-Defendants.

5) Recognition of procedural interference by Co-Defendant Barresi, causing impugnment *of witnesses/victims and hindering assistance*, with atrocious willful obstruction this process, and preventing fair adjudication to find relief.

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

6) Co-Defendant Paul Barresi likely told Defendant Adam Waldman to evade and not accept service, as well as to refuse normalcy or relief. Co-Defendants continue this atrocious and heinous corrupt persuasion among calculated witness interference, during a juxtapose of how traditional legal processes are defined with struggles in reporting, are additional factors that justify an extension.

7) Grant in addition to extension of service time and in mail and publication, any additional relief that this Honorable Court deems just, appropriate, and proper in the interest of justice.

**WHEREFORE,** based on the points set forth in this Application, the Memorandum of Points and Authorities within, Declaration, and Exhibits including affidavits made in good faith, concurrently demonstrating good cause, Plaintiff respectfully requests that this Honorable Court grant permission to *extend service* of process. Defendant Adam Waldman has continued to not accept service, conventionally or traditionally, nor at his Palm Beach residence between February 20th to Present. Service has been extended to mailing on March 12th and March 14th, and that requires at least 20 days to respond by Defendant Adam Waldman. Secondly, publishing in a newspaper of legal notice requires a minimum of 4 weeks. Meanwhile, at least *25 subpoenas to witnesses* are issued with officiality. If Plaintiff is required to do another motion for publication separately, and for newspapers in Palm Beach, this will require extended time again.

An extension is aligned with legal standards, facts shown in the timeline and declarations by witnesses, with ongoing activity that hinders processes, an extension of time is aimed at securing a fair and just resolution within judicial discretion, ensuring a complete and fair presentation of the issues before the Court.

Therefore, *with Good Cause shown*, Plaintiff Taft requests that this Court allow Extension of Time for Service of Co-Defendant Adam Waldman, with service by

mailing already in process and to allow publication in the *Palm Beach Post* or *Palm Beach Daily News*, to produce an affidavit of a witness from that newspaper, in the interest of justice and understanding circumstances that caused delay.

Respectfully submitted,

This 24th day of March, 2025.

*CHRISTINA TAFT*

*Plaintiff in Pro Se*

## Verification Of Oath

I certify that the information herein is true and correct to the best of my knowledge and belief. This attestation is made under oath and the laws of the United States.

Dated: March 24, 2025

CHRISTINA TAFT

Plaintiff in Propria Persona

United States

## Certificate of Compliance

The Plaintiff, in propria persona, certifies that this brief contains 5,427 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 24, 2025

*CHRISTINA TAFT*

*Plaintiff in Propria Persona*

*United States*

SECOND EX PARTE APPLICATION AND MEMORANDUM FOR EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP 4(m) AND 6(b)

**PROOF OF SERVICE**

On the date set forth, I served the foregoing document(s) described as:

1.  Second EX PARTE APPLICATION AND MEMORANDUM FOR
    EXTENSION OF TIME TO SERVE DEFENDANT ADAM R. WALDMAN
    AND SERVICE BY MAIL AND PUBLICATION PURSUANT TO FRCP
    4(m) AND 6(b); Declaration in Support; Exhibits in Support; [Proposed] Order
    BY NOT MORE THAN 30 DAYS; via Mail and Email, Local Rules, (L.R. 5-
    3), on the interested parties in this action as follows:

MELISSA Y. LERNER
MEGAN MALLONEE
Attorneys for Defendant PAUL BARRESI
**By Mail:**
MELISSA Y. LERNER
MEGAN MALLONEE
LAVELY & SINGER PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
2049 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CALIFORNIA 90067-2906

**By Electronic Service:**
mlerner@lavelysinger.com, mmallonee@lavelysinger.com
[X] BY FEDERAL EXPRESS: I am "readily familiar" with the practice of
collection and processing correspondence for Federal Express. Under that practice
it would be deposited with FedEx on that same day with all costs fully prepaid in
the United States, in the ordinary course of business.
[X] ELECTRONIC SERVICE: I served the on the parties listed via electronic
service in accordance with the applicable rules (Local Rule 5-3).

Dated: March 24, 2025

*Christina Taft in Propria Persona*

*United States*