**MELISSA Y. LERNER (SBN 285216)**
mlerner@lavelysinger.com
**MEGAN S. MALLONEE (SBN 340276)**
mmallonee@lavelysinger.com
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Defendant
PAUL BARRESI

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT,<br><br>            Plaintiff,<br><br>     vs.<br><br>PAUL BARRESI; ADAM R. WALDMAN; and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. 5:24-cv-01930-TJH (DTB)<br>[Hon. Terry J. Hatter, Jr.]<br>[Hon. David T. Bristow, Magistrate Judge]<br><br>**DEFENDANT PAUL BARRESI'S OPPOSED FIRST EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST PLAINTIFF CHRISTINA TAFT** |

4528-3

---

DEFENDANT'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

**PLEASE TAKE NOTICE** that on Thursday, March 27, 2024, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 in the George E. Brown, Jr. Federal Building & United States Courthouse located at 3470 12th Street, 3rd Floor, Riverside, California 92501, the Honorable David T. Bristow presiding, Defendant PAUL BARRESI ("Defendant"), through his attorneys of record herein, will and hereby does move this Court, *ex parte*, for a Temporary Restraining Order against Plaintiff Christina Taft ("Plaintiff") pursuant to Federal Rule of Civil Procedure 65(b). Specifically, Defendant seeks an order to stop Plaintiff's harassment and intimidation of non-party witness Angela Gayle, who has submitted evidence in this case.

There is good cause for the Court to grant this *ex parte* application because Plaintiff has repeatedly harassed a witness who provided a declaration in support of Defendant's Sur-Reply to Plaintiff's Reply to Defendant's Opposition to Preliminary Injunction (Dkt. No. 51), causing her emotional distress. *See* Declaration of Angela Gayle.

This Application is made pursuant to, and in compliance with, Local Rules 7-19 and 7-19.1. Notice of this *Ex Parte* Application was provided to Plaintiff Christina Taft via email on March 25, 2025. Declaration of Melissa Y. Lerner, ¶ 2, Ex. A. Plaintiff indicated that she would oppose the *Ex Parte* Application. *Id.* ¶ 2.

This Application is based on the Memorandum of Points and Authorities, the Declarations of Melissa Y. Lerner and Angela Gayle filed concurrently herewith, all papers and pleadings on file herein, those matters of which the Court may properly take judicial notice and on such other oral and documentary evidence as may be presented at the time of this hearing.

Dated: March 26, 2025

                         LAVELY & SINGER PC
                         MELISSA Y. LERNER
                         MEGAN S. MALLONEE

                         By:      s/ *Melissa Y. Lerner*
                                  MELISSA Y. LERNER
                         Attorneys for Defendant PAUL BARRESI

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Paul Barresi ("Defendant" or "Barresi") respectfully submits this *Ex Parte* Application for a Temporary Restraining Order Against Plaintiff Christina Taft ("Plaintiff or "Taft"). Having falsely accused Barresi of witness tampering, it is **Taft** who has retaliated aggressively against non-party witness Angela Gayle for submitting a declaration in support of Defendant's Sur-Reply (Dkt. No. 51-2). Defendant seeks an order pursuant to Federal Rule of Civil Procedure 65(b) to stop Plaintiff's harassment of Angela Gayle and to bring a stop to Plaintiff's interference with Defendant's right to prepare and present his defense in this action. If this application is not granted, Barresi will suffer irreparable harm because Taft's ongoing campaign of witness intimidation will impede his ability to present a fulsome defense to Plaintiff's meritless claims. More specifically, Taft's ongoing harassment – by sending third parties to Ms. Gayle's home in an effort to frighten her into recanting her testimony – will cause Ms. Gayle to withdraw participation in the case as a witness on Barresi's behalf for her safety and wellbeing. Given Taft's purported concerns about Barresi's alleged witness intimidation and tampering and obstruction of justice, it is particularly egregious that ***Taft has solicited others acting on her behalf to harass, bully and intimidate Ms. Gayle in direct retaliation for testifying by declaration in support of Barresi.*** This unethical and unlawful conduct must be enjoined by the Court.

## II. INFORMATION REQUIRED BY L.R. 7-19

Defendant's counsel took reasonable and good faith efforts to advise Plaintiff of the date and substance of this *ex parte* application. On March 25, 2025, counsel for Defendant notified Plaintiff of the instant application. Declaration of Melissa Y. Lerner ("Lerner Decl.") ¶ X, Ex. A.

Pursuant to L.R. 7-19, to the best of Defendant's knowledge, Plaintiff's contact information is as follows:

**Name:** Christina Taft

**Address:** 1676 Ala Moana Boulevard, Apartment 508, Honolulu, Hawaii 96815 **or** 1700 Ala Moana Boulevard, Apartment 2301, Honolulu, Hawaii 96815

**Tel. No.:** 212-718-1003 **or** +33 0623441766

**Email(s):** taftchristina.ceo@gmail.com, Ceo.Taft@Rescue-Social.com, taft.christina@yahoo.com

## III. FACTUAL BACKGROUND

On October 24, 2024, Plaintiff filed an Emergency Motion for Preliminary Injunction (the "Preliminary Injunction"). (Dkt. No. 15.) On November 22, 2024, the Court ordered Defendant to file an opposition or statement of non-opposition on or before December 13, 2024. (Dkt. No. 22.) Defendant filed his Opposition to the Preliminary Injunction on December 13, 2024 (the "Opposition"). (Dkt. No. 25.) On December 23, 2024, the Magistrate Judge issued a Report and Recommendation that the Preliminary Injunction be denied. (Dkt. No. 28.) Plaintiff filed an Objection on January 13, 2025 and requested leave to file a Reply to the Opposition. (Dkt. No. 33.) On January 15, 2025, the Magistrate Judge vacated the Report and Recommendation and ordered Plaintiff to file a Reply to the Opposition on or before January 30, 2025, specifically noting that "any evidence presented not as 'rebuttal evidence' is not permitted." (Dkt. No. 35.) Despite these clear instructions, Plaintiff filed a 25-page Reply accompanied by 12 exhibits spanning 79 pages (including, without limitation, five witness declarations), the vast majority of which is not rebuttal evidence. (*See* Dkt. No. 39.) On February 11, the Court then ordered Defendant to file a Sur-Reply. (Dkt. No. 41.)

Defendant filed his Sur-Reply on March 12, 2025 (Dkt. No. 51) (the "Sur-Reply"). In support of his Sur-Reply, among other evidence, Defendant submitted the Declaration of Angela Gayle dated March 12, 2025 ("March 12 Declaration"). (Dkt. No. 51-2.) Ms. Gayle's testimony was necessary on rebuttal because Taft herself and at least two of the witnesses submitting declarations with Taft's Reply (*i.e.*, Ian Herndon and Molly Beaton) falsely claimed that Barresi had harassed Gayle. (*See* Dkt. No. 39-1, pp. 1-8 at ¶¶ 3-21, 32-36, 39; Dkt. No. 39-1, pp. 9-17 at ¶ 10.)

Since Defendant filed the Sur-Reply, Gayle has experienced repeated harassment and intimidation at Plaintiff's direction. Taft has called at least two private investigators in Tennessee and paid them to accost Ms. Gayle at her home. As set forth in the concurrently filed Declaration of Angela Gayle ("Gayle Declaration" or "Gayle Decl."), Taft has sent two private investigators to Gayle's home so far. Gayle Decl. ¶¶ 3-8. On Friday, March 21, 2025, the first private investigator (later identified as Heather Michele Cohen ("Cohen") of Justice Warrior Investigations) came to Ms. Gayle's residence twice. *Id.* ¶¶ 3-4. Cohen pounded on the door of Ms. Gayle's residence, took photographs of the house, refused to leave when asked to by Ms. Gayle, surveilled Ms. Gayle in an hours-long stakeout from her car and spoke to Ms. Gayle's neighbors. *Id.* ¶¶ 3-4. When she first approached the residence in a threatening manner, Cohen demanded that Ms. Gayle answer questions about the instant action, and specifically about a telephone call between Ms. Gayle and Taft in 2022, which Taft recorded without Ms. Gayle's consent. *Id.* ¶ 3. Cohen refused to identify who she was or for whom she was working. *Ibid.* Cohen only left hours later when Ms. Gayle pulled out her phone to record Cohen's activities. *Id.* ¶ 4. The interaction was terrifying to Ms. Gayle and

caused her to fear for her safety. *Id.* ¶ 12. Ms. Gayle immediately suspected that Taft had sent Cohen to her house because she submitted the March 12 Declaration. *Id.* ¶ 5.[1]

The second investigator, who identified herself as Renee of Stillwatch Investigations, came to Ms. Gayle's residence on March 24, 2025. *Id.* ¶¶ 6-7, Ex. A. Ms. Gayle recorded the interaction to protect herself after the incident with Cohen days earlier. *Id.* ¶ 6. Renee said that she had to ask Ms. Gayle the same questions about the instant lawsuit that Cohen had asked, and explained that she was sent because Cohen did not adequately document their interaction. *Id.* ¶ 8. Reading off a piece of paper, Renee asked Ms. Gayle similar questions about the telephone call between her and Taft, and referred to alleged conduct by "Defendant" (*i.e.*, Barresi) in connection with the call. *Ibid.* Renee also stated she had two affidavits for Ms. Gayle to sign, both of which contained false accusations against Barresi contrary to the testimony contained in Ms. Gayle's March 12 Declaration. *Id.* ¶¶ 8, 11, Exs. B, C. Both affidavits contained my last name and one contained the full name of the man who attacked Ms. Gayle in 2015 (who was referred to as "Mr. X" in Ms. Gayle's March 12 Declaration for her privacy and safety). *Ibid.* Although Renee was instructed not to disclose who had hired her, Renee confirmed that Taft was her client by pointing to the name "Taft" in one of the affidavits. *Id.* ¶ 8, Ex. C. At this revelation, Ms. Gayle began to experience physical symptoms of fear and anxiety. *Id.* ¶ 9.

Renee told Ms. Gayle that she believed that there was something "fishy" and "off" about Taft, and that it was odd that Taft was reaching out to private investigators in Tennessee, including Cohen (who is now based in Knoxville, Tennessee). *Id.* ¶¶ 9-10.

---

[1] On March 21, 2025, Barresi's counsel of record sent an email to Taft advising her to cease her harassment of Ms. Gayle. Lerner Decl. ¶ 3, Ex. B. Taft did not respond to or acknowledge receipt of this email, let alone comply with counsel's request. *Id.* ¶ 3.

Gayle is now living in fear that Ms. Taft will keep sending people to harass and intimidate her at her home; that she will continue to make false and defamatory statements about Gayle; and that she will publicly file documents disclosing Gayle's address and last name, and identifying the man who assaulted her by name against Gayle's wishes. *Id.* ¶ 12. She is afraid that Taft will send more people to scare her out of testifying against her in this case. *Ibid.*

As set forth below, Ms. Taft's repeated harassment of Gayle necessitates the issuance of a Temporary Restraining Order restraining and enjoining Taft and/or anyone acting at her direction or on her behalf from (i) contacting Angela Gayle and/or her mother by any method, including, without limitation, phone, email, text message, social media, mail, or in person; (ii) coming within 100 yards of Ms. Gayle's home; and (iii) publicly disclosing Ms. Gayle's home address and/or last name, and/or the full name of her attacker, which would violate the witness's privacy and put her in danger, while this action remains pending. The foregoing is requested with a narrow exception permitting Taft to propound, validly serve and conduct formal discovery in accordance with all applicable laws, including, without limitation, those of this Court and of the State of Tennessee.

## IV. ARGUMENT

To prevail on an application for a Temporary Restraining Order, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in the moving party's favor; and (4) than an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Ibid.* (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542, 107 S.Ct. 1396,

94 L.Ed.2d 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 651 (9th Cir. 2009). Here, Barresi has made a clear showing that all four elements are satisfied.

### A. **Defendant is Likely to Prevail on the Merits.**

As applied here, "the 'merits' refers to [Barresi]'s ability to establish harassment that justifies injunctive relief." *Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 423495, at *4 (C.D. Cal. Feb. 2, 2022). Relevant here, California law defines harassment as:

> unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

Cal. Civ. Proc. Code § 527(b)(3). Tennessee law also provides for a claim of malicious harassment when "the perpetrator intentionally intimidated the plaintiff from freely exercising a constitutional right." *Davidson v. Bredesen*, 330 S.W.3d 876, 889 (Tenn. Ct. App. 2009) (citing Tenn. Code Ann. § 4-21-701). As set forth in the Gayle Declaration, Taft has employed a knowing and willful course of conduct to seriously alarm and harass Ms. Gayle in order to prevent her from testifying further in Barresi's case. *See generally* Gayle Decl. ¶¶ 3-10, 12. The evidence demonstrates unequivocally that Taft is intentionally intimidating Ms. Gayle from freely exercising her right to testify in a court of law. *Ibid.* Taft's conduct, including by and through Cohen and Renee, is of the type that would cause a reasonable person to suffer substantial emotional distress and has actually caused Ms. Gayle substantial emotional distress. *Id.* ¶ 12. Taft's harassment and efforts to intimidate and coerce Ms. Gayle out of testifying in support of Barresi is the very kind of reprehensible conduct that the Court is empowered to enjoin.

## B. The Likelihood of Irreparable Harm is High.

The evidence in Ms. Gayle's concurrently-filed declaration demonstrates that Taft is desperately trying to intimidate the one witness who has submitted a declaration in support of Barresi in the instant action, either by coercing her to disavow her previous testimony (*e.g.*, by asking her to sign additional affidavits refuting the testimony she has already provided in the March 12 Declaration) or to scare her from providing further testimony (e.g., by staking out her house). Gayle Decl. ¶¶ 3-4, 8, 12, Exs. B, C. Ms. Gayle has already suffered severe emotional distress. *Id.* ¶ 12. Should Taft's actions continue, Ms. Gayle will continue to suffer emotional distress and fear, and is likely to withdraw her voluntary participation as a witness in this litigation for her safety and wellbeing. *Ibid.* This would hamper Barresi's defense against Taft's claims in this action.

## C. The Balance of Equities Weighs in Defendant's Favor.

A temporary restraining order is warranted because the balance of the equities tip sharply in Barresi's favor. Plaintiff will suffer no hardship if she is prevented from continuing her campaign of harassment and intimidation against Ms. Gayle. If she wishes to obtain information from Ms. Gayle, she must comply with the law and formal discovery procedures to do so (as reflected in the exception to the requested terms of the injunction for valid service of formal discovery in accordance with all applicable laws). She is not permitted to use strong-arm tactics to scare Ms. Gayle away from providing truthful testimony in this action. In contrast, if no restraining order is granted, Ms. Gayle will continue to live in fear of Taft's harassment and retaliation and will have no choice but to withdraw as a witness to protect herself. This, in tern, will interfere with Barresi's right to fully defend himself against Taft's frivolous claims.


### D. A Temporary Restraining Order Is in the Public Interest.

Here, the public interest in protecting non-party witnesses from intimidation and harassment is served by issuance of the requested temporary restraining order. In a similar vein, a temporary restraining order would serve the public interest in a fair and full adjudication of Taft's claims against Barresi, including the preparation and presentation of his defenses thereto.

### V. CONCLUSION

For the foregoing reasons, Defendant Paul Barresi respectfully requests that the Court grant this application and issue a Temporary Restraining Order restraining and enjoining Plaintiff Chritina Taft and/or anyone acting at her direction or on her behalf from the following during the pendency of the instant action: (i) contacting Angela Gayle and/or her mother by any method, including, without limitation, phone, email, text message, social media, mail, or in person; (ii) coming within 100 yards of Ms. Gayle's home; and (iii) publicly disclosing Ms. Gayle's home address and/or last name, and/or the full name of her attacker, which would violate the witness's privacy and threaten her safety. The foregoing is requested with a narrow exception permitting Plaintiff to propound, validly serve and conduct formal discovery in accordance with all applicable laws, including, without limitation, those of this Court and of the State of Tennessee.

Dated: March 26, 2025

LAVELY & SINGER PC
MELISSA Y. LERNER
MEGAN S. MALLONEE

By:  s/ *Melissa Y. Lerner*
MELISSA Y. LERNER
Attorneys for Defendant PAUL BARRESI