Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT,<br><br>    Plaintiff,<br><br>  v.<br><br>PAUL BARRESI; ADAM R. WALDMAN; and DOES 1 through 10, inclusive,<br>    Defendants. | CASE NO. 5:24-CV-01930-TJH (DTB)<br>[HON. DAVID T. BRISTOW, MAGISTRATE JUDGE]<br><br>**PLAINTIFF TAFT'S OPPOSITION TO DEFENDANT BARRESI'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

---

1
PLAINTIFF'S OPPOSITION TO DEFENDANT BARRESI'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

# INTRODUCTION

Plaintiff Christina Taft ("Plaintiff") respectfully submits this opposition to Defendant Paul Barresi's ("Defendant") Ex Parte Application for a Temporary Restraining Order ("TRO"). Defendant's application is based on misleading and unsubstantiated claims of harassment and witness intimidation. Plaintiff presents clear evidence, including a transcribed audio recording, demonstrating that Defendant has engaged in coercion, misrepresentation, and retaliatory actions against both Plaintiff and witness Angela Gayle ("Gayle"). Defendant's attempt to obtain an ex parte severe restraint on legitimate communications of witnesses with licensed trained personnel and Plaintiff, who moved with intent to protect witnesses and to protect assault victims, is an abuse of the judicial process designed to cover up his own history of intimidation and obstruction.

# FACTUAL BACKGROUND

### A.  Plaintiff's Limited and Legitimate Investigation Efforts

Contrary to Defendant's claims, Plaintiff engaged licensed private investigators solely to confirm that "Mr. X" referred to in discussions with Gayle is, in fact, Marton Csokas, whom Gayle has repeatedly stated assaulted her. The investigators confirmed Gayle's initial willingness to cooperate before Defendant's renewed coercion. Plaintiff previously warned Defendant to cease exploiting her and Gayle for commercial purposes (Exhibits E). Plaintiff moved to protect Gayle's rights and independence. Two licensed personnel made efforts to help. Additionally, Plaintiff reported Defendant's conduct to the FBI, further demonstrating her legitimate concerns regarding his intimidation tactics (Exhibits E; emails). Plaintiff's efforts were lawful, appropriate, and limited in scope. Witnesses and licensed private investigators considered the needs of Gayle with sympathy from Plaintiff, including long-term impact to prevent retaliation.

Defendant falsifies aggression of protection with harmful will, in efforts of him to control, and prevent witnesses from having autonomy. Plaintiff conveyed

that she may need to report to the police and FBI locally again in Honolulu due to this witness tampering that is forcing Gayle to recant her assaulter's name. However, Plaintiff did not control the exact means or methods by which the licensed investigators carried out their inquiries. Plaintiff's sole instruction was to confirm Gayle's previous statements regarding who assaulted her and the multiple steps of lack of consent (no consent of use nor sending of recording, that is used to force statements of implications away from that person's autonomy). Any alleged actions taken by the investigators beyond the scope of this directive were not at Plaintiff's behest and cannot be imputed to her. Licensed investigators are independent professionals bound by legal and ethical obligations, and Plaintiff reasonably relied on their professional discretion. Defendant's attempt to attribute every alleged action taken by the investigators to Plaintiff is speculative and unsupported by evidence.

  Moreover, one of the private investigators, Heather Cohen, attested that Gayle was the one who asked her whether she worked for a "Mr. X", the Defendant or "Molly." After Ms. Cohen responded in the negative, Gayle appeared shaken and about to cry and Ms. Cohen immediately ended the interview. This described interaction is not one of "harassment, bullying and intimidation." Ms. Cohen's affidavit is attached hereto (Exhibit 1).

  **B. Plaintiff's Prior Relationship with Angela Gayle**

  Plaintiff has numerous documents confirming that she and Gayle were on good terms. Gayle willingly engaged in prior communications with Plaintiff and investigators before suddenly changing her stance after further contact with Defendant. The claim that Plaintiff harassed Gayle is contradicted by a history of cooperative exchanges (Exhibits B and C). Moreover, the evidence suggests that it was Defendant who has exerted undue influence over Gayle.

  **C. Evidence of Defendant's Witness Manipulation**

  The transcribed audio recording from July 22, 2022, filed concurrently herewith, provides critical evidence that Gayle was intimidated into silence

regarding her assault by Csokas (Exhibit C). It also demonstrates that Gayle initially sought to corroborate investigations but later appeared coerced into changing her stance. And lastly, the audio recording evidences that Defendant has engaged in attempts to control Gayle's narrative away from justice from her assaulter, Marton Csokas, and pressuring her into statements that contradict documentation of communications. Gayle herself expressed fear and concern over Defendant's actions, raising serious questions about the legitimacy of her later statements in support of Defendant.

 Licensed private investigator Heather Cohen vigorously refutes Defendant's claims in each fact.

From Cohen's affidavit (Exhibit 1), "Question #1: Did you give consent for the call (between yourself and CLIENT) to be recorded?

  Answer: "No."

  Question #2: Did you consent for the call to be used?

  Answer: "No."

  Question #3: Did you give the recording to the defendant?

  Answer: "No."

"…Ms. Meador asked if I was trying to figure out who 'Mr. X' was…"

 "17. I attest that the statement relied upon the filed ex parte is grossly false in regards to any interaction with Ms. Meador (Gayle)... b. I did not talk with Ms. Meador's neighbors or knock on any other doors; c. I did not 'pound' on the door, d. I did not 'demand' that she answer questions; c. I did identify myself as Licensed Private Investigator, Heather Cohen (2x); f. I showed my license to her; g. I did not refuse to leave; h. I did not stay for hours; and i. I did not see her (at any point) lift her phone to record me."

 "18. Further, I assured Ms. Meador (Gayle) that I was not a threat to her and I was only there to ask some questions." Moreover, Cohen conveyed sympathy.

"19. The assertions made by the defendant's attorney, in regards to my interaction with Ms. Meador, are blatantly false."

### D.  Plaintiff's Minimal Contact with Gayle

Plaintiff has had no communication with Gayle since **October 2022 and January 2024**, the latter instance occurring when Defendant himself was actively threatening Plaintiff. Notably, Gayle copied Defendant in her January 2024 communication, indicating his direct involvement in influencing her statements. Plaintiff's limited contact with Gayle negates any false claim that she has engaged in any harassment or any intent outside of good will (Exhibits B; texts).

### E.  Gayle's Continued Fear of Csokas

Gayle, according to the affidavit of Cohen, asked if she was seeing who "Mr. X" was and if the investigator was working for "Mr. X" or Defendant (Exhibit 1). At first Gayle did not mention Plaintiff at all. Plaintiff was concerned when she saw the statements submitted that recanted who Mr. X was, as a violation of Gayle's right to name who assaulted her. Similarly, Cohen attests that Plaintiff stated she "felt bad for her." Gayle had mentioned to Plaintiff of her assault by Marton Csokas, who is Mr. X, and to others. Gayle had conveyed to Plaintiff her fear of Marton Csokas, that she was begging the exploitation of her to stop, including of her in the use of restraining order proceedings, and that she wished people would recognize Csokas, and not Defendant Barresi (Exhibits B; texts). Conveyed in the call between Plaintiff and Gayle is violence, assault, and abuse towards Gayle, other women (pushed down the stairs for instance) and others by Csokas. In additional texts, Gayle states, "Marton has taken enough of me. Please, I'm begging you guys to make this stop. He will kill me himself, do you understand? This is my real fucking life. This is not a reality show. It's my ACTUAL life!!!" Plaintiff apologized and called Marton an uncontrollable predator, and a sadistic torturer. Plaintiff admits that during months in 2022 it was

quite a confusing with many activities, and that Gayle is affirmed in her focus on Csokas.

Unfortunately, Plaintiff did not engage Gayle over the years, unlike other witnesses, and felt unable to help her due to the recording between them, that Defendant has persistently exploited and used. Witnesses Ian Herndon for example wanted to help Gayle. Gayle to Cohen stated the use of the audio of their call was against her consent, and she did not send it to Defendant (Exhibit 1).

Gayle's official website is inactive, reinforcing her fear of retaliation. In the transcribed recording and in prior texts, she explicitly stated that she fears Csokas, yet Defendant continues to mischaracterize her statements to serve his objectives.

Plaintiff sought to free Gayle from issuing statements that counter years of her interests, beliefs, and wishes. From Gayle's initial answers to licensed private investigator Cohen, who shows empathy, Gayle reinforced her previous stances. When Plaintiff requested an ex parte to extend time for service of a co-defendant, a bizarre email was sent to her by Defendant's attorney, which is highly contested by the licensed investigator (Exhibit 1; page 2). Defendant is wrongfully attributing false interactions in order to control this assault victim who is in the music business. Moreover, according to local rules, Plaintiff is entitled to cross-examine a declarant (L.R. 7-8 Presence of Declarants - Civil Cases). Plaintiff never told Gayle she was an attorney, however, she did refer to the SB 2777 law against sexual abuse and cover-ups, and informed her of her rights to file a lawsuit against Marton Csokas, who resides in California (Exhibits B).

The declarations submitted allegedly of Gayle are not hand-signed, and are via DocuSign, of a person who is probably under distress. As in prior motions, Plaintiff has attempted to demonstrate that witnesses would start to recant in these matters, and sadly in additional matters, if they were not protected from Defendant's direct contact.

Plaintiff is legitimately afraid that Gayle will be unable to name her assaulter or conduct further lawful actions, if she's forced to submit statements

that counter documentation and evidence. Plaintiff is legitimately and generously afraid for Gayle's safety and her autonomy, independence. Plaintiff's actions were done to protect Gayle, and to reinforce her independence.

### F. Evidence of Ongoing Harassment and Threats by Defendant

Molly Beaton's affidavit, attached hereto (Exhibit 4), provides compelling evidence that Defendant has subjected Plaintiff, and others associated with her, to threats and manipulative behavior. Despite their prior dispute, Ms. Beaton moved to protect Gayle from Defendant calling her a 'non-entity' and forcing statements of their interactions. The affidavit describes multiple instances in which Defendant contacted her with threats of harm, engaged in stalking, and attempted to coerce her into making statements contrary to her beliefs. Notably, Ms. Beaton attests that Defendant's actions have been designed to silence witnesses, including herself, and to intimidate those who support Plaintiff's position. Specifically, Ms. Beaton recounts how Defendant's communications included manipulative emails and phone calls that sought to control her testimony and intimidate her into submission. Ms. Beaton's fear of Barresi's criminal behavior is palpable throughout her affidavit, with her noting that his actions have caused severe emotional distress and a genuine fear for her safety.

Moreover, Ms. Beaton's affidavit corroborates Plaintiff's own claims of harassment, detailing how she personally observed Defendant stalking and intimidating Plaintiff. Ms. Beaton's testimony regarding the actions of Defendant, including his ongoing surveillance of Plaintiff, his threats, and the manipulation of witnesses to target and attack Plaintiff, establishes a clear and documented pattern of behavior that supports the need for immediate legal protection.

Ms. Beaton also draws attention to the nature of Defendant's criminal activities, describing him as a "fixer" with a history of involvement in dangerous and illegal operations. This reinforces the claim that Defendant's actions are not merely nuisance harassment but a deliberate effort to obstruct justice and intimidate witnesses.

Ian Herndon's affidavit, attached here as well (Exhibit 5), provides compelling evidence that Defendant had coerced Gayle through death threats after she told Mr. Herndon that Mr. Csokas had sexually assaulted her and retaliation ensued with threatening letters to her, along with joint action against her civil rights to report the assault. Mr. Herndon reported that Defendant had pointed a gun at Angela's face, which is a claim that repeats without relief.

Gayle should not be coerced into recanting the identity of the person who assaulted her. The evidence makes it clear that Gayle was assaulted by Csokas, and her primary focus has always been on her recovery and safety, not on Defendant or his actions. However, the Defendant has continued to cause harm by pressuring Gayle to redact her statements. Initially, Gayle's concerns were centered on the individual who violently assaulted her, but the Defendant has forced this witness and victim to focus instead on responding to his manipulative demands.

Contrary to Defendant's assertion, Plaintiff never stated that Defendant pointed a gun at her face. Plaintiff specifically informed Gayle that she should not be afraid and that she should never recant the intimidating interactions she experienced, even if the identity of the individuals involved was unknown. The continual efforts by Defendant to force a statement claiming that he pulls guns on people, among other manipulative tactics, exemplify his coercion and intimidation. This is an attempt to instill fear in witnesses and prevent them from providing fuller statements about the broader types of coercion they have endured from Defendant. Plaintiff's primary goal has been to free Gayle from the Defendant's coercive influence, allowing her to move forward in her life and, importantly, to ensure that her assaulter is named and held accountable.

## LEGAL ARGUMENT

**A. Defendant Fails to Demonstrate Irreparable Harm**

Defendant's claim of irreparable harm is based on a fabricated narrative. Plaintiff has not engaged in any harassment, nor has she attempted to intimidate Gayle. Rather, the evidence suggests that Defendant himself has sought to manipulate Gayle's testimony. Issuing a TRO against Plaintiff would unjustly hinder her ability to defend herself against Defendant's intimidation tactics. Plaintiff's limited and lawful investigative actions do not justify the severe restrictions Defendant seeks.

### B. The Public Interest Opposes Defendant's Efforts to Silence Witnesses

Allowing Defendant to use the courts to suppress witness testimony undermines public confidence in the judicial system. Defendant's pattern of coercion, intimidation, and commercial exploitation must not be condoned. The public interest strongly favors ensuring that witnesses like Gayle can testify free from coercion and that victims of abuse can seek justice without interference from individuals like Defendant.

### C. Defendant's Application is Procedurally Defective and Substantively Baseless

Defendant's ex parte application lacks sufficient supporting evidence and relies primarily on self-serving declarations that contradict documented communications and sworn testimony. Courts have routinely held that injunctive relief cannot be granted based on speculative or conclusory allegations. Plaintiff is entitled to cross-examine witnesses and to check up on them according to civil rules. Defendant's failure to provide credible, independent evidence of any actual harassment by Plaintiff renders his application legally insufficient.

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Ex Parte Application for a TRO in its entirety. Plaintiff's efforts were in genuine concern for Gayle's autonomy and independence, as demonstrated by

seven prior witnesses and Plaintiff in these matters. Plaintiff pleads for no retaliation to witnesses who are being forced to recant in these matters, as there are not enough safeguards available. Plaintiff pleads that involved people are free to live their lives away from coercion. Asking questions about consent and who harmed a person, is an effort to free from coercion and provide independence.

In the interests of justice, witnesses need to be free from undue influence. There cannot be punishment framed onto witnesses that submit statements that contradict documentation or other attestations while they're in distress and for years being unable to free themselves from repeated instigation by Defendants. Moreover, Plaintiff asks trained personnel in efforts for more accurate remedies and is trained herself over time in these matters. Plaintiff moved with genuine and evidenced concerns.

Plaintiff further requests any relief deemed appropriate to prevent Defendant's continued manipulation of witnesses in this matter.

Dated: March 26, 2025                           Respectfully Submitted,

                                                /s/ Christina Taft
                                                Plaintiff Christina Taft
                                                Propria Persona

**Verification Of Oath**

I certify that the information herein is true and correct to the best of my knowledge and belief. This attestation is made under oath under the laws of the United States.

Dated: March 26, 2025

By:
Christina Taft
Plaintiff in Pro Per
United States