1

**Christina Taft**
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 0623441766
Email: Ceo.Taft@Rescue-Social.com

2

3

4

5

6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

7

## EASTERN DIVISION

8

9

CHRISTINA TAFT

10

     Plaintiff,

11

vs.

12

PAUL BARRESI, ADAM R
WALDMAN, and DOES 1-10,
inclusive,

13

14

15

     Defendants.

16

Case No.: 5:24-cv-01930-TJH-DTB

[Hon. Terry J. Hatter, District Judge]

**OBJECTION BRIEF
MEMORANDUM OF POINTS AND
AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY
PRELIMINARY INJUNCTION TO
REPORT AND
RECOMMENDATION**

17

18

19

20

*[Filed concurrently with Responsive
Exhibits of Objection in Support of
Witnesses and Preliminary Injunction;
Declaration of True and Correct
Copies; Manual Filing of Audios and
Videos; Proof of Service]*

21

22

Date:  May 1, 2025
Time: Under submission

23

24

25

26

27

28

Page 1
**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

# **Table of Contents**

I. INTRODUCTION ................................................................................................ **4**

II. STANDARD OF REVIEW ............................................................................... **5**

III. ARGUMENT .................................................................................................... **5**

  A. The Well-being of Witnesses Requires Judicial Protection ......................... **5**

  B. Pro Se Witnesses Are Entitled to Leniency and Respect Under Established Law ..................... **8**

  C. The Defendant's Conduct Warrants Immediate Relief ................................ **9**

    I. Each Witnesses' Declaration Provides Arguments for Protections ........................ **10**

    II. Protective, Clean Declarations submitted that protect other witnesses and victims is aligned with Public Safety ................................................................ **13**

  D. Defendant's Own Admissions Confirm Harassment and Coercive Conduct ......................... **14**

    I. Supplement: Judicial Admissions, Exhibits, and Witness Declarations Supporting Injunctive Relief ................................................................ **15**

  E. Defendant Targets Vulnerable Witnesses and Victims ............................... **19**

  F. The Requested Relief Is Reasonable and Narrowly Tailored ..................... **21**

  G. Defendant's Documented Admissions and Continuing Witness Harassment Warrant Immediate Relief ................................................................ **22**

    G.I. Exhibits J, K, and L Demonstrate Defendant's Unconsented and Intimidating Conduct **22**

    G. II. Witness Mario Nitrini's Subpoena Compliance and Necessity of Judicial Protection .. **24**

    G.III. Defendant's Pattern of Tampering with Evidence and Intimidating Witnesses ........... **24**

    G. IV. Ongoing Harm and Judicial Necessity for Protection ....................... **25**

    G.V. Specific Harms Documented ............................................................. **25**

    G.VI. Urgent Need for Relief ..................................................................... **26**

IV. CONCLUSION ............................................................................................... **27**

# <u>TABLE OF AUTHORITIES & STATUTES</u>

**Cases**
*Haines v Kerner*, 404 U.S. 519 (1972) ................................................................................. 5
*Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*,
  290 F.3d 1058, 1063 to 1066 (9th Cir. 2002) .................................................................. 16
*Sammartano v First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002) ................... 8

**Federal Statutes**
28 U.S.C. § 636(b)(1)(C) ....................................................................................................... 5

**State Statutes**
Cal. Code Civ. Proc. § 527.6 ............................................................................................... 16
California's civil harassment statute ................................................................................... 16

**Rules**
Federal Rule of Civil Procedure 56(c)(4) ............................................................................ 9

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

## OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION

### I. INTRODUCTION

The Claimant, Christina Taft, respectfully submits this Objection to the Magistrate Judge's Report and Recommendation dated 18 April 2025, which recommends the denial of her Motion for a Preliminary Injunction. The Report does not adequately consider substantial and credible evidence of continuing intimidation, harassment, and threats directed not only at the Claimant but also at multiple material witnesses and victims who are essential to the fair resolution of this matter.

The protection of witnesses lies at the centre of the Claimant's application. Multiple individuals have provided sworn declarations describing the fear and distress caused directly by the conduct of the Defendant, Mr Barresi. Some have relocated, gone into hiding, or declined to submit formal statements due to credible fears of retaliation. These threats are supported by the record and are neither speculative nor exaggerated.

This Objection seeks to protect not only the Claimant's position but also the integrity of the judicial process. The Defendant's behaviour presents an ongoing and serious risk of irreparable harm. In the absence of formal protections, the Claimant has undertaken significant personal efforts, including instructing private investigators, issuing subpoenas, and placing parties on notice, often at considerable financial and emotional cost. Despite these steps, a lack of institutional support has left certain individuals exposed to continued coercion. Without prompt judicial intervention, the likelihood of further intimidation is high, threatening the evidentiary foundation of this case and the fair administration of justice.

The Claimant also urges the Court to give due consideration to the declarations submitted by pro se individuals and lay witnesses. While these individuals may not have legal training, their testimony reflects relevant personal experience. In accordance with

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

legal principles established in *Haines v Kerner*, 404 U.S. 519 (1972), such submissions should not be discounted solely for lack of technical form. To do so would marginalise vulnerable voices and run contrary to the principles of equitable justice.

In view of the foregoing, the Claimant respectfully requests that this Honourable Court set aside the Magistrate Judge's recommendation and grant the preliminary injunction, in order to provide essential protection to witnesses and preserve the fairness of these proceedings. This case also raises urgent concerns regarding interstate threats directed at individuals connected to the Claimant, which fall under the purview of federal law and demand heightened judicial attention.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), the District Judge is required to undertake a de novo review of those specific portions of the Magistrate Judge's Report and Recommendation to which an objection is properly made. The District Court is obliged to consider all objections raised and may accept, reject, or modify the findings or conclusions contained within the Report and Recommendation, either in whole or in part.

This standard of review ensures that the litigant is afforded a full and fair consideration of contested issues by the presiding Article III judge, particularly where fundamental rights or urgent equitable relief is sought, as is the case here.

## III. ARGUMENT
### A. The Well-being of Witnesses Requires Judicial Protection

It is respectfully submitted that the Magistrate Judge's Report does not afford due weight to the credible and compelling evidence of ongoing intimidation, harassment, and coercion directed towards key witnesses and victims associated with these proceedings. The protection of those who come forward to assist the Court in the pursuit of justice is of paramount importance. Their safety and psychological welfare are not only essential to the

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

1  evidentiary foundation of the Claimant's case, but also to the broader integrity of the

2  judicial process.

3  Numerous declarations and written statements filed with the Court, including those

4  of Ian Herndon, Molly Beaton, Michael Kountz, and Erik Eichler, recount experiences of

5  direct and indirect threats, emotional distress, and a pattern of intrusive conduct that has

6  had a chilling effect on the willingness and ability of individuals to testify. While the

7  content and tone of these declarations may vary, they collectively describe behaviour that

8  is coercive in nature and evidently calculated to discourage participation in these

9  proceedings. The law recognises that not only overt threats but also ambiguous and

10  persistent communications may instil real and lasting fear in reasonable individuals,

11  particularly in the context of continued intimidation.

12  To cite some examples: Rebecca Berry expressed credible fears for her life following

13  a disturbing and unexplained incident which she associated with the Defendant. In such

14  circumstances, even isolated but ambiguous events can provoke a trauma-based response

15  rooted in the fear of imminent harm. Witnesses like Ms Berry, who perceive threats

16  accompanying statements of violence, are responding in ways recognised by both trauma

17  literature and judicial precedent (Exhibits Berry Decl. ¶3–7, Exhibit 1). Similarly, Mario

18  Nitrini described being intimidated and subjected to threats to him and his family after

19  being asked to provide a witness declaration and answer a subpoena in order to contribute

20  to effective police investigation (Exhibit 4 and Exhibit 5). Witness Molly Beaton is not

21  merely an observer; she is herself a direct victim of the Defendant's intimidation. She took

22  the significant step of reporting her fears to the Maitland Police Department, stating her

23  belief that the Defendant posed a deadly threat (Beaton Decl. ¶1, ¶6, ¶9–10, Exhibit 9). Her

24  fears are grounded in genuine trauma caused by the Defendant's sustained and coercive

25  conduct. Dismissing Ms Beaton's experience, as the Magistrate Judge's Report appears to

26  do, would ignore the real and immediate harm she has endured. Her statement, along with

27

28

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

that of Angela Gayle Meador, documents the ongoing psychological impact of the Defendant's actions and reinforces the need for urgent judicial protection. Where personal safety, reputation, and familial stability are targeted, the resulting psychological harm is comparable to that of physical intimidation. Witnesses should not be forced to choose between their safety, dignity, and willingness to testify. In addition, individuals including Mr Kountz and Mr McCormick reported unsolicited communications believed to be made by or on behalf of the Defendant. The cumulative effect of these actions is not theoretical; it is actively undermining witness participation and the truth-seeking function of the Court.

Rebecca Berry was subjected to deeply disturbing conversations, including Defendant's claim of throwing a woman off a roof and removing a memento from the scene, leading to ongoing emotional trauma and instability (Berry Decl. ¶3–7; Exhibit 1). Molly Beaton reported a credible fear that Defendant could go to her address after reporting deadly fear of him to her local police in Florida and his prompting of her against another assault victim (Beaton Decl. ¶1, ¶6, ¶9–10). Another witness, Angela Meador, was reported to be inside under police protection—a precaution encouraged by the Plaintiff and documented in the opposition filed in this case. She feared Mr. X, the Defendant, and for her safety at home, rooted in Defendant's knowledge of her fear of Marton Csokas's violence towards her and an assailant with a gun, and estrangement from another witness, and she later described "nine months of darkness" due to trauma caused by actions initiated by Defendant (Meador Decl. ¶2, Exhibits 13 and 17). Angela Meador, during an interview with private investigator Heather Cohen, trembled with fear and asked whether Cohen had been sent by Marton Csokas or the Defendant, stating: "You have no idea what you're getting yourself in the middle of," a reflection of the intimidation she experienced (Cohen Interview, Exhibit 3; Meador Decl. ¶2). James Conner ultimately fled the state for safety after being surreptitiously recorded and manipulated by the Defendant, causing significant professional and emotional disruption (Conner Decl. ¶4–8; Kountz Decl. ¶22–26). Michael

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

Kountz, a licensed investigator, detailed the Defendant's role in circulating false death threats and damaging safety through edited recordings (Kountz Decl. ¶2–11, ¶22–26), which Conner corroborated as harassment (Conner Decl. ¶4–8, Exhibit 1). The Defendant made references to the Claimant's late mother Victoria Taft that were perceived as offensive and inappropriate, contributing to emotional distress (see related declarations, Kountz Decl. ¶10–11).

These experiences demonstrate a persistent, escalating pattern of harassment, coercion, and reputational harm that cannot be dismissed as incidental or speculative. The collective impact is chilling, obstructive, and deeply corrosive to the fair administration of justice.

The risk of irreparable harm is evident. As the Ninth Circuit has held, harm is irreparable where legal remedies are inadequate or where continued intimidation would permanently impair the ability of witnesses to provide evidence (see *Sammartano v First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002)). The disruption of the Claimant's ability to advance her claims, coupled with the distress suffered by witnesses, clearly meets this standard.

Accordingly, it is submitted that the Court must act decisively to prevent further harm. The requested preliminary injunction is tailored to that end, prohibiting further unauthorised contact, interference, or coercion of witnesses by the Defendant. Such relief is warranted under the law and essential to uphold fairness, safety, and access to justice.

**B. Pro Se Witnesses Are Entitled to Leniency and Respect Under Established Law**

The Report and Recommendation does not give appropriate consideration to the sworn declarations of witnesses who are not legally represented. These individuals have provided essential testimony based on personal knowledge, describing threats, harassment, and emotional harm resulting from the Defendant's conduct. Although these witnesses do not have legal training, their submissions are both relevant and credible.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

The United States Supreme Court in *Haines v. Kerner*, 404 U.S. 519 (1972), affirmed that courts must construe pro se filings liberally and not hold them to the strict standards applied to lawyers' pleadings. While this principle typically applies to litigants, it logically extends to witnesses acting in support of pro se parties who submit declarations in good faith. Ignoring their testimony based solely on formality would exclude important voices and diminish access to justice.

Federal Rule of Civil Procedure 56(c)(4) permits courts to consider declarations made on personal knowledge that can be presented in admissible form at trial. Courts have the discretion to evaluate such evidence, particularly when urgent relief is being sought and when procedural technicalities might otherwise prevent consideration of key facts. Several witnesses, including Rebecca Berry, Angela Meador, Molly Beaton, and Mario Nitrini, describe credible threats, coercion, and psychological trauma directly tied to the Defendant's actions. These accounts are not isolated and are supported by other evidence already in the record. Their consistent descriptions provide meaningful insight into the pattern of intimidation at issue.

The Court should view these declarations as substantive contributions to the evidentiary record. They support the need for protective relief and should not be discounted due to lack of legal polish. Their inclusion is essential to a fair and comprehensive de novo review.

**C. The Defendant's Conduct Warrants Immediate Relief**

The Claimant further submits that the conduct of the Defendant, Mr Barresi, as detailed in the declarations and supporting materials already before the Court, clearly meets the threshold for the issuance of injunctive relief. The behaviour described by witnesses reflects not only a pattern of intimidation and harassment but also an ongoing risk of obstruction to the proper administration of justice.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

Evidence presented before this Honourable Court establishes that there have been multiple instances of unauthorized contact with witnesses, including actions that appear intended to interfere with or influence their willingness to participate meaningfully in these proceedings in a manner consistent with their own best interests. The record further reflects a sustained pattern of public statements which appear to have been made with the purpose of discrediting, intimidating, or threatening individuals who have cooperated with the Claimant or who are perceived to be aligned with her interests. In addition to these public actions, there are also references to communications that were either made directly to, or relayed indirectly through third parties, targeting vulnerable witnesses and victims, as well as legal representatives and investigators who have been engaged in matters pertaining to this case.

Notably, the record contains:

## I. Each Witnesses' Declaration Provides Arguments for Protections

The evidence submitted before this Honourable Court includes multiple declarations from witnesses such as Ian Herndon, Molly Beaton, and Mike McCormick. These declarations describe a consistent pattern of threats, harassment, and coercion by the Defendant toward individuals associated with the Claimant. They reference unsolicited communications, both veiled and explicit threats, and efforts to discredit witnesses.

The Bristow materials between pages 8 and 14 document repeated acts of intimidation, including blackmail and threatening language. One example is Molly Beaton's sworn statement referencing Angela Meador's fear of an "actor and his goons," which the Claimant confirmed in opposition filings. This was not addressed in the Magistrate Judge's findings despite its relevance.

Declarations confirm that the Defendant ignored stop orders and escalated his behavior. Witnesses reported receiving disparaging messages that, although sometimes indirect, were reasonably interpreted as threatening when viewed in context. This pattern

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

includes conduct occurring before the motion for preliminary injunction, which provides important background on the Defendant's efforts to control and suppress testimony.

Angela Meador was originally referred to anonymously in the First Amended Complaint. The Defendant's subsequent public naming of her illustrates disregard for her safety and the coercive intent behind such actions. The criticisms directed at the declarations of Mr McCormick, Mr Herndon, and Ms Beaton fail to acknowledge their factual bases. For instance, Mr Herndon described a firearm being pointed at Ms Meador. Although later clarified that Defendant was not the assailant, he exploited the incident through recordings involving violent imagery (Herndon Decl.; Barresi Decl. ¶34).

The Defendant admitted in court to having "killed" someone, and a recording submitted as Exhibit 1 contains his statement about removing a ribbon from a deceased woman's neck as a "memento" and referencing "killers taking mementos" during a conversation with Rebecca Berry. Ms Berry was severely affected by this exchange (Exhibit 1; Berry Decl. ¶3–7).

Multiple witnesses corroborate these threats. Ms Beaton reported to police that she feared Defendant posed a deadly threat (Beaton Decl. ¶1, ¶6, ¶9–10). Angela Meador, during an interview with a private investigator, appeared visibly shaken and expressed fear that Defendant or someone on his behalf had come to her home (Cohen Interview, Exhibit 3; Meador Decl. ¶2). James Conner fled the state to escape Defendant's retaliation, including unauthorized recordings and defamatory edits (Conner Decl. ¶4–8; Kountz Decl. ¶22–26). Michael Kountz detailed a deliberate pattern of using false threats and privacy violations for tactical advantage (Kountz Decl. ¶2–11, ¶22–26).

This record satisfies both the subjective and objective standards for establishing witness intimidation. Witnesses like Ms Berry responded to implied threats with fear and protective action (Berry Decl. ¶3–7; Exhibit 1). Mr Nitrini experienced reputational threats after being asked to testify. Ms Beaton and Ms Meador are both direct victims of

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

Defendant's misconduct. Ms Beaton took the unusual step of reporting her fear to local police, and Meador later described enduring "nine months of darkness" due to trauma (Beaton Decl. ¶1, ¶9–10; Exhibit 9).

Statements by Defendant referring to victims as "non-entities" and "alleged victims" demonstrate psychological intimidation. Declarations show that Ms Beaton and Ms Berry went into hiding due to their fear of the Defendant. When the Defendant uses violent language, including references to death and felonies, witnesses reasonably perceive these as threats.

Ms Berry reported that Defendant claimed to have committed violent acts and even hired a hitman. She has moved several times out of fear. Her account is supported by the declaration of investigator Michael Kountz and James Conner. The use of unauthorized recordings to intimidate others raises serious legal concerns and justifies federal court intervention.

The State of Hawaii issued a temporary restraining order in January 2025 based on probable cause that Defendant had engaged in harassment. Subpoenas have been served on 28 witnesses, confirming the seriousness of the threat. Exhibit 27 contains a voicemail from Richard Albertini expressing fear of Defendant and referencing threats to a rape victim, Angela Meador (Exhibit 27, Voicemail ID: 8182073137_17).

The Magistrate Judge erred in characterizing this evidence as speculative. The law requires only a credible threat with a likelihood of serious distress to justify relief. Defendant's conduct clearly meets that standard. Federal courts have authority to prevent threats that undermine judicial proceedings.

The Plaintiff respectfully requests the Court issue an injunction to stop further harm, protect vulnerable individuals, and preserve the fairness of these proceedings.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

## II. Protective, Clean Declarations submitted that protect other witnesses and victims is aligned with Public Safety

The Plaintiff has encouraged witnesses to identify other individuals within the judicial record in order to ensure they receive appropriate recognition and protection as witnesses or victims. This was necessary due to a consistent pattern of manipulation and coercive behavior by the Defendant, who has created a climate of intimidation through false claims of authority and pressure tactics.

Declarations, witness identifications, and subpoenas serve as procedural safeguards, much like public notices issued during emergencies. These filings protect individuals at risk, even when they have not yet been formally named in court. Their purpose is to ensure that the judicial system responds to credible threats in a timely and appropriate manner.

The communications from the Defendant contain disparaging and exploitative references that cannot reasonably be viewed as neutral. Witnesses and victims have interpreted these communications as direct and implicit threats. Their reactions are consistent with the lived experiences of those contacted by the Defendant, and the law recognizes that credible fear arising from repeated conduct justifies protective intervention.

Events prior to the preliminary injunction motion are also relevant. These earlier incidents demonstrate a continuing course of conduct aimed at suppressing and controlling witness testimony. Far from being remote or irrelevant, they support the urgent need for judicial relief.

Angela Gayle Meador, who was originally referred to as Jane Doe in the First Amended Complaint, illustrates this concern. Her identity was withheld for safety, but the Defendant's later conduct showed a disregard for her anonymity and safety. Individuals not formally identified were left without protection until this litigation provided a mechanism for safety and recognition.

Because institutional responses have been delayed or ineffective, the naming of affected individuals in respectful and factual declarations serves an important public

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

function. These actions are necessary to extend the Court's protection to those most at risk and are consistent with both justice and public safety.

**D. Defendant's Own Admissions Confirm Harassment and Coercive Conduct**

Defendant Barresi's own sworn admissions support the Plaintiff's claims of harassment, intimidation, and coercion toward witnesses and victims. Although his declaration contains misstatements, it includes key admissions of direct and aggressive contact with several individuals.

Defendant admits to a confrontational phone call with witness Angela Meador but omits facts regarding the lack of her consent to being recorded and her prior trauma involving Marton Csokas (Ian Decl. ¶11; Exhibits 3 and 13; Barresi Decl. ¶34). He also acknowledges a separate aggressive interaction with the spouse of Ian Herndon, again disregarding the consent and autonomy of those involved (Barresi Decl. ¶34).

He further admits contacting Molly Beaton in October 2024 about a letter concerning Angela Meador, prior to any declarations or filings referencing the matter. This contradicts his assertion that the contact was made for legitimate defense purposes. The letter had not been referenced in the Plaintiff's complaint. These facts appear in (Barresi Decl. ¶34), and the impact of this contact is confirmed by (Beaton Decl. ¶1, ¶9–10; Exhibits J, K, and 9). Defendant's awareness of the estrangement between Beaton and Meador highlights the intentional nature of the interference.

The Plaintiff's decision not to reference the letter earlier was to avoid endangering Ms Meador. Herndon corroborates that Meador experienced intimidation due to the letter's circulation (Ian Decl. ¶11), and text messages confirm that she did not authorize its contents (Exhibits 3 and 13).

Defendant also admits to repeated communication with Rebecca Berry, which disrupted her personal life and housing stability (Barresi Decl. ¶34; Eichler Decl. ¶2–4). Berry has expressed fear of retaliation. Defendant further acknowledges contacting James

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

Conner in November 2022, recording him without meaningful consent, and using that recording to pressure others (Barresi Decl. ¶34; Kountz Decl. ¶22–26; Conner Decl. ¶4–8; Exhibit 1).

Although Defendant claims not to know about Angela Meador, he criticizes private investigator Mike McCormick for failing to contact her. This contradicts communications documented in (Exhibits 13 and 17), which show Defendant mentioning Meador as a target. Defendant also concedes he paid Mario Nitrini, whom he refers to as a "homeless outcast," and expressed frustration over Nitrini's support of the Plaintiff. He admits to confrontational encounters with both Nitrini and his son, who was facing unrelated legal issues (Barresi Decl. ¶34).

Finally, Defendant acknowledges initiating contact with Antonio Sarabia, a former victims' rights advocate, despite Sarabia refusing to speak with him. This confirms the contact was unsolicited and unwelcome (Barresi Decl. ¶34).

Under California law, harassment includes repeated unwanted contact when the individual knows the contact is unwelcome. Defendant's pattern of confrontational communication, acknowledged in his own statements, satisfies this definition. His admissions establish a continued effort to intimidate, manipulate, and retaliate against vulnerable individuals.

These facts support the need for immediate injunctive relief to prevent further harm and protect the integrity of these proceedings.

**I. Supplement: Judicial Admissions, Exhibits, and Witness Declarations Supporting Injunctive Relief**

In further support of the Motion for Preliminary Injunction, substantial judicial admissions, sworn testimony, and documentary evidence corroborate the ongoing pattern of harassment, intimidation, and retaliatory conduct by Defendant Paul Barresi.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

**I.A. Judicial Admissions by Defendant Paul Barresi**

At the October 19, 2022 Restraining Order hearing in Los Angeles Superior Court (Case No. 22PDRO01308), Defendant made sworn admissions under oath that further substantiate the pattern of threatening and harassing conduct toward witnesses and individuals associated with the Claimant.

First, Defendant admitted during testimony that he sent unsolicited communications to multiple individuals, including paralegals and private persons, wherein he claimed to have "thrown" a woman, identified as Shalimar, off a roof (Transcript, October 19, 2022, pages 26, 40, 42 to 44, filed in U.S. District Court, Dkt. 52). Under controlling precedent, including *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1063 to 1066 (9th Cir. 2002), courts must focus on whether the communications would reasonably be interpreted as threatening and intimidating, rather than the subjective intent of the communicator. Defendant's admissions meet this threshold.

Second, Defendant further admitted to physically traveling to Petitioner Richard Albertini's former residence to "verify" his location, despite not having obtained a restraining order or other lawful authorization (Transcript, October 19, 2022, pages 42 to 43). This unauthorized surveillance conduct aligns with stalking behavior under California's civil harassment statute, Cal. Code Civ. Proc. § 527.6, and constitutes a violation of federal protections under 18 U.S.C. § 1512 against witness intimidation.

**I.B. Exhibits and Documentary Records Demonstrating Defendant's Misconduct**

The evidentiary record before this Honourable Court, including witness declarations and supporting exhibits, strongly supports the Claimant's position that Defendant Barresi has engaged in a sustained campaign of harassment, threats, and intimidation directed at witnesses and victims involved in these proceedings. Each sworn statement and related document reveals a disturbing pattern of conduct that calls for immediate judicial protection.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

The Declaration of Ian Herndon (Dkt. 39-1) outlines direct threats involving a firearm and efforts to suppress reports of assault through retaliation and reputational attacks (Herndon Decl. ¶1–3, ¶11, ¶19, ¶42). Molly Beaton's Declaration (Dkt. 39-1) confirms that she was involuntarily drawn into the matter by Defendant and experienced ongoing coercion. Defendant referred to victims as "non-entities," which was clearly meant to undermine and intimidate them (Beaton Decl. ¶6, ¶9–10).

Michael Kountz describes in his Declaration (Dkt. 39-1) how Defendant manipulated audio recordings to suggest death threats, accompanying violent imagery related to testifying as a witness and a dead man image to provoke fear of assailants, and how this caused reputational damage to witnesses including James Conner, who ultimately fled the state for safety (Kountz Decl. ¶2–11, ¶22–26). Erik Eichler's Declaration (Dkt. 39-1) documents further threats and violent rhetoric targeting witnesses (Eichler Decl. ¶2–4).

Communications involving Mario Nitrini (Dkt. 39-1) reveal threats targeting his family, and messages from Rebecca Berry (Dkt. 39-1) include references to assassination and sexual violence, prompting her to take urgent protective measures. James Conner's Declaration, and related Exhibit Conner (Dkt. 39-1), confirm he fled to Alaska after being secretly recorded and harassed. The McCormick Declaration (Dkt. 39-1) also reports coercive efforts aimed at harming the professional standing of investigators and witnesses (McCormick Decl. ¶2–8).

Additional evidence includes the Barajas Interview Report in the Kountz Report (pages 19 to 20), which led to a report filed with the California Department of Consumer Affairs. Communications regarding witness Hagman (Dkt. 39-1, pages 33 to 34) describe indirect intimidation resulting in witness withdrawal. Exhibits L and H (Dkt. 39-1) contain violent imagery and document the revocation of Defendant's investigator license due to fraud and misconduct.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

The October 19, 2022 Hearing Transcript (Dkt. 52, pages 26, 40, 42 to 44) records sworn admissions by Defendant regarding threatening statements, surveillance, and attempts to intimidate witnesses. These admissions directly support the broader evidentiary record.

Taken together, these declarations and exhibits establish a credible and ongoing threat to witnesses and the integrity of this case. The record clearly demonstrates a coordinated pattern of coercion that justifies immediate judicial intervention and injunctive relief.

**I.C. Cross-Referenced Witness Statements**

Mapped references to declarations and reports reinforce the factual matrix of intimidation and harassment.

The Herndon Declaration, at Paragraphs 11, 19, and 35 to 37, describes Defendant's efforts to silence reports of assault through firearm threats and attacks.

The Beaton Declaration, at Paragraphs 6, 9, and 10, documents Defendant's derogatory comments and attempts to marginalize a victim as a "non-entity."

Statements made by James Conner, summarized in the Kountz Interview Report at pages 22 to 26, confirm that Conner fled to Alaska due to fears arising from Defendant's coercive recording and intimidation.

The McCormick Declaration, at Paragraphs 2 to 8, details Defendant's unsolicited communications aimed at manipulating witness testimony.

The Aurelia Barajas Report, contained within the Kountz Interview at pages 29 to 30, records Defendant's misconduct being reported to the California Department of Consumer Affairs.

Finally, Defendant's admissions at the October 19, 2022 hearing, including joking about pushing Shalimar off a roof (Transcript, pages 42 to 44) and making mocking references to homicide (Transcript, pages 184 to 186), demonstrate a deeply concerning

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

disregard for the safety, dignity, and autonomy of witnesses and victims. These admissions strongly reinforce the Plaintiff's entitlement to immediate injunctive relief.

**E. Defendant Targets Vulnerable Witnesses and Victims**

It is respectfully submitted that the individuals who have come forward to provide declarations or statements to the Claimant in the present matter include vulnerable witnesses and victims. The Defendant has employed a strategy that appears calculated to sow discord and provoke adversarial engagement, mirroring conduct previously reported to the Federal Bureau of Investigation by declarant Molly Beaton. Beaton reported the Defendant's behaviour after being approached in a similar manner she described as desperate, concerning the alleged fabrication of a high-profile image. This conduct was publicly referenced in a media article entitled "Aide made a 'desperate' approach to ex-model…" published in the *Daily Mail* (https://www.dailymail.co.uk/news/article-9155109). This pattern of behaviour has persisted.

The Defendant's subsequent contact with Ms Beaton, including references to a redacted letter unrelated to any current investigation, appears intended to exploit strained relations between witnesses, particularly her estrangement from Ms Angela Gayle Meador. Ms Beaton later was pushed by Defendant's unsolicited interactions causing distress about objects unrelated to the case's filed timeline which surfaced on Meador's inactive music page, which further contributed to emotional harm and distress, as noted in her declaration and police report.

Similar tactics were directed at Mr Mario Nitrini, whose financial vulnerability and social circumstances made him susceptible to pressure. The Defendant contacted him knowing his instability, and continued doing so even after Mr Nitrini expressed a desire to disengage. Reports from the Claimant and others indicate that Mr Nitrini faced veiled threats concerning his family, including his son, reinforcing the pattern of coercion. Concern for Mr Nitrini's safety was also expressed by Ms Meador in a related filing.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

Declarations from private investigators Mr Kountz and Mr Eichler support the credibility of these concerns. Both conducted interviews with key witnesses, including Ms Berry and Mr Conner, and confirmed the Defendant's conduct as manipulative and psychologically harmful. Mr Alejandro Hernandez likewise secured a signed statement from Mr Conner, who detailed non-consensual recordings and their subsequent misuse, stating clearly his desire to avoid further harassment to himself, his family, and the Claimant.

Ms Rebecca Berry, a nurse, has reported credible fears of physical harm from the Defendant due to her role in these proceedings. She also described the Defendant's references to disputed or unverified law enforcement sources and his dismissal of concerns related to Ms Meador's audio recordings (Exhibits 1 and 12). The emotional harm she experienced continues to affect Berry's stability and wellbeing.

Ms Meador has described extended emotional suffering, including a period of seclusion in 2023, which she characterised as "nine months of darkness." Her fears were substantiated by supporting phone records and other documentation (Exhibits 13 and 17). Although individuals such as Mr McCormick and Mr Sarabia are not themselves categorised as vulnerable, they were nonetheless subjected to disruptive and coercive conduct. Mr McCormick faced business consequences for his support of the Claimant, while Mr Sarabia was approached aggressively by the Defendant despite declining to engage.

The Defendant's repeated use of inflammatory and degrading language, including referring to victims as "non-entities" and "cowards," exemplifies the psychological tactics employed. This pattern of intimidation, escalation, and reputational harm demonstrates a concerted effort to destabilise and control those associated with the Claimant and obstruct the fair progress of this litigation.

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

**F. The Requested Relief Is Reasonable and Narrowly Tailored**

The Claimant does not seek a sweeping or punitive order, but rather a measured and appropriate remedy to address the specific and credible risks posed by the Defendant's conduct. The relief sought is both proportionate to the harm described and narrowly drawn so as to protect the parties and witnesses without unduly restricting the Defendant's ability to defend himself in these proceedings.

Specifically, the Claimant requests that the Court enjoin the Defendant from engaging in the following conduct:

1. The Defendant is prohibited from directly contacting vulnerable witnesses and victims identified in this case's timeline. This narrowly tailored restriction safeguards their well-being and ensures the integrity of the proceedings.

2. Communicating with or about witnesses or parties in a manner that may reasonably be construed as threatening, harassing, or retaliatory;

3. Publicly posting or disseminating material relating to the Claimant or named witnesses that is likely to cause fear, humiliation, or harm to those individuals;

4. Interfering, whether through intimidation, surveillance, or other means, with the lawful participation of any individual in the judicial process.

Such relief is not only consistent with the inherent powers of the Court to manage its proceedings and protect its integrity, but is also well-supported by precedent in cases involving harassment, witness intimidation, or obstructive behaviour. The Court has a duty to safeguard the fairness of the trial process and to ensure that no party uses their position to silence or coerce those who would otherwise contribute lawfully to the administration of justice.

Furthermore, the Claimant is mindful of the rights of the Defendant and does not seek to prevent him from defending himself fairly through appropriate legal channels. The

**OBJECTION BRIEF MEMORANDOM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

proposed injunction does not limit his ability to respond through appropriate counsel, that

do not impugn with conflicts of interests for vulnerable witnesses and victims in this case's

timeline, or to present his own evidence. Rather, it places necessary boundaries on conduct

that has already demonstrated to cause serious harm.

In light of the foregoing, the requested injunctive relief is a reasonable and essential

measure to uphold justice, protect vulnerable individuals from continued abuse, and

preserve the integrity of these proceedings.

## G. Defendant's Documented Admissions and Continuing Witness Harassment Warrant Immediate Relief

The Plaintiff respectfully submits that additional exhibits already placed before this

Honourable Court, specifically Exhibits J, K, and L, provide direct admissions and

evidence of the Defendant's ongoing harassment, intimidation, and unauthorised

communication with witnesses and victims. This pattern of conduct further reinforces the

urgent necessity of granting injunctive relief to protect the integrity of these proceedings

and the safety of all individuals involved.

## G.I. Exhibits J, K, and L Demonstrate Defendant's Unconsented and Intimidating Conduct

Exhibit J (Case 5:24-cv-01930-TJH-DTB, Document 51-1, Pages 127 to 130, Page

ID #:1889 to 1892) includes a series of emails wherein Defendant Barresi engaged in

hostile and aggressive communications toward the Plaintiff. These communications also

reference the manipulation of audio recordings involving witness Angela Gayle Meador,

despite clear objections raised by the Plaintiff and Ms Meador (Exhibits 3, 13, and J).

Defendant's continuation of unauthorised publication and exploitation of these recordings,

even after express requests to desist, constitutes a wilful disregard for consent and safety.

Exhibit K (Case 5:24-cv-01930-TJH-DTB, Document 51-1, Pages 131 to 137, Page

ID #:1893 to 1899) contains communications between Defendant Barresi and witness

Molly Brown, wherein Defendant pursued further contact despite Molly's prior disavowal

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

of involvement. Defendant's actions included exploiting Molly's prior associations in an effort to sow discord and manipulate witness statements. The emails in Exhibit K confirm that Defendant contacted Beaton despite her disavowal of involvement and referenced her past association with Meador in a manner intended to provoke discomfort and leverage estrangement. These persistent messages, received after prior disengagement, reflect a calculated effort to exert pressure on Beaton (Exhibit K; Beaton Decl. ¶1, ¶9–10).

Exhibit L (Case 5:24-cv-01930-TJH-DTB, Document 51-1, Pages 138 to 139, Page ID #:1900 to 1901) further establishes that Defendant engaged Molly Brown to pressure her into disclosing information adverse to Angela Meador, exploiting existing vulnerabilities for his own advantage. The Defendant's conduct in this regard reveals a pattern of targeted coercion and manipulation designed to interfere with the fair administration of justice.

The exhibits submitted in support of injunctive relief reinforce and authenticate the serious harm described in witness declarations. Exhibit 1 documents Defendant's disturbing claims made to Rebecca Berry, including statements about having "thrown someone off a roof" and removing mementos from a death scene, statements which Berry reports caused her severe emotional harm and destabilization (Berry Decl. ¶3–7; Exhibit 1). Exhibits J and K show that Molly Beaton was contacted in violation of prior stop orders and express boundaries, with Defendant referencing her estrangement from Meador an issue he exploited to provoke distress (Beaton Decl. ¶1, ¶9–10; Exhibit J, K). Exhibit 3, containing the Cohen Interview Summary, confirms Angela Meador's trembling fear when approached, and her belief that someone had been sent by Defendant or an associate (Meador Decl. ¶2; Exhibit 3). James Conner, corroborated by investigator Michael Kountz, describes being recorded without consent and fleeing to Alaska for safety, with this fear reflected across Kountz's declaration and report (Conner Decl. ¶4–8; Kountz Decl. ¶22–26; Exhibit L).

These records are not speculative or inferential, they are direct confirmations of a deliberate and escalating campaign to silence, destabilize, and discredit witnesses. The documentation in Exhibits J, K, and L confirms ongoing interference and retaliation, further establishing the need for the Court's immediate intervention.

## G. II. Witness Mario Nitrini's Subpoena Compliance and Necessity of Judicial Protection

Further evidence of the need for Court intervention is provided by the acknowledgment of witness Mario Nitrini that he had received a subpoena from the Plaintiff and had gladly complied (Case 5:24-cv-01930-TJH-DTB, Document 52, Page 246 of 248, Page ID #:2160). Mr Nitrini further informed the Plaintiff that formal Court notice was required to shield him from Defendant's efforts to impugn and intimidate witnesses. This reflects the broader pattern of witnesses needing judicial recognition and protection to withstand the Defendant's coercive tactics.

## G.III. Defendant's Pattern of Tampering with Evidence and Intimidating Witnesses

The Plaintiff respectfully submits that Defendant Barresi has systematically engaged in tampering with evidence, including the unauthorised recording and manipulation of audio conversations with witnesses Angela Gayle Meador and James Conner. These actions were designed to distort the witnesses' statements, induce fear, and impair their professional and personal well-being. As documented in Exhibit 3, investigator Heather Cohen reported that Angela Meador was "visibly shaken" during their interview, asked if Cohen had been sent by the Defendant, and stated, "You have no idea what you're getting yourself in the middle of." This confirms the extent of Ms. Meador's fear and her belief that Defendant's actions had endangered her (Exhibit 3; Meador Decl. ¶2)

Defendant's misconduct has caused significant and irreparable harm, including the destruction of Angela Meador's music career, social intimidation of Rebecca Berry, and emotional distress inflicted upon multiple witnesses. The exploitation of private disputes, dissemination of altered communications, and the targeting of vulnerable individuals such

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

as Mr Nitrini and Molly Brown have exacerbated the harm already suffered by those involved.

The T-Mobile phone records linked to Defendant's number, bearing area code 908, are critical to establishing the timeline of these unauthorised and harmful communications. The Plaintiff respectfully asserts that securing these records is essential to preserving evidence, protecting witnesses, and substantiating the pattern of intimidation and manipulation already demonstrated in the record.

**G. IV. Ongoing Harm and Judicial Necessity for Protection**

Declarations and materials filed with this Honourable Court, including those of Heather Cohen, James Conner, Michael Kountz, and others, document that Defendant Barresi has continued to communicate with, retaliate against, and pressure witnesses even after the issuance of temporary restraining orders.

The Plaintiff has further submitted email communications and sworn declarations showing that the Defendant leveraged social pressures, disseminated edited or selectively presented audio recordings, and engaged in conduct that multiple witnesses described as retaliatory or intimidating. These actions, according to witness accounts, interfered with their ability to testify freely and were perceived as attempts to obstruct the fair administration of justice.

This Honourable Court's jurisdiction and inherent authority to prevent ongoing witness tampering, intimidation, and harassment support the immediate issuance of protective injunctive relief.

**G.V. Specific Harms Documented**

The record shows that Angela Gayle Meador's professional music career was destroyed following the use of recorded communications by the Defendant without Ms Meador's consent, as documented in declarations and exhibits (Exhibits 3, 13, and 17). Evidence demonstrates that Ms Meador has been forced into hiding and social isolation for

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

over two years. Plaintiff's communication with Angela's musical collaborator Leland Grant confirms that Ms Meador has not been seen publicly since the Defendant's interference, underscoring the profound and lasting harm caused (Exhibits 13 and 17).

Witness James Conner has similarly documented coercive recording practices by the Defendant, leading to social and professional isolation, and subsequent flight to Alaska to avoid further harm. Exhibit L further confirms that Defendant manipulated audio recordings of Conner and disseminated them in ways intended to damage his reputation. Conner's resulting flight from the state is consistent with his declaration, which details escalating fear and harassment (Exhibit L; Conner Decl. ¶4–8; Kountz Decl. ¶22–26)

Rebecca Berry's declaration and related communications demonstrate that she continues to suffer severe emotional distress as a result of Defendant's harassment, with credible fears for her personal safety.

These incidents establish not only the credibility of the witnesses but also the direct causal link between Defendant's actions and the irreparable harm suffered.

**G.VI. Urgent Need for Relief**

The Plaintiff respectfully submits that the evidence of ongoing harm, manipulation, and unauthorised communication, combined with the Defendant's admissions and the clear necessity for securing phone records and protecting witnesses, overwhelmingly justifies the issuance of injunctive relief.

Without Court intervention, there exists a substantial likelihood that the Defendant's misconduct will continue, resulting in the further erosion of witness cooperation, the suppression of truthful testimony, and irreparable harm to victims and the judicial process.

The consistency of harm, fear, and distress across witnesses including James Conner fleeing the state after intimidation, Angela Meador trembling during her interview with a private investigator, and Molly Beaton expressing fear that Defendant would go to her home demonstrates a sustained pattern of intimidation that reinforces the Claimant's

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING
WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

central allegations. Defendant's own admissions and communications, whether sworn or recorded, corroborate this coordinated pattern of coercive conduct and witness interference (Conner Decl. ¶4–8; Cohen Interview, Exhibit 3; Barresi Decl. ¶34).

The Plaintiff therefore respectfully requests that the Court take judicial notice of these additional submissions and incorporate them into its de novo review of the Motion for Preliminary Injunction.

## IV. CONCLUSION

For the reasons set out above, the Claimant respectfully objects to the Report and Recommendation issued by the Magistrate Judge on 18 April 2025, and requests that this Honourable Court conduct a de novo review of the record and grant the Motion for Preliminary Injunction in its entirety.

The evidence before the Court clearly demonstrates a continuing pattern of intimidation, harassment, and interference directed at the Claimant and at witnesses who have come forward in good faith. The harm alleged is not speculative; it is actual, ongoing, and profoundly damaging to the ability of this matter to proceed fairly. The requested relief is not excessive, but rather carefully tailored to prevent further harm and to protect the integrity of the judicial process.

Furthermore, the declarations and supporting documents provided by pro se and lay witnesses should be afforded due regard, consistent with legal principles requiring liberal interpretation and respect for access to justice. To dismiss or marginalise these voices would be to reinforce the very dynamics of coercion and exclusion that the Claimant seeks to remedy through this litigation.

The Claimant therefore urges this Court to uphold the principle that every participant in the justice system, regardless of legal training or representation, deserves to be heard, protected, and treated with dignity.

Accordingly, the Claimant respectfully requests:

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**

1.  That the Report and Recommendation be set aside;

2.  That the Court grant the Motion for Preliminary Injunction;

3.  That the Defendant be enjoined as set forth herein; and

4.  That any further relief deemed just and proper be granted in the interest of safeguarding the parties and witnesses in this matter.


Respectfully submitted,

This May 1st, 2025 in the United States.

_____

Christina Taft
*Plaintiff in Pro Per*


## **Certificate of Compliance**

The on-the-record, Plaintiff in Propria Persona, certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.2.

This 1st of May, 2025

_____

Christina Taft
*Plaintiff in Pro Per*

**OBJECTION BRIEF MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING WITNESSES PROTECTION BY PRELIMINARY INJUNCTION**