Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

CHRISTINA TAFT

      Plaintiff,

vs.

PAUL BARRESI, ADAM R WALDMAN, and DOES 1-10, inclusive,

      Defendants.

Case No.: 5:24-cv-01930-TJH-DTB

[Hon. David T. Bristow, Magistrate Judge; Hon. Terry J. Hatter, Jr., District Judge]

**PLAINTIFF'S DECLARATION RESPONDING TO WITNESS-VICTIM ANGELA MEADOR'S SUBMISSIONS**

*[Filed concurrently with Exhibits; Opposition Brief Forthcoming; Certificate of Service]*

Date: July 27, 2025
Time: Under submission

**DECLARATION RESPONSE TO WITNESS-VICTIM ANGELA MEADOR**

I, Christina Taft, do hereby declare in response to recent submissions:

1. I am the Plaintiff in this action and have personal knowledge of all facts stated herein. I am over the age of 18 and competent to testify to these matters.

2. Angela Meador is talking more, and this is great. She should continue to speak more and to attest, although the source of her complaints is not from me originally. I support free speech and association, however with compassion. My mom Vicki did publicity for The Doors and I support as a Plaintiff (**Exhibit 2**).

3. I did not want her to be afraid anymore, and wanted to reach out in comfort and warmth. The statements I made in support of her, her music career, and my interests in helping her are genuine, and no matter what happens in any procedure. Further, she has the right to criticize me. She needs to breathe; after 3 years of this I can understand the anger. Defendant Barresi is cruel and inhumane to repeatedly falsely tell Meador that she would see any retaliation from me, simply starting with beliefs, while wielding our telephone recording and disclosing it. We are not free.

4. It's highly alarming that Defendant Barresi sent a high-profile armed guard to Angela Meador's home. Defendant's extreme, barbaric force with guns must stop. Defendant sending an armed guard, "Justin," who shows in my Second Amended Complaint as Defendant used to threaten me in early 2024, to say "she better stay there" is frightening and against our rights of autonomy (**Exhibit 3**). My SAC specifically outlines Defendant's use of high-profile guards to wield authority.

5. Further, it's highly alarming that Meador claims, "Plaintiff called 9-1-1 stating I am being held hostage and abused. She called so many times that they wouldn't respond to send someone when calling emergency services." This is saddening and depressing, to ever go through that experience, then the sudden

disconnect to important services even when she did need help. She has rights to rescue services. This statement highly traumatizes me, and shows her needs.

6. Further, the claim that I told her that "Sergeant Poole and I would save her" and that I claimed she didn't need to communicate with her isn't correct. Although I am trying to save her autonomy and free will in my actions, and the rights of our phone recording or materials to not be used any longer. FBI Special Agent Greg Turner in early 2024 recommended that I do a lawsuit, and that victim services could contact me. I did mention Angela in a few emails to SA Taghdis as well, but since I didn't report effectively or have contact with her, I didn't report accurately to give her help and missed clarity (**Exhibits 6**). Deeply I wanted to help Angela, and felt helpless to do so. As a supporter of Johnny Depp, and a victim of Marton Csokas, she needs more support and understanding. Defendant's lawyers did not provide the support they needed to for a witness to feel safe, and secure in life.

7. The alleged calls, texts, and so forth are not accurate, hence the phone company subpoena, showing Barresi incoming. Philip asked about the subpoena, music, and that she has the right to a law firm that serves victims. It wasn't until I reported in California that I apologized and pleaded that to her family to help her to report. It was essential to provide her foundations, and sadly, I faced risk doing so.

8. I don't disagree with her declaration, just the attributions of who said these things. I do not say what Richie says. When communication with her discontinued in October 2022, I was hoping she would be able to be autonomous from the chaos in these matters and be able to live her life. However, Defendant Barresi continued to contact her, and in higher volumes than dreaded, and further continued to use our telephone call recording without our consent. His actions made her unable to move forward to live her life independently. Wrongly she kept having to go back

to those days, and being stuck that Barresi could physically kill her and repeat the 'hunting' claim as was in an email that Barresi had with Schwartz, was alarming to me. I said I did not want her to have to think that way, and I'm so sorry to her.

9. I was further alarmed when Barresi's false declaration took away her consent, falsely claiming that Meador sent her our recording and consented to his disclosures. Meador correctly did not state that she gave him consent. Defendant Barresi repeatedly manufactures, records, defames, and removes people's consent, overpowering them with only his statements that he directs. Previously, Heather and Renee only asked 4 main questions, which are necessities to legal claims regarding illegal recordings, disclosures, Tom Bane Act, and invasions of privacy.

10. I further wanted to protect her rights to identify who assaulted her correctly, without it being confused into other individuals that could find association. Given the documented history of Marton Csokas in his violence and retaliation to her, and Barresi's proclivities to do unauthorized disclosures and have multiple media contacts, e.g., *American Media Inc*, as well as to repeatedly monitor victims, I thought Meador could be in danger from Csokas becoming angry with Barresi's behavior for him to wrongfully harm Meador. I highly worried for her, and for her future. Defendant Barresi sent our telephone recording to publicists. The licensed PI Heather Cohen's attestations that there could be a device blocking Meador from her interview with her about her lack of consent of the recording, use, or sending of our phone call (or any other recorded phone calls by defendants), and that she was assaulted by Csokas, is very frightening, and I became very worried that she was or is being surveilled by Csokas using a private investigator.(Cease email, **Exhibit 5**).

11. The fact that Defendant actually sent Justin (who I assume is from out-of-state) to go to Meador's home, and that he is further an armed guard, is even more

concerning and illustrious to the facts that Defendant is aggressively preventing
Meador from communicating with any party, and especially with the Plaintiff.

12. Moreover, the submissions show violations of the Civil Rights Act of 1983,
which this lawsuit is classified under, by showing joint action against my civil
rights, where Defendant Barresi's lawyers are copied in every anxious, concerning,
and illustrious emails. Meador is clearly asking for help, yet feeling she has to
retract or divert or redirect the sources of these foundational problems.

13. Further, there were a few demonstrative errors in Meador's declaration,
mainly that her tribute song to Johnny Depp was in 2020, and it was called
"Emotional Song Against Abuse: Tribute to Johnny Depp." The song and the video
demonstrates many issues with media headlines, as well as multiple types of abuse,
not only sexual abuse type, including emotional abuse, and further, her other
songs, e.g., "Have You Told Her" and "Love Yourself" describe wanting truth
against emotional coldness, and wanting warmth. In 2020, Meador appeared to
mostly be flourishing in her career and social life, until the unauthorized use of a
summarized letter depicting wrongful retaliation to her was continually spread and
discussed without her consent, which occurred later in 2020 and in 2021.

14. I was excited and enthusiastic to communicate with Meador. I had to wait
until multiple witnesses, namely Ian Herndon (who could be the friend she refers
to from 2020 in her police report on June 23rd which exhibited that Csokas
assaulted her and about the gun threat afterwards) and Molly Beaton declared, and
provided further understanding. I further made certain that their declarations would
protect Meador, and not have any implications that could restrict her speech or her
standing. I know she doesn't like implications, which I believe is an older
generation film/music/arts family issue, as my own mother did not like negativity.

15. Like Meador, due to Barresi's fixations, I was stuck in a warp, constantly hyper stimulated, told to be afraid of other individuals who may be associated, and any contact with Defendant Barresi was unhealthy and traumatic. It appeared that what Meador and I went through was in parallel – although Meador supported Johnny Depp and I was classified as supporting Amber Heard. It was shocking and made me have an identity crisis. Further, Defendant showed his harm to Angela to me for years, making me helpless and go through trauma. Defendant held me unwantingly with him having my voice with Meador's, unable to do something to assist due to names involved. Defendant separated us so that we wouldn't see the enlightenment that Defendant Barresi was harming not only both of us, but witnesses and both Johnny/Amber, and there are solutions for kindness to both.

16. I urge the Court to care about Angela Meador, yet sustain my Second Amended Complaint. Coercion against Meador and I by Barresi is illustrative to its importance. Further, executionary tactics of Defendant Barresi occurred after my sympathy to both Angela Meador and Adam Waldman – which was evidential once Meador, and unconsented recording, was brought out of the darkness to light (**Exhibit 1**). Clarity, calmness, and hope for reconciliation was obtainable.

17. As for the NAPPS process servers, it was very difficult to get individuals in her state to care about abuse, to not listen to statements literally, to be dependable instead of nonchalant, and to treat witnesses as witnesses. I had to send Cease and Desist letters to both Heather and Renee, explaining that they "did not show understanding or education about sexual violence" (**Exhibit 4**) and that by making Meador feel that they'd wrongfully report her for perjury, that it was witness tampering, and it was preventing Meador from being able to testify truthfully in my matters. The four questions, as stated, do not contradict her declaration

submitted. Further, I instructed that Meador could cross out any statement in the proposed affidavit she did not feel comfortable with declaring at this time, which was not listened to. Tennessee, as can Louisiana or many southern states, can be a fire and brimstone place – and it's another reason I took Defendant Barresi's threats, where he wanted me criminalized for my supportive communications with Meador and against him, seriously for so long. When reviewing the submitted summons, the same exact circumstances can be presented in California – and I did present those circumstances to Rancho Cucamonga, California officers about Meador being an assault victim of Csokas, the gun-threat assailant afterwards, and that Defendant Barresi fixated on it as he wasn't the identified person, and the illegal recordings with unconsented disclosures – has an entirely different response. I wanted Meador and I to have assistance from California authorities.

18. As for the subpoenas to witnesses and telephone companies that were clerk-issued, Hawaii is a jurisdiction that does not like hearing the names of Hollywood actors or public figures. E.g., *Michael F. Egan III v Bryan Singer* was moved from Hawaii federal court to California, despite the alleged sexual abuse act occurring in Hawaii. https://www.hollywoodreporter.com/business/business-news/director-bryan-singer-accused-sexually-697047 Although I discounted the faxed ex parte letter from Defendant Barresi, discussing Adam Waldman among many other figures without consent and with speculations, as being "impertinent, scandalous, and immaterial," having illegal recordings, and disclosures, the damage was already done. Further, Hawaii entities do not respond about mainlanders, and pass these issues onto federal authorities. The importance of Defendant Barresi repeatedly calling Meador is critical to showing her lack of full autonomy, and his abilities to auto-record her. Only Barresi's phone number was pertinent or used.

19. I also want to make it clear that even though Barresi wanted to traumatize Meador about me – I am not a person that responds to verbal debates or disagreements in the way he pushes. I'm further not as what Barresi wants to portray. I will always respond to those in need or who are going through distress. I can support a variety of types of victims, witnesses, individuals with a good heart.

20. I request that there are legal channels to communicate – since Defendant Barresi has executed any channel, making Meador and I have to send seemingly messages over these legal channels instead of open communication. Meador has only been able to ask who was texting and I provided consistent support, kindness, and appreciation asking to talk (**Exhibit 2**), and she talked at the Maui hearing. We had many supportive communications before Barresi was involved, and any harm to her is traumatizing to me. To protect statements, I had to re-locate to France.

21. I request that Defendant sending an armed guard to Meador's residence named "Justin" who he further used to threaten me as well, be stated to be extreme, outrageous, intimidating, and further, violating legal and civil procedure.

22. Further, the allegations against me are unsubstantiated. I am glad that Meador was able to correctly name who assaulted her as Marton Csokas to the police and finally report the incident of the man threatening her with a gun on his behalf. Ideally, legal processes should provide her and I with long-term assistance.

23. I'm glad Angela Meador is speaking more and appeared calmly. I was highly worried for her life and wellbeing. This shows she is appearing more. However, I do not need demise to my claims or to disappear, although this is what Defendant demands. I applied for privacy standards earlier, and that falsus in uno, falsus in omnibus was a fallacy. Although it's challenging to pick through Meador's attestations for what is evidential, and she has pieces of the timeline, her

input is valid, and she cannot be silenced in this court. With court documents, as with my Second Amended Complaint, they're accurate in the situation undergone with names, and further, shows how impacted I am in how Barresi used her and us.

24. On subpoenas to Hilo Court, addresses could be protective. As a process server, this was a better location to subpoena witnesses with some protections for them. I then diligently sent witness subpoenas to multiple witnesses and family members of mine from that docket, who felt comfort in being called to a legal proceeding officially. I wanted Meador to have those same protections as a called witness, and in Hawaii, it requires personal service. As exhibited by Meador, she was so strongly held by Barresi, that at first my wish to restrict selected phone numbers in a subpoena (which telephone companies do not allow), she was wrongly stuck as "related to defendants" as a Jane Doe I couldn't communicate with or have as a witness. She is a witness. Witnesses further are not "owned" by a particular party. We need free will. This court cannot entertain his possessiveness.

25. This entire experience with Defendant Barresi using our call, the rape, the gun-to-head that I re-ask about (since earlier she explained it to me in our phone call before recording started) and the intense violence involved from what happened to her is violating, continually traumatizing, and deeply painful to me. I specifically want no harm in any of my social interactions, and harm to her or others being forced upon me is horrific to me. When I said in our call to Meador that I began recording after "how he kidnapped you and everything," which are phrases of speech and it was not meant to be on the wrongful retaliation, I didn't want the gun-threat afterwards to discount her experiences personally. Defendant Barresi has repeatedly done the opposite – making her have no independence to categorize as she should be able to in her life. We cannot be pawns to Barresi.

26. I should be a witness that should still be able to report too. I know Meador is becoming more confident after years of being in the darkness, however, I urgently state this court must keep my Second Amended Complaint alive how it is, and in its honesty and forthrightness in naming individuals in context. The claims of relief I provided are essential and urgent to respond to the conduct. Recordings are used by Barresi against Plaintiffs, victims, and witnesses, as was ours. The connection to Meador is an essential part of what allowed Barresi to continue to make me respond to him. Barresi is fully aware of this, as I showed in my SAC. Although blackmail is no longer a priority in our society currently, it used to be in prior generations. There's conduct beneath statements, which is more important.

27. I do not want to go back to the fear, trepidation, and distortions of the experiences of the original and first amended complaints. As shown prior, eight people have declared in my lawsuit. These processes provided life-improving ways to feel safer through court. The experiences of Meador – who is blocked from two-way conversation with me or ability to accept kindness since Defendant tells her not to and used an armed guard one night called "Justin" (whose name appears in a horrific email thread on January 9th, 2024 before Defendant had Angela write an email to me for us to not communicate). The difference between the exhibits of my frightened, confused, urgent complaints to the FBI in 2024 and to present – finally able to see a media connection and some glimmer of hope for reconciliation to stop Defendant Barresi's harm, is very apparent. I urgently need my lawsuit for clarity.

28. Meador has been through so much these past 3 years – these submissions and the struggles she's going through demonstrate the control that Defendant Barresi has over her, making her have to miserably be afraid instead of feel warmth love, comfort. She was on an upward path with her career prior. The isolation she's

been through has really harmed her emotionally and cognitively. I went through the same panics after Barresi, although my family didn't teach me how to approach police, my mother Victoria and I respond with civility and politeness. Moreover, California reacts differently to sexual abuse, abuse, and public figures. Meador has been neglected, and her outgoing calls to Defendant's counsel hasn't helped her nor does copying them onto her emails. I told them to cease Barresi's use of our recording and to stop using materials against her. Defendant Barresi ignored needs, knowing he could use the vulnerabilities of Meador to harm us for no compassion.

29. When I had discussions with Meador prior to Barresi's contact, I spoke with her sympathetically, against celebrity stalking, and hoping for change. There's more in common between us that she cannot feel with Barresi's repeated directions and conduct. Kind, open, allowed communication could have reconciled issues with rationality away from Barresi's distorted cruelty. Barresi's incoming calls and phone interactions to Meador show she's not allowed kindness or openness to heal both of us to go forward or talk with me at all. The default against Defendant would have protected us. Meador's appearance shows my SAC's merit to progress.

30. Barresi terrorized me about her, and I moved to keep sympathy for Angela's wellbeing. Defendant still wields our recording, and he harms Meador to harm me. Seeing her misery is horrific for me, deeply painful that Barresi stops help to her.

31. I genuinely hope in this Court and life, that both of our rights are protected.

I hereby declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 27th of July in France.
            Respectfully submitted,

*Christina Taft*

Christina Taft - *Plaintiff in Propria Persona*

PLAINTIFF'S DECLARATION RESPONDING TO WITNESS-VICTIM ANGELA MEADOR'S SUBMISSIONS

## CERTIFICATE OF SERVICE

CHRISTINA TAFT v. PAUL BARRESI,  et al.

5:24-cv-01930-TJH-DTB

I, the undersigned, certify and declare that I am at least 18 years of age. I am a resident of the United States.

On July, 2025, I served a true copy of;  (1) PLAINTIFF'S DECLARATION RESPONDING TO WITNESS-VICTIM ANGELA MEADOR'S SUBMISSIONS; EXHIBITS OF DECLARATION

## PROOF OF SERVICE

  X   (By Electronic Transmission) I caused the document(s) described herein to be electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E)

  X   (By Delivery) I caused the document(s) described herein to be delivered to the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

| | |
|---|---|
| Melissa Yaffa Lerner<br>Megan Scott Mallonee<br>Lavely & Singer Professional Corporation<br>Attorneys At Law<br>2049 Century Park East, Suite 2400<br>Los Angeles, California 90067-2906 | *Attorneys for Defendant(s),*<br>Paul Barresi |

I declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

　　　　Dated in France on July 27, 2025.

*Christina Taft*

Christina Taft

*Plaintiff in Propria Persona*