# EXHIBIT  7

 Gmail

Christina Taft <taftchristina.ceo@gmail.com>

---

**URGENT - Request for Investigation and Prosecution of Unauthorized Audio Recording Disclosures**

Christina Taft <taftchristina.ceo@gmail.com>                                    Sun, Jun 22, 2025 at 1:22 AM
To: ASZULC@sbcsd.org

Hello Deputy Szulc,

Thank you again for your kindness and attention last week when I reported, and provided more evidence after our interview.

Yesterday (June 20th, 2025) there was another illegal unauthorized disclosure by Defendant Barresi of the illegal recording of my phone call with assault victim Angela Meador, and for more pressuring and coercion of us.

The "gun-to-the-head" content is midway in this disclosure, and in the beginning of it Angela states she doesn't want any posting or disclosures of her content related to the retaliation incidents. Added to this illegal disclosure in Barresi's added text, is about breakins and pressuring about false criminalizations. Barresi sent this to a person he unconsentedly recorded himself and then just 30 minutes ago disclosed that recording again illegally too, falsely claiming that victim wants unconsented recordings when he also just rebuked being recorded.
I'm most concerned with my vulnerable friend and victim/witness Angela Meador, my voice in this recording being unwantingly used for coercion of her where she cannot have autonomous statements, and her and I's demise from Barresi's coercion.

Further, I just tried to subpoena Angela in my main case where he's defaulting/won't answer, and with this coercion and Barresi holding her like this against her will with this illegal recording forcing statements of her with his use of it and added threats, I can't even communicate with her or serve her.

The link to the disclosure yesterday is here: 2:56 PM · Jun 20, 2025
https://x.com/PaulBarresi1/status/1936181394318999675

Christina Taft
212-718-1003


*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*


On Wed, Jun 11, 2025 at 5:11 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
> To Deputy Acuna,
>
> I'm in Rancho Cucamonga to do a report urgently and printed my evidence, I have the original recording device cell phone, and I have a flash drive with the same evidence.
>
> ---------- Forwarded message ---------
> From: **Christina Taft** <taftchristina.ceo@gmail.com>
> Date: Fri, Jun 6, 2025 at 9:12 PM
> Subject: Re: URGENT - Request for Investigation and Prosecution of Unauthorized Audio Recording Disclosures
> To: <rancho@sbcsd.org>
>
>
> TO: San Bernardino County Sheriff's Department
> **Violations of California Penal Code Sections 632 and 637**
> FROM: Christina Taft
> DATE: June 6th, 2025
> **RE: URGENT - Request for Investigation and Prosecution of Unauthorized Audio Recording**

**Disclosures**
REQUEST FOR CRIMINAL PROSECUTION

URGENT REQUEST FOR ASSISTANCE
Dear Sheriff's Department, I am reporting as the victim of unauthorized disclosures by Paul Barresi in San Bernardino of an illegal phone recording of a conversation between me and Angela Meador. The urgency of this matter is heightened because Angela is an assault victim and Defendant Barresi is fixating on the recording content that discusses a gun being held to the head by an unidentified assailant, weaponizing this traumatic assault content as an ongoing threat. The defendant fixated on this since people alleged he held the gun to her head, and I ask her about the gun to the head in this recording he leverages.
This situation has escalated to where Angela is "scared to death" and was "shaking uncontrollably" as I told to dispatch, and I've been coerced by not wanting harm to her and avoiding the threats, which Barresi leverages. These unauthorized disclosures have escalated so far that police protection was needed for the other victim in my phone call that was recorded (while I was in Los Angeles), and I as the reporting victim have also suffered severe trauma from these repeated violations. Defendant Barresi has been wielding and leveraging this traumatic recording, releasing it as threats, and continues leveraging it to this day with threats of release. He has become fixated on the gun-to-the-head content, using it as psychological warfare against both victims.

I urgently need to know where I can report Barresi for breaking California law through his unauthorized disclosures of an unlawful phone recording between myself and assault victim Angela Meador.

**IMMEDIATE UPDATE:** I called dispatch at 4pm PST today and was told a deputy would call me back, but the deputy has not yet called me. I spoke with Deputy Acuna today at 5pm PST and explained the content of the recording of us (with Angela) discussing her being assaulted (by Csokas), being held hostage 3 days, kidnapping, hit multiple times, stripped, filmed against her will and the unidentified assailant with the gun to the head shortly after the assault. These are unauthorized disclosures and threats. Given the urgent nature of these ongoing criminal violations, I can first report under "threats."

This situation involves 15 documented incidents of criminal violations spanning from December 2024 through October 2022, and to this very day the threat of unauthorized disclosure of the illegal phone call is being wielded by Barresi. I was residing at 5550 Grosvenor Blvd, Los Angeles, California when this unlawful recording was made by me, establishing clear California jurisdiction for prosecution under state privacy laws. Defendant Paul Barresi is located at 9648 Nova Place, Rancho Cucamonga, 91730 where Barresi is repeatedly breaking the law from.

The severity and urgency of this matter is demonstrated by documented distress incidents involving Angela Meador. This situation has caused significant hardship and stress, including stalking behavior by Barresi that escalated to the point where Angela Meador, the vulnerable assault victim in our unlawfully recorded phone call, required police witness protection. I am writing to you following your department's three months of assistance in attempting to serve stalker Paul Barresi with a restraining order.

**EXTREMELY SENSITIVE CONTENT:** The illegal recording contains extremely sensitive and traumatic content about a gun being held to the head by an unidentified assailant, which has caused severe trauma and fear to both Meador and myself. Through showing me the helplessness he was causing to my friend by sending me her text messages where she asked me for help, Barresi has repeatedly conveyed I would have to be falsely charged for the illegal recording and permanently silence myself in order to get the harm from his unauthorized disclosures to stop. Barresi repeatedly shows severe aggression and stalking, demonstrating his deliberate intent to cause psychological harm through exploitation of this traumatic content.

It has become so horrific and devastating, and I have to report these unauthorized disclosures of the phone call to help Angela and myself from Barresi's coercion of using it. I've been so afraid from Barresi's threats that I left the state. My vulnerable friend Angela is now too afraid to identify who assaulted her (further discussed in this recording) and is too afraid to identify Defendant Paul Barresi as the one doing these threats of unauthorized disclosures and retaliation. I cannot stand for my friend to be continually distressed by these ongoing violations, nor can I continue to be coerced through Barresi's exploitation of this illegally obtained recording. I need to prosecute Barresi for these criminal actions and the substantial harm he has inflicted upon both myself and my vulnerable friend. The repeated violations of our privacy through illegal recording disclosures have created an ongoing pattern of harassment and intimidation that must be addressed through the criminal justice system.

SUMMARY OF VIOLATIONS
I am formally requesting investigation and prosecution of Paul Barresi for multiple violations of California Penal Code Sections 632 (Eavesdropping and unauthorized disclosures) and 637 (Disclosure of Recorded Communications) involving the unauthorized disclosure of confidential audio recordings of conversations between Christina Taft and Angela Meador.

TIMELINE OF CRIMINAL VIOLATIONS (Within 3-Year Statute of Limitations)

The following incidents of unauthorized disclosure occurred within the statutory period for prosecution, organized from most recent:

March-April 2025 - Repeated threats from Barresi occurred; victim Angela Meador required police protection during this period
December 31, 2024 - Most recent unauthorized disclosure incident that led to a declaration made under duress
July-August 2024 - Email disclosures of confidential recordings
January 2024 - Multiple instances of wrongful dissemination
December 31, 2023 - Unauthorized disclosure incident
October 28, 2023 - Continued unauthorized dissemination
October 27, 2023 - Wrongful disclosure of confidential recording
December 31, 2022 - Unauthorized disclosure incident
December 28, 2022 - Wrongful dissemination of recording
December 16, 2022 - Unauthorized disclosure incident
November 2022 - Email disclosures of confidential recordings
October 22, 2022 - Continued unauthorized dissemination
October 15, 2022 - Wrongful disclosure incident
October 14, 2022 - Continued unauthorized dissemination
October 10, 2022 - Early wrongful disclosure incident
October 9, 2022 - Early unauthorized disclosure

APPLICABLE CALIFORNIA PENAL CODE SECTIONS
Penal Code Section 632 (Unlawful recording and unauthorized disclosures):

Prohibits intentional recording of confidential communications without consent of all parties California is a "two-party consent" state requiring all participants' permission The recording device (ACR) was located in California, establishing clear violation of state law

Penal Code Section 637 (Disclosure):

Prohibits disclosure of recorded telephone conversations Applies when disclosing party was not participant in original conversation **KNOWING VIOLATION:** Barresi is fully aware this is an illegal recording as both I and Angela as victims from the phone call have repeatedly pleaded with him that it's illegal, specifically informing him that the device for the recording was in California (ACR). Despite this knowledge, he continues to unlawfully disclose the recording.

CRIMINAL PENALTIES
These violations are "wobbler" offenses that may be charged as misdemeanors or felonies:

Misdemeanor: Up to 1 year county jail and/or $2,500 fine per violation Felony: Up to 3 years imprisonment and/or $2,500 fine per violation Repeat Offender: Up to $10,000 fine per violation

EVIDENCE AVAILABLE
Documentation of disclosure dates and methods
Evidence of ongoing pattern of unauthorized dissemination
Proof that disclosures involved confidential communications
Records showing lack of consent from recorded parties
Text messages from Angela Meador asking for help, which Barresi sent to demonstrate the distress he was causing Evidence of disclosures on YouTube channels and in emails to others (and to me)
Private investigators and police have witnessed the intense shaking and fear that Angela is going through as Barresi repeatedly commits these crimes and holds her seemingly hostage from her own autonomy, and me as well since I'm in this phone call

IMPACT OF VIOLATIONS
The unauthorized disclosure of the sensitive contents of the confidential phone call has resulted in:

Coercion: The defendant has used the illegally obtained recording as leverage to force compliance and extract declarations under duress, constituting criminal coercion through exploitation of private communications containing extremely traumatic content about gun violence. Too afraid to identify who assaulted her and the defendant, and I'm coerced as well for not wanting harm to her.

Emotional Distress: The repeated unauthorized dissemination of private, sensitive conversations containing traumatic assault details has caused severe psychological harm, anxiety, and mental anguish to the victims

7/28/25, 12:23 AM                Gmail - URGENT - Request for Investigation and Prosecution of Unauthorized Audio Recording Disclosures

Case 5:24-cv-01930-TJH-DTB    Document 90    Filed 07/28/25    Page 5 of 57    Page ID
#:4285

whose privacy was violated. The content involves a gun being held to someone's head by an unidentified
assailant, making the unauthorized disclosures particularly devastating.

Financial Harm: The wrongful disclosure and exploitation of confidential communications has resulted in
measurable economic damages, including but not limited to loss of opportunities, reputation damage, and
costs associated with addressing the privacy violations.

REQUEST FOR ACTION

I respectfully request that the San Bernardino County Sheriff's Department:

Initiate a criminal investigation into these violations
Interview relevant witnesses and collect evidence
Forward findings to the District Attorney's Office for prosecution consideration
File appropriate criminal charges based on the evidence
The defendant's repeated violations demonstrate a pattern of willful disregard for California privacy laws and
warrant immediate law enforcement intervention.

If you could please provide how I can urgently do a police report about this for an investigation that is
urgently needed, I will do what you advise to me.

Contact Information:
Christina Taft
212-718-1003


On Thu, Jun 5, 2025 at 5:35 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:

TO: San Bernardino County Sheriff's Department
**Violations of California Penal Code Sections 632 and 637**
FROM: Christina Taft
DATE: June 5th, 2025
**RE: URGENT - Request for Investigation and Prosecution of Unauthorized Audio Recording
Disclosures**
REQUEST FOR CRIMINAL PROSECUTION

URGENT REQUEST FOR ASSISTANCE
Dear Sheriff's Department, I am reporting as the victim unauthorized disclosures by Paul Barresi in San
Bernardino of an illegal phone recording of a conversation between me and Angela Meador. The urgency of
this matter is heightened because Angela is an assault victim and Defendant Barresi is fixating on the recording
content that discusses a gun being held to the head by an unidentified assailant, weaponizing this traumatic
assault content as an ongoing threat.

This situation has escalated to where Angela is "scared to death" and was "shaking uncontrollably" as I told to
dispatch, and I've been coerced by not wanting harm to her, which Barresi leverages. These unauthorized
disclosures have escalated so far that police protection was needed for the other victim in my phone call that
was recorded, and I as the reporting victim have also suffered severe trauma from these repeated violations.

Defendant Barresi has been wielding and leveraging this traumatic recording, releasing it as threats, and
continues leveraging it to this day with threats of release. He has become fixated on the gun-to-the-head
content, using it as psychological warfare against both victims.

I urgently need to know where I can report Barresi for breaking California law through his unauthorized
disclosures of an unlawful phone recording between myself and assault victim Angela Meador.

**IMMEDIATE UPDATE:** I called dispatch at 4pm PST today and was told a deputy would call me back, but
the deputy has not yet called me. Given the urgent nature of these ongoing criminal violations, I can first report
under "threats."

This situation involves 15 documented incidents of criminal violations spanning from December 2024 through
October 2022, and to this very day the threat of unauthorized disclosure of the illegal phone call is being

wielded by Barresi. I was residing at 5550 Grosvenor Blvd, Los Angeles, California when this unlawful recording was made by me, establishing clear California jurisdiction for prosecution under state privacy laws. Defendant Paul Barresi is located at 9648 Nova Place, Rancho Cucamonga, 91730 where Barresi is repeatedly breaking the law from.

The severity and urgency of this matter is demonstrated by documented distress incidents involving Angela Meador. This situation has caused significant hardship and stress, including stalking behavior by Barresi that escalated to the point where Angela Meador, the vulnerable assault victim in our unlawfully recorded phone call, required police witness protection. I am writing to you following your department's three months of assistance in attempting to serve stalker Paul Barresi with a restraining order.

**EXTREMELY SENSITIVE CONTENT:**
The illegal recording contains extremely sensitive and traumatic content about a gun being held to the head by an unidentified assailant, which has caused severe trauma and fear to both Meador and myself. Through showing me the helplessness he was causing to my friend by sending me her text messages where she asked me for help, Barresi has repeatedly conveyed I would have to be falsely charged for the illegal recording and permanently silence myself in order to get the harm from his unauthorized disclosures to stop. Barresi repeatedly shows severe aggression and stalking, demonstrating his deliberate intent to cause psychological harm through exploitation of this traumatic content.

It has become so horrific and devastating, and I have to report these unauthorized disclosures of the phone call to help Angela and myself from Barresi's coercion of using it. I've been so afraid from Barresi's threats that I left the state. My vulnerable friend Angela is now too afraid to identify who assaulted her (further discussed in this recording) and is too afraid to identify Defendant Paul Barresi as the one doing these threats of unauthorized disclosures and retaliation. I cannot stand for my friend to be continually distressed by these ongoing violations, nor can I continue to be coerced through Barresi's exploitation of this illegally obtained recording. I need to prosecute Barresi for these criminal actions and the substantial harm he has inflicted upon both myself and my vulnerable friend. The repeated violations of our privacy through illegal recording disclosures have created an ongoing pattern of harassment and intimidation that must be addressed through the criminal justice system.

SUMMARY OF VIOLATIONS
I am formally requesting investigation and prosecution of Paul Barresi for multiple violations of California Penal Code Sections 632 (Eavesdropping) and 637 (Disclosure of Recorded Communications) involving the unauthorized disclosure of confidential audio recordings of conversations between Christina Taft and Angela Meador.

TIMELINE OF CRIMINAL VIOLATIONS (Within 3-Year Statute of Limitations)

The following incidents of unauthorized disclosure occurred within the statutory period for prosecution, organized from most recent:

March-April 2025 - Repeated threats from Barresi occurred; victim Angela Meador required police protection during this period
December 31, 2024 - Most recent unauthorized disclosure incident that led to a declaration made under duress
July-August 2024 - Email disclosures of confidential recordings
January 2024 - Multiple instances of wrongful dissemination
December 31, 2023 - Unauthorized disclosure incident
October 28, 2023 - Continued unauthorized dissemination
October 27, 2023 - Wrongful disclosure of confidential recording
December 31, 2022 - Unauthorized disclosure incident
December 28, 2022 - Wrongful dissemination of recording
December 16, 2022 - Unauthorized disclosure incident
November 2022 - Email disclosures of confidential recordings
October 22, 2022 - Continued unauthorized dissemination
October 15, 2022 - Wrongful disclosure incident
October 14, 2022 - Continued unauthorized dissemination

7/28/25, 12:23 AM                    Gmail - Urgent - Request for Investigation and Prosecution of Unauthorized Audio Recording Disclosures

Case 5:24-cv-01930-TJH-DTB    Document 90    Filed 07/28/25    Page 7 of 57    Page ID
#:4287

October 10, 2022 - Early wrongful disclosure incident
October 9, 2022 - Early unauthorized disclosure

APPLICABLE CALIFORNIA PENAL CODE SECTIONS Penal Code Section 632 (Eavesdropping):

Prohibits intentional recording of confidential communications without consent of all parties California is a "two-party consent" state requiring all participants' permission The recording device (ACR) was located in California, establishing clear violation of state law

Penal Code Section 637 (Disclosure):

Prohibits disclosure of recorded telephone conversations Applies when disclosing party was not participant in original conversation **KNOWING VIOLATION:** Barresi is fully aware this is an illegal recording as both I and Angela as victims from the phone call have repeatedly pleaded with him that it's illegal, specifically informing him that the device for the recording was in California (ACR). Despite this knowledge, he continues to unlawfully disclose the recording.

CRIMINAL PENALTIES These violations are "wobbler" offenses that may be charged as misdemeanors or felonies:

Misdemeanor: Up to 1 year county jail and/or $2,500 fine per violation Felony: Up to 3 years imprisonment and/or $2,500 fine per violation Repeat Offender: Up to $10,000 fine per violation

EVIDENCE AVAILABLE
Documentation of disclosure dates and methods Evidence of ongoing pattern of unauthorized dissemination Proof that disclosures involved confidential communications Records showing lack of consent from recorded parties
Text messages from Angela Meador asking for help, which Barresi sent to demonstrate the distress he was causing Evidence of disclosures on YouTube channels and in emails to others (and to me)
Private investigators and police have witnessed the intense shaking and fear that Angela is going through as Barresi repeatedly commits these crimes and holds her seemingly hostage from her own autonomy, and me as well since I'm in this phone call

IMPACT OF VIOLATIONS The unauthorized disclosure of the sensitive contents of the confidential phone call has resulted in:

Coercion: The defendant has used the illegally obtained recording as leverage to force compliance and extract declarations under duress, constituting criminal coercion through exploitation of private communications containing extremely traumatic content about gun violence.

Emotional Distress: The repeated unauthorized dissemination of private, sensitive conversations containing traumatic assault details has caused severe psychological harm, anxiety, and mental anguish to the victims whose privacy was violated. The content involves a gun being held to someone's head by an unidentified assailant, making the unauthorized disclosures particularly devastating.

Financial Harm: The wrongful disclosure and exploitation of confidential communications has resulted in measurable economic damages, including but not limited to loss of opportunities, reputation damage, and costs associated with addressing the privacy violations. Barresi further wanted me to pay him tens of thousands of dollars to make him stop and to silence myself.

REQUEST FOR ACTION
I respectfully request that the San Bernardino County Sheriff's Department:

Initiate a criminal investigation into these violations
Interview relevant witnesses and collect evidence
Forward findings to the District Attorney's Office for prosecution consideration
File appropriate criminal charges based on the evidence

The defendant's repeated violations demonstrate a pattern of willful disregard for California privacy laws and warrant immediate law enforcement intervention.

If you could please provide how I can urgently do a police report about this for an investigation that is urgently needed, I will do what you advise to me.

Contact Information:
Christina Taft
212-718-1003

--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

 **A Letter to Deputy Szulc – Second Evidence Submission Summary Case.docx**
21K

# EXHIBIT  8

 **Gmail**

**Christina Taft <taftchristina.ceo@gmail.com>**

---

## Investigator to Interview Witness About Audio - Goodlessville, Tennessee

**Christina Taft** <taftchristina.ceo@gmail.com>                                                                     Sat, Mar 22, 2025 at 7:04 PM
To: Renee Brewer <stillwatchpi@gmail.com>

Hi Renee,

Having two copies for witness Angela Meador is good preparation.

She can further cross out any lines that she doesn't feel comfortable with at this time.

1st copy:

1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not consent to the recorded phone call being sent.
3. I did not consent to the recorded phone call being published, nor used, nor sent, by Defendant.

4. Mr. X is Marton Csokas. He assaulted me.

I think these 4 statements may work.


2nd copy:

1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not consent to the recorded phone call being sent.

3. Mr. X is Marton Csokas. He assaulted me.


Or you could flip between the two copies.


Would she like us to report to law enforcement to see if they can help somehow?

— I can also go back to my local fbi office in Hawaii and be interviewed again as well about this. Greg there recommended last year in early 2024 when I was interviewed them to file a lawsuit, so it was very difficult to get that filed in September 7 months ago. I've been trying to get preliminary injunctions

Thank you,
Christina Taft

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

[Quoted text hidden]

# EXHIBIT 9

## AFFIDAVIT OF ALEJANDRO HERNANDEZ

1. I am signing this Unsworn Declaration in place of an Affidavit as allowed by 28 U.S. Code §
1746.

2. My name is Alejandro Hernandez; I am a licensed private investigator in Texas. I am over the
age of 21 years old, of sound mind and competent to provide this Affidavit. I understand that I
am swearing or affirming under oath to the truthfulness of the factual statements made in this
affidavit and that the punishment for knowingly making a false statement includes fines and/or
imprisonment.

3. All statements made herein are made from personal knowledge and are true and correct.

4. On April 18, 2025, I interviewed Ian Herndon for approximately 2 hours. This affidavit provides
the contents of the statements Mr. Herndon made to me during this interview which I
memorialize here in the interest of truth and justice.    Mr. Herndon told me he knew Angela
Gayle Meador.  He said he first met her after he was contacted by a person with the name of
Richie Albertini, who provided him her phone number and told Herndon to help her come
forward with allegations that she was making against a very well-known celebrity actor, Marton
Csoskas.

5. Mr. Herndon stated he spoke to Angela on several occasions and for several hours, from
November 25, 2020, to January 8, 2021.

6. Specifically, Angela told him that back in April of 2015, she had been flown into New Orleans
LA, by a person she had met on an online dating site.  When she arrived in New Orleans she
found out that the man she had met online was using a fake profile and photos, because the real
person was Marton Csokas a famous actor.

7. Mr. Herndon stated Angela told him she was shocked to see that the person she had met online
was a famous actor, who she knew and appreciated his work.  Angela is also a model who works
in the music entertainment industry.

8. Mr. Herndon stated Angela told him that she understood why Mr. Csokas would use a fake
profile considering he was a celebrity, so she agreed to accompany him, and they went out for
dinner at a local restaurant. Then Mr. Csokas took Angela to a residence where he was staying.
Then Mr. Csokas surreptitiously drugged Angela with an overpowering substance that left her
incapacitated to defend herself. Angela told Herndon that is when Mr. Csokas attacked her and
forced himself sexually on her. Angela told Herndon that Mr. Csokas held her against her will
for 36 hours and during that time, he raped her, beat her, tortured her, and caused her to be
mutilated with a knife causing serious bodily injury to her leg.

9. Mr. Herndon stated that Angela told him that Mr. Csokas threatened her safety. Later, Angela
told him she learned that he had done the same thing to at least 10 other women. Also, Angela
told Herndon that when she returned to her home in Tennessee, an assailant surprised her,
pointed a gun to her head and told her that he would kill her if she said anything about what
Csokas did to her.  Bolstering this statement, Mr. Herndon provided me a message that Angela
had texted him to his number which said in part: "You are all putting my life at risk by pushing
this. He (meaning Csokas) will kill me if he knows I've even spoken about it. I can't seem to
be clear enough about that."

10. Mr. Herndon stated that he tried to convince Angela to come forward to the police with her
story; however, Angela did not want to proceed out of pure fear.  Although what Angela told
him had occurred several years earlier, Angela was deathly afraid of Mr. Csokas. Angela would

say emphatically that "He will kill me!" if he found out that she had told anyone what Csokas
did to her.

11.  When I asked Mr. Herndon if he could provide an affidavit about what he had just told me, Mr.
Herndon initially agreed but then backed out because he feared that "fixers" for Mr. Csokas
would come after him to silence him, like they came after Angela. Mr. Herndon was afraid
because a person by the name of Paul Barresi had called his wife in the past to discourage him
from trying to help Angela.

12.  Therefore, I am providing this affidavit to memorialize what he told me in the interest of
preserving truth and justice.

ALEJANDRO HERNANDEZ                5/23/2025

# EXHIBIT 10

| 15-10603-401 Revised 6/92 (CR1) | 1. CODE SECTION MISC INCIDENT | | 2. CRIME DEFINITION MISC INCIDENT | | 3. CASE NUMBER | CRIME CODE |
|---|---|---|---|---|---|---|
| SHERIFF'S DEPARTMENT COUNTY OF SAN BERNARDINO, CA UNIFORM CRIME REPORT | ☐ F ☐ M ☑ OTHER | | | | 112506114 | OTHER |
| 03600 | 4. ASSIGNED MONTH-DAY-YEAR-TIME 06/12/2025 1039 | | 5. ARRIVED MONTH-DAY-YEAR-TIME 06/12/2025 1308 | | 6. BEAT RC5 | 7. REPORTING DISTRICT RC073 |
| 8. OCCURRED DAY OF WEEK-MONTH-DAY-YEAR-TIME 06/12/2025 1039 | | 9. REPORTED MONTH-DAY-YEAR-TIME 06/12/2025 1039 | 10. LOCATION OF OCCURRENCE | CITY | | |

CODES FOR BOXES 12 & 22 ARE:     V = VICTIM     W = WITNESS     RP = REPORTING PARTY     DC = DISCOVERED CRIME     IP = INVOLVED PARTY     O=OTHER

**VICTIM WITNESS**

| 11. NAME: LAST, FIRST MIDDLE (FIRM IF A BUSINESS) TAFT, CHRISTINA | 12. CODE RP | 13. RESIDENCE ADDRESS-STREET-CITY-ZIP | 14. RESIDENCE PHONE |
|---|---|---|---|
| 15. OCCUPATION | 16. RACE/SEX | 17. AGE | 18. DOB | 19. BUSINESS ADDRESS-STREET-CITY-ZIP | 20. BUSINESS PHONE |

| 21. NAME: LAST, FIRST, MIDDLE (FIRM IF A BUSINESS) BARRESI, PAUL | 22. CODE IP | 23. RESIDENCE ADDRESS-STREET-CITY-ZIP | 24. RESIDENCE PHONE |
|---|---|---|---|
| 25. OCCUPATION | 26. RACE/SEX | 27. AGE | 28. DOB | 29. BUSINESS ADDRESS-STREET-CITY-ZIP | 30. BUSINESS PHONE |

**SUSPECTS**

| 31. SUSPECT #1 NAME: LAST, FIRST, MIDDLE | 32. RACE/SEX | 33. AGE | 34. HT. | 35. WT. | 36. HAIR | 37. EYES | 38. DOB | 39. ARRESTED ☐ YES ☐ NO | 40. INTERVIEWED ☐ YES ☐ NO |
|---|---|---|---|---|---|---|---|---|---|
| 41. RESIDENCE ADDRESS-STREET-CITY-ZIP | | | 42. CLOTHING AND OTHER IDENTIFYING MARKS/CHARACTERISTICS | | | | | | |
| 43. SUSPECT #2 NAME: LAST, FIRST, MIDDLE | 44. RACE/SEX | 45. AGE | 46. HT. | 47. WT. | 48. HAIR | 49. EYES | 50. DOB | 51. ARRESTED ☐ YES ☐ NO | 52. INTERVIEWED ☐ YES ☐ NO |
| 53. RESIDENCE ADDRESS-STREET-CITY-ZIP | | | 54. CLOTHING AND OTHER IDENTIFYING MARKS/CHARACTERISTICS | | | | | | |

**INV**

| 55. ADDITIONAL NAMES IN CONTINUATION? ☑ YES ☐ NO | 56. ADDITIONAL INFORMATION FROM: ☐ VICTIM ☑ WITNESS ☑ OFFICER ☐ OTHER | | |
|---|---|---|---|
| 57. PHYSICAL EVIDENCE RECOVERED? ☐ YES ☑ NO | 58. PHOTOGRAPHS TAKEN? ☐ YES ☑ NO | 69. LATENT PRINTS LIFTED? ☐ YES ☑ NO | |
| 60. VEHICLE ☐ VICTIM ☐ SUSPECT | 61. COLOR | 62. YEAR | 63. MAKE | 64. MODEL | 65. BODY | 66. LICENSE NUMBER | 67. STATE | 68. DAMAGE/ODDITY/ACCESSORIES |

**CRIME STATS**

| 69. ROBBERY | WEAPON: | ☐ FIREARM ☐ CUTTING INSTRUMENT | ☐ OTHER DANGEROUS ☐ STRONG ARM | LOCATION: | ☐ HIGHWAY ☐ CONVENIENCE STORE | ☐ OTHER BUSINESS ☐ SERVICE STATION | ☐ RESIDENCE ☐ BANK  ☐ MISC. |
|---|---|---|---|---|---|---|---|
| 70. ASSAULTS | WEAPON: | ☐ FIREARM | ☐ KNIFE / CUTTING INSTRUMENT | ☐ OTHER DANGEROUS WEAPON | ☐ HANDS/FEET | ☐ SIMPLE/NO INJURY | |
| 71. BURGLARY | ☐ NIGHT ☐ UNKNOWN | ☐ DAY | ☐ FORCIBLE ENTRY ☐ NO FORCIBLE ENTRY | ☐ ATTEMPTED FORCIBLE ENTRY | ☐ RESIDENTIAL ☐ VEHICLE | ☐ NON-RESIDENTIAL (BUILDING) | |
| 72. LARCENY | ☐ PICKPOCKET ☐ PURSE-SNATCH | ☐ SHOPLIFT ☐ FROM MOTOR VEHICLE | ☐ MOTOR VEHICLE PARTS ☐ BICYCLES | ☐ FROM BUILDING - NOT SHOPLIFT OR MACHINES ☐ FROM COIN-OPERATED MACHINES | | ☐ ALL OTHERS | |

| 73. PROPERTY TYPES & VALUES | | STOLEN | | STOLEN | | STOLEN |
|---|---|---|---|---|---|---|
| | CURRENCY, NOTES | $ | TV, STEREO, ETC. | $ | CONSUMABLE GOODS | $ |
| | JEWELRY | $ | FIREARMS | $ | LIVESTOCK | $ |
| | CLOTHING, FURS | $ | HOUSEHOLD GOODS | $ | OTHER MISC. | $ |
| | OFFICE EQUIPMENT | $ | ☐ IDENTIFIABLE PROPERTY TAKEN | ☐ ENTERED INTO NCIC | TOTAL | $ 0.00 |

| 74. DOMESTIC VIOLENCE     INJURIES? ☐ NONE ☐ MINOR ☐ MAJOR     WEAPONS? ☐ YES ☐ NO |
|---|
| 75. PEACE OFFICER ASSAULTED OR ARSON? ☐ YES     (IF YES, COMPLETE BOXES 1,2,3,4 AND 34 OR 35 ON CR-4 FORM) |

**SYNOPSIS**

76. SYNOPSIS
CHRISTINA TAFT INITIATED A COUNTER REPORT AT THE RANCHO CUCAMONGA POLICE STATION TO REPORT THREATS TOWARD HER FROM PAUL BARRESI, WHO RESIDES IN THE CITY OF RANCHO CUCAMONGA. TAFT WAS ALSO WANTING TO REPORT BARRESI WAS IN POSSESSION OF A RECORDING WHICH WAS BETWEEN HER AND ANGELA MEADOR, WHO RESIDES IN TENNESSEE. DURING MY CONTACT WITH TAFT, SHE WAS DIFFICULT TO FOLLOW AND WANTED TO TALK ABOUT SEVERAL OTHER TOPICS THAT DID NOT FALL INTO RANCHO CUCAMONGA JURISDICTION. TAFT WAS UNABLE TO PROVIDE SUPPORTING EVIDENCE OF CRIMNAL THREATS TOWARD HER BY BARRESI. INFORMATION WILL BE DOCUMENTED AS AN INCIDENT AT THIS TIME UNLESS TAFT CAN PROVIDE SUPPORTING EVIDENCE THAT A CRIME OF CRIMINAL THREATS HAD BEEN COMMITTED IN THE CITY OF RANCHO CUCAMONGA.

| 77. REPORTING OFFICER A. SZULC - I3970 | 78. EMPLOYEE # I3970 | 79. DATE 06/12/25 | 80. REVIEWED BY | DATE 6/19/25 | 81. ROUTING INFORMATION ☐ SUBMIT TO D/A ☐ IMMEDIATE FOLLOW UP | ☐ OTHER: |
|---|---|---|---|---|---|---|
| 82. IS REPORTING OFFICER PC 115 QUALIFIED? ☐ YES ☐ NO | | | | | | |

| | | CASE NUMBER |
|---|---|---|
| **SHERIFF'S DEPARTMENT** | | **112506114** |
| **County of San Bernardino**<br>**California** | | **REPORTING AREA** |
| **CA 03600** | | **RC073** |

| CODE SECTION<br>**MISC. INCIDENT** | CRIME<br>**MISC. INCIDENT** | CLASSIFICATION<br>**OTHER** |
|---|---|---|
| VICTIM'S NAME - LAST NAME, FIRST NAME, MIDDLE NAME OR FIRM NAME IF BUSINESS | | |
| ADDRESS | | PHONE NUMBER |

### Assignment/Arrival:

On Thursday, June 12, 2025, at about 1212 hours, I was assigned to Field Training with Deputy Acuna at the Rancho Cucamonga Police station as 11P40. I wore a Class A uniform and drove a marked Sheriff's patrol vehicle.

At this time, I responded to the 10500 block of Civic Center Drive, reference a request for an investigation of an unauthorized disclosure of a phone call recording. We arrived on scene at 1308 hours.

### Scene:

While en route, Sheriff's Dispatch aired the reporting party requested an urgent investigation regarding a phone call between her and a victim witness.

### Involved Party / Reporting Party – Christina Taft:

I contacted a white female adult, who identified herself as Christina Taft (DOB: 10/13/1993). Taft's identity was confirmed via DMV records check.

Taft alleged she moved to Hawaii in 2023 after being harassed, threatened and stalked by Paul Baressi (DOB: 01/12/1949). She was introduced to Baressi through friends she met via Twitter and other social media accounts.

Taft stated she met friend, and "victim witness," Angela Meador through mutual friends in 2022. Meador knew Richard "Richie" Albertini. Albertini knew Baressi.

Taft stated multiple subjects vented and complained about "high profile" cases via Twitter. Albertini reached out to Taft via twitter and provided Taft with his phone number. Taft alleged Albertini had been stalked by Baressi.

Taft disclosed Meador was assaulted in 2015 and Meador reported the assault after it occurred. Taft alleged Meador had severe trauma because of the assault. Taft told me she called Meador to "interview" Meador about the assault, and she wanted to be "evidential." Taft resided in Los Angeles and Meador resided in Tennessee at the time of the phone call. Taft used application, Automatic Call Recorder (ACR), to record the phone conversation with Meador. Taft did not disclose to Meador she recorded the conversation. Taft stated Meador

| REPORTING OFFICER<br>**A. Szulc** | EMPLOYEE #<br>**I3970** | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE<br>6/19/25 |
|---|---|---|---|---|---|---|
| FURTHER ACTION: | COPIES TO: | SD/PD | Other | REMARKS: | | |
| YES     NO | Detectives | CII | | | | |
| 15-15184-401 Revised 1/83 (CR2) | District Attorney | Patrol | | | | |

| | | CASE NUMBER |
|---|---|---|
| **SHERIFF'S DEPARTMENT**<br><br>**County of San Bernardino**<br>**California**<br><br>**CA 03600** | | 112506114 |
| | | REPORTING AREA |
| | | **RC073** |

| CODE SECTION<br>**MISC. INCIDENT** | CRIME<br>**MISC. INCIDENT** | CLASSIFICATION<br>**OTHER** |
|---|---|---|
| VICTIM'S NAME - LAST NAME, FIRST NAME, MIDDLE NAME OR FIRM NAME IF BUSINESS | | |
| ADDRESS | | PHONE NUMBER |

"could sense" Taft was recording, told Taft she did not want the conversation recorded and started to cry. Taft stated she did not know it was illegal to record the phone call at the time.

Taft emailed the phone call with Meador to Rebecca Berry. Taft alleged Baressi paid Berry, and Berry provided the recording to Baressi.

**Additional Officer Information:**

During my investigation, I discovered Angela Meador obtained a restraining order against Taft on April 8, 2025.

Taft provided an exponential number of emails, text threads, Twitter snapshots, Instagram snapshots, Youtube snapshots, and other documents she alleged contained threats by Baressi. I could not locate a credible threat made by Baressi at the time of the interview with Taft.

Taft also alleged Baressi's attorney emailed her and requested Taft pay Baressi $20,000 and remain silent. Taft told me all threats, harassment and stalking by Baressi would cease upon payment and her silence. Taft could not provide proof of the alleged email.

Baressi resides in the city of Rancho Cucamonga. Taft had no other connection to Rancho Cucamonga for her case. No crime had been committed in Rancho Cucamonga.

On Wednesday, June 18, 2025, I received a letter, additional print-outs and a second flash drive from Taft. All items were submitted into evidence.

**Photographs / Evidence:**

I recorded my contact with all involved parties on my department issued body worn camera. I later updated the recording into evidence.

I submitted all documents provided by Taft into evidence under evidence tag #'s:

1. 2511002419
2. 2511002420
3. 2511002421

| REPORTING OFFICER<br>**A. Szulc** | EMPLOYEE #<br>**I3970** | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE<br>6/19/25 |
|---|---|---|---|---|---|---|
| FURTHER ACTION: | COPIES TO: | SD/PD | Other | REMARKS: | | |
| YES    NO | Detectives | CII | | | | |
| 15-15184-401 Revised 1/83 (CR2) | District Attorney | Patrol | | | | |

| | CASE NUMBER |
|---|---|
| **SHERIFF'S DEPARTMENT** | 112506114 |
| **County of San Bernardino**<br>**California** | |
| | REPORTING AREA |
| **CA 03600** | **RC073** |

| CODE SECTION<br>**MISC. INCIDENT** | CRIME<br>**MISC. INCIDENT** | CLASSIFICATION<br>**OTHER** |
|---|---|---|

VICTIM'S NAME - LAST NAME, FIRST NAME, MIDDLE NAME OR FIRM NAME IF BUSINESS

| ADDRESS | PHONE NUMBER |
|---|---|

4.  2511002422
5.  2511002453
6.  2511002454

I submitted one cell phone and one flash drive into evidence under evidence tag #:

7.  2511002423
8.  2511002455

**Disposition**

Station file.

.

| REPORTING OFFICER<br>**A. Szulc** | EMPLOYEE #<br>**I3970** | DATE | REVIEWED BY | TYPED BY | ROUTED BY | DATE<br>6/19/25 |
|---|---|---|---|---|---|---|
| FURTHER ACTION: | COPIES TO: | SD/PD | Other | REMARKS: | | |
| YES    NO | Detectives | CII | | | | |
| 15-15184-401 Revised 1/83 (CR2) | District Attorney | Patrol | | | | |

# EXHIBIT  11

 Gmail

Christina Taft <taftchristina.ceo@gmail.com>

---

## Investigator to Interview Witness About Audio - Goodlessville, Tennessee

**Christina Taft** <taftchristina.ceo@gmail.com>                                    Mon, Mar 24, 2025 at 9:22 PM
To: Renee Brewer <stillwatchpi@gmail.com>

Hi Renee,

Here's the local rule about cross-examining a declarant.

I look forward to seeing your affidavit -- one of the criticisms is that I didn't show that there was a witness that
recanted their testimony or statements, including no consent of audio and who the assaulter is. Now that's definitely
proven -- between you, Heather and Defendant's lawyer had written strangely to me.

Chapter I: Local Civil Rules
https://www.cacd.uscourts.gov/court-procedures/local-rules

  **L.R. 7-8 Presence of Declarants - Civil Cases.** On motions for and orders to show cause **re preliminary
injunctions**, motions to be relieved from default and other motions where an issue of fact is to be determined (e.g.,
civil contempt, but excluding motions contesting venue and personal jurisdiction), not later than fourteen (14) days
prior to the hearing, a party desiring to cross-examine any declarant who is not beyond the subpoena power of the
Court and who is reasonably available to the party offering the declaration may serve by hand (or facsimile or by
electronic filing) and file a notice of request to cross-examine such declarant. If the party offering the declaration
disputes that the declarant is within the subpoena power of the Court and reasonably available to the offering party,
such party shall serve and file an objection to the notice of request to cross-examine not later than eleven (11) days
prior to the hearing. The offering party shall be under no obligation to produce the declarant unless the Court has
granted the request to cross-examine by written order not later than three (3) days prior to the hearing. No
declaration of a declarant with respect to whom such a request has been granted shall be considered unless such
declarant is personally present and available at the hearing for such **cross-examination** as the Court may permit.
The Court may, in the alternative, order that the crossexamination be done by deposition taken on two (2) days' notice
with the transcript being lodged five (5) days prior to the hearing. The Court may impose sanctions pursuant to these
Local Rules against any party or counsel who requests the presence of any declarant without a good-faith intention to
cross-examine the declarant.

On Mon, Mar 24, 2025 at 10:04 AM Christina Taft <taftchristina.ceo@gmail.com> wrote:
  Hello Renee, can you then do this:

  Ask to notarize-

  1. I, Angela Gayle Meador, did not consent to the use of the recorded phone call from July 2022 between me and
  Taft.
  2. I did not consent to the recorded phone call being sent.
  3. I did not consent to the recorded phone call being published, nor used, nor sent, by Defendant.

  4. Mr. X is Marton Csokas. He assaulted me


  *Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
  *LinkedIn*


  On Mon, Mar 24, 2025 at 9:54 AM Renee Brewer <stillwatchpi@gmail.com> wrote:
    After printing this, I realize, the statement between me and another person is too vague. The affidavit has to be very clear. Maybe I
    won't ask for this since we can't use your name. My attorney thinks even the recording is not going to hold up without names.



    Thank you,
    Renee Brewer
    StillWatch Investigations
    615-207-4115

# EXHIBIT 12

 Gmail

**Christina Taft <taftchristina.ceo@gmail.com>**

---

### To Deputy Szulc Fwd: Asked Meador to Please Report to Sheriff's Department

**Christina Taft** <taftchristina.ceo@gmail.com>                                    Tue, Jul 1 at 8:10 AM
To: <ASZULC@sbcsd.org>

Hi Deputy Szulc,

I hope you are well. Were you able to forward the case to the District Attorney's Office?

I'm very worried for Angela and I. In his stalking behaviors, Barresi retaliated to appear when I filed a subpoena in my pro se US case to Angela Meador for opening communications against the stalking and disclosure and asking for reconciliation with a co-defendant he unconsentedly recorded.

It's very concerning that he called her hundreds of times while wielding the illegal phone recording between Meador and I with the gun-to-head content with the retaliation and assaults, who she's too afraid to identify correctly, as well as us discussing other individuals and public figures on that recording.

She's further a model and singer that is very concerned about stalking behaviors and implications.


Call District Attorney & Prosecutor in Rancho Cucamonga- San Bernardino

Charging for unauthorized disclosures penal 632 and 637 unlawful recording and threats

Jackie - forward the report, detailed to send to the supervisor

Hi (legal helper), I'm showing you this that today before Barresi's ex parte filing that I asked Meador to report to the Sheriff's Department on the Illegal Recordings and Disclosures


Sincerely,
Christina Taft

---------- Forwarded message ---------
From: **Christina Taft** <taftchristina.ceo@gmail.com>
Date: Thu, Jun 26, 2025 at 11:28 AM
Subject: You Are Protected and Loved - Please Report to Sheriff's Department
To: <babs481@aol.com>


Dearest Angela,

You are a remarkable, strong woman, and I need you to know that you are protected and deeply cared for. I'm writing

with urgent information to help keep you safe.

**Please report the illegal recording of your phone calls immediately:**

- **San Bernardino County Sheriff's Department** (Rancho Cucamonga)
- **Case Number: RCR2506114**
- **Contact: Deputy Szulc and Deputy Acuna** - they are caring officers who will help you
- The District Attorney is already being sent this case for prosecution

**You can also file a Courtesy Report** with your local Goodlettsville Police, and they will forward it to the appropriate jurisdiction in Rancho Cucamonga.

Angela, I was deeply traumatized learning about the extent of Barresi's harassment - hundreds of calls, you shaking and afraid. My heart breaks knowing what you've endured. Please don't be afraid anymore. **You are a protected victim and witness.**

I'm so sorry I didn't understand the full background when we spoke in 2022. I had no idea what you had been through since 2020. Please forgive my lack of understanding, and I pray for your healing and peace.

**Critical concern:** Barresi likely has illegal recordings of your phone calls with him through automatic recording apps. This is extremely serious, and I'm very worried for your safety.

**Good news:** T-Mobile has advised they will help you against the ongoing stalking. You have support and protection.

I hope you had a wonderful birthday months ago - I apologize that I wasn't aware of it and was quite stressed at the time. I have cried many times these past months, deeply worried for you. **My main concern is restoring your livelihood** and seeing you safe and thriving again.

I also need to apologize for disconnecting with you on October 19th. I tried to leave it acknowledging that I knew abuse had occurred to you, and I didn't want to argue with you. I knew Barresi would obtain any further texts I sent, and my frustration was heightened knowing he'd see what I was sending to you - so please be aware some of that was really me knowing he'd see it. I was going through attempted extortion that you witnessed, and I'm grateful you care about stopping financial abuse.

I truly appreciate your care about stopping financial abuse - please remember what a great quality that is to have. **You are a quality person with genuine great character inside.**

**Please, Angela - love yourself and take care of yourself.** You deserve peace, safety, and healing. You are not alone in this.

**Note:** I'm forwarding what I sent to Lt. Matthews and the Deputies with the Sheriff's Department. However, I've covered Deputy Szulc's email to prevent Barresi from sending multiple emails to harm the investigation.

Report this immediately. You are protected. You are loved. You are strong.

With deepest care and concern,

Christina Taft

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*


---------- Forwarded message ---------
From: **Christina Taft** <taftchristina.ceo@gmail.com>
Date: Mon, Jun 23, 2025 at 7:48 PM
Subject: URGENT - Request for Assistance for Victim Angela Meador - Case RCR2506114 - Life Safety Concerns
To: Brian Matthews <bmatthews@goodlettsville.gov>


**URGENT EMAIL TO LIEUTENANT MATTHEWS**

Dear Lieutenant Matthews,

I am writing to provide an urgent update to your case records regarding assault victim Angela Meador, who is in immediate need of protection and assistance.

After reporting to the San Bernardino County Sheriff's Department, I received concerning phone records from T-Mobile that demonstrate the urgent need to help Angela from Paul Barresi's ongoing stalking, as Barresi has constantly been calling Angela apparently hundreds of times. Ms. Meador's life and safety are at serious risk due to ongoing harassment, stalking, and witness intimidation tactics being employed by Paul Barresi, who resides in Rancho Cucamonga, California.

## IMMEDIATE SITUATION AND URGENT REQUEST FOR HELP

I have reported to the San Bernardino County Sheriff's Department in Rancho Cucamonga against Paul Barresi for his illegal possession and weaponization of an unauthorized phone recording between myself and Angela Meador. **Case Number: RCR2506114**. In this recording, Barresi fixates on disturbing "gun-to-the-head" content and continues to disclose it publicly (most recently on June 30th), which has left Ms. Meador in constant fear for her life.

The attached cease and desist letter to Marton Csokas and the affidavit by licensed investigator Alejandro Hernandez (who interviewed Ian Herndon) detail the horrific nature of the assaults Angela endured and specifically describe the gun assailant who threatened her. Angela is terrified that this person will discover she has spoken about what happened to her.

## CRITICAL EVIDENCE FROM T-MOBILE PHONE RECORDS

I received very concerning T-Mobile phone records today that provide stark evidence of the ongoing coercion and stalking. The data is alarming:

- **297 incoming calls from Barresi to Angela in only one year** (June 2024 to June 2025)
- **309 total calls between Barresi and Angela**
- **Angela only called him 12 times** - showing the one-sided nature of this harassment
- **On March 26th, 2025 alone, there were 9 calls between them** - all on the same day when I texted Angela once requesting to speak with her

This pattern clearly shows excessive and terrifying surveillance behavior. T-Mobile themselves advised that Angela needs to change her phone number to curtail the stalking.

## CRITICAL CLARIFICATION REGARDING 2025-0218482 INCIDENT REPORT

**Important correction**: The incident report 2025-0218482 incorrectly states that I called Angela on March 26th. This is not accurate. I sent only **ONE text message** that day stating I was at Lori Mattix's house (who worked for Johnny Depp's sister) and asking if I could please call her later that day (attached evidence).

According to the T-Mobile records, **Barresi called Angela 9 times on March 26th** - not me. I did not actually call Angela until March 30th, and per the subpoena I filed in US District Court, I only called her **4 times total on different days**: March 30th, April 1st, April 12th, and April 14th.

This date reference comes from Complaint Number: 2025-0218482 (content obtained from Barresi's public threats).

## ANGELA'S FEAR AND NEED FOR PROTECTION

Angela has stated in her ex parte filing that she "received threats that she has evidence of," but she is

too afraid to report Barresi directly due to the illegal phone recording and its disturbing gun-related content. Barresi has falsely manipulated her into believing she must depend on him and continue taking his calls, or face wrongful retaliation.

**I worry every day for Angela and have cried many times over these past months.** While I knew the situation was severe, these phone records reveal it's even worse than I realized, showing that Barresi has been repeatedly calling her constantly to monitor her activities. The evidence shows a pattern of systematic intimidation and control.

## URGENT REQUEST FOR ASSISTANCE

**Please help Angela by informing her that she can report as a victim to:**

- **Deputy Szulc and Deputy Acuna** at the San Bernardino County Sheriff's Department in Rancho Cucamonga, California
- **Case Number: RCR2506114**
- She can file a **Courtesy Report** with Goodlettsville Police, and they can forward it to the appropriate jurisdiction
- The case will be forwarded to the District Attorney
- **California authorities are very likely to help an assault victim** who is afraid due to gun threats and has been mercilessly stalked

## MY INTENTIONS AND CONCERN FOR ANGELA

For the record, my only intention was to help Angela feel better, feel safe, and no longer be afraid. I advised her years ago to change the identity of the threats in her reports and not to recant what her lived experience was in receiving intimidation. I would never harm or retaliate against Angela, nor would anyone in our support group.

Barresi has weaponized this illegal recording to maintain control over both Angela and myself, creating a situation where an assault victim is too terrified to seek help.

## DETAILS OF ANGELA'S ASSAULT EXPERIENCES

For context, Angela experienced horrific assaults at the hands of Marton Csokas in New Orleans in April 2015, where she was held against her will for three days, physically assaulted, sexually assaulted, and had her leg cut with a knife causing serious bodily injury. Shortly after returning to Florida, an unidentified assailant held a gun to her head and threatened to kill her if she spoke about what Csokas had done to her. This gun-to-head threat is specifically referenced in the illegal recording that Barresi continues to weaponize against Angela.

Under California law, it is against the law to make someone be silent about misconduct, harassment, or assaults. Both Barresi (who resides in California) and myself (who was in California in 2022 when the recording was made) are subject to these protections. Angela has the legal right to speak about her experiences without being silenced through intimidation or coercion.

## CONCLUSION

Angela Meador is a victim who desperately needs protection and support to break free from this cycle of intimidation. The T-Mobile phone records provide clear evidence of harassment and stalking behavior that must be addressed immediately.

I respectfully urge you to reach out to Angela and provide her with the information about how she can safely report to the California authorities. Her life and safety depend on getting the proper protection

she deserves.

Thank you for your attention to this urgent matter. Please contact me if you need any additional information or clarification.

Respectfully,

Christina Taft CEO, Rescue Social Inc 212-718-1003 taftchristina.ceo@gmail.com

**Attachments:**

- T-Mobile Phone Records (CDR_Mediations_6154234768_17914462.xls)
- Cease and Desist Letter to Marton Csokas
- Affidavit of Alejandro Hernandez
- Text message evidence from March 26th
- Subpoena filed in US District Court

BELOW ARE MY REPORTS TO DEPUTIES AT THE SHERIFF'S DEPARTMENT IN RANCHO CUCAMONGA

---------- Forwarded message ---------
From: **Christina Taft** <taftchristina.ceo@gmail.com>
Date: Sat, Jun 21, 2025 at 7:22 PM
Subject: Re: URGENT - Request for Investigation and Prosecution of Unauthorized Audio Recording Disclosures
To: <ASZULC@sbcsd.org>

Hello Deputy Szulc,

Thank you again for your kindness and attention last week when I reported, and provided more evidence after our interview.

Yesterday (June 20th, 2025) there was another illegal unauthorized disclosure by Defendant Barresi of the illegal recording of my phone call with assault victim Angela Meador, and for more pressuring and coercion of us.

The "gun-to-the-head" content is midway in this disclosure, and in the beginning of it Angela states she doesn't want any posting or disclosures of her content related to the retaliation incidents. Added to this illegal disclosure in Barresi's added text, is about breakins and pressuring about false criminalizations. Barresi sent this to a person he unconsentedly recorded himself and then just 30 minutes ago disclosed that recording again illegally too, falsely claiming that victim wants unconsented recordings when he also just rebuked being recorded.
I'm most concerned with my vulnerable friend and victim/witness Angela Meador, my voice in this recording being unwantingly used for coercion of her where she cannot have autonomous statements, and her and I's demise from Barresi's coercion.

Further, I just tried to subpoena Angela in my main case where he's defaulting/won't answer, and with this coercion and Barresi holding her like this against her will with this illegal recording forcing statements of her with his use of it and added threats, I can't even communicate with her or serve her.

The link to the disclosure yesterday is here: 2:56 PM · Jun 20, 2025
https://x.com/PaulBarresi1/status/1936181394318999675

Christina Taft
212-718-1003

# EXHIBIT  13



Christina Taft <taftchristina.ceo@gmail.com>

---

# UPDATE SERGEANT REQUEST - ILLEGAL DISCLOSURES PHONE RECORDINGS & STALKING RANCO CUCAMONGA

---

**Christina Taft** <taftchristina.ceo@gmail.com>                               Tue, Jul 8, 2025 at 7:14 PM
To: "Szulc, Arielle" <ASZULC@sbcsd.org>, rancho@sbcsd.org, rcpd@sbcsd.org, Angela G Meador <babs481@aol.com>

**UPDATE: SERGEANT REQUEST - ILLEGAL DISCLOSURES 637 PHONE RECORDINGS & STALKING 649.9
CALIFORNIA LAWS
POLICE REPORT REQUEST**

**San Bernardino County Sheriff's Department - Rancho Cucamonga Station**

**CALIFORNIA PENAL CODE SECTIONS 637 (UNAUTHORIZED DISCLOSURE) AND 646.9 (STALKING)**

- **Case Reference:** Need New Incident Report on Ongoing Disclosures/Stalking and RCR2506114
- **Date: July 8, 2025**
- **Reporting Party: Christina Taft**
- **Phone: 212-718-1003**

I am reporting a new criminal violation by Paul Barresi (908-656-5712, 9648 Nova Place, Rancho Cucamonga, CA 91730) **involving the unauthorized illegal disclosure telephone calls of** an illegally recorded phone conversation between myself and victim-witness Angela Meador on June 20, 2025.

Yesterday, July 7, 2025, I received a voicemail from Davidson County Sheriff's Department around Nashville, where Angela Meador resides. **This contact occurred after I provided Angela evidence of Barresi's 297 stalking calls to her and informed her about filing a Courtesy Report.** This suggests Angela is seeking help despite being trapped in Barresi's "hostage-like" psychological control that exploits our friendship, as well as my fear of retaliation to her, to control both victims with his criminal acts, and force demise without intervention making Barresi stop.

I am afraid for Angela's life and my own from this aggressive use of Barresi taking away our rights to autonomy with these recorded telephone calls that force repeated contact from him - again he is fixated on controlling Angela and I to prevent him being charged and it's torturing both of us.

 Angela Meador desperately needs protection and support to break free from this cycle of intimidation. I am also a victim who has lost countless funds and cannot continue fleeing from place to place. The repeated violations demonstrate willful disregard for California privacy laws and warrant immediate law enforcement intervention.

<u>**Critical for Rancho Cucamonga Sheriff's Department/Sergeant/Prosecutor:**</u>
This new June 20, 2025 disclosure represents an escalation in Barresi's ongoing criminal pattern requiring immediate prosecutorial intervention. I previously had to report interstate threats from Barresi to the FBI.

Angela is an innocent victim and so am I. I have tried to learn how to report properly over the years, but my family does not help with reporting. Please help us. Barresi continues to commit crimes from his Rancho Cucamonga residence, and his psychological warfare operation requires the Sergeant's expertise in state law enforcement and the prosecutor's authority to stop these escalating violations.

**CRITICAL UPDATE - JULY 7, 2025 DAVIDSON COUNTY CONTACT**

Yesterday, July 7, 2025, I received a voicemail from Davidson County Sheriff's Department around Nashville, where Angela Meador resides. This contact occurred after I provided Angela evidence of Barresi's 297 stalking calls and informed her about filing a Courtesy Report. This suggests Angela is seeking help despite being trapped in Barresi's "hostage-like" psychological operation that exploits our friendship to control both victims.

**SPECIFIC INCIDENT - JUNE 20, 2025**

On June 20, 2025, Paul Barresi made another unauthorized public disclosure of the illegally recorded phone conversation between myself and Angela Meador. This disclosure contained extremely sensitive content including references to "gun-to-the-head" incidents that have caused severe trauma to both victims.

**Key Concerns:**

- Angela Meador is afraid to identify her assailant (Marton Csokas) due to fear of retaliation
- The recording contains traumatic content about gun threats that Barresi continues to weaponize
- Angela fears that disclosure of the gun-to-head content will provoke retaliation from her assailant
- I am afraid for Angela's life and my own life due to Barresi's escalating criminal conduct
- This disclosure violates California Penal Code Sections 632 and 637

## URGENT NEED FOR SERGEANT INVOLVEMENT

I urgently need to reach the Sergeant who is responsible for enforcing state laws for the prosecutor and district attorney. The Sergeant has more comprehensive knowledge of the applicable laws than the deputies and can properly assess the criminal violations that have occurred. This case involves complex violations of California Penal Code that require immediate attention from someone with authority to initiate prosecution proceedings.

## ANGELA MEADOR'S TRAUMA RESPONSE AND NEED FOR PROTECTION

**Fawn-Freeze-Flight-Fight Trauma Response:** As detailed in my attached declaration, Angela Meador experiences severe fawn-freeze-flight-fight reactions as a direct result of the brutal assault perpetrated against her by Marton Csokas. This trauma response is evident in how the original assault occurred - she was held against her will for 3 days, physically confined, and had her leg severed with a knife by Csokas.

**Current Trauma Triggers:**

- Angela is unable to escape this traumatic response when Paul Barresi continues to contact her
- Barresi's threats to disclose the illegal recording retraumatize her and trigger these survival responses
- She remains in constant fear of the gun-to-head assault recurring and potential retaliation from Csokas

Angela takes these threats very seriously due to the extreme violence she previously experienced

**Police Protection Required:** On March 31, 2025, Angela required police protection, which I fully support. The T-Mobile records show that Barresi made 26 calls to Angela on this same day, demonstrating how his harassment directly correlates with her need for law enforcement protection.

**Christina Taft (Reporting Party):**

- Too afraid to remain in one location due to Barresi's systematic stalking and threats
- Forced to continuously flee from city to city to escape ongoing harassment and intimidation
- Prolonged stalking has caused horrific financial damages from constant relocation and security measures
- Traumatized by fear for Angela's life and wellbeing, which Barresi uses as coercion against me
- Unable to effectively support witness Angela due to Barresi's criminal exploitation of our friendship; could not communicate with her, and any positive communication sees retaliation from Barresi and Defendants
- Subjected to ongoing psychological warfare designed to strip away autonomy and right to safety
- Living in constant fear that something could happen to Angela, which forces me to continue fleeing from place to place
- Financial and emotional damages from privacy violations and forced displacement

## CRITICAL UPDATE - JULY 7, 2025 DAVIDSON COUNTY CONTACT

This contact occurred after I had provided Angela her own phone records documenting Paul Barresi's stalking and systematic illegal recording of her, and after I had informed Meador she can

file a Courtesy Report that can be forwarded to the Rancho Cucamonga Sheriff's Department. This suggests that Angela is still providing clues that she needs help, despite her traumatized state. This timing suggests that providing Angela with evidence of her victimization has triggered further law enforcement involvement, highlighting the urgent need for California authorities to act on these criminal violations. CALIFORNIA PENAL CODE 632 VIOLATIONS - ILLEGAL RECORDING AND SYSTEMATIC STALKING

**Illegal Recording Violations, Illegal Disclosures, and Stalking:**
I made the first illegal recording of a confidential phone conversation with assault victim Angela Meador while I was located in Los Angeles, California - I already explained that the person that supported these recording practices has a heavy criminal background that any officer in California can lookup. It was inadvertent and I never wanted Barresi or Csokas to harm Angela or any harm to her at all. She needs justice, freedom, and protection.

**Paul Barresi then illegally obtained this recording and uses it for coercion through unauthorized disclosures in violation of California Penal Code Section 637.**

Additionally, **Barresi has been making other illegal recordings of Angela using his automatic phone recording application** during his systematic stalking calls (297 calls in one year vs. Angela's 12 return calls), violating California Penal Code Section 646.9 (Stalking). I am not being prosecuted for my illegal recording because I was the victim of Barresi's unauthorized disclosures, not the perpetrator of the disclosure crimes.

**Systematic Stalking Through Excessive Phone Calls:** T-Mobile phone records demonstrate that Paul Barresi made **297 incoming calls to Angela Meador in one year** (June 2024 to June 2025), while Angela only called him back 12 times. This massive disparity is a clear pattern of harassment and stalking behavior.

**Critical Pattern Evidence:**

- **March 26, 2025:** Barresi made 9 calls to Angela on the same day I attempted to have her served with a witness subpoena
- **March 31, 2025:** Barresi made 26 incoming calls to Angela when she required police protection (which I fully support)
- **Ongoing surveillance:** Pattern shows increased calling whenever Angela attempts to seek help or cooperate with legal proceedings

**BACKGROUND - ONGOING CRIMINAL PATTERN**

This June 20, 2025 disclosure is part of a documented pattern of criminal violations by Paul Barresi spanning from October 2022 to present (2025), including:

**Previous Unauthorized Disclosures:**

- December 31, 2024 - Disclosure immediately resulting in coercion and retaliation
- Multiple incidents throughout 2023-2025
- Pattern of using illegally recorded recordings for coercion and intimidation

**Barresi's Re-creation of "Held Hostage" Environment:** Paul Barresi's criminal conduct systematically recreates the same "held hostage" environment that Angela originally experienced during the Csokas assault. Through his illegal recordings and systematic harassment, Barresi continues to trigger Angela's trauma response where she feels she has no autonomy over her own life or statements. Just as Csokas physically held her captive for three days, Barresi now psychologically holds her captive through:

- **Weaponizing the illegal recording** to control her ability to speak freely
- **297 stalking calls** that mirror the persistent contact used during her original captivity
- **Threats of disclosure** that recreate the same powerlessness she felt when physically confined
- **Removal of her autonomy** over her own words and experiences, exactly as occurred during the assault

This pattern shows Barresi is deliberately maintaining Angela in a state of psychological captivity, triggering the same fawn-freeze-flight-fight responses that were established during her original trauma. Angela remains unable to exercise control over her own life and statements because Barresi continues to exploit the very recordings that document her victimization.

**Context of Barresi's "Hostage-Like" Psychological Operation Between Taft and Meador:** The Sheriff's contact occurred in the context of Barresi's systematic stalking campaign - 297 calls to Angela in one year versus only 12 return calls from her - demonstrating his creation of a "hostage-like" trauma situation. Barresi deliberately exploits the relationship between Angela and myself, using our mutual care as a weapon to maintain psychological control over both victims. He has weaponized our friendship to create an impossible situation where Angela feels she cannot seek help without implicating me, while I cannot abandon her to continued victimization.

The timing of this Davidson County contact - immediately after providing Angela with evidence of Barresi's crimes and information about reporting options - suggests that even in her traumatized state, Angela recognizes she needs law enforcement intervention. This timing highlights the urgent need for California authorities to act on these criminal violations before Barresi's psychological warfare causes further harm.

**Legal Violations:**

- **Penal Code Section 637** (Disclosure): Prohibits disclosure of recorded telephone conversations when disclosing party was not participant in original conversation
- **Penal Code Section 632** (Eavesdropping): Intentional recording of confidential communications without consent of all parties

**DETAILED ASSAULT BY MARTON CSOKAS**

**Defendant Information:**

- **Marton Csokas** (also known as "Mr. X" in witness interviews)
- **Residence:** California (specific address: 1130 5th AVE, Venice, California 90291)
- **Phone:** (424) 901-3738

**April 2015 New Orleans Assault:** According to witness statements and my declaration, Marton Csokas perpetrated a horrific three-day assault against Angela Meador in New Orleans:

- **Deceptive Contact:** Csokas initially contacted Angela through dating sites using false identity and photos
- **Kidnapping:** Lured Angela to New Orleans under false pretenses where she discovered his true identity
- **Physical Confinement:** Held Angela against her will for three consecutive days
- **Drugging:** Overpowered Angela with an unknown substance that left her incapacitated
- **Sexual Assault:** Multiple instances of rape and sexual violence while she was helpless
- **Physical Violence:** Beat and tortured Angela throughout the three-day period
- **Knife Attack:** Used a knife to sever Angela's leg, causing serious bodily injury requiring medical treatment
- **Forced Confinement:** Locked multiple doors to prevent her escape and forced her into small confined spaces
- **Unauthorized Recording:** Filmed the assaults without consent while Angela was stripped and defenseless

**Post-Assault Retaliation Campaign:** Following the assault, Csokas implemented systematic intimidation to silence Angela:

- **Gun-to-Head Threats:** Used armed associates who pointed guns at Angela's head and threatened to kill her if she reported the assault
- **Death Threats:** Made explicit threats against Angela's life if she spoke about what happened
- **Surveillance:** Employed private investigators to track and monitor Angela's movements
- **Ongoing Intimidation:** Harassment continued "almost every day" for "the first year and a half to two years"

**IMPACT ON VICTIMS**

**Angela Meador (Victim-Witness):**

- Assault victim afraid to identify her attacker due to fear of retaliation
- Traumatized by repeated unauthorized disclosures of sensitive content
- Unable to seek help due to Barresi's use of illegal recording for coercion
- Requires immediate protection and support

**EVIDENCE AVAILABLE**

- Documentation of June 20, 2025 disclosure
- Text messages showing Angela's fear and lack of consent
- Previous evidence submissions (USB drives with documentation)
- Witness declarations from multiple parties
- Phone records showing pattern of harassment

**CRIMINAL PENALTIES**

These violations are "wobbler" offenses that may be charged as misdemeanors or felonies:

- **Misdemeanor:** Up to 1 year county jail and/or $2,500 fine per violation
- **Felony:** Up to 3 years imprisonment and/or $2,500 fine per violation
- **Repeat Offender:** Up to $10,000 fine per violation

**URGENT REQUEST FOR ACTION**

I respectfully request that the San Bernardino County Sheriff's Department:

1. **Initiate immediate criminal investigation** into the June 20, 2025 disclosure
2. **Interview Angela Meador** as victim-witness ███████████
3. **Collect and preserve evidence** of the unauthorized disclosure

4. **Forward findings** to the District Attorney's Office for prosecution
5. **File appropriate criminal charges** based on the evidence
6. **Provide protection** for both victims from ongoing harassment

### WITNESS CONTACT INFORMATION

- **Angela Meador (Primary Victim-Witness):** ▮▮▮▮▮▮▮▮▮
- **Heather Cohen (Licensed PI):** 931-797-3868
- **Ian Herndon:** ▮▮▮▮▮▮▮▮
- **Molly Beaton:** ▮▮▮▮▮▮▮▮

### DEFENDANT INFORMATION

#### Paul Barresi

- Phone: 908-656-5712
- Email: paulbarresi@aol.com
- Address: 9648 Nova Place, Rancho Cucamonga, CA 91730
- YouTube: @paulbarresi9713, @paulbarresi705
- Twitter: @paulbarresi1

### CONCLUSION

The June 20, 2025 unauthorized disclosure represents a continuation of Paul Barresi's criminal pattern of violating California privacy laws. Angela Meador desperately needs protection and support to break free from this cycle of intimidation.

 I am also a victim who has lost countless funds and cannot continue fleeing from place to place. The repeated violations demonstrate willful disregard for California privacy laws and warrant immediate law enforcement intervention.

I am available for immediate interview and can provide additional evidence as needed. This situation requires urgent attention to prevent further harm to the victims.

**Respectfully submitted,**
Christina Taft


--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*

_____

**2 attachments**

📄 **Affidavit of Alejandro Hernandez 24-May-2025 21-40-52 Assaults, Gun, Life Fears Meador Content Risks.pdf**
1121K

📄 **Print 309 Mostly Incoming Calls Barresi to Angela - T-Mobile.pdf**
499K

# EXHIBIT  14

 Gmail

**Christina Taft <taftchristina.ceo@gmail.com>**

---

## Investigator to Interview Witness About Audio - Goodlessville, Tennessee

**Renee Brewer** <stillwatchpi@gmail.com>                         Mon, Mar 24, 2025 at 5:54 PM
To: Christina Taft <taftchristina.ceo@gmail.com>

After printing this, I realize, the statement between me and another person is too vague. The affidavit has to be very clear. Maybe I won't ask for this since we can't use your name. My attorney thinks even the recording is not going to hold up without names.


Thank you,
Renee Brewer
StillWatch Investigations
615-207-4115



On Sat, Mar 22, 2025 at 1:05 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
Hi Renee,

Having two copies for witness Angela Meador is good preparation.

She can further cross out any lines that she doesn't feel comfortable with at this time.

1st copy:

1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not consent to the recorded phone call being sent.
3. I did not consent to the recorded phone call being published, nor used, nor sent, by Defendant.

4. Mr. X is Marton Csokas. He assaulted me.

I think these 4 statements may work.


2nd copy:

1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not consent to the recorded phone call being sent.

3. Mr. X is Marton Csokas. He assaulted me.


Or you could flip between the two copies.


Would she like us to report to law enforcement to see if they can help somehow?

— I can also go back to my local fbi office in Hawaii and be interviewed again as well about this. Greg there recommended last year in early 2024 when I was interviewed them to file a lawsuit, so it was very difficult to get that filed in September 7 months ago. I've been trying to get preliminary injunctions

Thank you,
Christina Taft

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

On Sat, Mar 22, 2025 at 10:48 AM Christina Taft <taftchristina.ceo@gmail.com> wrote:
Actually what about this:

Hi Renee,

Thank you for speaking with me today. I think asking these 3 statements is all that's needed.

See if she could notarize these 4 sentences?

1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not consent to the recorded phone call being sent.
3. I did not consent to the recorded phone call being published, nor used, nor sent, by Defendant.

4. Mr. X is Marton Csokas. He assaulted me.

I think these 4 statements may work.

Can you ask at the end if she'd like us to report to local law enforcement there if they can help in anyway?

I can't check paragraph 3 but I think it's clear.

I think it will help to have the 3 devices to see if they'll work and the witness with you.

Thank you,
Christina Taft

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

On Sat, Mar 22, 2025 at 10:47 AM Christina Taft <taftchristina.ceo@gmail.com> wrote:
Hi Renee,

Thank you for speaking with me today. I think asking these 3 statements is all that's needed.

See if she could notarize these 4 sentences?

1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not send the recorded phone call to Defendant.
3. I did not consent to the recorded phone call being published, nor used, nor sent, by Defendant.

4. Mr. X is Marton Csokas. He assaulted me.

I think these 4 statements may work.

Can you ask at the end if she'd like us to report to local law enforcement there if they can help in anyway?

I can't check paragraph 3 but I think it's clear.

I think it will help to have the 3 devices to see if they'll work and the witness with you.

Thank you,
Christina Taft

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

On Fri, Mar 21, 2025 at 6:56 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
Yes!! Thank you so much Renee.

I didn't know that there were all female private investigator firms in Tennessee. I had never looked in the area about it.

I forwarded what I requested Heather to do. It is rather succinct like 3 things to confirm.
1) audio without consent, did not send the audio, its use without consent
2) Mr X is actually Marton Csokas who assaulted her…

I would be so grateful! I had to be interviewed by the fbi multiple times in early 2024, and I was the victim then of defendant.


*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*


On Fri, Mar 21, 2025 at 6:43 PM Renee Brewer <stillwatchpi@gmail.com> wrote:
> Yes, I can go over there and talk to her if it will be productive.
>
> Thank you,
> Renee Brewer
> StillWatch Investigations
> 615-207-4115
> https://linktr.ee/stillwatchrenee
> Please Review us on one of our Tennessee Google Business Profiles:
> StillWatch Investigations Hendersonville
> StillWatch Investigations Nashville Green Hills
> StillWatch Investigations Clarksville
> StillWatch Investigations Selmer
>
>
> On Fri, Mar 21, 2025 at 7:27 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
>> Hi Renee,
>>
>> Are you feeling better now?
>>
>> Another PI from TN went to Witness/Victim Angela's place and her recorder wasn't working (all static) which she conveyed only happened one time before.
>> The pi thinks it could be intercepted.
>>
>> I'm wondering if you could go by and if your recorder would work???
>>
>> She didn't tell her that I'm her client.
>>
>> Witnesses and victims tried reporting to the police and fbi and it was all jumbled up (hence the nature of witness and victim tampering anyhow)…
>>
>>
>> Hi, a licensed PI reached Angela.
>>
>> Angela said she didn't give consent for the audio being used by defendant and Angela asked if the PI worked for Mr. X, defendant or Molly.
>> Angela never said my name once
>>
>> However the audio by my investigator was all static, which the pi said only happened once before there in TN so she thinks it's interference 😳
>> Angela was shaking and scared, and wouldn't tell the pi who Mr X was.
>> My pi heather is going to do a notarized affidavit of what she observed
>>
>>
>> *Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
>> *LinkedIn*
>>
>>
>> On Wed, Mar 19, 2025 at 3:16 AM Renee Brewer <stillwatchpi@gmail.com> wrote:
>>> Yes, I have the flu. Went to the doctor yesterday and now I feel better. I'm not 100% but I hope to be by Friday. I can talk on the phone today or tomorrow. If you can call me around 11 am today that would be great.

Thank you,
Renee Brewer
StillWatch Investigations
615-207-4115
https://linktr.ee/stillwatchrenee

On Tue, Mar 18, 2025 at 10:50 AM Christina Taft <taftchristina.ceo@gmail.com> wrote:
  Hi Renee,

  Did you receive my last message?

  Can we please talk on the phone at 212-718-1003 ?

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*

On Mon, Mar 17, 2025 at 5:43 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
  Hi Renee!

  This is a relief to hear from you!

  I think your team is the best for this, as Angela Meador is an assault victim that's been coerced for years,
  and now to call the assaulter "Mr. X" in a filing instead of his name.

  She's not violent - the Defendant in my larger case has, what 2 declaring witnesses and I believe, coerced
  her to make false statements by taking the audio recording of the call between her and me (see attached
  verbatim NRCA transcription versus what I will send you which contracts the statement filed).

  This was Angela before this:

  2014 Article Meador at Law School in Florida (News): https://myfox8.com/news/woman-groped-on-airplane-
  shares-her-story "Police say Zachary Johnson, 33, inappropriately touched Angela Meador, 31, on a flight
  from Orlando to Nashville Wednesday, reported WSMV."
  2010 Angelea Meador Lawsuit against Nashville Stores: https://casetext.com/case/meador-v-nashville-
  shores-holdings-2 "Plaintiff would state that she was retaliated against and terminated for reporting sexual
  harassment in the workplace. " Meador v. Nashville Shores Holdings, LLC, No. 3:10-0904, 3 (M.D. Tenn.
  Nov. 30, 2010
  I never really looked into her before because of the recording being used. Looks like she used to do a lot of
  cases against sexual harassment, retaliation, and assault.

  Can you please not tell her that I'm your client or that you are on my behalf?
  I know you can't say you're in law enforcement, but it worked before with a tampered witness in audio
  (actually a family member of mine) when the PI in 2023 approached him without saying he's on my behalf.

  Often these people need some clarification and away from being coerced to say things they don't really
  mean to be ending, so to speak, but Defendant records and edits to force them (and me, until my lawsuit).

  The filing is public now, so it would be easy to establish.

  Multiple victims over years have reported to the police and FBI, but it's so jumbled without concise clear
  help.

  This might be an opportunity to free us…

  I will show you more documentation of the different statements.

  Sincerely,
  Christina Taft

  *Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
  *LinkedIn*

On Mon, Mar 17, 2025 at 3:45 PM Renee Brewer <stillwatchpi@gmail.com> wrote:
> Yes, I would be happy to help, is this person violent?

Basically, we would charge $180 for the interview and the recording to be sent over that would include an
affidavit if required.
Renee

On Mon, Mar 17, 2025 at 7:36 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
> Hello Renee,
>
> I have a U.S. District Court case, and I need an interview of a witness named Angela, about an audio
> recording (a call of us together) being used against their/our permission.
> It can be a short confirmation of her lack of consent -- if she tells you that the recording is used against
> her consent, that is helpful too.
>
> There's witness interference by the Defendant, and although this witness was a notary and a law
> student, there are statements that contradict the recorded call (from July 2022 -- this has been going on
> for 3 years, where Defendant in the case took the recorded call of us to exploit, and I have a tro
> against the Defendant) and contradicts our text messages, as well as a few emails, in a non-notarized
> statement-- calling the person that assaulted her "Mr. X" (nameless).
>
> I should have reached out before to PIs in Tennessee, but since I'm also in the call, I have been really
> coerced.
> The call contains discussions on obstruction, abuse, assaults, and some sensitive issues hence more
> coercion.
>
> I'm in Hawaii, and would greatly appreciate this help
>
> ANGELA MEADOR
> GOODLETTSVILLE, TN 37072-████(DAVIDSON COUNTY) (10/15/████ to 03/14/2025)
>
> Thank you,
> Christina Taft
> 212-718-1003
>
>
>
> --
> *Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*

# EXHIBIT  15

Case 5:24-cv-01930-TJH-DTB Document 90 Filed 07/28/25 Page 40 of 57 Page ID #:4320

 Gmail

Christina Taft <taftchristina.ceo@gmail.com>

---

## Process Servers Correspondence & Documentation (Taft/Meador Goodlettsville PD)

**Christina Taft** <taftchristina.ceo@gmail.com>                                 Mon, Apr 21, 2025 at 8:27 AM
To: Brian Matthews <bmatthews@goodlettsville.gov>, Abigail@ruddlawoffices.com

Dear Lieutenant Matthews and my Lawyer Abigail,

Here is information related to Process Serving and Conduct of good intent, professionalism, and good will for a Subpoena to a Witness Angela Meador. In 2 prior inquires where I show instructions to care about rights, to have politeness, and even to help Angela in reporting to law enforcement.

I have been a process server in Hawaii since Mid-December 2024 (5 months) and my legitimate Hawaii case: 3DSS-25-0000044 helped due process and 28 witnesses were subpoenaed, helping official notice of being a witness and communication.
From PI/server Shaun Craven request: Incident/ case number is 25-00527 at Goodlettsville PD.

Correspondence and Documentation is attached with Process Servers and Cohen, Brewer, showing the professionalism and good intent.

 In the other threads, I will continue trying to complete my reports of why this witness is being coerced and why I and her have been, which I intend to report to the fbi - however this portion about me and process servers isn't their interest, but their interest is on why Angela is actually afraid from Csokas/Defendant (which is not because of me in any reasonableness or from professional servers instructed to be polite and nice).

**On March 29 I sent a general email, asking NAPPS servers to Schedule an Appointment with the witness:**
"I need to serve a Subpoena to a Witness in Goodlettsville, TN. Are you able to call first to schedule an appointment with the witness, and to provide a cover letter to them as well?
I saw you on NAPPS
The witness/victim has further been Subpoenaed as a Witness to testify in my case in Hawaii --
The Clerk issued the subpoena to the witness Angela Gayle Meador in Nashville, Tennessee
If you could talk to them more about them helping to obtain injunctions, I would be grateful.
Restraining order case, Taft v Barresi
3DSS-25-0000044
Goodlettsville "

**On March 30th, I wrote to Marcus Watson from NAPPS that the Return of Service from Hawaii allows Recipients to Sign and " if politely and kindly informing the respondent of their rights, then they're more likely to sign the 2nd page." -**
"Thank you so much! According to court recently, she needs this official notice to be a witness, in a subpoena issued by the clerk.
Angela Meador
Singer, Model, Former Lifeguard, TN, Marton Csokas Assaulted Her, Exploited By Defendant
██████████████
She's had the same phone number since 2022.
See my phonebook attached. I will also send you WeServeLaw helping me with her current address in Goodlettsville - where she lives with her parents.
Hawaii's 3rd circuit further has a Return of Service page where the receiver can sign acknowledgment on the 2nd page —- (attached)
https://www.courts.state.hi.us/self-help/courts/forms/hawaii/district_court_forms
Usually, as I'm a process server in Hawaii since December, if politely and kindly informing the respondent of their rights, then they're more likely to sign the 2nd page.
If you could please give the subpoena to her by tomorrow — it seems she's always at her house recently and her parents have been receptive to who's asking for her —
Then I can file the Return of Service right away before my hearing!"

**Marcus Watson simply wrote on March 30th:**
"Christina-
I just Spoke to her on the phone she is out of town. I spoke to my server earlier and he can't attempt tomorrow, Sorry we can't help you serve this. Have a great day and a great weekend."

- I asked multiple times for Marcus to say anything else about this conversation, like if Angela said if she wanted the subpoena, and never had any other replies.

**To Tracy Kroft, a NAPPS Server, on March 30th, I further reiterated rights, politeness:**
"Hello Server,
I hope it goes well for serving the subpoena for a witness Angela Meador to speak from Hawaii..."
"Usually, as I'm a process server in Hawaii since December, if politely and kindly informing the respondent of their rights, then they're more likely to sign the 2nd page."

Tracy left a message for her and a text identifying himself:
"This is what I sent her:Hi Angelina. I am Tracy with TracerX Legal. I have some documents from Hawaii I need to get to you tomorrow. When would a god time be for that?"

The reason I asked Process Servers to do appointments is because I've met with respondents many times in Hawaii for an easier process. I work for Mark Ackrich, who is listed with the sheriff and dept of public safety, as Civil Sheriff.

- Tracy tried to serve at 1pm and 7pm on the 31st of March. He spoke with Officer Bourk and showed him the documents. Officer Bourk actually told him the first time to try again later when Meador may be awake, which Tracy then did so.
- On April 2nd Tracy tried one other time, at 5pm, and all was quiet.

On April 2nd, Philip Hamilton, a young adult process server from Virginia also from NAPPS, sent the Subpoena of a Witness via Email, on April 10th-12th he Mailed the Subpoena and cover letters. He also had served a Co-Defendant in DC and Florida, the Defendant's family (as ordered by Judge Bristow, who still denies publication) in the Northeast, and 2 other witnesses in Michigan and Virginia/Georgia in email.
Philip stated he would provide a statement letter on his good intent, professionalism, and good will this Monday.

Tracy delivered documents, oppositions, and witness declarations to Lt Matthews at Goodlettsville PD on April 7th.
After April 11th, 2025, after on the 8th the District Judge Terry Hatter already Denied Defendant Barresi's attempt to stop any communications with this Witness -- as well as stated there wasn't a full name or hand signature and that there was nothing inappropriate by Heather or Renee --
In retrospect, since November 2024 to Present, I've tried to protect witnesses from the Defendant in my US District case, with 7 witnesses in a pending motion.

- On April 11th, NAPPS and PI Shaun Craven delivered the Subpoena in an envelope, in the Morning.
- No more attempts to get a personal delivery would be done.
- On April 14th, CMI Legal/Jamie accidentally had Bryant serve by Posting (which is not a successful personal service for Hawaii, so therefore, serving failed and it's shown that the rights to serve a witness was denied). It was fully daytime.

**Servers (Philip, Craven, CMI Legal) Delivered and Mailed These Documents with the Clerk Issued Subpoena:**
Attached to Service:
Cover letter 1 - Dear Angela Meador.pdf (109K)
Note to Angela Meador with Subpoena to Witness from Christina Taft.pdf.pdf (64K)
Text Messages Give to Angela with Subpoena Witness.pdf (1,771K)
Subpoena Angela Meador Witness - Hawaii restraining case against Defendant (2).pdf (414K)
Email Enthusiastic Support and Inquiry About Angela Gayle's Music Career.pdf (332K)

On March 31, 2025, I sent Cease and Desists to both Renee and Heather, and moved over instead to Process Serving with a Subpoena to a Witness. They hadn't had any contact anyhow since the first times. -- I didn't want Heather to go back to ask Angela. I wanted an uninterfered testimony from Heather and I also didn't want Heather scared by the Defendant Barresi's retaliation, especially when I've seen

Defendant's lawyer's Melissa Lerner's responses which at first made me tremble and cry as being pro se. Lerner further is very interested in perjury and forcing reactions.


**March 18 I asked Heather Cohen to ask about Angela Meador's Rights:**
"I think having that:
(1) the call recording is being used without her consent
(2) if she can name Marton Csokas as the one that assaulted her, not Mr X
At least (1) would be the most helpful. If (2) that's even more helpful as it shows Defendant forced her to retract the name of her abuser and coerced statements from her using the audio recording he has without her consent
If please with (1) Angela Meador can confirm that she did not send the recording of the call to anyone else or a specific person.
Do not name the defendant please, just the assaulter of her Marton Csokas, After if (1) can be confirmed about the call recording against her consent (use and sending of it).
She could even think there's a police or fbi investigation since many of us reported to law enforcement but everything was so jumbled up."


Heather is very honest and her Declaration, hand-signed, is attached and she's very cooperative -- she's also the only one that talked with Meador before the Defendant Barresi's interference.
As shown prior, Heather indicated that Meador said I could contact her directly, which I listened to with kindness and support. She further expressed concerns.


**March 22, 2025 I asked Renee Brewer if she could ask Angela Meador if she needed help to report to law enforcement:**
Can you ask at the end if she'd like us to report to local law enforcement there if they can help in anyway?
"Hi Renee,
Thank you for speaking with me today. I think asking these 3 statements is all that's needed.
See if she could notarize these 4 sentences?
1. I did not consent to the use of the recorded phone call between me and another person.
2. I did not send the recorded phone call to Defendant.
3. I did not consent to the recorded phone call being published, nor used, nor sent, by Defendant.
4. Mr. X is Marton Csokas. He assaulted me.
I think these 4 statements may work.
Can you ask at the end if she'd like us to report to local law enforcement there if they can help in anyway?"


Earlier I stated: "Multiple victims over years have reported to the police and FBI, but it's so jumbled without concise clear help."
Again I said after this email:
"Would she like us to report to law enforcement to see if they can help somehow?
— I can also go back to my local fbi office in Hawaii and be interviewed again as well about this. Greg there recommended last year in early 2024 when I was interviewed them to file a lawsuit, so it was very difficult to get that filed in September 7 months ago. I've been trying to get preliminary injunctions "


Renee provided me only 2 short videos from the patio. In one Renee is told "she will be right out" in a cheerful tone from Angela's mother?

 img_6203 2.mp4


I had bits and pieces of other information from Renee, like concerns from Angela about my finances, which I've tried to explain to Tracy and others that this is a 2022 issue -- It's where a turned witness from Defendant tried to get 25K from me in Oct 2022... as I wrote earlier, this became far worse to hundreds of thousands in 2023 and needing to report federally as it never would end with the threats to me and others, which is a separate subject from process serving.
-- I further heard some statement that sounded like a forced statement by Defendant Barresi, that I had seen before but when related to a different witness (which also wasn't true about that other person, who was served via mail and to their neighbor recently, a US District subpoena though).


That entire interaction is still very unclear to me. I keep hearing bits and pieces, including from others, and it hasn't been clear.

I've tried to have the best good intent, politeness, mercifulness, and kindness in this situation.

Sincerely,
Christina Taft

--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

---

**22 attachments**



**April11 Angela Calls Philip Back on Music Career Message.png**
303K



**Defendant Barresi Exhibit B - Blacks Out Affidavit from Renee to Angela.jpeg**
279K



**Message Philip Music Career Support to Angela.jpeg**
449K

📄 **Affidavit PI Cohen Re- Notarized Transcribed Call Used (Angela and Taft) Re- Inquiry.pdf**
142K

📄 **April2 - Philip Serving Witness Subpoena To Angela Meador Via Email.pdf**
444K

📄 **Case View 3DSS-25-0000044 - CHRISTINA TAFT V. PAUL BARRESI.pdf**
16K

📄 **Judge Hatter order, Success, Angela Did Not Sign - April 8 2025.pdf**
212K

📄 **April14 CMI Process Serving Subpoena to Witness in Goodlettsville, TN.pdf**
2429K

📄 **Craven [ServeManager] Job #13087400 Served.pdf**
49K

**March31, 2025 Cease and Desist by Taft to Heather Cohen.pdf**
97K

**April10-12 Philip Mailing Witness Angela Meador Subpoena & Cover Letters to Goodlettsville, TN.pdf**
2146K

**March31, 2025 Cease and Desist by Taft to Renee Brewer.pdf**
106K

**Marcus Serving Subpoena to Witness in Goodlettsville, TN.pdf**
69K

**Tracy - Serving Subpoena to Witness in Goodlettsville, TN.pdf**
94K

**March17-March 25 Renee Investigator to Interview Witness About Audio - Goodlessville, Tennessee.pdf**
2369K

**Subpoena Angela Meador Witness - Hawaii restraining case against Defendant (2) (1).pdf**
414K

**Cohen Declaration p.2 (3) (1).pdf**
2202K

**Cohen Declaration p1 (1).pdf**
2473K

**Taft Affidavit Renee Brewer.pdf**
4081K

**Cohen March 17-21 Inquiry with Taft on Angela, Csokas, No Consent Phone Recording.pdf**
2102K

**March26 - Renee Videos on Visiting Angela Meador - Tennessee.pdf**
616K

**Texts Tracy Kroft Process Server March 30-31.pdf**
701K

# EXHIBIT 16

 Gmail

Christina Taft <taftchristina.ceo@gmail.com>

---

# IMMEDIATE CESSATION OF ALL ACTIVITIES INVOLVING ANGELA MEADOR

**Christina Taft** <taftchristina.ceo@gmail.com>                Thu, May 29, 2025 at 6:12 PM
To: Melissa Lerner <mlerner@lavelysinger.com>, Megan Mallonee <mmallonee@lavelysinger.com>, Noelia Echesabal <nechesabal@lavelysinger.com>

Christina Taft
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Ceo.Taft@Rescue-Social.com

May 29, 2025

**TO: Paul Barresi**

**RE: DEMAND FOR IMMEDIATE CESSATION OF ALL ACTIVITIES INVOLVING ANGELA MEADOR**

Dear Mr. Barresi,

I am writing in response to the courtesy copy of my Second Amended Complaint filed in Case No. 5:24-cv-01930-TJH-DTB in the U.S. District Court for the Central District of California, Eastern Division, which was provided to you. This complaint details the extensive pattern of harassment, stalking, and civil rights violations you have perpetrated against myself and others, particularly Ms. Angela Meador.

I am providing you this final opportunity to voluntarily cease your harmful conduct. This letter serves as formal notice and demand that you immediately cease and desist from all activities involving Angela Meador.

As documented extensively in my Second Amended Complaint, your continued harassment, exploitation, and unauthorized use of materials involving Ms. Meador has caused severe harm to both Ms. Meador and myself, and constitutes multiple violations of state and federal law.

## IMMEDIATE CESSATION REQUIRED

You are hereby DEMANDED to immediately:

### 1. STOP ALL USE OF UNCONSENTED RECORDINGS

- Cease creating, distributing, or maintaining the unconsented recording of the phone call between Ms. Meador and myself
- Remove all copies of this recording from all platforms, websites, and media channels
- Destroy all copies of the recording in your possession or control
- Refrain from creating, distributing, or maintaining any other telephone recordings of Ms. Meador

### 2. REMOVE ALL VISUAL AND WRITTEN MATERIALS

- Cease creating, distributing, or maintaining any videos, photos, or imagery impugning Ms. Meador
- Immediately stop creating, distributing, or maintaining any written or audio materials impugning Ms. Meador, including but not limited to:
  - Texts
  - Letters
  - Emails
  - Posts
  - Any unauthorized disclosures

### 3. CEASE ALL CONTACT AND STALKING

- Stop any form of direct or indirect contact with Ms. Meador
- End all stalking behavior related to Ms. Meador
- Cease any surveillance or monitoring of Ms. Meador's activities

## LEGAL BASIS FOR DEMAND

As detailed in my Second Amended Complaint, your actions constitute clear violations of:

- California Penal Code §§ 632 and 637.2 (Unauthorized Recording and Disclosure)
- Invasion of Privacy (Intrusion into Private Affairs and Conversations)
- California Civil Code § 3344 (Unauthorized Use of Voice, Name and Likeness)
- Civil Harassment (California Code of Civil Procedure § 527.6)
- Stalking (California Civil Code § 1708.7)
- Tom Bane Civil Rights Act (California Civil Code § 52.1)
- Federal RICO violations (18 U.S.C. §§ 1961-1962)

## CONSEQUENCES OF NON-COMPLIANCE

**IF YOU DO NOT IMMEDIATELY COMPLY WITH THESE DEMANDS, I WILL BE FORCED TO CONTINUE FILING ADDITIONAL LAWSUITS** to protect Ms. Meador's rights and my own. My Second Amended Complaint demonstrates my commitment to pursuing all available legal remedies, including:

- Statutory damages under California Penal Code § 637.2
- Compensatory damages exceeding $2,000,000
- Punitive damages for willful violations
- Permanent injunctive relief
- Attorney's fees and costs
- Treble damages under applicable statutes

Your exploitation of Ms. Meador's trauma and our private communications has caused immeasurable harm. As documented in my complaint, Ms. Meador has been forced into hiding, her music career has been derailed, and she lives in constant fear due to your actions. This must end immediately.

## TIME SENSITIVE DEMAND

You have **TEN (10) DAYS** from receipt of this letter to comply with all demands set forth herein. Your failure to comply will result in immediate continued legal actions and maximum damages allowed by law.

**This harassment campaign against a vulnerable assault victim and myself ends now.** Comply with these demands immediately, or face the full consequences of continued litigation.

Sincerely,

Christina Taft
*Pro Se Plaintiff*

**CC:**

- U.S. District Court, Central District of California
- FBI (Case References on File)
- California Department of Consumer Affairs

---

*This letter constitutes a formal legal demand. Your actions are being documented for use in current and future legal proceedings.*

On Mon, May 26, 2025 at 4:14 PM Christina Taft <taftchristina.ceo@gmail.com> wrote:
Hello Ms. Lerner and Ms. Mallonee,

Attached are courtesy copies of the Second Amended Complaint against Defendant Paul Barresi and Certificate of Service

Sincerely,
Christina Taft

--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
LinkedIn

--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
LinkedIn

# EXHIBIT  17

11:04    5G 89

 **Paul Barresi** ✔ @PaulBarresi1 · Jun 21    ⊘  •••
Adam Waldman says Christina Taft Bat Shit Crazy


II  1:14

💬 4     ↻ 4     ♡ 54     ᯅ 1.1K     🔖  ⬆

↻ **Paul Barresi reposted**

 **Paul Barresi** ✔ @PaulBarresi1 · Jun 20    ⊘  •••
Replying to @adam_waldman
Hello Adam- Some might say crazy Christina Taft is behind your break-in. Despite a Warrant in TN, crazy Christina is terrorizing my key witness Angela Gayle in the federal case the LIAR filed against you and me.


▶ 2:17

💬 2     ↻ 4     ♡ 22     ᯅ 1.2K     🔖  ⬆

↻ **Paul Barresi reposted**

 **Paul Barresi** ✔ @PaulBarresi1 · Jun 19    ⊘  •••
Replying to @hannuhu
Can you imagine what Grace Kelly would think

 

x.com

# EXHIBIT  18

 **Gmail**

**Christina Taft <taftchristina.ceo@gmail.com>**

## Ex Parte on Time for Adam Waldman

**Christina Taft** <taftchristina.ceo@gmail.com>                 Wed, Jul 23, 2025 at 1:48 PM
To: Melissa Lerner <mlerner@lavelysinger.com>, Megan Mallonee <mmallonee@lavelysinger.com>

Hello Ms. Lerner and Ms. Mallonee,

I need to extend time to serve Adam Waldman who Defendant Barresi illegally/unconsentedly recorded, as
Barresi does to lawyers of actors.

Defendant Barresi probably illegally recorded Marty Singer as well very likely according to California and
federal laws, with disclosures of telephone calls, penal 632 and 637.

I am asking if you would oppose or support or no response about extending time to serve Adam Waldman in
Palm Beach, Florida,
since he moved after 30 years in DC to there in December-January 2023 and 2024.

Adam is interested in media and probably it was unexpected that he was unconsentedly recorded.

My Victoria Taft tribute article in Associated Press disappeared in 2023 along with Stallone and former clients
harmed by Barresi pulling both ends.

Concurrently, Adam moved regions and states one year after I tried finding refuge in Hawaii from California.
When Adam moved to Florida in December 2023 I started moving to France at the same time, however I'm
not a public figure.

Sincerely and Merci,
Christina Taft

*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
*LinkedIn*

# EXHIBIT  19

☑ **Subpoena or** ☐ **Subpoena Duces Tecum; Exhibit A**                    Form# 3DC49

| IN THE DISTRICT COURT OF THE THIRD CIRCUIT |
|---|

**NORTH AND SOUTH HILO** __Division__

**STATE OF HAWAI'I**

Plaintiff(s)
 CHRISTINA TAFT

**Electronically Filed
THIRD CIRCUIT
3DSS-25-0000044
28-MAR-2025
12:30 PM
Dkt. 91 SUB**

Reserved for Court Use

Civil No.  3DSS-25-0000044

Defendant(s)
 PAUL BARRESI

Filing Party(ies)/Filing Party(ies)' Attorney (Name, Attorney Number, Firm Name (if applicable), Address, Telephone and Facsimile Numbers)

 Christina Taft, Pro Se
 747 Laukapu St
 Hilo, Hawaii 212-718-1003

Name and Address of Witness:
 ANGELA GAYLE MEADOR
 (Street of Witness Hidden for Protection)
 Nashville, Tennessee

Date & Time:
 Upcoming Trial for Restraining

Location To Appear:
 Zoom for Courtroom 2C
 777 Kilauea Avenue
 Hilo, Hawaii 96720-4212

☑ **SUBPOENA OR** ☐ **SUBPOENA DUCES TECUM**

**THE STATE OF HAWAI'I TO ANY OFFICER AUTHORIZED BY LAW TO SERVE SUBPOENAS IN THE STATE OF HAWAI'I** YOU ARE COMMANDED to subpoena the individual named above.

This subpoena/subpoena duces tecum shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the above-entitled Court permits, in writing on this subpoena/subpoena duces tecum, personal delivery during those hours.

**TO THE WITNESS**

YOU ARE COMMANDED to appear at the time and place indicated to testify as a witness on behalf of the

☑ **PLAINTIFF(S)**    ☐ **DEFENDANT(S)**

who shall be responsible to provide you with a fee for attendance and mileage allowed by law.

☐ You are further ordered to bring with you the items listed in Exhibit A.

☐ You are required to designate a representative of your organization to testify for the organization on the following matters:

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT.**

Date:  **MAR 2 8 2025**    Clerk of the above-entitled Court    T. ENOS-GODINEZ

In accordance with the **Americans with Disabilities Act** , and other applicable State and Federal laws, if you require an accommodation for your disability when working with a court program, service, or activity please contact the District Court Administration Office at PHONE NO. (808) 961-7424, FAX (808) 961-7411, or TTY (808) 961-7422 **at least (10) working days before** your preceeding, hearing, or appointment date.
For all Civil related matters, please call or visit the District Court at: Hilo Division, 777 Kilauea Avenue, Hilo, Ph. (808) 961-7515 • Kohala Division, 67-5187 Kamamalu Street, Kamuela, Ph. (808) 443-2030 • Kona Division, 79-1020 Haukapila Street, Kealakekua, Ph. (808) 322-8700.

**SUBPOENA**

I certify that this is a full, true and correct copy of the original issued from this office.

Clerk, District Court of the Above Circuit, State of Hawai'i

CommonLook®
508 Certified
Reprographics (09/09)

3D-P-301

# EXHIBIT 20

NEWS    VIDEO    LIVE    SHOWS    CORONAVIRUS    JAN. 6 RIOT        LOG IN

# Hollywood 'Fixer' Now Has Some Celebrities Fearing the Worst

By ABC News
February 17, 2008, 6:50 AM • 6 min read

Feb. 16, 2006 — -- In a town that's no stranger to scandal, this might be one of the biggest -- a massive wiretapping scheme that might reveal Hollywood's darkest secrets and implicate some of the leading lawyers in show business and their celebrity clients.

It all centers on the actions of one man -- private eye to the stars Anthony Pellicano.

The 61-year-old came out of Chicago with a reputation for tough tactics and a knack for getting the dirt on just about everybody. Pellicano was the quintessential Hollywood gumshoe, boasting a client list that read like a who's who: John Travolta, Farrah Fawcett, Kevin Costner, Tom Cruise and Arnold Schwarzenegger among them.

"Pellicano is the last-resort guy, and no matter what you have to do to put a fire out for a celebrity, that's what you gotta do," said Paul Barresi, a former porn star and freelance private investigator who worked for Pellicano.

But other private investigators said that Pellicano employed some questionable tactics in getting information.

Private eye Richard DiSabatino, who has known Pellicano for more than a decade, put it this way: "He broke the law to satisfy his clients. And normal PIs don't do that."

### The Fixer

But Pellicano's wise-guy persona was tailor-made for Hollywood. His mystique actually became the stuff of movies. Travolta reportedly modeled the lead character in "Get Shorty" -- mob-guy-turned-movie-man Chili Palmer -- after him.

"He was very friendly with him. With ... Travolta," said DiSabatino. "You know the fact where, uh, Chili Palmer would always say, 'Look into my eyes'? Well, that was Pellicano's favorite saying."

**Top Stories**

Comedians react with horror at Will Smith's Oscar slap 
2 hours ago

Judge finds Trump 'more likely than not' committed obstruction in election effort
2 hours ago

Florida governor signs controversial 'Don't Say Gay' bill into law
2 hours ago

Germany: G7 rejects Russia's demand to pay for gas in rubles
2 hours ago

Florida officials fight back against rowdy spring breakers
3 hours ago




STANCE    Shop Stance® Now
Stance

● ABC News Live


24/7 coverage of breaking news and live events



**Eliminate Your Slice Forever**

Here's how Hank Haney eliminated 50 life-long slices using a revolutionary one-shot drill.

Performance Golf Zone

He called himself the "sin-eater" – the ultimate Hollywood fixer. But his own "sins" have landed him in trouble with the law. He has only served 2½ years in prison on weapons charges, and he's now facing a 110-count federal indictment for racketeering and conspiracy.

"What he did was basically set up wiretaps and listened in on people's communications that they believed were private without them knowing," said George Cardona, the U.S. attorney prosecuting the case.

According to prosecutors, Pellicano's gift for getting dirt was primarily a highly sophisticated illegal eavesdropping scheme. Pellicano allegedly paid two phone company employees thousands of dollars to help him listen in on Hollywood's secrets.

### Celebrity Secrets

With the reams of information Pellicano allegedly got from the wiretaps, he seemed able to solve clients' problems with ex-wives, business rivals and even the law. With his reputation on the rise, it seemed that everyone in show business with a crisis came calling.

When Michael Jackson was accused of molesting a 13-year-old boy in 1993, it was Pellicano who produced a tape he said proved the boy's family was trying to extort money from the pop star. Eventually, the family agreed to settle, and no criminal charges were brought against Jackson.

In 1991, when a British tabloid paid a woman $30,000 for her story alleging an affair with Kevin Costner, his lawyer hired Pellicano and the story was killed before it appeared in the United States.

During the messy public divorce of Tom Cruise and Nicole Kidman, Pellicano was on the case for Cruise. But unbeknown to Pellicano, DiSabatino was hired by Kidman.

"So I put her on scramblers immediately," DiSabatino said. "So that, uh, if there was anybody who was eavesdropping, it wasn't gonna happen."

DiSabatino said that some of the ugly headlines that surfaced around that time weren't an accident.

"What became very obvious was that he had a contact in one of the tabloids," he said.

Actually, Pellicano had several tabloid reporters on the payroll.

Paul Barresi, the first man ever to appear on the cover of Hustler magazine, worked as an investigator for Eddie Murphy's lawyer when the star was arrested for picking up a transsexual prostitute. (No charges were ever brought against Murphy.) Barresi also regularly freelanced for Pellicano.

"Whenever there was a damaging story involving a celebrity client that involved sex, then I was involved," Barresi said.

Barresi said that Pellicano hired him to "get dirt on" Sylvester Stallone. In addition, the the actor's phone was allegedly bugged by Pellicano when Stallone was in the midst of a bitter lawsuit over stock losses at Planet Hollywood.

"He may very well have wanted the dirt to use against Stallone. Maybe Stallone crossed him. I don't know. But I never asked questions," Barresi said.

### Not Above the Law

And Pellicano wasn't just getting the dirt and dishing it. There were also times when he allegedly got physical. When hired by billionaire financier Leonard Green to help with his divorce from his wife of five years, Jude

Green, she said he delivered his "beware" message in person.

"I pulled up at the dog groomer and this man blocked my car, I couldn't get out," said Green. "And then he came up to the window and thrust his face. I came out, and I asked him to move his car and he sort of like shoved me. No matter where I went that day, he was in my face blocking my car and constantly."

The experience was more than a little unnerving. "I just remember my heart beating out of my chest and really being terrified," she said.

Later, the FBI told Green that Pellicano had been monitoring her home telephone calls. And Green said there was more -- telephone threats, damage to her property's gate and more than once, she said, her car's brakes were tampered with.

"Pellicano had a reputation in Hollywood as a bully for hire," DiSabatino. "So people would hire him and they would like when he'd talk to people and threaten them."

Eventually, Pellicano got so big that even the future governor put him to work. The Schwarzenegger campaign, reeling from allegations of sexual harassment, asked Pellicano to investigate the actor's entire past to find every kind of claim an opponent might throw at him.

Barresi got the call. "Pellicano said to me, 'I want you to find out everything you can about Schwarzenegger. Get all the dirt you can,'" he said.

Pellicano bragged about the Schwarzenegger job, said DiSabatino.

"And I asked him, 'What was the outcome?' And he laughed. He said, 'The outcome is he shouldn't run for anything,'" said DiSabatino.

Pellicano, of course, got it wrong about the future governor. But perhaps a bigger mistake was that he began to believe his own hype.

In 2002, Pellicano allegedly threatened a Los Angeles Times reporter. The FBI raided Pellicano's office and found explosives, a detonator and hand grenades.

In 2004, Pellicano was sentenced to 30 months in federal prison for illegal possession of dangerous weapons. He was set to be released earlier this month -- until the wiretapping charges were handed down Feb. 6, after a three-year federal investigation.

Pellicano has pleaded not guilty to the charges, but he remains in custody.

Meanwhile, some big names in Hollywood are holding their breath. It seems the style that made this Tinseltown gumshoe so sought after just may be his undoing.

"He felt that he was untouchable," said Barresi. "And he also probably felt protected."

💬 Comments (0)    🔵f  🔵🐦  🔵✉

abc NEWS



**Tommy Chong: The Horrifying Truth About CBD**
Tommy Chong's CBD

**Goodbye Plastic, Hello Metal Credit Cards**
NerdWallet    Learn More

**Is this the most addictive World War 1 strategy game? Register and pl…**
Download on the App Store | …