Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CHRISTINA TAFT,<br><br>Plaintiff,<br><br>v.<br><br>PAUL BARRESI; ADAM R. WALDMAN; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 5:24-cv-01930-TJH (DTB)<br><br>[Hon. David T. Bristow, Magistrate Judge; Hon. Terry J. Hatter, Jr., District Judge]<br><br>**PLAINTIFF'S OPPOSITION MEMORANDUM BRIEF TO NON-PARTY WIITNESS ANGELA MEADOR'S EX PARTE APPLICATION**<br><br>*[Filed concurrently with Plaintiff's Responding Declaration and Exhibits 1-6; Additional Exhibits to Opposition Brief and Responding Declaration 7-20; Exhibits 21-23; Certificate of Service]*<br><br>Date: July 28, 2025<br>Time: Under Submission |

---

1

*PLAINTIFF'S OPPOSITION MEMORANDUM TO WITNESS MEADOR'S SUBMISSIONS*

# PLAINTIFF'S OPPOSITION TO NON-PARTY WIITNESS ANGELA MEADOR'S EX PARTE APPLICATION

Plaintiff Christina Taft submits this Opposition to the ex parte application filed by non-party, victim-witness Angela Meador.

The ex parte application appears orchestrated by Defendant Barresi and raises serious concerns related to witness intimidation, unauthorized disclosures of private communications, and retaliation tied directly to the conduct alleged in Plaintiff's lawsuit. Ms. Meador remains a key witness and victim in this action due to the illegal recording and repeated disclosure of a sensitive telephone call she participated in with Plaintiff. The contents of that call, including matters concerning assault, trauma, and personal safety, were later weaponized by Defendant Barresi, as reflected in the police reports and supporting exhibits. Plaintiff's reports to California law enforcement—especially Rancho Cucamonga Case No. RCR2506114—form the evidentiary foundation for her ongoing legal claims, and exclusion of Ms. Meador from the case would only serve to obstruct those claims and enable further abuse (Exhibits 7, 10, 12-13).

## I. Ms. Meador Is a Key Witness to Central Allegations Involving Illegal Recordings and Disclosures

Ms. Meador is not merely tangential to this case; she is central to the evidentiary record. The telephone conversation between Plaintiff and Meador, recorded and repeatedly disclosed without consent by Defendant Barresi, includes highly sensitive material including Ms. Meador's disclosures about being threatened with a gun following an assault by Marton Csokas. Ms. Meador later confirmed details of these events, as reflected in police reports and sworn declarations. Plaintiff has reported the unlawful use of this call to law enforcement, including via Report No. RCR2506114, and directly to Deputy Szulc of the San Bernardino County Sheriff's Department (Exhibits 7, 10, 12-13). Ms. Meador's account is corroborated by other declarants and evidence presented

---

to the Court, including the affidavit submitted by Alejandro Hernandez and Ian Herndon, who detailed steps of Csokas's assaults and retaliation (Exhibit 9).

## II. Ms. Meador's Participation in the Ex Parte Filing Raises Serious Concerns of Witness Tampering and Retaliation

It is highly concerning that Ms. Meador's ex parte filing coincides with Plaintiff's reports of increased coercion and fear—particularly related to the repeated appearance of 'Justin,' an armed guard previously identified in the Second Amended Complaint as acting on Barresi's behalf to intimidate both Plaintiff and Meador (Exhibit 3, Pg 10 of Plaintiff's declaration; Pg 5 of Exhibit 4 and Pg 45 of Meador's submissions). Defendant Barresi's use of an armed guard at Meador's home is an uncontroverted fact by both parties, and raises alarms to the situation and stress caused by Defendant. Meador raises concerns about guns in her ex parte, and when Plaintiff reviewed, it appeared these threats to her are occurring from Defendant Barresi's ideations and projections onto her wrongfully. Without communication, there isn't clarity, and Plaintiff requests communication.

To the contrary, Plaintiff requested NAPPS servers and only wanted professionalism and care when speaking with Meador or serving her. Force should never be used and only Defendant Barresi's personnel was armed. Process servers at the *National Association of Professional Process Servers (NAPPS)* are regular citizens, who serve witnesses regularly and can speak with both parties, that Plaintiff hoped would have eased Meador's fears (Exhibit 15, Exhibit 21, attached hereto). "NAPPS members assure a citizens right to due process and access to the legal system. To this end, a NAPPS member is committed to being accountable, reliable and valuable to their legal clients, **the courts and the parties and witnesses they serve**. Membership is on an individual basis, and each member is expected to adhere to **high ethical standards** and have a thorough understanding of the NAPPS Code of Ethics on which NAPPS prides itself." (About page of NAPPS, Exhibit 21). Plaintiff did not want to use the Sheriff to serve subpoenas.

Unlike Barresi, Plaintiff's investigators were licensed, and instructed to see if Meador needed help to report to law enforcement, and that she can cross out any statement of the 4 questions she didn't feel comfortable with (Exhibit 8, 14).

"Justin's" last name and his identity is not known to Plaintiff, with the exception of high-profile status which is anxiety and fear-inducing due to Defendant's previous threat of him to Plaintiff to keep her in one location (Exhibit 3). Plaintiff recalls Meador's anxiety and concerns when discussing in their call and in texts about issues of Barresi's freelancing, but most concerning is Barresi's focus on "Jane Does" (Mr. X, of identity contortions) with sexual assault cases and his infusion into media, (Exhibits 21, Texts Angela with Plaintiff). The texts between Meador and Plaintiff demonstrate she's an important witness to Plaintiff, as well as to financial abuse and extortion. Meador clarified to Taft it's Marton Csokas, her assailant, that she is most concerned with, and Defendant Barresi wasn't the identified man that threatened her with a firearm (Exhibits 21, Texts). Meador showed concern for Plaintiff's safety and Plaintiff shows sympathy to Meador in these texts. Defendant Barresi used "Justin" in association with Heard's name and security staff, to create false persecution ideation, making her question his existence on January 9, 2024, and if he was connected to Musk, which is an unhealthy dynamic to both Meador and Plaintiff, including their prior allegiances, even if supporting Johnny Depp (21). **Meador needs clarity if she's to feel safe**.

Last month, when Plaintiff raised concerns regarding Meador to Defendant's attorney Mallonee in their teleconference about their motion against the Claims of Relief of her Second Amended Complaint, Mallonee never responded to her concerns. Plaintiff's verbal requests and emails to not use the recorded telephone call between Meador and her and to not disclose it was ignored. This is neglectful and it should be noted that his attorneys did not assist her or Plaintiff to feel safe in these matters. Plaintiff shows protective requests to not use materials that harm Meador, or any artistic letters, emails (Exhibit 16).

Meador's application appears to reflect external pressure and fails to negate the involuntary nature of her earlier interactions with Defendant. Indeed, Plaintiff has documented efforts to encourage Meador to report directly to law enforcement and restore her autonomy, including Plaintiff's June 20, 2025 report to Deputy Szulc detailing Barresi's illegal disclosure of the call and subsequent use of its contents to manipulate and control both women (Exhibits 7-20).

The record reflects consistency in the central allegations—particularly with respect to the illegal recording, coercion, armed threats, and use of surveillance. Ms. Meador has not disputed these core facts. Defendant's own behavior confirms their authenticity, and Ms. Meador's statements, even if inconsistent in certain areas, must be weighed in light of the coercive environment documented by Plaintiff. The consistency across witness reports, declarations, and law enforcement filings undercuts any blanket discrediting of Ms. Meador's status as a witness-victim. Even if Ms. Meador appears to allegedly discredit her status/role, this is contradicted by the amount of incoming calls from Barresi to Meador, and the previous history of Barresi directing witness Rebecca Berry in phone calls, including on subpoenas and implications (Exhibit 23, "10 million conversation").

### IIII. Ms. Meador's Exclusion Would Hinder the Court's Access to Key Testimony and Enable Further Abuse

Plaintiff's Second Amended Complaint lays out a detailed history of Defendant's systematic pattern of psychological manipulation, retaliation, and illegal disclosures. Ms. Meador is a central victim of this campaign and an essential witness. Her removal from the evidentiary field would only benefit Defendant by silencing testimony that could establish liability. Plaintiff has consistently urged that Ms. Meador deserves protection and an opportunity to testify without fear. The Court should not allow the mechanisms of coercion—documented in multiple police reports, declarations, and affidavits—to be weaponized against a critical witness.

# CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Ms. Meador's Ex Parte Application in its entirety. Plaintiff further requests any relief deemed appropriate to prevent Defendant's continued manipulation of Ms. Meador in this matter.

In the interests of justice, it's vital to safeguard Meador's participation in this civil lawsuit, and the response by Defendant has intentionally harmed Plaintiff and intrinsically controlled Meador, and his counsel has been neglectful to not restore calmness. Plaintiff respectfully requests, that with the denial of the submissions that are procedurally incorrect, with good cause that Plaintiff tried to remedy those matters to provide kindness and restore clarity to no avail due to Defendant's interventions, that the court create mediation channels and safe channels where communication can be freely commenced, and that justice for both individuals is respected. Defendant's counsel must respect communications. The deliberate actions of Defendant creating needless anxiety and fear related to subpoenas and asking that Meador rightfully state her lack of consent of his use of recordings of her and Plaintiff, cannot continue to escalate to Defendant's control.

The Second Amended Complaint is a part of restoring freedoms, rights, and against the illegal recordings and unconsented disclosure that have harmed Plaintiff related to Meador. As an egalitarian and independent person, these issues highly distressed the Plaintiff, and Defendant has not restored both individuals.

A civil process should provide ways to restore clarity and safety for people. Dated in France: July 28, 2025

Respectfully Submitted,

/s/ Christina Taft
Plaintiff Christina Taft
Propria Persona

---

6

*PLAINTIFF'S OPPOSITION MEMORANDUM TO WITNESS MEADOR'S SUBMISSIONS*

# CERTIFICATE OF SERVICE
## CHRISTINA TAFT v. PAUL BARRESI, et al.
### 5:24-cv-01930-TJH-DTB

I, the undersigned, certify and declare that I am at least 18 years of age. I am a resident of the United States.

On July 28, 2025, I served a true copy of;
(1) PLAINTIFF'S OPPOSITION MEMORANDUM BRIEF TO NON-PARTY WIITNESS ANGELA MEADOR'S EX PARTE APPLICATION;
(2) EXHIBITS 21-23 TO PLAINTIFF OPPOSITION BRIEF MEMORANDUM;
(3) Additional Exhibits (7-20) for Forthcoming Opposition Brief and Responding Declaration (Docket 90)

**PROOF OF SERVICE**
  X   (By Electronic Transmission) I caused the document(s) described herein to be electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E)
  X   (By Delivery) I caused the document(s) described herein to be delivered to the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

| Melissa Yaffa Lerner<br>Megan Scott Mallonee<br>Lavely & Singer Professional Corporation<br>Attorneys At Law<br>2049 Century Park East, Suite 2400<br>Los Angeles, California 90067-2906 | *Attorneys for Defendant(s),*<br>Paul Barresi |
|---|---|

- By PACER and CM/ECF connected to case: Angela Gayle Meador, victim-witness in these related matters.

I declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.
    Dated in Antibes, France on July 28, 2025.

*Christina Taft*

Christina Taft

*Plaintiff in Propria Persona*

---
7

*PLAINTIFF'S OPPOSITION MEMORANDUM TO WITNESS MEADOR'S SUBMISSIONS*