Christina Taft
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Ceo.Taft@Rescue-Social.com
*Plaintiff in Propria Persona*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT<br><br>    Plaintiff,<br>vs.<br><br>PAUL BARRESI, ADAM R WALDMAN, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No.: 5:24-cv-01930-TJH-DTB<br><br>[Hon. Terry J. Hatter, Jr, District Judge]<br><br>**PLAINTIFF'S OPPOSITION BRIEF AND MEMORANDUM AGAINST DEFENDANT BARRESI'S MOTION TO DIMISS THE SECOND AMENDED COMPLAINT**<br><br>***[Filed concurrently with Declaration of Plaintiff in Support; Certificate of Service]***<br><br>Date: August 1, 2025<br>Time: Under submission |

# **TABLE OF CONTENTS**

**I.** INTRODUCTION ............................................................................7

**II.** FACTS ALLEGED IN THE SAC.................................................8

   **A.** Barresi Embedded Himself in Plaintiff's Life...........................8

   **B.** Defendants' Executed a Campaign of Coercion and Exploitation Against Plaintiff. ...............................................................................8

   **C.** Plaintiff Suffered Severe Fallout and Ongoing Harm. .............10

**III.** ARGUMENT .............................................................................10

   **A.** Plaintiff Has Properly Pled a Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1). .......................................10

      1. Defendants Misread the "Independent Threat" Requirement.........12

      2. Defendants Ignore that the Bane Act Covers Non-Physical Threats. ...............................................................................12

      3. Defendants' "No Specific Right" Argument Fails.........................13

      4. The SAC's Detailed Allegations of Independent Threats and Coercion Easily State a Bane Act Claim .....................................14

   **B.** Plaintiff States a Claim for Invasion of Privacy. .....................14

      1. Defendants' "No Reasonable Expectation of Privacy" Argument Fails. ...............................................................................15

      2. Defendants' "Not Highly Offensive" Argument is Meritless.........15

      3. Defendants' Reliance on "Public Disclosure" Defenses Is Misplaced. ...............................................................................17

      4. The SAC Sufficiently Pleads All Required Elements of the Claim for Relief from Invasion of Privacy. ...........................................17

   **C.** Plaintiff States a Claim Under Penal Code §§ 632 and 637.2.................17

   **D.** Plaintiff States a Claim Under Civil Code § 3344. ..................19

   **E.** Plaintiff States a Claim for Civil Harassment (CCP § 527.6). .................21

**F.** Plaintiff States a Claim for Stalking (Civ. Code § 1708.7). ....................23

**G.** The SAC Establishes the Existence of a Civil Conspiracy. ....................25

**H.** Plaintiff States Claims for Negligence, IIED, and NIED.........................26

     1. Negligence. .......................................................................26

     2. Intentional Infliction of Emotional Distress ("IIED") ...................26

     3. Negligent Infliction of Emotional Distress ("NIED"). ..................27

**I.** Plaintiff States a Claim Under RICO (18 U.S.C. § 1962) ........................27

     1. The Enterprise ..................................................................28

     2. Predicate Acts...................................................................28

     3. Distinctness .....................................................................29

     4. Injury to Business or Property..............................................29

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SAC

1

## <u>TABLE OF AUTHORITIES</u>

2

3  <u>**Cases**</u>

4  *AREI II Cases*, 216 Cal. App. 4th 1004, 1021 (2013) ...............................................21

5  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)................................................ 10, 13, 16

6  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883–84 (2007) 11,

7     12

8  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................... 10, 13, 16

9  *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 979 (2013)...................12

10  *Boyle v. United States*, 556 U.S. 938, 946 (2009) ...................................................25

11  *Brekke v. Wills*, 125 Cal. App. 4th 1400, 1412–13 (2005).....................................21

12  *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ......................................23

13  Cal. Pen. Code § 632...............................................................................................16

14  *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)................................................ 26, 27

15  *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003)..........................14

16  *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801–02 (2017)

17     ....................................................................................................... 11, 12

18  *Cornell*, 17 Cal. App. 5th at 802 ...........................................................................13

19  *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005)..................................................25

20  *Gant v. County of Los Angeles*, 772 F.3d 608, 619 (9th Cir. 2014) .......................13

21  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) .......................................24

22  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) .............................. 14, 15

23  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) ....................................................23

24  *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117–18 (2006)...............15

25  *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 212 (2011) .....................................15

26  *Klistoff v. Superior Court*, 157 Cal. App. 4th 469, 479 (2007) ..............................22

27  *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (2009) ...26

28  *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) ..................................22

4

*Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 168-69 (2003) ........17

*McFadyen v. County of Tehama*, No. 2:18-cv-01168- KJM-CKD, 2019 WL
    2453642, at 5 (E.D. Cal. June 12, 2019)...............................................12

*Montes v. CBS, Inc.*, 233 Cal. App. 3d 793, 799–800 (1991) ................... 16, 17, 19

*Navarro v. Verizon Wireless, LLC*, 2011 WL 5975273, at *5 (E.D. Cal. Nov. 29,
    2011)...................................................................................... 17, 18

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).......................18

*Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 914–15 (1999).......................... 14, 15

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ....26

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).......................................24

*Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012).......................12

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)...................... 14, 16

*Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679-80 (2010)...................19

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995)...26

*Thomas v. Quintero*, 126 Cal. App. 4th 635, 651 (2005) ....................................20

*Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004) ................... 11, 13

*Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979) ................................21

**Statutes**

18 U.S.C. § 1343 ...................................................................................24

18 U.S.C. § 1512 ...................................................................................25

18 U.S.C. § 1951 ...................................................................................25

18 U.S.C. § 1962(c)...............................................................................24

18 U.S.C. § 2511 ...................................................................................25

Cal. Civ. Code § 1708.7.........................................................................20

Cal. Civ. Code § 1714(a)........................................................................22

Cal. Civ. Code § 52.1(a).........................................................................11

Cal. Const. art. I, § 1 ....................................................................... 12, 13

Cal. Penal Code §§ 632, 637.2 ............................................................ 12, 13

U.S. Const. amend. I; Cal. Const. art. I, § 2 .................................... 12, 13

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SAC

**MEMORANDUM**

## I. INTRODUCTION

This case arises from a sustained, multi-year campaign of unlawful intimidation, coercion, and exploitation orchestrated by Defendant Paul Barresi ("Barresi"), targeting Plaintiff Christina Taft ("Plaintiff"), a humanitarian and entrepreneur devoted to public safety initiatives and the arts.

Plaintiff respectfully submits this Opposition to Barresi's Motion to Dismiss the Second Amended Complaint ("SAC") (ECF No. 74). Barresi's motion seeks to avert liability for his orchestrated, multi-year campaign of stalking, coercion, witness intimidation, invasion of privacy, and reputational sabotage that greatly impacted Plaintiff. The SAC alleges in specific and substantial detail that Barresi used illegal recordings, impersonation, intimidation, manipulation and the exploitation of trauma survivors to isolate Plaintiff, obstruct justice, and profit from his control over Plaintiff and her family.

Plaintiff's SAC details how Barresi sought to destroy Plaintiff and her mother, Victoria Taft, when he procured and repeatedly disseminated a recorded phone call between Plaintiff and an assault victim to various publicists. (SAC ¶¶48, 78, 85–88, 109, 112, 144). He also distorted the content and context to damage Plaintiff's autonomy, relationships, and career. This traumatized Plaintiff. These recordings were part of a broader pattern of psychological coercion, witness tampering, and harassment, aimed at silencing Plaintiff. (SAC ¶¶157–158, 161, 164, 167).

Of particular concern is Barresi's interest in controlling witnesses and potential witnesses who could provide information about his extensive network of coercion and manipulation tactics. Barresi used authority to prevent reconciliation, forced Plaintiff and her family to be connected to his agendas and torment, and irrationally disclosed Plaintiff's private conversations without her consent. Barresi, while fixating on Plaintiff, further fixated on Adam Waldman and Plaintiff's

associates, making unconsented phone call recordings that included witness
interference and references to Plaintiff's mother's loss. Plaintiff's SAC details how
Barresi ensured that financial abuse accelerated and pain was prolonged while he
profited and isolated his victims, preventing Plaintiff and involved individuals
from healing and reconciling through his stalking and recording conduct. He
fixated on Plaintiff's attempts to subpoena witnesses with retaliatory blackmail
behavior that destroyed communication with Plaintiff, damaged reconciliation
opportunities, and prevented autonomy, resulting in damage to Plaintiff's careers
and finances along with systematic trauma.

## II. FACTS ALLEGED IN THE SAC.

### A. Barresi Embedded Himself in Plaintiff's Life.

Plaintiff is a humanitarian and entrepreneur committed to public safety
initiatives and the arts, building projects such as SaveMeNow in honor of her late
mother's legacy (*See* SAC ¶¶ 10, 20, 72.) Beginning in 2019, Barresi began
inserting himself into Plaintiff's network, focusing on sensitive personal and
professional matters involving her family, colleagues, and witnesses she worked
with. (¶¶ 14, 25–28, 36.) He showed particular interest in assault survivor Angela
Meador ("Meador"), a musician befriended by Plaintiff, cultivating access to
Meador to obtain personal and sensitive information connected to Plaintiff. (¶¶ 34–
35, 48.) He also targeted Plaintiff's cognitively impaired father, James Conner,
recording him without consent, extracting personal family information, and later
weaponizing it against Plaintiff. (¶¶ 30–31, 52, 78, 131, 194–195.)

### B. Defendants' Executed a Campaign of Coercion and Exploitation
### Against Plaintiff.

Once Barresi had gained access to Plaintiff's private life, he escalated into a
coordinated campaign of intimidation, harassment, and commercial exploitation.
He surreptitiously recorded private telephone calls between Plaintiff and Meador
concerning highly sensitive matters, without the consent of either participant. (*See*

SAC ¶¶ 16, 37, 44, 48, 85–88, 109, 112, 144.) He then disseminated these
recordings repeatedly — to YouTube audiences, to publicists connected with
high-profile individuals, and to media outlets — in an effort to humiliate Plaintiff
and distort her advocacy work. (¶¶ 39, 44, 49–50, 115–118, 227–228.)

Barresi issued explicit threats of violence, including references to firearms.
(SAC ¶¶ 14, 51–53.) He stated his intention to make Plaintiff's "life a living
nightmare" and threatened to post recordings "every day from now until hell
freezes over." (¶¶ 107–109.) These threats were used to deter Plaintiff from
communicating with witnesses, pursuing advocacy work, and seeking legal
redress. (¶¶ 157–158, 164–167.) He pressured Meador and other contacts to sever
ties with Plaintiff, sometimes coercing statements from them under duress, (¶¶ 34–
35, 54, 132, 156, 303,) and interfered with Plaintiff's ability to subpoena witnesses
and support survivors through coercive communications and public distortions,
(¶¶ 161, 164–167.)

In addition to harassment, Barresi commercially exploited Plaintiff's
identity. He used her name, voice, likeness, and statements without consent to
promote his own ventures, including his July 2024 book Johnny Depp's Accidental
Fixer. (SAC ¶¶ 78, 85, 92, 115–116, 227–228.) He posted her recorded voice
repeatedly online, increasing his social media following and bolstering his media
contracts. (¶¶ 49–50, 115–116.)

Barresi also engaged in surveillance and stalking. He publicly tracked
Plaintiff's movements, posting her travel itineraries, flight paths, and home address
(SAC ¶¶ 63, 69, 98, 124, 128,) and referenced her location in threatening posts and
messages (¶¶ 117–124, 257–258.) From 2022 to 2025, he posted over 351 hostile
online references to Plaintiff, often paired with insinuations of criminality,
defamatory accusations, and cruel remarks about her late mother. (¶¶ 92–93, 117–
124.) He circulated manipulated images and false statements about Plaintiff's
health and personal relationships. (¶¶ 123–128, 141.)

**C. Plaintiff Suffered Severe Fallout and Ongoing Harm.**

The consequences for Plaintiff were severe. She lost board positions and equity interests worth millions, saw the collapse of at least ten professional partnerships, and was forced to cancel the SaveMeNow project. (*See* SAC ¶¶ 328–332, 336.) Due to credible threats, she relocated from California to Hawaii and then to Europe, incurring significant relocation and security costs. (¶¶ 127, 129–149, 256, 300–307.) She experienced symptoms consistent with PTSD, depression, and chronic anxiety, impairing her ability to work, study, and maintain relationships. (¶¶ 59, 71, 86, 88, 97, 114, 119, 121, 126, 135, 143.) The harassment and publication of private material continued into 2025, despite cease-and-desist demands and prior protective orders. (¶¶ 107–109, 115–118, 127–128.)

Taken as a whole, the SAC presents a clear and consistent picture: Barresi orchestrated a sustained, multi-year campaign of unlawful conduct, including illegal recordings, threats of violence, witness manipulation, stalking, and the commercial exploitation of Plaintiff's identity for the dual purposes of silencing her and profiting from her vulnerabilities.

**III. ARGUMENT**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate only where the complaint fails to state a claim that is plausible on its face. *See* Fed. R. Civ. P. 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**A. Plaintiff Has Properly Pled a Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1).**

For years, Barresi used threats, intimidation, and coercion to silence Ms. Taft's advocacy, drive her out of California, and prevent her from accessing the courts, precisely the kind of abuse the Bane Act was enacted to stop. The Tom

Bane Civil Rights Act ("Bane Act") provides a civil cause of action against "[a]ny person or persons, whether or not acting under color of law, [who] interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual…of rights secured by the Constitution or laws of the United States, or…of California." Cal. Civ. Code § 52.1(a). To state a claim, a plaintiff must allege: (i) the defendant made threats, engaged in intimidation, or used coercion; (ii) the threats, intimidation, or coercion interfered with or attempted to interfere with the plaintiff's exercise or enjoyment of a right secured by the federal or state Constitution or laws; and (iii) the interference was intentional. *See Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801–02 (2017). The Bane Act applies to private parties as well as state actors. *See Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004). It does not require that the threats be physical; credible threats of serious harm, including reputational or economic harm, may be sufficient. *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883–84 (2007).

Here, the SAC alleges that Barresi repeatedly used credible threats and coercion to silence Plaintiff's advocacy, isolate her from allies, and prevent her from seeking legal recourse. Barresi coerced Plaintiff through blackmail with illegal recordings and disclosures of these recordings, (SAC ¶¶ 39, 42, 44, 51, 52, 55, 60, 118, 144, 330), high-profile guards, mafia-style threats, and firearms to enforce (*see* SAC ¶¶ 14, 42, 51–53, 78, 107–109, 140) disseminated unlawfully recorded private conversations to alarm Plaintiff and dissuade her from speaking or communicating (see Section II.B. above,) and leveraged the threat of further publications to drive her from California and chill her exercise of rights (¶¶ 157–158, 164–167.) These actions targeted Plaintiff's First Amendment rights to free speech, petition, and association (*see* U.S. Const. amend. I; Cal. Const. art. I, § 2,) her liberty and privacy rights under the California Constitution (*see* Cal. Const. art. I, § 1,) and her statutory privacy rights under Cal. Penal Code §§ 632, 637.2.

Defendant's attempt to challenge Plaintiff's standing under the Bane Act based on her relocation is legally unfounded. The Act applies where the conduct occurs or where it causes harm, not based on a victim's residence. As Barresi resides and operates in California, and directed his conduct toward California witnesses and legal proceedings, jurisdiction is proper. Attempts to force victims to flee the state do not exempt him from accountability—they underscore the very purpose of the Bane Act.

### 1. Defendants Misread the "Independent Threat" Requirement.

Defendants cite *McFadyen v. County of Tehama*, No. 2:18-cv-01168-KJM-CKD, 2019 WL 2453642, at 5 (E.D. Cal. June 12, 2019), which in turn relies on *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), to suggest that the Bane Act requires threats or coercion "independent" of the underlying violation. Their reliance is misplaced. *Shoyoye* involved a negligent over-detention without any evidence of purposeful threats or coercion beyond the detention itself. Courts have repeatedly distinguished *Shoyoye* where, as here, the plaintiff alleges intentional, targeted threats and intimidation designed to interfere with protected rights. *See Cornell*, 17 Cal. App. 5th at 802–03 (threats and intimidation during wrongful arrest supported Bane Act claim); *see also Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 979 (2013) (purposeful coercion satisfied Bane Act). The SAC, however, alleges far more than incidental coercion. Barresi's repeated threats of violence, public humiliation, and professional destruction were distinct acts undertaken for the purpose of silencing Plaintiff's speech, ending her advocacy, and preventing her from seeking relief in court.

### 2. Defendants Ignore that the Bane Act Covers Non-Physical Threats.

Defendants also suggest the statute requires physical violence. California courts reject such a narrow reading. In *Austin B.*, 149 Cal. App. 4th at 883–84, the court held that intimidation, coercion, and threats that instill fear, even without physical contact can violate the Bane Act. *See also Gant v. County of Los Angeles*,

772 F.3d 608, 619 (9th Cir. 2014) (Bane Act claim stated where threats and intimidation designed to chill constitutional rights were made without physical force). Barresi's mafia-style threats, publication of stolen private conversations, reputational destruction, and stalking are precisely the sort of non-physical coercion the statute encompasses. The SAC also alleges interference with Plaintiff's ability to serve subpoenas and support witnesses (¶¶43, 55, 128, 134, 137, 144-148, 158, 164–167), directly infringing her legal access right. Emotional manipulation and coercion (¶¶117–123) further solidify this pattern of intimidation. His actions included threatening to expose private information (¶¶42, 92, 102, 118), threatening to use the audio recordings, high-profile armed guard security to prevent Plaintiff's constitutional activities (¶¶43, 49, 51, 54, 101, 126, 128, 140, 145, 161), and retaliating against Plaintiff's advocacy efforts using unconsented recordings (¶¶164, 167).

He also directed threatening security-related actions against Plaintiff for associating with targeted individuals (¶¶49-51, 54, 101, 126, 128, 140, 145), and falsely involved law enforcement in ways that endangered her safety (¶¶52, 54, 98, 101, 164). Barresi's conduct extended to manipulating trauma, using history of abuse and captivity to create fear and destroy Meador's friendship with Plaintiff (¶¶34–35, 54, 132, 156, 303). These coercive conditions significantly impaired Plaintiff's ability to exercise her rights without requiring physical force (¶167).

### 3. Defendants' "No Specific Right" Argument Fails.

Defendants contend Plaintiff has not identified a specific right that was interfered with. The SAC identifies several, namely,

- The right to free speech, petition, and association (*see* U.S. Const. amend. I; Cal. Const. art. I, § 2); (¶¶2, 5, 8, 13-14, 66, 22-29, 32-33, 38, 51-55, 74, 118, 137)

- The right to privacy (*see* Cal. Const. art. I, § 1; Cal. Penal Code §§ 632, 637.2); and (¶¶4, 16, 35, 39, 42, 181)

- The right to pursue lawful employment and advocacy without unlawful interference. (¶¶10, 16, 72, 86, 95, 144).

These are protected rights under the Bane Act. *See Venegas*, 32 Cal. 4th at 843 (privacy rights protected); *Cornell*, 17 Cal. App. 5th at 802 (free speech rights covered). The SAC alleges facts showing each was targeted and interfered with through threats, intimidation, and coercion.

### 4. The SAC's Detailed Allegations of Independent Threats and Coercion Easily State a Bane Act Claim

At the pleading stage, Plaintiff need only allege sufficient factual matter to state a plausible claim. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 570. The SAC details repeated, targeted threats and coercive acts over several years, directed at specific rights. The Court must accept those allegations as true and draw all reasonable inferences in Plaintiff's favor. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). In sum, Defendants' reliance on *McFadyen* (and indirectly *Shoyoye*) is misplaced, their reading of the statute is overly narrow, and their assertion that no specific rights are alleged is refuted by the SAC.

**B. Plaintiff States a Claim for Invasion of Privacy.**

Barresi's campaign centered on stealing Ms. Taft's most private moments — conversations about abuse, grief, and family — and broadcasting them to the world to maximize her humiliation and isolation. California recognizes a common law claim for intrusion upon seclusion where a defendant: (i) intentionally intrudes, physically or otherwise, into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy; and (ii) the intrusion is highly offensive to a reasonable person. *See Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998); *see also Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 914–15 (1999). The right protects "those aspects of an individual's life and affairs which are of a personal nature and which the individual ordinarily and reasonably expects

will not be open to observation by the public." *See Sanders*, 20 Cal. 4th at 915. Whether the expectation of privacy is reasonable and the intrusion highly offensive are typically questions of fact. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009).

### 1. Defendants' "No Reasonable Expectation of Privacy" Argument Fails.

Defendants contend Plaintiff had no reasonable expectation of privacy in the conversations at issue. That is contrary to California law and the SAC's allegations. Plaintiff alleges that Barresi surreptitiously recorded and disclosed deeply personal and confidential telephone conversations, without the consent of either party. (*See* Section II.B. above). These conversations addressed sensitive matters of abuse, trauma, family, and personal life, which are precisely the type of content where the law recognizes a high expectation of privacy. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117–18 (2006) (all parties to a confidential call have a reasonable expectation of privacy). California courts have also recognized that even in workplaces or other semi-public settings, confidential conversations can carry a reasonable expectation of privacy if the participants reasonably believe they are not being overheard or recorded. *See Sanders*, 20 Cal. 4th at 917–18. Here, Plaintiff alleges private one-on-one conversations in which no reasonable person would expect recording or public dissemination.

### 2. Defendants' "Not Highly Offensive" Argument is Meritless.

Defendants also argue the alleged conduct is not "highly offensive" as a matter of law. Whether conduct is "highly offensive" depends on factors such as the degree of intrusion, the context, and the motives of the defendant. *See Hernandez*, 47 Cal. 4th at 287. Recording and publishing Plaintiff's most personal conversations, involving abuse, family, and grief, without consent and with the admitted goal of silencing her and destroying her reputation easily crosses that threshold. In *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 212 (2011), the court

confirmed that offensive conduct includes behavior "exceeding the norms of acceptable conduct" particularly in workplace settings, but the reasoning applies equally to egregious intrusions into personal privacy such as here. Here, Barresi not only intruded into Plaintiff's private conversations but publicly posted and weaponized them to inflict maximum humiliation and professional harm. (*See* Section II.B. above). This is conduct that a reasonable jury could easily find highly offensive.

Defendant subsequently probed into Plaintiff's family traumas, particularly by recording her father to extract Plaintiff's sensitive information and relationships with her mother, sister, followed by retaliation (SAC ¶¶30-31, 51-53, 77-78, 88, 131, 194-195, 7). Defendant weaponized Plaintiff's private discussion with Meador to re-traumatize Plaintiff by contorting the call to focus on sexual violence (¶¶57-62). The sensitivity of these matters gave Plaintiff a reasonable expectation of privacy, and violations involving the use of this call caused considerable pain and helplessness due to the contortion of its content (¶¶37, 59, 71, 97). Defendant weaponized his recording of Plaintiff's father by connecting it to themes of violence and abandonment, exploiting Plaintiff's relationship with her beloved mother Vicki and her friends while interweaving her call with a female assault victim, thereby increasing the trauma tenfold (¶¶78, 87-88, 105, 131). The SAC demonstrates that Barresi exploited Plaintiff's family ties as tools of psychological coercion, using recordings and threatening disclosures to manipulate family dynamics and even invoking Plaintiff's relationship with her deceased protective mother, causing emotional harm by desecrating Plaintiff's memory of her (¶¶8, 18, 42, 53, 56, 68, 75, 78, 92-93, 97, 102, 111, 117, 119, 124, 148). Barresi probed into Plaintiff's relationships with her father and siblings to reinforce control and systematically undermine her support network (¶¶51, 75-76, 118, 243, 258).

### 3. Defendants' Reliance on "Public Disclosure" Defenses Is Misplaced.

Although Defendants suggest a "public interest" or "newsworthiness" defense, such defenses do not bar liability at the pleading stage and are especially weak where, as here, the information was obtained unlawfully. *See Shulman*, 18 Cal. 4th at 236–37 (newsworthiness defense inapplicable to illegal recordings); *see also Montes v. CBS, Inc.*, 233 Cal. App. 3d 793, 799–800 (1991) (holding no privilege to use unlawfully obtained material even in purported news reporting). The SAC alleges the recordings were made in violation of California's two-party consent statute (i.e., Cal. Pen. Code § 632) and then weaponized to inflict harm on Plaintiff. That is not protected activity.

### 4. The SAC Sufficiently Pleads All Required Elements of the Claim for Relief from Invasion of Privacy.

The SAC pleads each element of an intrusion claim, specifically:

i.  Intentional intrusion: Barresi deliberately recorded and disclosed confidential calls without consent (Section II.B. above).

ii.  Reasonable expectation of privacy: The calls involved deeply personal subject matter, conducted privately between Plaintiff and trusted individuals (SAC ¶¶ 16, 34-35, 37, 38, 44, 77, 87, 131).

iii. Highly offensive intrusion: The recordings were exploited for reputational and emotional harm (See Section II.B. above).

At the pleading stage, these allegations must be accepted as true. *See Iqbal*, *supra*, 556 U.S. at 678; *see also Twombly*, *supra*, 550 U.S. at 570. They more than plausibly state a claim for intrusion upon seclusion.

## C. Plaintiff States a Claim Under Penal Code §§ 632 and 637.2.

The SAC alleges repeated surreptitious recordings of confidential calls and their public disclosure — conduct that falls squarely within California's two-party consent law and its civil remedies provision. California Penal Code § 632 makes it

unlawful to intentionally record a "confidential communication" without the consent of all parties to the communication. Section 637.2 creates a private right of action for any person who has been injured by a violation of the Invasion of Privacy Act, regardless of whether they suffered actual damages. A plaintiff may recover statutory damages of $5,000 per violation or three times the amount of actual damages, whichever is greater. *See Navarro v. Verizon Wireless, LLC*, 2011 WL 5975273, at *5 (E.D. Cal. Nov. 29, 2011) (recognizing statutory damages are available even absent proof of actual damages).

Section 637.2 provides a civil cause of action "for any violation of the chapter." Section 637 prohibits the willful disclosure of the contents of a telephone message without the permission of the recipient. The SAC alleges that Barresi disclosed private conversations involving Plaintiff and Meador on numerous dates between October 2022 and December 2024 (¶¶44, 89, 122). Plaintiff, witnesses and investigators have confirmed that no consent was given for these recordings or their dissemination (¶¶38, 49, 130). Plaintiff demanded their removal repeatedly, further confirming lack of consent (¶107). The impact of these disclosures was devastating. The SAC provides a clear pattern of unconsented, repeated, and harmful disclosures in violation of California's two-party consent laws. These allegations state valid and actionable claims.

The SAC alleges that Barresi intentionally disclosed private telephone conversations between Plaintiff and Angela Meador without the consent of either party. (Section II.B. above.) These conversations addressed personal and sensitive subjects including abuse, trauma, and family matters. (*See id*.) Participants had every reason to expect that the calls were private and would not be overheard or recorded. Under California law, such calls qualify as "confidential communications." *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117-18 (2006) (all parties to a confidential call have a reasonable expectation of privacy in its content). The SAC then further alleges that Barresi disclosed the

unlawfully obtained recordings by posting them on YouTube and providing them to publicists and media outlets. (*See* Section II.B. above.) Courts have recognized that both the illegal recording and its subsequent disclosure are actionable events under the statute. *See Montes v. CBS, supra*, 233 Cal. App. 3d at 799-800 (1991) (holding that the use of unlawfully obtained recordings is not privileged even if the defendant claims a news purpose).

Further, Defendants' suggestion that the communications were not confidential is contradicted by the allegations in the SAC. Whether a communication is confidential is a fact-intensive inquiry not suitable for resolution on a motion to dismiss. *See Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 168-69 (2003). At this stage, the Court must accept Plaintiff's well-pleaded allegations that the conversations were private and that she had a reasonable expectation of confidentiality.

Defendants also cannot defeat this claim by asserting that Plaintiff must prove actual damages. Section 637.2 expressly authorizes statutory damages for each violation, whether or not actual damages are shown. *See Navarro*, 2011 WL 5975273, at *5. The SAC alleges multiple violations spanning several years.

Taken as true, these allegations state a claim under Penal Code §§ 632 and 637.2.

### D. Plaintiff States a Claim Under Civil Code § 3344.

Barresi didn't just violate Ms. Taft's privacy. He *monetized* it, using her name, voice, and likeness to promote his own book, media contracts, and public profile without consent. California Civil Code § 3344 prohibits the knowing use of another's name, voice, signature, photograph, or likeness in any manner for purposes of advertising or selling products or services without prior consent. The statute provides for the recovery of the greater of $750 in statutory damages or actual damages, as well as punitive damages and attorney's fees. *See Newcombe v.*

*Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998) (confirming § 3344 applies to knowing, unauthorized commercial use of a person's identity).

The SAC alleges that Barresi used Plaintiff's voice, name, and likeness without her consent to promote his own ventures, including his July 2024 book *Johnny Depp's Accidental Fixer*. (*See* SAC ¶¶ Section II.B. above.) It further alleges that Barresi repeatedly disseminated Plaintiff's recorded voice, which increased his social media following and bolstered his media contracts. (*See id*. ¶¶ 49-50, 115-116) Defendant sent recordings of Plaintiff's voice to commercial entities including publicists connected to high-profile figures for strategic and reputational gain (SAC ¶¶49–50, 227–228). Barresi used and distributed Plaintiff's voice more than 16 times, including sending it to publicists and using it on commercial YouTube channels and social media (¶¶44, 89, 122). Barresi issued a press release that explicitly referenced Plaintiff and mischaracterized her associates and their emotional vulnerability (¶115). During and afterwards, Barresi circulated Plaintiff's audio recording to control Plaintiff's communications with journalists. (¶118). This constitutes knowing commercial use under § 3344.

Defendants' argument that the use was not for "commercial purposes" is unpersuasive at the pleading stage. California courts have held that promotional use to draw attention to a commercial product or to increase the commercial appeal of a media work qualifies as commercial use. *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679-80 (2010). Here, the SAC plausibly alleges that Barresi's use of Plaintiff's identity was part of a broader strategy to promote his book, his online content, and his personal brand. Contrary to Defendant's assertion, Plaintiff has also alleged specific, tangible economic harm directly resulting from this exploitation, including lost business deals, dissolved partnerships, and increased costs for privacy protection and investigation. (SAC ¶¶86, 91, 95, 71-72, 119, 244, 336).

Notably, neither the "newsworthiness" or "public interest" exceptions apply to the facts of Plaintiff's privacy claims. Such defenses are inapplicable where the identity was obtained or used unlawfully. *See Montes v. CBS*, *supra*, 233 Cal. App. 3d at 799-800 (holding no privilege to use unlawfully obtained recordings or identity even in purported news reporting). The SAC alleges that Barresi's recordings were made in violation of California's Invasion of Privacy Act and then used for self-promotion and commercial gain.

The SAC pleads all required elements: knowing use of Plaintiff's identity; use for commercial purposes; and absence of consent. It further alleges unlawful acquisition of that identity, which removes any possibility of a privilege defense at the pleading stage. Whether Defendants' conduct falls within any statutory exception is a fact-intensive inquiry that must await discovery. Accepting the allegations as true, Plaintiff has stated a valid claim under Civil Code § 3344.

**E. Plaintiff States a Claim for Civil Harassment (CCP § 527.6).**

The harassment here was relentless: hundreds of hostile posts, repeated publication of stolen recordings, and direct threats, none of which served any legitimate purpose. California Code of Civil Procedure § 527.6 authorizes injunctive relief against a person who engages in (1) unlawful violence, a credible threat of violence, or a knowing and willful course of conduct or (2) a knowing and willful course of conduct that seriously alarms, annoys, or harasses and serves no legitimate purpose. The conduct must be such that it would cause a reasonable person to suffer substantial emotional distress and must actually cause the plaintiff substantial emotional distress.

The SAC alleges that Barresi published her private communications to embarrass and intimidate her, tracked and publicized her whereabouts, and targeted her with publishing information on her, her family, and her activities hundreds of times. (*See* Section II.B. above.)  From October 2022 through 2025, Barresi engaged in a multi-year campaign of intimidation, digital surveillance,

impersonation, and reputational sabotage. Defendant sent communications to Plaintiff referencing her mother's remains, coroner report, and childhood photos (SAC ¶¶49–54, 92–93, 118, 125). Defendant repeatedly fixated on Plaintiff, impersonated her associates, and falsely connected Plaintiff and her mother to adult content (¶¶92, 96, 102). As detailed in SAC ¶¶106–113, 245–256, Defendant Barresi sent over 65 harassing text messages to Plaintiff. This included the manipulated dissemination of private, unconsented recordings  and disturbing messages involving Plaintiff's late mother (¶¶37–39, 56–58).

These acts were intentional, ongoing over years, and without any legitimate purpose. Throughout 2023 and 2024, Barresi used social media to reference Plaintiff by name over 351 times, accompanied by hostile rhetoric and location-based threats (SAC ¶¶117–124). He posted flight paths, referenced private travel plans, and made aggressive false claims, all while tracking Plaintiff's whereabouts (¶¶69, 124, 126, 128). Between January and March 2025, he obtained private photos, impersonated witnesses, and posted manipulated imagery suggesting illness or death (¶¶123–128). Defendant's behavior disrupted her housing stability, harmed her reputation, caused business losses, and interfered with witness communications (¶¶129–149, 256, 300–307).

The cumulative impact of this conduct – documented across SAC ¶¶64–65, 91, and supported by a Temporary Restraining Order issued in Hawaii (SAC ¶127) – caused substantial emotional distress, and forced Plaintiff to relocate from California to Hawaii and then to Europe. These acts reflect a knowing, sustained, and illegitimate campaign of harassment with no lawful justification.

The allegations align with the standard set forth in *Harris v. Stampolis*, 248 Cal. App. 4th 484, 500 (2016), confirming that Plaintiff has properly pleaded a cause of action under § 527.6. The claim should proceed to discovery and adjudication on the merits. Plaintiff's allegations establish the statutory elements and support injunctive relief, which is expressly authorized by the statute. *See*

*Thomas v. Quintero*, 126 Cal. App. 4th 635, 651 (2005) (holding that injunctive relief is available under § 527.6 where the plaintiff alleges a knowing and willful course of harassing conduct). Plaintiff's claim is well within the statute's scope. Because the SAC pleads repeated and intentional conduct that meets § 527.6's definition of harassment and plausibly alleges substantial emotional distress, the claim is properly stated.

### F. Plaintiff States a Claim for Stalking (Civ. Code § 1708.7).

Barresi's actions meet the statutory definition of stalking — persistent following, publicizing Plaintiff's movements, and issuing credible threats of violence. California Civil Code § 1708.7 creates a civil cause of action for stalking. A plaintiff must allege: (i) the defendant engaged in a pattern of conduct intended to follow, alarm, or harass; (ii) the plaintiff reasonably feared for her safety or the safety of an immediate family member; and (iii) the defendant made a credible threat with the intent to place the plaintiff in such fear. The conduct must occur on more than one occasion. *See* Cal. Civ. Code § 1708.7.

The SAC alleges that Barresi repeatedly tracked and publicized Plaintiff's location, including posting her travel itineraries, flight paths, and home address. (*See* Section II.B. above). Barresi invoked firearms and repeatedly held mortality ideations. (SAC ¶¶ 14, 51–53, 107–109.) Plaintiff alleges that these actions caused her to relocate multiple times for safety which has caused her ongoing fear for her safety. (*See* Section II.C. above.)

This campaign extended to Plaintiff's family. Defendant sent disturbing messages about Plaintiff's deceased mother, including a coroner's report with graphic descriptions (¶¶124, 109, 117, 119, 97, 42, 56, 87, 105, 302). He also unconsentedly recorded Plaintiff's cognitively vulnerable father, James Conner, using the recording as a tool of emotional and reputational harm (¶¶52, 78, 131). Plaintiff's sister was similarly targeted through references tied to her trauma (¶51). As a result, Plaintiff's father fled to Alaska in fear and requested the harassment

1    end (¶¶52, 78, 131). Defendant monitored Plaintiff's communications, movements,

2    and relationships (see Section II.B. above).

3    　　　Barresi's stalking also targeted Plaintiff's communications and digital

4    privacy. He monitored and exploited her private text messages and emails with

5    assault survivor Meador (¶¶44, 101, 112). Defendant disseminated these

6    communications, including at least 16 separate reuses of their unconsented phone

7    call between 2022 and 2024, keeping both women in a state of fear (¶¶38, 44). In

8    2025, Barresi escalated his behavior by using Plaintiff's roommate to obtain

9    private photos of Plaintiff (¶141). He coordinated harassment of Plaintiff's friends

10   and ex-boyfriend through fabricated claims and invasive imagery (¶¶128, 141).

11   　　　Plaintiff's fear was credible and well-founded. A Temporary Restraining

12   Order was issued in Hawaii (Case No. 3DSS-25-0000044) based on Defendant's

13   pattern of conduct (¶127).

14   　　　This conduct clearly meets the standard articulated in *Huntingdon Life*

15   *Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA*, Inc., 129 Cal. App. 4th

16   1228, 1264 (2005), which recognized civil stalking liability for conduct targeting a

17   plaintiff and their family or associates. Plaintiff's allegations are detailed,

18   plausible, and sufficient under *Twombly* and *Iqbal*.

19   　　　Defendants' contention that Plaintiff has not alleged a "credible threat of

20   violence" ignores these specific allegations. A "credible threat" under § 1708.7

21   includes both physical threats and threats implied by a pattern of conduct that

22   would cause a reasonable person to fear for her safety. *See Brekke v. Wills*, 125

23   Cal. App. 4th 1400, 1412–13 (2005). Credible threats may be express or implied

24   through conduct that a reasonable person would interpret as a serious expression of

25   intent to harm. Because the SAC alleges repeated conduct, credible threats, and

26   resulting reasonable fear, it adequately states a claim for stalking under § 1708.7.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SAC

### G. The SAC Establishes the Existence of a Civil Conspiracy.

The SAC details a coordinated effort between Barresi, Waldman, and others to destroy Ms. Taft's career, isolate her from her support network, and profit from the resulting damage. Civil conspiracy is not an independent tort but a theory of joint liability for concerted action. A plaintiff must allege: (1) the formation and operation of a conspiracy; (2) wrongful acts committed in furtherance of the conspiracy; and (3) resulting damage. See *AREI II Cases*, 216 Cal. App. 4th 1004, 1021 (2013). A conspiracy may be proven by circumstantial evidence and reasonable inferences. *See Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979).

The SAC pleads each element. It alleges that Barresi and Waldman had a mutual understanding and agreement to target Plaintiff through threats, intimidation, and publication of unlawfully obtained recordings. (¶¶ 25-28, 36-44, 157-167.) It alleges coordinated actions including dissemination of Plaintiff's private conversations to media contacts, online publication of defamatory content, and manipulation of witnesses to isolate Plaintiff and undermine her credibility. (¶¶ 39-44, 49-54, 132, 156-158, 164-167, 303.)

Defendants argue there are no specific facts showing an agreement. But at the pleading stage, Plaintiff need only allege facts supporting a plausible inference of concerted action. *See Klistoff v. Superior Court*, 157 Cal. App. 4th 469, 479 (2007). Allegations that defendants acted in parallel toward the same unlawful ends, using coordinated means and mutually reinforcing conduct, suffice. *See Wyatt*, 24 Cal. 3d at 785. The SAC alleges precisely that pattern. Defendants also argue that conspiracy fails without an underlying tort. As shown in the preceding sections, the SAC adequately pleads multiple underlying torts and statutory violations, including violation of the Bane Act, invasion of privacy, and intentional infliction of emotional distress.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SAC

Accepting the allegations as true, the SAC plausibly alleges that Defendants acted together in a planned and coordinated manner to commit wrongful acts that injured Plaintiff. That is all the law requires at this stage.

**H. Plaintiff States Claims for Negligence, IIED, and NIED.**

Barresi's sustained psychological assault — exploiting grief, threatening violence, and destroying livelihoods — is the definition of extreme and outrageous conduct causing severe distress.

*1. Negligence.*

To plead negligence, a plaintiff must allege duty, breach, causation, and damages. *See Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996). California law imposes a duty on every person to refrain from causing foreseeable harm to others through unlawful conduct. *See* Cal. Civ. Code § 1714(a). The SAC alleges that Defendants owed Plaintiff a duty to refrain from unlawful acts including surreptitious recording, stalking, and threats of violence, and that they breached this duty through repeated wrongful acts. (¶¶ 14, 16, 39–44, 49–53, 63, 69, 85–88, 92–93, 98, 107–124, 128, 144, 157–158, 164–167, 227–228, 257–258.) The SAC further alleges that these breaches directly caused Plaintiff substantial economic and emotional harm. (¶¶ 328–332, 336.)

*2. Intentional Infliction of Emotional Distress ("IIED")*

IIED requires allegations of: (i) extreme and outrageous conduct by the defendant; (ii) intent to cause, or reckless disregard of the probability of causing, emotional distress; (iii) severe emotional distress; and (iv) causation. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). The SAC alleges that Defendants engaged in extreme and outrageous conduct including violations of rights, publication of unlawfully recorded private conversations, stalking, and public humiliation. (¶¶ 14, 39–44, 49–53, 63, 69, 92–93, 98, 107–124, 128, 157–158, 164–167, 257–258.) Plaintiff alleges this was intended to, and did, cause severe emotional distress, including PTSD, depression, and anxiety, impairing her ability to live and work.

(Section II.C. above.) Plaintiff's distress was life-altering and physically manifest
(¶¶59, 71, 86-88, 97, 114, 135, 143). Defendant repeatedly suggested she might die
by suicide or from stress-related consequences (¶¶98, 109, 119, 124-128). This
emotional trauma was compounded by Defendant's deliberate targeting of
Plaintiff's core identity as a rescuer and protector (¶¶10, 20, 72, 140). As someone
who worked with vulnerable populations and public safety initiatives like
SaveMeNow since 2019, Plaintiff was sensitive to harm inflicted to her and others
that harmed family and individuals going through trauma (¶¶20, 97, 72). Defendant
knew this and intentionally targeted those she cared about (¶¶25-26, 43, 54, 59, 86,
140). This type of emotional sabotage is particularly egregious.

### 3. Negligent Infliction of Emotional Distress ("NIED").

California treats NIED as a form of negligence, requiring duty, breach,
causation, and damages. *See*, *e.g.*, *Burgess v. Superior Court*, 2 Cal. 4th 1064,
1072 (1992). Direct victim claims, such as Plaintiff's, require no showing of
physical injury or bystander status. *Burgess v. Superior Court*, 2 Cal. 4th 1064,
1072 (1992) (holding that a direct victim may recover emotional distress damages
without physical injury or impact). The SAC alleges that Defendants breached
their duty not to cause emotional harm through unlawful acts, and that their
conduct directly caused Plaintiff severe distress. (Section II.C. above). These
allegations are sufficient to state claims for negligence, IIED, and NIED. Any
factual disputes regarding outrageousness, severity of distress, or causation are
inappropriate for resolution on a Rule 12(b)(6) motion.

## I. Plaintiff States a Claim Under RICO (18 U.S.C. § 1962)

This was an organized enterprise engaged in repeated criminal acts — wire
fraud, extortion, witness tampering, and illegal recording — conducted over years
for profit and retaliation. To state a claim under 18 U.S.C. § 1962(c), a plaintiff
must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of
racketeering activity; and (5) injury to business or property by reason of the RICO

violation. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A "pattern" requires at least two predicate acts within ten years that are related and amount to, or pose a threat of, continued criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Accepting the allegations as true, the SAC pleads all elements of a civil RICO claim, identifying an enterprise, specific predicate acts, a pattern of racketeering activity, and resulting business injury.

### 1. The Enterprise

The SAC alleges that Defendants, along with others, formed an ongoing association-in-fact enterprise to target Plaintiff. (*See* SAC ¶¶ 25-28, 36-44, 49-54, 132, 156-158, 164-167, 303). The enterprise's purpose was to silence Plaintiff's communications with witnesses and victims of Baresi's crimes, prevent Plaintiff from exposing his crimes against individuals he fixated on, destroy her professional reputation, and profit from the exploitation of her private communications and identity. (*See id.* ¶¶ 39-44, 49-54, 85-88, 92-93, 115-118, 227-228). The enterprise had structure, a shared purpose, and relationships among its members that persisted for years.

### 2. Predicate Acts

The SAC alleges multiple predicate acts, which are related and continuous, demonstrating the "pattern" element, including:

i.  Wire fraud (18 U.S.C. § 1343) by transmitting fabricated and unlawfully obtained material electronically to harm Plaintiff's reputation, professional initiatives, and interfere with her business relationships. (*See* SAC ¶¶ 39-44, 49-50, 115-118, 227-228).

ii. Extortion (18 U.S.C. § 1951) by threatening to publish damaging material unless Plaintiff ceased advocacy and legal efforts. (*See* SAC ¶¶40, 48-55, 91, 105-112, 141, 144-146).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SAC

iii. Illegal interception and disclosure of communications (18 U.S.C. § 2511) by surreptitiously recording and distributing private calls. (Section II.B. above).

iv. Witness tampering (18 U.S.C. § 1512) by coercing associates and witnesses to sever ties with Plaintiff or alter their accounts. (*See* SAC ¶¶14, 18, 28-33, 40, 52-55, 127-134, 144-148).

### 3. Distinctness

Defendants argue that Plaintiff has not alleged a "distinct" enterprise separate from the predicate acts. Courts reject that argument where the complaint describes an association-in-fact with a common purpose, relationships among associates, and sufficient longevity to pursue its goals. *See Boyle v. United States*, 556 U.S. 938, 946 (2009). The SAC satisfies that standard.

### 4. Injury to Business or Property

The SAC alleges that Defendants' conduct caused Plaintiff to lose board positions, equity interests, business opportunities, and income from dissolved partnerships and canceled projects. (*See* SAC ¶¶ 66, 72, 95, 119, 244, 328-336). These are recognized forms of injury under RICO. *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).

### K. Plaintiff Requests to Amend if Needed for Relief

The court "'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). "The complaint [can] be saved by amendment," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Indeed, the Court held in *Akhtar v. Mesa*, 698 F.3d 1202 (9th Cir. 2012), "[a] district court should not dismiss a pro se complaint without leave to amend. Courts

should be particularly liberal in construing "inartful pleading" by parties appearing pro se, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  Defendant has made no effort to show that any of the challenged claims cannot possibly be saved by amending to allege additional facts. If the Court finds one or more of the claims to be deficient, Plaintiff respectfully requests that the court grant leave to amend.

Respectfully submitted,

Dated: August 1, 2025

Christina Taft
*Plaintiff Pro Per*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SAC

1

## LR. 11-6.1 Certification

2

3      I hereby certify that this brief contains 6,988 words, excluding caption,

4  tables, signature block, and certificate of compliance.

5

6

7

8  Christina Taft                                    August 1, 2025_____

9  *Plaintiff Propria Persona*                       Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28