Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT<br><br>        Plaintiff,<br><br>vs.<br><br>PAUL BARRESI, ADAM R WALDMAN, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.: 5:24-cv-01930-TJH-DTB<br><br>[Hon. Terry J. Hatter, Jr, District Judge]<br><br>**PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT BARRESI'S MOTION TO DISMISS CLAIMS OF RELIEF OF SECOND AMENDED COMPLAINT**<br><br>***[Filed concurrently with Opposition Brief Memorandum Points and Authorities Supporting Second Amended Complaint; Responsive Exhibits Supporting Declaration; Certificate of Service]***<br><br>Date: August 1, 2025<br>Time: Under submission |

PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS OF RELIEF OF SECOND AMENDED COMPLAINT

**DECLARATION OF PLAINTIFF IN SUPPORT OF OPPOSITION**

I, Christina Taft, do hereby declare in Support of the Second Amended Complaint, in Opposition to Defendant's declaration of his counsel, motion, and exhibits:

1. I am the Plaintiff in this action and have personal knowledge of all facts stated herein. I am over the age of 18 and competent to testify to these matters.

2. The Second Amended Complaint pleads for rights of speech, association, privacy, against illegal recordings of telephone calls and unconsented disclosures. Defendant's witness and victim interference connects to stalking and media gains.

3. As explained in the SAC, I have professionally since 2021 with Worldie Ltd and Rescue Social Inc built to help Arts related cases, for safety, and we've had interns assist Artist clients with charitable improvements each year. Since Defendant attached exhibits to his lawyer's declaration, I provide responses. Regarding **Exhibit A of Defendant's counsel's declaration**, of 523 Cases in Film, Music, Arts, Hollywood and showing an additional 165 victims cases of my work are meant to improve sympathy, understanding, services, resources, and legislative improvements. SaveMeNow, for victims and first responders to have better communications, faster response, and types of documentation, is cited, **Exhibit 2**.

4. I have maintained interns for five years from a university in Chicago who have supported initiatives for lifting individuals to quality. The exhibits reflect work to help people related to the Arts, focusing on their lived experiences rather than on objects. My mother Victoria's family were in the film business for three generations since the 1950s, and I am the fourth generation related to the Arts. Contrary to Defendant's outdated characterization, my initiatives demonstrate my professional capability to interconnect the Arts with public safety. This extends to SaveMeNow, founded by rescue instructor and first responder, Niko Sanchez.

5. Defendant Barresi's invasions and stalking caused suffering to me while he connected the relationship to my belated mother Vicki Taft and illegally recorded my father James Conner to his harmful agenda, **Exhibit 3**. Not only did he record a

co-defendant Adam illegally, Barresi predatorily controls witnesses and victims. Barresi illegally used my voice without consent from my call with Meador, disclosing the recording over 16 times to publicists and the public. Defendant Barresi decided not to Default in retaliation asking Adam Waldman to help and for reconciliation, which a Default against Barresi would have resolved. My friend Lori Mattix worked for Johnny's sister and I support autonomy without Barresi.

6. For years, Defendant Barresi weaponized illegal recordings of telephone calls and disclosures, stalked, and daily focused on me to cause demise with a decline in my finances, wellbeing, charities, and businesses. His daily fixations have manufactured declines in my career, movements of my locations from his enforcement, frictions in my relationships with family, friends, and associates. Defendant has preyed on vulnerabilities and abuse, to forge connections and retaliation. This began after I corrected witness and victim interviews, and questioned his conduct. In my SAC, I interviewed witnesses, that Defendant Barresi wanted to possessively "own," which brought continuous stalking from Defendant to me and retaliation, where he forced unwanted associations.

7. My pleading has plausible facts that united "sides," as provided that we can represent ourselves to properly render aid, and with viable protection. I showed compassion, care, and real, valid hope for resolutions and improvements.

8. Defendant's counsel has failed to comply with proper Meet and Confer requirements as mandated by the Federal Rules of Civil Procedure. The meet and confer requirement calls for meaningful consultation and documentation, not an undocumented telephonic conference. No email correspondence regarding discussions were attached to Defendant's declaration, and no substantive contents of our telephonic discussion were presented as required by court rules. This represents a fundamental breach of procedural requirements of Local Rule 7-3.

9. I specifically preferred email communications over telephone calls at the commencement of this action due to my well-founded concern that Defendant

PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS OF RELIEF OF SECOND AMENDED COMPLAINT

would not properly present or document the content of discussions as required by law. This concern is justified given the continued procedural issues. I attach true and correct copies of the emails from the Meet and Confer as **Exhibit 1**.

10. Defendant Barresi exploited disputes and illegal recordings to force himself onto Johnny Depp, positioning himself as the "Accidental Fixer" for commercial advantage. As with others, he takes away consent. Over three years, Barresi confiscated our communications to prevent unification to see Barresi harms both Johnny and Amber, leaving my family and I "caught in the middle" unwantingly. This Second Amended Complaint unifies grievances and seeks reconciliation.

11. The exhibits attached by Defendant (Exhibits A through B) are outdated and support my opposition, contrary to Defendant mischaracterizing my work and "saving a life" negatively. I did positive publicity outreach to try to help Meador's music career and feeling better. Any harm to a victim, that my friends and I wanted to help to report her abuser Csokas by name, to be safe, and my communications is traumatizing. I can't even tell her to be happy, have a good 4th of July, to serve her, or to report Barresi. Unlike over 25 witnesses, she can't resist his control. Witness Ian Herndon declared that Defendant Barresi's use of my phone call recording with Meador prevented helping us, **Exhibit 4**. Barresi wielded this while forcing *Johnny Depp's Accidental Fixer,* where Barresi obscured his illegal recordings and unconsented fixations onto individuals, including my family and innocent victims, for his commercial advantage. My rights cannot continue to be exploited by Defendant. A subpoena to a telephone company is a viable legal process, and providing emotional support is legitimate, yet I have to flee from cruel retaliation.

12. In response to **paragraph 9 of Defendant's declaration** regarding Angela Meador, Defendant Barresi's presentation is cruel and inhumane. I informed Meador that she has a viable claim against Marton Csokas, who assaulted her, with California's law against sexual abuse and cover-up acts, which remains viable until December 2026. Defendant's manipulation has prevented her from pursuing these

PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS OF
RELIEF OF SECOND AMENDED COMPLAINT

legitimate legal remedies. Our communications show she asked me for help then. Although I was inadequate then, my interns today help artists. Meador is afraid for her life from Csokas, and Barresi has punished me for her communications with me, and constantly monitors our speech to restrict. Meador was against types of abuse, as in her tribute song of "emotional song against abuse" to Johnny Depp.

13. In our communications, Meador wanted to freely live without materials implicating retaliation to her. Defendant acknowledges the validity of the T-Mobile phone records from my Hawaii clerk issued subpoena. The phone records reveal that Defendant Barresi made 297 incoming calls to Meador in one year, with 26 calls from him the day we tried to serve her with a witness subpoena and to open communication for questions related to my legal claims. These alarming increases demonstrate reasonable concern for her wellbeing, given that Defendant for 3 years destroyed her needs, psychologically wore her down, and impacted a decline in her music and modeling careers. Already true and correct copies of the phone records showed 297 incoming calls from Barresi to Meador, with only 12 outgoing, demonstrating control and fixation of Defendant over her. My true and correct subpoena to T-Mobile, which supports artists and publicists against stalking, referenced my granted temporary restraining order against Defendant Barresi.

14. The Second Amended Complaint and the phone records show it is Barresi who is obsessive, and he is deliberately going against the US Judges' orders that litigants can contact witnesses by preventing my lawful access. Barresi has made Meador issue numerous statements he's orchestrating after years of his aggressive calls, unwanted use of her voice with mine against authorization, and three years of a social decline. Meador originally told Cohen I could contact her, SAC ¶ 130.

15. I provided phone records to Meador because she has an absolute right to possess her own phone records and to understand the extent of control she has endured from Defendant Barresi. It must be clear for the record that the declarations relied upon by him do not have her state any consent to the recording

1  or its disclosure. She never gave consent to the Defendant to do either. Barresi took

2  away our consent, and she never sent the recording to Defendant, neither did I.

3      16. I forwarded to Ms. Meador communications with deputies in Rancho

4  Cucamonga, California regarding Defendant Barresi's illegal use of the "gun-to-

5  head" content from our private telephone conversation, which constitutes a breach

6  of Penal Code § 637 regarding unconsented disclosures of telephone call

7  recordings and Penal Code § 632 regarding illegal recordings of phone calls.

8      17. Witnesses and I pleaded to Waldman for help to stop Barresi, hoping he and

9  Johnny might respond to assist. Adam did not reply to me for relief, although he

10  re-appeared to rebuke unconsented recordings of him publicly and against media.

11  Defendant has fixated on Adam Waldman after I tried to give support to Gayle and

12  her support for Johnny Depp with a subpoena. Defendant Barresi illegally recorded

13  Waldman and forced disputes, preventing me from uniting with others. Barresi did

14  brutal witness interference, monitoring communications and making illegal

15  recordings of phone calls. I'm forced to be afraid again in tandem and unwantingly.

16  I supportively told Adam Waldman that he should be against financial abuse and

17  exploitation, and he wrote publicly after silence from March 2023 to present –

18  which coincides to Defendant Barresi's enforcement. However, I'm disappearing.

19      18. Defendant has ignored Plaintiff's repeated pleadings to stop wielding,

20  illegally disclosing, and threatening to disclose the illegal phone recording of our

21  call, and to stop using materials that take away our free will. Multiple witnesses

22  declared in support of Meador, and she's vulnerable to experiencing fawn-freeze-

23  flight-fight survival reactions after being held against her will by the emotionless

24  Csokas. Barresi's "Accidental Fixing" is parasitic. Over 25 witnesses willingly

25  oppose Barresi when he's not forcing attachment through recordings and removing

26  individuals' autonomy over their statements. I want to move forward with relief.

27      19. I provided Ms. Meador notice that she can file a courtesy report with her

28  local police as a protected victim and witness. T-Mobile expressed willingness to

assist her against the controlling behavior by Defendant Barresi, who does not want any support to her or compassion, as documented in these records. Barresi made her unreasonably unable to accept kindness or support, by using threats of high-profile armed guards, as he did to me as a donor to amicus-recipient Amber Heard. Defendant Barresi does this on a daily basis, draining life from individuals.

20. Witnesses Ian Herndon and Molly Beaton have supported that Ms. Meador fears retaliation and she was held against her will by Csokas. Since 2020, several witnesses believed that Barresi would act on behalf of Csokas to harm Meador. The alarm heightens when Barresi admits he's an "Accidental Fixer" with media. I informed her that Defendant uses automatic recording of his phone calls and expressed serious concern for her safety. Under California's Undue Influence law, existing since the year of 1872, the use of coercion and traumatic emotional vulnerabilities—combined with unconsented use of recorded materials against her will, protects her statements, true or false, under this established legal framework.

21. The phone records that Defendant referenced should be considered mutually in this process, especially since the Defendant has brought them into this motion. Twenty-six incoming calls from Barresi occurred on March 31st when Ms. Meador needed police protection, that I supported originally, coinciding with a process server's attempt to deliver a witness subpoena and supportive correspondence.

22. Nine additional incoming calls from Barresi occurred on March 26th, demonstrating a clear pattern of harassment designed to intimidate and obstruct legal processes. Barresi parasitically manufactures neglect and enforces disputes.

23. I further attach in **Exhibits 5 and 3** that the process serving of the witnesses Amber Heard and James Conner – my father who was illegally recorded while being misrepresented to by Defendant Barresi and who was married to Victoria Taft – were received reasonably, without retaliation, and declared. This shows that Defendant's control over Meador and blocking subpoenas is to prevent restoration.

24. I advised Ms. Meador to change the identity, but not the content of threats, violence, or intimidation she experienced in order to protect herself from further retaliation. The continued obstruction from assisting Artists as clients is obscene.

25. I have serious concerns that Defendant's counsel cannot separate their conflicts of interest with Defendant Barresi and potential individuals who typically oppose assault victims. This concern is based on Defendant's systematic illegal recording practices of phone calls with lawyers, multiple instances where attorneys have stated these acts are illegal yet have failed to stop Barresi's conduct.

26. I understand that Adam Waldman was unconsentedly recorded by Barresi, but he had failed to report to the local police against Defendant Barresi. I attempted to reach out to him to request his help from Barresi's recordings, but I've seen that Defendant Barresi continues to wield authority over his statements to intimidate me further in his derangement. Defendant wants no communications to reconcile or to heal abuse. The Second Amended Complaint is where this process should go.

27. As referenced in Exhibits C and D, which show improper representation regarding Plaintiff's legal support, this information is only relevant to the original and first amended complaint and cannot be considered for the Second Amended Complaint. Pursuant to Federal Rule of Civil Procedure 15(a)(2), the filing of an amended complaint replaces the original complaint in its entirety. Any alleged deficiencies in prior legal consultation are irrelevant to the current pleading.

28. Moreover, access to this official court process has provided Plaintiff with processing capabilities and legal framework that were not previously available. This legitimate judicial process has enabled me to rationalize complex legal issues and reach individuals who needed support through an official legal mechanism. The Second Amendment shows what this process is supposed to achieve. The court process itself has enhanced my ability to protect witnesses and victims through proper legal channels. My plausibly pled claims protect my life and freedoms.

PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS OF
RELIEF OF SECOND AMENDED COMPLAINT

29. Defendant's Motion to Dismiss is in bad faith, repeats illusions he forcibly created by his own actions and aggression, brings in false statements, and it should be denied. These witnesses are vulnerable friends and family that Defendant especially fixated on and who are interconnected to me as a Plaintiff, not only in the recordings Defendant wields and his repeated contact, but also in our experiences and care. The evidence shows a calculated campaign to obstruct justice and intimidate witnesses, which this Court should not permit to worsen. The Defendant's fixations on me are harming those I care about and connected to me in his brutal punishment against rights of association, expression, and rights of positive publicity. Defendant controlled my communications, career, and travel.

30. I submit this opposition in good faith that this court will respect to provide independence and rights back, and to provide the ability to restore lives and careers. I have chosen specific Claims for Relief which address the underlying conduct, not the recent generational fixations on statements rather than previous understanding and concern on blackmail from previous generations, see *People of California vs Confidential Inc and Hollywood Research*, for absolute restoration.

31. Defendant Barresi's witness tampering, illegally recording individuals to coerce them, disclosing private telephone calls for coercion with forced or withheld statements, and forcing assault victims into hiding are not light issues.

32. Defendant Barresi has wielded authority over individuals, witnesses, victims, family members, and statements. The previous amendment already processed that Barresi repeated his conduct, made references and false associations, never stops calling, and created a continuous sense of danger to prolong disputes without relief. Barresi created retaliation for having sympathy. The Second Amendment restores the possibility for healing and reconciliation.

33. I am prepared to go forward in this legal process for justice and rights, to restore my life and career, including capabilities for clients related to the arts, and I'm prepared to support with compassion and understanding, with this legal

PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS OF RELIEF OF SECOND AMENDED COMPLAINT

process. I am eager with good faith to stop all types of abuse and financial abuse with injunctions and relief against Defendant Barresi, who takes autonomy and livelihood. As a pro se litigant, Defendant forced me to relocate out-of-state or even out of the country to the South of France so I could have some sense of personal security, with a future for my autonomy, business, and education.

34. I respectfully request that my Opposition brief is accepted and that my Claims of Relief are accepted, and any shortcomings can be amended. I told Defendant's counsel that I am against Defendant Barresi's celebrity stalking – and my life has been destroyed as a result. I told Defendant's counsel that my prayer of relief was simple to protect myself, my mother Victoria Taft and my family, to not use illegal recordings or create them, and to stop using wrongful retaliation and wielding documented supportive communications of Meador and I to harm my life. It's clear that Defendant is an *Accidental Fixer that is unwanted* and there needs to be relief. As a process server in Hawaii, I learned I could speak with multiple sides of disputes for an easier process and that reconciliation was severely curtailed.

35. The care I have for those intrinsically connected to me and any joy I have to see improved life is reasonable compassion that any person should have. Therefore, if I can be restored in good faith, I will be very grateful.

I hereby declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st of August, 2025, in Antibes, France.

Respectfully submitted,

Christina Taft

Christina Taft

*Plaintiff in Propria Persona*

PLAINTIFF'S DECLARATION SUPPORTING OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS OF
RELIEF OF SECOND AMENDED COMPLAINT