Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

CHRISTINA TAFT

      Plaintiff,

vs.

PAUL BARRESI, et al, inclusive,

      Defendants.

Case No.: 5:24-cv-01930-TJH-DTB

[Hon. David T. Bristow, Magistrate Judge]

**MEMORANDUM BRIEF FOR UNOPPOSED MOTION TO SEAL, STRIKE, AND SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS**

*[Filed concurrently with Exhibits and New Declarations in Support of Brief 1-16; Declaration Supporting Unopposed Motion to Seal Non-Party Exposure of Private Information, Bad Faith, Reporting Illegal Telephone Recordings; Exhibits A-C of Declaration; Certificate of Service]*

Date: October 2, 2025
Time: Under submission

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... 4

CASES .................................................................................................. 4

STATUTES ............................................................................................ 5

RULES .................................................................................................. 5

MEMORANDUM BRIEF OF UNOPPOSED MOTION TO SEAL, STRIKE, SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS ...................... 6

FACTUAL BACKGROUND ......................................................................... 12

ARGUMENT .............................................................................................. 13

A. The Court should seal and strike Docket No. 85 to protect confidential information and litigation integrity. ...................................................... 13

B. This serves as Plaintiff's supplement to her opposition brief. ............... 14

C. Clarification Regarding False Allegations Against Plaintiff ................... 15

D. Comprehensive Refutation of Meador's Forty False Allegations .............. 16

Initial Shock and Discovery of Coordinated Deception ........................... 16

1. Initial Shock and Discovery of Coordinated Deception ..................... 16

2. Point-by-Point Refutation of False Allegations ............................... 17

3. Systematic Pattern of Manufactured Evidence ................................ 18

E. Independent Declarations Corroborate Pattern of Deception and Coordinated Harassment ............................................................................ 18

Summary of Philip Andrew Hamilton's Declaration (Exhibit 5) ............. 18

Declaration of Molly Beaton (Exhibit 2) ............................................. 19

Additional Witness Evidence Demonstrating Reasonable Response to Process Service ........................................................................................ 19

Collective Impact of Declarations ................................................................ 20

F. Evidence of Coordinated Criminal Enterprise ........................................ 20

  False Attribution of Barresi's Own Fixations ........................................ 21

  Historical Pattern of Extortion and Fabrication ................................... 22

  Ongoing Extortionary Conduct .............................................................. 22

G. Pattern of Bad Faith Manufacturing of Allegations to Avoid Accountability .... 23

  The Pellicano Connection and Pattern of Targeting All Parties ........... 24

  Evidence of Targeting Both Sides .......................................................... 24

  The Manufacturing Timeline .................................................................. 25

  Risk of Systematic Harm to Legal Process ............................................ 25

  Universal Witness Consensus and the Non-Party's Delusional Behaviour .......... 25

  Continued Perjury Without Counsel Intervention ................................. 26

  Plaintiff's Reasonable Fear for Safety and Freedom ............................. 26

H. Meador Should Be Believed When She States She Will Lie .................. 27

  Extortion, False Reporting, and Perjury ................................................ 27

  The "Conservative Viewpoint" Extortion Scheme ................................. 28

  Improper Legal Process and Immediate Perjury Response .................... 28

  Unprecedented Litigation Conduct ........................................................ 29

  Need for Sophisticated and Ethical Federal Authority Review ............. 29

CONCLUSION AND TO PRESERVE INTEGRITY ................................... 29

PRAYER FOR RELIEF ................................................................................. 29

LR. 11-6.1 Certification ................................................................................ 31

MEMORANDUM BRIEF FOR UNOPPOSED MOTION TO SEAL, STRIKE, AND SUPPLEMENT NON-PARTY'S DOCKET
NO. 85 SUBMISSIONS

# TABLE OF AUTHORITIES

CASES

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)........................ 21, 22

*Board of Ed. of Farmingdale v. Farmingdale Classroom Teachers Ass'n, Inc.*, 343 N.E.2d 278, 283 (N.Y. 1975) ................................................................. 28

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011)........ 18

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)................................... passim

Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) ..................... 16, 23, 24

*Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).................................... 9, 26

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)..................... 14, 18, 26

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)..21, 22, 25, 28

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) 6, 14

*Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) ..................................... 15

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)............................... 6, 13

*Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)...................................... 17

*Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) ........... 15

*re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) ...................................... 8, 14, 29

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980) ................................ 20

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) ................................ 25, 29

Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664–65 (7th Cir. 1992) ..7, 14, 17, 24

*United States v. Dunnigan*, 507 U.S. 87, 94 (1993) .............................................. 21, 27

*United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir. 1990)........................ 22, 25

United States v. Pellicano, 135 F. App'x 44 (9th Cir. 2005)........................ 7, 9, 24, 25

*United States v. Scheffer*, 523 U.S. 303, 313 (1998) .................................................. 27

*United States v. Throckmorton*, 98 U.S. 61, 65–66 (1878) ....................................... 23

STATUTES

18 U.S.C. § 1343 ......................................................................................... 23, 28

18 U.S.C. § 1512 ......................................................................................... 22, 28

18 U.S.C. § 371 ............................................................................................ 23, 28

18 U.S.C. § 875(d) ................................................................................................ 9

Fed. R. Civ. P. 11(b) .......................................................................................... 23

Fed. R. Civ. P. 12(f) ............................................................................... 14, 20, 30

Fed. R. Civ. P. 5.2(a) ............................................................................... 8, 14, 30

Federal Rule of Civil Procedure 5.2(a) ......................................................... 6, 14

Federal Rule of Evidence 801(d)(2) .................................................................. 27

Rule 11(b), Fed. R. Civ. P. ................................................................................. 16

Rule 15(d), Fed. R. Civ. P. ................................................................................. 15

RULES

Local Rule 7.14 ..................................................................................................... 8

Local Rule 7-3 ....................................................................................................... 6

Rule 12(f) ................................................................................................. 7, 18, 26

Rule 5.2(a) ............................................................................................................. 8

## MEMORANDUM BRIEF OF UNOPPOSED MOTION TO SEAL, STRIKE, SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

At the heart of this motion is the fact that the non-party submission improperly exposes Plaintiff's private identifiers including her full Social Security number in plain violation of Federal Rule of Civil Procedure 5.2(a), which permits disclosure of only the last four digits, and is in bad faith with rampant perjury. This violation alone requires immediate sealing to protect Plaintiff from identity theft, extortion, and misuse of classified private information. Notably, Plaintiff's humanitarian spirit placed her at risk of exploitation adding to extortion by Defendant Barresi's ongoing scams directed at ultra-high-net-worth individuals who she sympathized with, even if his exploitation reached Hollywood actors, by reporting Barresi's illegal telephone recording practices and misconduct.

Under Local Rule 7-3, Plaintiff contacted Defendant's counsel seven days before filing. Counsel did not respond or oppose the relief. Plaintiff appealed to them against extortion of her and ultra-high-net-worth individuals (Exhibit 1). This shows the impropriety and further supports the need for Court intervention.

Courts have consistently held that the public's right of access does not extend to documents that disclose private identifiers or are weaponized through false statements, improper disclosures, or scandalous and impertinent matter filed for an improper purpose. See *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (courts may seal to prevent improper use); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (privacy and safety can outweigh access).

Beyond the privacy violation, the filing was submitted in bad faith and contains perjurious allegations. Plaintiff was no match for the non-party, who reportedly faced justified prosecution in New Orleans proceedings for extortion, false reporting, assault with a deadly weapon, and the impersonation of attorney Eric Hessler in a circulated

letter by the non-party (Exhibit 3). Independent sworn declarations, including Exhibits 2 and 3 and further testimony submitted by Nitrini, confirm that this misconduct was properly attributed to the non-party, not Plaintiff.

Plaintiff seeks protection of her Social Security number, biometric data, and driver's license to prevent extortion or identity theft. The filing should be stricken as bad faith because it contains perjury and false reporting meant to pressure Plaintiff to abandon her claims the type of "scandalous matter" Rule 12(f) allows courts to strike.

The timing and coordination of this submission underscore Defendant Barresi's bad faith. Facing near-default, Barresi deployed coordinated false allegations through a non-party to evade accountability for his misconduct, mirroring litigation abuses courts have repeatedly condemned. See *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992) (striking matter designed to cast parties in a derogatory light).

Witnesses confirm Plaintiff acted reasonably until Barresi and Meador colluded to entrap her by exploiting her role as a survivor advocate. Rather than take accountability in a manner that balanced the probabilities of actual evidence, they manufactured false portrayals to weaponize her humanitarian advocacy against her. Barresi seeks to prevent Plaintiff from establishing his documented pattern of exploiting ultra-high-net-worth individuals and high-profile litigants through illegal recordings of attorney calls and manipulation of disputes, conduct reminiscent of extortion operations addressed in *United States v. Pellicano*, 135 F. App'x 44 (9th Cir. 2005). These coordinated threats have continually targeted Plaintiff, attempting to intimidate her into withdrawing her claims rather than allowing them to be adjudicated on the merits.

The filing was strategically submitted prior to Plaintiff's opposition brief, timed to interfere with her ability to file a proper response. Such tactics mirror intimidation strategies courts have observed in cases involving high-net-worth individuals, but here they were directed against Plaintiff to achieve the same silencing effect. The non-party

reportedly faced charges in New Orleans proceedings, including extortion, false reporting, and assault with a deadly weapon, and impersonated attorney Eric Hessler in a circulated letter by the nonparty (Exhibits 3 and additionally). Independent sworn declarations (Exhibits 1-5) denounce this misconduct and discredit the non-party entirely.

Procedurally, the non-party filing violates **Rule 5.2(a)** by disclosing Plaintiff's full Social Security number on multiple pages and on page 41, even while some pages expressly indicated they should be sealed. Plaintiff complied with **Local Rule 7.14** by contacting Defendant's counsel to determine their position on sealing and striking, but counsel never responded. This silence further underscores the impropriety of the non-party's filing. Courts have consistently held that where filings are used as instruments of perjury, intimidation, or improper disclosure of personal identifiers, sealing and striking are necessary to protect litigants and judicial integrity. See *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).

The non-party filing exposed Plaintiff's full Social Security number on page 41, despite acknowledging it should be sealed, directly violating Rule 5.2(a).

The coordinated misconduct between Barresi and Meador exemplifies sophisticated intimidation tactics more commonly associated with high-profile or high-net-worth disputes. Nearing default, Barresi orchestrated this false crisis to prevent Plaintiff from exposing his pattern of exploiting wealthy victims, witnesses, and alleged survivors by illegally recording attorneys' calls and manipulating outcomes for financial gain.

Plaintiff's humanitarian and philanthropic commitments, including her peacebuilding training emphasizing collaboration and altruism, made her particularly vulnerable to such tactics. Courts have acknowledged the heightened risks faced by vulnerable litigants subjected to intimidation campaigns. See *Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. 1981)*. Barresi deliberately exploited Plaintiff's charitable instincts,

twisting her collaborative efforts into fabricated evidence. This misuse of Plaintiff's good-faith humanitarian efforts underscores why the Court's intervention is essential.

Barresi has repeatedly threatened Plaintiff with retaliation through false setups and exploitation, executing a calculated campaign designed to pressure her into abandoning her claims and take her property rather than permit fair adjudication (Exhibits C). Defendant even published Plaintiff's private identifiers and declared her "in exile" and an "outcast," conduct antithetical to the principles of justice.

Critical information was concealed from this Court: Defendant Barresi and non-party Meador failed to disclose that Meador was reportedly subject to potential criminal charges in New Orleans, including extortion and false reporting. A 2015 letter, attributed to attorney Eric Hessler and later leveraged by Barresi (Exhibit 3), purported to threaten the non-party with criminal charges. Such tactics, now leveraged, corrupt the judicial process and necessitate sealing and striking to prevent ongoing misuse. The letter explained: *"If you move forward in this action, Mr. Hessler will have you charged with extortion, filing a false police report, stalking, assault with a deadly weapon and a number of other charges,"* and warned that if Marton Csokas's name was released, there would be immediate adverse consequences in Florida. These threats, documented and corroborated by witnesses, mirror intimidation tactics condemned in *United States v. Pellicano*, 135 F. App'x 44 (9th Cir. 2005), and exemplify extortionate conduct of the kind proscribed under **18 U.S.C. § 875(d)**.

As a result of these coordinated actions, Plaintiff and her witnesses have suffered significant harm despite her good-faith attempts to "do the right thing." While Plaintiff initially withheld Meador's alleged criminal background and supported her accusations in good faith, she was subsequently subjected to retaliation. In jurisdictions including California where Honolulu police directed Plaintiff to the FBI authorities consistently treated Plaintiff as the victim rather than the perpetrator. This underscores the bad-faith nature of the filing and the urgent need for this Court's intervention to seal and strike Docket No. 85.

**Additional evidence from an independent professional colleague reveals the systematic nature of Meador's deceptive conduct:**

A sworn declaration from Molly Beaton, a professional who worked directly with Meador, reveals that Meador solicited assistance in fraudulent schemes designed to manipulate personal relationships, made false representations about having substantial professional backing and funding when no such support existed, and provided contradictory accounts of her alleged assault experiences to different individuals. The declaration further establishes that the non-party Meador engaged in conduct amounting to labor exploitation by luring the declarant across state lines with promises of $1,500 payment for directing a music video, then not compensating after extracting professional services.

As detailed in the Declaration of Molly Beaton (Exhibit 2), Ms. Beaton personally witnessed Angela Meador engaged in 'catfishing' presenting herself falsely to entrap Hollywood actors into sexual relationships because of their fame, power, or privilege. Ms. Beaton states: 'Very quickly, I saw Angela's real intentions. She was engaged in catfishing, presenting herself falsely in order to try to entrap Hollywood actors … I witnessed this pattern firsthand. She wanted me to misrepresent myself and help her catfish others. I refused.' Ms. Beaton further reports that even Angela's own best friend warned during the music video producing, 'If Angela tells you anything, don't believe her.' These sworn statements from a firsthand witness underscore Meador's pattern of misrepresentation and manipulation and strongly undermine her credibility before this Court. Meador then deployed these same tactics against Plaintiff, using manipulated photographs, sympathy-seeking narratives, and concealed intentions to garner Plaintiff's trust, only to set her up with perjury and falsehoods just as she had deceived Molly Beaton and the unpaid dancers during the music video scheme.

Critically, Meador frequently asserts that she will "lie" or "testify falsely" when there was no such allegation initially from Plaintiff or other witnesses who declared.

Such pre-emptive statements strongly undermine her credibility and suggest an intent to obstruct fact-finding. Her demands for silence further indicate an effort to prevent disclosure of documents or testimony that would contradict her claims. Moreover, her conduct has been not only inconsistent but also aggressive, creating danger for Plaintiff and other witnesses when combined with Defendant Barresi's coordinated actions.

Most significantly, the declaration establishes that Meador specifically targets fellow survivors, using shared trauma experiences to gain trust before exploiting them for her own benefit, and later retaliates by creating false accounts to stalk and harass those who initially supported her. This pattern demonstrates to witnesses that Meador operates as part of a broader network with Paul Barresi that systematically targets survivors who attempt to speak publicly about their experiences.

Barresi's documented history with Anthony Pellicano reveals a pattern of harming people on both sides of disputes. Pellicano was convicted of extortion for operating a criminal enterprise that systematically targeted multiple parties in legal disputes, using illegal surveillance, witness intimidation, and manufactured evidence to control outcomes while simultaneously exploiting and harming the very people he claimed to represent. Barresi's past ties to Anthony Pellicano suggest he continues such tactics, exploiting victims while targeting their supporters. This dual-targeting approach allows for maximum control over narratives while generating profits from multiple sources, representing a sophisticated form of legal process abuse.

This pattern of irrational and unfounded connections is characteristic of Meador's conduct. She has a documented history of falsely attributing unrelated incidents to others. For example, she attempted to connect a hiking trail incident to an individual from over a year prior and after the New Orleans accusations of falsities. As in the present situation, she falsely connects individuals and attributes malicious behaviour to them when they have no knowledge of the accusations.

**Declaration of Lindsey Burrill** (Exhibit 4): Lindsey Burrill states she was served twice but felt reassured because Plaintiff included a cover letter as Connecticut

servers suggested. She also confirms Barresi harmed Plaintiff and her mother. Her testimony shows Plaintiff's service was proper and Barresi's actions caused the harm.

Full sworn declarations of Hamilton, Beaton, Burrill, and others are attached as Exhibits 1-5 for the Court's review.

**FACTUAL BACKGROUND**

As previously noted, Docket No. 85 was filed publicly with Plaintiff's full Social Security number, in violation of Rule 5.2., which requires redaction of personal identifiers such as Social Security numbers.

Plaintiff's conduct was directed toward reconciliation and lawful reporting. She reached out to attorney Adam Waldman in good faith, both to reconcile and to report Defendant Barresi's illegal telephone recordings and disclosures. Plaintiff also manually lodged the audio recording entitled *'10 million, subpoenas, and telephone recordings'* to document Barresi's unlawful practices. During the subpoena process in her restraining order case, Plaintiff contacted nine individuals; all responded reasonably, including Lindsey Burrill and Philip Hamilton, except Defendant Barresi and non-party Meador, who reacted unreasonably and in bad faith. The non-party's aggressive interference with this process despite her documented history of extortion, lying, and catfishing actors (see Exhibit 2, Declaration of Molly Beaton) was a deliberate attempt to silence others in this litigation. Defendant Barresi then held Plaintiff helpless by leveraging recordings of her candid statements about her opinions, sympathies, and references to wealthy individuals, while simultaneously aligning her with Meador, a deceptive and aggressive figure.

Plaintiff alleges that individuals identified in that submission including Defendant Barresi and non-party Meador have engaged in a pattern of coordinated targeting, harassment, and fabrication of evidence. This includes the misuse of confidential or restricted information not available through legitimate discovery

MEMORANDUM BRIEF FOR UNOPPOSED MOTION TO SEAL, STRIKE, AND SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS

channels, as well as coordinated attempts to recruit others to silence and falsely accuse Plaintiff.

Such conduct is the abuse Rule 26(c) aims to prevent, allowing courts to limit discovery to protect parties from annoyance, embarrassment, or undue burden.

Additional evidence now demonstrates that this coordinated harassment extends beyond the named parties and involves individuals acting as enablers who specifically target survivors attempting to speak out. The result is ongoing intimidation, reputational harm, and safety risks to Plaintiff, compounded by the public dissemination of a filing that its own author described as "not public" and that contains confidential personal identifying information in violation of Rule 5.2.

**ARGUMENT**

**A. The Court should seal and strike Docket No. 85 to protect confidential information and litigation integrity.**

Courts may seal documents or restrict access where privacy, safety, or confidentiality outweigh the public's right of access. See *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing courts' power to seal to prevent improper use); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (privacy and safety concerns constitute compelling reasons to seal). Compelling reasons exist here: the non-party submission violates **Federal Rule of Civil Procedure 5.2(a)** by exposing Plaintiff's full Social Security number, was intended to be filed under seal according to its own text, and contains impertinent and scandalous material that exposes Plaintiff to harassment and risks of extortion.

Additionally, Fed. R. Civ. P. 26(c) authorizes courts to issue protective orders to prevent abuse of the discovery process. Because the non-party's filing includes information that could not have been obtained through legitimate discovery and was

instead weaponized to harass Plaintiff, sealing and striking are also necessary to enforce the discovery protections provided under Rule 26(c).

Additionally, courts may strike filings that contain "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). See *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992) (striking material meant to cast party in derogatory light); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (scandalous matter includes allegations that bear no possible relation to the controversy). The allegations in Docket No. 85 fall squarely within this standard and must be removed to protect the fairness of these proceedings.

For these reasons, Plaintiff respectfully requests that the Court immediately seal and strike the publicly available Docket No. 85, permitting any review to proceed in sealed or in-camera form to protect both Plaintiff's confidential information and the integrity of this litigation. See *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001); Fed. R. Civ. P. 5.2(a), 12(f).

**B. This serves as Plaintiff's supplement to her opposition brief.**

This Motion to Seal, Strike, and Supplement also functions as Plaintiff's supplemental opposition brief to address the non-party's false claims. The non-party filing was strategically timed and structured to interfere with Plaintiff's ability to respond, making supplemental briefing necessary to preserve her right to be heard and ensure fairness.

Courts have broad discretion to permit supplemental pleadings where fairness requires. **Rule 15(d), Fed. R. Civ. P.** provides that courts "may, on just terms, permit a party to serve a supplemental pleading." See *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (Rule 15(d) is "a tool of judicial economy and convenience" to ensure the case is decided on the full record); *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (Rule 15(d) gives courts broad discretion to promote

1
2
efficiency and fairness). Supplemental briefing here ensures Plaintiff's constitutional right to due process is not undermined by improper non-party interference.

3
**C. Clarification Regarding False Allegations Against Plaintiff**

4
5
6
7
8
9
10
11
12
13
Meador and Barresi have attempted to attribute fabricated claims to Plaintiff specifically, fabricating she alleged Defendant Barresi acted 'on behalf of' actors to cause harm. Plaintiff alleged Barresi creates false portrayals by inserting himself into disputes, illegally recording telephone conversations and using phone recordings that enable him to fabricate attachments while escalating exploitation. Plaintiff's filings and the evidentiary record confirm that these claims originate from Barresi's distortions himself (Exhibits 2-15), not from Plaintiff. Plaintiff's Second Amended Complaint makes it clear that Barresi engaged in illegal telephone recordings of attorneys representing ultra-high-net-worth individuals and actors, and then exploited those recordings to insert himself into disputes, not that he acted on explicit direction.

14
15
16
17
18
19
20
21
22
23
24
25
26
Plaintiff's Second Amended Complaint states only that Barresi "freelanced" himself by attaching to high-profile disputes through illegally recording telephone calls and manipulative tactics. The attorneys Barresi illegally recorded were representing individuals whose net worths each exceed $30 million. Such ultra-high-net-worth potential litigants are uniquely vulnerable to manufactured crises, because they are constantly surrounded by intermediaries who profit from escalating disputes and increasing costs. Exploiting private communications, Barresi inserted himself into this ecosystem, weaponizing confidential information to magnify conflict and extract value. This context makes clear that Plaintiff's allegations do not involve Barresi acting 'on behalf of' celebrities - but rather exploiting their wealth and vulnerability through independent bad-faith conduct. Barresi, acted at his own gain. Defendant Barresi, in concert with the non-party, falsely injected these allegations to inflame and distract from his documented misconduct.

27
28

This pattern is exemplified by Defendant Barresi's targeting of actors such as Eddie Murphy (whose net worth exceeds $200 million) and Johnny Depp (whose net worth exceeds $400 million). In such circumstances, constant crisis creation is not only profitable, it is also difficult to detect because Barresi manufactures accusers false, coerced, or scammed into ongoing disputes. These tactics are not the mischaracterizations forced through illegal recordings; they reflect a deliberate scheme to exploit the ultra-wealthy, with numerous intermediaries feeding into escalating disputes and increasing costs. In Plaintiff's case, both she and her family specifically resisted being used as accusers in Barresi's scheme, but Barresi and Meador nevertheless exploited them. This manufactured crisis campaign included Barresi's continued sensationalism about an alleged 'undertaker' and speculation that Adam Waldman might leave him, which demonstrates the ex parte, extra-judicial nature of his tactics (Exhibits 10, 16). Barresi's conduct shows a consistent pattern of forcing himself onto ultra-wealthy individuals like Johnny Depp by creating or manipulating accusers to generate leverage and profit (Exhibits 1-16, A-C).

Such bad-faith litigation conduct is sanctionable under **Rule 11(b), Fed. R. Civ. P.**, which prohibits filings made for an improper purpose or lacking evidentiary support. See *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Moreover, courts have inherent authority to strike perjurious and harassing material from the record. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). The Court should therefore disregard and strike these false claims.

**D. Comprehensive Refutation of Meador's Forty False Allegations**

**Initial Shock and Discovery of Coordinated Deception**

### 1. Initial Shock and Discovery of Coordinated Deception

Plaintiff discovered Angela Meador, with Barresi, fabricated forty false allegations and obtained Plaintiff's private information without her knowledge. These coordinated misrepresentations constitute a systematic campaign of deception

designed to silence Plaintiff and shield the perpetrators. Courts have recognized that allegations made in bad faith are properly stricken. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992). The scope and coordination here confirm that Meador acted not independently, but as part of Barresi's broader scheme to weaponize the legal system against Plaintiff.

### 2. Point-by-Point Refutation of False Allegations

• *Claims #1–18 (Initial Contact, Process Service, and Invalid Orders).* Meador mischaracterizes supportive communications as harassment, while contemporaneous emails show care and concern. She further misrepresents professional NAPPS-certified process service as surveillance, when in fact all contacts complied with established legal protocols. Documentary evidence demonstrates that only limited, lawful contacts occurred, contradicting claims of nefarious communication. The alleged restraining orders are legally invalid under Tennessee law for lack of proper service, with court records showing they were marked "UNDELIVERED" and "UNCLAIMED." Courts routinely strike such unsupported allegations. See *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003).

• *Claims #19–36 (Legal Process and Safety Claims).* The subpoenas served across jurisdictions were legitimate discovery devices. Meador's claim of twelve police responses lacks evidence, is impossible, and amounts to malicious false reporting. Courts disregard conclusory allegations unsupported by factual content. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). Meador falsely linked ordinary community activities, such as routine grocery shopping, to delusions. Plaintiff was not engaged in any such conduct, and the record shows no connection between these activities and the accusations. Such allegations are impertinent under *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

• *Claims #37–50 (Networking and Inconsistent Accounts).* Plaintiff's legitimate professional networking was falsely portrayed as "impersonation." Social media activity cited by Meador consisted of supportive career posts not fabricated accounts.

Evidence shows that it was Barresi, not Plaintiff, who contacted exploitative reporters. Moreover, Plaintiff's communications explicitly encouraged Meador's "freedom of speech" and offered help, undermining any claim of coercion. Meador's contradictory statements to different individuals further undermine her credibility, establishing her allegations as unreliable and subject to being stricken.

### 3. Systematic Pattern of Manufactured Evidence

When compared against the objective record, each allegation fails. Meador consistently fabricated false connections between unrelated individuals and ordinary activities, attributing malicious intent where none existed. As established above, under Rule 12(f), scandalous and immaterial allegations may be stricken.

## E. Independent Declarations Corroborate Pattern of Deception and Coordinated Harassment

Plaintiff submits multiple independent sworn declarations that establish the falsity of Meador's claims and demonstrate the coordinated nature of the bad-faith filings, false reporting, and extortionary conduct. As already noted, Rule 12(f) permits the Court to strike scandalous matter.

### Summary of Philip Andrew Hamilton's Declaration (Exhibit 5)

Philip Hamilton, a seasoned process server, confirms that Plaintiff's service of process was lawful, that Meador evaded service, and that Barresi coordinated with her to obstruct proceedings. Exhibits C further show Barresi threatening to take away Plaintiff's property, house, and financial assets while coordinating with Meador in this extortion scheme. Given Meador's fabrications and aggression, Plaintiff no longer seeks to compel her testimony or request documents from her, since discovery from someone with a demonstrated history of perjury would only produce fabrications and obstruct the core issue of Barresi's unlawful disclosures of telephone recordings.

**Declaration of Molly Beaton (Exhibit 2)**

Molly Beaton attests that she was deceived by the non-party into catfishing tactics, the non-party had implausible accounts, she refused to participate, and the non-party misrepresented her role. Her declaration supports Plaintiff's position that Barresi manufactures evidence and manipulates associates to further extortion schemes. This confirms that allegations tying such misconduct to Plaintiff are fabricated.

**Additional Witness Evidence Demonstrating Reasonable Response to Process Service**

Nine additional witnesses contacted with Hawaii subpoenas corroborate that Plaintiff's process service was entirely professional, demonstrating that Meador's negative reaction was an outlier. Connecticut servers even suggested Plaintiff add cover letters for witness comfort, showing her willingness to adopt best practices.

**Lindsey Burrill**, who was served twice and supports Mr. Depp's charity, testifies that she was reassured by Plaintiff's communications. She further confirms harm inflicted by Barresi on Plaintiff and her mother. This demonstrates that reasonable witnesses distinguish between lawful process and harassment, refuting Meador's claims.

Similarly, **Olivia Barash** responded warmly to Plaintiff's apologies and support, and **Jennifer Howell** acknowledged Plaintiff's sympathy, including her references to her charitable work. Unlike Meador, these witnesses provided corroborated, rational accounts.

It is particularly notable that Lindsey Burrill, Olivia Barash, and Jennifer Howell are publicly sympathetic to Johnny Depp and his counsel Adam Waldman, yet they nonetheless recognized the harm inflicted by Defendant Barresi, including his unlawful telephone recording practices. Their testimony underscores that, regardless of personal sympathies, Barresi and Meador's conduct was unreasonable, unlawful, and carried out in bad faith.

MEMORANDUM BRIEF FOR UNOPPOSED MOTION TO SEAL, STRIKE, AND SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS

Moreover, these witnesses allowed Plaintiff to reevaluate her own viewpoints upon discovering evidence that Mr. Waldman had been pulled into this unwillingly. Unfortunately, documentation proving the harm caused to Johnny Depp and Adam Waldman was withheld from Plaintiff due to Defendant Barresi's deliberate efforts to promote scandalous portrayals. This further demonstrates Barresi's pattern of manipulating evidence to distort the record and unfairly malign all parties involved.

### Collective Impact of Declarations

Taken together, these sworn declarations establish that:

1. Meador has a documented history of deception, manipulation, and false reporting;
2. Her allegations are contradicted by multiple independent witnesses;
3. She operates in concert with Defendant Barresi as part of a coordinated harassment network; and
4. Her characterizations of Plaintiff and others are demonstrably false, scandalous, and immaterial under Fed. R. Civ. P. 12(f).

As the Supreme Court has emphasized, courts have both inherent authority and a duty to address coordinated bad-faith litigation conduct. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980). Here, the independent declarations leave no doubt that Meador's filing (Dkt. 85) is perjurious and abusive. It should be sealed to protect Plaintiff's private information and stricken to safeguard the integrity of these proceedings.

### F. Evidence of Coordinated Criminal Enterprise

The record establishes that the non-party and Defendant Barresi act in concert as a coordinated criminal enterprise that:

- **Targets survivors** who attempt to speak publicly about their experiences;
- **Uses forged documents and fabricated evidence** to discredit victims;

- Engages in **stalking, false reporting, extortionary conduct, and threats of violence, including against family members and minor children**; and
- **Disguises themselves as "helpers" or "advocates"** to gain access to survivors before weaponizing that trust.

Plaintiff has also noted Isaac Baruch, because he may provide objective evidence of coordination, including timing and frequency of communications by Defendant Barresi.

Such conduct is not protected petitioning activity but constitutes sanctionable bad-faith litigation. Courts have consistently held that fraudulent filings and fabricated evidence represent "fraud on the court" and justify the most severe remedies, including striking and dismissal. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (inherent authority to address bad-faith litigation); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("A litigant who fabricates evidence is committing a fraud on the court"); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraudulent documents cannot be permitted to stand). Permitting Docket No. 85 which contains forged material and perjurious allegations to remain in the record would perpetuate that abuse. The Court's intervention is required to strike the filing and protect the integrity of these proceedings.

**False Attribution of Barresi's Own Fixations**

As part of their coordinated campaign, Meador and Barresi falsely accused Plaintiff of alleging that Barresi "kills on behalf of actors" in any official pleading. This constitutes perjury and misrepresentation. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (perjury is false testimony concerning a material matter with willful intent).

In reality, it is Barresi who fixates on high-profile incidents and weaponizes those fixations to create scandalous narratives. Evidence demonstrates that Barresi highlighted "towel evidence," 'undertakers,' and illegally recorded confidential

attorney communications involving celebrity litigants (Exhibits 1-16). Such conduct strikes at the heart of attorney-client privilege. *See United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir. 1990) (protecting attorney-client communications from unlawful interception). Based on this documented pattern of illegal recordings, it is reasonably inferred that even his own counsel may have been subjected to such misconduct, explaining the lack of restraint on his activities.

### Historical Pattern of Extortion and Fabrication

Barresi's history of extortion and fabrication is well-documented. In a prior case involving actor John Travolta, he was implicated in a $100,000 extortion attempt that relied on fabricated claims and the exploitation of confidential communications[1]. This scheme mirrors his present conduct with Meador: fabricating evidence, projecting his own misconduct onto others, and targeting individuals connected to high-profile litigation.

Such tactics amount to fraud on the court. The Supreme Court has long held that fabricated evidence cannot be tolerated. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on the court "cannot be condoned for the sake of finality" and requires corrective action); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (fabricating evidence is a fraud on the court).

### Ongoing Extortionary Conduct

Fabricated allegations, forged documents, and unlawful surveillance of attorney-client communications constitute both improper litigation and potential federal crimes. Barresi and the non-party further monitored Plaintiff's communications with other witnesses, e.g., Ms. Beaton (Exhibits C). This is prohibited under 18 U.S.C. § 1512 (extortionary obstruction and intimidation), 18 U.S.C. § 1343 (wire fraud through fabricated communications), and 18 U.S.C. § 371 (conspiracy). Overlap between these statutes and misconduct is evident in the record.

---

[1] https://www.huffpost.com/entry/the-john-travolta-saga-a_b_1589777

Courts have long recognized that fraud and fabricated evidence "vitiate even the most solemn proceedings." *United States v. Throckmorton*, 98 U.S. 61, 65–66 (1878). Likewise, under *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), courts possess inherent power to sanction conduct that abuses judicial process and constitutes fraud on the court.

Allowing Docket No. 85 which contains fabricated, scandalous, and defamatory matter to remain on the public docket would perpetuate ongoing abuse and transform this Court's record into an instrument of extortion. Immediate sealing and striking is therefore required both to protect Plaintiff's safety and privacy, and to safeguard the integrity of the Court's own proceedings.

## G. Pattern of Bad Faith Manufacturing of Allegations to Avoid Accountability

The coordinated conduct by Defendant Barresi, Meador, and "Justin" represents a calculated attempt to manufacture false allegations against Plaintiff, timed to coincide with Barresi's near-default in prior proceedings. This pattern reflects a systematic effort to deflect attention from Barresi's own misconduct by weaponizing a non-party with alleged criminal charges to fabricate false narratives. Courts have long recognized that pleadings filed in bad faith, without evidentiary support, and for purposes of harassment violate Fed. R. Civ. P. 11(b) and may be stricken. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

Plaintiff has consistently been recognized by law enforcement and neutral observers as a victim of exploitation. This creates a strong motive for Defendant Barresi to manufacture false allegations to obscure his own liability if it is confirmed that he has harmed both sides of disputes. His tactics mirror those of Anthony Pellicano, his former colleague who was convicted of extortion for operating a criminal enterprise that systematically targeted both alleged victims and their supporters. *United States v. Pellicano*, 135 F. App'x 44 (9th Cir. 2005).

MEMORANDUM BRIEF FOR UNOPPOSED MOTION TO SEAL, STRIKE, AND SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS

### The Pellicano Connection and Pattern of Targeting All Parties

Pellicano's conviction arose from his use of illegal surveillance, witness intimidation, and manufactured evidence to manipulate outcomes in high-profile disputes. The parallel concern here is clear: if Barresi is found to have exploited alleged victims while simultaneously targeting those who supported them, it would represent the same type of systematic abuse that federal authorities deemed criminal in *Pellicano*. As established earlier, fabricated evidence constitutes fraud on the court and cannot be condoned., courts possess inherent authority to strike and sanction bad-faith litigation conduct to protect judicial integrity.

### Evidence of Targeting Both Sides

- **Coordination with Meador.** Meador's compromised credibility is evident: in a recorded call she admitted facing potential criminal charges for extortion, false reporting, stalking, and assault with a deadly weapon. Yet Defendant Barresi relied on her as a mouthpiece, using her compromised status to advance fabricated allegations. Courts have held that reliance on witnesses with known credibility issues to inject perjurious claims constitutes sanctionable bad faith. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

- **Targeting of Plaintiff.** Plaintiff was targeted with fabricated claims precisely because she attempted to support what she believed was a fellow survivor. Courts recognize that retaliatory filings intended to punish protected participation or support for victims constitute an abuse of process and may be stricken. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992).

- **Manipulation of Legal Process.** The timing of the false allegations deployed at the moment Defendant Barresi faced potential default underscores their tactical nature. Courts have made clear that fraud on the court, including perjurious filings strategically timed to derail accountability, "cannot be condoned for the sake of

finality." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

- **Multiple Sides Exploitation.** Barresi's documented pattern of exploiting wealthy victims, witnesses, and alleged survivors through illegal recordings of attorney communications mirrors the methods exposed in *United States v. Pellicano*, 135 F. App'x 44 (9th Cir. 2005). As in Pellicano, such tactics escalate disputes and weaponize confidential information for financial gain, constituting fraud and extortion.

## The Manufacturing Timeline

The suspicious timing of these false allegations coincides with periods when Barresi faced legal accountability for his documented misconduct, including hundreds of phone calls to a non-party, acts of intimidation, and publication of classified information. Rather than face these consequences, he deployed a network that included an individual with alleged criminal charges to create a fabricated counter-narrative. This deliberate deflection constitutes sanctionable bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

### Risk of Systematic Harm to Legal Process

This pattern shows Barresi's systemic methods: harming both victims and their supporters while manipulating disputes among the ultra-wealthy. His documented use of illegal recordings of attorney-client conversations is especially troubling, as courts have consistently protected such communications from intrusion. *United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir. 1990). Allowing such tactics risks normalizing the very extortion and manipulation prosecuted in *Pellicano's* enterprise.

### Universal Witness Consensus and the Non-Party's Delusional Behaviour

Independent witnesses and process servers all confirm Meador is lying. Their unanimous testimony shows her allegations are fabricated, unlike her irrational claims that routine activities like grocery shopping amount to surveillance. Courts

may strike such immaterial and prejudicial claims under Rule 12(f) as scandalous. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

### Continued Perjury Without Counsel Intervention

Meador and Barresi continue to commit perjury without correction or restraint. Significantly, Barresi's own counsel has not signed or endorsed these filings, underscoring their lack of credibility. Courts have recognized that when parties persist in perjury and counsel declines to validate such filings, the conduct may be treated as evidence of bad faith. Courts possess inherent authority to sanction such abuse of process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

### Plaintiff's Reasonable Fear for Safety and Freedom

Plaintiff reasonably fears for her safety, privacy, and future livelihood. The use of sophisticated intimidation tactics typically directed at ultra-high-net-worth individuals combined with the publication of her private identifiers elevates the threat well beyond ordinary litigation risks. The involvement of an individual identified as "Justin" further underscores the coordinated nature of this harassment campaign, as Barresi's network leverages disputes among wealthy individuals to manufacture false criminal allegations. Courts have recognized that litigants are entitled to protection against bad-faith threats to their safety. *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

The documented pattern of escalating misconduct, perjury, and coordinated harassment demonstrates a calculated campaign to undermine Plaintiff's ability to litigate fairly and safely. Given the overwhelming corroborating testimony, the perjurious nature of the non-party submission, and the grave risks to Plaintiff's safety and privacy, Docket No. 85 must be sealed, stricken, and denied in its entirety. Allowing it to remain would improperly weaponize this Court's docket as an instrument of extortion, false statements, and fraud on the court, contrary to the

Court's duty to preserve the integrity of judicial proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

## H. Meador Should Be Believed When She States She Will Lie

Meador's own statements, in which she explicitly declared she would lie and testify falsely, are admissible as admissions under Federal Rule of Evidence 801(d)(2). These repeated assertions were not hypothetical but direct acknowledgments of an intent to commit perjury. Such declarations constitute evidence of consciousness of guilt and deliberate deception. Courts have long held that when a litigant admits an intent to testify falsely, their testimony must be treated with suspicion and may be disregarded. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). See also *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (perjury strikes at the heart of the truth-seeking function of the justice system).

Her insistence on lying, combined with her refusal to disclose details of her New Orleans charges, demonstrates an awareness that transparency would destroy her credibility. The fact that these red-flag admissions were not immediately scrutinized underscores the sophistication needed to recognize bad faith for this Court's review. Moreover, her attribution of false statements to uninvolved third parties none of whom were interviewed further reveals a deliberate pattern of fabrication. Any reasonable evaluation of her testimony shows that it is not credible reporting, but manufactured deception intended to mislead the Court.

### Extortion, False Reporting, and Perjury

The conduct attributed to Barresi and Meador amounts to extortion, false reporting, and perjury behaviour that should trigger federal review. Because their coordinated actions involve interstate communications, the dissemination of classified and personal information, and the systematic targeting of survivors, this misconduct extends beyond the scope of ordinary local jurisdiction. Federal courts have consistently recognized that fraud on the court including false statements and

manufacturing requires correction to safeguard judicial integrity. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fabricated evidence constitutes fraud on the court that cannot be tolerated).

This coordinated misconduct by the defendant and non-party implicates multiple federal criminal statutes, including: **18 U.S.C. § 875(d)** (extortion of "anything of value"), **18 U.S.C. § 1343** (wire fraud through fabricated communications and forged letters), and **18 U.S.C. § 371** (conspiracy to defraud and obstruct justice).

To ensure the Court has the benefit of all relevant factual materials, Plaintiff has sought records from Isaac Baruch. These records and his personal statements may corroborate the pattern of extortionate coordination at issue.

**The "Conservative Viewpoint" Extortion Scheme**

The coordinated campaign appears designed to exploit individuals motivated by compassion for survivors or guided by strong moral commitments. It creates a false dilemma: either immediately denounce the accuser as a liar contrary to natural human decency or face retaliatory false accusations in legal proceedings. Such tactics distort both human compassion and the judicial process, placing individuals in impossible positions. Courts have condemned this type of misuse as an abuse of process, where legal procedure is "perverted to accomplish an ulterior purpose." *Board of Ed. of Farmingdale v. Farmingdale Classroom Teachers Ass'n, Inc.*, 343 N.E.2d 278, 283 (N.Y. 1975). Here, the process was weaponized not to resolve a legitimate dispute, but to coerce silence and punish Plaintiff's humanitarian instincts.

**Improper Legal Process and Immediate Perjury Response**

Filing perjurious allegations before Plaintiff could respond denied her fairness and was a calculated abuse of procedure. Meador's history, including prior allegations of extortion and false reporting in New Orleans, underscores her propensity to fabricate. Courts have inherent power to strike such abusive filings and sanction who engage in bad-faith perjury. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

**Unprecedented Litigation Conduct**

Plaintiff now faces grave risks to her safety and liberty because she acted in good faith to support what she believed was a fellow survivor. Tactics usually seen in ultra-high-net-worth disputes publishing classified information, working with individuals tied to extortion and perjury, and fabricating allegations amount to extraordinary misconduct in civil proceedings. Courts have a duty to prevent such weaponization of judicial process. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

**Need for Sophisticated and Ethical Federal Authority Review**

Because this misconduct spans states, implicates federal crimes, and threatens judicial integrity, federal oversight is necessary. Local courts should not be left to manage a criminal enterprise that abuses judicial process and silences survivors through perjury and threats. *See In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).

## CONCLUSION AND TO PRESERVE INTEGRITY

At minimum, this Court must seal Docket No. 85 to protect Plaintiff's private information and preserve the integrity of these proceedings. The improper disclosure of Plaintiff's Social Security number and other identifiers exposes her to identity theft. Plaintiff showed concern for wealthy individuals, even in films, during Barresi's illegal telephone recording schemes and disclosures. While the coordinated misconduct may require broader review in other forums, the immediate relief within this Court's authority is to strike the nonparty improper filing and prevent its misuse. Plaintiff therefore respectfully requests that this Court grant the relief set forth below.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter an order:

A. Sealing the Non-party's Docket No. 85 and restricting it from public access pending in-camera review, to protect Plaintiff's confidential Social Security number and other sensitive personal information improperly disclosed in violation of Fed. R. Civ. P. 5.2(a);

B. Striking the Non-party's Docket No. 85 from the public docket in whole, or alternatively in part, as containing immaterial, impertinent, or scandalous matter under Fed. R. Civ. P. 12(f), with any replacement filing permitted only under seal or for in-camera review;

C. Accepting this Motion as Plaintiff's supplemental opposition brief to address the non-party's false allegations, consistent with Fed. R. Civ. P. 15(d);

D. Directing the Clerk of Court to correct the docket to reflect sealed status and ensure compliance with Rule 5.2 regarding redaction of personal identifiers;

E. Finding that these proceedings have been interfered with in bad faith through coordinated false and bad-faith submissions designed to exploit Plaintiff and compromise the integrity of this litigation; and

F. Issuing relief under Fed. R. Civ. P. 26(c) to ensure that discovery safeguards are not circumvented by improper or unauthorized filings.

G. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 29, 2025 in

Cannes, France

Christina Taft

*Plaintiff Propria Persona*

MEMORANDUM BRIEF FOR UNOPPOSED MOTION TO SEAL, STRIKE, AND SUPPLEMENT NON-PARTY'S DOCKET NO. 85 SUBMISSIONS

# LR. 11-6.1 Certification

I hereby certify that this brief contains 6,986 words, excluding caption, tables, signature block, and certificate of compliance - meeting the 7,000 words limit requirement and on 25 pages.


Christina Taft                                          September 29, 2025_____

Christina Taft
*Plaintiff Propria Persona*                             Date