Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT,<br><br>    Plaintiff,<br>vs.<br><br>PAUL BARRESI, et al, inclusive,<br><br>    Defendants. | Case No.: 5:24-cv-01930-TJH-DTB<br><br>[Hon. David T. Bristow, Magistrate Judge]<br><br>**DECLARATION OF PLAINTIFF TO SUPPORT UNOPPOSED MOTION TO SEAL NON-PARTY EXPOSURE OF PRIVATE INFORMATION -**<br>**BAD FAITH, STOPPING REPORTING ILLEGAL TELEPHONE RECORDINGS (EXTORTION)**<br><br>*[Filed concurrently with Unopposed Motion for Sealing and Striking Non-Party Submission Docket 85, Exhibits and Declarations in Support of Brief, Exhibits to this Declaration, Certificate of Service]*<br><br>Date: October 2, 2025<br>Time: Under submission |

## DECLARATION OF PLAINTIFF IN SUPPORT OF MOTION TO SEAL AND STRIKE NON-PARTY EXPOSURE OF PRIVATE INFORMATION

I, Christina Taft, declare as follows:

1. I am the Plaintiff in this matter and make this declaration in support of the Motion to Seal and Strike Non-Party Submissions (Dkt. 85). If called as a witness, I could and would testify competently to the facts stated herein.

2. I plea and request that the Court seal my private information unlawfully and maliciously exposed by Defendant Paul Barresi and non-parties in concert with him, including but not limited to disclosing my **full Social Security number (pg 41 with perjury) for extortion purposes while he records wealthy individuals**.

3. I am a humanitarian by practice. For many years I have devoted myself to assisting survivors of exploitation and abuse, promoting support, collaboration, and peacebuilding education. **My peacebuilding education** (Exhibit B) emphasizes restorative practices, non-adversarial communication, and collaborative problem solving are principles I have relied upon in outreach and communications to advance safety and healing, for both affluent individuals and alleged survivors, rather than to inflame public controversy.

4. The coordinated attacks against me involve **sophisticated tactics typically deployed against ultra-high-net-worth individuals** (above $30 million). Defendant Barresi, in particular, did not want exposure of his **extortionate schemes** that cost victims hundreds of thousands to millions of dollars through his illegal telephone recording operations, threats to cause criminal actions, and systematic schemes to extract information from **all sides of disputes**. **These**

**tactics are designed to force wealthy targets into submission through manufactured crises** and coordinated harassment campaigns that exploit systems as a tool of extortion. In particular, by inflaming public sentiment about figures in the entertainment industry whose public images influence authorities, while impugning me for having that knowledge, Barresi knew he would manufacture harm to me through the resulting public and official reactions falsely. Every other person responded kindly and reasonably, including when receiving subpoenas.

5. Throughout my involvement in these matters, my conduct has been driven by that **humanitarian commitment: to foster safe, respectful dialogue, to protect vulnerable people from exploitation, and to pursue lawful remedies rather than public spectacle**. Exhibits A and B, and Exhibits 1–15, that are true and correct, contain the communications and documentary record that demonstrate my pattern of good-faith, humanitarian, diplomatic peacebuilding conduct.

6. **In 2023**, I and executive protector Juan Brooks observed Defendant Paul Barresi attacking Johnny Depp and Isaac Baruch, while using his **illegal telephone recordings** of Adam Waldman, and Brooks unfortunately informed Paul Barresi of his investigation in October 2023. Barresi moved to silence me from **ethical response**. After this revelation, two months later in January 2024, I was shown that Defendant Barresi had engaged to direct non-parties, including Meador, to fabricate allegations and to participate in a coordinated campaign aimed at extorting, silencing, using our recording, and harming me. To the best of my recollection and belief, this coercive coordination was in place. This scamming by Barresi included instructing, disclosing recordings, or otherwise inducing Meador to issue false statements and to join his attacks on me despite my not being present for, or the source of, the underlying communications that he disclosed.

7. Exhibit A documents communications showing that **attorney Adam Waldman, an advocate for Johnny's financial health, responded reasonably and professionally to my outreach** (including a public response following prior polite private texts and emails). By contrast, Barresi secretly recorded telephone conversations involving Mr. Waldman and published or threatened to publish their content. Exhibit A and the accompanying exhibits show that Barresi recorded telephone calls without the consent of participants, and that he then weaponized those recordings publicly in a campaign against me and others. Exhibits 1-4 and related exhibits document unlawful recording, dissemination, and doxxing conduct. Ms. Beaton attests to non-party's scams and "catfishing."

8. The coercive campaign described above coincided with a pattern of additional misconduct by Barresi in 2023–2024. On information and belief, and as reflected in the attached exhibits, Barresi possessed and used illegal telephone recordings of multiple individuals, including recordings involving Adam Waldman and my family. Those recordings were used as material to attack and to *manufacture silence to advocates who helped wealthy individuals*, survivors or those engaged in peacebuilding or investigative work. Exhibits 1–4, 5–9, 10-16, and A-C contain documentary, witnessing, and public evidence of these practices.

9. I further submit that Barresi's actions were not isolated or accidental: they fit within a pattern of public threats, illegal telephone recordings, and disclosures, he announced and promoted, including his simultaneous use of classified information such as a "Depp Declassified" series (with chapters described publicly as "Cinderella Man") (Exhibits C), and other disclosures of private information involving third parties such as Richard Johnson and AMI's Dylan Howard. Exhibits 5–9, 10–15, and C show Barresi's public activity, promotion,

and related filings that corroborate this pattern of coordinated attacks. Those planned publications served as a vehicle for Barresi to amplify the unlawfully recorded materials and false statements, to pursue and harm me, and to create leverage that functionally operated as extortion or a threat of extortion.

10. The conduct described above is exacerbated by the involvement of non-parties who, at Barresi's direction or with his active coordination, made false statements, engaged in perjurious representations, and participated in public attacks intended to coerce me and deprive me of property and reputation. Exhibits 2–3 (declaration of a witness in details, a circulated impersonating letter and related material), Exhibits 1 to 4 (new declarations showing coordinated harassment and doxxing), and Exhibits A–C together show a coordinated effort to manufacture scandal, contort empathy to take property, and to weaponize classified records against me.

11. To be clear, the unlawful recording, dissemination, and public publication of my private information (including my full Social Security number) and the related threats, coercive disclosures, and coordinated falsehoods served no legitimate purpose. They were used to intimidate me, to deplete my resources, to interfere with **my sympathy to survivors and very wealthy individuals**, and to create leverage and public pressure that constitutes extortionate conduct. Exhibits 1–4, 5–15, A, C document doxxing, harassment, and public dissemination of sensitive materials. **I provided support and compliments, usually received reasonably.**

12. For context and to assist the Court, the conduct described above implicates federal and state statutory prohibitions against extortion, threats to extort for forcing compliance, and unlawful recording, among other offenses.

13. The exposure of my private information was carried out in **bad faith**, with the intent to harass, intimidate, lie, and inflame public perception against me.

Defendant Barresi has repeatedly held himself out publicly as a "Hollywood fixer" and has a documented history of sensationalism, exploitation, and misconduct. He manufactures falsehoods to cover up his unlawful acts. He used this tactic here to inflame and intimidate, consistent with his threats earlier in this litigation to weaponize the judicial process and manipulate individuals in concert with him as a tool of extortion—a violation of both federal and state laws.

14. In history, my mother Victoria and her friends Michelle Diamond, Lori Mattix, and Pamela were involved with A-Listers and therefore, I had sympathy more-so towards this situation, knowing that Barresi categorically misrepresents individuals with public profiles. Lori Mattix humanized and questioned why these issues while sympathizing with Johnny Depp, as formally she had worked for his sister Christi. Moreover, I was taught that these matters should be not exploited or sensationalized. In particular, it's well-documented that Sylvester Stallone was victimized by Barresi's tactics and testified against Barresi's in concert colleague Anthony Pellicano[1] – who did not write or speak in the deranged way Barresi does. Michelle dated Stallone and alleged he had eight bodyguards. Often Barresi approaches intermediaries to scam figures, while he engages in his illegal recording practices, fabricating his connections and forcing himself onto them.

15. The submission of false statements, lies, and fabricated materials in connection with this matter constitutes **perjury** and demonstrates a pattern of procedural abuse designed to prejudice this Court and cause me severe harm.

16. I categorically and unequivocally deny the false allegations contained in the non-party submission at Docket 85. **The claims made by the non-party are**

---

[1] "Stallone on witness list for Pellicano trial," https://www.today.com/popculture/stallone-witness-list-pellicano-trial-1C9426184, March 6, 2006. "Private investigator Anthony Pellicano was the architect of a criminal enterprise that spied on Hollywood's rich and famous, a federal prosecutor said Wednesday."

**absolutely false, fabricated, and without any basis in fact or truth**. These false statements were made with malicious intent to prevent my reports, damage my reputation, and support Defendant Barresi's extortionate campaign against me. The non-party's submission constitutes perjury and a deliberate attempt to mislead this Court with manufactured evidence designed to cause me harm. I have never engaged in the conduct alleged, and the non-party's claims are part of the coordinated scheme of extortion described throughout this declaration. The submission of these knowingly false statements to this Court represents a serious abuse of the judicial process and constitutes contempt of court. **Exhibits C show threats by Barresi to take my property**, my house, and all of my money and his attacks on Johnny, Isaac Baruch, and Adam Waldman in coordination with private information releases, including sensitive telephone calls, that lawyers 'on side of' Johnny denounced as illegal, yet they're helpless against his disclosures. Olivia Barash responded reasonably and warmly to me – unlike the non-party.

17. In particular, my advocacy to be skeptical and to have sympathy against exploitation makes me a person that Barresi wants to silence. I have specifically pointed out his illegal telephone recording practices - the same practices that led to his colleague Anthony Pellicano being charged for extortion. **The escalations by Barresi and the Non-Party were intentionally designed to prevent me from reporting Barresi's illegal phone recording practices, as my sympathy growing for Adam Waldman and Johnny Depp would have exposed and ended Barresi's extortionate schemes.** *It is false to claim that I characterized Barresi's deranged behavior as being "on behalf of" any individual,* **as my filing clearly established that Barresi's conduct represents his own**

**freelancing behaviors and <u>*false attachment*</u> to public figures, *starting with his illegal telephone recordings and disclosures*. He misrepresents public figures.**

18. I have needed to seek refuge, losing more savings and lost significant weight. My speech and reporting exposed a deranged figure, Barresi, that has long preyed on ultra-high-net-worth individuals, who have intermediaries that feed on the costs increasing from his derangement of **manufacturing crises** and accusations. Barresi has hid behind his false use of an ideology of "Hollywood" to never face consequences. By using recordings and contacting individuals, Barresi manufactures a delusional persecution space, one that I tried to leave permanently. However, Barresi and the non-party agreed to use perjury and falsehoods, so that his scheme would never end. In this society, both sides of a dispute have to denounce him. I have been a victim of scams in my life, with people with exaggerated claims, though nothing as horrific as Barresi's scams.

19. I mentioned to Barresi's counsel that attorney Marty Singer was highly likely illegally recorded on the telephone by Barresi. This is in particular highly sensitive considering his exploitation of demise and his first incident related to accusations involving Eddie Murphy, an ultra-high-net-worth-individual, that Barresi purposefully sought out 'scandal' about, as explained by Mark Ebner in "The Bagman." The tactic of Barresi's record-keeping and demanding funds from lawyers of actors about disclosures is explained[2] in this same article. The same patterns. Their silence when I brought up issues about the non-party to them, suggest that they do not believe her false accusations, and do not want to participate any further. However, I was shocked to see them copied onto the non-

---

[2] "…a tape recorder secretly rolling in his pocket… It was on a pretense. That's my m.o.," says Barresi…I gave them verbatim what the book had to say," says Barresi. "I had everything recorded… The lawyer refused to pay for the Sanello information," from "The Bagman," originally published in the *New Times LA*, April 26, 2001, https://www.hollywoodinterrupted.com/single-post/2019/12/20/the-bagman

DECLARATION OF PLAINTIFF IN SUPPORT OF UNOPPOSED MOTION TO SEAL AND STRIKE NON-PARTY EXPOSURE OF PRIVATE INFORMATION

party's emails. Ms. Beaton confirms more behaviors by Barresi and Meador, to silence us communicating and from any new witness declarations, and especially stating that Barresi records telephone calls illegally and illegally discloses calls (Exhibits C). I have struggled to support Johnny's circle during Barresi's tactics.

**Exhibits Supporting Motion to Seal**

5. I have attached true and correct copies of 1–16 and A-C exhibits in support of this motion. A summary of their contents and relevance follows:

- **Exhibit A:** Public communication between Plaintiff and attorney Adam Waldman. Waldman responded reasonably and respectfully, even acknowledging Plaintiff's birthday wishes, showing professionalism. This stands in contrast to Defendant Barresi's unlawful secret recordings of Waldman without consent (violating wiretap and privacy laws). This reasonable response by Adam to me, after processing and to peacebuild, further contrasts with the unreasonableness of the nonparty, which consisted of perjury and agreements to extort Plaintiff.

- **Exhibit B:** Further evidence of the contrast between lawful, reasonable communications from legitimate actors and the non-party's bad-faith conduct, including false accusations and coordinated attacks with Barresi. This supports Plaintiff's claim that Barresi and the non-party acted together with intent to extort, consistent with prior warnings referenced by New Orleans police, including "extortion, filing a false police report, stalking, and assault with a deadly weapon." This aggression contrasts plaintiff's peacebuilding education.

- **Exhibit 1 (Meet-and-Confer Correspondence):** Documentation showing compliance with local rules requiring conference prior to filing motions. This correspondence occurred more than ten (10) days before this motion and included

Plaintiff's good-faith plea to remove her Social Security number from circulation, Sept 15, 2025 email. It also raised the issue of prior extortion and false reporting by the non-party, which had been circulated by the non-party themselves.

- **Exhibit 2 (Declaration of Molly Beaton):** A witness statement describing experiences with the non-party Meador, including allegations of "catfishing" individuals for fame, power, and wealth, unprofessional conduct during a music video production, false claims about legal credentials, and coordinated harassment involving Defendant Barresi and others. Ms. Beaton further confirms that Barresi publicly posted Plaintiff's full Social Security number on X (Twitter), which was flagged as doxxing and removed by the platform.

- **Exhibit 3 (Impersonating Letter):** A historical letter attributed to Barresi, PANO lawyer Eric Hessler, and Marton Csokas forged to be threatening Angela Meador with charges of "extortion, filing a false police report, stalking, assault with a deadly weapon, and a number of other charges." The document's content demonstrates that the **New Orleans Police Department's concerns about extortion and false reporting by the non-party were well-founded**. The letter's coercive tone, coupled with its lack of letterhead, metadata, or signature, does not appear to be legitimate legal communication. I believe the non-party wrote it.

  - After Barresi took the telephone recording of us speaking, I began to fear the contents of this letter's claims and her potential aggression towards me. I still however thought in the conversations that she did not want our telephone recording disclosed. By preventing my legal claims related to Barresi telephone recording disclosures, this in effect extortion in many jurisdictions.

- **Exhibit 4 (Declaration of Lindsey Burrill):** A witness's statement detailing a reasonable cover letter received, observations of Defendant Barresi's conduct,

including harassment tactics, exploitation of Plaintiff's personal information, and creation of recordings containing private information about Plaintiff. Ms. Burrill confirms Barresi's revoked license and describes his conduct as malicious and without legitimate purpose. Ms. Burrill supports Johnny's charity and still saw the harm by Barresi. Further, she attests to my good intentions that she witnessed.

- **Exhibits 5–9 (Evidence):** Barresi publicly cryptically connecting himself to individuals and to autopsies, demise. Exhibits C includes references to planned exposures such as "Depp Declassified" with a "Cinderella Man" chapter.
- **Exhibits 10–15 (Related Materials):** Demonstrate the ongoing pattern of procedural abuse and exploitation. All of these exhibits are true and correct.

**Applicable Statutes on Extortion and Illegal Recordings**

6. Defendant's and the non-party's conduct falls under several federal and state prohibitions against extortion, threats, and unlawful recordings:

- **18 U.S.C. § 875(d):** Prohibits interstate communications containing threats to injure reputation with intent to extort money or "anything of value." Publication of Plaintiff's Social Security number and threats to seize Plaintiff's family property fall under this statute.
- **18 U.S.C. § 1951 (Hobbs Act):** Criminalizes extortion affecting interstate commerce, including obtaining property by threats or fear. Defendant's conduct—threats to expose Plaintiff's private life and reputational coercion—meets this definition.
- **California Penal Code §§ 518–524:** Define extortion as obtaining property or official acts through threats, including threats to disgrace or expose secrets. § 524 applies even where the property is not obtained.

- **California Penal Code § 523:** Criminalizes extortion by written threat, including electronic communications.
- **California Penal Code §§ 632 & 637.2:** Prohibit recording of confidential communications without consent, providing criminal penalties and civil remedies. Defendant Barresi's unlawful telephone recordings of Adam Waldman and others, including my family, and disclosures of phone calls, violate this statute.

**Conclusion**

7. The exposure of my Social Security number and other sensitive information has caused me significant emotional distress, financial insecurity, and fear for my safety. Such exposure serves no legitimate purpose in this litigation. The related situations are politically infused and wrongfully interfered with. I attest Barresi's practices of recording telephone calls and pressuring people are illegal, and meant to create a false persecution ideology about ultra-high-net-worth individuals, who in turn are then at risk of being accused of his acts (Exhibits 10). I request sealing to protect me, as Senior District Judge Terry J. Hatter in his order explained that intimidation towards any opposing party will not be tolerated, in his denial in April of Barresi's ex parte that had no factual basis. I've had to lose savings and have been impersonated falsely. While I had New York phone number, the day a licensed investigator was to visit Non-Party, on March 24th, she alleged in email she was called from Hawaii. Barresi further obtained classified information that is not accessible to any lawyers or attorneys, suggesting he is using his resources to inflame and manipulate non-parties, allegedly "Justin," to paint false adversaries. Neither a public figure or of that wealth, I was no match for this coordination. Barresi is again inflaming and exploiting parties by manipulating intermediaries.

8. I should not be exiled for wishing to remove exploitative practices for individuals in Hollywood and film business. If Barresi had not manipulated others and me, Barresi would not have continued his schemes he learned from convicted Anthony Pellicano (*United States vs Pellicano*). It is absolutely horrific that both sides of a dispute need to unite to stop harm, that ***not even ultra wealthy individuals can escape him***, and that my private information has been continually disseminated, adding demise to my life, safety, property, and liberty. Barresi destroyed pleas for ethics. I beg that exposure of my private information meant for extortionary practices and identity theft be Sealed from this court docket.

9. Defendant Barresi's conduct reflects **bad faith procedural violations**, perjury, and extortionate tactics consistent with his public reputation in manufacturing scandal, while not actually "fixing," to leverage extortion. As "high-profile" names are added, individuals respond to facilitate false misconduct. Moreover, Barresi's manipulation of "both sides" makes his phone recordings fatalistic.

10. In the interest of justice, I respectfully request that this Court:
    - **Seal the non-party submission at Dkt. 85** and all exhibits containing **my private information; I plea for the integrity of this process, for peace**;
    - **Strike any use of my full social security number and the sensitive data;**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 29, 2025

    Respectfully submitted,

*/s/ Christina Taft*

Christina Taft

Plaintiff in Propria Persona

# CERTIFICATE OF SERVICE
### CHRISTINA TAFT v. PAUL BARRESI, et al.
### 5:24-cv-01930-TJH-DTB

I, the undersigned, certify and declare that I am at least 18 years of age. I have a residency in the United States.

On October 2, 2025, I served a true copy of;

**(1) MEMORANDUM OF UNOPPOSED MOTION TO SEAL AND STRIKE NON-PARTY EXPOSURE OF PRIVATE INFORMATION;**
**(2) EXHIBITS 1-16 OF MEMORANDUM BRIEF;**
**(3) DECLARATION OF PLAINTIFF TO SUPPORT UNOPPOSED MOTION TO SEAL NON-PARTY EXPOSURE OF PRIVATE INFORMATION - BAD FAITH, STOPPING REPORTING ILLEGAL TELEPHONE RECORDINGS (EXTORTION);**
**(4) EXHIBITS A-C OF DECLARATION; (5) PROPOSED ORDER**

__X__ (By Electronic Transmission) I caused the document(s) described herein to be electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E)

__X__ (By Delivery) I caused the document(s) described herein to be delivered to the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

| | |
|---|---|
| Melissa Yaffa Lerner<br>Megan Scott Mallonee<br>Lavely & Singer Professional Corporation<br>Attorneys At Law<br>2049 Century Park East, Suite 2400<br>Los Angeles, California 90067-2906 | *Attorneys for Defendant(s),*<br>Paul Barresi |

I declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated in Cannes, France on October 2, 2025.

*(signature)*

Christina Taft

Plaintiff in Propria Persona