Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

CHRISTINA TAFT

     Plaintiff,

vs.

PAUL BARRESI et al, inclusive,

     Defendants.

Case No.: 5:24-cv-01930-TJH-DTB

[Hon. Terry J. Hatter, Jr, Senior District Judge and Hon. David T. Bristow, Magistrate Judge]

**NOTICE TO PARTIES AND THE COURT REGARDING VOLUNTARY PARTY DISMISSAL OF ADAM WALDMAN, FRIEND OF JOHNNY DEPP, UNDER RULE 41(a)(2)**

***[Filed in compliance with the Federal Rules of Civil Procedure and applicable Local Rules; Certificate of Service]***

Date: October 21, 2025
Time: Under submission

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.............................................................................4

NOTICE TO PARTIES AND THE COURT REGARDING VOLUNTARY DISMISSAL OF ADAM WALDMAN UNDER RULE 41(a)(2) ...........................5

I.     FACTUAL BACKGROUND ...............................................................7

A. Adam Waldman's Professional Role and Targeting by Barresi .......................7

B. Barresi's Broader Scheme Against UHNW Individuals..................................10

C. Positive Reception from Johnny Depp's Circle and Mr. Waldman.................11

D. Additional Persecution in 2023 .......................................................13

E. Plaintiff's Notices Confirm Witness Status of Multiple Individuals ...............15

II.     LEGAL STANDARDS ....................................................................16

A. Dismissal of a Defendant Under Federal Rule of Civil Procedure 41(a)(2)....16

B. Protection of Personal Identifiers and Financial Information Under Federal Rule of Civil Procedure 5.2 ....................................................................17

C. Exclusion of Illegally Obtained Communications and Sanctions for Bad Faith Conduct...............................................................................................18

III.     ARGUMENTS ................................................................................19

A. Adam Waldman Is a Witness, and not a Proper Defendant ...........................19

B. Barresi's Bad-Faith Conduct Confirms the Need for Dismissal......................19

C. Dismissal Will Not Prejudice Any Defendant...............................................20

D. Improper Disclosure of Adam Waldman's Personal Financial Information Requires Redaction..........................................................................21

E. Sanctions Are Appropriate Against Defendant Barresi.................................21

F. Plaintiff's Voluntary and Independent Recognition of Mr. Waldman as a Witness ...........................................................................................22

IV.     NOTICE OF VOLUNTARY DISMISSAL AND REQUEST FOR CLERK ACTION................................................................................................22

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

LR. 11-6.1 CERTIFICATION ...................................................................................23

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

# INDEX OF AUTHORITIES

Cases

*Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001) ....................................................5, 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)..........................................16

*Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016)
......................................................................................................................16

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 (2006).......................8

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980) .............................16

*Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) ............................................15

*United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)...........................6, 15

*Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996)..............15

Rules

637 .................................................................................................... 4, 8, 16, 18

California Penal Code §§ 632 ............................................................. 4, 8, 16, 18

Rule 41(a)(2) .............................................................................................. passim

Rule 41(a)(2) of the Federal Rules of Civil Procedure ...............................................4

Rule 5.2 .............................................................................................. 6, 15, 19

Rule 5.2(a) of the Federal Rules of Civil Procedure ................................................6

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

## NOTICE TO PARTIES AND THE COURT REGARDING VOLUNTARY PARTY DISMISSAL OF ADAM WALDMAN, FRIEND OF JOHNNY DEPP

Pursuant to Federal Rule of Civil Procedure 41(a)(2) and the Local Rules of the United States District Court for the Central District of California, Plaintiff Christina Taft, appearing in propria persona, provides this notice to the Court and to all parties. This filing is made for the purpose of formally complying with procedural requirements to clarify the record and confirm that Plaintiff voluntarily dismisses Adam Robert Waldman, Friend of Johnny Depp, from party of defendants with clarifications. The purpose of this notice is to assist in accurate party designation, consistent with the Federal Rules and the Court's docket procedures. Plaintiff recognizes that Mr. Waldman's participation in these matters is limited to that of a witness, and not as a defendant, and accordingly files this notice in compliance with applicable court rules.

This demonstrates that Mr. Waldman was unwillingly drawn in as a witness to Barresi's misconduct rather than as a legitimate defendant in this case. Mr. Waldman retains full rights to pursue his own claims against Barresi for unlawful recordings, defamation, and financial exploitation, while also serving as a witness in this action. Similarly, Plaintiff, her family, Constance Fox and other Fox family members were illegally recorded and exploited as part of Barresi's broader scheme.

Barresi's scheme has always centered on Mr. Depp's ultra-high-net-worth status. His conduct fixated obsessively on Mr. Depp's personal financial matters—gifts to friends, social relations, and charity, property values, inheritances, and even charitable acts. As documented in writings by Chuck Weis, a co-owner at the Viper Room, associated with Barresi's projects, the focus extended to "fine art, jewelry," and other valuable assets. By weaponizing these private financial matters, Defendant Barresi pursued a pattern of blackmail and extortion, both inside and outside litigation (Exhibits Part 1-2, I, J-Q). He further obscured his role through

intermediaries such as 'Justin,' who acted as conduits for financial pressure and preventing truth while surveilling. Barresi's illegal recordings extended beyond Mr. Depp's circle to include the Fox family, demonstrating the breadth of his scheme to exploit private financial information from multiple sources.

Plaintiff has consistently recognized that Barresi's schemes harmed individuals across both sides of past disputes. As reflected in Plaintiff's subpoenas issued on August 6, 2025, witnesses include Johnny Depp, Isaac Baruch, Adam Waldman, Gina Deuters, Constance Fox, and Amber Heard, among others. These reasonable individuals are not adversaries but witnesses with knowledge of Barresi's unlawful exploitation. Clarifying Mr. Waldman's status serves the broader humanitarian purpose of enabling all such witnesses to provide truthful testimony without being trapped in adversarial roles they never sought.

Johnny Depp's long-documented generosity, visiting sick children, supporting friends, and giving to charity made him particularly vulnerable to Barresi's exploitation. Courts should not allow litigation to be driven by manufactured disputes targeting charitable acts.

This motion is compelled by both law and equity. Mr. Waldman is a professional attorney who represents ultra-high-net-worth individuals in multilateral and complex affairs. His published work Hollywood Math demonstrates his role in protecting clients against exploitation schemes that prey on wealth, reputation, and generosity. As such, it is unsurprising that Defendant Barresi unlawfully targeted him through illegal telephone recordings, manufactured disputes, and defamatory characterizations. See *Bartnicki v. Vopper, 532 U.S. 514, 533 (2001)* (recognizing that unlawful interception and disclosure of private telephone conversations violate privacy rights and cannot be legitimized by subsequent publication).

By contrast, the record demonstrates that Mr. Waldman acted reasonably and professionally. When Plaintiff sought reconciliation in 2025 after more than

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

two years of silence enforced by Barresi's threats, Mr. Waldman responded in good faith. His willingness to engage with Plaintiff stands in sharp contrast to Barresi's manipulation and confirms that his proper role here is as a witness to the truth, not an adversarial party.

Further, it's urgent to protect improper disclosures of Mr. Waldman's private financial information, including references to his Porsche, his residence valued at $3.5 million, and the last four digits of his Social Security Number. Such disclosures directly contravene Rule 5.2(a) of the Federal Rules of Civil Procedure, which requires redaction of sensitive personal identifiers. Courts regularly strike or seal such material to protect privacy and prevent unnecessary harm. See *United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995)* (recognizing the strong presumption of privacy in personal financial and identifying information).

Accordingly, this Court should grant the relief sought to (i) dismiss Adam Waldman as a defendant under Rule 41(a)(2); (ii) clarify his role as a witness; (iii) strike or seal improper disclosures of personal information under Rule 5.2; and (iv) sanction Defendant Barresi for his reliance on illegal recordings and abusive litigation practices. This motion seeks to clarify unambiguously that Adam Waldman's proper role in this action is as a witness, not as a defendant. This clarification does not limit Mr. Waldman's independent rights; he, along with Johnny Depp, could pursue claims directly against Barresi for unlawful recordings, defamation, and other misconduct. What is improper here is his forced inclusion as a defendant in this case.

## I.   FACTUAL BACKGROUND

## A. Adam Waldman's Professional Role and Targeting by Barresi

Adam Robert Waldman is a licensed attorney who has long represented ultra-high-net-worth ("UHNW") individuals, including internationally recognized

artists and business figures. His published commentary, Hollywood Math (Exhibit A), addresses the exploitation of UHNW clients through manufactured disputes, coercive financial demands, and diverted responsibility by deceptive techniques similar to Barresi's discussion on "William Hazlet's 'Art of Deception' to repeat until manufactured."

Court records in Anthony Fox's lawsuit further confirm the fraudulent environment surrounding these matters. The court made a prima facie finding of fraud in relation to Fox's company Safe, which was also owned by Johnny Depp, Chuck Weis, Fox, and Sal Jenco, and identified a forged Exhibit 77 agreement. Exhibits showed that Trouser Trumpet had no employees even while receiving payments, underscoring the pattern of diverting focus from directly involved individuals to improperly public names with higher wealth. By contrast, Barresi fixated on Johnny Depp while diverting attention away from the documented irregularities involving unnamed individuals that were not on the face of the litigation, but mentioned as related to security members, thereby deflecting scrutiny from genuine misconduct.

In December 2022, Barresi recorded Johnny Depp himself during a telephone call, exploiting Mr. Depp's warmth and willingness to communicate. Barresi positioned himself as an intermediary, using ongoing disputes against Mr. Depp as an entry point to insert himself into Mr. Depp's personal affairs. This illustrates how Barresi directly weaponized Mr. Depp's generosity and openness through illegal surveillance.

Mr. Waldman and Barresi had no written agreement, no contract, and no legitimate professional relationship. Barresi forced himself into Mr. Waldman's professional representation of Johnny Depp through illegal surveillance, not through any voluntary arrangement. The absence of any agreement underscores that Mr. Waldman was unwillingly drawn in solely through Barresi's unlawful conduct. Mr. Waldman himself was a direct victim of Barresi's unlawful telephone

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

surveillance. Multiple confidential calls were secretly recorded without his consent, in violation of California Penal Code §§ 632 and 637. These illegal recordings are central to showing that he is a victim and witness, not a proper defendant (Exhibit D).

Because of his professional role, Mr. Waldman became a prime target for Defendant Paul Barresi's unlawful scheme. Barresi engaged in a pattern of illegal telephone recordings, capturing private conversations of Mr. Waldman without consent, in violation of California Penal Code §§ 632 and 637, which prohibit the interception of confidential communications. See *Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 117 (2006)* (recognizing the strong privacy protections against unauthorized recording under California law). Attorney Stephen Braga has confirmed in writing that Barresi's use of these recordings violated California Penal Code §§ 632 and 637, underscoring the criminal nature of his conduct and reinforcing the need for sanctions.

These recordings contained confidential attorney–client communications, private financial details, and personal matters relating to Johnny Depp and his circle. Barresi then used these recordings to manufacture disputes, create defamatory characterizations of Mr. Waldman, and commercially exploit the information through projects including Cinderella Man and Depp Declassified.

On August 9, 2025, Barresi publicly released recordings of Mr. Waldman's private conversations, confirming his willingness to weaponize illegal surveillance for commercial gain. Even earlier, on July 23, 2023, Barresi publicly boasted that he had recorded multiple calls with Adam Waldman containing sensitive information about Johnny Depp, Isaac Baruch, and others. This premature admission further confirms the unlawful breadth and continuing nature of his surveillance scheme.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

**B. Barresi's Broader Scheme Against UHNW Individuals**

Barresi's scheme did not stop with Mr. Waldman. His conduct fits into a larger pattern of exploitation of UHNW individuals. As Plaintiff has documented, Barresi's tactics include:

• Illegally intercepting telephone communications from attorneys, friends, family, and associates of UHNW clients and alleged assistants to them.

• Manufacturing disputes from selectively edited or mischaracterized recordings.

• Targeting generosity and charitable giving by twisting acts of kindness into accusations of impropriety.

• Commercializing unlawfully obtained content through media projects and disclosures.

Barresi's conduct paralleled that of Paul Schindler, who was accused of violent acts, fixation on Mr. Depp, and threats against Depp's circle. By amplifying Schindler's claims and exploiting similar tactics, Barresi extended a campaign of intimidation that endangered both Mr. Depp and those around him. Barresi's exploitation was not limited to one individual. He targeted Mr. Depp's attorney Adam Waldman through confidential calls, sought to humiliate his lifelong friend Isaac Baruch through public defamation, intruded into the personal and social circles of Gina Deuters and Olivia Barash, and drew Plaintiff and her family unwillingly into his schemes through illegal recordings (Exhibits A-I). By simultaneously striking at Mr. Depp's professional, personal, and social circles, Barresi demonstrated the breadth of his campaign.

Barresi's pattern of exploiting intermediaries is further documented through his involvement with an individual referred to as "Justin." Plaintiff's noticed subpoenas show that Barresi used Justin to obtain confidential information, track

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

property and travel, and pressure others into silence further deepening his web of intimidation and control.

Johnny Depp's extraordinary generosity helping the homeless, supporting artists, and funding charities was intercepted and corrupted by Barresi, who twisted these acts of kindness into tools for leverage and profit. This inflicted profound emotional harm by transforming Mr. Depp's goodwill into a mechanism for exploitation.

As already noted, Barresi relied on unlawful surveillance to sustain his scheme.

If parties reconcile, Barresi loses his leverage and profit. For that reason, he actively prevents resolution and manufactures continuing disputes, ensuring ongoing conflict through projects like Cinderella Man and Depp Declassified.

This similarity is not coincidental. Barresi openly emulated Anthony Pellicano, the disgraced former private investigator convicted of racketeering, extortion, and illegal wiretapping, in tandem with their in concert calculated witness tampering to threaten wealthy individuals pulled in by them. Pellicano illegally recorded telephone conversations of lawyers representing actors and other individuals. Just as Pellicano intimidated other individuals by exploiting private information through illegal telephone recordings of their attorneys, Barresi relied on unlawful surveillance, manufactured disputes, and commercial exploitation to pressure his targets. The comparison underscores the seriousness of his tactics and why they cannot be legitimized in these proceedings.

## C. Positive Reception from Johnny Depp's Circle and Mr. Waldman

While Barresi has sought to manufacture hostility, the actual record demonstrates openness to reconciliation.

• In July 2025, after more than two years of silence enforced by Barresi's threats, Plaintiff reached out to Mr. Waldman to clarify that both Johnny Depp and others had been victimized by Barresi. Mr. Waldman responded positively, reflecting his reasonableness and willingness to acknowledge the truth of Barresi's manipulation.

• Mr. Waldman responded reasonably and civilly to Plaintiff's outreach, reflecting his proper role as a witness rather than an adversary.

• Mr. Waldman also responded reasonably to Plaintiff's broader outreach, reflecting the same warmth and understanding shown by others in Mr. Depp's circle (Exhibits Part 1, A-I). This further underscores that reconciliation is possible once Barresi's manufactured disputes are removed.

• Gina Deuters, who headed influencer pages and possesses expertise in publicity and media, also represents an important perspective. Her knowledge of publicity operations underscores how Barresi's scheme weaponized media manipulation and exploited publicists to spread false narratives.

• Olivia Barash was not aligned with Barresi; she cooperated at times under pressure and fear. Barresi used her name and outreach to executives at Entertainment One, contributing to the shutdown of projects such as the Viper Room. This demonstrates how Barresi coerced individuals into reluctant collaboration.

• Plaintiff's October 16, 2025 email to Mr. Waldman entitled *"Moving Forward – Filing Today to Free Adam, Johnny, and the Viper Room"* (Exhibit B) demonstrates her good-faith attempt at reconciliation, clarifying his proper role as a witness and seeking mutual understanding free from Barresi's manipulation.

• Similarly, Adam Waldman gladly supported Plaintiff's goodwill by publicly liking her posting saying happy birthday to him and that he was illegally telephone recorded by Barresi in July 2025 (Exhibit C). This simple act of support, like Olivia Barash's humane cooperation, underscores the reasonableness and

reconciliation possible once Barresi's manipulation is removed. It further confirms Mr. Waldman's role as a supportive witness, not as an adversarial defendant.

• Disney likewise distanced itself from Johnny Depp's connections to the Viper Room and true-crime narrative mysteries surrounding Anthony Fox. Barresi exploited this environment to spread intimidation and create commercial leverage.

• In 2025, after Plaintiff finally reached out, Mr. Waldman publicly denounced Barresi's false characterizations, rejecting the manufactured disputes that had divided witnesses. Mr. Waldman wrote fluently and freely after Plaintiff's peaceful efforts. This acknowledgment confirmed that Barresi's narrative was false and genuine reconciliation was possible once Barresi's manipulation was exposed.

This confirms that Mr. Waldman's proper role is as a witness to Barresi's conduct, not as a defendant.

Johnny Depp himself demonstrated his sympathetic nature when he asked Barresi at the very least not to mention Plaintiff. This request reflects Depp's charitable character and concern for others, even while he was being exploited by Barresi.

**D. Additional Persecution in 2023**

In 2023, further pressure was applied by an associate identified as "Justin," who intensified focus on Adam Waldman at a time when Plaintiff was seeking reconciliation. This compounded the persecution faced by both Plaintiff and Mr. Waldman and delayed efforts to unite against Barresi's extortion. While the details remain under further investigation, the pattern underscores that the real wrongdoer is Barresi, who leveraged others to suppress communication and prolong disputes.

Like Mr. Waldman, Plaintiff and her family were unwillingly drawn into Barresi's schemes through illegal recordings and false narratives, used as pawns to create leverage against Depp and Waldman.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

This intimidation was reinforced by Barresi's ongoing reliance on unlawfully obtained recordings, which he used to prolong disputes and destabilize those around Depp and Waldman.

Barresi's conduct was particularly cruel toward Depp's longtime friend Isaac Baruch. In 2023, Barresi publicly labelled Mr. Baruch the "King of Freeloaders" and "JD's Jester," and spread false allegations about inheritance and finances following the passing of Mr. Baruch's mother. He even misused an illegally recorded call with Adam Waldman, quoting out of context the phrase "take care of him" to suggest impropriety. These tactics were both defamatory and manipulative, designed to discredit Mr. Baruch and pressure Mr. Depp.

Barresi commercialized his extortion through so-called "sensitive information releases," including Cinderella Man and Depp Declassified. These projects turned illegally obtained recordings into products for profit, amplifying the harm to Mr. Depp and prolonging disputes that should have resolved years earlier.

Suspicious events in 2023–2024 further illustrate the climate of intimidation surrounding Barresi's conduct. Mr. Waldman transferred his house a day before his account was hacked and subsequently moved from Washington, D.C. to Florida (with the exception of the reason by Barresi as proven and Justin, as Adam decided not to leave to Canada to protect himself and his friend Johnny). During the same period, Plaintiff attempted to relocate to France for safety and cultural sophistication. These parallel disruptions reflect the real-world consequences of Barresi's retaliatory pressure and bad-faith manipulation.

Barresi even threatened to release sensitive private information abroad, including in Italy, if he could not profit from disclosures in the United States. This threat demonstrates the relentless, international dimension of his extortion scheme.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

### E. Plaintiff's Notices Confirm Witness Status of Multiple Individuals

On August 6, 2025, Plaintiff issued subpoenas identifying Johnny Depp, Isaac Baruch, Gina Deuters, Amber Heard, and Adam Waldman as witnesses with relevant knowledge of Barresi's unlawful activities. Plaintiff also identified Ed Shaw and Richard Albertini, manipulated by Barresi, as additional witnesses whose testimony further confirms Mr. Depp's charitable character and exonerates him from Barresi's false narratives. This recognition spans both sides of past disputes, reflecting that Barresi's misconduct victimized not only Johnny Depp and his allies but also Ms. Heard and those in her circle. Accordingly, it is evident that Barresi's misconduct victimized individuals on both sides of prior disputes. Both Depp's circle and Heard's circle suffered from Barresi's unlawful exploitation, confirming that Adam Waldman and others are witnesses and victims rather than adversaries. Barresi's extortion scheme repeatedly fixated on obscuring his freelanced independent conduct onto individuals in order to 'pull both ends against the middle'—a psychological exploitation tactic that he weaponized through illegal telephone recordings—to manipulate financial outcomes and obstruct truth-finding.

Plaintiff also highlights Gina Deuters' integrity, as demonstrated in prior testimony, and her unique knowledge of publicity and influencer operations. Her perspective reinforces that reconciliation is possible across both sides once Barresi's manipulation is exposed. The subpoena directed to Ms. Heard further confirms that Barresi's misconduct victimized individuals across both camps, showing that her circle too was targeted through manipulated intermediaries and false narratives. The inclusion of Olivia Barash further demonstrates that individuals in Mr. Depp's circle were receptive and humane, and that it was Barresi's distortion not any genuine animosity that created artificial divisions. Plaintiff's subpoenas also highlighted Isaac Baruch, whose testimony is essential to

show how Barresi blackmailed and harassed Depp's closest friends. Mr. Baruch endured false accusations of financial dependence, inheritance fraud, and personal attacks, yet supporters of Depp publicly defended him, questioning Barresi's motives and exposing his campaign of defamation. This formal recognition demonstrates Plaintiff's consistent position: these individuals are witnesses to exploitation, not adversarial parties. These subpoenas and notices were issued formally, with Plaintiff declaring under penalty of perjury that 'the foregoing is true and correct.' This underscores the seriousness of the designations and the consistency in identifying Adam Waldman as a witness, not a defendant. Plaintiff has consistently recognized that Barresi's schemes harmed both Johnny Depp and Amber Heard, underscoring that witnesses across different sides of past disputes were all victimized by the same exploitation.

The subpoenas and notices underscore a central point: Adam Waldman's inclusion as a defendant is both procedurally improper and substantively unjust. His role is to testify regarding Barresi's unlawful practices, not to stand as an adversary in litigation driven by manufactured disputes.

## II.    <u>LEGAL STANDARDS</u>

### A. Dismissal of a Defendant Under Federal Rule of Civil Procedure 41(a)(2)

When a defendant has already filed a responsive pleading and does not consent to dismissal, the plaintiff may only dismiss by court order "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

The Ninth Circuit has held that dismissal under Rule 41(a)(2) should generally be granted unless the defendant will suffer "plain legal prejudice." *Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001)*. Mere inconvenience of facing a second lawsuit, or tactical disadvantage, is not enough. See *Westlands Water Dist. v. United States, 100 F.3d 94, 96 (9th Cir. 1996)*.

Here, dismissal of Adam Waldman is proper because of his continued improper designation serves no legitimate litigation purpose. He is not an alleged wrongdoer; rather, he is a witness to Defendant Barresi's unlawful conduct. Retaining him as a defendant imposes unnecessary prejudice, burdens discovery, and distorts the record.

## B. Protection of Personal Identifiers and Financial Information Under Federal Rule of Civil Procedure 5.2

Rule 5.2(a) requires redaction of sensitive personal identifiers from court filings, including Social Security numbers (except last four digits), financial account numbers, home addresses, and similar private details. Courts routinely strike or seal filings that violate these protections.

The improper disclosure of Mr. Waldman's property value, vehicle, and the last four digits of his Social Security Number violates the Rule's privacy mandate. See *United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995)* (recognizing a strong presumption of privacy in personal financial information); *Doe v. UNUM Life Ins. Co. of Am., 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016)* (ordering redaction of personal identifiers improperly filed in the record).

Accordingly, the Court should order the redaction or sealing of such material to prevent unnecessary harm. The Court should issue a protective order or grant a motion to seal to ensure ongoing protection against improper financial disclosure, Barresi's unlawful telephone recordings disclosures, false dispute manufacturing, and to prevent manipulation from extortionist Defendant Barresi. Plaintiff specifically requests that any references to Mr. Waldman's property, vehicles (including his Porsche), and other personal financial information be sealed. These details are irrelevant to the issues before the Court and their disclosure only risks further exploitation by Barresi. Allowing such conduct to stand would undermine the fairness of proceedings and reward illegal surveillance

## C. Exclusion of Illegally Obtained Communications and Sanctions for Bad Faith Conduct

Federal courts will not allow improper designations as diversions to proceed based on exploitative manufactured evidence. In *Bartnicki v. Vopper,532 U.S. 514, 533 (2001),* the Supreme Court recognized that unlawful interception of telephone communications violates privacy rights under both federal and state law. California law is especially protective: Cal. Penal Code §§ 632 and 637 prohibit recording confidential communications without consent and render such conduct unlawful.

Defendant Barresi's admitted reliance on illegally recorded conversations with Mr. Waldman constitutes bad-faith litigation conduct. Federal courts possess inherent power to sanction such abuse. *Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991)* (recognizing inherent authority to sanction parties for bad-faith tactics and abuse of judicial process). See also *Roadway Express, Inc. v. Piper, 447 U.S. 752, 764–65 (1980)* (sanctions appropriate for willful abuse of litigation process).

Here, sanctions are appropriate because Barresi has weaponized unlawful recordings to defame, intimidate, and control witnesses, including Plaintiff and Mr. Waldman. Allowing such conduct to stand would undermine the fairness of proceedings and reward illegal surveillance. As investigator Lindsey Burrill, who supported Mr. Depp and his charitable actions, explained, that independently and by himself Defendant PAUL BARRESI's conduct "appeared to be optically cruel, unreasonable, and malicious in nature. Barresi seemed to act on revenge and maliciousness rather than any legitimate purpose." This observation from a neutral professional underscores the vindictive character of Barresi's tactics and the necessity of sanctions.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

# III.    <u>ARGUMENTS</u>

## A. Adam Waldman Is a Witness, and not a Proper Defendant

As noted above under Rule 41(a)(2), dismissal of a defendant is proper where keeping a party as a defendant in the case serves no legitimate litigation purpose.

Adam Waldman's role in these matters is not adversarial. He is an attorney who represented Johnny Depp, an ultra-high-net-worth client, and was unwillingly brought into this controversy through illegal telephone recordings by Defendant Barresi. Plaintiff has consistently recognized Mr. Waldman as a witness, not a proper defendant, as reflected in subpoenas and notices identifying him and others (Johnny Depp, Isaac Baruch, Gina Deuters, Constance Fox, Amber Heard) as witnesses to Barresi's conduct. These subpoenas and notices were issued formally, with Plaintiff declaring under penalty of perjury that the designations are 'true and correct.'

Retaining Mr. Waldman as a defendant distorts the record, burdens discovery, and perpetuates Barresi's abusive tactics. Dismissing him clarifies party designations, allows proceedings to focus on genuine disputes, and prevents further prejudice.

## B. Barresi's Bad-Faith Conduct Confirms the Need for Dismissal

As discussed above in *Chambers v. NASCO*, the Court has inherent power to protect its integrity and sanction abusive tactics.

Barresi's conduct exemplifies such bad faith. He:

• Illegally recorded confidential communications involving Mr. Waldman and others, in violation of Cal. Penal Code §§ 632 and 637.

• Publicly disclosed and commercially exploited those recordings in projects such as Cinderella Man and Depp Declassified.

• Manufactured false narratives to harm Mr. Waldman's professional reputation, even labeling him a "consigliere" while manipulating a low-context culture while exploiting high-context understanding from Italy and having multiple meanings in each issuance. • Used threats of further disclosures to intimidate and silence both Mr. Waldman and Plaintiff.

Such conduct not only prejudices Mr. Waldman but also undermines the fairness of these proceedings. This wrongful fixation on Mr. Depp obscured actual wrongdoing by others, including properly resolving non-mutual financial Viper Room conduct as Anthony Fox discovered and Paul Schindler's threats, thereby compounding injustice and further illustrating bad-faith nature of Barresi's tactics.

Barresi's actions created real safety concerns. His use of surveillance and threats generated fear and instability, placing both Mr. Depp's, Ms. Taft's circles, and Ms. Heard's circles under constant pressure. By weaponizing intimidation and exploiting private movements, Barresi not only obstructed truth-finding but also endangered the basic security of those caught in his schemes. Barresi also exploited intermediaries' friends, publicists, and even professionals around ultra-high-net-worth individuals cultivating them as sources of confidential information and then silencing them through threats, intimidation, and the misuse of illegally recorded conversations. By targeting not just UHNW individuals but their entire ecosystem, Barresi deepened his web of leverage and obstructed truth-finding across all sides. The Court should not permit litigation to proceed with a victim of unlawful surveillance falsely designated as a defendant.

## C. Dismissal Will Not Prejudice Any Defendant

As noted above under Rule 41(a)(2), dismissal is appropriate unless the opposing party can demonstrate plain legal prejudice. Courts have repeatedly held that the mere prospect of facing testimony from a dismissed party, or losing tactical advantage, does not constitute prejudice.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

Here, no legitimate prejudice would result from dismissing Mr. Waldman:

• He remains available as a witness to testify truthfully regarding Barresi's conduct.

• Dismissal does not eliminate claims against Barresi or other defendants.

• Clarifying his role enhances judicial efficiency by preventing unnecessary motion practice and discovery disputes.

Accordingly, dismissal is proper and consistent with the policy favoring resolution of cases on their merits, free from unnecessary parties.

## D. Improper Disclosure of Adam Waldman's Personal Financial Information Requires Redaction

Rule 5.2 of the Federal Rules of Civil Procedure requires courts to protect personal identifiers and sensitive financial information. Yet filings in this matter improperly disclosed Mr. Waldman's Porsche vehicle, residence valued at $3.5 million, and partial Social Security number.

Such disclosures expose Mr. Waldman to unnecessary risk and violate the privacy safeguards of Rule 5.2. Courts have consistently struck or sealed similar filings. As already explained under Rule 5.2, courts regularly strike or seal filings that improperly disclose personal identifiers. This Court should order immediate redaction or sealing of the improper disclosures to protect Mr. Waldman's privacy and comply with federal law.

## E. Sanctions Are Appropriate Against Defendant Barresi

As noted above, federal courts may sanction parties who act in bad faith, which can extend to defendants who improperly and falsely manufacture with intermediaries to bring in other parties as defendants, by abusing extra-judicial processes and perjurious submissions to inflame from their own conduct.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

Barresi's scheme rests on exactly that: illegal telephone recordings, defamatory characterizations, and threats of disclosure to gain leverage over ultra-high-net-worth individuals and their representatives. This Court should exercise its inherent authority to sanction Barresi, deter future misconduct, and protect the integrity of these proceedings.

**F. Plaintiff's Voluntary and Independent Recognition of Mr. Waldman as a Witness**

The Plaintiff sought help from Adam Waldman, and she was not aware of Justin engaging with Barresi as intermediaries to improperly create false persecution. This lack of awareness was due to the American public's lack of reasonable education about ultra-high-net-worth individuals and luxury. Plaintiff agrees with Judge Bristow that the action related to Adam should be dismissed. The Plaintiff was already filing that Adam is a witness, and did so voluntarily and with free will, while far enough away from Barresi and Justin's manufactured enforcement for their manipulation.

**IV.    <u>NOTICE OF VOLUNTARY DISMISSAL AND REQUEST FOR CLERK ACTION</u>**

Plaintiff Christina Taft hereby notifies the Court and all parties that, pursuant to Federal Rule of Civil Procedure 41(a)(2), she voluntarily dismisses Adam Robert Waldman from this action.

This dismissal is made voluntarily and of her own accord, with the understanding that Mr. Waldman's correct status in this matter is that of a potential witness rather than a defendant.

Plaintiff respectfully requests that the Clerk issue Form CV-009 (Notice of Dismissal) to reflect the voluntary dismissal of Adam Waldman from this case.

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY

As declared under penalty of perjury that the foregoing is true and correct. Dated this October 21, 2025.

Respectfully submitted,

*Christina Taft*

Christina Taft

*Plaintiff in Propria Persona*

## **LR. 11-6.1 CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure and applicable local rules, Plaintiff Christina Taft certifies that this Notice of Voluntary Dismissal complies with the applicable word and formatting requirements of the Local Rules. The 20-page brief of this motion, excluding the caption, tables, certificate of service, and this certificate of compliance, contains approximately 5,197 words, fulfilling the 7,000-word limit.

*Christina Taft*

Christina Taft

*Plaintiff Propria Persona*

October 21, 2025_____

Date

MOTION TO DISMISS WITNESS ADAM WALDMAN FROM DEFENDANTS IN ACTION VOLUNTARILY