1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8          CENTRAL DISTRICT OF CALIFORNIA

9              EASTERN DIVISION

10   CHRISTINA TAFT,                    )    Case No. 5:24-cv-01930-TJH (DTB)
                                        )
11                  Plaintiff,          )
                                        )    **REPORT AND**
12          v.                          )    **RECOMMENDATION OF UNITED**
                                        )    **STATES MAGISTRATE JUDGE**
13   PAUL BARRESI, et al.,              )
                                        )
14                                      )
                                        )
15                  Defendants.         )
                                        )
16                                      )
                                        )
17   _____)

18
19       This Report and Recommendation is submitted to the Honorable Terry J.

20   Hatter, Jr., United States District Judge, under 28 U.S.C. § 636 and General Order

21   05-07 of the United States District Court for the Central District of California.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

# I.

# PROCEEDINGS

On September 7, 2024, Plaintiff Christina Taft ("Plaintiff"), proceeding pro se, filed a Complaint ("Complaint"), alleging twelve claims against defendants Paul Barresi ("Barresi") and Adam R. Waldman ("Waldman") (Barresi and Waldman are collectively referred to herein as "Defendants") and DOES 1 through 10.  (Docket No. 1).[1]

On September 19, 2024, the Court ordered service of the Summons and Complaint on Defendants.  (Docket No. 6).  On September 26, 2024, Plaintiff served the Summons and Complaint on defendant Barresi.  (Docket No. 7).

On October 16, 2024, Plaintiff filed a motion seeking an order allowing service by publication on defendant Waldman, which the Court denied on the same date.  (Docket Nos. 8-9).

On October 24, 2024, Plaintiff filed an "Emergency Motion for Preliminary Injunction" ("Motion for Preliminary Injunction").  (Docket No. 15).

On November 6, 2024, Plaintiff filed a Motion to Amend the Complaint and Continued Injunction Requests.  (Docket No. 18).  On November 7, 2024, defendant Barresi filed a Motion to Dismiss the Complaint based on Plaintiff's failure to state a claim for relief.  (Docket No. 16).  On November 13, 2024, the Court granted

---

[1] The Complaint alleged the following claims:  (1) Civil conspiracy; (2) obstruction of justice, tampering with a witness, victim or informant (18 U.S.C. § 1512(b)(1) and (b)(2)); (3) invasion of privacy (California Constitution, Article 1, Section 1); (4) use of name or likeness (Cal. Civ. Code § 3344); (5) civil harassment (Cal. Code Civ. P. § 527.6; (6) negligence, civil rights; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) interstate communications (18 U.S.C. § 875); (10) interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952); (11) destruction, alteration, or falsification of records (18 U.S.C. § 1519); and (12) Civil RICO Act, racketeering activity (18 U.S.C. §§ 1961, 1962). (Complaint at 1).  The Complaint, which totaled 123 pages, contained an extremely lengthy recitation of factual allegations.  (See Complaint at 7-76).

For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

Plaintiff's Motion to Amend the Complaint but did not make any determination on Plaintiff's Continued Injunction Requests due to the pendency of the Motion for Preliminary Injunction. (Docket No. 20).

On November 30, 2024, Plaintiff filed a First Amended Complaint ("FAC"), naming Defendants and DOES 1 through 10 as defendants. (Docket No. 23).[2]

On December 2, 2024, based on the filing of the FAC, the Court denied defendant Barresi's Motion to Dismiss the Complaint as moot. (Docket No. 24).

On December 13, 2024, defendant Barresi filed an Opposition to Plaintiff's Motion for Preliminary Injunction. (Docket No. 25).

On December 13, 2024, defendant Barresi filed a Motion to Dismiss the FAC, asserting that eight out of nine claims alleged in the FAC should be dismissed based on Plaintiff's failure to state a claim for relief. (Docket No. 26).[3] On January 24, 2025, Plaintiff filed an Opposition to the Motion to Dismiss the FAC. (Docket No. 38). On January 30, 2025, Plaintiff filed a Reply to defendant Barresi's Opposition to Plaintiff's Motion for Preliminary Injunction. (Docket No. 39). On February 7, 2025, defendant Barresi filed a Reply to the Opposition to the Motion to Dismiss the FAC. (Docket No. 40).

/ / /

---

[2] The FAC alleged the following claims against Defendants: (1) Civil conspiracy; (2) Civil Rights Act (42 U.S.C. § 1983); (3) Civil RICO Act, racketeering activity (18 U.S.C. §§ 1961, 1962); (4) invasion of privacy (California Constitution, Article 1, Section 1, CACI No. VF-1800, CACI No. 1801, and CACI No. 1802); (5) use of name or likeness (Cal. Civ. Code § 3344); (6) civil harassment (Cal. Code Civ. P. § 527.6); (7) negligence, civil rights; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. (FAC at 1, 77-145). The FAC, which consisted of 149 pages, contained factual allegations similar to those in the Complaint. (See FAC at 7-79).

[3] On December 23, 2024, the Court issued a Report and Recommendation recommending the denial of Plaintiff's Motion for Preliminary Injunction. (Docket No. 28). On January 13, 2025, Plaintiff filed an Objection to that Report and Recommendation. (Docket Nos. 33-34). On January 15, 2025, based on Plaintiff's Objection, the Court vacated that Report and Recommendation and granted Plaintiff's request to file a Reply to defendant Barresi's Opposition to Plaintiff's Motion for Preliminary Injunction. (Docket No.35).

On February 16, 2025, Plaintiff filed an ex parte application for an extension of time to serve defendant Waldman with the First Amended Complaint (Docket No. 42) and a request for the Clerk to reissue to reissue the Summons on the First Amended Complaint (Docket No. 43). On February 19, 2025, the Court granted both the request for the Clerk to reissue the Summons and the application, giving Plaintiff until March 30, 2025 to serve defendant Waldman with the First Amended Complaint. (Docket No. 44).

On March 12, 2025 (pursuant to the Court's Orders, see Docket Nos. 41, 47), defendant Barresi filed a Sur-Reply to Plaintiff's Reply to defendant Barresi's Opposition to Plaintiff's Motion for Preliminary Injunction. (Docket Nos. 51-53).

On March 24, 2025, Plaintiff filed an ex parte application seeking an order extending the time to serve defendant Waldman with the First Amended Complaint by mail and, in the alternative, an order authorizing her to serve defendant Waldman by publication in a newspaper. (Docket No. 54).[4] On April 7, 2025, the Court granted the application in part, giving Plaintiff until May 19, 2025 to serve the First Amended Complaint on defendant Waldman, but the Court denied the portion of the application requesting service of the First Amended Complaint by publication on defendant Waldman. (Docket No. 62).

On April 18, 2025, the Court issued a Report and Recommendation recommending the denial of Plaintiff's Motion for Preliminary Injunction. (Docket No. 64).

On May 1, 2025, the Court granted defendant Barresi's Motion to Dismiss the FAC with leave to amend, finding that Plaintiff failed to state a plausible claim for relief for eight of the nine claims alleged in the FAC. (Docket No. 66).

---

[4] On March 26, 2025, defendant Barresi filed an ex parte application for a temporary restraining against Plaintiff (Docket No. 57), which the district court denied on April 8, 2025. (Docket No. 63).

On May 2, 2025, Plaintiff filed Objections to the Court's April 18, 2025 Report and Recommendation. (Docket Nos. 67-68).[5]

On May 7, 2025, Plaintiff filed a request for reconsideration of the Court's May 1, 2025 Order granting defendant Barresi's Motion to Dismiss the FAC with leave to amend. (Docket No. 70).

On May 26, 2025, Plaintiff filed a Second Amended Complaint ("SAC"), naming Defendants and DOES 1 through 10 as defendants. (Docket No. 74).[6] The SAC alleged the following claims against Defendants: (1) Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1); (2) invasion of privacy (intrusion into private affairs and conversations); (3) California Penal Code §§ 632, 637.2 (unauthorized recording and disclosure); (4) violation of California Civil Code § 3344 (unauthorized use of voice, name, and likeness); (5) civil harassment (Cal. Code Civ. P. § 572.6); (6) stalking (Cal. Civil Code § 1708.7); (7) civil conspiracy; (8) negligence; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; and (11) violation of the Racketeer Influence and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961, 1962). (SAC at 1, 91-173).[7]

On July 3, 2025, defendant Barresi filed a Motion to Dismiss the SAC ("Motion to Dismiss"), asserting that all claims alleged in the SAC should be dismissed based on Plaintiff's failure to state a claim for relief. (Docket No. 82).

---

[5] The district court has not yet made a determination on the Court's April 18, 2025 Report and Recommendation.

[6] The SAC totals 180 pages.

[7] On June 14, 2025, Plaintiff filed an ex parte application seeking entry of a default judgment based on the failure of defendant Barresi's failure to respond to the SAC by June 9, 2025. (Docket No. 75). On June 26, 2025, defendant Barresi filed an ex parte application contending that his failure to file a response to the SAC was based on excusable neglect of his counsel. (Docket No. 78). On June 27, 2025, Plaintiff filed an opposition to defendant Barresi's ex parte application. (Docket No. 79). On June 30, 2025, the Court denied Plaintiff's and defendant Barresi's applications, and ordered defendant Barresi to file a response to the SAC by July 3, 2025. (Docket No. 81).

Attached to the Motion to Dismiss is the supporting Declaration of Megan S. Mallonee ("Mallonee Decl."), dated July 3, 2025, with six attached exhibits. (Docket No. 82-1).[8]  On August 1, 2025, Plaintiff filed an Opposition to the Motion to Dismiss ("Opposition") (Docket No. 92), accompanied by Plaintiff's supporting Declaration, dated August 1, 2025 (Docket No. 92-1), with five attached exhibits (Docket No. 92-2).  Although defendant Barresi had the opportunity to file a reply to the Opposition (see Docket No. 84), defendant Barresi did not do so.

On October 9, 2025 (more than four months after the Court extended the time for Plaintiff to serve the Summons and the FAC and/or SAC on defendant Waldman until May 19, 2025, see Docket No. 62), the Court ordered Plaintiff to show cause why this case should not be dismissed as to defendant Waldman based on the failure to prosecute.  (Docket No. 111).  On October 21, 2025, Plaintiff voluntarily dismissed defendant Waldman from this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) (Docket No. 126-3 at 3), thereby discharging the Order to Show Cause.  (Docket No. 136).

Thus, this matter is now ready for decision.  For the reasons discussed below, the Court recommends that defendant Barresi's Motion to Dismiss be granted, that the state law claims alleged in the SAC be dismissed without prejudice and with leave to amend, and that the RICO claim alleged in the SAC be dismissed with prejudice and without leave to amend.

/ / /

/ / /

/ / /

/ / /

---

[8] In the Motion to Dismiss, defendant Barresi makes certain allegations (see Motion to Dismiss at 11, lines 4 through 11, n.1; see also Mallonee Decl. at 2-3, ¶¶ 3-8, Exhibits B-F) that do not appear to be relevant to the Court's determination of the merits of the Motion to Dismiss.

# II.

## SUMMARY OF FACTUAL ALLEGATIONS[9]

Plaintiff is a humanitarian, philanthropist, and entrepreneur, the founder and CEO of Rescue Social Inc. and Worldie Ltd., a public safety investor, a coordinator of SaveMeNow, a former board member of Aedan (now TurnKeyCapital), and a process server. (SAC at 4 (¶ 10)).[10] Defendant Barresi is identified as an "individual citizen" who is the author of the 2024 book *Johnny Depp's Accidental Fixer*. (SAC

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[9] The Court has reviewed all of the factual allegations in the SAC. (See SAC at 5-90). Based on the overly detailed, extraneous, incoherent, and/or rambling allegations in the SAC, the Court is not able to prepare a concise and clear summary of the allegations. The Court will provide a broad summary of the allegations, and will refer to specific allegations, where necessary. Because defendant Barresi is moving to dismiss the SAC, and because Plaintiff has voluntarily dismissed defendant Barresi from this action, the Court's summary of the SAC's factual allegations will focus on defendant Barresi. The Court notes that in the Opposition Plaintiff attempts to provide what appears to be a coherent summary of the allegations in the SAC. (See Opposition at 8-10).

[10] Plaintiff states that after she lost her mother, Victoria Taft, in 2018, she "devoted her businesses and professional projects to solving, mitigating, and improving public safety and to motive business partners to improve systems of rescue," and she "dedicated herself to improving responses, community aid, public affairs, and positive responses in the Arts, with her mother's family having four generations in the film business since the 1950s Golden Hollywood." (SAC at 4-5 (¶ 10)).

1  at 5 (¶¶ 11, 13)).[11]  Defendant Waldman is identified as an "individual citizen" who

2  a jury found acted as an agent for Johnny Depp.[12]  (SAC at 5-6 (¶¶ 12, 15)).[13]

3      From an unspecified date[14] through April 2025, defendants Barresi and

4  Waldman engaged in, among other things, coercive conduct, intimidation, extortion,

5  witness tampering, harassment, racketeering, retaliation, fraud, false statements, false

6  reports, false imprisonment, threats against "victims and their associates," threats of

7  violence, including physical harm and death, against individuals "viewed as aligned

8  with [Amber] Heard" and "seen as sympathetic to [Johnny] Depp," influence of

9  witnesses "perceived as favorable to Amber Heard," "record[ing] [of] Plaintiff[] and

10  the families of assault victims without consent," "falsif[ication] [of] audio recordings

11  to pressure [assault victims] into dropping their claims," monitoring and targeting of

12  Plaintiff and those with whom Plaintiff communicated, unauthorized disclosure of

13  unconsented recordings of telephone calls, including Plaintiff's private phone call

14

15

16

17  [11] In the FAC, Plaintiff alleged that defendant Barresi has served as the "Hollywood Fixer"
   since the 1990s, was a licensed private investigator from September 2009 until January 2012, when
18  he had his licensed revoked, and has "directly worked for lawyers for many years."  (SAC at 8 (¶¶
   20, 24-27)).  The SAC, however, does not identify defendant Barresi as a private investigator.
19  According to defendant Barresi, he "is an investigator and consultant who worked with many high-
   profile clients over the years."  (Motion to Dismiss at 8).
20      [12] Plaintiff clearly is referring to the actor known as Johnny Depp.  Many of the allegations
21  in the SAC relate to defendant Barresi's actions in connection with the case of Depp v. Heard.
   Plaintiff alleges that in November 2020 (prior to Depp v. Heard), the United Kingdom High Court
22  in Depp v. New Group Newspapers "found that Johnny Depp had assaulted and credibly threatened
   to kill Amber Heard" and issued a judgment against Johnny Depp.  (SAC at 10, 12 (¶¶ 20, 22)).
23  According to defendant Barresi, on or about July 2019, he was hired by Amber Heard's attorneys,
   in connection with Depp v. Heard, and "[a]fter months of research and interviews, [he] was unable
24  to identify any credible witnesses or legitimate, verifiable claims of wrongdoing by Mr. Depp to
   support Ms. Heard's case."  (Motion to Dismiss at 9).  According to defendant Barresi, the trial in
25  Depp v. Heard took place from April to June 2022.  (Motion to Dismiss at 9).
26      [13] In the FAC, Plaintiff alleged that Defendant Waldman is the owner of The Endeavor
   Group and is Johhny Depp's agent.  (FAC at 7-8 (¶¶ 19, 21-22)).
27      [14] In the Opposition, Plaintiff appears to state that defendant Barresi's misconduct began in
28  2019.  (Opposition at 8).

with Angela Meador,[15] the use and unauthorized disclosure of an unconsented recording of a telephone call between defendant Barresi and Plaintiff's father, exploitation of Plaintiff's family, including Plaintiff's mother, father, and siblings, manipulation of Plaintiff through private communications and social media, dissemination of coerced statements, stalking, and suppression of investigations. (See SAC at 5-90). As a result of Defendants' conduct, Plaintiff relocated from California to Hawaii in December 2022 and then to France after 2023. (SAC at 8, 37 (¶¶ 17, 64-65)).

As noted above, the SAC alleges the following claims against Defendants: (1) Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1); (2) invasion of privacy (intrusion into private affairs and conversations); (3) California Penal Code §§ 632, 637.2 (unauthorized recording and disclosure); (4) violation of California Civil Code § 3344 (unauthorized use of voice, name, and likeness); (5) civil harassment (Cal. Code Civ. P. § 572.6); (6) stalking (Cal. Civil Code § 1708.7); (7) civil conspiracy; (8) negligence; (9) intentional infliction of emotional distress; (10)

---

[15] Angela Gayle Meador (formerly known as Angela Gayle, see Docket No. 51-2 at 1-2, 5) appears to be mentioned once in the Complaint and the FAC. (See Complaint at 47; FAC at 48). However, the SAC, which was filed after Ms. Meador provided a Declaration in support of defendant Barresi's March 12, 2025 Sur-Reply to Plaintiff's Reply to defendant Barresi's Opposition to Plaintiff's Motion for Preliminary Injunction (see Docket No. 51-2), contains numerous allegations concerning Ms. Meador. (See e.g., SAC at 7, 9-12, 16, 18-29, 34-36, 39, 41-42, 46-49, 54-55, 57-59, 61-64, 66-67, 73, 78-79, 81-88, 92-97, 101, 106-07, 112, 114, 116, 118-20, 125, 131, 136, 163, 173; see also Motion to Dismiss (stating that Ms. Meador was "mentioned 384 times in the SAC"))..

On July 25, 2025 (during the pendency of the Motion to Dismiss), Ms. Meador, a non-party witness, filed an "Emergency Motion for Immediate Protective Relief" (Docket No. 85), along with a "Request to Seal Personal Identifying Information pursuant to Local Rule 79-5 and Privacy Policy" (Docket No. 86). On July 27 and 28, 2025, Plaintiff filed an opposition to that motion. (Docket No. 89-91; see also Docket Nos. 113-14).

On October 6, 2025, Ms. Meador filed (1) a Motion to Intervene pursuant to Fed. R. Civ. P. 24, and (2) a proposed Complaint in Intervention. (Docket Nos. 116-17). The Court is presently awaiting responses to Ms. Meador's Motion to Intervene. (See Docket No. 128).

The Court will address Ms. Meador's motions in a separate Order.

negligent infliction of emotional distress; and (11) violation of the Racketeer Influence and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961, 1962). (SAC at 1, 91-173 (¶¶ 151-338)). The SAC seeks, among other things, compensatory damages, punitive damages, and injunctive relief. (SAC at 99-100 (¶¶ 171-74), 111 (¶ 199), 116-17 (¶¶ 220-22), 121-23 (¶¶ 231, 236-37), 128 (¶ 249), 134-35 (¶¶ 263-66), 140 (¶¶ 278-79), 146-47 (¶ 298), 152 (¶ 310), 156 (¶ 321), 173 (¶ 337), 176-79 (¶¶ 345-47, 285-87 [misnumbered]).

## III.

### A.    The Motion to Dismiss the SAC Should Be Granted.

Defendant Barresi contends that the SAC should be dismissed because all claims alleged in the SAC fail to state a plausible claim for relief. (Motion to Dismiss at 12-21). In Opposition, Plaintiff contends that each claim alleged in the SAC states a plausible claim for relief. (Opposition at 10-29).

1.    Standard of Review.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims alleged in a complaint. A complaint may be dismissed for failure to state a claim for two reasons: (1) Lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient to state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Plausibility does not mean probability but does require "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 566 U.S. at 678. A pleading that offers mere "labels and conclusions" or "a formulaic recitation of a

10

1   cause of action's elements will not do." Twombly, 550 U.S. at 555; see also

2   Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) ("Taken

3   together, Iqbal and Twombly require well-pleaded facts, not legal conclusions

4   . . . that 'plausibly give rise to an entitlement to relief' . . . . The plausibility of a

5   pleading thus derives from its well-pleaded factual allegations.") (quoting Iqbal, 556

6   U.S. at 679).

7       In considering a motion to dismiss, a court must accept all factual allegations

8   in the complaint as true "and construe the pleadings in the light most favorable to

9   the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005); see

10  also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (Pleadings by pro se

11  plaintiffs "however inartfully pleaded, must be held to less stringent standards than

12  formal pleadings drafted by lawyers.") (citation omitted). But the liberal pleading

13  standard "applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490

14  U.S. 319, 330 n.9 (1989). "[T]he tenet that a court must accept as true all of the

15  allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556

16  U.S. at 678; see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) ("[W]e

17  do not accept any unreasonable inferences or assume the truth of legal conclusions

18  cast in the form of factual allegations."). "[A] liberal interpretation of a civil rights

19  complaint may not supply essential elements of the claim that were not initially

20  pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997)

21  (citation omitted).

22

23      A court may consider exhibits attached to a complaint and incorporated by

24  reference. See Petrie v. Electronic Game Card, Inc., 761 F.3d 959, 964 n.6 (9th Cir.

25  2014). However, a court is not required to accept as true allegations contradicted by

26  exhibits attached to a complaint or conclusory allegations, unwarranted deductions

27  of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d

28  979, 988 (9th Cir. 2001). While on a Rule 12(b)(6) motion a court cannot consider

11

1  evidence outside the pleadings, a court may "consider unattached evidence on which
2  the complaint 'necessarily relies' if: (1) [T]he complaint refers to the document; (2)
3  the document is central to the plaintiff's claim; and (3) no party questions the
4  authenticity of the document." United States v. Corinthian Colls., 655 F.3d 984, 999
5  (9th Cir. 2011) (citation omitted).[16]

6       If a court finds that a complaint should be dismissed for failure to state a claim,
7  the court has discretion to dismiss with or without leave to amend. See Lopez v.
8  Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should
9  be granted if it appears possible that the defects in the complaint could be corrected,
10  especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70
11  F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave
12  to amend his or her complaint, and some notice of its deficiencies, unless it is
13  absolutely clear that the deficiencies of the complaint could not be cured by
14  amendment"); Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave to amend
15  [a pleading] when justice so requires."). However, if, after careful consideration, it
16  is clear that a complaint cannot be cured by amendment, a court may dismiss without
17  leave to amend. See Ebner v. Fresh, Inc., 838 F.3d 958, 968 (9th Cir. 2016) (Rule

18  _____

19       [16] Rule 12(b)(6) is read in conjunction with Rule 8(a) of the Federal Rules of Civil
20  Procedure ("Rule 8"). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Rule 8 requires
    that a complaint must contain a "short and plain statement of the claim showing that the pleader is
21  entitled to relief." Rule 8(a)(2). Although Rule 8 does not require detailed factual allegations, a
    complaint must, at a minimum, allege enough specific facts to provide both "fair notice" to a
22  defendant of the particular claim being asserted and "the grounds upon which [that claim] rests."
    Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); see also Iqbal, 556
23  U.S. at 678 (Rule 8 pleading standard "demands more than an unadorned, the-defendant-
    unlawfully-harmed-me accusation"); Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th Cir.
24  1995) (holding even pro se pleadings "must meet some minimum threshold in providing a
    defendant with notice of what it is that it allegedly did wrong"); Schmidt v. Herrmann, 614 F.2d
25  1221, 1224 (9th Cir. 1980) (upholding Rule 8 dismissal of "confusing, distracting, ambiguous, and
26  unintelligible pleadings").
        Although the Motion to Dismiss does not mention Rule 8, it appears to the Court that the
27  SAC, like the Complaint and the FAC, does not comply with Rule 8.

28

15's liberal amendment policy "does not apply when amendment would be futile"); Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); see also Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim or defense.") (citation omitted).

      2.    <u>Plaintiff has Failed to State a Plausible Claim for Relief.</u>

          a.    <u>The Bane Act.</u>

The SAC alleges a claim for the violation of the Bane Act. (<u>See</u> SAC at 91-101 (¶¶ 153-74)). The gist of Plaintiff's Bane Act claim is that Defendants "interfere[ed] with Plaintiff's constitutional and statutory rights" of association, free speech, public safety reporting, and equal protection "through threats, intimidation, and coercion" and interfered with Plaintiff's "right to communicate freely, pursue artistic and professional careers, and speak about abuse without fear of retaliation" "through threats, intimidation, surveillance, and psychological coercion. (SAC at 91 (¶¶ 153-54); see also SAC at 92-99 (¶¶ 155-70)).

The Bane Act, codified in California Civil Code Section 52.1, makes it unlawful for persons, whether or not acting under color of law, to "interfere[] by threat, intimidation, or coercion, or attempt[] to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or law of [the State of California][.]" Cal. Civ. Code § 52.1(a); see Allen v. City of Sacramento, 234 Cal.App.4th 41, 67 (2015) (for a violation under the Bane Act, "[a] plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion");

Shoyoye v. County of Los Angeles, 203 Cal.App.4th 947, 956 (2012) ("A defendant is liable [under the Bane Act] if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidate, or coercion.") (citation omitted). "[T]he statute was intended to address only egregious inferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful." Shoyoye, 203 Cal.App.4th at 956.

Although Plaintiff argues that the SAC alleges that defendant Barresi made threats, intimidation, and coercion that interfered with Plaintiff's rights to free speech, petition, and association under the First Amendment of the United States Constitution and Article 1, Section 2 of the California Constitution, Plaintiff's right to privacy under Article 1, Section 1 of the California Constitution and Cal. Penal Code §§ 632 and 637.2, and/or Plaintiff's "right to pursue lawful employment and advocacy without unlawful interference" (see Opposition at 11-14), the SAC fails to contain clear, coherent, and nonconclusory factual allegations about defendant Barresi's actions that resulted in the violation of Plaintiff's constitutional and/or statutory rights. See McFadyen v. County of Tehama, Case No. 2:18-cv-02912-TLN-DMC, 2020 WL 4480376, at *13 (E.D. Cal. Aug. 4, 2020) ("Without facts indicating what specific threats, intimidation, or coercion lead to [the] violations [of the plaintiff's constitutional rights], [the California Civil Code § 52.1] cause of action must be dismissed."). Moreover, contrary to Plaintiff's assertion (see Opposition at 12-13), there is no indication in the Motion to Dismiss that Bane Act violations were limited to those only involving physical violence.

Accordingly, the SAC fails to allege a plausible claim for the violation of the Bane Act.

/ / /

/ / /

/ / /

14

            b.     <u>Invasion of Privacy (Intrusion into Private Affairs and Conversations)</u>

The SAC alleges a claim for invasion of privacy (intrusion into private affairs and conversations).  (<u>See</u> SAC at 101-11 (¶¶ 175-99)).

The California Constitution, Article 1, Section 1 provides that:  "All people are by nature free and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  <u>See</u> <u>Hill v. National Collegiate Athletic Assn.</u>, 7 Cal.4th 1, 15 (1994).

In California, there are two separate claims for invasion of privacy, namely, "(1) public disclosure of private facts, and (2) intrusion into private places, conversations or other matters."  <u>Shulman v. Group W Productions, Inc.</u>, 18 Cal.4th 200, 214 (1998) (citations omitted).  The elements of intrusion are "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."  <u>Id.</u> at 231.

The SAC contains allegations involving invasion of privacy based on intrusion into private affairs and conversations, including that:  (1) Defendant Barresi "surreptitiously obtained private and unconsented recordings of Plaintiff's confidential conversations, most notably a deeply personal phone call between Plaintiff and Angela Meador discussing sensitive matters" and "weaponized it for years" (SAC at 101-02 (¶¶ 178)); (2) defendant Barresi "violated Plaintiff's privacy by obtaining and exploiting private text messages and emails between Plaintiff and Meador without Plaintiff's consent" (SAC at 103 (¶ 181)); (3) "On at least sixteen separate occasions between October 2022 and December 2024, [d]efendant Barresi emailed, disseminated, and publicly released portions of the unconsented recording of Plaintiff and Meador, repeatedly exploiting the recording of Plaintiff and Meador as instruments of coercion and emotional distress.  As of May 2025, [d]efendant

15

Barresi still weaponizes and maintains this unconsented recording of Plaintiff and Meador, against their will." (SAC at 103 (¶ 182)); (4) "Defendant Barresi's secret interstate recording of Plaintiff's father constitutes intrusion upon Plaintiff's seclusion because it was conducted specifically to obtain private information about Plaintiff and her family relationships. James Conner, Plaintiff's father, did a signed declaration against [d]efendant Barresi's actions and that [d]efendant Barresi unlawfully recorded him across state lines, as well as against his consent use and sent his recording and its contents to cause harassment to his family and him." (SAC at 108-09 (¶ 194)); and (5) "Defendants' intrusion into allegations concerning Plaintiff's emotional care for friends and associates, as well as her deceased mother's emotional care for friends and associates and sexual matters, constitutes a highly offensive invasion of the most intimate aspects of personal life. By investigating, secretly recording, and weaponizing deeply personal information and sexual matters about both Plaintiff's and her mother's emotional care for friends and associates, Defendants deliberately exploited this sensitive information to estrange friends and cause Plaintiff to withhold communications." (SAC at 109-10 (¶ 196)).

In the Opposition, Plaintiff essentially repackages what she contends were allegations in the SAC involving the invasion of privacy claim based on the intrusion of private affairs and conversations by defendant Barresi: "Defendant [Barresi] weaponized Plaintiff's private discussion with Meador to re-traumatize Plaintiff by contorting the call to focus on sexual violence[.]" (Opposition at 16, citing SAC at ¶¶ 57-62); "Defendant [Barresi] subsequently probed into Plaintiff's family traumas, particularly by recording her father to extract Plaintiff's sensitive information and relationships with her mother, sister, followed by retaliation[.]" (Opposition at 16, citing SAC at ¶¶ 30-31, 51-53, 77-78, 88, 131, 194-95, 197); "Defendant weaponized his recording of Plaintiff's father by connecting it to themes of violence and abandonment, exploiting Plaintiff's relationship with her beloved mother Vicki and

her friends while interweaving her call with a female assault victim, thereby increasing the trauma tenfold[.]" (Opposition at 16, citing SAC at ¶¶ 78, 87-88, 105, 13); "[Defendant] Barresi exploited Plaintiff's family ties as tools of psychological coercion, using recordings and threatening disclosure to manipulate family dynamics and even invoking Plaintiff's relationship with her decease protective mother, causing emotional harm by desecrating Plaintiff's memory of her[.]" (Opposition at 16, citing SAC at ¶¶ 8, 18, 42, 53, 56, 68, 75, 78, 92-93, 97, 102, 111, 117, 119, 124, 148); and "[Defendant] Barresi probed into Plaintiff's relationships with her father and siblings to reinforce control and systematically undermine her support network[.]" (Opposition at 16, citing SAC at ¶¶ 51, 75-76, 118, 243, 258).

While, as noted above, the SAC (and Opposition) contain allegations of wrongdoing by defendant Barresi, the SAC fails to sufficiently allege that defendant Barresi intentionally intruded upon the solitude or seclusion of Plaintiff. See Shulman, 18 Cal.4th at 231 ("We ask first whether defendants 'intentionally intruded[d], physically or otherwise, upon the solitude or seclusion of another," that is, into a place or conversation private to [the two identified people]."]). Defendant Barresi may have used the recorded telephone call between Plaintiff and Angela Gayle Meador and the text messages and emails between Plaintiff and Angela Meador for improper purposes, but the SAC does not allege that defendant Barresi improperly recorded that telephone call or improperly obtained those text messages and emails. See Shulman, 18 Cal.4th at 230-31 (noting that intrusion into private places, conversations or matter "encompasses . . . unwarranted sensory intrusions such as eavesdropping, wiretapping, and visual or photographic spying").

To the extent that Plaintiff relies on allegations in the SAC regarding defendant Barresi's unconsented to recording of Plaintiff's father and use of such recording as support for her invasion of privacy claim, Plaintiff has not cited, and

/ / /

17

the Court is unable to locate, any authority supporting the right to bring such a claim when the person recorded was not the plaintiff.

To the extent that the SAC alleges that defendant Barresi's actions constituted an invasion of Plaintiff's mother's and Plaintiff's family's privacy (see SAC at 108 (¶¶ 191-92), 109 (¶ 194)), the Court concurs with defendant Barresi (see Motion to Dismiss at 14) that Plaintiff lacks standing to assert such a claim on her mother's, father's, or family's behalf. See TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (a plaintiff has standing to sue by showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

The allegations in the SAC are insufficient to satisfy the first element of the intrusion claim.[17]  Accordingly, the SAC fails to allege a plausible invasion of privacy claim against defendant Barresi.

        c.    <u>California Penal Code §§ 632 and 637.2 (Unauthorized Recording and Disclosure)</u>.

The SAC alleges a claim for the violation of Cal. Pen. Code §§ 632 and 637.2. (See SAC at 111-17 (¶¶ 200-22)).  The gist of Plaintiff's claim is that defendant Barresi, without authorization or consent from Plaintiff or Angela Gayle Meador, acquired and (from October 9, 2022 through December 31, 2024) repeatedly disclosed and disseminated a July 28, 2022 private telephone conversation between

---

[17] While defendant Barresi asserts that the allegations are insufficient to satisfy the second element of the intrusion claim (Motion to Dismiss at 14 ["Here, [Plaintiff] cannot realistically claim a reasonable expectation of privacy over conversations between herself and another person, who had every right to disclose such conversations to [d]efendant [Barresi] and which she alleges that she recorded."]), the Court declines to make a determination on that issue at this time.

Plaintiff and Angela Gayle Meador which Plaintiff, who was in California, unlawfully recorded. (SAC at 112-16 (¶¶ 202 (twice)-16)).

Cal. Pen. Code § 632(a) prohibits a person "who, intentionally and without the consent of all parties to a confidential communication" from "us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another by means of a telegraph, or other device, except a radio[.]" Cal. Pen. Code § 637.2 creates a civil action for persons injured by, among other provisions, California Penal Code § 632. See Cal. Pen. Code § 637.2.

As defendant Barresi asserts (see Motion to Dismiss at 15), Plaintiff alleges in the SAC that she recorded her telephone conversation with Angela Gayle Meador and that defendant Barresi unlawfully "obtained" the recording. (SAC at 112-13 (¶¶ 202 (second), 203, 205)). Contrary to Plaintiff's assertion (see Opposition at 19), the Motion to Dismiss does not contain any suggestion that the telephone conversation at issue was not confidential. There is no allegation in the SAC that Plaintiff used a device to eavesdrop upon or record the confidential communication between Plaintiff and Angela Gayle Meador. Accordingly, the SAC fails to state a plausible claim against defendant Barresi for the violation of Cal. Pen. Code §§ 632 and 637.2.

    d.   California Civil Code § 3344 (Unauthorized Use of Voice, Name and Likeness).

The SAC alleges a claim concerning the unauthorized use of name or likeness for commercial purposes. (See SAC at 117-22 (¶¶ 223-37)).

Cal. Civ. Code § 3344(a) provides in pertinent part that: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without

such person's prior consent, . . . shall be liable for any damages sustained by the person . . . injured a result thereof."

The statute "encompass[es] any unauthorized use 'on or in products, merchandise, or goods . . . .' (Stats. 1984, ch. 1704, § 2, p. 6172.) Accordingly, the statute no longer requires that the unauthorized use occur in a product advertisement or endorsement or other such solicitation of purchase." KNB Enterprises v. Matthews, 78 Cal.App.4th 362, 367, n.5 (2000). Under the statute, a plaintiff "must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." Downing v. Abercrombie v. Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) (citing Eastwood v. Superior Court, 149 Cal.App.3d 409, 417 (1983)). The apparent goal of the statute is to protect an economic right. See Comedy III Productions, Inc. v. Gary Saderup, Inc., 25 Cal.4th 387, 403 (2001) (". . . [T]he right of publicity is essentially an economic right. What the right of publicity holder possesses is not a right of censorship, but a right to prevent others from misappropriating the economic value generated by the celebrity's fame through the merchandising of the 'name, voice, signature, photograph, or likeness' of the celebrity.") (citation omitted); see also Gionfriddo v. Major League Baseball, 94 Cal.App.4th 400, 409 (2002) ("California recognizes the right to profit from the commercial value of one's identity as an aspect of the right to publicity.") (citations omitted); KNB Enterprises, 78 Cal.App.4th at 366 ("What may have originated as a concern for the right to be left alone has become a tool to control the commercial use and, thus, protect the economic value of one's name, voice, signature, photograph, or likeness.").

/ / /

/ / /

/ / /

/ / /

20

In the Opposition, Plaintiff contends that the SAC sufficiently alleges that defendant Barresi knowingly used Plaintiff's voice, name, and likeness without her consent for commercial purposes. (Opposition at 18-19). As support for her contention, Plaintiff characterizes the allegations in the SAC as follows (in the order presented):

(1) "The SAC alleges that [defendant] Barresi used Plaintiff's voice, name, and likeness without her consent to promote his own ventures, including his July 2024 book *Johnny Depp's Accidental Fixer*. (Opposition at 20, apparently citing SAC at ¶¶ 78, 85, 92, 115-16, 227-28, see Opposition at 9).

Paragraph 78 of the SAC, which appears to primarily discuss defendant Barresi's recording of a phone call with Plaintiff's father, contains several allegations. (See SAC at 44-45). Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim. The Court is not responsible for trying to discern which allegations are supportive of her claim. See Guatay Christian Fellowship v. Cnty. of San Diego, 670 F.3d 957, 987 (9th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles buried in briefs.'") (citation omitted).

Paragraph 85 of the SAC alleges: "By September 2023, Plaintiff was drained from Brooks, who warned her that if she stopped funding him, that Defendant Barresi would continue to harm others she cared about and her. This was a credible threat given the history. However, Plaintiff could not pay anymore [sic], and the stress was unbearable." (SAC at 48-49). Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.

Paragraph 92 of the SAC contains numerous allegations concerning defendant Barresi sending Plaintiff three threatening emails; and alleged that the "format [of the third email] was as a draft article seemingly ready for publication for publications like American Media Inc, New York Daily News, Radar Online, and Daily Mail as

/ / /

21

[d]efendant Barresi sells to." (See SAC at 52-54).  Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.

Paragraph 115 of the SAC alleges:

On July 9th, 2024, [d]efendant Barresi issued a press release in the Daily Mail promoting his book published July 5th, which explicitly mentioned Plaintiff and mischaracterized her associates as emotionally vulnerable 'conspirators.'  Plaintiff discovered the Daily Mail article, written by Chief Reporter Martin Robinson[,] that referenced both her and Meador in connection with [d]efendant Barresi's book.  This unauthorized release solidified Plaintiff's fears and escalated her emotional trauma.  The next day, on July 10, 2024, [d]efendant [Barresi] confirmed to a third party that he was actively contacting Meador.  This suggested their unconsented recorded phone conversation would continue to be disseminated and could be published in the Daily Mail or American Media Inc or other media outlets connected to [d]efendant Barresi without consent.  This created significant distress for the Plaintiff, who experienced physical symptoms of anxiety including a constricted feeling in her throat, and considered relocating to France to escape the situation.  These incidents demonstrate Plaintiff's reasonable fear that both she and her associate would be negatively portrayed in mainstream media, with their private communications potentially being published without authorization.

(SAC at 68-69).

/ / /

/ / /

/ / /

/ / /

Again, Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.

Paragraph 116 of the SAC alleges:

Defendant Barresi operates self-promotional websites at https://paul-barresi.com and https://paul-barresi.com/articles. By approximately July 2024, [d]efendant [Barresi] had modified his websites to focus entirely on promotion and sales activities in connection with media coverage. These sites display articles from various publications, including American Media Inc, RadarOnline, Daily Mail, New York Daily News, New York Post, News 24, and Page 6. Defendant Barresi also operates promotional YouTube Channels that contain recordings of Plaintiff and Meador and advertise his book for sale. Bot the websites and YouTube channels promote [d]efendant Barresi's book, *Johnny Depp's Accidental Fixer*, which became available for sale in July 2024.

(SAC at 69).

Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.

Paragraph 227 of the SAC alleges:

a) Defendant [Barresi] publicly released the recording [of the telephone conversation between Plaintiff and Angela Gayle Meador] approximately at least 16 times across his two YouTube channels (@paulbarresi9713 and @paulbarresi705), Twitter (PaulBarresi1), and via email (PaulBarresi@aol.com). These actions increased his followers significantly—from a handful to over 7,000—and generated commercial interest and profit, including interactions with media outlets and publicists such as Melissa Nathan, Hiltzik Strategies,

Michael Hiltzik, David Shane, and others.  b) Defendant Barresi sent information on Plaintiff and her associates to Martin Robinson, Chief Reporter of the Daily Mail[,] in release of his book and to the Daily Mail. c) Defendant Barresi prepared media articles, and excerpts for distribution, and cited Plaintiff and Meador's recording to publicists[.] (SAC at 118).

Plaintiff does not specify which allegations support her claim or how such allegations support his claim.  Moreover, Plaintiff has not provided enough details about defendant Barresi's You Tube postings, the information defendant Barresi provided to Martin Robinson, or defendant Barresi's preparation of media articles and excerpts and/or defendant Barresi's "citation" of the recorded telephone conversation between Plaintiff and Angela Gayle Meador.

Finally, Paragraph 228 of the SAC alleges:

(a) Barresi has been documented to have earned hundreds of thousands of dollars from this work and selling drafts to media outlets. (b) Starting October 2022, Defendant Barresi sent the unauthorized recording of Plaintiff and Meador to publicists.  Defendant Barresi's self-promotional sites, https://paul-barresi.com, https://paul-barresi.com/articles, show using Plaintiff and Meador's unconsented recordings to his commercial advantage with associated articles (American Media Inc, RadarOnline, Daily Mail, New York Daily News, New York Post, News 24, Page 6, and YouTube Channels) and his book for sale, Johnny Depp's Accidental Fixer in July 2024. Defendant Barresi sent Plaintiff and Meador's unconsented recording to internet journalists, including ThatUmbrellaGuy.  His promotional YouTube channels (@paulbarresi9713 and @paulbarresi705), further display Plaintiff's voice and identity, and her and Meador's recording,

to attract media contracts, media assignments, and freelance assignments. (c) Defendant Barresi sought payment through his association with [defendant] Waldman.

(SAC at 119).

Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim. Moreover, Plaintiff has not provided enough details about defendant Barresi's actions in sending the recorded telephone conversation between Plaintiff and Angela Gayle Meador to publicists and internet journalists, in using that recording on his own self-promotional sites and YouTube Channels and for articles and his book.

(2) The SAC "further alleges that [defendant] Barresi repeatedly disseminated Plaintiff's recorded voice, which increased his social media following and bolstered his media contacts." (Opposition at 20, citing ¶¶ 49-50, 115-16)).

Paragraph 49 of the SAC contains numerous allegations which appear to primarily concern defendant Barresi's interactions with Rebecca Berry to obtain (ultimately by payment) the recorded telephone conversation between Plaintiff and Angela Gayle Meador. (SAC at 27-28).

Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.

Paragraph 50 of the SAC alleges:

In early November 2022, [d]efendant Barresi was instructing publicists on narrative they could take, which involved Plaintiff and Meador. While simultaneously leveraging publicists (Melissa Nathan and Hiltzik Communications, David Shane) that he sent information about Plaintiff and Meador, [defendant] Barresi threatened Plaintiff with deployment of security guards, explicitly directing them to harm Plaintiff for supporting, communicating positively with, or potentially

meeting against with [Amber] Heard.  [Defendant] Barresi then sent
these threats to Taft.  This was particularly impactful following
Plaintiff's assistance to Heard and to Meador.

(SAC at 28).

Plaintiff does not specify which allegations support her claim or explain how
such allegations support her claim.

Paragraphs 115 and 116 of the SAC are fully presented above.  Again, Plaintiff
does not specify which allegations support her claim or explain how such allegations
support her claim.

(3) "Defendant [Barresi] sent recordings of Plaintiff's voice to commercial
entities including publicists connected to high profile figures for strategic and
reputational gain."  (Opposition at 20, citing SAC at 27-28 (¶ 49), 28 (¶ 50), 118 (¶
227), 119 (¶ 228)).

Paragraph 49 of the SAC is discussed above, and Paragraphs 50, 227, and 228
of the SAC are fully presented above.  Plaintiff does not specify which allegations
support her claim or how such allegations support her claim.  Moreover, as discussed
above, Plaintiff has not provided sufficient details about defendant Barresi's actions
alleged in paragraphs 227 and 228 of the SAC.

(4) "[Defendant] Barresi used and distributed Plaintiff's voice more than 16
times, including sending it to publicists and using it on commercial YouTube
channels and social media[.]"  (Opposition at 20, citing SAC at ¶¶ 44, 89, 122).

Paragraph 44 of the SAC alleges:

On October 9, 2022, [defendant] Barresi began wrongful uses,
disseminations, and unauthorized disclosures of the unconsented audio
recording of [Plaintiff] and Meador.  This exploitation continued
repeatedly, with documented incidents on October 10, 14, 15, 22,
December 16, 28, 31, 2022, and October 27, 28, 2023, December 31,

26

2023, January 2024, December 31, 2024, and in emails in November 2022 and August 2024, showing a persistent pattern of using this recording as leverage against both women.  On October 9th, Defendant Barresi explicitly published a forged "exhibit A" of Plaintiff and Meador's unconsented recording and private conversation that summarized what he sent to Publicists.  Spreading the unconsented recording of [Plaintiff] and Meador to publicists was emotionally damaging to cause panic and divergence.  In one particularly disturbing incident, [d]efendant Barresi uses Angela Meador and [Plaintiff's] 'secret' phone recording and calls Marton Csokas an 'Equalizer star.' Defendant [Barresi] enforced their phone call to be about filing a police report against him, and diverted it from Csokas.

(SAC at 23-24).

Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.  Moreover, Plaintiff has not provided sufficient details about defendant Barresi's disclosures/disseminations of the recorded telephone conversation on the specified dates.

Paragraph 89 of the SAC alleges:

On October 27th and October 28th, 2023, there were approximately two more times that Plaintiff and Meador's unconsented recording of their private conversation was exploited and unauthorizedly disclosed by [d]efendant Barresi.  It conveyed forcing Meador to falsely believe she'll be involved with crimes, which again reinforced that [d]efendant Barresi was forcing Meador to be connected to others' statements, while reinforcing traumatization of violence. Plaintiff felt helplessness to stop [d]efendant Barresi and couldn't obtain help beginning with her unconsented recording of her phone call

27

with Meador, being unauthorizedly disclosed, with attempts to find legal counsel, discovering their conflicts of interest with convicted Pellicano, [defendant] Barresi's affiliate, which created more panic in Plaintiff.  In Plaintiff's desperation, she conveyed about retainers of $100,000.

(SAC at 51).

Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.  Moreover, Plaintiff has not provided sufficient details about defendant Barresi's disclosures of the recorded telephone conversation on the specified dates.

Paragraph 122 of the SAC alleges:

On December 31st, 2024, [d]efendant Barresi again repeated unauthorized disclosure of the unconsented recording of the phone call between Plaintiff and Meador, on his YouTube advertising channel, forcing statements that no longer applied and not wanted in their lived realities, replaying allegations of a gun to Meador's head and witness intimidation, and was a moment in time that [d]efendant Barresi refused to let them free of.  This retaliation was unwanted, and again forced statements, taking away autonomy and wellbeing. This harm again repeated to Plaintiff and Meador was emotionally draining, creating distress, and wanting escape from [d]efendant Barresi.

(SAC at 73).

Plaintiff again does not specify which allegations support her claim or how such allegations support her claim.  Moreover, Plaintiff has not provided sufficient details about defendant Barresi's disclosure of the recorded telephone conversation on the specified date.

/ / /

28

(5) "[Defendant] Barresi issued a press release that explicitly referenced Plaintiff and mischaracterized her associates and their emotional vulnerability[.]" (Opposition at 20, citing SAC at ¶ 115).

Paragraph 115 of the SAC is fully presented above.  Again, Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.

(6) "During and afterwards, [defendant] Barresi circulated Plaintiff's audio recording to control Plaintiff's communications with journalists."  (Opposition at 20, citing SAC at ¶ 118).

Paragraph 118 of the SAC alleges:

> On July 30, 2024, [d]efendant Barresi, in retaliation for Plaintiff speaking with reporters against falsified interview statements in his book and media positioning, exploits the unconsented recording of the phone call of Plaintiff and Meador with 6 unconsented recordings. Extremely hostile and threatening email containing vulgar language, false allegations about her family, and multiple links to YouTube videos with unconsented recordings.  Defendant Barresi repeatedly falsely claims [Plaintiff] "instills fear in vulnerable woman in deceitful attempt," referencing the recording of the conversation between [Plaintiff] and Meador described as showing her in a "vulnerable" state. The email titled "Your Brother is a Monster" against Plaintiff's half brother, suggests [defendant] Barresi is using these recordings as leverage or blackmail to maintain a book he's selling and media positioning, retaliating against [Plaintiff] for speaking with journalist Andréa Oldereide from BoredPanda about falsified interviews of witnesses, victims, and content—creating a pattern of harassment that could reasonably cause fear for personal safety and potentially violate

laws.  This harassment reconnects to previous threats of vandalism, break-ins, and intimidation against "Johnny witnesses," including through the use of an unconsented [defendant] Waldman recording. (SAC at 69-70).

Plaintiff does not specify which allegations support her claim or explain how such allegations support her claim.  Moreover, Plaintiff has not provided sufficient details about defendant Barresi's actions on the specified date.

As with the FAC, the conclusory and disjointed allegations in the SAC on which Plaintiff relies do not clearly and sufficiently state what information defendant Barresi unauthorizedly used for a commercial purpose and/or what was defendant Barresi's commercial purpose for any such use.  Indeed, there are no allegations in the SAC about defendant Barresi's unauthorized use of Plaintiff's name and/or likeness for commercial purposes.  Moreover, there are insufficient allegations in the SAC that Plaintiff's voice (contained in the recorded telephone conversation between Plaintiff and Angela Gayle Meador) was "on or in products, merchandise, or goods" or "for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services."  Plaintiff's creative and convoluted repackaging of the SAC's allegations do not rectify or otherwise cure the deficiencies with respect to Plaintiff's claim.[18]

Accordingly, the SAC fails to state a plausible claim against defendant Barresi for the violation of Cal. Pen. Code § 3344.

/ / /

/ / /

/ / /

---

[18] The Court's determination renders it unnecessary for the Court to address whether the SAC sufficiently alleged that Plaintiff suffered economic harm as a result of defendant Barresi's alleged unauthorized use of Plaintiff's voice, name, and likeness (see Motion to Dismiss at 16).

1            e.    <u>Civil Harassment (California Code of Civil Procedure § 527.6).</u>

2         The SAC alleges a claim of civil harassment.  (<u>See</u> SAC at 123-28 (¶¶ 238-

3    249)).

4         Cal. Code Civ. P. § 527.6 defines harassment as "unlawful violence, a credible

5    threat of violence, or a knowing and willful course of conduct directed at a specific

6    person that seriously alarms, annoys, or harasses the person, and that serves no

7    legitimate purposes."  Cal. Code Civ. P. § 527.6(b)(3).  "Course of conduct" is

8    defined as follows: "[A] pattern of conduct composed of a series of acts over a period

9    of time, however short, evidencing a continuity of purpose, including following or

10    stalking an individual, making harassing telephone calls to an individual, or sending

11    harassing correspondent to an individual by any means, including, but not limited to,

12    the use of public or private mails, interoffice mail, facsimile, or email."  <u>Id.</u> §

13    527.6(b)(1).  "The course of conduct must be that which would cause a reasonable

14    person to suffer substantial emotional distress, and must actually cause substantial

15    emotional distress to the petitioner."  <u>Id.</u> § 527.6(b)(3).

16         In the Opposition, Plaintiff contends that allegations in the SAC sufficiently

17    allege harassment by defendant Barresi.  (<u>See</u> Opposition at 21-22).  As support,

18    Plaintiff makes the following assertions:

        The SAC alleges that Barresi published her private communications to embarrass and intimidate her, tracked and publicized her whereabouts, and targeted her with publishing information on her, her family, and her activities hundreds of times. (See Section II.B. above.)[19]  From October 2022 through 2025,

---

[19] Section II.B. of the Opposition covers more than two pages.  (<u>See</u> Opposition at 8-10).  Plaintiff does not specify the statements in Section II.B. of the Opposition on which she is relying.  The Court guesses, without knowing, that Plaintiff is relying on the following paragraph in Section II B:

        [Defendant] Barresi issued explicit threats of violence, including references to firearms.  (SAC ¶¶ 14, 51–53.)  He stated his intention to make Plaintiff's "life a living nightmare" and threatened to post recordings "every day from now until

[defendant] Barresi engaged in a multi-year campaign of intimidation, digital surveillance, impersonation, and reputational sabotage. Defendant [Barresi] sent communications to Plaintiff referencing her mother's remains, coroner report, and childhood photos (SAC ¶¶49–54, 92–93, 118, 125). Defendant [Barresi] repeatedly fixated on Plaintiff, impersonated her associates, and falsely connected Plaintiff and her mother to adult content (¶¶92, 96, 102). As detailed in SAC ¶¶106–113, 245–256, [d]efendant Barresi sent over 65 harassing text messages to Plaintiff. This included the manipulated dissemination of private, unconsented recordings and disturbing messages involving Plaintiff's late mother (¶¶37–39, 56–58).

These acts were intentional, ongoing over years, and without any legitimate purpose. Throughout 2023 and 2024, [defendant] Barresi used social media to reference Plaintiff by name over 351 times, accompanied by hostile rhetoric and location- based threats (SAC ¶¶117–124). He posted flight paths, referenced private travel plans, and made aggressive false claims, all while tracking Plaintiff's whereabouts (¶¶69, 124, 126, 128). Between January and March 2025, he obtained private photos, impersonated witnesses, and posted manipulated imagery suggesting illness or death (¶¶123–128). Defendant [Barresi's] behavior disrupted her housing stability, harmed her reputation, caused business losses, and interfered with witness communications (¶¶129–149, 256, 300–307).

The cumulative impact of this conduct – documented across SAC ¶¶64–65, 91, and supported by a Temporary Restraining Order issued in Hawaii (SAC ¶127) – caused substantial emotional distress, and forced Plaintiff to relocate from California to Hawaii and then to Europe. These acts reflect a knowing, sustained, and illegitimate campaign of harassment with no lawful justification.

(Opposition at 21-22, bracketed footnote added).

---

hell freezes over." (¶¶ 107–109.) These threats were used to deter Plaintiff from communicating with witnesses, pursuing advocacy work, and seeking legal redress. (¶¶ 157–158, 164–167.) He pressured Meador and other contacts to sever ties with Plaintiff, sometimes coercing statements from them under duress, (¶¶ 34–35, 54, 132, 156, 303,) and interfered with Plaintiff's ability to subpoena witnesses and support survivors through coercive communications and public distortions, (¶¶ 161, 164–167.

(Opposition at 9).

Although each of the cited paragraphs contain several allegations, Plaintiff has not specified which allegations support her claim. The SAC may contain sufficient allegations supporting a civil harassment claim against defendant Barresi, but the SAC does not clearly and concisely allege what actions by defendant Barresi constituted harassment.[20]

Accordingly, the SAC fails to allege a plausible claim for civil harassment against defendant Barresi.

f.    Stalking (California Civil Code § 1708.7).

The SAC alleges a claim of stalking. (See SAC at 128-35 (¶¶ 250-66)). The gist of Plaintiff's stalking claim is as follows: "[Defendants] engaged in a persistent pattern of conduct with the intent to follow, alarm, place under surveillance, and harass Plaintiff. This pattern of conduct is evidenced by Defendants' continuous monitoring of Plaintiff's whereabouts, communications, and activities; their repeated unwanted contacts with Plaintiff and their deliberate efforts to track Plaintiff across state lines and foreign countries." (SAC at 129 (¶ 252); see also SAC at 129-34 (¶¶ 253-60)).

Cal. Civ. Code § 1708.7 provides, in pertinent part, that a defendant is liable for stalking when (1) "[t]he defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass" the plaintiff, (2) as a result of that pattern of conduct, the plaintiff "reasonably feared for his or her safety, or the safety of an immediate family member," or the plaintiff "suffered substantial emotional distress, and he pattern of conduct would cause a reasonable person to suffer substantial emotional distress," and (3) the defendant, as a part of the pattern of conduct, "made a credible threat with either . . . the intent to place the

---

[20] At this time, the Court will not address defendant Barresi's argument that "[n]one of the allegations [in the SAC] would cause a reasonable person to suffer emotional distress" (see Motion to Dismiss at 16).

plaintiff in reasonable for his or her safety, or the safety of an immediate family member, or . . . reckless disregard for the safety of the plaintiff or that of an immediate family member," or the defendant violated a restraining order. Cal. Civ. Code § 1708.7(a)(1)-(3). "Pattern of conduct" refers to "conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." Id. § 1708.7(b)(1). "Credible threat" refers to "a verbal or written threat, including that communicated by means of an electronic communication device, or a threat implied by a pattern of conduct, including, but not limited to, acts in which a defendant directly, indirectly, or through third parties, by any action, method, device or means, follows, harasses, monitors, surveils, threatens, or interferes with or damages the plaintiff's property, or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent and apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family." Id. § 1708.7(b)(2).

In the Opposition, Plaintiff characterizes the allegations in the SAC as follows: "[Defendant] Barresi repeatedly tracked and publicized Plaintiff's location, including posting her travel itineraries, flight paths, and home address. (See Section II.B. above)."[21]; "[Defendant] Barresi invoked firearms and repeatedly held mortality ideations. (SAC ¶¶ 14, 51–53, 107–109.)"; "[T]hese actions caused her to relocate multiple times for safety which has caused her ongoing fear for her safety. (See Section II.C. above.)"; "This campaign extended to Plaintiff's family.

---

[21] Again, Plaintiff does not specify what allegations in Section II.B of the Opposition she is relying on. It would appear that Plaintiff is relying on the following statements: "[Defendant] Barresi also engaged in surveillance and stalking. He publicly tracked Plaintiff's movements, posting her travel itineraries, flight paths, and home address (SAC ¶¶ 63, 69, 98, 124, 128,) and referenced her location in threatening posts and messages (¶¶ 117–124, 257–258.)" (Opposition at 9).

Defendant [Barresi] sent disturbing messages about Plaintiff's deceased mother, including a coroner's report with graphic descriptions (¶¶124, 109, 117, 119, 97, 42, 56, 87, 105, 302).''; ''[Defendant Barresi] also unconsentedly [sic] recorded Plaintiff's cognitively vulnerable father, James Conner, using the recording as a tool of emotional and reputational harm (¶¶52, 78, 131).''; ''Plaintiff's sister was similarly targeted through references tied to her trauma (¶51).''; ''As a result, Plaintiff's father fled to Alaska in fear and requested the harassment end (¶¶52, 78, 131).''; ''Defendant [Barresi] monitored Plaintiff's communications, movements, and relationships (see Section II.B. above).''; ''[Defendant] Barresi's stalking also targeted Plaintiff's communications and digital privacy. He monitored and exploited her private text messages and emails with assault survivor Meador (¶¶44, 101, 112).''; ''Defendant [Barresi] disseminated these communications, including at least 16 separate reuses of their unconsented phone call between 2022 and 2024, keeping both women in a state of fear (¶¶38, 44).''; ''In 2025, [defendant] Barresi escalated his behavior by using Plaintiff's roommate to obtain private photos of Plaintiff (¶141).''; ''[Defendant Barresi] coordinated harassment of Plaintiff's friends and ex-boyfriend through fabricated claims and invasive imagery (¶¶128, 141).''; and ''Plaintiff's fear was credible and well-founded. A Temporary Restraining Order was issued in Hawaii (Case No. 3DSS-25-0000044) based on Defendant's pattern of conduct (¶127).'' (Opposition at 23-24).

Again, each of the cited paragraphs contains several allegations, but Plaintiff has not specified which allegations support her claim. The SAC does not clearly and concisely allege what actions by defendant Barresi constituted stalking. Moreover, contrary to Plaintiff's assertion (see Opposition at 24), the SAC does not sufficiently allege that defendant Barresi made credible threats.

Accordingly, the SAC fails to allege a plausible claim for stalking against defendant Barresi.

g.    <u>Civil Conspiracy</u>.

The SAC alleges a claim of civil conspiracy under California law.  (<u>See</u> SAC at 135-40 (¶¶ 267-140); <u>see</u> <u>also</u> Opposition at 25).  The gist of Plaintiff's civil conspiracy claim is that "Defendants purposefully acted in concert to harm Plaintiff through multiple unlawful means, including invasion of privacy, stalking, deprivation of civil rights, unauthorized use of voice/likeness and spanning years." (SAC at 139-40 (¶ 275); <u>see</u> <u>also</u> SAC at 135-40 (¶¶ 269-74, 277)).

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its penetration."  <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 510-11 (1994) (citation omitted).  "To support a conspiracy claim, a plaintiff must allege the following elements:  '(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct.'"  <u>AREI II Cases</u>, 216 Cal.App.4th 1004, 1021 (2013) (citations omitted).

In the Opposition, Plaintiff argues that SAC sufficiently pleads the elements of a civil conspiracy claim:  "[The SAC] alleges that [defendants] Barresi and Waldman had a mutual understanding and agreement to target Plaintiff through threats, intimidation, and publication of unlawfully obtained recordings.  (¶¶ 25-28, 36-44, 157-167).";  and "[The SAC] alleges coordinated actions including dissemination of Plaintiff's private conversations to media contacts, online public of defamatory content, and manipulation of witnesses to isolate Plaintiff and undermine her credibility.  (¶¶ 39-44, 49-54, 132, 156-58, 164-167)."  (Opposition at 25).

Plaintiff again has not specified which allegations in the cited paragraphs support her claim.  Moreover, as defendant Barresi asserts (<u>see</u> Motion to Dismiss at 17), and contrary to Plaintiff's assertion (<u>see</u> Opposition at 25), the allegations in the SAC are insufficient to state a claim for another underlying tort, including the

36

violation of the Bane Act, the invasion of privacy, and the intentional infliction of emotional distress, as discussed above and below. See Mintel Learning Technology, Inc. v. Beijing Kaidi Educ., Case No. C 06-7541 PJH, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) ("If the plaintiff fails to adequately plead the underlying claim, the corresponding conspiracy claim must also fail.") (citing Applied Equipment Corp, 7 Cal.4th at 511).

Accordingly, the SAC fails to state a claim for civil conspiracy against defendant Barresi.

h.    Negligence.

The SAC alleges a claim of negligence.  (See SAC at 140-47 (¶¶ 280-98)). Under the negligence claim, the SAC alleges, among other things, that "Defendants owed a duty of care to not impede and interfere with Plaintiff's constitutional right to association and speech, including her right to communicate with individuals that Defendants sought to influence or impede, her vulnerable friends, or with potential witnesses, regardless of their viewpoints," "Defendants owed a duty of care to refrain from harming Plaintiff's family members, including her mother, half-siblings, and other family members, as any decent human being has a fundamental duty not to cause harm to innocent family members of individuals with whom they have disputes or business interests," and "Defendants breached this duty of care through their reckless and harmful actions directed at Plaintiff." (Id. at 141 (¶¶ 282-84).

Under California law, the elements of a negligence claim are: "(1) [T]he existence of a legal duty to use due care; (2) a breach of that duty; and (3) the breach as a proximate cause of the plaintiff's injury." Federico v. Superior Court, 59 Cal. App. 4th 1207, 1210-11 (1997); see also Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009).

/ / /

As defendant Barresi asserts (see Motion to Dismiss at 18), the SAC fails to allege the existence of a legal duty on the part of defendant Barresi to use due care. Plaintiff's reliance on Cal. Civ. Code § 1714(a) (see Opposition at 26) is unfounded because that section concerns a legal duty related to the furnishing of alcoholic beverages.  Moreover, as defendant Barresi asserts (see Motion to Dismiss at 18), the SAC fails to allege with sufficient particularity what she contends constituted the negligent acts by defendant Barresi or how defendant Barresi breached a duty of care to Plaintiff.

Although Plaintiff relies on numerous paragraphs in the SAC as support for her assertion that "[t]he SAC alleges that Defendants owed Plaintiff a duty to refrain from unlawful acts including surreptitious recording, stalking and threats of violence, and that they breached this duty through repeated wrongful acts" (Opposition at 26, citing SAC at ¶¶ 4, 16, 39-44, 49-53, 63, 69, 85-88, 92-93, 98, 107-24, 128, 144, 157-58, 164-67, 227-28, 257-58), Plaintiff does not specify which allegations in the cited paragraphs support her negligence claim.

Accordingly, the allegations in the SAC are insufficient to state a plausible negligence claim against defendant Barresi.

i.    Intentional Infliction of Emotional Distress.

The SAC alleges a claim of intentional infliction of emotional distress.  (See SAC at 147-52 (¶¶ 299-310)).

Under California law, the elements of an infliction of emotional distress claim are: "(1) [E]xtreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct[.]" Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993) (citation and internal quotation marks omitted); see also Crouch v. Trinity Christian

38

1    Center of Santa Ana, Inc., 39 Cal.App.5th 995, 1007 (2019).  For conduct to be
2    outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated
3    in a civilized community."  Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991)
4    (citation omitted); see also Hughes v. Pair, 46 Cal.4th 1035, 1051 (2009) (stating
5    that a claim for intentional infliction of emotional distress cannot be based on "mere
6    insults, indignities, threats, annoyances, petty oppressions, or other trivialities")
7    (citation and internal quotation marks omitted).  Additionally, "[t]he defendant must
8    have engaged in conduct intended to inflict injury or engaged in with the realization
9    that injury will result."  (Id.) (citation and internal quotation marks omitted).  "Severe
10   emotional distress means emotional distress of such substantial quality or enduring
11   quality that no reasonable [person] in civilized society should be expected to endure
12   it."  Potter, 6 Cal.4th at 1004 (citation and internal quotation marks omitted).

13        In the Opposition, Plaintiff contends that "[t]he SAC alleges that Defendants
14   engaged in extreme and outrageous conduct including violations of rights,
15   publication of unlawfully recorded private conversations, stalking, and public
16   humiliation.  (Opposition at 26, citing SAC at ¶¶ 14, 39-44, 49-53, 63, 69, 92-93,
17   98, 107-24, 128, 157-58, 164-67, 257-58).

18        Again, Plaintiff does not specify which allegations in the cited paragraphs
19   support her intentional infliction of emotional distress claim.  Moreover, the
20   conclusory (and mostly interpretive) allegations in many of the cited paragraphs do
21   not sufficiently describe outrageous conduct.  See Hughes, 46 Cal.4th at 1050
22   ("Liability for intentional infliction of emotional distress does not extend to mere
23   insults, indignities, threats, annoyances, petty oppressions of other trivialities.")
24   (citations and internal quotation marks omitted).  Moreover, Plaintiff arguably relies
25   on allegations in the SAC that do not describe conduct by defendant Barresi that was
26   directed at Plaintiff (see Opposition at 27 ["As someone who worked with vulnerable
27   populations and public safety initiatives like SaveMeNow since 2019, Plaintiff was
28   sensitive to harm inflicted to her and others and others that harmed family and

39

individuals going through trauma (¶¶20, 97, 72).    Defendant knew this and intentionally targeted those she cared about (¶¶25-26, 43, 54, 59, 86, 140).").  See Christensen, 54 Cal.3d at 903 ("It is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.").  Therefore, the SAC's allegations do not sufficiently allege outrageous conduct on the part of defendant Barresi.[22]

Accordingly, the SAC fails to allege a plausible intentional infliction of emotional distress claim against defendant Barresi.

### j.    Negligent Infliction of Emotional Distress.

The SAC alleges a claim of negligent infliction of emotional distress.  (See SAC at 152-56 (¶¶ 311-21)).

"A cause of action for negligent infliction of emotional distress requires that a plaintiff show '(1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress.'"  Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).

Defendant Barresi contends that the allegations in the SAC are insufficient to satisfy the severe or extreme emotional distress element of her negligent infliction of emotional distress claim.  (See Motion to Dismiss at 20-21 ["Plaintiff's general allegations and recitations of the element are not sufficient to meet the high standard required to prove severe emotional distress."]).

In the Opposition, Plaintiff alleges that defendant Barresi conduct caused her severe emotional distress (Opposition at 27), which she appears to describe as her

---

[22] Defendant Barresi asserts that the allegations in the FAC are not sufficient to show that Plaintiff suffered severe or extreme emotional distress as a result of defendant Barresi's conduct.  (See Motion to Dismiss at 20).  While the Court will not address that assertion with respect to Plaintiff's claim of intentional infliction of emotional distress, the Court will address that assertion with respect to Plaintiff's claim of negligent infliction of emotional distress, discussed below.

"experience[ing] symptoms consistent with PTSD, depression and chronic anxiety, impairing her ability to work, study, and maintain relationships." (Opposition at 10, citing SAC at ¶¶ 59, 71, 86, 88, 97, 114, 119, 121, 126, 135, 143; see also Opposition at 26-27).

It is not the Court's responsibility to comb through the myriad of allegations in the cited paragraphs to find allegations supporting Plaintiff's claim.    Although Plaintiff in the SAC may be attempting to allege that as a result of defendant Barresi's conduct she suffered, among other things, panic attacks, PTSD, depression, prolonged pain, and worry (see SAC at 35 (¶ 59), 40 (¶ 71), 49 (¶ 86), 50 (¶ 88), 56 (¶ 97), 72 (¶ 121 (first)), 81 (¶ 135), 85-86 (¶ 143), 155 (¶ 319)), these allegations not only do not sufficiently describe Plaintiff's serious emotional distress, but also do not clearly and concisely allege which actions by defendant Barresi caused her to suffer serious emotional distress.

Accordingly, the SAC fails to allege a plausible negligent infliction of emotional distress claim against defendant Barresi.

> ### k.    Racketeering Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961, 1962).

The SAC alleges a racketeering claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").    (See SAC at 156-73 (¶¶ 323-38)).

Under RICO, it is unlawful for a person to benefit from a pattern of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1961, et seq. The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation omitted); see also Eclectic Properties East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014).  To show the existence of an enterprise, a plaintiff "must plead that the

41

enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." <u>Eclectic Properties East, LLC</u>, 751 F.3d at 997 (citation omitted).  "To establish a RICO pattern it must be shown that the predicate themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 240 (1989) (emphasis in original).  "In addition, the conduct must be [ ] the  proximate cause of harm to the victim." <u>Eclectic Properties East, LLC</u>, <u>supra</u> (citation omitted).

Defendant Barresi contends that the SAC fails "to allege facts sufficient to establish the existence of an enterprise, a pattern of predicate acts[,] or injury to [Plaintiff's] business or property." (Motion to Dismiss at 21).

In the Opposition, Plaintiff argues that the SAC alleges the existence of an enterprise with "structure, a shared purpose, and relationships among its members that persisted for years" (Opposition at 28):  ". . .  Defendants, along with others, formed an ongoing association-in-fact enterprise to target Plaintiff." (Opposition at 28, citing SAC at ¶¶ 25-28, 36-44, 49-54, 132, 156-58, 164-67, 303); and "The enterprise's purpose was to silence Plaintiff's communications with witnesses and victims of [defendant] Baresi's [sic] crimes, prevent Plaintiff from exposing his crimes against individuals he fixated on, destroy her professional reputation, and profit from the exploitation of her private communications and identity." (Opposition at 28, citing SAC at ¶¶ 39-44, 49-54, 85-88, 92-93, 115-18, 227-28).

Plaintiff does not specify which allegations in the cited paragraphs are relevant or explain how such allegations support her claim about the existence of an enterprise with a common purpose, structure, and longevity.  Moreover, like Plaintiff did in the FAC, it appears that Plaintiff attempts to allege the existence of an enterprise based on conclusory statements, hearsay statements, speculation, and imaginative thought.  (<u>See</u> e.g., SAC at 160-61 (¶ 327)).

In the Opposition, Plaintiff argues that the SAC alleges a patten of related and continuous "predicate acts," including (1) "[w]ire fraud (18 U.S.C. § 1343) by transmitting fabricated and unlawfully obtained material electronically to harm Plaintiff's reputation, professional initiatives, and interfere with her business relationships" (Opposition at 28, citing SAC at ¶¶ 40-44, 49-50, 115-18, 227-28), (2) "[e]xtortion (18 U.S.C. § 1951) by threatening to publish damaging material unless Plaintiff ceased advocacy and legal efforts" (Opposition at 28, citing SAC at ¶¶ 40, 48-55, 91, 105-12, 141, 144-46), (3) "[i]llegal interception and disclosure of communications (18 U.S.C. § 2511) by surreptitiously recording and distributing private calls" (Opposition at 29, apparently citing SAC at ¶¶ 16, 37, 39, 44, 48-50, 85-88, 109, 112, 115-18, 144, 227-28, see Opposition at 8-9), and (4) "witness tampering (18 U.S.C. § 1512) by coercing associates and witnesses to sever ties with Plaintiff or alter their accounts" (Opposition at 29, citing SAC at ¶¶ 14, 18, 28-33, 40, 52-55, 127-34, 145-48).

Plaintiff does not specify which allegations in the cited paragraphs are relevant or explain how such allegations show the requisite "predicate acts." Moreover, as defendant Barresi points out (see Motion to Dismiss at 21), some of the SAC's "predicate act" allegations cited by Plaintiff are based on the accusations of persons other than Plaintiff. Additionally, Plaintiff's characterization of the "predicate acts" in the Opposition do not appear to totally line up with the allegations of "predicate acts" in the SAC. (See SAC at 161-65 (¶¶ 328-31)).

In the Opposition, Plaintiff asserts that "[d]efendants argue that Plaintiff has not alleged a 'distinct' enterprise separate from the predicate acts." (Opposition at 29). Contrary to Plaintiff's assertion, defendant Barresi is the only defendant moving to dismiss the SAC, and defendant Barresi did not make the argument which Plaintiff attributes to him.

/ / /

43

Finally, in the Opposition, Plaintiff argues that the SAC sufficiently alleges injury to her business or property because "[t]he SAC alleges that Defendants' conduct caused [her] to lose board positions, equity interest, business opportunities, and income from dissolved partnerships and canceled projects." (Opposition at 29, citing SAC at ¶¶ 66, 72, 95, 119, 244, 328-36)).

Plaintiff does not specify which allegations in the cited paragraphs concern injury to her business or property. Moreover, the allegations on which Plaintiff relies do not clearly allege that she suffered economic injury as a result of defendant Barresi's RICO violations. Simply put, the allegations in the SAC are not sufficient to establish that Plaintiff was injured in her business or property by reason of defendant Barresi's alleged racketeering activities.

Accordingly, the allegations in the SAC do not give rise to a plausible RICO claim against defendant Barresi.

3.    Leave to Amend Should be Granted for Plaintiff's State Law Claims but not for Plaintiff's RICO Claim.

As discussed above, the Ninth Circuit requires that pro se litigants be given an opportunity to amend unless it is clear that the deficiencies cannot be overcome. Lopez, 203 F.3d at 1130-31. While the Court is dubious Plaintiff can state plausible state law claims against defendant Barresi, the Court cannot at this point conclude that amendment of Plaintiff's state law claims would be futile. Therefore, in the interests of justice, and in light of her pro se status, Plaintiff is granted one more opportunity to cure the above-noted deficiencies in her pleading with respect to her state law claims.

However, this is the third time that defendant Barresi has moved to dismiss Plaintiff's pleading (each of which has alleged a RICO claim) based on her failure to state a claim. (See Docket Nos. 16, 26, 82). Prior to the SAC, the Court advised Plaintiff about the deficiencies in her pleadings, including the failure to state a

44

plausible RICO claim. (Docket No. 66). Although Plaintiff has had several opportunities to cure the deficiencies in her pleadings, the SAC does not come close to alleging a plausible RICO claim against defendant Barresi. The incoherent, disjointed, repetitive, and rambling allegations in the SAC, as well as in the Opposition, make it clear that Plaintiff is unable to allege a viable RICO claim against defendant Barresi. While the Court is mindful of Plaintiff's pro se status, it is clear that granting Plaintiff an opportunity to cure this deficiency in her pleading would be futile. See Chaset, 300 F.3d at 1088 ("Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment.").

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) Approving an accepting this Report and Recommendation; (2) granting defendant Barresi's Motion to Dismiss (Docket No. 82), dismissing the state law claims alleged in the SAC without prejudice and with leave to amend the state law claims alleged in the SAC, and dismissing the RICO claim alleged in the SAC with prejudice and without leave to amend; and (3) ordering Plaintiff, if he still desires to pursue this action, to file a Third Amended Complaint within thirty (30) days of the District Court's Order accepting this Report and Recommendation.

If Plaintiff chooses to file a Third Amended Complaint, it should bear the docket number assigned in this case; be labeled "Third Amended Complaint"; and be complete in and of itself without reference to the Complaint, FAC, SAC, or any other pleading, attachment, or document.

DATED: October 29, 2025

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

45

1

**NOTICE**

2        Reports and Recommendations are not appealable to the Court of Appeals

3   but may be subject to the right of any party to file Objections as provided in the

4   Local Rules and review by the District Judge whose initials appear in the docket

5   number.  No Notice of Appeal pursuant to the Federal Rules of Appellate

6   Procedure should be filed until entry of the Judgment of the District Court.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28