Christina Taft
Plaintiff in Propria Persona
16 Mitchell Street
Boston, Massachusetts 02127
Phone: 215-787-1805
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

CHRISTINA TAFT

      Plaintiff,

vs.

PAUL BARRESI, et al,
inclusive,

      Defendants.

Case No.: 5:24-cv-01930-TJH-DTB

[Hon. Terry J. Hatter, Jr, District Judge]

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE SECOND AMENDED COMPLAINT'S CLAIMS FOR RELIEF NEEDING DISTRICT JUDGE'S DE NOVO REVIEW**

***[Filed concurrently with certificate of service]***

Date: 12th November, 2025
Time: Under submission

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................4

II. STANDARD OF REVIEW ..................................................................7

III. PARAGRAPH-SPECIFIC ANALYSES DEMONSTRATE HOW THE

    ALLEGATIONS SATISFY EACH CLAIM .......................................9

A. California Civil Code § 3344 (Unauthorized Use of Voice/Identity)................10

B. Intrusion into Private Affairs…………………………………………….......…..12

I. Requiring Analysis: Cultural Perspective Regarding Plaintiff's Claims including

in Supporting Survivors of Abuse, Rape Victims, and Free Speech for Both:

…………………………………………………………………………………13

C. Civil Harassment (Cal. Code Civ. Proc. § 527.6) ...............................15

D. Stalking (Cal. Civ. Code § 1708.7).......................................................16

E. Civil RICO...............................................................................................16

F. California Bane Act (Cal. Civ. Code § 52.1) - Interference with Civil Rights

    Through Coercion, Threats, and Intimidation ...............................19

IV. RECORD REFERENCES DEMONSTRATING THE MAGISTRATE CITED

    DETAILED ALLEGATIONS.............................................................20

V. OBJECTIONS TO THE REPORT AND RECOMMENDATION....................21

A. The Report Did Not Accept Allegations as True or Draw Inferences in

    Plaintiff's Favor .........................................................................22

B. The Report Did Not Apply the Liberal Construction Required for Pro Se Filings

    .......................................................................................................23

C. The Report Misunderstands the Consent-Based Privacy Violations Alleged ....23

D. The Report Fails to Consider the Pattern and Duration of Harassing Conduct..24

E. The Report Overlooks the Legal Significance of Emotional Harm and Context

    .......................................................................................................25

F. Dismissal Without Leave to Amend Is Improper at This Stage..........................25

2

VI. REQUESTED RELIEF ........................................................................26

VII. CONCLUSION ...............................................................................27

PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE SECOND AMENDED COMPLAINT'S CLAIMS FOR RELIEF NEEDING DISTRICT JUDGE'S DE NOVO REVIEW

1

## TABLE OF AUTHORITIES

2

Cases

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ............................................................5

*Bell Atlantic Corp. v.* Twombly 550 U.S. 544 (2007) ...........................................5

*Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) ..............................8

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................5

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) .........................................................8

*Gisèle Pelicot c. Paris Match, Tribunal judiciaire de Nanterre* (2025).................13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ..................................................5

Lopez v. Smith, 203 F.3d 1122, 1130 to 1131 (9th Cir. 2000) ...........................22

*Lopez v. Smith*, 203 F.3d 1122, 1130-1131 (9th Cir. 2000) ............................8

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)...........................12

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ...................7


Statutes

§1951 ..........................................................................................................................17

§1961(5) .....................................................................................................................17

§367 ............................................................................................................................23

18 U.S.C. § 1964(c) ..................................................................................................17

28 U.S.C. § 636(b)(1) .................................................................................................6

28 U.S.C. Section 636(b)(1) .....................................................................................7

Cal. Civ. Code § 1708.7 ...........................................................................................15

Cal. Civ. Code § 52.1 ...............................................................................................18

Cal. Code Civ. Proc. § 527.6 ..................................................................................14

California Civil Code § 3344 ...................................................................................10

PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE SECOND AMENDED COMPLAINT'S CLAIMS FOR RELIEF NEEDING DISTRICT JUDGE'S DE NOVO REVIEW

<u>Rules</u>

Federal Rule of Civil Procedure 72(b)...........................................................................7

Rule 12(b)(6)…………………………………………………………………………4

## I. INTRODUCTION

Plaintiff Christina Taft respectfully objects to the Magistrate Judge's Report and Recommendation ("Report") dated October 29, 2025. The Report fails to apply the proper Rule 12(b)(6) standard and the liberal construction mandated for pro se pleadings under *Erickson v. Pardus*, 551 U.S. 89 (2007); *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000). Rather than accepting Plaintiff's well-pled factual allegations as true and construing them in the light most favorable to Plaintiff, the Report improperly discounts them as "narrative," conflicting with the pleading standard under *Bell Atlantic Corp. v.* Twombly 550 U.S. 544 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and other binding Ninth Circuit authority.

The SAC alleges specific, repeated acts of non-consensual recordings exploitation of Plaintiff and Plaintiff's family; repeated reference to and use of those confidential communications; coercive and intimidating conduct; exploitation of sensitive personal and family information; and resulting emotional distress and needs for relocation based on Plaintiff's safety and privacy concerns. These allegations are pled with factual specificity and, when taken as true, plausibly support the claims asserted under the governing standards.

Respectfully, the District Judge needs to consider claims of relief for a Plaintiff, who denounced exploitative and abusive practices, against defendant Barresi who exploits both vulnerable individuals and high-profile individuals who have knowledge of but neither direct nor consent to his actions (SAC ¶¶ 14, 25). He strategically leverages proximity to high-profile figures while disproportionately targeting vulnerable individuals through nonconsensual recordings (¶¶ 13, 16, 43), using social expectations that public-facing individuals must remain accessible, while Plaintiff cannot shield herself or her network from his coercive conduct (¶¶ 38, 59, 159). This dynamic creates severe safety risks for Plaintiff and other victims, including rape survivors whom Barresi manipulates through telephone recordings to

create forced participation in his schemes (¶¶ 16, 39, 44), directly impacting public safety initiatives (¶¶ 10, 72, 86, 96). The precedent set here will affect how courts protect victims who try to help others but become trapped in exploitation schemes - a pattern that threatens witnesses, advocates, and those involved in public safety for years to come.

The Report does not meaningfully apply these factual allegations to the elements of the claims. Instead, it discounts them as background and evaluates format rather than substance. At the pleading stage, however, Plaintiff need only allege facts that, accepted as true, give rise to a plausible inference of liability. Plaintiff has done so. Pro se litigants are not held to technical drafting standards, and the Court must identify potentially viable theories from the facts pled rather than fault structural or stylistic imperfections.

Alternatively, consistent with Ninth Circuit authority strongly favoring amendment for pro se litigants, Plaintiff respectfully requests leave to amend to restructure facts in the light most favourable to resolution.

Plaintiff has alleged in detail that Defendant Barresi exploits individuals (SAC ¶¶ 14, 25) and targets vulnerable individuals through nonconsensual recordings (¶¶ 13, 16, 43). This dynamic creates severe safety risks for Plaintiff and other victims. The precedent set here will affect how courts protect victims who try to help others but become trapped in exploitation schemes - a pattern that threatens witnesses and advocates.

For these reasons, Plaintiff requests that the Court decline to adopt the Report in relevant part, conduct *de novo* review under 28 U.S.C. § 636(b)(1), and permit the claims to proceed or, at minimum, grant leave to amend.

## II. STANDARD OF REVIEW

Under 28 U.S.C. Section 636(b)(1) and Federal Rule of Civil Procedure 72(b), the district court must conduct a *de novo* review of any portions of a magistrate

judge's report and recommendation to which specific objections are made. This obligation requires the district judge to consider the record, evaluate the legal issues independently, and reach its own conclusions rather than defer to the magistrate judge. The Ninth Circuit has confirmed that when objections are filed, the district court must exercise its independent judgment and cannot simply adopt the recommendation without analysis. See *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Courts therefore must take care to meaningfully review the factual assertions and legal arguments raised in objections and to correct errors where a magistrate judge has failed to apply the proper standards.

When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations as true and must view them in the light most favorable to the nonmoving party. See *Ashcroft, supra*, 556 U.S. at 678. The question at this stage is not whether the plaintiff will ultimately prevail, but whether the complaint alleges facts sufficient to allow the case to proceed. A plaintiff need not prove the facts or present evidence at the pleading stage. Instead, the complaint must only contain enough factual content to permit a reasonable inference that the defendant is liable for the misconduct alleged. As the Supreme Court held in Bell Atlantic Corp., supra, 550 U.S. at 555-570, a complaint survives dismissal when it presents more than speculative or conclusory assertions and provides factual matter that makes the claim plausible.

Pro se pleadings receive additional protection. Courts have a duty to liberally construe filings by litigants who do not have counsel, particularly where the issues are complex or emotionally sensitive. Pro se complaints are not held to the same stringent pleading requirements that apply to filings drafted by licensed attorneys. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Ninth Circuit has repeatedly reaffirmed that dismissal is inappropriate where a pro se litigant offers factual allegations that describe potentially unlawful conduct, even if the pleading could be

clearer or more technically precise. See *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1
(9th Cir. 1985). Courts must also allow amendment unless it is absolutely clear that
amendment would be futile. See *Lopez v. Smith*, 203 F.3d 1122, 1130-1131 (9th Cir.
2000).

These standards reflect an important principle. The judicial system must
remain accessible to individuals who seek to vindicate their rights without
professional legal assistance. This is particularly true where the alleged harm
involves personal or emotional injury, privacy violations, and coercive conduct,
because individuals affected by such harm may not be able to immediately articulate
their legal claims with formal precision. A court reviewing a pro se pleading is
required to interpret it generously, identify viable theories where possible, and
ensure that meritorious claims are not dismissed solely because of technical wording
or formatting difficulties.

In this case, the Report did not fully apply the de novo standard of review or
the liberal construction owed to pro se pleadings. Instead, it minimized factual
allegations and discounted relevant narrative context rather than accepting those
allegations as true and determining whether they plausibly state a claim. Because
Rule 12(b)(6) review and pro se protections both require careful consideration of
factual allegations at this stage, the Court should conduct a true de novo review and
apply the correct standards when evaluating Plaintiff's claims.

### III. PARAGRAPH-SPECIFIC ANALYSES DEMONSTRATE HOW THE ALLEGATIONS SATISFY EACH CLAIM

Judge Bristow quoted portions of the Second Amended Complaint describing
Defendant's repeated reference to and possession of Plaintiff's private telephone
recordings, including communications involving Plaintiff's cognitively vulnerable
father, but concluded he "could not discern" how these allegations support the
asserted causes of action. See Report (citing SAC ¶¶ 36–44, 132, 164–167, 303).

9

Those paragraphs, however, directly map to essential elements of the claims. They allege that Defendant (1) obtained or accessed confidential communications without consent; (2) repeatedly invoked the content of those recordings to exert emotional and reputational pressure; (3) referenced trauma-related and intimate family information to coerce and intimidate; and (4) caused Plaintiff's relocation, emotional distress, privacy damage, and reputational harm. Under Rule 12(b)(6), these well-pled allegations must be accepted as true and are sufficient to state claims for intrusion, harassment, stalking, intentional infliction of emotional distress, and related civil-rights violations.

The Report also quoted allegations regarding Defendant's coercive use of personal trauma disclosures and threats of further exposure. See SAC ¶¶ 87–92, 145–158. Yet the Report did not evaluate those facts under the elements of coercion-based claims. These allegations satisfy the Bane Act because they describe interference with Plaintiff's first amendment, safety, autonomy, and emotional liberty through coercive psychological pressure and threatened exposure of private information. They likewise support emotional-distress claims given the sensitive nature of the trauma-related content at issue. When viewed under the liberal pro-se standard, the paragraphs the Report cited do more than "offer context" they allege legally cognizable privacy invasion, coercion, intimidation, and resulting harm.

The Report repeatedly states that it "cannot discern" how Plaintiff's cited paragraphs support the claims. Plaintiff respectfully disagrees. Below is the paragraph-specific demonstration showing exactly how the allegations quoted by the Magistrate Judge satisfy each element of the claims at the pleading stage.

### A. California Civil Code § 3344 (Unauthorized Use of Voice/Identity)

The Report cited paragraphs 78, 92, 115–116, and 227–228. These allegations expressly plead the required elements. Paragraph 78 states that Defendant recorded Plaintiff's father to obtain private information regarding Plaintiff, establishing

intentional acquisition of voice material tied to Plaintiff's identity. Paragraph 92 alleges that Defendant prepared press-formatted communications threatening public disclosure, demonstrating intent to use Plaintiff's identity in media channels. Paragraphs 115–116 plead that Defendant publicized Plaintiff's voice and references to Plaintiff on YouTube channels and on promotional platforms in conjunction with his book release. Paragraphs 227–228 allege at least sixteen public releases, increased social-media following, and engagement with media while exploiting Plaintiff's voice and identity. Taken together, these allegations show knowing use of Plaintiff's voice and identity for commercial advantage without consent, satisfying Section 3344. Plaintiff's voice and identity was exploited by Defendant Barresi in his interests in pressuring Adam Waldman – tied to image interests and media – Johnny Depp and Amber Heard – identifying her with her family including her mother Victoria Taft and multiple former friends, including the vulnerable, in his pursuit of high-profile figures and profit, with her protest and lack of consent (SAC ¶¶78, 92, 115–116, 194, 227–228). The Plaintiff repeatedly denounced the exploitation Barresi used her for (SAC ¶¶59, 120). Plaintiff's voice and identity fill Barresi's commercial channels, each disclosure enhancing his infamy and pressure onto these figures (SAC ¶¶182, 227–228). Followers fed his exploitative use.

The Report references media-formatted threats and online publication of Plaintiff's voice. These facts heighten the seriousness of this claim because § 3344 is specifically intended to prevent unauthorized use of identity in public-facing or commercial contexts. Where private voice recordings tied to deeply personal trauma are positioned for public consumption, the resulting injury is amplified: the harm is not merely dignitary, but reputational, emotional, and irreversible once released. This conduct implicates not only private misuse but public exploitation, the precise harm § 3344 was enacted to deter.

**B. Intrusion into Private Affairs**

The Report cited paragraphs 178, 181–182, 194, and 196. Paragraph 178 alleges non-consensual acquisition of a confidential call concerning deeply personal matters. Paragraph 181 alleges unauthorized access to Plaintiff's private messages and emails. Paragraph 182 alleges repeated dissemination of the private recording over a prolonged period. Paragraph 194 alleges Defendant recorded Plaintiff's cognitively vulnerable father to obtain private information about Plaintiff. Paragraph 196 alleges exposure of deeply personal trauma-related and family matters. Defendant Barresi demonstrates his malicious intent repeatedly in his statements to Plaintiff to intrude into her affairs and communications (SAC ¶¶106-113, 145-148, 245-256). Defendant Barresi intruded into her affairs and communications with her friends, business interests, with her family and her mother Victoria Taft, including unauthorizedly looking into her alleged relationships, alleged sexual and sensitive history, and repeatedly located her properties (SAC ¶¶52, 78, 181-182, 194-196, 124, 128). Barresi went so far as to seek individuals that Plaintiff filed restraining orders against, including against her abusive father whose children are kept apart from him into adulthood, and her former roommate, in order to invade her affairs repeatedly (SAC ¶¶52, 78, 127, 131, 145-148). A Defendant's own statements and actions of hostility and aggression should not be discounted in demonstrating his malicious intent (SAC ¶¶107-109, 145-148, 245-256). These paragraphs demonstrate intentional intrusion into confidential communications regarding highly sensitive personal and family information, conduct a reasonable person would find highly offensive. They satisfy the elements of intrusion upon seclusion.

California law confirms that public or semi-public exposure of private trauma information magnifies privacy harm. *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).

The Report noted that Defendant referenced and attempted to disseminate deeply personal audio recordings. In modern privacy jurisprudence, intrusion harms are magnified when private trauma communications and sensitive family grief are threatened with public or quasi-public exposure. The intrusion here does not stop at access it includes leveraging private emotional disclosures in a context adjacent to public dissemination, exponentially increasing the privacy harm and personal vulnerability. Courts recognize such conduct as highly offensive in the digital/public context.

Plaintiff further notes that the factual allegations involve concrete and serious privacy intrusions. Defendant allegedly accessed or obtained private telephone recordings that Plaintiff and Plaintiff's family members did not consent to share, referenced these recordings repeatedly, and used the contents to create emotional leverage and fear of exposure. This conduct occurred over an extended period and affected Plaintiff's residence, mental well-being, and ability to maintain personal safety and stability. Such facts, taken as true, exceed mere interpersonal conflict and instead reflect targeted and unlawful access to private communications.

## I. Requiring Analysis: Cultural Perspective Regarding Plaintiff's Claims including in Supporting Survivors of Abuse, Rape Victims, and Free Speech for Both:

Plaintiff consistently supports rights within her legitimate claims for relief. The Gisèle Pelicot case demonstrates a critical cultural difference in addressing violations through recordings of rape victims. See *Gisèle Pelicot c. Paris Match, Tribunal judiciaire de Nanterre* (2025). Pelicot was vindicated and celebrated for her courage - she retained dignity while being publicly named, reclaiming her narrative from exploiters. This French approach represents the cultural perspective Plaintiff brings, having relocated to France (¶ 17). Plaintiff's allegations arise from advocacy for survivors of abuse and support for free-speech autonomy in trauma-

13

related contexts, and the SAC alleges that Defendant weaponized private trauma disclosures in a manner that magnifies privacy and coercion harms.

This directly parallels how Barresi's repeated disclosures of voice recordings violates both Johnny Depp supporter Angela Meador, a rape victim whom Plaintiff had advocated for, and Plaintiff herself. Critically, Plaintiff and Meador had 'spoke with positively for months nearly daily' before October 2022, 'sharing confidential experiences and communications' (¶¶ 38, 59). After their July 28, 2022 phone call, Barresi systematically disseminated this unconsented recording beginning October 9, 2022 through May 2025 to high-profile publicists, security personnel relying on silencing exposure, and media outlets through his commercial channels (¶¶ 44, 186, 208-210). Barresi's possession and exploitation of the recording made 'Plaintiff feel helpless, and it conveyed Meador being held hostage and as leverage' (¶ 59). As of May 2025, 'Defendant Barresi still weaponizes and maintains this unconsented recording' (¶ 186). These disclosures created immediate crisis - 'this brutality and cruelty gives Plaintiff panic attacks, PTSD, depression, prolonged pain, and worry for Meador' (¶ 59), with each disclosure 're-traumatizing both through graphic content depicting assault and a gun being pointed at Meador's head' (¶ 60), functioning as a form of repeated violation that strips away agency.

These ongoing violations destroyed both careers in tandem, taking away their autonomy to support whom they chose. Plaintiff came from 'four generations in the film business since the 1950s Golden Hollywood' (¶ 10) and, 'following in the footsteps of her mother Victoria Taft,' sought to assist figures in the Arts (¶ 14), with Rose McGowan asking for her help (¶ 14). In summer 2020, Meador 'hoped Depp could return to work and shared a song against abuse that "men and women are equal"' - seeking positive publicity for her music while supporting Depp - while Plaintiff supported Heard's humanitarian work (¶ 20). Both opposed abuse while supporting different individuals, yet Barresi destroyed their autonomy to do so. He

weaponized their recording through his commercial channels, exploiting it for commercial gain leading to his 2024 book 'Johnny Depp's Accidental Fixer' (¶ 13), destroying Meador's music career and opportunity for positive publicity (¶¶ 16, 43, 120) and depriving Plaintiff of 'the ability to live freely or pursue a career in the Arts' (¶ 16). Even as Plaintiff tried to support Meador's music singles 'Have You Told Her' and 'Love Yourself' with Warner Music Group/University Records in April 2025 (¶ 120), Barresi continued surveilling and exploiting them - using his ongoing disclosures to prevent any career revival, causing Plaintiff 'severe Post-Traumatic Stress Disorder (PTSD), depression, and significant physical weight loss' (¶ 319).

### C. Civil Harassment (Cal. Code Civ. Proc. § 527.6)

The Report cited paragraphs 106–113, 64–65, 91, 127, and 245–256. Paragraphs 106–113 plead repeated threats and statements that Defendant would cause Plaintiff's life to become a "living nightmare." Paragraphs 64–65 and 91 plead relocations based on fear for safety. Paragraph 127 pleads that a court granted a temporary restraining order. Paragraphs 245–256 plead continued threats and escalating hostile conduct. These allegations demonstrate a course of conduct directed at Plaintiff that seriously alarmed, annoyed, and harassed Plaintiff and caused substantial emotional distress, fulfilling the statutory elements.

Defendant Barresi's harassment reached unconscionable levels when he sent Plaintiff 'dozens of emails and texts containing threats, false mafia connections, and manipulated materials—including her deceased mother's coroner report' (SAC ¶ 42). Every average individual in normal society finds the exploitation of a deceased parent's coroner report, including directly engaging, disturbing and harassing - conduct that crosses from ordinary disputes into deliberate psychological cruelty.

The Report quotes threats that Plaintiff's life would be made a "living nightmare" and content would be repeatedly released "until hell freezes over,"

coupled with actual public posting activity. Harassment involving publication or threatened publication of intimate communications is uniquely coercive, as the victim faces not only direct emotional impact but also the terror of reputational destruction. This context shows why the harassment here exceeds interpersonal hostility and constitutes a sustained coercive campaign tied to public humiliation and fear.

### D. Stalking (Cal. Civ. Code § 1708.7)

The Report cited paragraphs 14, 51–53, 63, 69, 98, 124, 128, 117–124, and 257–258. These paragraphs allege threats, tracking of Plaintiff's movements, dissemination of personal information, more than 350 references to Plaintiff on social platforms, and continued conduct even after warnings. Paragraph 127 further reflects that a TRO was issued. These allegations establish a pattern of behavior and credible threats that caused Plaintiff reasonable fear for her safety. They satisfy the statutory elements of stalking.

The Report references public commentary, surveillance-style references, and dissemination of Plaintiff's movements. The digital and public-exposure dimension is critical: modern stalking often operates through online amplification and reputational threat, not merely physical following. California's stalking statute expressly accounts for conduct that causes fear through information-based tracking and public exposure. The media-adjacent behavior alleged here significantly increases credibility of Plaintiff's fear and seriousness of harm.

### E. Civil RICO

Barresi's conduct directly destroyed Plaintiff's life-saving business ventures as detailed in the SAC (¶¶ 72, 86, 96): SaveMeNow (connected to 911 emergency response and rescue initiatives) suffered contractual failures, with Plaintiff's 'contract from August 2020 with SaveMeNow and Niko Sanchez, the rescue

instructor, languished, as Plaintiff could not work' by May 2023 (¶ 72). Through telephone recordings and disclosures, Barresi created a witness tampering, illegal telephone recording practice, and extortion scheme that destroyed 'Worldie Ltd's ten major international partnerships' which 'had involved SaveMeNow, Peace Education and Practice Network, The Girls Can Initiative, Community Solutions' and connections to UN Sustainable Development Goals, with the digital platforms completely shut down by December 6, 2023 (¶ 96), resulting in 'documented losses of over $200,000 by 2024 due to Barresi's interference, including the disruption of potential grants for SaveMeNow valued between $100,000 and $10,000,000' (¶ 86). The Magistrate Judge cited footnotes regarding witness Meador referring to 9-1-1 claims, directly going to the heart of Plaintiff's business, facilitating Defendant Barresi to continue to interfere with her ability to engage in her business relationships and partnerships by maiming rescue initiatives.

The Report cited paragraphs 25–28, 36–44, 49–54, 132, 156–158, 164–167, 303, 40–44, 115–118, and 227–228. These paragraphs plead a coordinated enterprise involving Defendant and others; predicate acts including wire fraud, extortion, witness tampering, and unlawful interception of communications; a pattern of conduct over multiple years; and business and property injury such as lost professional opportunities, partnerships, work engagements, and contracts. These allegations satisfy RICO's pleading requirements at this stage or, at minimum, justify leave to amend to set out the predicate acts in numbered subparagraphs.

Plaintiff further alleged economic and professional harm arising from Defendant's conduct, including impaired business and advocacy opportunities and reputational interference impacting Plaintiff's technology and public-safety work. Plaintiff consistently lost property by experiencing Barresi's harm to her initiatives with missions to improve lives and to vulnerable individuals that Barresi exploited (SAC ¶¶72, 86, 96, 13, 16, 43). Plaintiff could not engage in employment requiring

security clearance in 2025 as Barresi exploited Meador – vulnerable to the use of tapes and suggestion – and lost more of her savings as is the pattern (SAC ¶¶86, 96, 59, 186). At the pleading stage, allegations that coercive use of private recordings and intimidation hindered professional relationships and business prospects sufficiently plead business-related injury under 18 U.S.C. § 1964(c). No evidentiary proof is required prior to discovery.

Further, the R&R references paragraphs describing Defendant's use of interstate communications and digital platforms to obtain and leverage private information. See SAC ¶¶ 36–44 (electronic access and reference to private recordings), ¶¶ 164–167 (coercive communications to silence and influence Plaintiff), ¶ 303 (ongoing coercive conduct). These allegations, accepted as true, satisfy predicate-act pleading standards: ¶¶ 36–44 plausibly allege wire-based conduct falling within 18 U.S.C. §1343; ¶¶ 164–167 allege coercion consistent with §1512(b); and ¶ 303 describes extortion-like pressure adjacent to §1951. At the pleading stage, this mapping is sufficient to establish predicate acts and continuity under §1961(5).

Leveraging private recordings for audience growth and reputational control supports continuity and business-type injury in a digital-platform scheme. At the pleading stage, such allegations satisfy RICO or, alternatively, justify leave to amend to refine predicate-act organization without altering facts.

Accordingly, the very paragraphs the Report acknowledged and quoted do map directly to the required elements of each claim. The inability to "discern" this connection appears to reflect a misunderstanding of the pro se pleading standard, not a deficiency in the allegations themselves.

**F. California Bane Act (Cal. Civ. Code § 52.1) - Interference with Civil Rights Through Coercion, Threats, and Intimidation**

The Report did not address Plaintiff's claim under the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, which prohibits interference with legal rights through "threats, intimidation, or coercion." The allegations cited in the Report include repeated threats to publicly release non-consensual recordings, persistent communications designed to apply emotional and reputational pressure, and statements threatening to "ruin" Plaintiff's life unless Plaintiff complied. These facts plausibly allege coercion aimed at restricting Plaintiff's autonomy, speech, and liberty interests rights protected under California law. The Bane Act does not require physical violence; threats involving exposure of private communications and trauma are actionable where they are intended to compel or silence a victim.

References to the second individual in the Second Amended Complaint were included not to assert claims against her, but to explain the coercive mechanism relevant to § 52.1 namely, Defendant's use of another sexual-assault survivor to apply psychological pressure and isolate Plaintiff. Barresi's fixation centered on Meador only after Plaintiff denounced his exploitation of celebrities; he leveraged Plaintiff's July 28, 2022 call with Meador — discussing abuse and high-profile figures, including allegations involving Adam Waldman — and then repeatedly centralized content around Meador to pressure Plaintiff. See SAC ¶¶ 20, 25–28, 44, 59, 178, 186, 208–210, 117–124, 227–228. This context is pled solely to illuminate the coercion element and is not surplusage. See Order (noting it was "not clear to the Court why Plaintiff repeatedly identified Ms. Meador" in the SAC); the references appear because the coercive dynamic alleged required explanation under the Bane Act. Based on the mentions of her name, Barresi centered on her to target Plaintiff— who spoke by phone with the rape survivor and former friend, Johnny Depp

supporter Meador, and discussed allegations about high-profile figures including Adam Waldman—violating her freedom of speech and assembly rights.

The media-adjacent nature of the threats further heightens the seriousness of the Bane Act violation. When coercion leverages not only emotional pressure but the threat of public humiliation using confidential trauma disclosures, the resulting interference with free will and security is amplified. Modern coercion frequently occurs through reputational leverage and digital exposure rather than physical force. Plaintiff's allegations including attempted manipulation using another alleged sexual-assault survivor to exert psychological pressure demonstrate coercive tactics designed to isolate, silence, and destabilize Plaintiff. This falls squarely within the statute's protective purpose for vulnerable victims facing power-imbalanced intimidation. Plaintiff's PTSD symptoms, fear responses, and relocation illustrate coercion impairing free will, satisfying § 52.1's interference requirement at the pleading stage.

Accordingly, the allegations cited in the Report, viewed alongside the public-facing and media-adjacent context in which the conduct occurred, satisfy the elements of each claim and underscore the heightened privacy, coercion, and reputational harms at stake. At the pleading stage, no more is required.


## IV. RECORD REFERENCES DEMONSTRATING THE MAGISTRATE CITED DETAILED ALLEGATIONS

The Report acknowledges and quotes numerous paragraphs in the Complaint that contain detailed factual allegations. For clarity and ease of review, Plaintiff notes that the Complaint already sets forth the specific conduct at issue, including:

- Non-consensual acquisition of private telephone communications (SAC ¶¶ 178–182);

- Repeated publication and attempted publication of those private communications (¶¶ 92, 227–228);
- Exploitation of deeply sensitive trauma-related and family information (¶¶ 92, 227–228);
- Threats, coercion, and pressure directed at Plaintiff (¶¶ 64–65, 91, 127, 245–256);
- Documented fear, emotional distress, and relocation for safety (¶¶ 303, 315); and
- Commercial use of Plaintiff's voice and identity in connection with promotional activity. (¶¶ 78, 92, 115–116, 227–228.)

These factual allegations were cited by the Magistrate Judge in the Report and are already part of the pleading record. Section III above demonstrates how those same paragraphs satisfy each element of the asserted claims. To the extent the Court finds that further structural clarity is useful, Plaintiff respectfully requests leave to amend to present the same facts in refined, element-labeled paragraphs, as Ninth Circuit precedent directs for pro se litigants.

## V. OBJECTIONS TO THE REPORT AND RECOMMENDATION

Plaintiff respectfully objects to the Report and Recommendation because it does not correctly apply the Rule 12(b)(6) pleading standard, does not give proper effect to the liberal construction owed to pro se litigants, and does not meaningfully evaluate the factual allegations relating to unauthorized recording, repeated dissemination of private communications, intimidation, coercion, and resulting harm. Instead, the Report discounts factual allegations as narrative or extraneous and replaces the governing plausibility standard with a more stringent pleading requirement. These errors compel de novo review.

This matter illustrates an evolving area of privacy and coercive-communication law, where harm arises not from traditional physical intrusion but from persistent nonconsensual access, dissemination of private communications,

reputational manipulation, and emotional coercion carried out through communications networks and public-adjacent contexts.

For clarity, Plaintiff notes that Section III above demonstrates how the allegations cited in the Report satisfy each claim's elements. The following objections address the legal errors in the Report's analysis.

**A. The Report Did Not Accept Allegations as True or Draw Inferences in Plaintiff's Favor**

At the pleading stage, a court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See *Ashcroft, supra,*, 556 at 678. The Report does not do so. Instead, it characterizes specific allegations regarding nonconsensual recording, repeated online posting, and coercive communications as background material rather than treating them as actionable factual assertions. The Report fails to acknowledge that these allegations describe more than personal disagreement. They describe a deliberate and sustained course of privacy invasion.

In addition, Defendant's own filings contain footnote references acknowledging emotional distress and specific concern regarding unauthorized telephone recordings, which corroborate the seriousness and plausibility of the conduct alleged. The Report did not address this corroborative context, even though it underscores the credibility and urgency of Plaintiff's allegations. The Supreme Court and Ninth Circuit have made clear that factual allegations, when detailed and specific, cannot be dismissed merely because they relate to communications between private individuals or because the subject matter is emotionally complex. When the Report declines to treat these allegations as factual claims, it improperly sets aside the Rule 12(b)(6) standard. This error warrants correction on de novo review. The law requires the Court to examine whether the alleged facts, if true, state a plausible claim. Plaintiff has met that burden.

**B. The Report Did Not Apply the Liberal Construction Required for Pro Se Filings**

Courts must liberally construe the filings of litigants who proceed without counsel. See *Erickson, supra,*, 551 U.S. at 94. Courts must also grant leave to amend absent clear futility. See Lopez v. Smith, 203 F.3d 1122, 1130 to 1131 (9th Cir. 2000). These principles recognize that individuals without legal representation may not articulate their claims with formal precision. The Report fails to honor these protections.

Rather than reading Plaintiff's allegations generously, the Report construes them narrowly and unfavorably, focusing on formatting and tone instead of substance. Emotional context is not a defect in a privacy-intrusion case. It is evidence of harm. The fact that Plaintiff described personal distress does not render the allegations unclear. It reflects the serious nature of the privacy violation and resulting emotional injury. The Report did not provide Plaintiff the benefit of liberal construction, and therefore its recommendation should not be adopted.

**C. The Report Misunderstands the Consent-Based Privacy Violations Alleged**

The Report appears to treat Plaintiff's allegations as though Plaintiff is claiming to have recorded the Defendant. To be clear, Plaintiff has never alleged recording Defendant; rather, Plaintiff alleges that Defendant improperly obtained and repeatedly referenced private telephone recordings involving Plaintiff and Plaintiff's father. The Report also did not meaningfully address the issue of improperly obtaining or procuring private telephone recordings, as required under privacy-based claims. See, e.g., principles reflected in §367 concerning improper acquisition of confidential communications.

That is not the claim. Plaintiff alleges that Defendant secretly obtained private recordings involving Plaintiff and Plaintiff's father and repeatedly referenced or

disseminated them without authorization. Plaintiff alleges that Defendant used these recordings, and the threat of further disclosure, to apply coercive pressure and cause emotional distress. The Report does not engage with these core allegations.

The Gisèle Pelicot case is illustrative. See *Gisèle Pelicot c. Paris Match*, Tribunal judiciaire de Nanterre (2025). Pelicot was vindicated and celebrated for her courage - she retained dignity while being publicly named, reclaiming her narrative from exploiters. This represents the cultural perspective Plaintiff brings, having relocated to France (¶ 17), and it directly parallels how Barresi's repeated disclosures of private voice recordings violates both Angela Meador, a rape victim whom Plaintiff had advocated for, and Plaintiff herself. As of May 2025, "Defendant Barresi still weaponizes and maintains this unconsented recording" (¶ 186). Barresi exploiting these recordings for commercial gain (¶ 13), destroying Meador's music career and opportunity for positive publicity (¶¶ 16, 43, 120) and depriving Plaintiff of "the ability to live freely or pursue a career in the Arts." (¶ 16).

Barresi's conduct directly destroyed Plaintiff's life-saving business ventures as detailed in the SAC (¶¶ 72, 86, 96).

Unauthorized acquisition and dissemination of private communications is a serious and well-recognized legal harm. Conduct of this nature may support claims under privacy torts, electronic communications statutes, and related causes of action. The Report's treatment of this issue is incomplete and overlooks the factual basis for Plaintiff's claims. The Court should therefore review this aspect de novo and address the privacy-based allegations on their merits.

### D. The Report Fails to Consider the Pattern and Duration of Harassing Conduct

Plaintiff alleges a pattern of repeated and escalating conduct. Courts routinely recognize that harassment and coercive behavior cannot be evaluated in isolation. Where conduct is ongoing, each act builds on prior acts and contributes to

24

cumulative harm. The Report treats the allegations as disconnected or anecdotal rather than acknowledging the stated continuity of the behavior over time.

Plaintiff alleges repeated unauthorized dissemination of private communications, continued reference to traumatic personal information, emotional manipulation, and intimidation. These facts must be viewed collectively, not in isolation. The failure to analyze the allegations as part of a continuous pattern constitutes legal error and does not comport with the pleading standards for pattern-based harm.

### E. The Report Overlooks the Legal Significance of Emotional Harm and Context

Privacy invasion is not a purely technical harm. It strikes at personal security, dignity, autonomy, and emotional well-being. Plaintiff has alleged emotional distress, fear of continued exposure, disruption of daily life, and relocation motivated by safety concerns. These are legally cognizable harms. The Report appears to discount these allegations because they involve personal and emotional subject matter. This approach conflicts with principles of privacy law, which recognize that the exposure or threatened exposure of private communications can inflict profound emotional injury.

Context matters in evaluating harm. Where private conversations about family trauma and emotional vulnerability are weaponized, the resulting harm is magnified. Courts do not disregard emotional context in privacy-intrusion cases. The Report's treatment of such context as extraneous constitutes error.

### F. Dismissal Without Leave to Amend Is Improper at This Stage

The alleged conduct involves the unauthorized acquisition, use, and repeated reference to private telephone communications concerning Plaintiff and Plaintiff's family members. These communications were not incidental or accidental, but

allegedly accessed and invoked in ways that created sustained emotional pressure, disrupted Plaintiff's living circumstances, and generated ongoing fear of exposure and reputational harm.

Even if the Court determines that greater specificity is required, dismissal without leave to amend would conflict with Ninth Circuit precedent. See *Lopez, supra,*, 203 F.3d at 1130-1131 (9th Cir. 2000). Plaintiff has described a concrete set of events that can be supplemented or clarified if necessary. Any perceived deficiencies are addressable, and there is no basis to conclude that amendment would not re-interpret the facts for full restoration with relief or be futile. Dismissing claims involving detailed factual allegations, particularly without granting leave to amend, deprives Plaintiff of the procedural protections afforded to pro se litigants and undermines the purpose of Rule 12 pleading standards.

## VI. REQUESTED RELIEF

For the reasons stated above, Plaintiff respectfully requests that this Court conduct a *de novo* review and decline to adopt the recommendation to dismiss the Second Amended Complaint without reaching the substance of the privacy, consent, and coercion-based allegations. Plaintiff respectfully asks that the Court to:

1. Reject the dismissal recommendation to the extent it relies on characterizing factual allegations as narrative rather than applying the Rule 12(b)(6) standard and pro se construction requirements.

2. Permit this action to proceed because the Second Amended Complaint, when read as required at this stage, alleges plausible claims involving nonconsensual recording, repeated dissemination of private communications, intimidation, and resulting harm.

3. In the alternative, grant leave to amend with guidance from the Court, consistent with Ninth Circuit precedent favoring amendment for pro se litigants where clarification could cure perceived deficiencies.

4. Consider issuing or maintaining protective direction or caution that private recordings and sensitive personal communications not be further disseminated or used in a manner that could cause additional harm during the pendency of this case.

Plaintiff seeks only the opportunity the law provides: to have claims evaluated under the correct standards, to amend where necessary and to proceed to discovery where facts plausibly state a claim. Plaintiff does not seek special consideration, only the procedural fairness guaranteed by federal law and the protections that courts must afford to pro se litigants.

## VII. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court conduct a full *de novo* review of the Magistrate Judge's Report and Recommendation and decline to adopt it to the extent it dismisses the Second Amended Complaint without properly applying the Rule 12(b)(6) standard and the liberal construction owed to pro se filings. The allegations in this case describe specific and repeated conduct involving unauthorized intrusion into private communications, ongoing use and reference to confidential material, emotional coercion, and resulting distress and disruption to Plaintiff's life. When these facts are accepted as true, as the law requires at this stage, they plausibly state claims that should proceed to discovery or, at minimum, be afforded leave to amend.

Respectfully submitted,

Dated: November 12, 2025

by: _Christina Taft_

Christina Taft

*Plaintiff Pro Per*

PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE SECOND AMENDED COMPLAINT'S CLAIMS FOR RELIEF NEEDING DISTRICT JUDGE'S DE NOVO REVIEW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LR. 11-6.1 Certification**

I hereby certify that this brief, under 25 pages memorandum, contains 6,101 words, excluding caption, tables, signature block, and certificate of compliance.

*Christina Taft*

Christina Taft
Plaintiff Pro Per

November 12, 2025_____
Date

PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE SECOND AMENDED COMPLAINT'S CLAIMS FOR RELIEF NEEDING DISTRICT JUDGE'S DE NOVO REVIEW

## CERTIFICATE OF SERVICE
CHRISTINA TAFT v. PAUL BARRESI, et al.
5:24-cv-01930-TJH-DTB

I, the undersigned, certify and declare that I am at least 18 years of age. I have a residency in the United States.

On November 12, 2025, I served a true copy of;
(1) PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE SECOND AMENDED COMPLAINT'S CLAIMS FOR RELIEF NEEDING DISTRICT JUDGE'S DE NOVO REVIEW

**PROOF OF SERVICE**

 X  (By Electronic Transmission) I caused the document(s) described herein to be electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E)

 X  (By Delivery) I caused the document(s) described herein to be delivered to the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

| | |
|---|---|
| Melissa Yaffa Lerner<br>Megan Scott Mallonee<br>Lavely & Singer Professional Corporation<br>Attorneys At Law<br>2049 Century Park East, Suite 2400<br>Los Angeles, California 90067-2906 | *Attorneys for Defendant,*<br>Paul Barresi |

I declare under oath and penalty of perjury under the laws of the United States that the foregoing is true and correct.

      Dated in Cannes, France on November 12, 2025.

Christina Taft

Christina Taft
*Plaintiff in Pro Per*