Christina Taft
Plaintiff in Propria Persona
16 Mitchell Street
Boston, Massachusetts 02127
Phone: 215-787-1805
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT<br><br>     Plaintiff,<br><br>vs.<br><br>PAUL BARRESI, et al, inclusive,<br><br>     Defendants. | Case No.: 5:24-cv-01930-TJH-DTB<br><br>[Hon. David T. Bristow, Magistrate Judge; Hon. Terry J. Hatter, Jr, District Judge]<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION TO UNSEAL THE SECOND AMENDED COMPLAINT; OBJECTION SUPPORTING LEGAL PRECEDENTS AND PUBLIC INTERESTS ABOUT HOLLYWOOD FIGURES**<br><br>***[Filed concurrently with Meet and Confer Rule Declaration; Proposed Order Unsealing Second Amended Complaint Including Hollywood Figures; and Certificate of Service]***<br><br>Date: 19th November, 2025<br>Time: *Under submission* |

1

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................4

II. LEGAL STANDARD FOR RECONSIDERATION .....................................7

III. THE COURT'S ORDER DOES NOT SATISFY NINTH CIRCUIT
REQUIREMENTS FOR SEALING.....................................................................9

A.   The Court Did Not Make Specific, Articulated Findings...........................9

B. The Court Did Not Conduct the Mandatory Public Interest Balancing.......11

C. The Sealing Order Is Not Narrowly Tailored and Is Overbroad .................12

IV. THE FIRST AMENDMENT AND COMMON-LAW RIGHT OF ACCESS
PROHIBIT SEALING THE SAC ....................................................................12

V. THE SAC RAISES MATTERS OF SIGNIFICANT PUBLIC CONCERN...............14

A. The "Middle Area" Problem: Harms Affecting Both Ordinary Individuals and Public
Figures.............................................................................................................14

B. Systemic Patterns Affecting More Than Forty Individuals .........................16

C. The Complaint Addresses Cultural Ideologies with Widespread Impact.....17

VI. PUBLIC ACCESS IS NECESSARY TO UNDERSTAND AND ADDRESS
SYSTEMIC ISSUES..........................................................................................18

VII. RECONSIDERATION IS NECESSARY TO PREVENT MANIFEST INJUSTICE
...............................................................................................................................21

VIII. REQUESTED RELIEF...............................................................................26

IX. SUPPLEMENTAL CONTEXT RELEVANT TO RECONSIDERATION AND THE
THIRD AMENDED COMPLAINT ...................................................................23

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

1

## TABLE OF AUTHORITIES

2

Cases

*Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122 (9th Cir. 2003)* ............................6

*Kamakana v. Honolulu, 447 F.3d 1172 (9th Cir. 2006)*......................................................6

*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, 20 Cal. 4th 1178 (1999)* ................6

*Pintos v. Pac. Creditors Ass'n, 605 F.3d 665 (9th Cir. 2010)* ...........................................6

under Federal Rule of Civil Procedure 54(b).......................................................................5

Statutes

Article I, Section 3(b)(1) of the California Constitution ....................................................6

California's Constitution, Article I, Section 3(b)(1).........................................................11

Rules

Local Rule 7-18...................................................................................................................5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

# I. INTRODUCTION

Plaintiff respectfully moves for reconsideration of the Court's order sealing the Second Amended Complaint ("SAC"). The SAC is a comprehensive, approximately 180-page document that sets forth detailed factual allegations, systemic patterns of conduct, and contextual histories that are central to understanding the claims at issue in this litigation. In summary, this motion seeks vacatur of the sealing order because it violates Local Rule 7-18, Federal Rule of Civil Procedure 54(b), and controlling Ninth Circuit authority requiring specific findings, narrow tailoring, and a balancing of public interest before sealing any complaint. The sealing of that document in its entirety without specific factual findings and without a balancing of public-interest considerations is inconsistent with controlling Ninth Circuit precedent and constitutes clear error requiring correction. These errors are magnified in a case involving public figures and issues that have already shaped public awareness and cultural understanding of abuse dynamics.

The purpose of a complaint is to inform the Court, the parties, and the public of the factual and legal bases of the claims. When a complaint describes patterns of abuse, exploitation, coercion, and manipulation that extend far beyond the individuals named in the case, public access becomes especially critical. The SAC does precisely that. It outlines the experiences of more than forty individuals across multiple generations within the entertainment industry, documenting the ways in which cultural norms and industry-wide assumptions enable misconduct, silence vulnerable individuals, and distort the experiences of both ordinary persons and public figures. These allegations illuminate systemic failures that have never been meaningfully examined because the individuals harmed often exist in a "middle area": they are not public figures whose stories attract national attention, nor are they protected insiders with institutional support. They are people whose experiences are overlooked, mischaracterized, or entirely excluded from the public narrative, leaving the underlying patterns of exploitation unaddressed.

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

1    The SAC provides insight into how this "middle area" operates and why it creates
2    unique obstacles to public understanding. Highly publicized celebrity disputes generate
3    significant discourse but rarely reveal the structures that produce similar harms for lesser-
4    known individuals. These public debates shape cultural views about abuse, credibility, and
5    institutional responsibility, yet the experiences of vulnerable people within the same
6    environment remain overlooked. The SAC addresses this gap by documenting how
7    manipulation, intimidation, and entrenched industry norms affect families, witnesses,
8    aspiring professionals, and individuals connected to public figures creating a broader
9    landscape of harm that cannot be understood without access to the complaint.

10    Courts have long recognized that transparency is essential not only for ensuring the
11    integrity of the judicial process but also for enabling informed public dialogue about issues
12    that shape social understanding and policy. The allegations in the SAC address precisely
13    such issues. They concern not only misconduct by particular individuals but also
14    longstanding cultural assumptions surrounding Hollywood and adjacent spaces
15    assumptions that normalize abuse, distort the experiences of individuals across status
16    levels, and obscure the mechanisms through which exploitation persists. These topics carry
17    immense public significance because they influence the ways in which society responds to
18    victims, evaluates evidence, understands systemic pressure, and interprets high-profile
19    conflicts in the media.

20    Sealing the SAC prevents the public from examining these systemic problems,
21    obscures the factual foundation of the claims, and undermines the transparency that the
22    Ninth Circuit requires in cases involving significant public interest. It also frustrates the
23    core purpose of public access: to allow the community to assess how courts handle serious
24    allegations, how industries respond to systemic failures, and how patterns of misconduct
25    develop and persist over time.

26
27
28

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

1    Because the sealing order was entered without the required factual findings, without

2    balancing the strong public interest in disclosure, and without considering redaction as the

3    appropriate alternative, reconsideration is necessary to correct these errors and to prevent

4    manifest injustice. The SAC should be made publicly accessible so the public may fully

5    understand the issues raised and the systemic concerns implicated by this case.

6    In addition, the procedural posture of this case further underscores why

7    reconsideration is necessary. The sealing order was issued despite Plaintiff having raised

8    substantial concerns regarding procedural irregularities, including the Court's failure to

9    follow typical Ninth Circuit and California transparency requirements that apply with

10    heightened force in cases involving public figures or allegations touching on matters of

11    public significance. Plaintiff has also informed the Court that significant evidence,

12    including the use of illicit telephone recordings by Barresi in connection with his efforts to

13    influence, pressure, or control attorney Adam Waldman in his exploitation of Johnny Depp

14    and individuals surrounding him and the Plaintiff, illustrates the systemic exploitation

15    described in the SAC and shows how certain actors weaponize sensitive information to

16    manipulate individuals connected to public controversies.

17    In summary, this motion presents four independent procedural defects requiring

18    vacatur: (1) the order is not narrowly tailored; (2) the order contains no specific findings

19    supporting sealing; (3) Plaintiff never gave express, written consent, and silence cannot

20    constitute consent under Ninth Circuit or California law; and (4) the sealing request was

21    overbroad and non-specific, failing to identify what statements were allegedly untrue.

22    These technical defects alone require the sealing order to be vacated, independent of the

23    broader First Amendment and public-interest arguments that follow.

24    Plaintiff also notes that the social dynamics surrounding these events have placed

25    her in a position of unusual vulnerability. She was repeatedly mischaracterized as aligned

26    with one "side" or another when, in reality, she was caught between groups of far greater

27

28

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

power, with no ability to control the narratives imposed upon her. The SAC reflects how intermediaries exploited these disputes in ways that harmed multiple parties simultaneously, including Plaintiff. Public access is essential so that her actions, intentions, and evidence can be evaluated accurately and not through distorted secondary accounts. Plaintiff therefore unequivocally requests that the SAC be unsealed in full, without redaction, because no portion of the document satisfies the legal threshold required for sealing under Ninth Circuit or California law.

## II. LEGAL STANDARD FOR RECONSIDERATION

This motion is brought under Federal Rule of Civil Procedure 54(b) and Local Rule 7-18, which permits reconsideration where the Court has overlooked material facts or controlling law, where clear error is present, or where reconsideration is necessary to prevent manifest injustice. Reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which grants courts broad discretion to revise any non-final order "at any time" before entry of judgment. This standard allows correction where the Court has overlooked or misapprehended material facts or controlling authority, where the prior ruling contains clear legal or factual error, or where reconsideration is necessary to prevent manifest injustice. Because interlocutory orders carry no presumption of finality, courts routinely revisit them to ensure accuracy, fairness, and compliance with governing precedent, particularly where an initial ruling may have been made without the benefit of full briefing or without attention to essential legal requirements.

When the issue on reconsideration involves sealing judicial records, the Ninth Circuit imposes a heightened and well-established framework rooted in the strong presumption of public access to court filings. A complaint, in particular, sits at the very core of the judicial process, serving as the primary vehicle through which the public can understand the nature of the case, the allegations involved, and the functioning of the

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

judicial system itself. Accordingly, any request to seal such a document is evaluated under the "compelling reasons" standard. Under this standard, the Court must make specific, on-the-record factual findings identifying the particular interest that allegedly requires secrecy; must determine that this interest constitutes a compelling reason that outweighs the public's right of access; and must ensure that the sealing order is narrowly tailored, meaning that sealing is permissible only if no less-restrictive alternative such as redaction can adequately protect the interest at stake. Generalized concerns about embarrassment, vague references to reputation, or vague privacy interests are insufficient as a matter of law.

The Ninth Circuit's controlling cases rigorous adherence to this three-part test *Kamakana v. Honolulu, 447 F.3d 1172 (9th Cir. 2006)*; *Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122 (9th Cir. 2003)*; and *Pintos v. Pac. Creditors Ass'n, 605 F.3d 665 (9th Cir. 2010)* require. These cases collectively emphasize that courts must articulate detailed findings, must prioritize public transparency, and must consider redaction as the preferred alternative to wholesale sealing. Because the sealing order in this case contains no specific findings, engages in no balancing of public interest considerations, and adopts an overbroad sealing approach without assessing less-restrictive alternatives, it does not satisfy any prong of the Ninth Circuit standard. For these reasons, reconsideration is not only appropriate but necessary to correct legal error and to ensure compliance with binding precedent.

In addition to these federal requirements, California law independently reinforces the presumption of public access. Article I, Section 3(b)(1) of the California Constitution expressly mandates broad public access to court records and proceedings, and the California Supreme Court in *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, 20 Cal. 4th 1178 (1999)*, confirmed that sealing is permissible only when narrowly tailored and supported by express, specific findings. This California framework mirrors and strengthens

the Ninth Circuit's requirements, underscoring that both federal and state principles reject broad sealing orders and demand transparency, especially in cases involving issues of widespread public concern. The sealing order here satisfies neither federal nor California standards, further demonstrating the need for reconsideration.

## III.   THE COURT'S ORDER DOES NOT SATISFY NINTH CIRCUIT REQUIREMENTS FOR SEALING

### A. The Court Did Not Make Specific, Articulated Findings

The Ninth Circuit has repeatedly held that any order sealing judicial records must be supported by specific, articulated factual findings that identify the precise interests purportedly threatened by disclosure and explain why those interests justify sealing the particular material at issue. Courts may not rely on generalized assertions, conclusory references to privacy concerns, vague references to reputation, or boilerplate language. Instead, the findings must be detailed enough to permit meaningful appellate review and must demonstrate that the court engaged in a document-by-document, line-by-line analysis. In this case, the order sealing the SAC contains no such detailed findings. The Court did not identify which portions of the 180-page complaint allegedly contained sensitive information, what specific harms would result from disclosure, or why any such harms would rise to the level of "compelling reasons" sufficient to overcome the strong presumption of public access.

The omission of these individualized findings constitutes clear error under governing precedent. Ninth Circuit cases such as Kamakana, Foltz, and Pintos have reversed sealing orders where district courts failed to articulate specific, evidence-based justifications for sealing each portion of a document. The Ninth Circuit has emphasized that courts must do more than reference confidentiality or privacy in the abstract; they must provide concrete, particularized reasoning for each redaction or sealed segment. Because the Court did not

1  engage in this required analysis, the sealing order lacks the factual foundation necessary to

2  justify any restriction on public access.

3         To the extent the original outline referenced a lack of hearing, Plaintiff clarifies that

4  the absence of a hearing is not the primary procedural defect at issue and does not alter the

5  substance of this motion. Plaintiff did not waive or fail to oppose sealing; rather, the core

6  problem is that Ninth Circuit and California law do not permit sealing a complaint at all

7  without the Court first making specific findings under the "compelling reasons" standard.

8  In these jurisdictions, a hearing is not a prerequisite to objecting to improper sealing, nor

9  does the absence of a hearing cure the Court's failure to apply the correct legal standard.

10 Accordingly, the reference to a hearing is moot: the legal error here lies in the Court's

11 application of an improper procedure to a complaint, which cannot be sealed without the

12 mandatory, individualized findings demanded by controlling law.

13        Additionally, Plaintiff emphasizes that she never consented to sealing the SAC.

14 Under both Ninth Circuit and California law, consent to sealing must be explicit,

15 affirmative, and in writing; it cannot be inferred from silence, non-opposition to an

16 overbroad request, or failure to respond to a vague demand made by an individual actor.

17 Federal courts have long recognized that non-response is not consent, and that waiver

18 cannot be implied where a party has not been given a clear, specific request requiring

19 affirmative approval. Plaintiff did not provide written consent, did not endorse sealing, and

20 did not authorize any person to represent that she supported sealing. Accordingly, any

21 suggestion that Plaintiff "agreed" to sealing is legally incorrect and cannot support the

22 Court's order.

23        Furthermore, Plaintiff had no obligation to respond to an overbroad, unclear, and

24 non-factual demand that did not identify any specific statement requiring sealing. A party

25 cannot be deemed to have consented to sealing by declining to answer a request that is

26 itself procedurally defective and substantively unsupported. Silence in response to a vague

27

28
Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

or inaccurate demand is not consent under Ninth Circuit or California law; consent must be explicit, informed, and in writing. Plaintiff's non-response to an improper, non-specific communication cannot be construed as agreement, waiver, or endorsement of sealing. Non-response to an overbroad and non-specific demand cannot be construed as consent, waiver, or endorsement under any Ninth Circuit or California authority.

**B. The Court Did Not Conduct the Mandatory Public Interest Balancing**

In addition to making specific findings, the Ninth Circuit requires courts to explicitly weigh the public's strong interest in open access to judicial proceedings against any asserted need for secrecy. This balancing is not optional it is a core element of the "compelling reasons" standard. Where, as here, the sealed material is a complaint containing allegations of widespread misconduct, systemic exploitation, and cultural norms that affect both vulnerable individuals and public figures, the public interest is especially strong. The SAC addresses not merely a private dispute, but a broad, multi-year pattern of conduct within a culturally influential industry, including the experiences of more than forty individuals and the systemic pressures that shape those experiences. These are precisely the types of matters that the public has a right to understand and evaluate.

Yet the sealing order contains no discussion of this substantial public interest. There is no reference to the societal significance of the allegations, no weighing of the broad effects on industry transparency, and no acknowledgment of the public's right to scrutinize judicial processes involving systemic issues. A sealing order that fails to undertake this balancing, or that treats it as a perfunctory inquiry, cannot stand under Ninth Circuit law. The absence of any public-interest analysis here further underscores that the sealing order is legally deficient and must be reconsidered.

1    **C. The Sealing Order Is Not Narrowly Tailored and Is Overbroad**

2    Even in circumstances where sealing is justified, Ninth Circuit law requires courts

3    to adopt the least restrictive means of protecting the identified interest. Redaction not total

4    sealing is the default mechanism for safeguarding sensitive information. Courts must

5    evaluate whether specific names, personal identifiers, or limited factual statements may be

6    redacted while allowing the remainder of the document to be filed publicly. Blanket sealing

7    of an entire document is permissible only if the court finds that no portion of the document

8    can be disclosed without causing the compelling harm being asserted.

9    Here, the Court sealed the entire SAC a comprehensive, multi-hundred-page filing

10    without any attempt to identify whether specific sections or paragraphs could be released

11    with limited redactions. The order does not address why redaction would be insufficient,

12    does not specify which passages present concerns, and does not demonstrate that the entire

13    document requires wholesale sealing. This fails the narrow-tailoring requirement. The

14    Ninth Circuit has made clear that overbroad or categorical sealing orders constitute

15    reversible error precisely because they undermine transparency and block public access to

16    information that could be disclosed without impairing privacy or other legitimate interests.

17    Given the length, scope, and structure of the SAC, there is no basis to conclude that every

18    page, every paragraph, and every allegation requires secrecy. The failure to consider

19    redaction let alone to explain why it would be inadequate renders the sealing order legally

20    unsound and necessitates reconsideration.

21

22    **IV. THE FIRST AMENDMENT AND COMMON-LAW RIGHT OF ACCESS**

23    **PROHIBIT SEALING THE SAC**

24    Public access to judicial records is not merely a matter of policy or preference; it is

25    a constitutional mandate. The First Amendment and the common-law right of public access

26    create a strong presumption that judicial records especially complaints must be open to the

27

28

public unless the Court makes specific, narrowly tailored findings showing that closure is essential to preserve a higher value. This standard applies with its greatest force to documents that "lie at the heart of the judicial process," including complaints that initiate civil proceedings and inform the public about the nature of the claims before the Court. The Ninth Circuit has repeatedly held that the First Amendment right of access may be overcome only by findings that (1) closure is necessary to serve a compelling interest, (2) closure is narrowly tailored, and (3) no less restrictive alternative exists. Wholesale sealing of an entire complaint never satisfies this standard. Courts applying both the First Amendment and common-law right of access have emphasized that a complaint cannot be sealed unless disclosure would cause an extraordinary and specific harm that cannot be prevented by any lesser means. No such harm has been articulated here.

This principle is reinforced by California's Constitution, Article I, Section 3(b)(1), which independently guarantees broad public access to court records, and by decades of California Supreme Court precedent mandating transparency in cases of public significance. The SAC concerns matter that directly affect public understanding of systemic exploitation, abuse dynamics, industry norms, and the functioning of the judicial system. These are precisely the types of issues that the First Amendment protects by requiring openness. Sealing the SAC not only prevents the public from understanding the allegations but also suppresses speech on matters of substantial public concern, creates informational asymmetry, and undermines democratic oversight. Because no compelling interest justifies sealing and because less-restrictive alternatives including simple public filing are available, the First Amendment and common-law right of access categorically prohibit sealing the SAC.

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

# V. THE SAC RAISES MATTERS OF SIGNIFICANT PUBLIC CONCERN

## A. The "Middle Area" Problem: Harms Affecting Both Ordinary Individuals and Public Figures

The SAC exposes an underrecognized category of harm referred to here as the "middle area" that affects individuals who exist neither as public figures with substantial visibility nor as insiders with institutional protection. These individuals operate in the same physical, social, and professional spaces as high-profile entertainers, yet lack the resources, influence, or public credibility necessary to shield themselves from exploitation. As a result, they are uniquely vulnerable to coercion, manipulation, and systemic pressures that remain largely invisible to the public. While their experiences often parallel or derive from the same harmful systems that impact public figures, their stories rarely surface because they lack the status or platform to have their accounts taken seriously. The SAC breaks this silence by documenting how these individuals navigate an environment shaped by power differentials, expectations of silence, and longstanding patterns of informal control.

This "middle area" is crucial to understanding the broader ecosystem of harm within the industry. Public discourse tends to focus overwhelmingly on sensationalized disputes involving celebrities such as the widely publicized Johnny Depp–Amber Heard disputes which captured global attention and shaped public narratives about credibility, abuse, and victimhood. However, such cases obscure the systemic exploitation that occurs behind the scenes among individuals whose experiences do not generate headlines but who are subject to the same cultural and institutional pressures. The SAC offers a rare, detailed examination of these overlooked dynamics. It shows how outsiders connected to public figures are treated, how they are discouraged from reporting misconduct, and how the industry normalizes harmful behavior under the false belief that facilitating or tolerating misconduct is part of its identity or necessary for career survival. Without public transparency, these

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

systemic realities remain hidden, impeding informed societal understanding and hindering any meaningful examination of the structural conditions that allow such harms to persist.

Furthermore, the "middle area" problem is made even more pronounced by the actions of individuals who are neither traditional insiders nor true outsiders, but who insert themselves into situations in ways that exploit both vulnerable persons and well-known public figures. As Plaintiff has documented repeatedly, such individuals create false loyalties, misrepresent motivations, and manufacture perceived "attachments" between themselves, victims, and celebrities, leveraging those connections for personal advantage. This includes the documented conduct of Barresi, whose use of telephone recordings to target and pressure Adam Waldman demonstrates how certain actors weaponize sensitive information to influence people on all sides of a public conflict. These dynamics confirm that the harms described in the SAC are not one-sided, nor are they confined to supporters or opponents of any particular celebrity. Instead, the exploitation extends across multiple levels, affecting individuals regardless of their perceived alignment, and therefore requires public visibility to ensure an accurate understanding of the pressures and manipulations at issue.

The SAC also highlights that victims situated in this "middle area" often find themselves mischaracterized by third parties including attorneys, intermediaries, and public commentators as aligned with one high-profile individual or another. Plaintiff specifically noted that her objections repeatedly flagged that an individual involved earlier in the matter had publicly aligned herself with either Johnny Depp or Adam Waldman, yet prior counsel failed to acknowledge or include this context, resulting in a distorted presentation of Plaintiff's position. Plaintiff is not aligned with either celebrity "side". Rather, she seeks to expose the exploitation, manipulation, and coercion that occur in the shadows around high-profile conflicts and that harm those with far fewer resources. This

nuance the exploitation of multiple sides simultaneously by actors operating behind the scenes is entirely lost if the SAC remains sealed.

Moreover, the criticisms that were used to justify sealing were themselves vague and unsupported. The allegations in the SAC are drawn from documentation provided by a non-party, from Plaintiff's own evidence, and from statements of identified witnesses. Nothing in the sealing request identified any specific statement that was false, misleading, or improperly included. Generalized claims that the SAC contains "personal issues" or unspecified inaccuracies are legally insufficient under both Ninth Circuit and California law. Judge Bristow is permitted indeed, required to deny sealing where a party offers no particularized showing of falsity or harm. The absence of specificity here further underscores that the sealing request lacked any legitimate legal basis and could not satisfy the compelling-reasons standard. The objections did not identify any allegation that contradicted the non-party documentation, the Plaintiff's own records, or the statements of witnesses, leaving no factual basis to justify sealing.

**B. Systemic Patterns Affecting More Than Forty Individuals**

The SAC identifies and discusses more than forty individuals across a broad spectrum of roles industry workers, creative professionals, public figures, family members, and even participants from multi-generational Hollywood families. The scope of the allegations makes clear that the case does not concern an isolated conflict or a discrete set of interpersonal grievances. Instead, the SAC describes a multi-year pattern of behavior that recurs across different settings and involves numerous people who have endured or witnessed similar forms of pressure, manipulation, and exploitation. This includes detailed accounts of how witnesses are influenced or intimidated, how families are used as points of leverage, how industry norms create repeatable and predictable patterns of harm, and how vulnerable individuals are targeted because they lack protection or visibility. The

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

complaint further illustrates how high-profile conflicts echo and reinforce these same systemic patterns, creating a feedback loop that normalizes exploitation and discourages intervention.

The breadth of these allegations significantly heightens the public interest in access. When a complaint reveals widespread and patterned conduct, it implicates not just the parties but the functioning of an entire industry and the wellbeing of numerous individuals who may face similar circumstances. Public access enables transparency, supports accountability, and helps illuminate systemic failings that cannot be properly understood through isolated or redacted information. Limiting access to such a comprehensive document would obscure the scope and seriousness of the issues raised, depriving the public of the ability to assess how deep-rooted and pervasive these structural problems truly are.

## C. The Complaint Addresses Cultural Ideologies with Widespread Impact

The SAC challenges a deeply ingrained cultural ideology within Hollywood: the belief that misconduct, abuse, or ethically questionable behavior is a necessary byproduct of creative work or an unavoidable aspect of participating in the entertainment industry. This ideology shapes expectations around silence, discourages reporting of wrongdoing, and fosters a culture in which vulnerable individuals are conditioned to accept mistreatment as part of their professional environment. These norms influence critical aspects of industry operations, including hiring processes, career advancement, witness cooperation, and the handling of disputes involving well-known individuals. Such systemic beliefs perpetuate the idea that misconduct must be tolerated or shielded rather than confronted and reformed.

These issues extend far beyond the specific litigants. They implicate society's understanding of power dynamics, victim behavior, truth-telling, and the credibility of individuals who come forward with allegations of abuse or manipulation. The norms

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

described in the SAC mirror broader cultural patterns that affect how the public interprets allegations involving both public figures and private individuals. Because these ideologies influence public narratives, legal outcomes, and long-term industry practices, transparency surrounding them is essential. Allowing the SAC to remain sealed would prevent the public from examining how these cultural forces operate and how they contribute to widespread harm. Public access is therefore necessary not merely to understand the facts of this case, but to shed light on the broader systemic dysfunctions that the complaint brings to the surface.

The SAC also exposes the false and deeply entrenched ideology that Hollywood must "facilitate" or tolerate misconduct as a condition of success or participation. This belief system, perpetuated through decades of informal norms, industry messaging, and internal gatekeeping, creates a harmful environment in which abuse is minimized, normalized, or reframed as an inevitable byproduct of entertainment culture. This ideology does not merely affect celebrities; it shapes how ordinary individuals, aspiring professionals, and witnesses are treated, and influences public perceptions of abuse allegations. It is precisely because these cultural assumptions have distorted public understanding for so long that transparency is essential. Only by allowing public access to the SAC can society evaluate how these destructive norms function and how they contribute to systemic exploitation.

## VI. PUBLIC ACCESS IS NECESSARY TO UNDERSTAND AND ADDRESS SYSTEMIC ISSUES

This case implicates extraordinary matters of public concern because it addresses not only individual allegations but also deeply rooted industry structures that affect public discourse, perceptions of abuse, and the unequal treatment of victims. When a complaint reveals systemic exploitation within a culturally influential industry an industry that shapes

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

national narratives and public belief systems the public has a heightened interest in understanding the facts. Sealing such a document conceals information that affects far more people than the named parties and prevents the public from assessing whether legal institutions adequately confront these long-standing problems.

Public access to judicial records is a foundational principle of the American legal system, rooted in both the common law and the First Amendment. This presumption of openness is at its strongest when a case implicates broad systemic issues, cultural norms, or widespread patterns of harm that reach far beyond the immediate parties. The SAC squarely presents such matters. It details multi-year patterns of exploitation, the internal mechanisms through which abuse is enabled or concealed, and the structural realities of an industry with substantial cultural influence. These allegations are not merely of private interest; they speak to ongoing public debates about power, credibility, victimhood, and the persistent challenges faced by individuals who report misconduct within hierarchical and reputation-driven environments.

The SAC specifically illuminates how exploitation and manipulation occur within a prominent industry, outlining conduct that has persisted over extended periods of time and impacted dozens of individuals. It describes how witnesses may be pressured or discouraged from cooperating, how families and personal relationships are leveraged to influence outcomes, and how private disputes can reflect and reinforce broader cultural failures. The patterns described in the SAC show that harm is not limited to visible public controversies but often occurs silently among vulnerable individuals whose experiences rarely attract public attention or support. By detailing these conditions, the SAC offers insight into how systemic exploitation operates, how it is normalized through institutional silence, and how individuals without status or resources navigate environments where the cost of speaking out is disproportionately high.

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

Public scrutiny is particularly vital because the issues raised in the SAC affect a wide array of stakeholders, including current and aspiring industry workers, witnesses, families, policymakers, legal professionals, and the broader public. When allegations involve entrenched cultural norms, multigenerational practices, and industry-wide assumptions that shape behavior, public access enables the community to evaluate whether legal institutions are responding adequately to these challenges. Transparency allows journalists, researchers, and advocates to understand how patterns of abuse develop, how they are perpetuated, and where reforms may be necessary. It provides information essential to shaping public policy, improving reporting mechanisms, addressing barriers faced by vulnerable individuals, and re-examining cultural expectations that have historically facilitated misconduct.

By contrast, sealing the complaint obscures these systemic concerns and prevents the public from seeing how the judicial process addresses them. It suppresses critical information that could illuminate failures in existing industry practices, hinder public education about abuse dynamics, or inform policy discussions about institutional accountability. The absence of public access undermines democratic oversight, which depends on the ability of the community to evaluate how courts handle allegations involving powerful cultural institutions. Moreover, sealing deprives potential victims, witnesses, and industry participants of knowledge that could help them recognize similar patterns in their own environments and encourage safer practices.

The public interest is further heightened because this case intersects with widely recognized public controversies involving celebrity disputes and the legal systems surrounding them. For years, attention has focused narrowly on high-profile personalities, such as in the Depp–Heard disputes, while overlooking the individuals who insert themselves into these conflicts and manipulate others for personal advantage. The SAC exposes this often-unseen structure, showing that these situations reflect a broader

ecosystem in which ordinary individuals, families, and legal actors may be pressured or harmed. This information is essential to understanding how abuse spreads, how misinformation takes hold, and how legal processes can be distorted by those attempting to influence public conflicts. Sealing the SAC deprives the public of this insight. Public tensions extended well beyond the courtroom, enabling certain actors, including Barresi, to exploit them. Significant related disputes such as those involving Anthony Fox and the Viper Room circles were never addressed in the Virginia proceedings, demonstrating that much of the exploitation occurred outside formal litigation and remains unknown unless the SAC is unsealed.

For these reasons, sealing the SAC not only restricts access to information of significant public value but also undermines the broader societal function of the courts. Open judicial proceedings allow the public to observe, critique, and learn from the way legal institutions address systemic wrongdoing. The allegations in the SAC raise important questions about industry norms, public safety, institutional response, and the treatment of vulnerable individuals. Preventing public access to this information impedes the very transparency that the Ninth Circuit has repeatedly held is critical to ensuring accountability and public trust in the judicial process.

## VII.    RECONSIDERATION IS NECESSARY TO PREVENT MANIFEST INJUSTICE

Plaintiff further raised concerns that an individual involved in earlier stages of this matter mischaracterized her objections by vaguely referring to "personal issues," without identifying any specific statement that was inaccurate or improperly included. This omission contributed to a distorted presentation of Plaintiff's position and obscured the nature of systemic exploitation alleged in the SAC.

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

1    Reconsideration is required because the continued sealing of the Second Amended
2    Complaint ("SAC") results in significant and ongoing injustice, both in the context of this
3    litigation and in the broader public sphere. The SAC is not an ordinary pleading; it is a
4    comprehensive document that addresses long-standing, culturally significant issues
5    involving systemic exploitation, entrenched industry practices, and patterns of harm
6    affecting a broad array of individuals. By sealing this document in its entirety, the Court
7    has effectively removed from public view information that is vital to understanding how
8    these systemic failures operate and how they have persisted across time, generations, and
9    power structures. This wholesale sealing frustrates the public's well-established right of
10   access to judicial records, undermines the transparency necessary for confidence in the
11   judicial process, and forecloses the opportunity for public oversight at a moment when such
12   scrutiny is both appropriate and essential.

13   The injustice created by sealing is not limited to the deprivation of information.
14   Keeping the SAC from public access prevents the broader community from understanding
15   the mechanisms through which vulnerable individuals are exploited, witnesses are
16   manipulated, and families are leveraged in ways that reinforce harmful industry norms.
17   These patterns have not emerged in isolation; they reflect structural conditions that the
18   SAC documents at length, including the normalization of silence, the minimization of
19   abuse, and cultural ideologies that excuse or conceal misconduct. Without public access to
20   these descriptions, the systemic issues remain obscured, allowing the same cultural and
21   institutional dynamics that facilitated the harm to continue unchecked. The public cannot
22   evaluate the seriousness or prevalence of these patterns, nor can it understand how judicial
23   processes respond to them information that is central to democratic accountability.

24
25
26
27
28

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection
Supporting Legal Precedents and Public Interests About Hollywood Figures

Allowing the sealing order to stand would perpetuate exactly the type of systemic failures the SAC seeks to illuminate. It would reinforce the culture of secrecy that has historically protected harmful practices, discouraged reporting, and left vulnerable individuals without recourse or visibility. It would also withhold from policymakers, scholars, journalists, and advocates the contextual information necessary to develop informed reforms and interventions. At a broader level, continued sealing would impede the public's ability to assess the functioning of the judicial system itself, particularly in cases involving industries with significant cultural, economic, and social influence. This is the very definition of manifest injustice an outcome that undermines transparency, silences critical information, and obstructs the public's capacity to understand and address systemic abuse. Correcting this error through reconsideration is therefore not merely appropriate but essential.

## IX. SUPPLEMENTAL CONTEXT RELEVANT TO RECONSIDERATION AND THE THIRD AMENDED COMPLAINT

Plaintiff submits the following contextual information to further support reconsideration of the sealing order and to assist the Court in understanding the factual framework that will be presented in the forthcoming Third Amended Complaint. The issues raised in this case involve more than individual disputes or isolated allegations. They reflect a sustained pattern of double-sided exploitation, in which intermediaries position themselves between public figures and vulnerable individuals to manipulate both groups in tandem. This dynamic is essential to understanding the factual history, the nature of the harms alleged, and why public access is necessary for judicial transparency and for the protection of other potential witnesses.

The SAC already demonstrates that Plaintiff occupies a "middle area" not recognized by traditional American legal or cultural frameworks, where victims are often

forced into a binary narrative either aligned with celebrities or positioned against them. Plaintiff fits neither category. Instead, she was targeted both *because* she advocated for highly vulnerable individuals, and *because* intermediaries exploited the perception of her status, family history, and proximity to public figures. This dual vulnerability is what allowed Barresi and associated actors to use Plaintiff as leverage: first against her, then against Angela Meador, and subsequently against Adam Waldman and Johnny Depp. This pattern reflects not merely interpersonal conflict but a sophisticated exploitation strategy linked to the methods of Anthony Pellicano, whose tactics of surveillance, manipulation, recording, and infiltration of personal and professional relationships are well known in the entertainment industry.

The factual record shows that Plaintiff was not engaged as a supporter of one celebrity or another but was placed in a position where her proximity to Hollywood-affiliated disputes created opportunities for others to exploit her circumstances for strategic gain. Within the uniquely status-driven culture surrounding Hollywood, individuals can have their roles misinterpreted or manipulated in ways that distort their intentions and expose them to pressures they never consented to. Certain actors appropriated Plaintiff's image, statements, and personal history to influence or pressure multiple public figures simultaneously, all while misrepresenting her position to make her appear aligned with narratives she did not endorse. These distortions are themselves a form of persecution within a system where perceived affiliation is weaponized, and where misunderstandings of Hollywood's social networks can lead to false assumptions about motive, loyalty, and intent. These patterns directly illustrate why sealing the SAC conceals systemic exploitation rather than protecting any legitimate privacy interest.

This case further highlights why the public must understand these ongoing harms and why sealing prevents other potential witnesses from recognizing the patterns that may also affect them. Barresi's conduct including the use of telephone recordings in extortionate

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

efforts targeting Waldman mirrors exploitation models historically associated with Pellicano, where intermediaries leveraged information asymmetry and class perception to control public figures and vulnerable people alike. These strategies persist today, and their continuation is demonstrated by the facts alleged in this case. Public access is essential so that witnesses, victims, and industry participants can identify similar conduct in their own experiences and understand that these patterns are not isolated but systemic.

Finally, Plaintiff notes that other legal frameworks outside the United States recognize this dual-sided exploitation problem more clearly. There are ethical legal viewpoints concerning Certain European legal frameworks including France's Article 10 protections recognize that exploitation can occur in public-facing settings, particularly where individuals are recorded, monitored, or pressured without meaningful consent. These comparative standards illustrate that the dynamics described in the SAC are not abstract or speculative, but reflect widely acknowledged forms of exploitation that require transparency to be properly understood. While these frameworks do not bind this Court, they illustrate the protection gap that arises when American legal and cultural perspectives misconstrue class differentiation and fail to recognize exploitation occurring simultaneously across status lines. Plaintiff is asking this Court not to apply foreign law, but simply to understand the factual context: she suffered the harms that *both* legal frameworks condemn commercial exploitation and retaliation against protected expression and sealing prevents the public from understanding how such exploitation functions inside the entertainment industry.

The issues presented here concern the longstanding contrast between Hollywood's aspirational 'Golden Era' ideals rooted in creativity, community, and consent and the modern reality in which intermediaries forcibly insert themselves into the lives of both public figures and vulnerable individuals, introducing negativity, exploitation, and distortion without anyone's consent. The SAC details how these uninvited intermediaries

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

alter environments that were never meant to include such harmful conduct, fundamentally changing the social and professional dynamics of the industry. These patterns raise matters of inherent public concern and cannot be understood if the SAC remains sealed. Public access is necessary to allow the Court and the community to evaluate how these structures function, how they diverge from the consent-based norms historically associated with Hollywood, and why they have remained unchallenged for so long

## VIII. REQUESTED RELIEF

For all the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion for Reconsideration and take the necessary steps to correct the legal and factual errors underlying the sealing order. Specifically, Plaintiff requests that the Court:

1. **Vacate the prior order sealing the Second Amended Complaint ("SAC") in its entirety.**

   The sealing order lacks the specific findings, public-interest analysis, and narrow tailoring required under Ninth Circuit precedent. Vacatur is necessary to restore the presumption of public access and to correct the procedural deficiencies that rendered the original ruling legally unsound.

2. **Apply the Ninth Circuit's "compelling reasons" standard with the detailed, particularized findings required for any sealing determination.**

   Plaintiff requests that, upon reconsideration, the Court analyze the request to seal under the correct legal framework, including the specific identification of sensitive information, evaluation of any claimed harms, and a balancing of those harms against the public's strong interest in access.

3. **Order that the SAC be filed publicly in full, without redaction, because no portion of the SAC meets the extraordinary threshold required to justify restricting public access under Ninth Circuit or California law.**

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures

Although redaction is theoretically available as a last-resort option under Ninth Circuit precedent, Plaintiff maintains that no redaction is needed here because the SAC does not contain the type of narrowly defined, extraordinary information that could justify restricting public access. The strong presumption of openness under the First Amendment, the common law, and California law requires that the SAC be filed publicly in full.

**4. Grant such additional or alternative relief as the Court deems just and proper.** Plaintiff invites the Court to employ any additional procedural measures that further the aims of transparency, judicial integrity, and compliance with controlling law.

For the foregoing reasons, and in light of the substantial public interest and manifest injustice resulting from continued sealing, Plaintiff respectfully asks that the Court grant this Motion and permit public access to the Second Amended Complaint in accordance with constitutional and common-law principles.

Taken together, these additional facts reinforce why the SAC must be unsealed before the Court proceeds to evaluate or accept any Third Amended Complaint. The broader pattern of exploitation, dual-sided manipulation, and mischaracterization described above cannot be understood or corrected unless the prior allegations are publicly accessible. Public access ensures accurate context, prevents further distortion, and allows both the Court and the public to assess the evolving record transparently. For these reasons, the supplemental information further supports vacating the sealing order and restoring public access.

For these reasons, Plaintiff requests that reconsideration be granted and that the SAC remain accessible so the forthcoming Third Amended Complaint can be evaluated within the full factual landscape of this double-sided exploitation and its ongoing impact on public safety, witness participation, Hollywood figures, and judicial transparency.

Respectfully submitted,

Executed on November 19, 2025 in Cannes, France.

by: _Christina Taft_

       Christina Taft

       Plaintiff Pro Per

## LR. 11-6.1 Certification

I hereby certify that this brief has a memorandum of below 25 pages and contains 6,955 words below the 7,000-word limit in Times New Roman font - with excluding caption, tables, signature block, and certificate of compliance.

Dated: November 19, 2025

by: _Christina Taft_

       Christina Taft

       Plaintiff Pro Per

Plaintiff's Motion For Reconsideration To Unseal The Second Amended Complaint; Objection Supporting Legal Precedents and Public Interests About Hollywood Figures