Christina Taft
Plaintiff in Propria Persona
16 Mitchell Street
Boston, Massachusetts 02127
Phone: 215-787-1805
Email: Ceo.Taft@Rescue-Social.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CHRISTINA TAFT

Plaintiff,

vs.

PAUL BARRESI, et al, inclusive,

Defendants.

Case No.: 5:24-cv-01930-TJH-DTB

**NOTICE OF SUBPOENA TO WITNESS ADAM ROBERT WALDMAN TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS:**
**DETAILED NOTICE TO THE PARTIES SUPPORTING ADAM WALDMAN AS A WITNESS REGARDING RECONCILIATION, RESPECT, AND RECOGNITION OF SHARED CIRCUMSTANCES AFFECTING ULTRA-HIGH-NET-WORTH INDIVIDUALS**

***[Filed Concurrently with Exhibit of Hand-Signed Clerk Witness Subpoena to Mr. Adam Waldman Request, Friend of Johnny Depp; Exhibits B-C Hollywood Returns of Services to Witnesses and Constance Fox witness subpoena; and Certificate of Service]***

Date: 27th November, 2025

1

NOTICE TO THE PARTIES SUPPORTING ADAM WALDMAN AS A WITNESS REGARDING RECONCILIATION, RESPECT, AND RECOGNITION OF SHARED CIRCUMSTANCES AFFECTING ULTRA-HIGH-NET-WORTH INDIVIDUALS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Christina Taft ("Plaintiff") hereby provides notice regarding reconciliation, respect, and recognition of shared circumstances affecting ultra-high-net-worth individuals, particularly as relates to witness Adam Waldman ("Mr. Waldman").

On November 21, 2025, Clerk of Court Gloria Santiago in Los Angeles and Hollywood issued a Subpoena to Mr. Waldman to Produce Documents, Information, or Objects: "Supporting Adam Robert Waldman, Friend of Johnny Depp - Request for Collaboration to End Barresi's Illegal Telephone Recordings, Exploitation of Vulnerable Individuals Including of Ultra-High-Net-Worth Johnny Depp, and Restore Freedom to All." As required, the parties are hereby notified.

## I. ULTRA-HIGH-NET-WORTH CELEBRITY EXPLOITATION

With respect, Plaintiff, having received part of her education in Europe, has been instructed in environments where discretion, reputation, charity, and the vulnerabilities of ultra-high-net-worth individuals are matters of serious study and practical concern.

From that perspective, Plaintiff understands that public-facing figures, including beloved film stars and internationally recognized personalities, are structurally exposed to unique forms of exploitation, including but not limited to: the manufacture or amplification of "problems" in order to justify intervention by self-appointed intermediaries; the weaponization of private or sensitive information to exert pressure or obtain financial or strategic advantage; and the construction of misleading narratives that transform ordinary human frailty into contortions for exploitation.

This Notice is issued in that spirit: to name exploitation, to recognize shared harm, and to extend respect and an opening for reconciliation between Plaintiff and Mr. Waldman.

## II. PEACEBUILDING PURPOSE OF THIS NOTICE

This Notice is given by Plaintiff to express respect for Mr. Waldman, to document her understanding of relevant events based on evidence she has seen and experienced, and to invite communication and reconciliation, should Mr. Waldman choose to respond.

Should Mr. Adam Waldman decide to make amends and communicate regarding these matters, Plaintiff expresses her profound gratitude and thanks. His willingness to communicate would be deeply appreciated and welcomed. His communication efforts would be sophisticated and responded to with etiquette for warm peacebuilding.

## III. RECOGNITION OF BARRESI'S EXPLOITATION AND MANIPULATION

A beloved movie star such as Johnny Depp does not require problems to be artificially created around him. As discovered, it is factual that Mr. Depp was exploited as a public facing figure that's charitable. Counsel of Johnny Depp, attorneys Benjamin Chew and Jennifer Le, responded to requests in the subpoenas to Mr. Depp and Isaac Baruch, essentially denouncing attachments Barresi forged. Plaintiff states that Barresi's conduct included manufacturing or inflaming problems and then positioning himself as someone who could allegedly squash them, thereby perpetuating a cycle of abuse and exploitation for his own gain without actual repair.

On the basis of the investigation and experience, Plaintiff states that Defendant Paul Barresi has, over time, exploited, used, and dictated actions according to his own calculations, which she regards as irrational and self-serving.

Plaintiff asserts that Barresi has repeatedly framed his conduct by predicting what other people would allegedly think or do, when in fact such predictions reflected his own exploitative mindset and not the reality of those individuals. Barresi specifically sought to prey upon figures in the Arts and in his exploitation of ultra-wealthy celebrities. Plaintiff

shows full efforts to restore her original viewpoint that this exploitation by Barresi is unwanted by the wealthy and those he sees as vulnerable.

In Plaintiff's account, this construct is what makes Barresi's behavior especially insidious: crises are manufactured or exaggerated to facilitate continued involvement and ongoing financial or strategic exploitation.

**IV. THE TRUTH ABOUT CULTURE ON SENSITIVE INFORMATION**

The sensitive information and allegations previously circulated did carry weight within Johnny Depp's friend circles, where such matters were navigated privately, or socially, and with discretion. However, the distortion did not reach the escalations it has from Barresi.

She asserts that the problems arose only when Barresi corruptly intervened, including through what Plaintiff describes as illegal telephone recordings and calculated media manipulation, and when that information was deliberately weaponized by him.

According to Plaintiff, alleged disputes that could have been resolved became exploited. Barresi weaponized private sensitive information, exploiting it beyond the dispute, worsening and prolonging the disputes and manipulating intermediaries to facilitate that exploitation. Confidential information was obtained through unlawful recordings and then used to create leverage for extortion-style schemes by Barresi. He manipulated left-to-right language distortions. In Italian and other languages, the emphasis comes at the end of the sentence; therefore, it was only understood by those telephoned or contacted by him privately, while low-context American speakers usually exploit the beginning of the sentences he uses. He further manipulated American dialect to extortionary levels, again exploiting his manufactured Italian persona against the free wills of both the wealthy and poor.

## V. ADAM WALDMAN'S HUMANITY AND COMPASSION

On the basis of evidence and information available to her, Plaintiff states that Mr. Waldman responded to people who contacted him with complaints, including people wishing to speak, by offering genuine emotional support and listening to their concerns.

This empathetic, human response to conflict is what distinguished Mr. Waldman in Plaintiff's eyes and in the eyes of others, rather than cold calculation. He responded to abuse allegations.

Plaintiff regards Mr. Waldman as a friend, a family man, and a father, and wishes this to be clearly established.

People who care about Johnny Depp should be able to support him freely within the natural spaces where he reaches out to his community and where people reach out to him. Mr. Waldman has clarified that he is more personal and a friend, which is why people felt more comfortable speaking with him, and he allowed people to speak more openly. What occurred was not anticipated. There was no legitimate agreement between them and Barresi—telephone recordings involving Barresi's suggestions and manipulation of conversations are not valid and are actually illegal. However, disputes were used and inflamed cultural claims that caused circumstances to go sideways.

Mr. Waldman comes from a Washington, D.C. backstory, with Prada suits and experience servicing ultra-wealthy clients. This explains why the financial exploitation of Johnny Depp's sympathies and generosity would be alarming to him. He would reject the "New Hollywood" framing—sometimes called "Hollywood Math"—that exploitation is simply what occurs. That framing does not apply to him.

When one speaks directly with Mr. Waldman, rather than accepting dehumanizing media narratives or irrational, abusive characterizations attributed to Barresi (whose colleague Anthony Pellicano projected an aura of violence, named his children after mafia figures, and engaged in illegal telephone recordings), Mr. Waldman emerges as another

5

NOTICE TO THE PARTIES SUPPORTING ADAM WALDMAN AS A WITNESS REGARDING RECONCILIATION, RESPECT, AND RECOGNITION OF SHARED CIRCUMSTANCES AFFECTING ULTRA-HIGH-NET-WORTH INDIVIDUALS

person like everyone else: a professional attempting to do right by his clients and by those who sought his help.

**VI. THE CONTEXT OF MR. WALDMAN'S PROFESSIONAL ROLE**

It is acknowledged by Plaintiff that Mr. Waldman has represented well-known and ultra-wealthy individuals. She states that this experience placed him in a position to address complex celebrity issues with a level of sophistication and discretion that most professionals lack.

According to Plaintiff, the situation in which Barresi illicitly recorded Mr. Waldman's telephone calls and then issued false and inflammatory claims became unprecedented in its scale and effect.

Plaintiff documents that Mr. Waldman's role was that of a professional assistant and advisor, and that, in her view, he is neither sinister nor a "consigliere," contrary to the manipulative framing used by Barresi. Mr. Waldman is high-net-worth, but without the establishment of ultra-wealthy status of the clients he serves. This made him more vulnerable as a front person to exploitation schemes targeting his clients, though not as vulnerable as Plaintiff.

**VII. BARRESI'S CALCULATED MANIPULATION**

Barresi's naming of William Hazlet was calculated and manipulative—meant to evoke refined circles, private libraries, and exclusive education in order to create an artificial aura of sinister conspiracy that was not legitimate. He would never say that to an ordinary person. He uses different roles to manipulate—still an empty vessel each time.

Plaintiff states that the factual pattern she has observed is that people were genuinely drawn to Mr. Waldman because of his humanity and willingness to help, and that rivals

recognized this and set out deliberately to exploit the situation, using Barresi as a weapon against him.

In Plaintiff's view, this was done to misrepresent ordinary professional relationships as allegedly hostile networks, thereby justifying further exploitation and media campaigns. The only professional relationship here is between Mr. Waldman and Mr. Depp.

Defendant Barresi does not do professional relationships—he usually never enters into non-disclosure agreements and keeps sensitive information along with the ability to contact any person to inflame hostilities. This allows him to maintain leverage and control even over former politicians and Hollywood stars who are ultra-wealthy, with intermediaries poised around them to take funds and profit from instability. Barresi keeps such individuals under his control and in fear of him to ensure their compliance. Mr. Waldman knows that Barresi is also a celebrity stalker.

## VIII. PLAINTIFF'S ROLE AND RESPONSIBILITY

Plaintiff acknowledges that she was, in the early stages, someone who called attention to certain matters—specifically, she discussed reducing abuse and recognized exploitation of celebrities.

She states that what occurred after that initial notice went in a horrific direction that she neither intended nor could have anticipated.

There was no justice, no care, and no restoration. In Plaintiff's assessment, as historically, the front people like Adam were lambasted (the front facing lawyers and assistants), while those in the background maneuvered against him.

Plaintiff states that real people suffered as a result of tampering with evidence and information, and then suffered again when twisted outside narratives were layered on top of those distortions, bearing little resemblance to the full truth.

## IX. ACKNOWLEDGING WHAT WAS NOT KNOWN

With politeness, Plaintiff acknowledges that there were facts and dynamics unknown to her at the relevant times, particularly regarding what she now regards as a serious lack of class and ethics by certain individuals involved.

She states that she genuinely believed that a focus on humanitarianism and ethics would lead those individuals to choose more respectful and just paths forward, and that this belief has since proven misplaced.

Plaintiff further states that it is not right to perpetuate disputes needlessly, nor to artificially create and extend conflicts for purposes of financial gain or publicity.

## X. SINCERE SYMPATHY AND REGRET

Plaintiff expresses deep regret for her inability to bring peace to the situation and to prevent the harmful trajectory that others later shaped.

She states that rivals took what had occurred and used it to pressure and harm Mr. Waldman, including: forcing him, as she understands it, to leave his home in Washington, D.C. and move to Florida; causing him to cease writing and speaking against exploitation and injustice; and subjecting him to consequences entirely disproportionate to any alleged wrongdoing.

Mr. Waldman did not deserve to be driven from his home, did not deserve to have his professional reputation destroyed by illegal recordings and manipulated narratives, and did not deserve to be prosecuted in circumstances where Barresi's schemes continued with apparent impunity.

The same happened to the Plaintiff. Barresi and his intermediary Justin fixated on her property and isolated her in a location until they could manipulate full Machiavellian acts. Plaintiff is sympathetic to Mr. Waldman, and clarifications occurred during reach outs—ones she was begging for but was not allowed to do with people inflamed by Barresi's telephone recording and disclosure schemes, imagery on Ms. Heard, and false

8

NOTICE TO THE PARTIES SUPPORTING ADAM WALDMAN AS A WITNESS REGARDING RECONCILIATION, RESPECT, AND RECOGNITION OF SHARED CIRCUMSTANCES AFFECTING ULTRA-HIGH-NET-WORTH INDIVIDUALS

information Barresi projected. This was purely calculated to exploit and manufacture disputes in a culture that historically ignores these intermediaries, even to Fred Otash, who exploited Marilyn Monroe and Mr. Kennedy—matters that in the context of French culture would be more lighthearted for restoration and laughable not despair, not Machiavellian.

Plaintiff documents her sincere sympathy for the hardship and damage Mr. Waldman has endured.

**XI. MOVING FORWARD: INVITATION TO COMMUNICATION**

Plaintiff states that she would welcome communication from Mr. Waldman with profound gratitude, should he decide to make contact.

She believes that open and honest communication between people who have been exploited or manipulated by the same schemes is essential to any possibility of justice and restoration.

Plaintiff documents that she recognizes Mr. Waldman's humanity, respects his professional accomplishments and personal integrity, and hopes for a path toward reconciliation and mutual understanding. Plaintiff confirms that her contact information is available to Mr. Waldman, and that she remains available to communicate at his convenience and comfort, should he choose to do so.

**XII. THE BROADER PATTERN: EXPLOITATION OF UHNW INDIVIDUALS AND CHARITABLE ACTS**

Johnny Depp's long-documented generosity—visiting sick children, supporting friends, and giving to charity—made him particularly vulnerable to Barresi's exploitation. Courts should not allow Defendant Barresi's underbelly to distort and exploit off the record of litigation, nor allow matters to be driven by manufactured disputes targeting charitable acts.

Barresi's scheme has always centered on Mr. Depp's ultra-high-net-worth status. His conduct fixated obsessively on Mr. Depp's personal financial matters—gifts to friends, social relations, and charity, property values, inheritances, and even charitable acts.

By weaponizing these private financial matters, Defendant Barresi pursued a pattern of blackmail and extortion, both inside and outside litigation.

Johnny Depp's extraordinary generosity—helping the homeless, supporting artists, and funding charities—was intercepted and corrupted by Barresi, who twisted these acts of kindness into tools for leverage and profit. This inflicted profound emotional harm by transforming Mr. Depp's goodwill into a mechanism for exploitation.

**XIII. BARRESI'S EXPLOITATION OF ANTHONY FOX'S DEATH AND BLACKMAIL OF DEPP'S FRIENDS**

Barresi's exploitation of Johnny Depp extended far beyond media manipulation. He sent over 50 emails to former LAPD officer Mike McCormick, revealing his exploitation of both celebrities and homeless individuals, including a calculated scheme to exploit the tragic disappearance of Anthony Fox, Johnny Depp's co-owner at the Viper Room, for commercial and coercive purposes.

In April 2022, Barresi coordinated with Mario George Nitrini III to develop sensationalized content about Anthony Fox's death, including plans to publish materials about "the will" and allegations that "circumstances of Anthony Fox's disappearance covered up." Anthony Fox's family—Constance, Charles, and Judith—were illegally telephone recorded by Barresi, as revealed by Mr. Nitrini around January 2025, who rejected Barresi in 2022—long before his request for a subpoena. These communications demonstrate deliberate exploitation of a tragedy for media profit, leverage, and abusive control.

Barresi's scheme extended to targeting Ed Shaw and Albertini, individuals who had been friends with Johnny Depp for decades. These longtime supporters were subjected to telephone recordings and constant contact to create pressure on Mr. Depp illegally.

The pattern is clear: Barresi targeted Johnny Depp's circle of longtime friends, recorded them, maintained constant manipulative contact, and used the resulting materials to create pressure illegally—all while documenting his activities in emails that now serve as evidence of his heinous scheme.

**XIV. THE "MIDDLE AREA" PROBLEM**

The Second Amended Complaint, building to the upcoming Third Amendment for restoration recognizing exploitation of the ultra-wealthy among vulnerable, exposes an underrecognized category of harm—referred to here as the "middle area"—that affects individuals who exist neither as public figures with substantial visibility nor as insiders with structured protection.

These individuals operate in the same physical, social, and professional spaces as public-facing entertainers, yet lack the resources, influence, or public credibility necessary to shield themselves from exploitation.

This "middle area" is crucial to understanding the broader ecosystem of harm within the industry. Public discourse tends to focus overwhelmingly on sensationalized disputes involving celebrities, which obscure the systemic exploitation that occurs behind the scenes.

**XV. THE ROLE OF "JUSTIN" AS BARRESI'S INTERMEDIARY**

In October 2022 to 2025, further pressure was applied by an associate identified as "Justin," who intensified focus on Adam Waldman at a time when Plaintiff was seeking reconciliation, matching his and Barresi's confiscation of Plaintiff's telephone call with a former friend who did a tribute in support of Johnny Depp.

Justin appears to be a rival to both Adam Waldman and Johnny Depp, operating through his relationship with Barresi. Justin is an intermediary involved with controlling exposure and is in the circle of ultra-high-net-worth Elon Musk and high-net-worth Amber Heard. Despite previous complaints about Justin and other intermediaries regarding controlling exposure, he remains in their contacts. Further, exploitation without express, written consent of these individuals is still in consideration.

It is alarming how deeply Defendant Barresi and Justin have been involved in Adam's demise—contributing to the manufactured pressures that forced Mr. Waldman from his home, silenced his writing against exploitation, and disrupted his professional reputation.

While the details remain under further investigation, the pattern underscores that the real wrongdoer is Barresi, who leveraged others to suppress communication and prolong disputes.

**XVI. WITNESSES ACROSS BOTH SIDES**

Plaintiff has consistently recognized that Barresi's schemes harmed individuals across both sides of past and prolonged disputes.

As reflected in Plaintiff's subpoenas, witnesses include: Johnny Depp, Gina Deuters, Isaac Baruch, Adam Waldman, Constance Fox, Amber Heard, among others.

All witnesses were served in California, especially around Hollywood. Isaac Baruch was served October 28, 2025; Gina Deuters was served October 28, 2025; Johnny Depp was served November 6, 2025; and Amber Heard was served through Whitney on November 6, 2025. This information is given for Adam Waldman, since he was in the care of witnesses due to his personable and social sophistication.

These reasonable individuals are witnesses with knowledge of Barresi's unlawful exploitation.

Clarifying Mr. Waldman's status serves the broader humanitarian purpose of enabling all such witnesses to provide truthful testimony without being trapped in adversarial roles they never sought. Barresi's extortion scheme repeatedly fixated on obscuring his freelanced independent conduct onto individuals in order to 'pull both ends against the middle'—a psychological exploitation tactic that he weaponized through illegal telephone recordings—to manipulate financial outcomes and obstruct truthfinding.

**XVII. SUPPORTING OLIVIA BARASH: SAFETY, CHARITY, AND COMMUNITY**

Plaintiff recognizes the importance of supporting individuals who have been affected by similar patterns of exploitation and intimidation to feel safe, supported, and empowered to receive charitable assistance and to engage with their community.

Olivia Barash, known for her work on "Little House on the Prairie," "21 Jump Street" with Johnny Depp, and who worked at the Viper Room, faced significant struggles. After months of encouragement from Plaintiff—initially explaining how Barresi and Justin pressured Johnny Depp and Adam Waldman, and how telephone recordings were used to create pressure—Ms. Barash was able to launch a successful charity campaign that raised over $16,000 and received widespread media attention.

Plaintiff states that she is grateful to have helped Ms. Barash feel safe enough to seek charitable support and to overcome the fear that often accompanies such public appeals for assistance.

This Notice affirms that individuals who have been subjected to pressure, intimidation, or exploitation should feel safe and supported in receiving charity and donations without fear of retaliation or manipulation; reaching out to friends, family, and community members for support; socializing and maintaining healthy relationships free from manufactured fear; and speaking openly about their experiences without intimidation.

13

NOTICE TO THE PARTIES SUPPORTING ADAM WALDMAN AS A WITNESS REGARDING RECONCILIATION, RESPECT, AND RECOGNITION OF SHARED CIRCUMSTANCES AFFECTING ULTRA-HIGH-NET-WORTH INDIVIDUALS

The success of Ms. Barash's campaign demonstrates that when individuals are freed from the fear created by exploitation schemes, they can access the support and community connections that are rightfully available to them.

Plaintiff hopes that this example will encourage others in similar circumstances to feel empowered to seek help and to reconnect with their communities.

## XVIII. RECOGNIZING DIFFERENT TYPES OF ABUSE

Plaintiff recognizes that abuse takes many forms, and that controlling and Machiavellian behavior—as described by Gina Deuters and others—constitute serious forms of abuse that can be difficult to identify and address.

The Plaintiff has personally witnessed Barresi be abusive to Adam Waldman, including as recently as this past year. This ongoing pattern of abuse demonstrates the involuntary nature of this abusive situation and the continued exploitation Mr. Waldman has suffered at Barresi's hands.

Further, Barresi uses people—including those with alleged abuse in their backstory—as means to an end. Everyone is a pawn to manipulate to him. This is again the antithesis to people in Johnny's circle who, upon asking, express warmth and sympathy.

There are significant cultural differences in how disputes are understood and resolved. In some cultures, dialogue, argumentation, and even marital disputes are viewed more lightheartedly—part of the natural ebb and flow of human relationships where the focus is on reconciliation and restoration.

The appropriate response to conflict is to look for areas to be constructive and lighten tensions—not to assume the worst, worsen lies, or intensify contradictions. Yet intermediaries like Barresi and Justin do precisely the opposite: they manufacture disputes and exploit them rather than pursuing reconciliation and restoration.

These intermediaries enhance worst-case assumptions for their own profit and to create forced attachments. They especially exploit celebrated individuals who are ultra-wealthy, knowing that funds lost to intermediaries are less recognizable when siphoned from such substantial wealth.

In essence, not even Adam Waldman could have predicted this problem, nor could he have foreseen the continuation and escalation of it through Barresi and Justin, who profiteer from and deliberately inflame conflicts that should have been resolved through natural human communication, reconciliation, and understanding.

There have been extensive public debates about what constitutes abuse, often focused on defining the problem rather than implementing solutions. These debates, while raising awareness, frequently fail to protect vulnerable individuals or hold manipulative actors accountable.

Forms of abuse include emotional and psychological manipulation, controlling behavior that restricts autonomy and decision-making, Machiavellian tactics including deception and strategic manipulation, financial exploitation and coercion, and isolation from support networks and community.

Plaintiff is unequivocally opposed to all forms of abuse, regardless of the form they take or who perpetrates them.

Plaintiff further recognizes that she is not the first charitable person or donor who failed to foresee abusive situations before they fully manifested. Many well-intentioned individuals who seek to help others or support causes, such as Jennifer Howell, CEO of The Art of Elysium, have found themselves entangled in exploitative schemes that were carefully concealed by manipulative actors.

The inability to foresee such abuse does not reflect a lack of care or concern, but rather the sophisticated nature of Machiavellian manipulation, which deliberately obscures its true character until victims and well-meaning supporters are already deeply involved.

This acknowledgment is made in the spirit of peacebuilding, learning, and a sincere dedication to recognizing and opposing all forms of abuse going forward.

**XIX. CLOSING STATEMENT**

This Notice is made in a spirit of respect, humility, and genuine sympathy.

It is intended to: acknowledge the exploitation and manipulation that Plaintiff states Mr. Waldman has suffered; affirm the humanity he has shown throughout; and express hope that, through honest communication, reconciliation and a measure of justice may yet be achieved.

Should Mr. Waldman choose to respond, Plaintiff states that his communication will be received with gratitude, respect, and a sincere commitment to truth and restoration.

This Notice seeks to clarify unambiguously that Adam Waldman's proper role in this action is as a witness, and that he has free will apart from exploitation by Defendant Barresi. This clarification does not limit Mr. Waldman's independent rights; he, along with Johnny Depp, could pursue claims directly against Barresi for unlawful recordings, defamation, and other misconduct.

Plaintiff supports Johnny Depp in his charity and his endeavors, and genuinely hopes for his continued success—including charity inspired by his jovial role in Pirates of the Caribbean.

Plaintiff further requested, if Mr. Waldman could be so kind, support for restoration of her mother Victoria Taft's tribute article in the Associated Press that named Walt Disney and Warren Beatty's production Dick Tracy with original interviews of Lori Maddox and her uncle Donn Debaun. Pirates of the Caribbean is understood to be a Disney production. In correlation, Disney disapproved of negative Viper Room associations to Johnny Depp – while Barresi maneuvered to exploit families in his exploitation of ultra-wealthy stars - showing that Barresi’s involvement restricts legacies and positivity from flourishing.

This notice recognizes Mr. Adam Waldman's humanity, his professional integrity, and the exploitation he has suffered. It seeks reconciliation grounded in truth, mutual understanding, and a shared recognition that Paul Barresi's schemes harmed people across all sides of past and prolonged disputes—not just one or another.

**REQUEST FOR DOCUMENTS, PEACEFUL DIALOGUE, AND INFORMATION:**

Plaintiff asks for information in Exhibit A attached to the subpoena, and a copy of the hand-signed subpoena by the Los Angeles and Hollywood clerk is filed concurrently. The subpoena calls for the production of documents or things specified in the subpoena and the attachment to the subpoena on the date, time, and location indicated in the subpoena.

The returns of services (with redactions) (Exhibit B) and the Constance Fox subpoena by the Hollywood Clerk (still needing a notice, Exhibit C) are filed concurrently with this Notice for Adam Waldman. They are understood from Cannes, with the culture's acceptance of The Arts, Golden Hollywood, and charitable affordable giving to those learning in the arts.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 27, 2025

Christina Taft

Christina Taft

*Plaintiff in Pro Se*

*Cannes, France*

17

NOTICE TO THE PARTIES SUPPORTING ADAM WALDMAN AS A WITNESS REGARDING RECONCILIATION, RESPECT, AND RECOGNITION OF SHARED CIRCUMSTANCES AFFECTING ULTRA-HIGH-NET-WORTH INDIVIDUALS